UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
HONG LIU,

        Plaintiff,

  -v.-

FARADAY&FUTURE INC., SMART KING
LTD., JIAWEI WANG, and CHAOYING
DENG,

        Defendants

---------------------------------------- X

Case No. 1:20-cv-00019-GBD

**Judge George B. Daniels**

# DEFENDANTS' MEMORANDUM OF LAW SUPPORTING DISMISSAL ON PERSONAL JURISDICTION AND VENUE GROUNDS

## TABLE OF CONTENTS

                                                  Page

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT .......................................................................................................................... 5

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ............................................................................................................ 5

       A.    There is No Basis for General Jurisdiction Because Defendants are "At Home" in California .................................................................................................. 5

              a.    No Defendant is "Domiciled" in New York ............................................. 6

              b.    No Defendant Has Continuous and Systematic Affiliations With New York State ............................................................................................ 6

       B.    There is No Basis for Specific Jurisdiction ............................................................. 8

              a.    Faraday Neither Transacts Business Nor Contracts to Supply Goods or Services in New York .................................................................. 9

              b.    The Tort Claims Revolve Around California-Based Meetings and Conduct ....................................................................................................... 10

              c.    Any Alleged Injury Occurred in California ............................................ 11

       C.    Due Process Necessitates Dismissal ..................................................................... 13

II.   THE COMPLAINT SHOULD BE DISMISSED DUE TO IMPROPER VENUE ......... 14

CONCLUSION ..................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Asuncion Bustamante & Hilda Gabriel v. Atrium Medical Corporation et al.*,
    No. 1:18-CV-08395 (ALC), 2020 WL 583745 (S.D.N.Y. Feb. 6, 2020) .............................. 6, 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez (BBL I)*,
    171 F.3d 779 (2d Cir. 1999) ............................................................................................ 12, 13

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) ..................................................................................................... 6

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
    90 F. Supp. 3d 97 (S.D.N.Y. 2015) ......................................................................................... 7

*Daimler A.G. v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................................... 1, 5, 6

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ..................................................................................... 9

*Famular v. Whirlpool Corp.*,
    No. 16 CV 944 (VB), 2017 WL 2470844 (S.D.N.Y. June 7, 2017) ......................................... 7

*Freeplay Music LLC v. RIGOL Technologies USA, Inc. et al.*,
    No. 18 CIV. 10980 (ER), 2020 WL 564232 (S.D.N.Y. Feb. 4, 2020) ................................... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .............................................................................................................. 1, 6

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) ................................................................................................... 14

*International Shoe v. Washington*,
    326 U.S. 310 (1945) ............................................................................................................... 13

*Kropschot Fin. Servs., Inc. v. Balboa Capital Corp.*,
    No. 11 CIV. 8609 SAS, 2012 WL 1870697 (S.D.N.Y. May 21, 2012) ............................... 1, 2

*Martnez v. Bloomberg LP*,
    883 F. Supp. 2d 511 (S.D.N.Y. 2012) ................................................................................ 1, 14

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015) ..................................................................................... 7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007)..................................................................................15

*Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*,
  No. 14-CV-4819 (VSB), 2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) ..............12

*Rosenblatt v. Coutts & Co. AG*,
  750 F. App'x 7 (2d Cir. 2018) ................................................................................9

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014) ..................................5

**Statutes**

28 U.S.C. § 1391(a) ..................................................................................................14

28 U.S.C. § 1391(b) ...................................................................................................5

28 U.S.C. § 1404........................................................................................................1

28 U.S.C. § 1406(a) ...................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(a) ...........................................................................................5

Fed. R. Civ. P. 12(b)(2).........................................................................................1, 5

Fed. R. Civ. P. 12(b)(3).......................................................................................1, 14

N.Y. C.P.L.R. 301..................................................................................................6, 8

N.Y. C.P.L.R. 302......................................................................................................8

N.Y. C.P.L.R. 302(a) .................................................................................................8

N.Y. C.P.L.R. 302(a)(1).............................................................................................9

N.Y. C.P.L.R. 302(a)(2).....................................................................................10, 11

N.Y. C.P.L.R. 302(a)(3).....................................................................................11, 12

N.Y. C.P.L.R. 302(a)(4).............................................................................................8

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) and 28 U.S.C. §§ 1404 and 1406(a), defendants Faraday&Future Inc. ("Faraday"), Smart King LTD. ("Smart King" and, together with Faraday "the Faraday Companies"), Jiawei Wang ("Mr. Wang"), and Chaoying Deng ("Ms. Deng") (collectively, "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss the Complaint for lack of personal jurisdiction and improper venue.

## INTRODUCTION

Beyond the baseless nature of the substantive allegations which we are not addressing on this motion, Defendants seek dismissal because Plaintiff Hong Liu ("Mr. Liu") improperly filed this Complaint against Defendants in New York, a state with which Defendants have insufficient contacts to establish general jurisdiction and that has no nexus to the negotiation, execution, or performance of the contracts that form the basis for this litigation. Neither state nor federal law supports the exercise of personal jurisdiction or venue over Defendants in New York, particularly following the U.S. Supreme Court holdings in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) and *Daimler A.G. v. Bauman*, 571 U.S. 117 (2014).[1]

## FACTUAL BACKGROUND

Faraday is a technology company focused on the development and manufacture of next generation intelligent electric vehicles. (Complaint ("Compl."), Docket Entry #1, ¶ 11; Declaration of Chaoying Deng ("Deng Dec."), ¶ 3.)[2] Faraday was organized under the laws of

---

[1] In the alternative to dismissal, this action should be transferred to the Central District of California pursuant to 28 U.S.C. §§ 1404 or 1406(a).

[2] Two fact Declarations are being served in support of this motion. A trial court may properly consider materials outside the pleadings for purposes of a Rule 12(b)(2) and Rule 12(b)(3) motion. *See Kropschot Fin. Servs., Inc. v. Balboa Capital Corp.*, No. 11 CIV. 8609 SAS, 2012 WL 1870697, at *1 (S.D.N.Y. May 21, 2012) (noting that, in considering materials outside the pleadings for purposes of a 12(b)(2) motion, a court must credit plaintiff's averments of jurisdictional facts as true); *Martnez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012) (determining that a court may consider evidence outside the complaint, "including affidavits and other documentary evidence"). Where a defendant "rebuts [plaintiff's] unsupported allegations with direct highly specific, testimonial evidence regarding a fact

California in May 2014 and its principal place of business and headquarters have always been in Gardena, California. (Deng Dec., ¶ 3.) Faraday does not own -- and is not alleged to own -- real property in New York State. (Deng Dec., ¶ 4.) Furthermore, Faraday does not, and has never, derived revenue from any business conducted within New York. (Deng Dec., ¶ 7.) In fact, Faraday does not yet manufacture or sell any product. (Deng Dec., ¶ 7.) Likewise, Faraday has never advertised or attended trade shows within New York. (Deng Dec., ¶ 8.)

Smart King is a corporation organized under the laws of the Cayman Islands, with its principal place of business in Gardena, California. (Compl., ¶ 12.) Smart King is Faraday's holding company and, as Mr. Liu alleges, it has no material operations. (*Id.*, ¶ 28.) Similarly, Mr. Wang and Ms. Deng are residents of the State of California and Faraday employees, who have no nexus to New York State. (*Id.*, ¶¶ 13, 14.)

Mr. Liu currently resides in New York and is a former Faraday employee. (Compl., ¶¶ 10, 86.) It is alleged that Faraday and Mr. Liu negotiated his employment via in-person meetings at Faraday's California offices on October 17, 2017, January 10, 2018, January 22-24, 2018 and over telephone calls. (Compl., ¶¶ 31, 37.) Faraday's California employees, Mr. Yanfeng Wang, Mr. Wang, Mr. Yueting Jia ("Mr. Jia"), and Ms. Deng, participated in negotiating Mr. Liu's employment in California. (*Id.*, ¶¶ 31, 37.)

As part of the negotiations in October 2017, Faraday sent Mr. Liu an estimate value of the Smart King options that could be included in Mr. Liu's employment package. (*Id.*, ¶ 34.) This estimate pre-dated the November 30, 2017 Evergrande investment in Smart King. (*Id.*) After the investment and during the January 2018 in-person meetings, Mr. Liu sought additional details regarding the Evergrande transaction, such as the Series A documents. (*Id.*, ¶ 38.) Mr.

---

essential to jurisdiction -- and plaintiffs do not counter that evidence -- the allegation may be deemed refuted." *See Kropschot*, 2012 WL 1870697, at *1.

Liu alleges that Mr. Jia and Mr. Wang declined to provide the requested documentation due to confidentiality obligations.  (*Id.*)  Rather, Mr. Jia and Mr. Wang assured Mr. Liu that the Series A transaction was valid.  (*Id.*)

Mr. Liu alleges that he relied on Defendants' representation that Smart King received a $2 billion investment in deciding whether to accept Faraday's employment offer (*id.*, ¶ 40) and entered into two agreements with Faraday: an employment agreement dated January 25, 2018 ("Employment Agreement") and a director compensation agreement, dated February 2, 2018 ("Director Compensation Agreement").  (*See* Compl., Exs. A, B.)  Faraday negotiated and signed both agreements in California.  (Deng Dec., ¶ 9.)  Both agreements provide that California law applies to any dispute arising thereunder.  (*See* Employment Agreement, p. 1; Director Compensation Agreement, § 7.)  The Director Compensation Agreement further contains an exclusive forum selection clause requiring that "any dispute arising out of or related to this Agreement shall be resolved **exclusively in the state or federal courts located in Los Angeles, California**."  (Director Compensation Agreement, § 7; emphasis added.)

Mr. Liu began his Faraday employment on February 15, 2018 and moved his family to a compound near Faraday's Gardena, California headquarters.  (Compl., ¶¶ 60-61.)  Shortly after assuming his duties, Mr. Liu worked with Faraday's legal department to implement changes to the existing policies and procedures.  (*Id.*, ¶ 69.)  It is alleged that Mr. Jia and Mr. Liu had disagreements regarding Mr. Liu's proposed changes to company policies (*id.*, ¶¶ 73-75), leading Mr. Jia to warn Mr. Liu he would be terminated if the disagreements continued.  (*Id.*, ¶ 81.)  Ultimately, Mr. Jia terminated Mr. Liu's employment on February 11, 2019.  (*Id.*, ¶ 86.)  Plaintiff alleges that **all** of these events occurred within California.  (*See id.* ¶¶ 60-61, 69, 73-75, 81, 86.)

Mr. Liu claims that, following termination, his former colleagues attempted to harass him.  (Compl., ¶¶ 90-93.)  In addition, due to Mr. Liu's termination, Faraday ceased payment of his salary and all other financial benefits conferred with employment.  (Compl., ¶¶ 94-97.)

Despite the applicable choice of law and forum selection clause within the operative agreements and the absence of any ties connecting any of the Defendants to New York, Mr. Liu filed this New York federal court action on January 3, 2020.  In addition to a "declaratory judgment" claim, Mr. Liu alleges: Breach of contract (against Faraday and Smart King), violation of Section 10(b) of the Exchange Act and Rule 10b-5 (against all defendants), fraudulent inducement (against all defendants), wrongful termination (against Faraday and Smart King), intentional infliction of emotional distress (against all defendants) and negligent misrepresentation (against all defendants). (Compl., ¶¶ 109-51.)

Mr. Liu attempts to gerrymander this lawsuit into this Court by alleging that his claims:

> [R]elate directly to Defendants' conduct in or directed to New York, including Defendants' negotiation of the terms of Mr. Liu's employment while he was a New York resident, making numerous telephone calls and emails to Mr. Liu in New York, and making payments to Mr. Liu's New York bank account during the term of his employment.  Further, Defendants committed torts **outside the State of New York** that caused injury to Mr. Liu in New York.  Additionally, certain sales of securities and acts, practices, transactions, and courses of business constituting the securities violations alleged in this Complaint occurred in New York.

(Compl., ¶ 8 (emphasis added).)   As is apparent from the face of the Complaint, Mr. Liu's jurisdictional allegations conflict with his claims that he voluntarily travelled to California to negotiate his employment while no Faraday employee travelled to New York to negotiate with Mr. Liu.  The entirety of Mr. Liu's employment occurred in California and, as alleged, the conduct giving rise to his claims likewise occurred in California.

Given the absence of any connection to New York other than Mr. Liu's current and former residence -- although not his claimed residence during his employment -- the center of gravity of this lawsuit revolves not around New York, but in California.

## **ARGUMENT**

Neither Mr. Liu's allegations in the Complaint nor the facts of this dispute support this Court's exercise of personal jurisdiction over any of the Defendants. Moreover, venue is improper in this Court under 28 U.S.C. § 1391(b). This case should be dismissed.

### I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The Complaint should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure because Mr. Liu has failed to meet his burden of showing that the Court has jurisdiction over the California-based Faraday Companies and the two California-based Faraday employees. Under Fed. R. Civ. P. 4(k)(1)(a), personal jurisdiction may be exercised **only** when (1) permitted pursuant to the laws of the forum state (here, New York); **and** (2) comporting with the requirements of due process. *See Daimler AG*, 134 S. Ct. at 753 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014). Because there is no basis for New York to exercise general or specific jurisdiction over Defendants and due process weighs against exercising jurisdiction, dismissal of Mr. Liu's complaint is proper.

#### A.  There is No Basis for General Jurisdiction Because Defendants are "At Home" in California

Defendants are not "at home" in New York because they are California residents and corporations. (Compl., ¶¶ 11-14.) Moreover, the Faraday Companies do not transact "business"

-5-

in New York such that the exercise of general jurisdiction over the foreign corporations would be improper. (Deng Dec., ¶¶ 3-9.)

### a. No Defendant is "Domiciled" in New York

As the Supreme Court set forth in *Goodyear*, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. The equivalent domicile for a corporation is its place of incorporation and the location of its principal place of business. *Daimler*, 134 S. Ct. at 760. *See also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) ("*Daimler* established that, except in a truly exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business -- the 'paradigm' cases.").

As Mr. Liu alleges and the accompanying Declarations confirm, Mr. Wang and Ms. Deng are domiciled in California. (Compl., ¶¶ 13-14; Declaration of Jiawei Wang ("Wang Dec."), ¶¶ 3-5; Deng Dec., ¶¶ 3-4, 6-8.) In addition, Faraday is a California corporation with a principal place of business in Gardena, California. (Compl., ¶ 11.) Smart King is a Grand Cayman corporation with a principal place of business also in Gardena, California. (*Id.*, ¶ 12.) Plaintiff therefore concedes that no Defendant is "at home" in New York. *Brown*, 814 F.3d at 624.

### b. No Defendant Has Continuous and Systematic Affiliations With New York State

New York State may also exercise general personal jurisdiction "over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. 301. Since *Daimler*, New York courts exercise general personal jurisdiction only if the defendant's "affiliations with the state are so continuous and systematic as to render them essentially at home in the forum State." *Asuncion Bustamante & Hilda Gabriel v. Atrium Medical Corporation et al.*, No. 1:18-CV-

08395 (ALC), 2020 WL 583745, at *2 (S.D.N.Y. Feb. 6, 2020) (slip copy) (internal citations and quotations omitted).³

Except for this type of "exceptional case," a corporation is solely at home in its formal place of incorporation or principal place of business. *Id.* (citing *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014)). Applying these principles, the *Ascuncion* court declined to extend personal jurisdiction over a foreign bank with branch offices in New York. The same test applies to non-corporation individuals. *See, e.g.*, *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 787 (S.D.N.Y. 2015) (finding personal jurisdiction proper where defendants' agent participated in in-person meetings in New York to sell video footage and viewed the at-issue video footage in New York in addition to releasing, licensing, and deriving significant revenue from another film in New York).

Here, the alleged ties to New York are far more tenuous than those of the parties in *Ascuncion* and *Noval* because Defendants do not have operations or derive revenue in New York. By his own allegations, Mr. Liu concedes that Faraday cannot have continuous or systematic affiliations with New York as its product is still in the developmental stage, while Smart King has no New York operations. (Compl., ¶ 28.) Nor is there an allegation that the two individual defendants have any ties to New York.

The Declarations of Faraday executives and individual defendants Mr. Wang and Ms. Deng further confirm that the exercise of general jurisdiction would be improper. No Defendant owns real property in New York State. (Wang Dec., ¶ 3; Deng Dec., ¶ 4.) Nor have the Faraday

---

³ *Asuncion* held that, post-*Daimler*, the Southern District of New York recognizes that merely registering with the forum state does not constitute consent to personal jurisdiction. *Id.* at *2. *See also Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 WL 2470844, at *5 (S.D.N.Y. June 7, 2017) (Briccetti, J.); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) (McMahon, J.). Thus, although Faraday is registered as a foreign business corporation with the New York State Department of State, this does not warrant the exercise of personal jurisdiction.

Companies ever maintained any offices in New York or employed any individuals within the State. (Deng Dec., ¶ 5.) No Defendant owns a bank account in New York. (Wang Dec. at ¶ 3; Deng Dec., ¶ 6.) The Faraday Companies do not conduct and have never conducted business within the State of New York. (Deng Dec., ¶ 5.) The Defendants do not, and have never, derived revenue from any business conducted within New York. (Wang Dec., ¶ 4; Deng Dec., ¶ 7.) Likewise, Defendants never advertised or attended trade shows within New York. (Wang Dec., ¶ 5; Deng Dec., ¶ 8.)

There is simply no basis for general jurisdiction under C.P.L.R. 301.

### B.     There is No Basis for Specific Jurisdiction

New York's long-arm statute, C.P.L.R. 302(a), which permits courts to exercise personal jurisdiction over non-domiciliary entities, identifies acts which are the basis for jurisdiction:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>    (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>    (ii)  expects or should reasonably expect the act to have consequences   in the state and derives substantial revenue from interstate or international commerce...[4]

As discussed below, Mr. Liu fails to wedge his claims into any basis for specific jurisdiction under C.P.L.R. Rule 302.

---

[4] Mr. Liu does not allege that any Defendant owns, uses or possesses any real property situated within New York. C.P.L.R. 302(a)(4) is therefore facially inapplicable.

### a. Faraday Neither Transacts Business Nor Contracts to Supply Goods or Services in New York

Mr. Liu does not allege that Defendants contracted to supply goods or services in New York. Rather, he alleges that New York is a proper forum for his lawsuit because he also discussed his potential employment over telephone calls while in New York and signed his version of the operative agreements in New York.

Mr. Liu concedes, however, that he travelled to California on several occasions to negotiate the terms of his employment with Faraday (Compl., ¶¶ 31, 37), while no Faraday employee traveled to New York. (*See generally* Compl.; Deng Dec., ¶ 9.)[5] The operative agreements were negotiated by Faraday employees in California and physically executed by Faraday in California. (Deng Dec., ¶ 9.) Moreover, Mr. Liu alleges that the performance of those employment agreements -- the center of gravity for his claims and recovery -- occurred outside of New York, in California. (Compl., ¶¶ 64-97.)

Under well-settled law, these allegations are insufficient for purposes of establishing that Defendants transacted any business within New York State "or contract[] anywhere to supply goods or services in the state" under C.P.L.R. 302(a)(1). Illustratively, in *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018), the Second Circuit found that the negotiation, drafting and signing of an agreement outside of New York, despite long-distance phone calls with New York, weighed against concluding that a foreign company transacted business in New York. *See also DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 422-23 (S.D.N.Y. 2010) (determining that phone calls to New York are insufficient to establish personal

---

[5] Mr. Liu alleges that Mr. Yanfeng Wang, who is not a party to this action, "approached and invited Mr. Liu to travel from New York to Faraday's offices in California" without identifying the location of the initial approach. (Compl., ¶ 31.)

jurisdiction under New York's long-arm statute where the "center of gravity" of the transaction was outside New York).

### b. The Tort Claims Revolve Around California-Based Meetings and Conduct

There is similarly no basis for conferring jurisdiction over Defendants under Rule 302(a)(2), which addresses "a tortious act within the state." Mr. Liu's tort claims -- wrongful termination, intentional infliction of emotional distress, fraudulent inducement, negligent misrepresentation and violations of Section 10(b) of the Exchange Act and Rule 10b-5 -- revolve around a California center of gravity.

Mr. Liu admits that he repeatedly traveled to California to discuss his potential employment with Mr. Jia. (Compl., ¶¶ 31, 37.) As part of the initial negotiations in October 2017, Faraday sent Mr. Liu an estimate value of the Smart King options that could be included in Mr. Liu's employment package. (*Id.*, ¶ 34.) Notably, this estimate pre-dated the November 30, 2017 Evergrande investment in Smart King such that it did not form the basis of Mr. Liu's decision to accept employment with Faraday. (*Id.*) Rather, after the Evergrande investment -- and during the January 2018 in-person meetings -- Mr. Liu sought additional details regarding the Evergrande transaction, such as the Series A documents. (*Id.*, ¶ 38.) Mr. Liu alleges that it was in those meetings that Mr. Jia and Mr. Wang declined to provide the requested documentation due to confidentiality obligations. (*Id.*) Instead, Mr. Jia and Mr. Wang assured Mr. Liu that the Series A transaction was valid. (*Id.*) Mr. Liu alleges that he relied on Defendants' representation that Smart King received a $2 billion investment in deciding whether to accept Faraday's employment offer -- which is alleged to have occurred during the California meetings. (*Id.*, ¶ 40.) As such, Mr. Liu's claims for negligent misrepresentation, fraudulent inducement, and the Exchange Act violations arose in California. (*See, e.g.*, Compl., ¶ 119

(basing violation of Section 10(b) of The Exchange Act and Rule 10b-5 on Defendants' "refus[al] to allow Mr. Liu to examine the Series A documents . . .").)

Similarly, Mr. Liu's employment took place in California and his termination occurred in California such that any claim for wrongful termination is not tied to New York. (Compl., ¶¶ 86-88.) Mr. Liu concedes that this claim rests on "Faraday's failure to comply with applicable California and federal law." (*Id.*, ¶ 133.) As such, any alleged tortious conduct related to this claim occurred outside of New York.

Mr. Liu's intentional infliction of emotional distress claim is similarly based on conduct alleged to have occurred in California. (*See e.g.*, Compl. ¶¶ 87, 89, 90, 91, 92 (describing actions occurring in California, such as an alleged attempted entry of Mr. Liu's California home).) There are no allegations tied to New York for purposes of Mr. Liu's intentional infliction of emotional distress claim.

Mr. Liu's jurisdictional allegations are belied by Mr. Liu's remaining allegations that no business was transacted within New York, all in-person meetings occurred in California and the operative agreements provide for California as the choice of law and selected forum. (*See, e.g.*, Compl., ¶¶ 37-39; 60-61; 86-88; 79-93.) C.P.L.R. 302(a)(2) does not confer jurisdiction.

### c.   Any Alleged Injury Occurred in California

Pursuant to Rule 302(a)(3), courts apply a "situs-of-injury test, which asks them to locate the original event which caused the injury." *Freeplay Music LLC v. RIGOL Technologies USA, Inc. et al.*, No. 18 CIV. 10980 (ER), 2020 WL 564232, at *6 (S.D.N.Y. Feb. 4, 2020) (internal citations and quotations omitted). However, "[i]t is well-settled that 'residence or domicile of the injured party within [New York] is **not** a sufficient predicate for jurisdiction under section 302(a)(3)." *Id.* (emphasis added; internal citations and quotations omitted). The location of the direct injury can be identified by determining "where the first effect of the tort was located that

-11-

ultimately produced the final economic injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez (BBL I)*, 171 F.3d 779, 791 (2d Cir. 1999); *accord Fantis Foods*, 402 N.E.2d at 125-26 & nn.3-4 (finding no direct injury in New York where the first effect of the tort was lost sales in Chicago).

Mr. Liu bases personal jurisdiction on Faraday's negotiation of the terms of Mr. Liu's employment while he was a New York resident, telephone calls and emails Mr. Liu might have received in New York, and payments during his employment. These allegations are insufficient to confer personal jurisdiction; a sister court, in fact, previously found that alleged negotiations that were partly in New York are insufficient to show that a defendant's acts caused an injury in New York. *See Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-CV-4819 (VSB), 2015 WL 13019620, at *7 (S.D.N.Y. Sept. 21, 2015) (noting that claimant's allegations likewise omitted location of the claimant's reliance on the alleged representations).

Mr. Liu's claimed injuries arose outside of New York. *See* Section I.B. Mr. Liu's claims for negligent misrepresentation, fraudulent inducement, and Exchange Act violations hinge upon the January 2018 meetings in which he requested more information regarding the Series A transaction. (*See* Compl., ¶¶ 38-40, 119.) Although Mr. Liu attempts to characterize his injury as lost income from his prior employment in New York, Mr. Liu admits that he received his salary and benefits while employed at Faraday in California. (*Id.*, ¶ 62.) By his own allegations, Mr. Liu could not have suffered an alleged economic loss until his termination in California at which point Mr. Liu resided in California. The same holds true for Mr. Liu's wrongful termination and intentional infliction of emotional distress claims. *See* Section I.B.

Thus, the situs of the alleged injury is properly California and C.P.L.R. 302(a)(3) does not warrant the exercise of personal jurisdiction.

### C. Due Process Necessitates Dismissal

*International Shoe v. Washington*, 326 U.S. 310, 316 (1945) sets forth the applicable due process analysis consisting of two components: the minimum-contacts test and the reasonableness inquiry. To find minimum contacts, a plaintiff must plead that "his claim arises out of or relates to, the defendant's contacts with the forum ... [that] the defendant purposefully availed itself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there." *Bank Brussels Lambert*, 305 F.3d at 127 (internal quotation marks omitted).

To evaluate "reasonableness," courts weigh five factors:

1. burden that the exercise of jurisdiction will impose on defendant,
2. the interests of the forum state in adjudicating case,
3. plaintiff's interest in obtaining convenient and effective relief,
4. interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and
5. shared interest of the states in furthering substantive social policies.

*Id.*

Mr. Liu has neither pleaded that Defendants had minimum contacts with New York, nor has he shown it would be reasonable to assert jurisdiction over Defendants. Defendants do not have minimum contacts with New York because they have not availed themselves of the privilege of doing business in New York. *See* Section I.A. As such, Mr. Liu cannot meet the minimum contacts requirement of due process.

It is further unreasonable to "hale" Defendants to litigate in New York. The burden on Defendants will be great as every potential witness identified by Mr. Liu, other than himself, is located in California such that the expense to travel to New York for trial will be high. For example, Mr. Liu's intentional infliction of emotional distress claim appears to identify at least

four individuals residing in California as putative witnesses: Mr. Jia, Mr. Ye, Ms. Deng, and Mr. Liu's California real estate broker. (Compl., ¶¶ 88-91.)

New York, as the forum state, has an interest in protecting its citizens. Yet, the relevant agreements all prescribe California law and Mr. Liu brings his wrongful termination claim pursuant to California and federal law. In addition, Mr. Liu's relief will not be as convenient in New York because the Defendants do not have property there in the event of a judgment, although the judgment would transfer. The dispute, which involves interpretation of California contracts as applied to two California corporations and California residents, should be settled locally within California. Lastly, jurisdiction does not appear to erode any shared social policies. Thus, exceptional circumstances do not exist to warrant personal jurisdiction.

Due process supports dismissal of the Complaint for lack of personal jurisdiction.

## II.     THE COMPLAINT SHOULD BE DISMISSED DUE TO IMPROPER VENUE

The Complaint should similarly be dismissed under Fed. R. Civ. P. 12(b)(3) for improper venue. Even if personal jurisdiction did lie -- which it does not -- New York is not a proper venue.

Venue is proper only in: (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a). "The legal standard for a motion to dismiss for improper venue is the same as the standard for a motion to dismiss for lack of personal jurisdiction." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). A district court may properly consider evidence outside the complaint, "including affidavits and other documentary evidence" in ruling on a motion to dismiss under Rule 12(b)(3). *Martnez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012).

Mr. Liu has not alleged facts sufficient to show that any, let alone a substantial portion of, the transactions and wrongs complained of occurred in New York. The accompanying Declarations further confirm that there is not even a tenuous connection to New York.

Finally, the Director Compensation Agreement, attached as an exhibit to the Complaint and extensively relied on by its signatory, Mr. Liu (Compl., ¶¶ 56-58, 119), contains a California exclusive venue provision ("any dispute arising out of or related to this Agreement shall be resolved exclusively in the state or federal courts located in Los Angeles, California"). Under well-settled law, this constitutes an additional basis for dismissal. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (holding that dismissal under a forum selection clause is proper where "the clause was reasonably communicated," is "mandatory" and "where the claims and parties involved in the suit [in an alternative forum] are subject to the forum selection clause").

As set forth above, the Complaint should thus be dismissed for improper venue.

## CONCLUSION

Because personal jurisdiction and venue are lacking in this Court, Defendants respectfully request that this Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) or 12(b)(3). Alternatively, Defendants respectfully request that the Court transfer this action to the Central District of California pursuant to 28 U.S.C. §§ 1404 or 1406(a).

-16-

| | |
|---|---|
| Dated: New York, New York<br>February 14, 2020 | **TROUTMAN SANDERS LLP**<br><br>*/s/ Daniel N. Anziska*<br>Daniel N. Anziska<br>daniel.anziska@troutman.com<br>Mackenzie Willow-Johnson (*pro hac vice forthcoming*)<br>mackenzie.willow-johnson@troutman.com<br>TROUTMAN SANDERS LLP<br>875 Third Avenue<br>New York, NY  10022<br>Telephone: (212) 704-6000<br>Facsimile: (212) 704-6288<br><br>*Attorneys for Defendants* |