UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HONG LIU,

Plaintiff,

-v.-

FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,

Defendants

Case No. 1:20-cv-00019-GBD

**Judge George B. Daniels**

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**Page**

ARGUMENT ..... 1

I. LIU CANNOT MEET CPLR § 302'S REQUIREMENTS FOR SUBJECTING DEFENDANTS TO PERSONAL JURISDICTION IN NEW YORK ..... 1

- A. CPLR § 302(a)(3)(ii) Does Not Confer Jurisdiction ..... 2
  - 1. Intentional Infliction of Emotional Distress ..... 2
  - 2. Negligent Misrepresentation & Fraudulent Inducement ..... 3
    - a. Defendants Could Not Have Expected Email Received Wherever Liu Happened to be to Lead to Consequences in New York ..... 3
    - b. Liu Has Waived Arguments Regarding Defendants' Revenue ..... 4
    - c. Liu Fails to Establish Any Injury Occurring in New York ..... 5
- B. CPLR § 302(a)(1) Does Not Confer Jurisdiction ..... 7
  - 1. Defendants Have Not Transacted Business in New York by Virtue of the Employment Contract. ..... 7
  - 2. Defendants Did Not Transact Business in New York by Executing a Securities Transaction ..... 8
- C. Due Process Necessitates Dismissal ..... 9

II. VENUE IS IMPROPER ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60, 69 (2d Cir. 2012) ....................9

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
98 F.3d 25 (2d Cir. 1996)....................8

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999)....................6

*Bastille Properties, Inc. v. Hometels of Am., Inc.*,
476 F. Supp. 175 (S.D.N.Y. 1979) ....................8

*Buti v. Perosa*,
S.R.L., 139 F.3d 98 (2d Cir.1998) ....................5

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir.2010)....................1

*Conti v. Pneumatic Products Corp.*,
977 F.2d 978 (6th Cir. 1996) ....................10

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986)....................7

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
102 F. App’x 192 (2d Cir. 2004) ....................7

*Dubin v. E.F. Hutton Grp. Inc.*,
695 F. Supp. 138 (S.D.N.Y. 1988) ....................8

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
571 F. Supp. 2d 458 (S.D.N.Y. 2008)....................5

*Fantis Foods, Inc. v Standard Importin Co.*,
49 N.Y.2d 317 (1980) ....................7

*Fica Frio, LTD. v. Seinfeld*,
2020 WL 364093 (S.D.N.Y. 2020) (Opp.) ....................6, 7

*Gabriel Capital, L.P. v. Caib Investmentbank Aktiengesellschaft*,
28 A.D. 3d 376 (N.Y. App. Div. 1st Dept. 2006) ....................3, 4

*Kernan v. Kurz-Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999)....................3

*Lankau v. Luxoft Holding, Inc.*,
266 F. Supp. 3d 666 (S.D.N.Y. 2017)....................8

*Lewis v. Madej*,
No. 15 CV2676 DLC, 2015 WL 6442255 (S.D.N.Y. Oct. 23, 2015)....................5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)....................9

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................8

*Minnie Rose LLC v. Yu*,
169 F. Supp. 3d 504 (S.D.N.Y. 2016)....................8

*New York Mercantile Exch. v. Cent. Tours Int'l, Inc.*,
No. 96 CIV. 8988 SAS, 1997 WL 370600 (S.D.N.Y. July 1, 1997)....................10

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
51 F. Supp. 2d 457 (S.D.N.Y. 1999)....................10

*Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
2006 WL 559811 (S.D.N.Y. Mar. 7. 2006)....................9

*Princeton Pike Park, Inc. v. High-Tec, Inc.*,
No. 89 CIV. 6696 (JFK), 1990 WL 96755 (S.D.N.Y. July 3, 1990)....................10

*Related Companies, L.P. v. Ruthling*,
No. 17-CV-4175, 2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017)....................5, 9

*Rosenman & Colin LLP v. Sandler*,
No. 01 CIV. 7123 (GEL), 2002 WL 83657 (S.D.N.Y. Jan. 18, 2002)....................10

*Schenk v. Red Sage, Inc.*,
No. 91 CIV. 7868 (BN), 1994 WL 18630 (S.D.N.Y. Jan. 21, 1994)....................8

*Siegel v. Ford*,
No. 16-CV-8077 (JPO), 2017 WL 4119654 (S.D.N.Y. Sept. 15, 2017)....................10

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006)....................2

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
751 F.2d 555 (2d Cir. 1985)....................8

**Statutes**

28 U.S.C. § 1391(b) .......................................................................................................1

28 U.S.C. §§ 1404.........................................................................................................10

C.P.L.R. § 302...............................................................................................................1

CPLR § 302(a)(1) ......................................................................................................7, 8

CPLR § 302(a)(1)'s.........................................................................................................9

CPLR § 302(a)(3)(ii)...................................................................................................2, 7

CPLR § 302(a)(3)(ii) and § 302(a)(1)..............................................................................2

CPLR § 302'S ................................................................................................................1

Throughout his opposition, Liu substitutes rhetoric for analysis, ignores adverse precedent and mischaracterizes other precedent and non-binding authority, all in an unavailing attempt to satisfy his burden to establish that this Court has personal jurisdiction over the Defendants. Defendants' moving papers anticipated much of what Liu would argue and this Reply does not restate those arguments. Rather, its purpose is to drill down on the key issues and expose the fallacies in Liu's arguments and new contentions.

In the final analysis, the contemplated future consequences of all parties were that Liu would move to and be employed by Defendants in California. The contract terms were to be carried out in California. Defendants' contacts with New York were random, fortuitous and attenuated and do not meet the purposeful availment element to confer jurisdiction over them.

## ARGUMENT

Liu's opposition confirms that this Court does not have personal jurisdiction over any of the Defendants because: (i) the only contact with New York is Liu's arbitrary residence in the state before and after his California employment; and (ii) Defendants attempted to avail themselves of the benefits of Liu's Chinese contacts, not his New York residency. Neither the Complaint's allegations nor the undisputed facts permit this Court's exercise of personal jurisdiction over any of the Defendants pursuant to C.P.L.R. § 302.[1] Moreover, venue is improper in this Court under 28 U.S.C. § 1391(b). This case should be dismissed.

### I. LIU CANNOT MEET CPLR § 302'S REQUIREMENTS FOR SUBJECTING DEFENDANTS TO PERSONAL JURISDICTION IN NEW YORK

[1] Liu filed a declaration with his Opposition. (*See* ECF No. 26 (hereinafter "Liu Decl.").) Many of the assertions made in the Liu Decl. lack foundation (*id.*, ¶¶ 12, 14, 15, 16, 18), run afoul of the best evidence rule (*id.*, ¶¶ 6, 7, 8, 14, 15, 16, 17, 20, 21 (describing, without attaching, the contents of documents and emails)), and constitute inadmissible hearsay. (*Id.*, ¶¶ 3, 4, 9, 10, 20 (describing communications with a non-party).) While the Court may appropriately consider supporting material for purposes of a motion to dismiss, *see Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.2010), those matters are not exempt from the Federal Rules of Evidence. As such, the Court should not credit statements violating the evidentiary rules.

Liu concedes that he seeks jurisdiction solely pursuant to CPLR § 302(a)(3)(ii) and § 302(a)(1). (Opp., p. 8.) Neither prong of New York's long-arm statute nor due process confers personal jurisdiction over Defendants.

**A. CPLR § 302(a)(3)(ii) Does Not Confer Jurisdiction**

Liu concedes he seeks to establish personal jurisdiction under CPLR § 302(a)(3)(ii) solely on the basis of his tort claims for negligent misrepresentation, fraudulent inducement, and intentional infliction of emotional distress. The Opening Brief extinguishes three of the five key elements for jurisdiction for each of these claims.[2]

1. Intentional Infliction of Emotional Distress

Liu fails to establish personal jurisdiction on the basis of his tort claim for intentional infliction of emotional distress. The Opposition omits any authority, argument or allegation supporting that any emotional distress injury arose in New York, or suggesting that Defendants expected or should have reasonably expected conduct to have consequences in New York. (Opp., Section I.A.2 (failing to address any consequences occurring in New York on the basis of emotional distress); Section I.A.4 (omitting any argument regarding Defendants' expectations of intentional infliction of emotional distress causing consequences in New York).) As Defendants' Opening Brief establishes, the totality of Mr. Liu's allegations regarding emotional distress relate *solely* to conduct alleged to have occurred in California. (Opening Br., p. 11.) Liu does not

[2] Liu mischaracterizes the *Sole Resort* case as supporting the contention that the "tort of fraudulent inducement conferred specific jurisdiction on defendant where defendant sent plaintiff a fraudulent business plan from outside of New York." (Opp., p. 9 (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006)).) Not true. The *Sole Resort* Court declined to determine the issue of specific jurisdiction, and instead, remanded to the trial court, "express[ing] no opinion as to the sufficiency of the New York contacts in the instant case." 450 F.3d at 101. Notably, *Sole Resort* involved more than mere emails and telephone calls with a New York resident. There, the foreign hotel physically mailed a business plan to plaintiff's owner's New York home, sent a principal to New York to meet with local tour operators and develop business plans to promote the hotel in New York, and participated in a meeting at New York's JFK airport. The plaintiff's owner then terminated the agreement by physically mailing a letter from within New York.

claim that he experienced any injury from this alleged California conduct in New York. (Opening Brief, pp. 11-12.) As such, this alleged tortious conduct does not give rise to the exercise of New York personal jurisdiction over Defendants.

2. Negligent Misrepresentation & Fraudulent Inducement

Liu conflates his claims of negligent misrepresentation and fraudulent inducement. As such, Defendants will address those arguments together.

a. Defendants Could Not Have Expected Email Received Wherever Liu Happened to be to Lead to Consequences in New York

Liu argues that he has demonstrated Defendants' "purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court." (Opp., p. 10 (citing *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (a products liability case conferring jurisdiction over a foreign defendant-seller who sold the product to a buyer in New York and who had an exclusive distributorship agreement covering the United States).) *Kernan* noted that this prong comports with Due Process.

Liu also cites *Gabriel Capital, L.P. v. Caib Investmentbank Aktiengesellschaft*, 28 A.D. 3d 376 (N.Y. App. Div. 1st Dept. 2006) for the proposition that "a party sending misrepresentations into New York should reasonably expect those acts to have consequences in New York." (Opp., p. 10.) *Gabriel* concludes, without conducting an in-depth analysis, that the defendant investment firm should have expected its acts to have consequences in New York. *Id.* at 377. Notably, the parties there exchanged numerous facsimiles transmitting draft purchase agreements between two known physical locations. *Id.* at 377-78. Although Liu contends that "Defendants directed communications to Mr. Liu while he was in New York" (Opp., p. 10), these contentions do not give rise to Defendants' purposeful availment of the benefits of the laws

of New York because, unlike a facsimile transmission, email may be received anywhere the recipient happens to be located.

Moreover, technology and communications have transformed since the 1999 and 2006 cases cited by Liu. Unlike communications conveyed to physical addresses via mail, facsimile, or landline, communications conveyed via email and cell phone, as in this case, can be received or reviewed wherever the recipient chooses. It would be unreasonable to expect that a sender of electronic communications intends contact with whatever jurisdiction the recipient coincidentally occupies at the time the recipient chooses to receive or review the communication.

Because Liu relies solely on emails and telephone calls that he allegedly received while in New York, he fails to demonstrate how Defendants availed themselves of the benefits of the laws of New York. (Opp., pp. 10-11.)[3] Moreover, unlike *Gabriel*, Liu fails to address how Defendants should have expected electronic communications to have consequences in New York. Indeed, Liu touts that he was hired for his Chinese contacts, among other Chinese-related benefits. It would be more likely for Defendants to assume Liu was in China or otherwise traveling for global business for his international firm, not New York, when the emails and cell phone calls took place. As such, this element weighs against exercising personal jurisdiction.

      b.  <u>Liu Has Waived Arguments Regarding Defendants' Revenue</u>

Liu's Opposition contradicts his Complaint by arguing that Defendants derive substantial revenue from interstate or international commerce. (*Compare* Opp., pp. 11-12 *with* Compl. ¶ 28 ("Faraday had been seeking for years to develop and market a viable electric car, without

---

[3] Based on Liu's allegations made in the complaint, Defendants raised the issue with Liu's misleading characterization that Mr. Wang "first approached Plaintiff in October in New York" in their Opening Brief (p. 9). This is because the term "approach" can indicate multiple modes of interaction, including geographic and electronic. Liu now acknowledges that he participated in an "initial *phone call*" with Mr. Wang (emphasis added). (Liu Decl., ¶ 4.) As such, Liu concedes that his use of the term "approach" relates to electronic, not physical, communication.

success.").)  While there is no bright-line rule regarding the specific level of revenue, "[c]ourts will instead assess either (1) the percentage of a party's overall revenue derived from interstate commerce, or (2) the absolute revenue generated by a defendant's interstate commerce activities."  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008).  This requirement "narrows the long-arm reach to preclude the exercise of jurisdiction over non-domiciliaries who might cause direct, foreseeable injury within [New York] but whose business operations are of a local character."  *Related Companies, L.P. v. Ruthling*, No. 17-CV-4175, 2017 WL 6507759, at *5 (S.D.N.Y. Dec. 18, 2017).

Liu's reliance on an unpublished case, *Lewis v. Madej*, No. 15 CV2676 DLC, 2015 WL 6442255, at *5 (S.D.N.Y. Oct. 23, 2015), is unavailing.  That court found trademark applications indicative of interstate commerce because the Lanham Act "authorizes trademark registration only for marks that are 'used in commerce.'"  *Lewis*, 2015 WL 6442255, at *5 (citing *Buti v. Perosa*, S.R.L., 139 F.3d 98, 102 (2d Cir.1998).)  The court acknowledged that the case before it was not a "traditional commercial tort case" but was instead premised on intentional and fraudulent trademark infringement specifically directed at plaintiffs, residents of New York.

Unlike claimants in *Energy Brands*, *Related Companies*, and *Lewis*, however, Liu himself alleged that Faraday has been unsuccessful in marketing its electric vehicles.  (Compl. ¶ 28.)  Defendants submitted evidence, in the form of declarations, that Defendants do not derive *any* revenue from New York.  (Opening Br., p. 2.)  Liu's admission and this proof confirm Defendants' lack of commercial operations touching New York State.

                        c.        Liu Fails to Establish Any Injury Occurring in New York

Liu seeks to conflate alleged injuries caused by the termination of his employment in California, i.e., no longer receiving compensation from Faraday, with the effects of leaving his employment at the Mayer Brown law firm.  This argument is unavailing, as Liu fails to

distinguish Defendants' cases and instead, relies on inapposite case law.  For example, in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) ("*BBL I*"), a bank alleged fraud and breach of fiduciary duty against its Puerto Rican law firm for tortiously failing to disclose negative information about a potential borrower in the law firm's written opinion.  The bank then disbursed funds to the borrower in reliance on the law firm's opinion and the borrower later defaulted.  For purposes of personal jurisdiction, the Court determined that the bank's disbursement of funds was the first step in the process that generated the ultimate economic loss.  The Court remanded the case to the trial court to determine whether requirements under § 302(a)(3) had been met.  *Id.* at 792.  The Second Circuit did not determine that the firm's opinion constituted the first step by omitting information.

Liu also relies on *Fica Frio, LTD. v. Seinfeld*, 2020 WL 364093 (S.D.N.Y. 2020) (Opp., p. 13), for the proposition that "the Second Circuit has predicted that the Court of Appeals would identify the place of reliance as the place of direct injury."[4]  This sentence refers to *BBL I*, which determined the disbursement of funds predicated plaintiff's ultimate economic loss.  *Fica* also found that plaintiff's wiring of funds was the situs of the injury leading to the ultimate loss.  In both cases, the injury (i.e., lost money) was directly related to the action (i.e., disbursed funds).

By contrast, Liu's claimed injury is tangential.  He argues that his "first effect" was quitting his lucrative, Big-Law partnership based on representations regarding the prospective value of in-house compensation.  (Opp., p. 14.)  Liu claims leaving Mayer Brown resulted in the lost income and future retirement benefits he *could* have earned.  (Compl. ¶129.)[5]  Whether Liu would have remained at Mayer Brown to receive these benefits is far more speculative than the

---

[4] Liu misleadingly omits that the referenced court is the New York Court of Appeals, not the Second Circuit.

[5] Liu makes no attempt to identify a separate injury for his negligent misrepresentation claim.  (Compl., ¶¶ 141-146.)

direct connection between the funds paid and funds lost in *BBL I* and *Fico*. *See Fantis Foods, Inc. v Standard Importin Co.*, 49 N.Y.2d 317, 326-27, n.3 (1980) (party's claim for conversion was based on "speculative" injury arising from loss of cheese in route to Chicago, thus having no connection to misrepresentations directed to plaintiff in New York).

Liu also claims breach of contract damages for the amounts he claims are owed under the Employment Agreement attached to the complaint. (*See* Compl., ¶¶ 94-102.) Liu cannot double dip to gain the benefits of both his terminated Faraday compensation and his former firm benefits. These alleged injuries reveal that Liu's "first effect" towards injury was not quitting his firm but being terminated from an in-house position. Liu cannot not now seek the benefits of both. For these reasons, Liu has failed to establish any injury arising in New York.

Lui has failed to establish jurisdiction under CPLR § 302(a)(3)(ii).

**B. CPLR § 302(a)(1) Does Not Confer Jurisdiction**

Liu argues that a single purposeful transaction is sufficient to invoke jurisdiction. (Opp., p. 15 (citing *Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 195 (2d Cir. 2004).) This may be true when the transaction encompasses not only negotiations, but also if the plaintiff solely negotiates while in New York, the solicited funds are wired from a New York bank account, and an in-person meeting occurs within the jurisdiction. *Druck*, 102 Fed. App'x at 194-95. The facts alleged here are vastly different.

1. <u>Defendants Have Not Transacted Business in New York by Virtue of the Employment Contract.</u>

Liu argues that jurisdiction is proper in New York based on the employment contract. He cites *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) for the proposition that jurisdiction is proper where parties enter into an employment contract for duties performed by a New York plaintiff outside of New York. *Cutco* is readily distinguishable, because the

defendant traveled to New York several times in addition to sending representatives to other New York franchise locations over a seven-year period.[6] By contrast, Liu alleges that he travelled to California three times between the fall of 2017 and January 2018 to discuss employment and fails to establish a single physical contact between Defendants and New York as part of the Employment Agreement negotiations. All correspondence is alleged to have occurred via email, telephone, or in California. (Opp., p. 16.)[7] Moreover, all contractual obligations, or breach thereof, are alleged to have occurred in California. As such, Defendants have not transacted business in New York by entering into a California Employment Agreement.

2. Defendants Did Not Transact Business in New York by Executing a Securities Transaction

Liu contends that an employment agreement containing the promise of the transfer of securities is a business transaction for purposes of conferring jurisdiction under CPLR § 302(a)(1). (Opp., p. 17.) None of the cited cases stand for this proposition. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (analyzing whether an employment contract promising shares as compensation are securities transaction within Rule 10b-5); *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 559 (2d Cir. 1985) (analyzing whether agreement constituted sale of stock under the securities statutes); *Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138, 145 (S.D.N.Y. 1988) (same); *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d

[6] *Bastille Properties, Inc. v. Hometels of Am., Inc.*, 476 F. Supp. 175, 176 (S.D.N.Y. 1979), is likewise inapposite because the parties engaged in negotiations in-person in New York sufficient to confer personal jurisdiction.

[7] Liu's other citations are inapposite. *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 509 (S.D.N.Y. 2016) involved a five-year business relationship in which defendants admitted to discussing business during her three trips to New York. *Schenk v. Red Sage, Inc.*, No. 91 CIV. 7868 (BN), 1994 WL 18630, at *2 (S.D.N.Y. Jan. 21, 1994), likewise involved a visit by the defendant to New York to negotiate the terms of the employment, mailing and faxing of documents to a physical New York location, and the plaintiff carried out some of his contracted-for services in New York. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) involved a business relationship spanning over three decades, advertising occurring in New York, and the carrying out of contractual duties, such as transmitting payments and reports to a physical New York office. By contrast, Liu has failed to present any evidence or make any allegation that Defendants visited New York.

666, 679 (S.D.N.Y. 2017) (same).[8] This jurisdiction theory would permit a claimant to sign an employment agreement anywhere and claim jurisdiction over a defendant, which would necessarily conflict with notions of due process. The mere place of the plaintiff's execution alone cannot confer jurisdiction.

**C. Due Process Necessitates Dismissal**

Defendants have addressed the absence of any availment of the privilege of doing business in New York. (Opening Br., Section I.A, pp. 7-8 (describing that Defendants do not conduct business, derive revenue, advertise or attend trade shows in New York).) Liu fails to establish CPLR § 302(a)(1)'s requirements to confer jurisdiction. For the same reasons Defendants have not transacted business in New York, they do not have any contacts, let alone minimum contacts, with New York.

Defendants did not seek the privilege of carrying on activities in New York, but rather aimed their conduct to Liu's portable devices solely because of Liu's purportedly extensive Chinese contacts. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 172 (2d Cir. 2013) (noting the Second Circuit's affirmance of dismissal of lack of personal jurisdiction over defendants who used New York bank accounts because defendants did not expressly aim their conduct at the forum). Electronic communications alone do not rise to the level of minimum contacts.[9]

---

[8] The Court of Appeals for the Second Circuit, in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012), declined to determine whether a defendant's lack of contact with the United States in a securities transaction could provide a basis for dismissal on personal jurisdiction grounds. Notably, however, CPLR § 302(a)(1) applies to transacting business or contracting "to supply goods or services" in the state—not securities contained within employment agreements. *See* N.Y. U.C.C. Law § 2-105 ("'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.").

[9] Cases relied on by Liu to argue out-of-forum communications may give rise to minimum contacts are inapposite. *See Related Companies, L.P.*, 2017 WL 3507759, at *9; *Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 2006 WL 559811, at *7 (S.D.N.Y. Mar. 7. 2006). In *Related Companies*, the defendant entered into an agreement with a New York company to supply glass façade material. Over the parties' seven-year

Further, Defendants fully briefed the reasonableness of exercising jurisdiction in their Opening Brief and will not revisit such arguments here.[10] Liu has not cited any cases in which hiring a forum's employee, without physical contact or contract services rendered in the forum, amounts to a reasonable exercise of personal jurisdiction. *See, e.g.*, *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 983 (6th Cir. 1996) (finding it "unfair" to subject a Florida-based company to Ohio jurisdiction based solely on job candidate's residency).

## II.  VENUE IS IMPROPER

Defendants fully briefed this issue in their Opening Brief and defer to those arguments.[11]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed because personal jurisdiction is lacking in this Court. Alternatively, Defendants respectfully request that the Court transfer this action to the Central District of California pursuant to 28 U.S.C. §§ 1404 or 1406(a).

---

relationship, defendant sent inflated invoices to the company, phoned the company, and induced the company to pay funds from its bank account. As such, the Court determined minimum contacts existed between defendant and the forum. Unlike *Related Companies*, Defendants here conducted negotiations over the course of a few months and did not seek any payments from Liu. *Pension Comm.* is similarly inapplicable because that case involved mailing financial statements to New York. In both cases, defendants were certain of where their communications would be received by plaintiffs because they were directed to physical locations.

[10] Liu alleges that Defendants state the applicable legal burden as "exceptional circumstances." (Opp., p. 20, n.20.) That is incorrect. Defendants cited the applicable five-factor reasonableness test and note that Liu himself could not resist employing the phrase "exceptional situation" to argue reasonableness. (Opening Br., p. 13; Opp., p. 19.)

[11] The venue cases Liu cites are unavailing, because they do not involve plaintiffs that voluntarily moved into the other venue, as contemplated here. *See, e.g.*, *Siegel v. Ford*, No. 16-CV-8077 (JPO), 2017 WL 4119654, at *7 (S.D.N.Y. Sept. 15, 2017) (unpublished case in which the court found venue proper due to fraudulent phone calls comprising claims for common law fraud and unjust enrichment); *New York Mercantile Exch. v. Cent. Tours Int'l, Inc.*, No. 96 CIV. 8988 SAS, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997) (finding venue proper where fraudulent charges involved air travel to, from, or through New York, in addition to food and lodging in New York); *Princeton Pike Park, Inc. v. High-Tec, Inc.*, No. 89 CIV. 6696 (JFK), 1990 WL 96755, at *2 (S.D.N.Y. July 3, 1990) (determining substantial part of claim arose in New York because plaintiff paid over $5 million to defendants there); *Rosenman & Colin LLP v. Sandler*, No. 01 CIV. 7123 (GEL), 2002 WL 83657, at *3 (S.D.N.Y. Jan. 18, 2002) (venue proper where defendant physically negotiated contract in forum state); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 467 (S.D.N.Y. 1999) (venue proper where contract was negotiated in and governed by the laws of New York).

Dated: New York, New York
March 20, 2020

**TROUTMAN SANDERS LLP**

*/s/ Daniel N. Anziska*
Daniel N. Anziska
daniel.anziska@troutman.com
Mackenzie Willow-Johnson (*pro hac vice)*
mackenzie.willow-johnson@troutman.com
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288

*Attorneys for Defendants*