Benjamin Taylor (SBN: 240636)
btaylor@taylorlawfirmpc.com
THE LAW OFFICES OF BENJAMIN TAYLOR
A Professional Corporation
1880 Century Park East, Suite 714
Los Angeles, CA 90067
Telephone:   (310) 201 – 7600
Facsimile:   (310) 201 – 7601

Amiad Kushner (*pro hac vice*)
Akushner@seidenlegal.com
Jake Nachmani (*pro hac vice*)
jnachmani@seidenlegal.com
Seiden Law Group, LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Telephone:   (646) 766 – 1914
Facsimile:   (646) 304 – 5277

*Attorneys for Plaintiff/Counter-Defendant,
Hong Liu*

**UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| HONG LIU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG<br><br>　　　　Defendants.<br><br>FARADAY&FUTURE INC.,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>HONG LIU,<br><br>　　　　Counter-Defendant. | **Case No:** 2:20-cv-08035-SVW-JPR<br><br><br>**DECLARATION OF JAKE NACHMANI IN SUPPORT OF PLAINTIFF HONG LIU'S MOTION TO DISMISS DEFENDANT FARADAY'S FIRST AND FOURTH COUNTERCLAIM AND STRIKE DEFENDANT FARADAY'S AND DEFENDANT SMART KING'S SECOND AFFIRMATIVE DEFENSE** |

I, Jake Nachmani, declare as follows:

1. I am a Senior Associate at the law firm Seiden Law Group LLP, which is counsel of record for Plaintiff/Counter-Defendant Hong Liu ("Plaintiff" or "Liu") in the above-captioned matter. I am admitted to practice before the courts of the State of New York, and I am admitted *pro hac vice* in this matter.

2. I make this declaration in support of Plaintiff's Motion to Dismiss Defendant Faraday & Future Inc.'s ("Faraday") first and fourth counterclaim and Plaintiff's Motion to Strike Defendant Faraday's and Defendant Smart King Ltd.'s ("Smart King") Second Affirmative Defense.

3. I make this declaration based on my own personal knowledge, and, if called upon to do so, could and would testify competently thereto.

4. This motion is made following the conference of counsel for Plaintiff and Faraday, pursuant to L.R. 7-3, which took place on December 3, 4 and 7, 2020.

5. Attached as Exhibit 1 is a true and correct copy of the following document:

Exhibit 1:   A chart that compares the allegations set forth in Faraday's Answer (ECF 68) to the allegations set forth in Faraday's Counterclaim (ECF 72).

I declare under penalty of perjury that the foregoing is, to the best of my knowledge and belief, true and correct.

Executed on the 10th day of December 2020, at New York, NY.

/s/ Jake Nachmani
Jake Nachmani

# EXHIBIT 1

| **Allegations from the Complaint** | **Allegations from Faraday's Answer** | **Contradictory Allegations from Faraday's Counterclaim** |
|---|---|---|
| "Between 1995 and 2000, Mr. Liu served as General Counsel and Director-General of the China Securities Regulatory Commission ("CSRC"), the national securities regulator in the PRC. At the CSRC, Mr. Liu played a prominent role in reforming the PRC securities industry, including leading a CSRC team that drafted and enacted the PRC's first securities law in 1998." ¶18. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 and on that ground, denies those allegations." Answer ¶18. | "Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules. He represented that he led the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council." CC ¶7. |
| "Mr. Liu is recognized globally for his significant contributions to the development of securities and financial markets in the PRC. In 1998 and 1999, *BusinessWeek* twice honored Mr. Liu with its 'Stars of Asia' awards. In 1999, the World Economic Forum in Davos honored Mr. Liu with a 'Global Leader for Tomorrow' award." ¶19. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and on that ground, denies those allegations." Answer ¶19. | "Liu submitted to FF a curriculum vitae and press release (the 'CV'), extolling his lengthy history as a claimed financial expert and attorney." CC ¶8. |
| "In the early 2000s, Mr. Liu served as a managing director of investment banking at the New York based Donaldson, Lufkin & Jenrette (DLJ) which was later merged into Credit Suisse First Boston (CSFB), dividing his time between New York and Hong Kong." ¶20. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and on that ground, denies those allegations." Answer ¶20. | "Liu's CV also heralded his investment banking background, which consisted of serving as managing director at two large investment banks. Liu boasted of playing 'an important role in a variety of China- and Asia-related M&A and other financing |

1

| | | |
|---|---|---|
| | | business transactions.'" CC ¶11. |
| "Between 2005 and April 2014, Mr. Liu served in senior positions in the New York offices of global law firms, including as a partner with Nixon Peabody LLP, DLA Piper LLP, and Pillsbury Winthrop Shaw Pittman LLP." ¶21 | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and on that ground, denies those allegations." Answer ¶21. | "The CV described various roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ('Mayer'). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." CC ¶10. |
| "Between April 2014 and February 2018, Mr. Liu was an equity partner at Mayer Brown LLP in its New York office." ¶22. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 and on that ground, denies those allegations." Answer ¶22. | "The CV described various roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ('Mayer'). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." CC ¶10. |

| | | |
|---|---|---|
| "At Mayer Brown, Mr. Liu developed one of the most active and successful China and Asia-related practices in the United States, representing many of the most prominent PRC financial institutions in significant transactions. Mr. Liu's client base included numerous financial giants in the PRC, as well as leading companies in a wide range of industries in the PRC including transportation, infrastructure, manufacturing, insurance, and private equity." ¶23. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and on that ground, denies those allegations." Answer ¶23. | "Liu's CV listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters." CC ¶9. <br><br> "The CV described various roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ('Mayer'). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting |

3

|  |  | Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." CC ¶10.<br><br>"Liu affirmed that he could fill all of those roles and possessed the requisite experience to do so. Liu further represented that the areas Jia listed were his areas of expertise." CC ¶13.<br><br>"Liu represented to FF that he also had extensive connections in both the U.S. and China and could provide tremendous assistance to FF's development. Liu described his investment banking background, having worked as a managing director of two U.S. investment banks to support his ability to provide such assistance." CC ¶14.<br><br>"After less than a year, it was readily apparent that Liu had materially misrepresented his expertise and capabilities. He was unable to perform in almost every area of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO." CC ¶24. |

| | | |
|---|---|---|
| | | "When Liu made himself available to discuss FF's financial circumstances with other executives, he often asked rudimentary questions that demonstrated his lack of understanding of financing, fundraising, and capital markets. Moreover, Liu was unable to provide recommendations, advice, or direction for equity financing." CC ¶26.<br><br>"Liu not only failed to provide any plans for debt or equity financing, he also failed to provide any contacts for investment banks or advisors who could assist. This was in spite of his prior claims during the interview process that he had high-level contacts at leading investment advisor firms Blackstone and Goldman Sachs, yet no one from those firms was ever introduced to FF. Liu provided no meaningful contacts or advice regarding restructuring or raising capital. Rather, he deflected all of his responsibilities and removed himself from decision making during some of FF's most critical points throughout the duration of his employment." CC ¶27.<br><br>"Despite Liu's representations that he had vast experience with the IPO process and that he could quickly lead FF to an IPO, Liu did nothing to assist FF on that front. Liu failed to |

| | | |
|---|---|---|
| | | identify any specific steps that FF should take or that he would assist with to get FF to an IPO, despite Jia's repeated requests."  CC ¶28.<br><br>"Liu had also promised to help with FF's on-going litigation, as would be expected of general counsel, yet failed to do that as well."  CC ¶29; *see also* CC ¶¶30-44. |
| "In 2015, Mr. Liu was named to *The National Law Journal's* list of 'Regulatory & Compliance Trailblazers,' which recognizes individuals who have 'made a difference navigating the ever-changing mandates of regulatory and compliance.'"  ¶24 | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and on that ground, denies those allegations."  Answer ¶24. | "Liu's CV listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology.  He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters."  CC ¶9. |

6

| | | |
|---|---|---|
| | | "The CV described various roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ('Mayer'). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions."  CC ¶10.<br><br>"After less than a year, it was readily apparent that Liu had materially misrepresented his expertise and capabilities. He was unable to perform in almost every area of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO."  CC ¶24.<br><br>"When Liu made himself available to discuss FF's financial circumstances with other executives, he often asked rudimentary questions that demonstrated his lack of understanding of financing, fundraising, and capital markets. Moreover, Liu was unable to provide recommendations, advice, or |

| | | |
|---|---|---|
| | | direction for equity financing." CC ¶26. "Liu not only failed to provide any plans for debt or equity financing, he also failed to provide any contacts for investment banks or advisors who could assist. This was in spite of his prior claims during the interview process that he had high-level contacts at leading investment advisor firms Blackstone and Goldman Sachs, yet no one from those firms was ever introduced to FF. Liu provided no meaningful contacts or advice regarding restructuring or raising capital. Rather, he deflected all of his responsibilities and removed himself from decision making during some of FF's most critical points throughout the duration of his employment." CC ¶27. |
| "Within Mayer Brown, Mr. Liu's practice was recognized for its high profile clients, large deal sizes, continuing and repeat business, and optimal realization rates. In each year of his tenure at Mayer Brown, Mr. Liu was promoted within the firm's equity partnership, rising to senior partner. In 2017, Mr. Liu's compensation at Mayer Brown was approximately $1.35 million." ¶25. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 and on that ground, denies those allegations." Answer ¶25. | "The CV described various roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ('Mayer'). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." CC ¶10. |

8

| | | |
|---|---|---|
| | | "Liu affirmed that he could fill all of those roles and possessed the requisite experience to do so. Liu further represented that the areas Jia listed were his areas of expertise." CC ¶13.<br><br>"Liu represented to FF that he also had extensive connections in both the U.S. and China and could provide tremendous assistance to FF's development. Liu described his investment banking background, having worked as a managing director of two U.S. investment banks to support his ability to provide such assistance." CC ¶14.<br><br>"After less than a year, it was readily apparent that Liu had materially misrepresented his expertise and capabilities. He was unable to perform in almost every area of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO." CC ¶24.<br><br>"When Liu made himself available to discuss FF's financial circumstances with other executives, he often asked rudimentary questions that demonstrated his lack of understanding of financing, fundraising, and capital markets. Moreover, Liu was unable to provide |

| | | |
|---|---|---|
| | | recommendations, advice, or direction for equity financing." CC ¶26.

"Liu not only failed to provide any plans for debt or equity financing, he also failed to provide any contacts for investment banks or advisors who could assist. This was in spite of his prior claims during the interview process that he had high-level contacts at leading investment advisor firms Blackstone and Goldman Sachs, yet no one from those firms was ever introduced to FF. Liu provided no meaningful contacts or advice regarding restructuring or raising capital. Rather, he deflected all of his responsibilities and removed himself from decision making during some of FF's most critical points throughout the duration of his employment." CC ¶27.

"Despite Liu's representations that he had vast experience with the IPO process and that he could quickly lead FF to an IPO, Liu did nothing to assist FF on that front. Liu failed to identify any specific steps that FF should take or that he would assist with to get FF to an IPO, despite Jia's repeated requests." CC ¶28.

"Liu had also promised to help with FF's on-going litigation, as would be expected of general counsel, |

| | | |
|---|---|---|
| | | yet failed to do that as well." CC ¶29; *see also* CC ¶¶30-44 |
| "On February 12, 2018, just prior to Mr. Liu's departure from Mayer Brown, the firm issued a firm-wide announcement, stating in relevant part: 'Under Henry's leadership, the Firm had developed important new relationships with some of the largest financial institutions and private equity players in China . . . Henry's wide-ranging experience has included banking and finance, M&A, investments and transactions, and regulatory and disputes. He has extensive experience representing Asia and Greater China-based companies conducting business in the United States and throughout the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. Henry also has advised U.S. and non-U.S. companies doing business in Asia and Greater China, including in areas such as market access, direct investment, public and private funds, capital markets, technology transfers and regulatory matters.'" ¶26. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and on that ground, denies those allegations." Answer ¶26. | "Liu's CV listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters." CC ¶9.<br><br>"The CV described various roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ('Mayer'). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and |

11

| | | |
|---|---|---|
| | | touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." CC ¶10.<br><br>"Liu affirmed that he could fill all of those roles and possessed the requisite experience to do so. Liu further represented that the areas Jia listed were his areas of expertise." CC ¶13.<br><br>"Liu represented to FF that he also had extensive connections in both the U.S. and China and could provide tremendous assistance to FF's development. Liu described his investment banking background, having worked as a managing director of two U.S. investment banks to support his ability to provide such assistance." CC ¶14.<br><br>"After less than a year, it was readily apparent that Liu had materially misrepresented his expertise and capabilities. He was unable to perform in almost every area of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO." CC ¶24. |

12

| | | |
|---|---|---|
| | | "When Liu made himself available to discuss FF's financial circumstances with other executives, he often asked rudimentary questions that demonstrated his lack of understanding of financing, fundraising, and capital markets.  Moreover, Liu was unable to provide recommendations, advice, or direction for equity financing."  CC ¶26.<br><br>"Liu not only failed to provide any plans for debt or equity financing, he also failed to provide any contacts for investment banks or advisors who could assist.  This was in spite of his prior claims during the interview process that he had high-level contacts at leading investment advisor firms Blackstone and Goldman Sachs, yet no one from those firms was ever introduced to FF.  Liu provided no meaningful contacts or advice regarding restructuring or raising capital.  Rather, he deflected all of his responsibilities and removed himself from decision making during some of FF's most critical points throughout the duration of his employment."  CC ¶27.<br><br>"Despite Liu's representations that he had vast experience with the IPO process and that he could quickly lead FF to an IPO, Liu did nothing to assist FF on that front.  Liu failed to |

| | | |
|---|---|---|
| | | identify any specific steps that FF should take or that he would assist with to get FF to an IPO, despite Jia's repeated requests." CC ¶28.<br><br>"Liu had also promised to help with FF's on-going litigation, as would be expected of general counsel, yet failed to do that as well." CC ¶29; *see also* CC ¶¶30-44 |

# CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsel of record.

Dated: December 10, 2020  /s/ Benjamin Taylor
   Benjamin Taylor