LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile:  949.622.2739

DANIEL N. ANZISKA, *Pro Hac Vice*
daniel.anziska@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: 212.704.6000
Facsimile:  212.704.6288

MACKENZIE L. WILLOW-JOHNSON, *Pro Hac Vice*
mackenzie.willow-johnson@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
305 Church at North Hills Street, Suite 1200
Raleigh, NC 27609
Telephone: 919.740.9949
Facsimile:  704.998.4051

Attorneys for Defendants SMART KING LTD., JIAWEI WANG, and CHAOYING DENG and Defendant and Counterclaimant FARADAY&FUTURE INC.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,<br><br>Defendants.<br><br>———————————<br><br>AND RELATED COUNTERCLAIM. | Case No.  2:20-cv- 08035-SVW-JPR<br><br>Honorable Stephen V. Wilson<br><br>**FARADAY&FUTURE INC.'S OPPOSITION TO HONG LIU'S MOTION TO DISMISS FIRST AND FOURTH COUNTERCLAIM AND FARADAY&FUTURE INC. AND SMART KING, LTD.'S OPPOSITION TO MOTION TO STRIKE SECOND AFFIRMATIVE DEFENSE**<br><br>Date:     February 8, 2021<br>Time:     1:30 p.m.<br>Place:    Courtroom 10A |

111924743

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS .................................................................. 2

III.   LEGAL STANDARD ........................................................................ 4

IV.    FF HAS PLED THE REQUISITE WHO, WHAT, WHERE, WHEN, AND HOW OF LIU'S FRAUDULENT INDUCEMENT ....................... 5

       A.    "What": The Difference Between Liu's Misrepresented & Actual Capabilities ............................................................ 6

       B.    When: During the Interview Process ................................. 9

       C.    How: By Hiring Him Based on His Misrepresented Capabilities ...... 11

             1.    FF's Detailed allegations of Liu's Misrepresentations of His Capabilities Negates Dismissal ........................... 11

             2.    Liu's Misrepresentations Were Not Promises of Future Performance ........................................................... 13

V.     FF'S FRAUD AND RESCISSION CLAIMS ARE PLAUSIBLE & CONSISTENT WITH ITS ANSWER ............................................... 14

       A.    Liu's Unverified Pleadings are Not Evidence and Should Not be Considered ................................................ 15

       B.    Liu Mischaracterizes FF's Answer to His Allegations ....................... 17

       C.    FF's Allegations Meet Rule 9's General Pleading Standard for Fraudulent Intent ....................................... 18

VI.    FF'S COUNTERCLAIM FOR RESCISSION STANDS ........................... 22

VII.   FF'S AFFIRMATIVE DEFENSE OF FRAUDULENT INDUCEMENT STANDS AND DENIAL OF LIU'S MOTION TO STRIKE IS PROPER ........................................................ 22

VIII.  ARGUMENTS GUISED AS THE NACHMANI DECLARATION FLOUT THE LOCAL RULES REGARDING DECLARATIONS AND PAGE LIMITS AND SHOULD NOT BE CONSIDERED ............... 24

IX.    CONCLUSION ............................................................. 24

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Gen. Life Ins. Co. v. Wright*,
   No. 08-7750 PA, 2009 WL 10675992 (C.D. Cal. July 2, 2009) ........................ 22

*Anthony v. Iron Mountain, Inc.*,
   No. CV 20-05932-AB, 2020 WL 5793449 (C.D. Cal. Sept. 25,
   2020) ............................................................................................................. 16

*Apex Compounding Pharmacy, LLC v. eFax Corp.*,
   No. LA CV16–05165 ...................................................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 4, 24

*Bonilla v. Nationstar Mortg., LLC*,
   No. EDCV1701785JGBKKX, 2018 WL 5116243 (C.D. Cal. Jan. 4,
   2018) ............................................................................................................. 16

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir.1997) .......................................................................... 18

*Copart, Inc. v. Sparta Consulting, Inc.*,
   No. 214–CV–00046–KJM–CKD, 2015 WL 3622618 (E.D. Cal.
   June 9, 2015).......................................................................................... 2, 12

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) .......................................................................... 11

*Deutsch-Hollandische Tabakgesellschaft Mbh & Co., Kg v.
   Trendsettah USA, Inc.*,
   No. SACV170181DOCJCGX, 2017 WL 7080262 (C.D. Cal. June
   16, 2017)........................................................................................................ 22

*Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*,
   No. 219CV10309ODWGJSX, 2020 WL 6939887 (C.D. Cal. Nov.
   25, 2020)........................................................................................................ 11

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*,
No. CV 14-00609 DDP SSX, 2014 WL 4187979 (C.D. Cal. Aug.
22, 2014) ................................................................................................... 23

*Giron v. Wells Fargo Bank, N.A.*,
No. 214CV02437ODWVBKX, 2014 WL 12589628 (C.D. Cal.
May 27, 2014) ........................................................................................... 10

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ...................................................................... 6

*Grand Fabrics Int'l Ltd. v. Melrose Textile, Inc.*,
No. 18-748 DSF, 2018 WL 6112619 (C.D. Cal. May 14, 2018) ............... 19

*Heber v. Toyota Motor Sales U.S.A., Inc.*,
No. SACV1601525AGJCGX, 2017 WL 5642312 (C.D. Cal. Sept.
20, 2017) ................................................................................................... 18

*Hernandez v. Select Portfolio, Inc.*,
No. CV 15-01896 MMM .......................................................................... 18

*Hsu v. UBS Fin. Servs. Inc.*,
507 F. App'x 716 (9th Cir. 2013) ............................................................... 6

*Ingram v. Los Angeles Unified Sch. Dist.*,
No. 19-55810, 2020 WL 7776924 (9th Cir. Dec. 31, 2020) ...................... 4

*Izsak v. Wells Fargo Bank, N.A.*,
No. C 13-05362 SI, 2014 U.S. Dist. LEXIS 52057 (N.D. Cal. Apr.
14, 2014) ..................................................................................................... 9

*Kanarowski v. Bruker Nano, Inc.*,
No. CV 18-6323-GW(AFMX), 2019 WL 3249601 (C.D. Cal. Apr.
18, 2019) ............................................................................................. 13, 14

*Kontrick v. Ryan*,
540 U.S. 443 (2004) ................................................................................. 25

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

3
4
5

*Kulesa v. PC Cleaner, Inc.*,
   No. SACV12725JVSANX, 2012 WL 12886844 (C.D. Cal. Oct. 12,
   2012) ......................................................................................................... 9

6

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .................................................................. 5

7
8

*Lovejoy v. AT&T Corp.*,
   92 Cal. App. 4th 85 (2001) ..................................................................... 19

9
10

*Manlin v. Ocwen Loan Servicing, LLC*,
   No. CV 16-06625-AB, 2017 WL 8180779 (C.D. Cal. Dec. 7, 2017) ...... 21

11
12
13

*Mazal Grp., LLC v. Espana*,
   No. 217CV05856RSWLKS, 2017 WL 6001721 (C.D. Cal. Dec. 4,
   2017) ......................................................................................................... 5

14

*Miller v. City & Cnty. of San Francisco*,
   187 Cal. App. 2d 480 (1996) ................................................................... 13

15
16
17

*MJC Am., Ltd. v. Gree Electric Appliances, Inc. of Zhuhai*,
   No. CV1304264SJOCWX, 2014 WL 12597149 (C.D. Cal. Aug. 13,
   2014) ....................................................................................................... 18

18
19

*In re Mortg. Elec. Registration Sys., Inc.*,
   754 F.3d 772 (9th Cir. 2014) .................................................................. 15

20
21

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ...................................................................... 10

22
23

*Oas v. Rama Capital Partners, LLC et al.*,
   No. 820CV01634MCSADS, 2020 WL 7786546 (C.D. Cal. Nov.
   18, 2020) ................................................................................................... 5

24
25

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................... 16

26
27

*Patel v. Parnes*,
   253 F.R.D. 531 (C.D. Cal. 2008) .............................................................. 6

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*R Power Biofuels, LLC v. Chemex LLC*,
  No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11,
  2016) .................................................................................................... 11

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .............................................................. 13

*RePET, Inc. v. Zhao*,
  No. EDCV152315VAPSPX, 2016 WL 11634745 (C.D. Cal. Sept.
  2, 2016) ................................................................................................ 17

*Richard P. v. Vista Del Mar Child Care Serv.*,
  106 Cal. App. 3d 860 (Cal. Ct. App. 1980) ........................................ 14

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ............................................................ 10

*Sanchez v. Aurora Loan Servs., LLC*,
  NO. CV 13-08846 MMM, 2014 WL 12589660 (C.D. Cal. June 10,
  2014) .................................................................................................... 21

*Stadco Acq. LLC v. Aerospace Holdings Inc.*,
  No. CV–16–942–MWF–AGR, 2016 WL 9343762 (C.D. Cal. Sept.
  21, 2016) .............................................................................................. 21

*StreamCast Networks, Inc. v. IBIS LLC*,
  No. CV 05-04239, 2006 U.S. Dist. LEXIS 97607 (C.D. Cal. May 1,
  2006) ............................................................................................... 19, 20

*Surabhi v. Miller*,
  No. 15CV1830-WQH-MDD, 2016 WL 4442814 (S.D. Cal. Aug.
  19, 2016) ....................................................................................... 2, 11, 13

*Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
  No. SA CV10-01172 JAK, 2012 WL 5447959 (C.D. Cal. Oct. 4,
  2012) .................................................................................................... 19

*Tenzer v. Superscope, Inc.*,
  39 Cal. 3d 18 (1985) ........................................................................... 19

TROUTMAN PEPPER HAMILTON SANDERS LLP<br>5 PARK PLAZA<br>SUITE 1400<br>IRVINE, CA 92614-2545

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. June 22, 2015) ............................................... 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................................ 5, 13

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ..................................................................... 9

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ............................................................................... 22

## Other Authorities

Fed. R. Civ. P. 8 .......................................................................................................... 23

Fed. R. Civ. P. 8(a)-(c) ............................................................................................... 23

Fed. R. Civ. P. 9 ..................................................................................... 9, 15, 18, 22

Fed. R. Civ. P. 9(b) ............................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 4, 15, 22

Fed. R. Civ. P. 12(f) ................................................................................................... 22

Fed. R. Civ. P. 56(c)(4) .............................................................................................. 24

Local Rule 7-7 ............................................................................................................ 24

Local Rule 11-6 .......................................................................................................... 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

I.    **INTRODUCTION**

Plaintiff Hong "Henry" Liu ("Liu") fraudulently induced innovative electric vehicle startup company, Faraday&Future Inc. ("FF"), to enter into lucrative employment agreements with him.  Liu's numerous misrepresentations—all made knowing that he could not and would not perform—are described in great detail in FF's Counterclaim ("Counterclaim"), which plausibly pleads claims for fraud and rescission.

Liu's challenges to FF's fraud and rescission claims (and fraud affirmative defenses of FF and its parent company, Smart King Ltd. ("Smart King")) are not founded in law or fact.  Consistent with prior briefing, Liu substitutes rhetoric for analysis, ignores binding precedent, and mischaracterizes other precedent and non-binding authority in an attempt to justify dismissal of FF's fraud and rescission claims and strike FF's and Smart King fraud affirmative defenses.  (ECF 72.)  In doing so, Liu improperly relies on his own unproven and unverified pleadings.  He also premises much of his argument on a purported conflict between FF's fraud claim (alleging fraudulent inducement based on the difference between Liu's claimed capabilities during the hiring process and the lack thereof once hired) and FF's Answer to Liu's Complaint ("Answer") (denying knowledge of the veracity of Liu's braggadocios accolades and purported opinions of others regarding his skills). (ECF 68; ECF 74-2, Ex. 1).  But Liu's reliance on his own representations, which FF never denies that he made, and the alleged opinions of others does not render them fact for the purposes of supporting his Motion to Dismiss FF's First and Fourth Counterclaim and Strike FF's and Smart King's Second Affirmative Defense ("Motion").  (ECF 74.)

The Counterclaim lays out the required "who, what, when, where, and how" details with the kind and volume of particularized facts sufficient to put Liu on notice of his misconduct and enable him to defend himself—the very purpose of

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Rule 9(b)'s particularity requirement.  (*See, e.g.*, Countercl. at 2:5-12, 7:8-10:23, 11:1-22.)  As alleged, Liu misrepresented his capability to perform the duties commensurate with the high-ranking roles of Global General Counsel, Global Chief Administrative Officer, Global Senior Advisor, and Senior Board Member.  (*Id.* at 7:8-10:23.)  Such misrepresentations are undoubtedly a proper basis for a fraudulent inducement claim.  *See, e.g., Surabhi v. Miller*, No. 15CV1830-WQH-MDD, 2016 WL 4442814, at *2 (S.D. Cal. Aug. 19, 2016); *Copart, Inc. v. Sparta Consulting, Inc.*, No. 214–CV–00046–KJM–CKD, 2015 WL 3622618 (E.D. Cal. June 9, 2015).  FF relied on these misrepresentations during the interview process in hiring him and, within a year, realized it had been deceived into hiring an expensive high-level executive who never intended to perform—because he *could not* perform: Liu shirked responsibility at every turn and, *if* he decided to grace a meeting with his presence, he posed rudimentary questions exposing his inadequacies.  (*Id.*)  Thus, as set forth below, FF has provided sufficient detail to state its claim for fraudulent inducement such that Liu's Motion is properly denied.

## II.   STATEMENT OF FACTS

FF is an innovative California-based electric vehicle start-up company founded by Yueting Jia ("Jia") in April 2014.  (Countercl. at 3:14-15.)  At the end of 2017, Jia became FF's Chief Executive Officer (CEO).  In November 2017, FF's efforts to develop its flagship vehicle, the FF 91 took off with an investment made by Evergrande Health Industry Group Ltd. ("Evergrande") in FF's indirect parent company.  (*Id.* at 3:16-25.)  With the Evergrande funding, FF's business was up and running, and Jia sought to hire a Global Chief Administrative Officer and General Counsel with the financial experience and legal expertise necessary to guide FF toward financial stability and an IPO.  (*Id.* at 3:27-4:2.)

Liu came recommended for that role by a company acquaintance who described him as a "top notch" capital fundraiser and attorney.  (*Id.* at 4:3-5.)  In interviewing for the role, Liu met with FF's then president, Jiawei "Jerry" Wang

("Wang") and Jia.  (*Id.* at 4:6-7.)  During this meeting, Liu represented that he could be FF's Global Chief Administrative Officer and General Counsel and could guide FF toward financial stability and an IPO.  (*Id.* at 4:7-8.)

Liu made detailed representations about his prior experience and how that experience correlated with his purported ability to perform as FF's Global Chief Administrative Officer and General Counsel.  Liu represented that he was intimately familiar with China's securities regulations and market rules, representing that he had previously served as General Counsel and Director-General of the China Securities Regulatory Commission and, in that role, was the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules, and having served as a key member of the stock issuance examination board.  (*Id.* at 4:9-15.)  Liu also expressly represented that his areas of expertise span:

> banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China.  [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology.  He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters.

(*Id.* at 4:16-26.)  Liu also boasted (and continues to boast) about his experience in working at large law firms, including Mayer Brown, LLP ("Mayer"), touting that he was "instrumental in connecting" Mayer's offices internationally and had represented clients in all major categories of transactions.  (*Id.* at 4:27-5:5.)  Liu further heralded his investment banking background, claiming vast M&A and other financing business transaction experience.  (*Id.* at 5:6-9.)  Liu represented that he could use his purported vast connections in the U.S. and China to develop FF and

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

connect it with investment banks who could provide FF financing. (*Id.* at 5:26-6:2.)

Relying on Liu's representations as to his ability and willingness to perform, FF hired Liu as FF's Global Chief Administrative Officer, Global General Counsel, and Global Senior Advisor, and Senior Board Member of FF's indirect parent company. (*Id.* at 6:12-15.) FF entered an Employment Agreement and Director Compensation Agreement with Liu, which Liu drafted. (*Id.* at 6:3-8.) In exchange for his performance, Liu was to be paid handsomely under those agreements. (*Id.* at 6:21-7:2.) And those agreements expressly stated that Liu's "duties and responsibilities" in his roles at FF "shall be commensurate with such positions…." (*Id.* at 6:19-20.)

Less than a year after Liu was hired, it was readily apparent that Liu could not and would not perform even basic tasks. (*Id.* at 7:9-13.) Liu did nothing to lead FF to an IPO, did not connect FF with a single investment bank, could not advise on litigation matters, could not advise on financial matters, refused to do anything when Evergrande backed out of its investment, and generally refused to perform any of the financial or legal tasks that he committed to preforming. (*Id.* at 8:4-9:33.) Liu did nothing. (*Id.* at 9:24-25.) He had conned FF into hiring him, knowing full well that he could never and would never perform what he was hired to do. (*Id.* at 11:10-16.) Had FF known this, it would have never hired him. (*Id.* at 11:17-18.)

### III.   LEGAL STANDARD

To withstand a motion under Federal Rule of Civil Procedure 12(b)(6), a claimant need only allege facts that add up to "more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, a court must "accept as true the complaint's factual allegations, and [] construe those allegations in the light most favorable to the [claimant]." *Ingram v. Los Angeles Unified Sch. Dist.*, No. 19-55810, 2020 WL 7776924, at *4 (9th Cir. Dec. 31, 2020). Should the Court decide that any claim is

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

not sufficiently pleaded, leave to amend should be granted—even if no request is made—unless the Court "determines that the pleading could not possibly be cured by allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted).

To state a claim of fraudulent inducement, a claimant must allege: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Mazal Grp., LLC v. Espana*, No. 217CV05856RSWLKS, 2017 WL 6001721, at *5 (C.D. Cal. Dec. 4, 2017). According to Rule 9(b), "when averments of fraud are made, the circumstances constituting the alleged fraud 'be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly–Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). This includes "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 217 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (superseded by statute on other grounds)). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Oas v. Rama Capital Partners, LLC et al.*, No. 820CV01634MCSADS, 2020 WL 7786546, at *5 (C.D. Cal. Nov. 18, 2020) (denying motion to dismiss fraud claim).

## IV. FF HAS PLED THE REQUISITE *WHO*, *WHAT*, *WHERE*, *WHEN*, AND *HOW* OF LIU'S FRAUDULENT INDUCEMENT

From the outset, FF's Counterclaim puts Liu on notice of the "who, what, when, where and how" of his fraudulent misconduct. (*See, e.g.*, Countercl. at 2:5-12.) Liu does not contest that FF has inadequately pleaded "who" made and received his fraudulent misrepresentations or "where" they were made. Rather, Liu's asserts that FF fails to meet the "what," "when," and "how." However, FF's detailed allegations put Liu on more than sufficient notice of what he did that was

fraudulent, when he committed it, and how it was committed.

**A.** **"What": The Difference Between Liu's Misrepresented & Actual Capabilities**

Under Federal Rule of Civil Procedure 9(b), a pleading "must set forth what is false or misleading about a statement, and why it is false." *Hsu v. UBS Fin. Servs. Inc.*, 507 F. App'x 716, 717 (9th Cir. 2013).

Contrary to Liu's assertions, FF's in-depth examples of Liu's misrepresentations is by no means a "puzzle pleading." The Ninth Circuit has applied the term puzzle pleadings where voluminous pleadings (73 or 113 pages long), lacked organization and failed to provide any reasons for falsity. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994) (113 pages long), superseded on other grounds by statute. *See also Patel v. Parnes*, 253 F.R.D. 531, 551 (C.D. Cal. 2008) (finding puzzle pleading where Court had to "wade through" 73 pages of allegations that failed to connect allegations of falsity to specific statements). But FF's Counterclaim provides specific headings under which it provides numerous explanations as to what Liu did to fraudulently induce FF to hire him.

FF specifically alleges that Liu's representations regarding his capabilities, skills, and experience were false. The misrepresentations include both written and verbal communications based on Liu's curriculum vitae and meetings during the hiring process, providing content concerning the specific matter of Liu's purported qualifications and capabilities. The below table ("Table 1") compares the difference between what Liu represented as his capabilities and what he instead delivered, as alleged in FF's Counterclaim:

| Liu's Representations Regarding His Skills, Capabilities, and Experience | Liu's Performance, Undercutting the Veracity of His Representations |
|---|---|
| Liu's CV listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and | "**After less than a year, it was readily apparent that Liu had materially misrepresented his expertise and capabilities.** He was unable to |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

| Liu's Representations Regarding His Skills, Capabilities, and Experience | Liu's Performance, Undercutting the Veracity of His Representations |
|---|---|
| regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology.  He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters.  (Countercl. at 4:18-26.)<br><br>"Liu represented he could be FF's Global Chief Administrative Officer and General Counsel who would guide FF toward financial stability and an IPO."  (*Id.* at 4:6-8.) | perform in almost every area of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO."  (*Id.* at 7:9-13.) |
| "Liu represented he could be FF's Global Chief Administrative Officer and General Counsel who would guide FF toward financial stability and an IPO."  (*Id.* at 4:6-8.)<br><br>Liu claimed to have represented clients in all major categories of transactions."  (*Id.* at 4:27-5:5.) | "When Liu made himself available to discuss FF's financial circumstances with other executives, he often asked rudimentary questions that demonstrated his lack of understanding of financing, fundraising, and capital markets.  Moreover, Liu was unable to provide recommendations, advice, or direction for equity financing."  (*Id.* at 7:18-22.) |
| "Liu represented he could be FF's Global Chief Administrative Officer and General Counsel who would guide FF toward financial stability and an IPO."  (*Id.* at 4:6-8.)<br><br>"Liu claimed to have represented clients in all major categories of transactions."  (*Id.* at 4:27-5:5.)<br><br>"Liu represented to FF that he also had extensive connections in both the U.S. and China and could provide | "Liu not only failed to provide any plans for debt or equity financing, **he also failed to provide any contacts for investment banks or advisors who could assist.  This was in spite of his prior claims during the interview process that he had high-level contacts at leading investment advisor firms Blackstone and Goldman Sachs, yet no one from those firms was ever introduced to FF.**  Liu provided no meaningful contacts or advice regarding |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

| Liu's Representations Regarding His Skills, Capabilities, and Experience | Liu's Performance, Undercutting the Veracity of His Representations |
|---|---|
| tremendous assistance to FF's development.  Liu described his investment banking background, having worked as a managing director of two U.S. investment banks to support his ability to provide such assistance." (*Id.* at 5:26-6:2.) | restructuring or raising capital.  Rather, **he deflected all of his responsibilities and removed himself from decision-making during some of FF's most critical points** throughout the duration of his employment." (*Id.* at 7:23-8:3 (emphasis added).) |
| "Liu represented he could be FF's Global Chief Administrative Officer and General Counsel who would guide FF toward financial stability and an IPO." (*Id.* at 4:6-8.) | "**Despite Liu's representations that he had vast experience with the IPO process and that he could quickly lead FF to an IPO, Liu did nothing to assist FF on that front.** Liu failed to identify any specific steps that FF should take or that he would assist with to get FF to an IPO, despite Jia's repeated requests." (*Id.* at 8:4-7 (emphasis added).) |
| "Liu had also promised to help with FF's on-going litigation, as would be expected of general counsel, yet failed to do that as well . . ." (*Id.* at 8:8-9.) | "For example, Liu was tasked with supervising a lawsuit between FF and EVelozcity, Inc. and FF's former executives.  Yet, when questioned at executive meetings about the lawsuit, **Liu could not provide even basic information about the stage of proceedings or discussions with outside counsel.**  Worse yet, Liu had nothing to contribute regarding the proposed litigation strategy that FF would follow." (*Id.* at 8:10-15.) |
| "**Although Liu had represented to FF during the interview process that he would manage outside counsel** and provide substantive guidance to help manage FF's legal expenditures . . . ." (*Id.* at 8:16-18) | "[H]is failure to provide appropriate guidance forced FF to instead rely on other lawyers within its legal department and pay substantial legal fees to outside counsel." (*Id.* at 8:18-20.) |
| "Liu represented he could be FF's Global Chief Administrative Officer and General Counsel who would guide FF toward financial stability and an IPO." (*Id.* at 4:6-8.) | "Liu also refused to oversee any administrative departments as Chief Administrative Officer, abandoning that role as well, again out of concern for his own personal interests." (*Id.* at 9:16-18.) |
| "Liu represented he could be FF's Global Chief Administrative Officer and General Counsel who would guide FF toward financial stability and an IPO." (*Id.* at 4:6-8.) | "Liu further refused to sign contracts and agreements that required his approval and signature." (*Id.* at 9:19-20.) |
| "Liu's CV listed that his areas of expertise encompass: banking and finance, mergers and | "At no time did Liu express any informed opinions regarding FF's actions and corporate governance. Nor |

| Liu's Representations Regarding His Skills, Capabilities, and Experience | Liu's Performance, Undercutting the Veracity of His Representations |
|---|---|
| acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China.  [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology.  He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters."  (*Id.* at 4:18-26.) | would he have been able to, as demonstrated by his sheer incompetence over the course of the year."  (*Id.* at 9:21-23.) |

Each of these detailed allegations inform Liu as to what he did that was fraudulent, making them a far cry from "puzzle pleadings" and readily meeting Rule 9's heightened pleading requirement.[1]

**B.  When: During the Interview Process**

Liu argues that FF has not cited the year, month, or day on which any of the misrepresentations were made during the interview process.  Federal Rule of Civil Procedure 9(b) is devoid of such a requirement.  *See Izsak v. Wells Fargo Bank,*

_____

[1] Although Liu relies on *Kulesa v. PC Cleaner, Inc.*, No. SACV12725JVSANX, 2012 WL 12886844 (C.D. Cal. Oct. 12, 2012) and *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) for the proposition that a claimant must allege what was "actually said" (Mot. at 15:9, 16:6-8), *Wenger* also acknowledged that "paraphrased portrayals of oral statements may suffice where the statements' content concerns specific matters."  2 F. Supp. 2d at 1247.  In *Kulesa*, the Court dismissed plaintiff's fraud claim where she paraphrased statements that she purportedly saw on defendant's website and its software.  2012 WL 12886844, at *4.  Here, FF has supplied detailed allegations averring the specific content of Liu's misrepresentations, as set forth in Table 1.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

*N.A.*, No. C 13-05362 SI, 2014 U.S. Dist. LEXIS 52057, at *10 (N.D. Cal. Apr. 14, 2014) (plaintiff was not required to plead the "exact date" of alleged misrepresentations to meet Rule 9(b)'s "when" requirement; allegation that statements were made "around June 2011" was sufficient).

Liu relies on *Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013) wherein the Court of Appeals for the Ninth Circuit summarily affirmed dismissal on common-law fraud claims because plaintiff failed to identify when the purported misrepresentations were made. The appellate court did not hold that the specific time or date must be supplied for such claims to survive dismissal. *Id.* at 1133. *Giron v. Wells Fargo Bank, N.A.*, No. 214CV02437ODWVBKX, 2014 WL 12589628, at *6 (C.D. Cal. May 27, 2014) similarly did not grant dismissal for failure to cite a specific date and time. Rather, plaintiff there "lump[ed]" together defendants and failed to allege when they made the purported misrepresentations. *Id.* at *4. As such, these factually inapposite cases do not require FF to cite the specific date or time to meet Rule 9(b)'s heightened standard.

Rather, the purpose of Rule 9(b)'s particularity requirement is to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). It strains credulity for Liu to argue that he is not on notice of when he made the misrepresentations alleged where (i) FF identifies the interviewing process as the relevant time period and Liu's start of employment as February 2018 (Countercl. at 7:14-28, 11:6-8); (ii) Liu's own pleading concedes both that the process lasted no more than four-and-a-half months between October 2017 through mid-February 2018 and also specifies dates on which he met with FF during that process (Compl. ¶ 27); and (iii) FF's Answer admits the dates of these meetings: the meeting between Liu and Jia at FF's headquarters in California on October 17, 2017, and the meetings during the month of January 2018 between Liu and Jia, Mr. Wang, and Chaoying Deng at FF's headquarters in California (Answer

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

¶¶ 27, 31, 37).

Moreover, Liu's reliance on cases dismissing claims where the purported misrepresentations spanned between eight months and eight years are a far cry from the few months alleged to have passed here. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (plaintiffs alleged defendants made misrepresentations over the course of eight years); *Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, No. 219CV10309ODWGJSX, 2020 WL 6939887, at *1 (C.D. Cal. Nov. 25, 2020) (alleging misrepresentations occurred between January 2015 through March 2016); *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *13 (N.D. Cal. Nov. 11, 2016) (averring an eight-month time-frame during which misrepresentations were alleged).

As such, FF's Counterclaim sufficiently identifies the time, Liu's pleading confirms he is on notice of the specific time, and there is no factual dispute regarding the dates of their meetings during the interview process. Rule 9(b)'s particularity standard as to *when* the fraudulent conduct occurred is satisfied.

## C.    How: By Hiring Him Based on His Misrepresented Capabilities

FF's detailed allegations of Liu's misrepresentation of his capabilities adequately explain *how* Liu committed his fraud and FF relied thereon to hire him. Contrary to Liu's allegations, these allegations are not merely promises of future performance, but rather bold misrepresentations of Liu's ability to perform to induce FF to hire him and enter the Employment Agreement and Director Compensation Agreement.

### 1.    FF's Detailed allegations of Liu's Misrepresentations of His Capabilities Negates Dismissal

Liu's misrepresentations of his capabilities to induce FF to hire him are sufficient to negate dismissal. *See, e.g.*, *Surabhi*, 2016 WL 4442814, at *2 (finding defendant's allegations sufficiently stated a claim for fraudulent inducement where he alleged plaintiff represented "he had the expertise and capability" to design a

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

product, held patents to such design in a separate company, and would "'sell' [his] expertise" to defendant's company to aid its manufacture of the product).  *Copart*, 2015 WL 3622618, at *11-13 is instructive on this point.  In *Copart*, the court determined that a party's reliance on the other party's allegations regarding its abilities, experience, staffing, and capabilities, were sufficient to state a claim of fraudulent inducement.  *Id.* at *12.  For example, the plaintiff in *Copart* claimed that, during the bidding period, defendant made several representations, such as that it had the ability to address plaintiff's functionality needs, solutions other consultants did not have, and the ability to design programming and had experts and a team of programmers suitable for the project.  *Id.* at *11.  The Court determined that "[t]he fraud-based allegations identify statements, representations, and promises of [defendant's] capabilities prior to the contract," such that denial of defendant's motion to dismiss that claim was proper.  *Id.* at *13.

Here, FF similarly alleges that Liu misrepresented his capabilities to induce FF to hire him in not one, but three top positions.  (Countercl. at 2:5-8.)  FF puts Liu on notice of these allegations from the outset.  The Counterclaim's leadoff paragraph states: "Liu intentionally misrepresented his credentials, experience, and connections to fraudulently induce FF to hire him in the roles of Global General Counsel, Global Chief Administrative Officer, Global Senior Advisor, and Senior Board Member, and offer him two lucrative employment contracts."  (*Id.*)  FF continues: "Liu represented to FF that he had the experience, skills, business acumen, and the connections necessary to make FF, an innovative electric vehicle start-up company, financially successful and take it to an initial public offering (IPO)."  (*Id.* at 2:9-12.)  Yet, "[a]fter less than a year [of employment], it was readily apparent that Liu had materially misrepresented his expertise and capabilities.  He was unable to perform in almost every area of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    an IPO."  (*Id.* at 7:9-13.)  *See also* Section IV.A, *supra* (Table 1).

2           As demonstrated by Liu's unproven factual allegations in response to FF's

3    allegations.  (Mot. at 12:14-17 (citing Compl. ¶¶ 1, 8, 20-26).)  FF's fraudulent

4    inducement allegations are more than sufficient to "give [Liu] notice of the

5    particular misconduct… so that [he] can defend against the charge and not just deny

6    that [he has] done anything wrong."  *Vess*, 217 F.3d at 1106.  In other words, the

7    Counterclaim tells Liu *how* he committed the fraud.

8                  2.     Liu's Misrepresentations Were Not Promises of Future

9                         Performance

10          Liu cannot characterize the lies he told to fraudulently induce FF to hire him

11   as "[r]epresentations as to expectations and predictions as to future results or

12   events."  (*See contra* Mot. at 17:4-11.)  Again, Liu's statements were not promises

13   of future performance, but false promises as to his "skills, business acumen, and the

14   connections necessary for the roles he obtained with FF," that Liu used to

15   fraudulently induce FF to hire him and agree to the lucrative Employment

16   Agreement.  (Countercl. at 2:9-12.)  Regardless, Liu misstates the law when he

17   asserts that "[u]nder California [l]aw, 'a mere promise of future performance … is

18   not actionable [as fraud].'"  (Mot. at 17:2-3 (quoting *Miller v. City & Cnty. of San*

19   *Francisco*, 187 Cal. App. 2d 480, 483 (1996)).)  In full context, *Miller* states: "the

20   statement is a mere promise of a future performance of an act.  Such a promise is

21   not actionable **unless, when defendants made it, they had no intention to**

22   **perform it**."  187 Cal. App. 2d at 483-83 (emphasis added to reflect critical part of

23   quote omitted).[2]  Thus, even if Liu's misrepresentations were mere promises of a

24   _____

25   [2] Liu also relies on *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 692 (9th
     Cir. 2011) and *Kanarowski v. Bruker Nano, Inc.*, No. CV 18-6323-GW(AFMX),
26   2019 WL 3249601, at *1 (C.D. Cal. Apr. 18, 2019) in an attempt to support his
     argument that fraud claims cannot be premised on promises of future performance
27   or events occurring after execution of a document.  However, the court in *Reese*
     acknowledged that "misrepresentation[s] of present-existing fact" at the time of

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

future performance of an act, they are still actionable fraud in that he knew he could not perform because he did not possess the ability to perform—*i.e.* he had no intent to perform and his promises to do so were made without regard for the truth.  (*See* Countercl. at 11:10-11.)  *See also* Section V.C., *infra* (further discussing Liu's fraudulent intent).

## V.      FF'S FRAUD AND RESCISSION CLAIMS ARE PLAUSIBLE & CONSISTENT WITH ITS ANSWER

FF enumerates over twenty paragraphs of disconnects between Liu's purported expertise and actual performance (*see, e.g.*, Countercl. at 7:1-10:19), surpassing the general and plausibility pleading standards that the Ninth Circuit applies to fraud claims (*see* Fed. R. Civ. P. 9(b)).  None of Liu's arguments against the plausibility of FF's pleadings have merit.  As an initial matter, Liu asserts, without explanation, that FF failed to state the elements of justifiable reliance or resulting damages.  (Mot. at 15:10-12.)  This is not so.  (*See, e.g.*, Countercl. at 5:10-25, 6:3-5, 11:15-16, 11:19-22.)  As detailed below, the unproven allegations in Liu's Complaint also cannot defeat FF's well-pled allegations.  Liu's argument that FF's Answer to certain allegations in Liu's Complaint contradicts FF's fraud allegations also falls flat.  And Liu applies the wrong standard to FF's allegations of Liu's fraudulent intent, ignoring his own case law, which explains that fraudulent intent only needs to be pled generally and not plausibly.

---

entering an agreement are properly alleged misrepresentations.  *Id.* (citing *In re MobileMedia Secs. Litig.*, 28 F.Supp.2d 901, 939 (D.N.J. 1998)).  Similarly, FF alleges the misrepresentation was as to Liu's capabilities at the time of contracting.  *Cf. Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 865 (Cal. Ct. App. 1980) ("Fraudulent representations, to constitute ground for relief, must be as to existing and material facts . . . ."  For the same reasons, this is not a mere failure to "honor a contractual obligation."  (*Contra* Mot. at 12:22 (citing *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-CV-07166-MRP, 2012 WL 10731957, at *7 (C.D. Cal. June 29, 2012).)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

2

A.      **Liu's Unverified Pleadings are Not Evidence and Should Not be**
        **Considered**

3       Liu relies upon his own unverified and unsupported Complaint in arguing

4  that FF's allegations of falsity are implausible, regurgitating his fantastical and

5  subjective allegations that he is purportedly "a globally respected, well-known

6  lawyer who has worked for decades in senior positions in government and the

7  private sector, including as a partner with leading U.S. Law firms."  (Mot. at 12:14-

8  17 (citing Compl. ¶¶ 1, 8, 20-26); *see also* Mot. at 4:19-5:28 (citing Compl. ¶¶ 1-5,

9  15-29, 33-41, 57-59).)  But, such unproven allegations, most of which FF denied,

10 are extrinsic to the facts alleged by FF and, thus, entirely irrelevant for the purposes

11 of assessing FF's pleading of its fraud and rescission claims under Rules 9 and

12 12(b)(6).[3]  Should the Court consider Liu's unproven allegations in deciding his

13 Motion, it would convert the motion into one for summary judgment, requiring the

14 Court to "notify the parties before taking such action, in order to provide to the

15 parties a fair opportunity to present material relevant to summary judgment."  *In re*

16 *Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 781 (9th Cir. 2014) (citing

17 *Garaux v. Pulley,* 739 F.2d 437, 438-39 (9th Cir. 1984)).  And, even if considered,

18

19 ───────────────

[3] Cases relied on by Liu support dismissal of claims where contract or other

20 language, not the *other* party's allegations, render allegations implausible.  (*See*
   Mot. at 12:8-12 (citing *Alexander & Baldwin, Inc. v. C&H Sugar Co., Inc.*, No.

21 CV091878GAFJWJX, 2010 WL 11508374, at *7 (C.D. Cal. Apr. 21, 2010)

22 (dismissing counterclaim where contract language conflicted with allegations);
   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), opinion

23 amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (affirming dismissal of

24 claim where exhibit to complaint, an arbitration award, undercut plaintiff's
   allegations of misconduct); *Min Sook Shin v. Umeken, U.S.A., Inc.*, No.

25 SACV1700315CJCSSX, 2017 WL 6885380, at *9 (C.D. Cal. Oct. 26, 2017), *aff'd*

26 *sub nom. Min Sook Shin v. Umeken USA, Inc.*, 773 F. App'x 373 (9th Cir. 2019)
   (finding implausible plaintiff's argument that more asterisks on a website

27 advertisement would have alerted her to a FDA disclaimer because the ad already

28 had an asterisk)).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

FF's detailed allegations of Liu's nonperformance are in no way rebutted by Liu's allegations as to his capabilities.  (*See, e.g.*, Countercl. at 3:14-10:12.)[4]

And, even if Liu's unproven allegations were true and were the proper subject of a motion to dismiss (they are not), they still do not make FF's allegations implausible.  That Liu fooled others (Mot. at 12:17-19, 12:20-13:4) or was purportedly respected, well-known, or held certain positions (*id.* at 12:14-17), does not refute that Liu *misrepresented* to FF his "experience, skills, business acumen, and connections" to fraudulently induce FF to hire him in multiple key roles (Countercl. at 3:16-6:6, 7:9-10:19).  For example, Liu may have been a partner at Mayer, but that does not contradict that he lied to FF when he misrepresented that he was capable of serving as start-up FF's Global Chief Administrative Officer and General Counsel, falsely touting that he had the requisite skills from his purported experience as a "leader of [Mayer's] US-China practice initiative" and his purported representation of clients in all major categories of transactions.  (*Id.* at 4:18-26 (quoting the curriculum vitae and press release that Liu submitted to FF during the interview process).) Indeed, Liu's allegations only highlight his inflation and misrepresentation of his ability and skill set, while failing to demonstrate the

---

[4] This case is a far cry from the allegations in *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) relied on by Liu.  There, the court determined that plaintiff's fraudulent concealment allegations were so generic that they "could be made about any alleged design defect in any manufactured product." *Id.* at 974.  Similarly, the claimant in *Anthony v. Iron Mountain, Inc.*, No. CV 20-05932-AB (ASx), 2020 WL 5793449, at *12 (C.D. Cal. Sept. 25, 2020) summarily claimed that the promisor knew his representations were false, or at least recklessly disregarded their veracity.  *Id.*  Here, Liu makes no argument that FF's claims are generic, nor could he.  Similarly, the general allegations of fraud in *Bonilla v. Nationstar Mortg., LLC*, No. EDCV1701785JGBKKX, 2018 WL 5116243, at *3 (C.D. Cal. Jan. 4, 2018) are distinct from those set forth in Table 1.  In *Bonilla*, the claimant merely stated that he was "led" to believe a loan modification would be granted, without identifying the speaker or even claiming any harm.  Here, Table 1 sufficiently identifies Liu's specific statements.

veracity of those allegations or that he ever performed or intended to perform.

As such, Liu's own unproven and refuted allegations do not warrant dismissal of FF's fraud and rescission claims.

### B.  Liu Mischaracterizes FF's Answer to His Allegations

Liu argues that FF's Answer contradicts FF's allegations that Liu misrepresented his capabilities during the interview process.  Liu cites *RePET, Inc. v. Zhao*, No. EDCV152315VAPSPX, 2016 WL 11634745, at *5 (C.D. Cal. Sept. 2, 2016) as an example of a court granting dismissal where allegations concerning perpetuating fraud and the results of the fraud were contradictory, but Liu's omits the opinion's full rationale.  In *RePET*, the court determined that plaintiff failed to allege *how* it justifiably relied on the misrepresentations where plaintiff allegedly knew that the statements were false at the time they were made.  *Id.* at *4.  Here, Liu does not and cannot allege FF knew any of his statements were false.

Moreover, a review of the chart in Exhibit 1 to the Declaration of Jake Nachmani (ECF 74-2) (the "Nachmani Declaration") reveals this argument is false. The chart quotes portions of the Complaint that relate to information within Liu's or a third party's knowledge—not FF's.  For example, Liu claims that, "[b]etween 1995 and 2000," he served various roles in non-FF organizations and that he "played a prominent role in reforming the PRC securities industry . . . ." (Nachmani Decl., Ex. 1 (quoting Compl. ¶ 18).)  FF answered that it "lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations" because it does not have personal knowledge of the dates Liu assumed such roles, if at all, and whether such roles were "prominent."  Similarly, FF lacks knowledge as to whether "Mr. Liu is recognized globally," whether sometime "[i]n the early 2000s, [he] served as a managing director of investment banking," or that he served in various "senior positions in the New York offices of global law firms." (*Id.*)  These types of allegations call for FF to admit or deny information that is not within its personal knowledge and would require confirmation from third parties as

1  to the dates, roles, and *subjective* significance of Liu's contributions.  Moreover,

2  Liu's conduct gives FF reason to believe that many of these representations were

3  not true, giving FF all the more reason to ultimately deny them.  There is a

4  significant difference between admitting that a statement was made and admitting

5  the truth of that statement.  Although Exhibit 1 to the Nachmani Declaration cites

6  portions of FF's answer expressing doubt as to the veracity of Liu's statements, it in

7  no way contradicts FF's allegations that Liu made those representations.[5]

8      At bottom, nothing in FF's Answer contradicts or otherwise disproves any

9  allegation in FF's Counterclaim.

10     **C.    FF's Allegations Meet Rule 9's General Pleading Standard for**

11           **Fraudulent Intent**

12     The Ninth Circuit recognizes that "[m]alice, **intent**, knowledge, and other

13  condition of mind of a person **may be averred generally**."  *Cooper*, 137 F.3d at

14  625 (emphasis added).  Liu's own authority comes to the same conclusion:

15  "allegations of scienter need not meet Rule 9(b)'s specificity requirement."  *UMG*

16  

_____

17  [5] These facts are distinct from those in *Heber v. Toyota Motor Sales U.S.A., Inc.*,
No. SACV1601525AGJCGX, 2017 WL 5642312, at *2 (C.D. Cal. Sept. 20, 2017)

18  where the plaintiffs alleged that the car manufacture's wiring was defective because
it was made of soy, which attracts rodents that can chew through it.  However,

19  plaintiffs also acknowledged that rodents may enter vehicles for warmth and
shelter, such that the Court found the two separate potential causes of faulty wiring

20  to conflict.  These facts are also distinct from *MJC Am., Ltd. v. Gree Electric
Appliances, Inc. of Zhuhai*, No. CV1304264SJOCWX, 2014 WL 12597149, at *7

21  (C.D. Cal. Aug. 13, 2014) where the defendant alleged that it lost customers due to
plaintiff/counter-defendant's purported mismanagement.  However, defendant also

22  averred that, rather than seek outside help, customers instead sought assistance from
one of its other subsidiaries.  As such, defendant's allegations were implausible.

23  Similarly, in *Hernandez v. Select Portfolio, Inc.*, No. CV 15-01896 MMM AJWX,
2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015), the plaintiff claimed both that

24  her application was complete and, later, that she requested additional information
for it.  Because an application cannot both be complete and require additional

25  information, the averments were "inherently implausible."  None of these cases are
remotely analogous.

26  

27  

28  

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   *Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal.

2   June 22, 2015).[6]

3       Although "nonperformance alone will not support a finding of promissory

4   fraud" (*Grand Fabrics Int'l Ltd. v. Melrose Textile, Inc.*, No. 18-748 DSF (AFMx),

5   2018 WL 6112619, at *2 (C.D. Cal. May 14, 2018)), pleading facts that tend to

6   show that the perpetrator of the fraud had no intention of performing at the time the

7   parties entered the contract is sufficient. *See StreamCast Networks, Inc. v. IBIS*

8   *LLC*, No. CV 05-04239, 2006 U.S. Dist. LEXIS 97607, at *26-27 n.40 (C.D. Cal.

9   May 1, 2006) (finding falsity sufficiently pleaded where plaintiff alleged the

10  defendant made representations without intending to perform).  Accordingly, Liu's

11  reliance on *Tanedo* is misplaced.  In *Tanedo*, the claimant summarily alleged that

12  the other parties to the contract "never intended to pay" the contracted "amounts to

13  [claimant], but instead intended to ignore their obligations to pay [claimant's] fees

14  beyond the first twelve-month period." *Tanedo v. E. Baton Rouge Par. Sch. Bd.*,

15  No. SA CV10-01172 JAK, 2012 WL 5447959, at *9 (C.D. Cal. Oct. 4, 2012).

16  These allegations did not sufficiently allege a fraudulent intent to induce the

17  claimant to enter into the contract. *Id.*

18      The present facts are more akin to those in *StreamCast Networks*, where the

19  plaintiff sufficiently alleged intent by claiming that, "[d]uring the solicitation and

20  _____

21  [6] Although California state law applies to the substantive claim, it does not
    supersede the federal pleading standard for this procedural analysis.  As such,

22  *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001), as modified on denial of reh'g
    (Oct. 5, 2001), is not binding on this Court.  Moreover, *Lovejoy* proceeded to trial at

23  which point defendant moved for judgment on the pleadings. *Id.* at 89.  The trial

24  court granted the motion, which the Court of Appeal reversed and then remanded

25  for further proceedings because the pleadings supported fraudulent concealment,
    rather than the claimed affirmative fraud. *Id.* at 104.  Accordingly, the procedural

26  posture of *Lovejoy* undercuts Liu's reliance thereon. *Tenzer v. Superscope, Inc.*, 39

27  Cal. 3d 18, 30 (1985) is likewise inapposite, applying the evidentiary standard
    rather than the pleading standard in assessing the trial court's ruling on a motion for

28  summary judgment.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

eventual negotiation, [defendant] knew the promises were false and made them to intentionally induce [plaintiff] to execute the Agreement."  2006 U.S. Dist. LEXIS 97607, at *26-*27 n.40.  Plaintiff further asserted that "[defendant] did not intend to fulfill its obligations and representations under the Agreement and/or **knew that [defendant] could not perform the obligations under the Agreement as promised to [plaintiff]**."  *Id.* (emphasis added).

Like the plaintiff in *StreamCast Networks*, FF has alleged that Liu made specific representations regarding his skills, experience, and capabilities during the interview process to induce FF to hire him as Global Chief Administrative Officer and General Counsel:

- Liu intentionally misrepresented his credentials, experience, and connections to fraudulently induce FF to hire him in the roles of Global General Counsel, Global Chief Administrative Officer, Global Senior Advisor, and Senior Board Member, and offer him two lucrative employment contracts.  (Countercl. at 2:5-8.)

- Based on Liu's material representations, Liu was offered the positions of Global General Counsel, Global Chief Administrative Officer, and Global Senior Advisor at FF, and Senior Board Member at Smart King.  (*Id.* at 6:3-5.)

(*See also id.* at 4:6-6:2 (describing Lui's specific misrepresentations).)

However, Liu knew at the time he made such representations that he did not have any intention of performing the duties required of those roles **because he was not capable of performing such duties**.  This incapability is alleged numerous times throughout the Counterclaim, for example:

- When Liu made himself available to discuss FF's financial circumstances with other executives, **he often asked rudimentary questions that demonstrated his lack of understanding of financing, fundraising, and capital markets**.  Moreover, Liu was unable to provide recommendations, advice, or direction for equity financing.  (Countercl. at 7:18-22 (emphasis added).)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

- **After less than a year, it was readily apparent that Liu had materially misrepresented his expertise and capabilities.  He was unable to perform in almost every area** of his purported expertise and did not possess the requisite legal skills to oversee the company's legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO.  (*Id*. at 7:9-13 (emphasis added).)

- **At no time did Liu express any informed opinions** regarding FF's actions and corporate governance. Nor would he have been able to, as demonstrated by his sheer incompetence over the course of the year. (*Id.* at 9:21-23 (emphasis added).)

*See also* Section IV.A at Table 1, *supra*.  FF's pleading further details specific instances in which Liu failed or refused to provide the legal, financial, and corporate guidance that he previously represented he was more than capable of delivering.  (*See* Countercl. at 7:1-10:19.)  As such, Liu's reliance on cases dismissing fraud claims for boilerplate allegations are inapposite.  *See, e.g.*, *Manlin v. Ocwen Loan Servicing, LLC*, No. CV 16-06625-AB (KSx), 2017 WL 8180779, at *4 (C.D. Cal. Dec. 7, 2017) (dismissing complaint because allegations of intent were merely conclusory recitals of the elements of the cause of action); *Apex Compounding Pharmacy, LLC v. eFax Corp.*, No. LA CV16–05165 JAK (JPRx), 2017 WL 9500946, at *4 (C.D. Cal. Apr. 20, 2017) (dismissing complaint where plaintiff provided only conclusory allegations recited from the elements of the cause of action as to defendant's intent not to fulfill the promise at issue); *Stadco Acq. LLC v. Aerospace Holdings Inc.*, No. CV–16–942–MWF–AGR, 2016 WL 9343762, at *6 (C.D. Cal. Sept. 21, 2016) (dismissing complaint for lack of scienter because plaintiff failed to allege "any particular facts" concerning the knowing falsity of its statements); *Sanchez v. Aurora Loan Servs., LLC*, NO. CV 13-08846 MMM (RZx), 2014 WL 12589660, at *19 n. 129 (C.D. Cal. June 10, 2014) (noting that allegations such as that defendant "made the promises with no intent to perform" would be insufficient to plead the speaker's fraudulent state of mind

"absent some facts tending to show that defendants in fact intended to defraud").

FF's pleadings readily surpass Rule 9's general pleading standard in pleading fraudulent intent.

## VI.   FF'S COUNTERCLAIM FOR RESCISSION STANDS

Liu cites no case law to support his contention that FF's rescission counterclaim is premised and dependent upon its fraudulent inducement counterclaim.  But, "rescission claims are distinct from fraud claims under California law." *Am. Gen. Life Ins. Co. v. Wright*, No. 08-7750 PA (FFMx), 2009 WL 10675992, *2 (C.D. Cal. July 2, 2009).  Accordingly, Liu has failed to provide any basis meriting dismissal of this claim.

Moreover, as described above, FF has sufficiently met its burden under Federal Rules of Civil Procedure 12(b)(6) and 9(b) such that, if considered with its fraudulent inducement claim, its rescission claim stands.

For these reasons, denial of Liu's motion to dismiss FF's rescission claim is proper.

## VII.   FF'S AFFIRMATIVE DEFENSE OF FRAUDULENT INDUCEMENT STANDS AND DENIAL OF LIU'S MOTION TO STRIKE IS PROPER

"Motions to strike are disfavored and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Deutsch-Hollandische Tabakgesellschaft Mbh & Co., Kg v. Trendsettah USA, Inc.*, No. SACV170181DOCJCGX, 2017 WL 7080262, at *1 (C.D. Cal. June 16, 2017) (quotation omitted) (providing defendants leave to reamend their answer where the original answer made clear that defendants are capable of alleging additional facts relevant to their fraudulent inducement defense).  Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (declining to strike pleadings where

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

"motion was really an attempt to have certain portions of [plaintiff]'s complaint dismissed . . . ."). "In considering a motion to strike, the court views the pleadings in the light most favorable to the non-moving party." *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP SSX, 2014 WL 4187979, at *2 (C.D. Cal. Aug. 22, 2014). In addition, "[g]rounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed." *Id.* at *2.

When considered alongside FF's Counterclaim, FF and Smart King have sufficiently pleaded the affirmative defense of fraud. Rule 8 of the Federal Rules of Civil Procedure includes both claims for relief and affirmative defenses as pleadings. Fed. R. Civ. P. 8(a)-(c). Moreover, Liu himself argues that FF's Answer and Counterclaim should be considered together for purposes of determining plausibility such that it is contradictory to argue the two cannot be considered together for purposes of determining whether Liu is on sufficient notice of FF's allegations. (*See, e.g.*, Mot. at 13, Nachmani Decl., Ex. 1 (arguing that FF's "Answer contradicts its Counterclaim").)[7] Further, Liu points to no case law supporting dismissal of an affirmative defense where the defendant's counterclaim provides sufficient detail and, when construed alongside FF's operative pleading, the record establishes sufficient detail for FF's affirmative defense. (*See, e.g.*, Mot. at 21:7-27 (citing *Gibson*, 2014 WL 4187979, at *8 (analyzing defense of fraud and counterclaims on motion to dismiss); *Trademark Holdings of Illinois, LLC v. Kings Two Dental Supply*, No. CV 09-01773 RGK (EX), 2009 WL 10674423, at *3 (C.D. Cal. Aug. 20, 2009) (assessing answer); *Bay City Surgery Ctr., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan Bd. of Trustees*, No.

---

[7] FF's argument regarding the deficiencies of Exhibit 1 to the Nachmani Declaration are addressed in Section VII.B, *infra*. Liu's reliance on that chart in an attempt to strike FF and Smart King's affirmative defense of fraud remains unavailing.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

CV15-6209-MWF (AFM), 2016 WL 11185299, at *1 (C.D. Cal. Aug. 31, 2016) (assessing defenses)).)

Because FF has sufficiently pled fraudulent inducement, the affirmative defense of fraud similarly stands.

## VIII. ARGUMENTS GUISED AS THE NACHMANI DECLARATION FLOUT THE LOCAL RULES REGARDING DECLARATIONS AND PAGE LIMITS AND SHOULD NOT BE CONSIDERED

Liu attaches a 14-page Exhibit, consisting entirely of legal argument, to the Nachmani Declaration in an attempt to both refute FF's Counterclaim and strike portions of FF's Answer.  This usage flies in the face of the Local Rules.  Local Rule 7-7 requires that declarations "contain only factual, evidentiary matter and shall conform as far as possible to the requirements of F. R. Civ. P. 56(c)(4)."  Yet, the Nachmani Declaration's extensive argument that there are "[c]ontradictory [a]llegations from [FF]'s Counterclaim," serves as a legal argument and conclusion, violating the Rule's requirement that only factual, evidentiary matter be included in declarations.  (*See* ECF 72-2 at ECF p. 4.)  *Cf. Ashcroft*, 556 U.S. at 678 (determining that a court is not required to accept as true legal conclusions couched as factual allegations).

Moreover, when the 14-page declaration is combined with Liu's 22-page memorandum, Liu's points and authorities far exceed Local Rule 11-6's 25-page maximum.  For this reason, FF submits that the Nachmani Declaration should not be considered.

For the above reasons, FF has sufficiently stated its claim for fraudulent inducement such that Liu's Motion is properly denied.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss and Motion to Strike should be denied.  Should the Court find that FF's allegations in its Counterclaim or

1   Answer are insufficient in any regard, FF respectfully requests that it be permitted

2   to amend its Counterclaim and/or Answer. *Kontrick v. Ryan*, 540 U.S. 443, 445,

3   (2004) (quoting Fed. R. Civ. P. 15 ("[L]eave [to amend] shall be freely given when

4   justice so requires.")).

5   Dated:  January 15, 2021                         Respectfully submitted,

6                                                     TROUTMAN PEPPER HAMILTON
                                                      SANDERS LLP
7

8                                                     By:  /s/ Lauren E. Grochow

9                                                          Lauren E. Grochow
                                                          Daniel Anziska
10                                                         Mackenzie L. Willow-Johnson

11                                                        Attorneys for Defendant and
                                                         Counterclaimant
12                                                        FARADAY&FUTURE INC. and
                                                         SMART KING, LTD.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28