

Kevin D. Hughes (Bar No. 188749)
FOUNDATION LAW GROUP LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: 424.253.1266
Email:  kevin@foundationlaw.com

Amiad Kushner (*pro hac vice*)
Akushner@seidenlawgroup.com
Jake Nachmani (*pro hac vice*)
Jnachmani@seidenlawgroup.com
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Telephone:   (646) 766-1914
Facsimile:    (646) 304-5277

*Attorneys for Plaintiff/Counter-Defendant,*
*Hong Liu*

## UNITED STATES DISTRICT COURT FOR

## THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>      Plaintiff,<br><br>      v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG<br><br>      Defendants. | **Case No:** 2:20-cv-08035-SVW-JPR<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF HONG LIU'S MOTION TO DISMISS DEFENDANT FARADAY&FUTURE INC.'S AMENDED COUNTERCLAIMS AND STRIKE DEFENDANT FARADAY&FUTURE INC.'S  AND DEFENDANT SMART KING LTD.'S AFFIRMATIVE DEFENSES** |
| FARADAY&FUTURE INC.,<br><br>      Counterclaimant,<br><br>      v.<br><br>HONG LIU,<br><br>      Counter-Defendant. | Complaint filed on:<br>January 3, 2020<br><br>Amended Counterclaim filed on:<br>February 18, 2021 |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................... 4

ARGUMENT .......................................................................................................... 9

I.   FRAUDULENT INDUCEMENT IS NOT ADEQUATELY ALLEGED ........... 9

A.   FF Again Fails To Identify A False Statement .................................... 10

B.   FF's Allegations Are Implausible And Contradictory ........................ 12

C.   The Amended Counterclaim's Allegations Are Fatally Vague .......... 15

D.   The Alleged Misrepresentations Are Inactionable Future Promises ................. 16

E.   FF Fails To Adequately Allege Fraudulent Intent .............................. 17

II.  FF FAILS TO ADEQUATELY ALLEGE NEGLIGENT AND INTENTIONAL
     MISREPRESENTATION .................................................................. 20

III. THE AMENDED COUNTERCLAIM FAILS TO ALLEGE RESCISSION FOR
     FRAUD AND MISTAKE ..................................................................... 21

IV.  THE AFFIRMATIVE DEFENSES SHOULD BE STRICKEN ...................... 23

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alexander & Baldwin, Inc. v. C&H Sugar Co., Inc.*,
  2010 WL 11508374 (C.D. Cal. Apr. 21, 2010).......................................................... 12

*Anthony v. Iron Mountain, Inc.*,
  2020 WL 5793449 (C.D. Cal. Sept. 25, 2020)..........................................................18

*Apex Compounding Pharmacy, LLC v. eFax Corp.*,
  2017 WL 9500946 (C.D. Cal. Apr. 20, 2017)...........................................................19

*Arizona Pac. Transp. v. Dolle Serv., Inc*,
  2009 WL 10673285 (C.D. Cal. Feb. 4, 2009)...........................................................20

*Arroyo v. Aurora Bank, FSB*,
  2012 WL 628205 (C.D. Cal. Feb. 24, 2012).............................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................9, 13, 23

*Attygala v. Wells Fargo Bank, N. A.*,
  2013 WL 12129400 (C.D. Cal. May 9, 2013) ..........................................................22

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
  2013 WL 12129652 (C.D. Cal. Nov. 19, 2013).........................................................24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................*passim*

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011)......................................................................................9

*Cahn v. Oversee.net*,
  2011 WL 13220410 (C.D. Cal. Aug. 25, 2011)....................................................17, 21

*Cheng Jiangchen v. Rentech, Inc.*, 2017 WL 10363990
  (C.D. Cal. Nov. 20, 2017) ..........................................................................................10

*Craig Plumley v. Sempra Energy*,
  2021 WL 754841 (9th Cir. Feb. 26, 2021)................................................................25

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019)....................................................................15

*DeSalvo v. Islands Restaurants, L.P.*,
2020 WL 4035071 (C.D. Cal. July 16, 2020) ..........................................25

*Donovan v. RRL Corp.*, 26 Cal. 4th 261 (2001). ...........................................23

*Eberz v. CitiMortgage, Inc.*,
2012 WL 12897373 (C.D. Cal. Sept. 12, 2012)...................................12, 21

*Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*,
2015 WL 12765114 (C.D. Cal. Sept. 2, 2015).....................................21, 22

*Fischler Kapel Holdings, LLC, et al. v. Flavor Producers, LLC et al.*,
2020 WL 6939887 (C.D. Cal. Nov. 25, 2020) ..........................................15

*Fox v. California Sierra Fin. Services*,
120 F.R.D. 520 (N.D. Cal. 1988) ...............................................................25

*Gibson Brands, Inc. v. John Hornby* Skewes & Co.,
2014 WL 4187979 (C.D. Cal. Aug. 22, 2014)......................................23, 24

*Heber v. Toyota Motor Sales U.S.A., Inc.*,
2017 WL 5642312 (C.D. Cal. Sept. 20, 2017)...........................................13

*Hernandez v. Select Portfolio, Inc.*,
2015 WL 3914741 (C.D. Cal. June 25, 2015) ...........................................13

*Hisamatsu v. Niroula*,
2009 WL 890903 (N.D. Cal. Mar. 31, 2009) ............................................23

*Hsu v. OZ Optics Ltd.*,
211 F.R.D. 615 (N.D. Cal. 2002) ...............................................................18

*Hsu v. UBS Fin. Servs. Inc.*, 507 F. App'x 716 (9th Cir. 2013)....................10

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
2012 WL 10731957 (C.D. Cal. June 29, 2012) .........................................17

*In re NVIDIA Corp. Securities Litig.*, 768 F.3d 1046 (9th Cir. 2014).........18

*Interscope Records v. Time Warner, Inc.*,
  2010 WL 11505708 (C.D. Cal. June 28, 2010) ........................................23

*James River Ins. Co. v. Andrade & Associates*,
  2010 WL 11595834 (C.D. Cal. Oct. 26, 2010) ........................................14

*Juice Roll-Upz, Inc. v. Liquid Guys Distributions, Inc.*,
  2018 WL 6118606 (C.D. Cal. Aug. 2, 2018) ...........................................20

*Kanarowski v. Bruker Nano, Inc.*,
  2019 WL 3249601 (C.D. Cal. Apr. 18, 2019)...........................................17

*Kulesa v. PC Cleaner, Inc.*,
  2012 WL 12886844 (C.D. Cal. Oct. 12, 2012)...................................15, 16

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ...............................9

*Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007
  OC1*,  2020 WL 5913897 (C.D. Cal. Aug. 27, 2020) .............................25

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001) ...................................17

*Manlin v. Ocwen Loan Servicing, LLC*,
  2017 WL 8180779 (C.D. Cal. Dec. 7, 2017) ...........................................19

*Mendez v. Bank of Am., N.A.*,
  2013 WL 12130584 (C.D. Cal. Sept. 19, 2013)........................................21

*Miller v. City and County of San Francisco*, 187 Cal. App. 2d 480 (1960)................16

*MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai*,
  2014 WL 12597149 (C.D. Cal. Aug. 13, 2014).......................................13

*Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) .....................................12, 18

*Perkowski v. Belvill*,
  2020 WL 3891674 (C.D. Cal. Mar. 2, 2020) ....................................18, 20

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011).................................................................16

*RePET, Inc. v. Zhao*,
   2016 WL 11634745 (C.D. Cal. Sept. 2, 2016) ......................................................... 14

*Richard P. v. Vista Del Mar Child Care Serv.*,
   106 Cal. App. 3d 860 (1980) ..................................................................................... 16

*Sadowski v. Internet Brands, Inc.*,
   2018 WL 3219374 (C.D. Cal. June 28, 2018 ) ......................................................... 25

*Sanchez v. Aurora Loan Servs., LLC*,
   2014 WL 12589660 (C.D. Cal. June 10, 2014) ....................................................... 19

*SDN. BDH. v. Dow Chemical Co.*,
   2009 WL 3633871 (C.D. Cal. Oct. 28, 2009) .......................................................... 22

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................... 12

*Stadco Acquisition LLC v. Aerospace Holdings Inc.*,
   2016 WL 9343762 (C.D. Cal. Sept. 21, 2016) ......................................................... 19

*Star Ace Asia, Ltd. v. Longyuan Forwarding, Inc.*,
   2019 WL 9047222 (C.D. Cal. Dec. 11, 2019) ......................................................... 24

*Stretch Lab Franchise, LLC v. Stretch Lab, LLC*,
   2019 WL 2279388 (C.D. Cal. Mar. 4, 2019) .................................................... 17, 20

*Tanedo v. E. Baton Rouge Parish School Bd.*,
2012 WL 5447959 (C.D. Cal. Oct. 4, 2012)............................................................... 18

*Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18 (1985) ....................................................... 18

*Tiger Bay Vill. Corp. v. Chen*,
   2016 WL 2595994 (C.D. Cal. May 5, 2016) ............................................................ 20

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015).............................................................. 16, 20

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003).................................... 9

*Vogel v. Huntington Oaks Delaware Partners, LLC*,
 291 F.R.D. 438 (C.D. Cal. 2013) ........................................................................23, 24

*Watermark Granite La Quinta, LLC v. Am. Int'l Speciality Lines Ins. Co.*,
 2011 WL 2004799 (S.D. Cal. May 23, 2011) ...........................................................22

*Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) ...................................15

*Werner v. Am. Int'l Grp., Inc.*, 201 F.3d 446 (9th Cir. 1999) ......................................9

**Rules**

Federal Rule of Civil Procedure 9(b)......................................................................*passim*

Federal Rule of Civil Procedure 12(b)(6).............................................................*passim*

Federal Rule of Civil Procedure 12(f) ...................................................................*passim*

**Other Sources**

Williston on Contracts § 69:11 (4th ed.) ...................................................................16

Plaintiff Hong Liu ("Plaintiff" or "Mr. Liu"), by his undersigned counsel and pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, submits this memorandum of points and authorities in support of his motion to dismiss with prejudice Faraday&Future Inc.'s ("FF") first, second, third, sixth and seventh counterclaims in its First Amended Counterclaim (ECF 83) ("Amended Counterclaim") and his motion to strike all of FF's and FF Intelligent Mobility Global Holdings Ltd.'s (f/k/a Smart King Ltd. ("Smart King")) affirmative defenses in their Amended Answers (ECF 82 & 81, respectively) (as to Plaintiff's motions collectively, the "Motion").[1]

## PRELIMINARY STATEMENT

This is déjà vu.  On January 28, 2021, the Court dismissed FF's counterclaims because they "*entirely fail[ed] to identify what  misrepresentations Plaintiff made*" and provided no plausible allegations as to why any purported representation was false when made.  By its Amended Counterclaim, FF has done nothing to cure these fatal pleading defects.  The Court, by notice on February 25, 2021 (ECF 86), recognized that the Amended Counterclaim gives rise to the same pleading issues raised by Plaintiff in his initial motion to dismiss (ECF 74) and invited Plaintiff to file another motion to dismiss.  Accordingly, by this Motion, Plaintiff once again seeks to dismiss and strike defendants' deficiently pled, implausible, and self-refuting counterclaims and defenses.

Now once again, FF seeks to avoid its contractual obligations to Mr. Liu by asking the Court to go though the looking glass and determine that what is vague, implausible, and contradictory is somehow plausible and well-pled.  In the Amended

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint (ECF 1) and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF 25).  "¶__" are references to paragraphs in the Complaint.  "CC ¶__" are references to paragraphs in FF's initial Counterclaim (ECF 72) "ACC ¶__" are references to paragraphs in FF's Amended Counterclaim.  "AA ¶__" are references to paragraphs in FF's Amended Answer (ECF 82) ("Amended Answer").  References to "Nachmani Decl." are to the Declaration of Jake Nachmani and the exhibits attached thereto.  Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

Counterclaim, FF once again maintains that it was not Yueting Jia ("Jia") and Defendants who fraudulently induced Plaintiff, an eminently educated, highly respected, and nationally accoladed attorney with blue chip clients and significant deal flow, but rather that it was Plaintiff who fraudulently induced FF to hire him.

This was deficiently pled nonsense in the initial Counterclaim and remains so now.  Defendants chose not to seek dismissal of any of Plaintiff's claims, implicitly conceding that his claims that Defendants, *inter alia*, fraudulently induced him into leaving his equity partnership at Mayer Brown and that Defendants committed securities fraud in violation of the federal securities laws were well pled.  Instead, FF uses the Amended Counterclaim to blast ad hominem attacks at Plaintiff and besmirch his deservedly-earned impeccable professional reputation and credibility.

By this Motion, Plaintiff seeks to dismiss these deficiently pled, frivolous attacks. FF's Amended Counterclaim, subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), should be dismissed for all of the following reasons. *First,* the Amended Counterclaim, like its predecessor, entirely fails to identify an actionable misrepresentation.  Once again, FF fails to identify what part of what Mr. Liu purportedly stated was false.  FF's theory of falsity fares no better.  In addition to being implausible on its face (discussed below), FF's theory of why the purported misrepresentations were false when made is so attenuated from what Mr. Liu purportedly represented that it cannot constitute a legitimate basis for fraud.

*Second*, the Amended Counterclaim's theory of liability is implausible, and as such its allegations should not be accepted as true.  FF's view that Mr. Liu would leave his highly profitable, esteemed, and nationally recognized law practice for a position for which he purportedly knew he wasn't qualified is bizarre and should be disregarded. Moreover, FF's Amended Answer contradicts its Amended Counterclaim.  Indeed, FF alleges in its Amended Answer that it "lacks the knowledge or information sufficient to form a belief" as to numerous allegations in Plaintiff's Complaint. These allegations concern Mr. Liu's educational background, professional background, experience, and

accomplishments, honors and awards, his roles and duties at the investment banks and law firms where he worked prior to joining FF, and his deal flow and client size. And yet, the Amended Counterclaim alleges, albeit with impermissible vagueness, that Plaintiff misrepresented those same topics to FF. The Company cannot plausibly allege that Mr. Liu's representations were false and at the same time allege that it does not have a basis to know whether these same facts are true or false.

*Third*, FF has failed to plead any false statement with specificity. Rather than specifically allege what Mr. Liu actually stated, FF impressionistically repackages and summarizes what Mr. Liu purportedly said. Rule 9(b) requires far more from FF.

*Fourth*, even if FF properly identified a misrepresentation by Mr. Liu, which it has <u>not</u>, any such misrepresentation would amount to a purported promise by Mr. Liu to perform in the future as FF's future General Counsel. This type of misrepresentation, a contract-based promise of future performance, is not actionable and cannot be the basis for fraud under controlling California and Ninth Circuit law.

*Fifth*, FF's fraudulent inducement claim fails because FF's allegations of scienter and fraudulent intent are woefully lacking. As referenced above, FF's theory of the case – that Mr. Liu was motivated to leave behind his highly profitable and esteemed equity partnership for a position for which he supposedly knew he wasn't qualified – is nonsensical on its face. That notwithstanding, FF is required to plead specific facts that give rise to an inference of Mr. Liu's state of mind. Instead, FF mechanically recites conclusory, boilerplate allegations concerning Mr. Liu's supposed motivation and offers examples of Mr. Liu's purported subsequent nonperformance on the job. Taken individually or collectively, these allegations fall far short of what is required.[2]

---

[2] FF's counterclaims for negligent and intentional misrepresentation, both requiring an actionable false statement and the latter requiring allegations of scienter, fail for these same reasons. FF's counterclaims for rescission of the Employment Agreement based on fraud and unilateral mistake are also inadequately pled, with the former failing because it is dependent on FF's defectively pled fraud claims and the latter failing because FF does not allege many of the counterclaim's required elements.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure ("Rule 12(f)"), FF and Smart King's affirmative defenses should be stricken. Their affirmative defenses for fraudulent inducement, intentional misrepresentation, and rescission based on fraud and unilateral mistake are dependent on FF's defective fraud counterclaims and as such are inadequately pled under Rule 9(b). Moreover, the remainder of FF and Smart King's affirmative defenses are boilerplate, conclusory assertions that are devoid of any factual allegations, warranting their being stricken.

For all these reasons, the Motion should be granted in its entirety with prejudce.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**The Complaint**

Plaintiff filed the Complaint (ECF 1) in the Southern District of New York ("SDNY") on January 3, 2020. Plaintiff alleged that he, a respected senior equity partner at Mayer Brown LLP ("Mayer Brown") with a degree from Harvard Law School (and an MBA from the University of Oxford), was fraudulently induced by FF and the other Defendants to leave his prestigious and lucrative China-based law practice, known for its high-profile clients, large deal sizes, and continuing and repeat business, and join FF as its General Counsel. ¶¶1-5; 15-27. Indeed, it was specifically because of Plaintiff's professional experience, reputation, and success that Defendants sought to recruit Plaintiff; for years, FF had been, without success, seeking to develop and market a viable electric car, and the addition of Plaintiff, a globally-respected professional with decades of experience, would bolster FF's credibility with its stakeholders. ¶¶27-29.

But inducing Plaintiff to leave behind his law practice while he was at the pinnacle of his career required Defendants to offer Plaintiff a cash and equity compensation package that was superior to what Plaintiff was earning at Mayer Brown. ¶¶27, 33. Accordingly, in October 2017, Defendants offered Plaintiff equity options in Smart King, FF's parent company, that were equal to two percent of the total equity in Smart King, equity valued at $43 million. ¶34. To sweeten the deal, during the course of numerous employment negotiation meetings held in January 2018, Jia, FF's then-

CEO, and Defendants represented that, through a private Series A offering, Smart King had already received $2 billion in funding from Evergrande Health Industry Group Ltd. at a valuation of $4.5 billion (the "Evergrande Transaction").  ¶¶35-38.  Pursuant to that investment, Plaintiff's Smart King Options were worth $90 million.

In reliance on these and other misrepresentations made by Jia and his agents at FF, all of which were were explicitly incorporated into the Employment Agreement and Director Compensation Agreement (¶¶41, 57-58), in February 2018, Plaintiff resigned from Mayer Brown and began working for FF.  ¶59.

What Plaintiff did not know when he resigned from Mayer Brown was that these representations were lies.  Indeed, Plaintiff learned that, despite Defendants' repeated assurances that Evergrande had already invested $2 billion in Smart King, in reality, Evergrande had invested only $300 million.  ¶¶39-40, 53.  Given the over a billion dollar difference in funding, Plaintiff's Smart King equity was worth materially less than Defendants had represented.

**The Motion To Dismiss**

Defendants filed their motion to dismiss the Complaint for lack of personal jurisdiction or, in the alternative, to transfer the case to the Central District of California, on February 14, 2020. ECF 20-23.  Notably, Defendants did not challenge the adequacy of Plaintiff's claims, including fraudulent inducement and violations of Section 10(b) of the Securities Exchange Act of 1934, implicitly conceding that those claims were adequately pled under the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995.  On August 26, 2020, the court transferred the case to the Central District of California where the matter is now pending before this Court.  ECF 39.

**FF'S Counterclaim**

On November 19, 2020, FF filed its initial counterclaim (ECF 72) ("Counterclaim"), bringing claims against Mr. Liu for, *inter alia*, fraudulent inducement and rescission of the Employment Agreement.  FF alleged that Mr. Liu fraudulently

induced FF to hire Plaintiff as FF's General Counsel by making false statements concerning his professional qualifications. *See* CC ¶¶6-15. Without specifying which of Mr. Liu's statements were false and why, FF alleged that Mr. Liu must have lied about his qualifications because, after FF hired him, Mr. Liu allegedly could not perform on the job. *See* CC ¶¶24-45.

**The January 28 Decision**

On December 10, 2020, Plaintiff moved to dismiss FF and Smart King's fraud-based counterclaims and affirmative defenses. The motion was fully briefed on January 25, 2021. Just three days later, on January 28, 2021, the Court dismissed FF's counterclaim for fraudulent inducement and rescission and struck FF and Smart King's related affirmative defenses. *See* ECF 79 ("January 28 Order"). The Court held that the Counterclaim "***entirely fail[ed] to identify what misrepresentations Plaintiff made*** when negotiating his employment. The counterclaim only describes the qualifications Plaintiff represented he had and asserts that Plaintiff performed poorly in his role." January 28 Order at 1. The Court also determined that the Counterclaim failed because it "***attempt[ed] to infer from Plaintiff's poor performance that Plaintiff misrepresented 'the skills, business acumen, and the connections necessary for the roles he obtained with [Defendant]*.'**" *Id.* In sum, the Court held that FF had failed to allege adequately that the statements concerning Mr. Liu's professional qualifications were false and that allegations that Mr. Liu purportedly did not perform on the job did not establish that those misrepresentations were false when made. *See id.* The Order permitted FF and Smart King to file amended claims and defenses within 21 days.

**The Amended Counterclaim**

On February 18, 2021, FF filed the Amended Counterclaim, alleging, *inter alia*, claims of fraudulent inducement, intentional misrepresentation, and negligent misrepresentation against Plaintiff and rescission of the Employment Agreement for fraud and unilateral mistake. ACC ¶¶73-123. By the Amended Counterclaim, FF once again alleges that it was Mr. Liu who defrauded FF by once again having purportedly

made misrepresentations concerning his professional qualifications. ACC ¶¶73-97. And once again, FF alleges that these statements had to have been false when made because Mr. Liu subsequently did not perform on the job.

The Amended Counterclaim is a fool's gold copycat of the Counterclaim. For example, FF once again alleges that Mr. Liu made representations about the professional positions he had held, including working for the Chinese government as well as at prestigious global law firms and investment banks (ACC ¶¶21, 23-25); his duties at these various positions (ACC ¶¶18, 21, 23-28); his areas of expertise, including securities regulations, capital financing, mergers and acquisitions, and regulatory disputes (ACC ¶18, 21, 23-28); the industries in which he had extensive experience, including financial institutions, manufacturing, and technology (ACC ¶¶18, 21, 23-28); and that, having worked as a managing director at two investment banks and General Counsel and Director-General for the Chinese government's securities regulatory entity, Mr. Liu had extensive contacts to whom he would introduce FF (ACC ¶¶22, 29). Moreover, FF yet again alleges that these statements must have been false when made because, after joining FF, Mr. Liu's purported performance was not in accordance with his previously-stated qualifications. ACC ¶41, 77-78, 88, 116.

The Amended Counterclaim fails for the same reason as the defective Counterclaim. The Amended Counterclaim fails to identify what part of Mr. Liu's representations were false when made. Additionally, in contravention of the January 28 Order, the Amended Counterclaim fails to allege the "specific content" (January 28 Order at 1) of any purported misrepresentation. The purported false statements are not Mr. Liu's words; they amount to nothing more than FF's repackaged impressions and paraphrasings of what Mr. Liu supposedly said. Where FF quotes Mr. Liu's CV for the proposition that Mr. Liu lied about his qualifications, FF once again attempts to infer from Mr. Liu's purported nonperformance during his employment that his pre-employment statements were false. FF doubles down on this "falsity by inference" theory all over again. Moreover, any statements concerning what Mr. Liu purportedly

promised to deliver for FF in the future cannot form the basis of a fraud claim.  Finally, the Amended Counterclaim's allegations of scienter and intent are woefully lacking.

**FF'S Amended Answer And FF And Smart King's Affirmative Defenses**

On February 18, 2021, the same day FF filed the Amended Counterclaim, FF filed its amended answer (ECF 82) ("Amended Answer").  There, FF alleged five new affirmative defenses that were not initially pled in its original answer and thus not the subject of Plaintiff's initial motion to dismiss: intentional misrepresentation; rescission for fraud, unilateral mistake and lack of consideration, and impossibility.  For the purposes of this Motion, FF's Amended Answer is notable for at least two reasons.

*First*, and as more fully set forth below and in Exhibit A to this Motion, FF alleges in the Amended Answer that it "lacks the knowledge or information sufficient to form a belief" as to numerous allegations in the Complaint concerning Plaintiff's educational and professional background, accomplishments, honorary awards, his roles and duties at the investment banks and law firms where he worked prior to joining FF, and his deal flow and client size.  *See* AA ¶¶16-27.  And yet, by its Amended Counterclaim, FF alleges that Plaintiff must have purportedly misrepresented those same topics to FF.

*Second*, FF in its Amended Answer and Smart King in its substantively identical amended answer (ECF 81) set forth affirmative defenses for fraudulent inducement, intentional misrepresentation, rescission based on fraud, and rescission based on unilateral mistake.  *See* AA ¶¶2-5.  These affirmative defenses fail, as they are pled with less specificity than the Amended Counterclaim's corresponding causes of action.  *See* January 28 Order at 2 (striking fraudulent inducement affirmative defense because it was dependent on inadequately pled fraudulent inducement counterclaim).  The remainder of FF and Smart King's affirmative defenses are conclusory, one-sentence long boilerplate assertions that fail to meet this District's pleading standard.

For the reasons set forth below, FF's counterclaims for fraudulent inducement, intentional and negligent misrepresentation, and rescission should be dismissed with prejudice, and FF and Smart King's affirmative defenses should be stricken.

## **ARGUMENT**

A court will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or for insufficient facts pleaded to support an otherwise cognizable legal theory. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). To avoid dismissal, a complaint's factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").

Accusations of fraud require a heightened particularity in pleading. *See* Fed. R. Civ. P. 9(b). Rule 9(b) establishes that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud[.]" *Id.* The "circumstances" required by Rule 9(b) are the "who, what, when, when, where, and how" of the fraudulent activity. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see* January 28 Order at 1 (pleading in accordance with Rule 9(b) requires "an account of the time, place, and specific content of the false representations"). This heightened pleading standard ensures that allegations of fraud are specific enough to give respondents sufficient notice of the particular misconduct to defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); January 28 Order at 1.

As set forth below, FF has failed to adequately allege its counterclaims for fraudulent inducement, intentional misrepresentation and negligent misrepresentation, and, accordingly, has also failed to do so for its counterclaims for rescission for fraud and for unilateral mistake.

## I.   FRAUDULENT INDUCEMENT IS NOT ADEQUATELY ALLEGED

The elements of a fraudulent inducement claim are: (a) misrepresentation; (b) scienter; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. *Werner v. Am. Int'l Grp., Inc.*, 201 F.3d 446 (9th Cir. 1999). Notwithstanding that FF has failed

to allege reliance and damages, as demonstrated below, FF has failed to adequately allege the first three elements: falsity, scienter, and intent.

## A. FF Again Fails To Identify A False Statement

Under Rule 9(b), a pleading "must set forth what is false or misleading about a statement, and why it is false." *Hsu v. UBS Fin. Servs. Inc.*, 507 F. App'x 716, 717 (9th Cir. 2013). A pleading will be dismissed where it forces the non-moving party and the court to sort out the alleged false statements and match them with the corresponding alleged facts to interpret the claims. *Cheng Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *5 (C.D. Cal. Nov. 20, 2017).

Here, FF has once again failed to cure the initial Counterclaim's pleading defects: the Amended Counterclaim fails to identify any false statement and set forth why any such statement is purportedly false. For example, FF alleges that:

- "Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules. He represented that he led the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council." ACC ¶21; *see* ACC ¶28 (concerning roles and positions Mr. Liu had previously held at investment banks).

- "Liu represented that he had close connections with top Chinese government officials, including the president of China. He told Jia and Wang that he could connect FF with those officials to facilitate FF's business in China." ACC ¶22; *see* ACC ¶29 (concerning Mr. Liu's connections within the finance sector).

- "Liu's CV further extolled his lengthy purported history as a claimed financial expert and attorney." ACC ¶23; *see* ACC ¶24 (listing areas of professional expertise on Mr. Liu's CV).

- "Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." ACC ¶25; *see* ACC ¶26 (concerning his experience in the finance).[3]

These allegations are inadequately pled. *First*, the Amended Counterclaim does not designate which part or parts of these allegations were false when made. For example, is FF alleging that Mr. Liu did not actually serve in the various roles listed on his CV, including at the law firms, financial institutions, and government regulatory entities where he had worked, that he did not have close connections to Chinese government officials or financial firms within the U.S., that he never took part in the types of transactions described on his CV, or that he never represented clients in various categories of transactions? Under Rule 9(b), Mr. Liu should not have to guess.

And *second*, the Amended Counterclaim fails to adequately allege why these statements are purportedly false. Here, FF stakes its "fraudulent inducement" claim on the same bogus theory (which at most amounts to breach of contract) that warranted dismissal of the initial Counterclaim: that Mr. Liu's purported statements concerning his professional experience and accomplishments and the corporate goals he would help FF achieve were somehow false because Mr. Liu was *subsequently* "unable to perform in almost every area of his purported expertise and did not possess the requisite legal

---

[3] Typical of FF's inadequate pleading, it is unclear if certain allegations constitute additional false statements or inadvertent admissions that false statements are actually true. For example, FF alleges that it "was bolstered by Liu's representations as to his background and accolades, including, but not limited to, his LLM from Harvard, JSD from Peking University Law School, and MBA from Oxford; his experience working as General Counsel and Director-General of the China Securities Regulatory Commissions; and his experience as a partner at internationally renowned law firm, Mayer." ACC ¶80. Is FF alleging that Mr. Liu did not attend these educational institutions and that he did not have his stated experience at Mayer Brown? Or is FF admitting that Mr. Liu's purported misrepresentations concerning his qualifications were actually true? That this remains unclear after FF had the opportunity to replead demonstrates the inadequacy of the Amended Counterclaim and its ultimate futility.

skills to oversee the company's basic legal needs, let alone the business, finance, and legal acumen needed to take FF to an IPO." ACC ¶41; *compare with* CC ¶24.

In addition to the fact that FF's theory of falsity fails for being wholly implausible (discussed below), FF's theory of falsity fails because it bears no rational connection to what Mr. Liu purportedly stated. That Mr. Liu allegedly was unable to perform on the job does not demonstrate that his prior statements concerning the positions he had previously held, the business contacts he had, the clients he represented, the transactions on which he advised, and the goals he would help FF achieve were false when made. Indeed, the January 28 Order explicitly rejected this identical theory of falsity. *See* January 28 Order at 1 ("The counterclaim then attempts to infer from Plaintiff's poor performance that Plaintiff misrepresented 'the skills, business acumen, and the connections necessary for the roles he obtained with [Defendant].'"); *compare with* ACC ¶2. Untethered to what Mr. Liu purportedly said, FF's theory of falsity must once again fail. *See Eberz v. CitiMortgage, Inc.*, 2012 WL 12897373, at *4 (C.D. Cal. Sept. 12, 2012) (Wilson, J.) (fraud claim dismissed where allegation that defendants had "no intention of performing [prior promises]" did not sufficiently set forth theory of falsity).

## B. FF's Allegations Are Implausible And Contradictory

On a motion to dismiss, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a court need not accept as true "unwarranted deductions of fact, or unreasonable inferences."); *Alexander & Baldwin, Inc. v. C&H Sugar Co., Inc.*, 2010 WL 11508374, at *7 (C.D. Cal. Apr. 21, 2010) (dismissing counterclaim based on implausible premise).

Here, FF's theory of falsity is implausible and unwarranted. According to FF, Mr. Liu left his lucrative and accoladed equity partnership at Mayer Brown (FF admits Mr. Liu came recommended as a "'top notch' capital fundraiser and attorney") for a position at which he purportedly knew he would fail. This is implausible nonsense, and FF's defective theory of falsity warrants dismissal. *See Nguyen v. Endologix, Inc.*, 962

F.3d 405, 408, 415 (9th Cir. 2020) (rejecting theory of falsity as implausible where defendants promised FDA approval of medical device which they purportedly knew was "unapprovable" because such theory had "no basis in logic," did not "resonate with common experience" and "[did] not make a whole lot of sense."); *MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai*, 2014 WL 12597149, at *7 (C.D. Cal. Aug. 13, 2014) (implausibility of allegations warranted dismissal).

FF's theory of falsity also fails because FF contradicts its core allegations. Contradictory allegations are implausible and should be disregarded. *See Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) (noting that contradictory allegations "are inherently implausible, and fail to comply with Rule 8, *Twombly*, and *Iqbal*"). Dismissal of claims containing contradictory allegations is appropriate because they "fail to provide fair notice of the nature of the claims as well as the grounds on which the claims rest." *Heber v. Toyota Motor Sales U.S.A., Inc.*, 2017 WL 5642312, at *2 (C.D. Cal. Sept. 20, 2017).

Here, FF's Amended Answer contradicts its Amended Counterclaim. In its Amended Answer, FF alleges that it "lacks the knowledge or information sufficient to form a belief" as to Plaintiff's allegations concerning his educational background, professional experience, accomplishments, honorary awards, his roles and duties at the investment banks and law firms where he worked prior to joining Faraday, and his deal flow and client size. *See* AA ¶¶16-27. Indeed, FF maintains that it lacks the knowledge to form a belief as to the following specific allegations from the Complaint:

- "Between 1995 and 2000, Mr. Liu served as General Counsel and Director-General of the China Securities Regulatory Commission ("CSRC"), the national securities regulator in the PRC. At the CSRC, Mr. Liu played a prominent role in reforming the PRC securities industry, including leading a CSRC team that drafted and enacted the PRC's first securities law in 1998." ¶18.

- "Mr. Liu is recognized globally for his significant contributions to the development of securities and financial markets in the PRC. In 1998 and 1999, *BusinessWeek* twice honored Mr. Liu with its 'Stars of Asia' awards. In 1999, the World Economic Forum in Davos honored Mr. Liu with a 'Global Leader for Tomorrow' award." ¶19.

- "Mr. Liu developed one of the most active and successful China and Asia-related practices in the United States, representing many of the most prominent PRC financial institutions in significant transactions. Mr. Liu's client base included numerous financial giants in the PRC, as well as leading companies in a wide range of industries in the PRC including transportation, infrastructure, manufacturing, insurance, and private equity." ¶23.

- "Within Mayer Brown, Mr. Liu's practice was recognized for its high profile clients, large deal sizes, continuing and repeat business, and optimal realization rates.  In each year of his tenure at Mayer Brown, Mr. Liu was promoted within the firm's equity partnership, rising to senior partner." ¶25.[4]

FF cannot have it both ways.  It cannot plausibly allege that what Mr. Liu represented about his qualifications was false and at the same time allege that it lacks knowledge or information sufficient to form a belief as to whether these same facts are true or false.  These contradictions warrant dismissal.  *See James River Ins. Co. v. Andrade & Associates*, 2010 WL 11595834, at *4, n.1 (C.D. Cal. Oct. 26, 2010) (dismissing counterclaim where "statement in one portion of the pleadings [defendant's answer]" contradicted "statements in another portion of the pleadings [defendant's counterclaim] … render[ing] implausible several of [defendant's] allegations in the [counterclaim]"); *see also RePET, Inc. v. Zhao*, 2016 WL 11634745, at *5 (C.D. Cal. Sept. 2, 2016) (dismissing complaint because allegations concerning perpetrating the fraud at issue and the results of the fraud were contradictory).

---

[4] Exhibit A to this Motion sets forth the allegations FF has made in its Amended Answer that contradict its Amended Counterclaim.

### C. The Amended Counterclaim's Allegations Are Fatally Vague

It is black letter law that in order to adequately plead an actionable misrepresentation, the pleading must set forth the "details" of the purported misrepresentation, including its "specific content." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019); *see* January 28 Order at 1 (Rule 9(b) requires pleading the "specific content" of the alleged misrepresentations). Paraphrasing a purported misrepresentation is insufficient; to survive dismissal, one must allege what was "***actually said***." *Kulesa v. PC Cleaner, Inc.*, 2012 WL 12886844, at *5 (C.D. Cal. Oct. 12, 2012); *see also Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1247 (N.D. Cal. 1998) (dismissing complaint because, rather than allege what defendant actually said, complaint "repackage[d] defendants' actual oral statements in vague and impressionistic terms.").

Once again, FF shirks this basic pleading requirement. For example, FF alleges:

- "Liu assured FF that, as FF's Global Chief Administrative Officer and General Counsel, he would provide specific and measurable deliverables." ACC ¶19; *see* ACC ¶20 ("And Liu confirmed that he could meet FF's expectation and deliver under those roles.").

- "Liu represented that he had close connections with top Chinese government officials, including the president of China. He told Jia and Wang that he could connect FF with those officials to facilitate FF's business in China." ACC ¶22; *see* ACC ¶29 ("Liu represented that he could connect FF with individuals from top investment firms … Liu represented that these connections would be part of his plan to bring FF to financial stability and an IPO in 2019.").

- Liu " claimed to have vast experience working with investors, public and private funds, and capital markets[.]" ACC ¶26.

These purported misrepresentations are not Mr. Liu's words. Instead, they are FF's generalized summaries, paraphrasings, and/or impressions of what Mr. Liu purportedly said. This is insufficient, and dismissal is warranted. *See Fischler Kapel Holdings, LLC, et al. v. Flavor Producers, LLC et al.,* 2020 WL 6939887, at *6 (C.D.

Cal. Nov. 25, 2020) (where plaintiffs did not "specifically allege the content" of the misrepresentations, such allegations were "utterly deficient and cannot support fraudulent inducement claims"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015) (generalized allegations of what was purportedly misrepresented were too vague to satisfy Rule 9(b)); *Kulesa*, 2012 WL 12886844 at *5 (dismissing complaint because it did not allege what defendant "actually said[,]" but rather paraphrased misrepresentation).[5]

### D. The Alleged Misrepresentations Are Inactionable Future Promises

Under California Law, which applies here, "a mere promise of a future performance ... is not actionable [as fraud]." *Miller v. City and County of San Francisco*, 187 Cal. App. 2d 480, 483 (1960). The "breach of a contractual promise of future performance typically does not constitute a misrepresentation that will support an action for fraud." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011). Such representations "as to future results or events cannot support a fraud claim." 26 *Williston on Contracts* § 69:11 (4th ed.); *Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 865 (1980) ("Fraudulent representations, to constitute ground for relief, must be as to existing and material facts; predictions of future events are ordinarily considered nonactionable expressions of opinion.").

Here, notwithstanding the Amended Counterclaim's Rule 9(b) defects, the alleged false statements are merely inactionable promises of future performance. For example, FF alleges that:

- "Liu affirmed that he could and would fill the high-level roles and possessed the requisite experience, skills, and ability to do so." ACC ¶18.

---

[5] To the extent FF purports to quote Mr. Liu's CV (*see, e.g.*, ACC ¶¶24-25, 28), those statements are inactionable for the reasons set forth in Sections I.A-D.

- "Liu assured FF that, as FF's Global Chief Administrative Officer and General Counsel, he would provide specific and measurable deliverables." ACC ¶19.

- "Liu confirmed that he could meet FF's expectation and deliver under those roles." ACC ¶20.

- Liu "told Jia and Wang that he could connect FF with those officials to facilitate FF's business in China." ACC ¶22; *see* ACC ¶29.

These statements concerning what Mr. Liu would do for FF in the future are substantively identical to the inactionable statements in the initial Counterclaim. *See, e.g.*, CC ¶¶6, 13-14. Following the "Ninth Circuit rule that the failure to honor a contractual obligation does not transform the original contract into a tortious misrepresentation," these purported statements cannot form the basis of a fraud claim, warranting dismissal. *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *7 (C.D. Cal. June 29, 2012); *see also Stretch Lab Franchise, LLC v. Stretch Lab, LLC*, 2019 WL 2279388 at *4 (C.D. Cal. Mar. 4, 2019) (allegations of nonperformance are "simply not good enough" to demonstrate a party misrepresented its intent to perform); *Kanarowski v. Bruker Nano, Inc.*, 2019 WL 3249601, at *1 (C.D. Cal. Apr. 18, 2019) (falsity of statements prior to entering into agreement cannot be established by offering "only events that occurred after" signing the agreement); *Cahn v. Oversee.net*, 2011 WL 13220410, at *6 (C.D. Cal. Aug. 25, 2011) (Wilson, J.) (dismissing fraud claim; statements concerned "future contractual performance").[6]

### E. FF Fails To Adequately Allege Fraudulent Intent

Fraudulent intent is a required element of FF's fraudulent inducement claim. *See Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93, 111 (2001). Fraudulent intent is the

---

[6] To the extent FF alleges misrepresentations in a business plan (*see* ACC ¶¶65, 67-68, 81-82) such statements cannot form the basis of FF's inducement claim, as they were allegedly made eleven months after Plaintiff had joined FF. Moreover, such statements cannot form the basis of FF's intentional and negligent misrepresentation claims because, as FF admits, these statements were so "vague and indecipherable" (ACC ¶64) and "nonsensical and generic" (ACC ¶68) so as to immaterial and unverifiable.

intent to defraud or induce reliance on the alleged false statements. *Id.* "[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985). This "something more" cannot simply be an "allegation that the defendant never intended to keep her promise." *Tanedo v. E. Baton Rouge Parish School Bd.*, 2012 WL 5447959, at *8 (C.D. Cal. Oct. 4, 2012). Rather, "specific factual allegations" of the speaker's state of mind are required. *Anthony v. Iron Mountain, Inc.*, 2020 WL 5793449, at *12 (C.D. Cal. Sept. 25, 2020) *see also Perkowski v. Belvill*, 2020 WL 3891674, at *3 (C.D. Cal. Mar. 2, 2020) ("Underlying facts" concerning speaker's fraudulent intent are required); *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (a pleading "must point to ***facts*** which show that defendant harbored [fraudulent intent]" at contract formation).

Here, FF's theory as to Mr. Liu's state of mind is bizarre. In FF's view, after years of success in the legal and financial sectors, Mr. Liu was motivated to fraudulently induce FF to hire him – and leave behind his lucrative, accoladed, and respected equity partnership at Mayer Brown – for a position for which he knew he was not qualified and at which he would fail. This is nonsensical and undescores the defectiveness of the Amended Counterclaim's allegations. *See Nguyen*, 962 F.3d at 408, 415 (scienter allegations rejected as implausible under *Twombly* where plaintiffs alleged that defendants promised what they purportedly knew was impossible; the allegations had "no basis in logic," did not "resonate with commonplace experience," and "[did] not make a whole lot of sense."); *In re NVIDIA Corp. Securities Litig.*, 768 F.3d 1046, 1058 (9th Cir. 2014*)* (rejecting theory of scienter because of "implausible" allegations).

Moreover, the Amended Counterclaim fails to adequately allege specific underlying facts concerning Mr. Liu's scienter and fraudulent intent. *First,* FF's state of mind allegations are boilerplate, conclusory recitations that Mr. Liu purportedly knew that his statements concerning his qualifications were false when made. For example, the Amended Counterclaim conclusorily alleges that:

- Liu knew and concealed the falsity of his representations in order to fraudulently induce FF to hire him for executive positions under the lucrative agreements that he was not remotely qualified to occupy. ACC ¶7.

- Liu "knew these representations were false when he made them, or he made them without regard for their truth."  ACC ¶78.

- "Liu knew or should have known that he lacked the requisite skill, experience, expertise, and knowledge to deliver the results and perform his job duties."  ACC ¶81; *see also* ACC ¶¶82, 88

Rather than allege specific facts, as it is required to do, FF has alleged only impermissibly conclusory, threadbare recitals of the elements of its fraudulent inducement claim.  Dismissal is accordingly appropriate.  *See Manlin v. Ocwen Loan Servicing, LLC*, 2017 WL 8180779, at *4 (C.D. Cal. Dec. 7, 2017) (dismissing complaint because allegations of intent were merely conclusory recitals of the elements of the cause of action, including "Defendant['s] promises and representations ... were false, and were known, or should have been known, to be false at the time they were made, or were made by defendant[ ] in reckless disregard of the truth."); *Apex Compounding Pharmacy, LLC v. eFax Corp.*, 2017 WL 9500946, at *4 (C.D. Cal. Apr. 20, 2017) (dismissing complaint where plaintiff provided only conclusory allegations recited from the elements of the cause of action as to defendant's intent not to fulfill promise at issue); *Sanchez v. Aurora Loan Servs., LLC*, 2014 WL 12589660, at *19 n. 129 (C.D. Cal. June 10, 2014) (noting that allegations that defendant "made the promises with no intent to perform" would be insufficient to plead the speaker's fraudulent state of mind "absent some facts tending to show that defendants in fact intended to defraud"); *Stadco Acquisition LLC v. Aerospace Holdings Inc.*, 2016 WL 9343762, at *6 (C.D. Cal. Sept. 21, 2016) (no scienter because plaintiff failed to allege "any particular facts" concerning the knowing falsity of its statements).

*Second*, to the extent FF will maintain that the Amended Counterclaim alleges specific facts, those facts are limited to examples of Mr. Liu's purported subsequent

nonperformance. *See* AC ¶¶43-61. However, where a speaker promises to perform in the future, allegations of future nonperformance do not establish the speaker's fraudulent intent. *See* Section I.D; *Stretch Lab Franchise, LLC*, 2019 WL 2279388 at *4 (dismissing counterclaims; "allegations of knowledge of falsity and intent to defraud are almost automatically deficient where all one is able to plead is nonperformance."); *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1109 ("intent not to perform cannot be proved simply by showing a subsequent failure to perform."; citing authorities).

Moreover the law is clear that FF's conclusory recitations of Plaintiff's fraudulent intent taken together with its examples of Plaintiff's purported nonperformance are collectively still too vague and conclusory to allege adequately Mr. Liu's supposed intent to defraud. *See Perkowski*, 2020 WL 3891674 at *3 (finding no fraudulent intent because all that was pled was conclusory allegations of intent to defraud and examples of nonperformance); *Juice Roll-Upz, Inc. v. Liquid Guys Distributions, Inc.*, 2018 WL 6118606, at *5 (C.D. Cal. Aug. 2, 2018) (allegation that party made promises "with no intent to perform them" in conjunction with allegations of subsequent breaches of promises were "insufficient under Rule 9(b) because [counter-plaintiff did] not allege any facts from which it [could] be inferred that [counter-defendants] had no intention of performing the promises at the time they were made."); *Tiger Bay Vill. Corp. v. Chen*, 2016 WL 2595994, at *6 (C.D. Cal. May 5, 2016) (fraudulent intent not alleged where "Plaintiff does not point to facts which show more than Defendant's nonperformance, and that Defendant harbored an intention not to be bound by the [agreement at issue]").

## II.   FF FAILS TO ADEQUATELY ALLEGE NEGLIGENT AND INTENTIONAL MISREPRESENTATION

To state a claim for negligent misrepresentation, a pleading must allege: (1) a misrepresentation of a past or existing material fact; (2) the  intent to defraud; (3) justifiable reliance; and (4) resulting damage. *See Arizona Pac. Transp. v. Dolle Serv., Inc*, 2009 WL 10673285, at *3 (C.D. Cal. Feb. 4, 2009) (Wilson, J.). A claim for intentional misrepresentation requires allegations that a defendant made a

misrepresentation knowing it was false.  *Id.*  "It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."  *Eberz v. CitiMortgage, Inc.*, 2012 WL 12897373, at *3, n.1;  *see Cahn*, 2011 WL 13220410 at *6 (applying Rule 9(b) to negligent misrepresentation; dismissing negligent misrepresentation claim).

Here, FF's counterclaims for negligent and intentional misrepresentation are substantively duplicative of its counterclaim for fraudulent inducement.  *Compare* AC ¶¶73-84 *with* AC ¶¶85-97.  As FF's fraudulent inducement counterclaim fails under Rule 9(b) for the reasons set forth in Sections I.A-E, so too do its counterclaims for negligent and intentional misrepresentation, warranting their dismissal.

## III.   THE AMENDED COUNTERCLAIM FAILS TO ADEQUATELY PLEAD RESCISSION FOR FRAUD AND MISTAKE

The Amended Counterclaim fails to adequately allege rescission for fraud and unilateral mistake. FF's counterclaim for rescission for fraud is premised and dependent upon its fraudulent inducement counterclaim.  Dismissal of the latter requires dismissal of the former.  *See* January 28 Order at 2 ("Because Defendant's rescission claim is dependent on its fraudulent inducement claim, that claim is also dismissed.")

As to FF's counterclaim for unilateral mistake, to adequately set forth such a claim, a pleading must allege that: (1) a party made a mistake regarding a basic assumption upon which that party made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to that party; (3) that party does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable. *Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*, 2015 WL 12765114, at *4 (C.D. Cal. Sept. 2, 2015).  Claims for rescission for unilateral mistake are subject to Rule 9(b).  *See Mendez v. Bank of Am., N.A.*, 2013 WL 12130584, at *7 (C.D. Cal. Sept. 19, 2013) ("Rule 9(b) requires pleading with particularity in cases seeking rescission on the basis of mistake or fraud").

FF's counterclaim for rescission based on unilateral mistake is inadequately pled.

*First,* as set forth above in Sections I.A-D, the Amended Counterclaim fails to allege under Rule 9(b) a single actionable statement of fact that induced FF to mistakenly enter into the Employment Agreement, warranting dismissal.  *See Attygala v. Wells Fargo Bank, N. A.*, 2013 WL 12129400, at *15 (C.D. Cal. May 9, 2013) (dismissing claim for unilateral mistake because it was not pled with particularity); *Arroyo v. Aurora Bank, FSB*, 2012 WL 628205, at *6 (C.D. Cal. Feb. 24, 2012) (dismissing rescission claim because plaintiffs failed under Rule 9(b) to specifically allege an actionable statement that demonstrated a mistaken belief about defendant's intent under the agreement).

*Second*, any statement concerning how Plaintiff would perform as FF's future General Counsel cannot constitute an actionable statement of objective past or present material fact, which is required, but at most amounts to an immaterial "mistaken belief about a future occurrence," which is inadequate.  *Attygala*, 2013 WL 12129400 at *14 (dismissing claim for unilateral mistake because purported "fact" about which party was allegedly mistaken concerned future condition and not then-existing contract term); *see also Watermark Granite La Quinta, LLC v. Am. Int'l Speciality Lines Ins. Co.*, 2011 WL 2004799, *2 (S.D. Cal. May 23, 2011) ("Because Plaintiffs' mistake theory is based on the anticipation about how the projects would turn out in the future, there was no mistake about a past or present fact, and therefore no mistake of fact"); *SDN. BDH. v. Dow Chemical Co.*, 2009 WL 3633871, *23 (C.D. Cal. Oct. 28, 2009) ("Where parties to a contract attempt to predict a future course of events, the fact that their speculation did not forecast the exact pattern which events subsequently took does not provide the basis for a claim that they were acting under some sort of mistake").

*Third,* the Amended Counterclaim fails to set forth any allegation concerning the unsconscionabiliy of enforcing the Employment Agreement, warranting dismissal.  *See Fid. Nat'l Title Ins. Co.*, 2015 WL 12765114 at *5 (dismissing unilateral mistake claim where "Plaintiff does not even address procedural or substantive unconscionability").

And *fourth,* the Amended Counterclaim fails to set forth allegations that FF did not bear the risk of a purported mistake induced by Mr. Liu.  A party bears the risk of a

mistake when: "(a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 283 (2001).

Here, the Employment Agreement allocates to FF the risk that Mr. Liu would not be qualified for the General Counsel position.  *See* Ex. B, Employment Agreement. Indeed, the Employment Agreement provides for *guaranteed compensation* to Mr. Liu with no reservations or exceptions, regardless of his performance.  *See, e.g.*, Ex. B at 1, 2 ("FF shall guarantee HL's employment and base salaries as provided in the Terms for five years except for HL decides to leave FF at his own.";  "If HL is terminated by FF for any reason during the five year term he will be entitled to receive any remaining portion of the five years of base salaries not yet paid in a lump sum.").  And FF treated the knowledge it had about Mr. Liu's qualifications as sufficient to enter into the Employment Agreement, thereby assuming the risk that Mr. Liu might not perform. *See Hisamatsu v. Niroula*, 2009 WL 890903, at *10 (N.D. Cal. Mar. 31, 2009).

## IV.   THE AFFIRMATIVE DEFENSES SHOULD BE STRICKEN

To avoid being stricken under Rule 12(f), an affirmative defense must be pled with sufficient factual matter to state a defense that is plausible on its face.  *Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, at *2 (C.D. Cal. June 28, 2010) (Wilson, J.); *see also Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 440, 41 (C.D. Cal. 2013) ("The majority of district courts in this Circuit, including … this Court, has consistently applied *Twombly* and *Iqbal* to both claims and affirmative defenses."; citing cases).  A party pleading a defense sounding in fraud must allege that defense with particularity under Rule 9(b).  *See Gibson Brands, Inc. v. John Hornby* Skewes & Co., 2014 WL 4187979, at *6 (C.D. Cal. Aug. 22, 2014); *see also* January 28 Order (striking fraudulent inducement affirmative defense under Rule 9(b)).

Requiring a party to plead its affirmative defenses with sufficient factual support

"weed[s] out the boilerplate listing of affirmative defenses which is commonplace in most defendant's pleadings." *Gibson Brands, Inc.*, 2014 WL 4187979 at \*4; *see also Vogel*, 291 F.R.D. at 441 (requiring facts be pled in support of defenses serves the purpose of "discouraging the commonplace practice of asserting every possible affirmative defense, even those that are entirely irrelevant to a plaintiff's claim.").

Here, FF and Smart King's affirmative defenses for fraudulent inducement, intentional misrepresentation, and rescission based on fraud and mistake should be stricken because they are abridged, less particularized versions of FF's corresponding defective counterclaims. As FF's counterclaims fail, so too must these affirmative defenses. *See* January 28 Order at 2 (striking fraudulent inducement affirmative defense because it was dependent on FF's inadequate fraudulent inducement counterclaim).

FF and Smart King's remaining affirmative defenses are boilerplate, irrelevant defenses that lack an iota of factual support. For example, affirmative defense one and affirmative defenses six through twenty-four are single sentence, conclusory assertions devoid of any facts. *See Star Ace Asia, Ltd. v. Longyuan Forwarding, Inc.*, 2019 WL 9047222, at \*12 (C.D. Cal. Dec. 11, 2019) (striking affirmative defenses because "where affirmative defenses lack any specificity, a motion to strike is proper"); *Gibson Brands*, 2014 WL 4187979 at \*5 (striking defenses because they were "conclusory statements asserting the existence of an affirmative defense with no explanation as to why they are applicable."); *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, 2013 WL 12129652, at \*6 (C.D. Cal. Nov. 19, 2013) (striking affirmative defenses where "no facts [were] alleged to show how they support the availability of the defense").

Defendants' affirmative defenses fail for additional reasons. *First,* they allege defenses such as failure to state a claim and reservations of rights which are not legally

cognizable.[7]  *Second*, they allege defenses which fail as a matter of application of facts to law.  For example, their statute of limitations affirmative defense should be stricken, as Plaintiff filed the Complaint within one year of being terminated; no claims are time barred.  And *third*, Defendants' affirmative defense for attorney-client privilege has been waived by FF's alleging privileged communications between Plaintiff and FF as purported false statements.[8]  The Amended Answers are exactly the type of copy-paste, kitchen sink pleading which this District has struck.  This Court should do the same.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion to dismiss and motion to strike should be granted in their entirety and with prejudice.[9]

---

[7] *See DeSalvo v. Islands Restaurants, L.P.*, 2020 WL 4035071, at *3 (C.D. Cal. July 16, 2020) ("failure to state a claim is not an affirmative defense[.]"); *Sadowski v. Internet Brands, Inc.*, 2018 WL 3219374, at *4 (C.D. Cal. June 28, 2018 ) ("[R]eservation of rights is not an affirmative defense.").

[8] *See Fox v. California Sierra Fin. Services*, 120 F.R.D. 520, 530 (N.D. Cal. 1988) ("placing privileged communications at issue in a lawsuit waives the privilege").

[9] *See Craig Plumley v. Sempra Energy*, 2021 WL 754841, at *4 (9th Cir. Feb. 26, 2021) (defendants should not have to "defend against a third complaint after having already twice prevailed on motions to dismiss"); *Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, 2020 WL 5913897, at *5 (C.D. Cal. Aug. 27, 2020) (Wilson, J.) (dismissing without leave to amend in light of plaintiff's repeated failure to cure pleading deficiencies pointed out by the court).

DATED:  March 4, 2021

FOUNDATION LAW GROUP LLP


By:/s/ Kevin D. Hughes
    KEVIN D. HUGHES
    *Attorneys for Plaintiff/Counter-Defendant*
    *HONG LIU*


SEIDEN LAW GROUP LLP


By: /s/ Amiad Kushner
    AMIAD KUSHNER
    JAKE NACHMANI
    *Attorneys for Plaintiff/Counter-Defendant*
    *HONG LIU*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System").  The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsel of record.

Dated: March 4, 2021                                    /s/ Kevin D. Hughes

                                                                    Kevin D. Hughes

MEMORANDUM OF POINTS AND AUTHORITIES

MEMORANDUM OF POINTS AND AUTHORITIES