# Exhibit A

| Allegations from the Complaint | Allegations from FF's Answer | Allegations from FF's Amended Answer | Contradictory Allegations from FF's Amended Counterclaim |
|---|---|---|---|
| "Between 1995 and 2000, Mr. Liu served as General Counsel and Director-General of the China Securities Regulatory Commission ("CSRC"), the national securities regulator in the PRC. At the CSRC, Mr. Liu played a prominent role in reforming the PRC securities industry, including leading a CSRC team that drafted and enacted the PRC's first securities law in 1998." ¶18. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 and on that ground, denies those allegations." Answer ¶18. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 and on that ground, denies those allegations." AA ¶18. | "Notably, these conversations and the curriculum vitae ("CV") that Liu provided, caused FF to believe that Liu had the requisite skills and ability to deliver on his guarantees. For example, Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules. He represented that he led the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council. In other words, FF had no reason to suspect that Liu either could not, or would not, deliver the guarantees and deliverables he assured FF he could and would provide." ACC ¶21. |
| "Mr. Liu is recognized globally for his significant contributions to the development of securities and financial markets | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 and | "the areas Jia sought to improve (functional areas, management, financing, and legal), were Liu's areas of strength. Liu affirmed that he could and would fill the high-level roles and possessed the |

1

| | | | |
|---|---|---|---|
| in the PRC. In 1998 and 1999, BusinessWeek twice honored Mr. Liu with its 'Stars of Asia' awards. In 1999, the World Economic Forum in Davos honored Mr. Liu with a 'Global Leader for Tomorrow' award." ¶19. | on that ground, denies those allegations." Answer ¶19. | on that ground, denies those allegations." AA ¶19. | requisite experience, skills, and ability to do so." ACC ¶18.<br><br>"Liu's CV further extolled his lengthy purported history as a claimed financial expert and attorney." ACC ¶23. |
| "In the early 2000s, Mr. Liu served as a managing director of investment banking at the New York based Donaldson, Lufkin & Jenrette (DLJ) which was later merged into Credit Suisse First Boston (CSFB), dividing his time between New York and Hong Kong." ¶20. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and on that ground, denies those allegations." Answer ¶20. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and on that ground, denies those allegations." AA ¶20. | "the areas Jia sought to improve (functional areas, management, financing, and legal), were Liu's areas of strength."  ACC ¶18.<br><br>"Liu's CV also heralded his investment banking background, which consisted of serving as managing director at two large investment banks. His CV boasted of playing 'an important role in a variety of China- and Asia-related M&A and other financing business transactions.'" ACC ¶28.<br><br>"Liu represented that he could connect FF with individuals from top investment firms, such as the CEO of Blackstone, and top banks, such as key bankers at Goldman Sachs, Citibank, and Lazard. Liu represented that these connections would be part of his plan to bring FF to financial stability and an IPO in 2019." ACC ¶29. |

2

| | | | |
|---|---|---|---|
| Between 2005 and April 2014, Mr. Liu served in senior positions in the New York offices of global law firms, including as a partner with Nixon Peabody LLP, DLA Piper LLP, and Pillsbury Winthrop Shaw Pittman LLP. ¶21 | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and on that ground, denies those allegations." Answer ¶21. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and on that ground, denies those allegations." AA ¶21. | "The CV listed impressive roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ("Mayer"). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." ACC ¶25. |
| "Between April 2014 and February 2018, Mr. Liu was an equity partner at Mayer Brown LLP in its New York office." ¶22. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 and on that ground, denies those allegations." Answer ¶22. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 and on that ground, denies those allegations." AA ¶22. | "The CV listed impressive roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ("Mayer"). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." ACC ¶25. |
| "At Mayer Brown, Mr. Liu developed one of the most active | "FF lacks knowledge or information | "FF lacks knowledge or information | "Liu assured FF that, as FF's Global Chief Administrative Officer and General Counsel, he would provide specific |

3

| | | | |
|---|---|---|---|
| and successful China and Asia-related practices in the United States, representing many of the most prominent PRC financial institutions in significant transactions. Mr. Liu's client base included numerous financial giants in the PRC, as well as leading companies in a wide range of industries in the PRC including transportation, infrastructure, manufacturing, insurance, and private equity." ¶23. | sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and on that ground, denies those allegations." Answer ¶23. | sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and on that ground, denies those allegations." AA ¶23. | and measurable deliverables." ACC ¶19.<br><br>"Notably, these conversations and the curriculum vitae ("CV") that Liu provided, caused FF to believe that Liu had the requisite skills and ability to deliver on his guarantees. For example, Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules. He represented that he led the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council. In other words, FF had no reason to suspect that Liu either could not, or would not, deliver the guarantees and deliverables he assured FF he could and would provide." ACC ¶21.<br><br>"Liu's CV expressly listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments |

4

| | | | |
|---|---|---|---|
| | | | and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters." ACC ¶24. "The CV listed impressive roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ("Mayer"). Liu's CV also described himself as a 'leader of [Mayer's] US-China practice initiatives,' and touted that he was 'instrumental in connecting Mayer Brown's offices in Asia, Europe and |

| | | | |
|---|---|---|---|
| | | | the Americas.' In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." ACC ¶25.<br><br>"Critically, Liu, by his CV and oral representations during the October 17, 2017 meeting and subsequent pre-hiring calls and meetings, including, but not limited to the January 21, 2017 meeting with Wang, claimed to have vast experience working with investors, public and private funds, and capital markets, which FF viewed as critical, having recently entered into the transaction with Evergrande and knowing that it would be seeking additional financing." ACC ¶26. |
| "In 2015, Mr. Liu was named to The National Law Journal's list of 'Regulatory & Compliance Trailblazers,' which recognizes individuals who have 'made a difference navigating the ever-changing mandates of regulatory and compliance.'" ¶24 | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and on that ground, denies those allegations." Answer ¶24. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and on that ground, denies those allegations." AA ¶24. | "Notably, these conversations and the curriculum vitae ("CV") that Liu provided, caused FF to believe that Liu had the requisite skills and ability to deliver on his guarantees. For example, Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules. He represented that he led |

6

| | | | |
|---|---|---|---|
| | | | the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council. In other words, FF had no reason to suspect that Liu either could not, or would not, deliver the guarantees and deliverables he assured FF he could and would provide." ACC ¶21. <br><br> "Liu's CV expressly listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. He also advises US and foreign companies doing business in Asia and Greater China, including in |

| | | | |
|---|---|---|---|
| | | | market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters." ACC ¶24. |
| "Within Mayer Brown, Mr. Liu's practice was recognized for its high profile clients, large deal sizes, continuing and repeat business, and optimal realization rates. In each year of his tenure at Mayer Brown, Mr. Liu was promoted within the firm's equity partnership, rising to senior partner. In 2017, Mr. Liu's compensation at Mayer Brown was approximately $1.35 million." ¶25. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 and on that ground, denies those allegations." Answer ¶25. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 and on that ground, denies those allegations." AA ¶25. | "Liu assured FF that, as FF's Global Chief Administrative Officer and General Counsel, he would provide specific and measurable deliverables." ACC ¶19.<br><br>"Notably, these conversations and the curriculum vitae ("CV") that Liu provided, caused FF to believe that Liu had the requisite skills and ability to deliver on his guarantees. For example, Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, interpreting, and administering China's capital and securities market rules. He represented that he led the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council. In other words, FF had no reason to suspect that Liu either could not, or would not, deliver the guarantees and deliverables |

8

| | | | |
|---|---|---|---|
| | | | he assured FF he could and would provide." ACC ¶21.<br><br>"Liu's CV expressly listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters." ACC ¶24.<br><br>"The CV listed impressive roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent |

| | | | |
|---|---|---|---|
| | | | firm being Mayer Brown LLP ("Mayer"). Liu's CV also described himself as a "leader of [Mayer's] US-China practice initiatives," and touted that he was "instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas." In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." ACC ¶25<br><br>"Critically, Liu, by his CV and oral representations during the October 17, 2017 meeting and subsequent pre-hiring calls and meetings, including, but not limited to the January 21, 2017 meeting with Wang, claimed to have vast experience working with investors, public and private funds, and capital markets, which FF viewed as critical, having recently entered into the transaction with Evergrande and knowing that it would be seeking additional financing." ACC ¶26.<br><br>"During that same initial October 17, 2017 meeting, and the subsequent pre-hiring calls and meetings, including, but not limited to the January 21, 2017 meeting with Wang, and building off of his |

| | | | |
|---|---|---|---|
| | | | purported experience at Mayer, Liu also assured FF that he could guide FF through litigation, including FF's then pending litigation against EVelozcity, Inc. ("EVelozcity"). He specifically touted that he would personally lead the effort. Further, he guaranteed that, based on his experience and guidance, FF would "win" its lawsuit against EVelozcity." ACC ¶27. |
| "On February 12, 2018, just prior to Mr. Liu's departure from Mayer Brown, the firm issued a firm-wide announcement, stating in relevant part: 'Under Henry's leadership, the Firm had developed important new relationships with some of the largest financial institutions and private equity players in China . . . Henry's wide-ranging experience has included banking and finance, M&A, investments and transactions, and regulatory and disputes. He has | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and on that ground, denies those allegations." Answer ¶26. | "FF lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 and on that ground, denies those allegations." AA ¶26. | "the areas Jia sought to improve (functional areas, management, financing, and legal), were Liu's areas of strength." ACC ¶18.<br><br>"Liu assured FF that, as FF's Global Chief Administrative Officer and General Counsel, he would provide specific and measurable deliverables." ACC ¶19.<br><br>"Notably, these conversations and the curriculum vitae ("CV") that Liu provided, caused FF to believe that Liu had the requisite skills and ability to deliver on his guarantees. For example, Liu represented that, in the 1990s, he served as General Counsel and Director-General of the China Securities Regulatory Commission. In that role, he claimed to have been the lead professional regulator responsible for drafting, |

11

| | | | |
|---|---|---|---|
| extensive experience representing Asia and Greater China-based companies conducting business in the United States and throughout the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and technology. Henry also has advised U.S. and non-U.S. companies doing business in Asia and Greater China, including in areas such as market access, direct investment, public and private funds, capital markets, technology transfers and regulatory matters.'" ¶26. | | | interpreting, and administering China's capital and securities market rules. He represented that he led the working group for drafting and enacting China's first securities law. He also purportedly served as a key member of the stock issuance examination board appointed by the State Council. In other words, FF had no reason to suspect that Liu either could not, or would not, deliver the guarantees and deliverables he assured FF he could and would provide." ACC ¶21.<br><br>"Liu's CV expressly listed that his areas of expertise encompass: banking and finance, mergers and acquisitions, investments and transactions, and regulatory and disputes with a strong emphasis on cross-border transactions involving Asia and Greater China. [Liu] has extensive experience representing Asia- and Greater China-based companies conducting business in the United States and other parts of the world, including in such industries as financial institutions and investment entities, real estate and infrastructure, aviation and transportation, energy and resources, real estate and infrastructure, aviation and transportation, energy and resources, and manufacturing and |

| | | | |
|---|---|---|---|
| | | | technology. He also advises US and foreign companies doing business in Asia and Greater China, including in market access, direct investments, public and private funds, capital markets, technology transfers and regulatory matters." ACC ¶24.<br><br>"The CV listed impressive roles that Liu purportedly held in managing several law firms' China and Asia practices, the most recent firm being Mayer Brown LLP ("Mayer"). Liu's CV also described himself as a "leader of [Mayer's] US-China practice initiatives," and touted that he was "instrumental in connecting Mayer Brown's offices in Asia, Europe and the Americas." In his roles at Mayer and prior law firms, Liu claimed to have represented clients in all major categories of transactions." ACC ¶25<br><br>"Critically, Liu, by his CV and oral representations during the October 17, 2017 meeting and subsequent pre-hiring calls and meetings, including, but not limited to the January 21, 2017 meeting with Wang, claimed to have vast experience working with investors, public and private funds, and capital markets, which FF viewed as critical, having recently entered into |

| | | | |
|---|---|---|---|
| | | | the transaction with Evergrande and knowing that it would be seeking additional financing." ACC ¶26.<br><br>"During that same initial October 17, 2017 meeting, and the subsequent pre-hiring calls and meetings, including, but not limited to the January 21, 2017 meeting with Wang, and building off of his purported experience at Mayer, Liu also assured FF that he could guide FF through litigation, including FF's then pending litigation against EVelozcity, Inc. ("EVelozcity"). He specifically touted that he would personally lead the effort. Further, he guaranteed that, based on hisbexperience and guidance, FF would 'win' its lawsuit against EVelozcity." ACC ¶27.<br><br>"Liu represented that he could connect FF with individuals from top investment firms, such as the CEO of Blackstone, and top banks, such as key bankers at Goldman Sachs, Citibank, and Lazard. Liu represented that these connections would be part of his plan to bring FF to financial stability and an IPO in 2019." ACC ¶29. |