ALAN J. KESSEL, Bar No. 293601
alan.kessel@troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendants
SMART KING LTD., JIAWEI WANG, and CHAOYING DENG
and Defendant and Counterclaimant FARADAY&FUTURE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HONG LIU, <br><br>   Plaintiff, <br><br> v. <br><br> FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG, <br><br>   Defendants. <br><br> AND RELATED COUNTERCLAIM. | Case No. 2:20-cv- 08035-SVW-JPR <br><br> Honorable Stephen V. Wilson <br><br> **COUNTERCLAIMANT FARADAY&FUTURE INC.'S OPPOSITION TO PLAINTIFF HONG LIU'S *EX PARTE* APPLICATION FOR AN EXTENSION OF TIME TO RESPOND TO FARADAY&FUTURE INC.'S SECOND AMENDED COUNTERCLAIM; MEMORANDUM OF POINTS AN AUTHORITIES IN SUPPORT THEREOF ATTACHED HERETO** <br><br> [Filed concurrently with Declaration of Jeffrey M. Goldman] <br><br> Discovery Cutoff Date: April 23, 2021 <br> Pre-Trial Conf: Waived <br> Trial Date: June 8, 2021 |

114502289

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1
II. PROCEDURAL HISTORY ............................................................................ 3
    A. The Court Denies Liu's Motion to Dismiss the First Amended Complaint on Mootness Grounds. ....................................................... 3
    B. The SACC's Allegations Are Premised Upon Liu's Violations of the Rules of Professional Conduct ....................................................... 5
    C. FF Attempts to Meet-And-Confer With Liu Regarding FF's Motion for Judgment on the Pleadings as to Liu's Claims ................... 7
    D. Liu Violates Local Rule 7-3 By Failing To Meet-And-Confer at Least Seven Days Before His March 25, 2021 Filing Deadline ........... 9
III. ARGUMENT ................................................................................................ 11
    A. The Court Should Deny the Application As There is No Exigency ............................................................................................. 11
    B. The Application Will Prejudice FF, But Its Denial Would Not Prejudice Liu in Any Way. ................................................................ 12
IV. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beery v. State Bar*,
   43 Cal. 802 (1987) .................................................................................................. 6

*BGJ Assocs. v. Wilson*,
   113 Cal. App. 4th 1217 (2003) .............................................................................. 6

*Doe v. United States*,
   419 F.3d 1058 (9th Cir. 2005) ............................................................................... 8

*General Dynamics Corporation v. Superior Court*,
   7 Cal. 4th 1164 (1994) ........................................................................................... 8

*Miklosy v. Regents of Univ. of Cal.*,
   44 Cal. 4th 876 (2008) ........................................................................................... 7

*Singer v. Live Nation Worldwide, Inc.*,
   No. SACV 11-0427 ............................................................................................. 13

*Thomas v. Stars Entm't LLC*,
   2016 WL 844799 (C.D. Cal. Fed. 29, 2016) ......................................................... 7

**Other Authorities**

California Rules of Professional Conduct 3-310, 3-300, and 4-200 .......................... 7

Fed. R. Civ. P. 7(a) ..................................................................................................... 8

Fed. R. Civ. P. 9 ......................................................................................................... 8

Fed. R. Civ. P. 10(b)(5) .............................................................................................. 8

Fed. R. Civ. P. 15(a)(3) ............................................................................................ 13

Fed. R. Civ. P. Rule 12 ............................................................................................ 14

Fed. R. Civ. P. Rule 12(c) .......................................................................................... 8

Fed. R. Civ. P. 15(a)(1) .............................................................................................. 3

Local Rule 7-3 .................................................................................................. *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page**

New York Rules of Professional Conduct 1.7, 1.7, and 1.8 ........................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff and Counter-Defendant Hong Liu's ("**Liu**") *Ex Parte* Application for an Extension of Time to Respond to Faradary&Future Inc.'s Second Amended Counterclaim (the "**Application**") should be denied for several independently dispositive reasons.

*First*, there is no emergency. To the contrary, Liu not only waited *12 days after* Counterclaimant Faraday&Future Inc. ("**FF**")'s **March 11**, 2021 filing and service of its Second Amended Counterclaim (**"SACC"**), and Defendants' respective Second Amended Answers (collectively, the **"SAAs"**) to file his alleged "emergency" Application on **March 23**, 2021, seeking an extension of time to move to dismiss, and to strike, the SACC and the SAAs, respectively, but also tellingly never mentioned, let alone asked, FF or Defendants for *any* extension of time at any point during that 12-day period. As established by his own dilatory conduct, there no exigent circumstances prerequisite to Liu's filing of the Application exist, let alone any which remotely warrant this Court's intervention on a purported "emergency" basis of Liu's own making. That is particularly true where, if Liu wants to challenge the legal sufficiency of the SACC and SAAs, he clearly can do so by answering the SACC as required on March 25, and thereafter file a motion for judgment on the pleadings without any need for emergency, *ex parte* relief.

*Second*, the Application similarly omits any mention of the fact that, as plainly evidenced by his own "meet and confer" correspondence attached to the concurrently filed Declaration of Jeffrey M. Goldman (**"Goldman Decl."**), Liu is fully prepared not only to file his motions to dismiss and strike the SACC and the SAAs, respectively, as required on March 25, 2021, but also to move for sanctions for FF's and Defendants respective filing of those pleadings, notwithstanding the "significant litigation activity occurring in this matter" he now suddenly claims warrants the

issuance of extraordinary, *ex parte* relief.  See Goldman Decl., ¶¶ 3-4, Exs. 2-3; Application at p. 5:18.[1]

***Third,*** the documented facts omitted from the Application further establish that Liu's actual purpose in seeking emergency, *ex parte* relief to belatedly file his motions to dismiss and to strike two weeks from now on April 8, 2021, is to (i) attempt to overcome his indisputable failure to meet and confer as to those motions at least 7 days before their March 25, 2021 filing deadline as required by, and in clear violation of, Central District of California Local Rule 7-3 ("**Rule 7-3**"); and to (ii) prevent Defendants from filing a dispositive Motion for Judgment on the Pleadings as to Liu's Complaint (**"MJOP"**) by keeping the pleadings in this case "open" until after expiration of the current May 11, 2021 motion cut-off date.  *See* Goldman Decl., ¶¶ 5-7, Exs. 4-5.  To those ends, the Application notably fails to mention that, prior to its filing, FF and Defendants offered Liu the following two alternatives, either one of which would have permitted Liu to test the SACC's and SAAs' legal sufficiency without prejudicing FF's ability to similarly test the legal sufficiency of Liu's Complaint via the MJOP:  (1) agree that FF's MJOP could be filed within seven days after the close of the pleadings; or (2) answer the SACC by the March 25, 2021 filing deadline, and thereafter file a motion for judgment on the pleadings as to the SACC and SAAs based upon the same arguments Liu contends would have supported his motions to dismiss and to strike those pleadings had he complied with Rule 7-3's meet and confer requirements, resulting in the "closing" of the pleadings and

---

[1] Moreover, contrary to its unsubstantiated contention that such "activity" has "limit[ed] the resources Plaintiff's counsel has had to prepare [his] responses to FF's Second Amended Counterclaim," the facts *omitted* from the Application establish not only that five separate attorneys have appeared for Liu (with just one withdrawing this month), with a sixth attorney participating in a meet-and-confer call, but also that after filing the Application, Liu's counsel served six deposition notices rather than work on their motions to dismiss and strike.  Goldman Decl., ¶¶ 4, 8; Ex. 6.

subsequently enabling FF's filing of the MJOP. (*Id.* at Ex. 3.) In confirmation of his true purpose in filing the Application, Liu not only rejected each of those alternatives, but also makes studiously ignores them in the Application.

*Fourth,* Liu's claims as to the timing and substance of the SACC similarly cannot withstand scrutiny. That is particularly true where the Court expressly ruled in dismissing Liu's prior motion to dismiss, that FF's "Second Amended Counterclaim is properly filed as of right under Rule 15(a)(1)" [Dkt. No. 98], and where a review of the docket establishes that the filings in this case have taken place in the ordinary course after a delay occasioned by the transfer of the action to the Central District of California from New York [Dkt. No. 97].

*Finally,* as manifest from each of the foregoing reasons, standing alone, the Application not only is legally and factually baseless, but also represents a sanctionable misuse of the *ex parte* process intended to prejudice FF's and Defendants' ability to test the legal sufficiency of Liu's Complaint via MJOP which, if granted, will substantially, if not entirely, eliminate the need for trial. As further detailed below, the Application should be denied. [Dkt. 55 at § 5.]

## II. PROCEDURAL HISTORY

### A. The Court Denies Liu's Motion to Dismiss the First Amended Complaint on Mootness Grounds.

On January 28, 2021, the Court granted Plaintiff's motion to dismiss certain of FF's counterclaims and certain of Defendants' fraud-based affirmative defenses with leave to amend. [Dkt. 79.] FF thereafter filed its First Amended Counterclaim ("**FAC**"), and Defendants respectively filed their First Amended Answers (collectively, the "**FAAs**"), on February 18, 2021. [Dkt. 81-83.]

On March 2, 2021, counsel for the parties met and conferred to discuss Liu's contemplated motion to dismiss the FAC and the FAAs, during which Defendants advised Liu of the contemplated filings of the SACC and the SAAs. *See* Declaration of Lauren Grochow (**"Grochow Decl."**) at ¶ 2, available at Dkt. No. 97[1]. Two

days later, Liu filed the motion to dismiss the FAC and the FAAs on March 4, 2021, in violation of Rule 7-3's prohibition on its filing until "at least seven (7) days" after the parties' meet and confer conference. [Dkt. No. 90.] Notably, FF's counsel had advised Liu's counsel of this seven day requirement during the March 2, 2021 conversation, and that filing a motion to dismiss without waiting the full seven days would be improper under Local Rule 7-3. Goldman Decl., ¶ 7. That same day, Defendants reconfirmed, in writing, that they would timely file the SACC and the SAAs, and provided Liu with the governing Ninth Circuit and Central District Court law entitling them to do so and mooting the Motion as a matter of law. Grochow Decl., ¶ 3, Ex. 1. Liu nevertheless refused to withdraw his improperly filed motion. *Id*.

Consistent with FF's prior March 4, 2021 written confirmation, on March 11, 2021, FF filed the SACC, and FF and Smart King filed the SAAs. [Dkt. 93-95.] Despite admitting that Defendants' filing of the SACC and the SAAs rendered it entirely moot, Liu continued to refuse to withdraw the motion despite Defendants' request that he do so. Grochow Decl., ¶ 4, Ex. 2.

On March 15, 2021, Defendants filed their Opposition to Liu's motion, explaining that the filing of the SACC and the SAAs mooted that motion, and that FF could file these amended pleadings as a matter of right. One day later, the Court ruled that:

> Defendants Second Amended Counterclaim is properly filed as of right under Rule 15(a)(1). See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ([A partys Rule] 15(a)(2) amendment, filed first in time, cannot be construed as a waiver or exhaustion of his automatic right to amend under 15(a)(1), so long as that amendment was timely.). The motion to dismiss is therefore denied as moot. The hearing set for 04/05/2021 is vacated and off-calendar.

[Dkt. No. 97].

This ruling, in and of itself, defeats any claim of untimeliness by Liu. *See* Application, p. 4:1-4. So does the procedural history of this case, where (i) the action was transferred from the United States District Court for the Southern District of New York on August 26, 2021 [Dkt. No. 39]; (ii) FF's initial Counterclaim was only filed on November 19, 2021 [Dkt. No. 72]; (iii) the order granting the motion to dismiss the fraudulent inducement and rescission counterclaims was entered on January 28, 2021 [Dkt No. 79]; and (iv) the SACC was filed less than a month-and-a-half later, on March 11, 2021. [Dkt. No. 95]. Put simply, the progression of the pleadings has been ordinary, and FF has not engaged in any delay.

### B.  The SACC's Allegations Are Premised Upon Liu's Violations of the Rules of Professional Conduct.

In addition to failing to make any mention of Liu's violation of Rule 7-3, the Application also misrepresents FF's claims in the SACC and omits key allegations. As evident on its face, the gravamen of the SACC is that Liu, while a Mayer Brown LLP partner leading the team representing FF, simultaneously negotiated the Employment Agreement at issue in this case with FF, without abiding by the Rules of Professional Conduct designed to protect a client from the results of the inherent conflicts arising from an attorney entering into a transaction with his client.

To attempt to avoid that fact, Liu mischaracterizes FF's claim in the Application, stating, for example that, "because Mr. Liu was an attorney at a law firm (Mayer Brown) with which FF had an active engagement,[2] Mr. Liu committed fraud against FF by supposedly not informing FF that, in connection with the negotiation and drafting of the Employment Agreement and Director Compensation Agreement, it should retain outside independent counsel and that the agreed-upon

---

[2] Liu was not merely an attorney at Mayer Brown. Rather, he was the partner designated in FF's engagement letter with Mayer Brown as both the "FF Client Team Leader & Main Contact Partner" and the firm's signatory. Goldman Decl. ¶ 2; Ex. 1 [Mayer Brown Engagement Letter].

employment terms were purportedly unfairly advantageous to Plaintiff." (Application at p. 4:9-14).

Liu's omission of the full nature of FF's claims is equally misleading, as his statement that the SACC's gravamen is merely that "a company's outside counsel cannot join the company as its GC." Goldman Decl., ¶ 3; Ex. 2 [March 19, 2021 Nachmani e-mail]. In reality, however, the plain gravamen of the SACC is that a company's outside counsel cannot join a company as its general counsel if the terms of the employment provide a multi-million dollar windfall and an ownership interest in the company, and/or incentivize bad conduct by the attorney to accelerate his payment and ownership rights, ***if the attorney has not complied with the Rules of Professional Responsibility and related statutory authority in negotiating his agreement with the company designed to protect the company from the very undue influence that the attorney has by virtue of his unique position of trust with the client***. Indeed, the law mandates a *presumption* of undue influence on Liu's behalf by virtue of FF's pleaded conduct. *See, e.g., BGJ Assocs. v. Wilson*, 113 Cal. App. 4th 1217, 1227-28 (2003).

While Liu certainly failed to advise FF to consult with independent counsel to protect FF's interests, that is not even close to the totality of the SACC's allegations against Liu. Indeed, the Application studiously avoids the most obvious of Liu's failings, including, but not limited, to:

- Liu's failures to obtain informed written consent and a conflict waiver signed by FF;
- Liu's failure to provide FF, "all that reasonable advice against himself that he would have given him against a third person" (*Beery v. State Bar*, 43 Cal. 802, 813 (1987));
- Liu's failure to register as in-house counsel in California while performing as FF's Global General Counsel, such that Liu was practicing law in the state without a license;

- Liu's failure to present the multi-million dollar employment agreement to FF in Mandarin, the native language of FF's negotiator; and

- Liu's failure to enter into terms that were fair and reasonable to FF (such as a clause that accelerates millions of options in Liu's failure as a consequence (read: reward) for his being found liable for breach of fiduciary duty to FF by a court).

*See, e.g.,* SACC at ¶¶ 45, 49, 76-111, 128-146.

### C. FF Attempts to Meet-And-Confer With Liu Regarding FF's Motion for Judgment on the Pleadings as to Liu's Claims.

On March 15, 2021—the day before the Court denied Liu's Motion to Dismiss the FACC as moot—FF sent correspondence to Liu's counsel seeking to institute the Local Rule 7-3 meet-and-confer process in connection with FF's MJOP. Goldman Decl., ¶ 5; Ex. 4 [March 15, 2021 correspondence]. As set forth in that correspondence, the Complaint is legally specious in light of, among other things, Liu's many violations of the governing Rules of Professional Conduct, and his deficiently pleaded, unsupportable claims. Specifically, as established in that letter:

- Liu's Intentional Infliction of Emotional Distress claim is undeniably barred under California's Workers Compensation Act. *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008); *Thomas v. Stars Entm't LLC*, 2016 WL 844799 (C.D. Cal. Fed. 29, 2016) (where "alleged conduct occurred while plaintiff was either at work, performing functions required by his employment, or attending meetings regarding his work," and where "the majority, if not all, of . . . alleged misconduct relates to . . . efforts to discipline, and ultimately fire, plaintiff," a claim for intentional infliction of emotional distress is based on a "normal part of the employment relationship" and is therefore barred by the Worker's Compensation Act) (citations omitted).

- Liu's Breach of Contract cause of action fails because Liu failed to allege compliance with New York Rules of Professional Conduct 1.7, 1.7, and 1.8, as well as with California Rules of Professional Conduct 3-310, 3-300, and 4-200, and therefore failed to plead the existence of

a legally enforceable contract between Liu, FF, and Smart King under governing law.

- Liu's claim for breach of Section 10(b) of the Exchange Act and Rule 10(b)(5) fails because no options were "purchased" by Liu simply because he allegedly gave up an "income stream and retirement benefits from his Mayer Brown Partnership," as he alleged a paragraph 120 of his Complaint.

- Liu's fraudulent inducement and negligent misrepresentation claims fail because: (i) the very exhibit to his Complaint contradicts his allegations about representations that were made by FF; (ii) the claims fail to meet the Fed. R. Civ. P. 9 standard; (iii) the claims fail to adequately allege causation; and (iv) the economic loss rule bars these claims.

- Liu's wrongful termination in violation of public policy claim fails because: (i) he failed to allege any statutory or constitutional provision giving rise to a fundamental public policy; (ii) he failed to allege the facts required for an in-house attorney to assert a wrongful termination claim required by *General Dynamics Corporation v. Superior Court*, 7 Cal. 4th 1164, 1189-90 (1994); and (iii) he cannot maintain this claim without violating his ethical obligations to FF. In fact, "the in-house counsel who publicly exposes the client's secrets will usually find no sanctuary in the courts[,]" and where, as here, "the elements of a wrongful discharge in violation of fundamental public policy claim cannot, for reasons peculiar to the particular case, be fully established without breaching the attorney-client privilege, ***the suit must be dismissed in the interest of preserving the privilege.***" *Id.* at 1190 (emphasis added).

In his response, Liu did not address any of the foregoing points, but rather stated that, "a motion under Rule 12(c) may filed only '*[a]fter the pleadings are closed*.'" Fed. R. Civ. P. 12(c). Because Rule 7(a) of the Federal Rules of Civil Procedure designates a counterclaim as a pleading, the Ninth Circuit holds that, for the purposes of Rule 12(c), the pleadings are closed only when the counterclaim too is closed. *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)." Goldman Decl., ¶ 6; Ex. 5 [March 16, 2021 Nachmani e-mail]. Liu thereafter proceeded to claim that, "in the event that Plaintiff moves to dismiss some or all of FF's new-

fangled counterclaims, the pleadings will be closed only after the Court resolves that motion, subject to Plaintiff's having filed his reply brief." *Id*.

Put simply, once Liu realized that his meritless claims would be challenged, he decided to keep the pleadings open with a meritless motion to dismiss in order to prevent the Court from the voiding his ill-gotten Employment Agreement on FF's and Defendants' MJOP as required under governing law.

### D. Liu Violates Local Rule 7-3 By Failing To Meet-And-Confer at Least Seven Days Before His March 25, 2021 Filing Deadline.

Liu's deadline to meet-and-confer with FF in connection with any motion to dismiss the SACC or strike the Second Amended Answer ("SAA") was March 18, 2021 (seven days before the filing deadline).

Yet, it was only on Friday, March 19, 2021 at 6:30 p.m. PT – after the deadline had passed entirely – that Liu even sent an e-mail asking for the first time to schedule a meet-and-confer *for the following week*. Goldman Decl., ¶ 3; Exh. 2. (March 19, 2021 Nachmani e-mail). That email set forth in detail Liu's alleged positions on why the SACC and the SAAs should be dismissed and stricken, respectively.

Thus, far from his professed inability to craft a motion for another two weeks, Liu's correspondence plainly shows that in fact the issues had been analyzed, and that in fact he was and is fully prepared to file his motion on March 25, 2021. For example, Liu pointed to, "Sections I.A-E of Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Dismiss FF's Amended Counterclaim," making clear that Liu simply intended on recycling already-conducted research to challenge the SACC. Goldman Decl., ¶¶ 3 and 4; Exh. 2.

FF responded to Liu's correspondence seeking to set up a meet-and-confer conversation on the following business day, March 22, 2021. Goldman Decl. at ¶¶ 3, 4; Exh. 2. After explaining Liu's now repeated violation of Local Rule 7-3, FF stated that:

> Liu's continuing failure and refusal to abide by Central District of California Local Rule 7-3 is prejudicial to Counterclaimant as it is a tactic now transparently being used by Liu to attempt to delay the pleadings from being 'closed' in order to prevent Counterclaimant from filing its previously referenced Motion for Judgment on the Pleadings in response to Liu's Complaint.

*Id.* at p. 1.  FF then asked Liu to:

> agree to extend the current May 11, 2021 motion cut-off date to allow Counterclaimant to file the Motion for Judgment on the Pleadings up to seven days after the pleadings are 'closed,' absent which Counterclaimant reserve[s], and will pursue, all appropriate actions available to it in response to Liu's open flouting of Local Rule 7-3, and to redress the obvious and intended prejudice resulting from that violation.

*Id.*  Liu did not agree to that proposal, even though he would not be prejudiced.

Instead, Liu met-and-conferred with FF on March 23, 2021 (although FF expressly reserved its rights to contend that the motion is improper, prejudicial, and violates of Local Rule 7-3 and FF's right to file the MJOP). Goldman Decl., ¶ 4. Consistent with his March 19, 2021 e-mail, Liu's counsel again pointed to law cited in Liu's prior motion to dismiss during his meet-and-confer call with FF's counsel when FF's counsel asked for legal authorities, if any, concerning the pleading standard applicable to FF's claims particular to Liu's violations of Rules of Professional Conduct. *Id.*

During that meet-and-confer call, and for the first time, Liu gave notice of the Application. Goldman Decl., ¶ 4. FF's counsel explained that Liu could avoid prejudicing FF by simply filing an Answer on March 25, 2021 (as he must in light of his Rule 7-3 violation) and then later moving for judgment on the pleadings on the same grounds that would support a motion to dismiss. *Id.* Liu did not accept that proposal. *Id.*

### III. ARGUMENT

#### A. The Court Should Deny the Application As There is No Exigency.

*Ex parte* relief is expressly reserved for emergency motions. As this Honorable Court's New Case Order makes clear:

> 5. EX PARTE APPLICATIONS: Ex parte applications are considered by the papers and are not set for hearing. This Court only allows ex parte applications when extraordinary relief is necessary. Counsel are advised to file and serve their ex parte applications as soon as they realize that extraordinary relief is necessary. Sanctions may be imposed for misuse of ex parte applications. See In Re: Intermagnetics America, Inc., 101 Bankr. 191 (C.D. Cal. 1989). [Dkt. No. 55 at ¶ 4].

Liu has violated both of the Court's requirements:

***First***, he did not file and serve the Application "as soon as [he] realize[d] that extraordinary relief is necessary." Even crediting Liu's contentions in the Application, which the Court should not, Liu was served with the SAC on March 11, 2021, at which point he was made aware of FF's claims. [Dkt. 95]. Rather than filing the Application at that time, Liu waited ***twelve days***, until March 23, 2021, to file his *ex parte* Application. Liu never explains why he waited to file his Application. Nor can he, because if his proffered reason for needing *ex parte* relief – *i.e.*, that the new claims raised in the SAC require too much time to analyze in light of the pending litigation tasks are taken at face value (and again, they should not be given the parties' correspondence flatly belies it)—there never was and could have been no good reason to wait twelve days to seek an extension. Indeed, and what should put to bed any claims of supposed exigency, Liu never even asked FF for an extension, at least not until about an hour before filing the Application (which was obviously already drafted), and not until after he had already missed the meet and confer deadline by several days.

This is the precise sort of situation contemplated by *In re: Intermagnetics Am., Inc.*, 101 Bankr. 191, 193 (C.D. Cal. 1989), as not supporting *ex parte* relief. ("Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to 'cut in line' ahead of those litigants awaiting determination of their properly noticed and timely filed motions.") And this ground alone mandates that the Court deny the Application.

***Second***, there is no showing justifying any "extraordinary relief," at least none that is not necessitated by Liu's own dilatory conduct. In fact, as is obvious from his detailed meet-and-confer letter and contrary to his assertion in the Application, Liu could have, and would have, timely filed his motion to dismiss had he not violated Rule 7-3. *See* Exh. 2 to Goldman Decl. The request to move his responsive pleading deadline only occurred once FF pointed out to Liu that he had failed to abide by Rule 7-3, and it is telling that the Application attempts to bury this issue. Likewise, Liu's refusal to accept two separate reasonable proposals from FF so as to ensure that FF is not prejudiced by Liu's L.R. 7-3 violation by protecting its ability to file the MJOP demonstrates that there is nothing "extraordinary" needed here. Liu could have obtained, in substance, precisely what he wanted – the ability to challenge the SACC on pleading standard grounds – it is just that he wanted more to prejudice FF.

The Application should also be denied on this separate and independent basis.

### B. The Application Will Prejudice FF, But Its Denial Would Not Prejudice Liu in Any Way.

Both parties contend the others' claims can and should be tested on pretrial motion practice. Indeed, and as fully explained in FF's meet-and-confer correspondence, such motion practice as to Liu's claims is very likely to not only limit any issues for which trial (currently scheduled for June 8, 2021) may be needed,

but will very likely obviate the need for any trial at all in this matter.  But, due to a quirk the case's procedural history, granting the Application would almost certainly prevent the Court from so scrutinizing Liu's claims before trial.  On the other hand, denying the Application would not in any way prevent the Court from testing FF's own claims as Liu apparently would like the Court to do, and thus would not prejudice Liu in any way.

The procedural history makes this manifest.  FF filed and served the SAC on March 11, 2021.  Under Fed. R. Civ. P. 15(a)(3), Liu's deadline to respond is March 25, 2021.

On March 19, 2021, after the close of business, Liu sent a letter providing his positions on why he believed the SAC was subject to attack, and requesting to meet-and-confer on March 22 or 23, 2021.  Exh. 2 to Goldman Decl.  These latter two dates fell, respectively, three and two days before Liu's filing deadline.  Consequently, Liu violated Local Rule 7-3, and he must file an Answer.  *See, e.g., Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427 DOC (MLGx), 2012 U.S. Dist. LEXIS 5196, at *3 (C.D. Cal. Jan. 13, 2012) (denying MSJ outright for counsel's failure to abide by Local Rule 7-3).

Notably, this is not Liu's first Local Rule 7-3 violation.  Just three weeks ago Liu again failed to timely meet-and-confer with FF under Local Rule 7-3 by waiting to conduct a "thorough" discussion on his intended motion to dismiss the First Amended Complaint on March 2, 2021, which was just two days before his deadline to move to dismiss.  FF pointed out that failing to Liu verbally, in correspondence, and in the very court filing that led to the Court dismissing Liu's First Amended Complaint as moot and agreeing with the propriety of the SAC's filing.  [Dkt. No. 97].  Yet he repeated the violation.

In addition to being a repeat offender, Liu also has rebuffed FF's very reasonable proposals to ensure that all parties are treated fairly and not prejudiced.  Yet, left with the need to answer the SAC, Liu has instead chosen to burden this Court

and FF with the unnecessary Application seeking two extra weeks to file his meritless motions. Such an extension of time for Liu's responsive pleading will substantially prejudice FF because the motion cut-off date in this action is May 11, 2021. [Dkt. No. 96]. This Court hears civil motions on Mondays, so the earliest hearing date will be May 10, 2021, leaving just one day before the cut-off. It is unclear whether that motion would be ruled upon on May 10, and even if it is, it is unclear whether it would be denied with an Answer to later be filed, or granted with leave to amend. In either event, the pleadings will not be "closed" so as to enable FF to file its MJOP prior to the motion filing cutoff (and even if FF could file on May 11, 2011, the hearing date would fall after the trial of this action commenced), resulting in substantial prejudice to FF.

Meanwhile, there would be no prejudice to Liu if he simply filed his Answer on March 25, 2021. For example, he can still file his own motion for judgment on the pleadings making the same arguments Liu wishes to make on a motion to dismiss. The only reason for not agreeing to this position is to keep the pleadings from "closing" and thus preventing FF from filing its MJOP.

## IV. CONCLUSION

Liu's effort to move his motion to dismiss filing date by two weeks is not properly entertained as an *ex parte* application for the reasons stated above. Those same reasons make clear that the effort to move the deadline is designed to improperly remedy Liu's Rule 7-3 violation and concurrently prejudice FF. To the extent the Application is denied and Liu magically files a fully-formed Motion to Dismiss on March 25, 2021 in violation of Rule 7-3, the Court will know that Liu was misrepresenting the reasons for requesting *ex parte* relief. Given the foregoing, FF respectfully requests that the Court deny the Application and require Liu to file an Answer (without any Rule 12 challenge to the pleadings) on March 25, 2021.

| | | |
|---|---|---|
| 1 | Dated:  March 24, 2021 | Respectfully submitted, |
| 2 | | TROUTMAN PEPPER HAMILTON SANDERS LLP |
| 3 | | |
| 4 | | By:  /s/ Jeffrey M. Goldman |
| 5 | | Jeffrey M. Goldman |
| 6 | | Attorneys for Defendants SMART KING LTD., JIAWEI WANG, and CHAOYING DENG and Defendant and Counterclaimant FARADAY&FUTURE INC. |

114502289

- 15 -

FARADAY&FUTURE INC.'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION