Kevin D. Hughes (Bar No. 188749)
FOUNDATION LAW GROUP LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: 424.253.1266
Email:  kevin@foundationlaw.com

Amiad Kushner (*pro hac vice*)
Akushner@seidenlawgroup.com
Jake Nachmani (*pro hac vice*)
Jnachmani@seidenlawgroup.com
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Telephone:   (646) 766-1914
Facsimile:    (646) 304-5277

*Attorneys for Plaintiff/Counter-Defendant,
Hong Liu*

# UNITED STATES DISTRICT COURT FOR

## THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG<br><br>Defendants.<br><br>FARADAY&FUTURE INC.,<br><br>Counterclaimant,<br><br>v.<br><br>HONG LIU,<br><br>Counter-Defendant. | **Case No:** 2:20-cv-08035-SVW-JPR<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT FARADAY&FUTURE INC.'S SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANT FARADAY&FUTURE INC.'S AND DEFENDANT SMART KING LTD.'S AFFIRMATIVE DEFENSES, AND FOR SANCTIONS**<br><br>Filed concurrently with Declaration of Jake Nachmani and [Proposed] Order<br><br>Second Amended Counterclaim filed on: March 11, 2021<br><br>Judge:         Hon. Stephen V. Wilson<br>Trial Date:   June 8, 2021 |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 3

ARGUMENT .............................................................................................................. 4

I.     THE SACC FAILS TO STATE A CLAIM .......................................................... 5

A.    The Attorney Ethics and Fiduciary Duty Counterclaims Should Be Dismissed .. 5

B.    The Constructive Fraud Counterclaim Should be Dismissed .............................. 9

C.    The Unconscionability Counterclaim Should Be Dismissed ............................. 10

D.    The California Business Practices Counterclaim Should Be Dismissed ........... 14

E.    The Remaining Counterclaims for Breach of Contract, Breach of Fiduciary, And Declaratory Relief Should be Dismissed ......................................................... 15

II.    THE AFFIRMATIVE DEFENSES SHOULD BE STRICKEN ....................... 18

III.   THE COURT SHOULD SANCTION FF AND ITS COUNSEL ..................... 19

A.    FF Omits the Material Facts That Sidley Austin Reviewed The Agreements And That Plaintiff Was Advised of Sidley Austin's Role .......................................... 20

B.    FF Omits The Material Fact That Plaintiff Was A Registered And Certified In-House Counsel In California ............................................................................... 22

CONCLUSION ......................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
    465 F.3d 946 (9th Cir. 2006) ........................................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 4, 18

*Bank Leumi USA v. R&R Food Servs. LLC*,
    2018 WL 6003580 (C.D. Cal. July 13, 2018) ........................................... 16

*Bauer v. Atlantis Events, Inc.*,
    2014 WL 12603112 (C.D. Cal. Mar. 5, 2014) ........................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 4, 18

*Berger v. Home Depot U.S.A., Inc.*,
    476 F. Supp. 2d 1174 (C.D. Cal. 2007) ..................................................... 16

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*,
    2014 WL 116442 (N.D. Cal. Jan. 13, 2014) .............................................. 13

*Brooks v. GMAC Mortg. Servicing LLC*,
    2011 WL 13220320 (C.D. Cal. May 12, 2011) ......................................... 10

*Brown v. Blackbaud, Inc.*,
    2019 WL 4509203 (C.D. Cal. July 25, 2019) ............................................ 14

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................... 5

*Caronia v. JVC Mobile Co. of Am.*,
    2009 WL 10671948 (C.D. Cal. Feb. 9, 2009) ........................................... 14

*Chavez v. CITImortgages, Inc.*,
    2012 WL 12895843 (C.D. Cal. Dec. 19, 2012) ......................................... 15

*Craig Plumley v. Sempra Energy*,
    2021 WL 754841 (9th Cir. Feb. 26, 2021) ................................................ 23

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019)........................................................................10

*DeSalvo v. Islands Restaurants, L.P.*,
    2020 WL 4035071 (C.D. Cal. July 16, 2020) ..........................................19

*EduMoz, LLC v. Republic of Mozambique*,
    2015 WL 13697385 (C.D. Cal. Apr. 20, 2015)...........................................9

*Fifty-Six Hope Rd. v. Jammin Java Corp.*,
    2017 WL 2457487 (C.D. Cal. Jan. 25, 2017) .....................................10, 12

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001)..............................................19

*Gallagher v. Capella Educ. Co.*,
    2019 WL 8333532 (D. Or. Dec. 23, 2019) ...............................................16

*Gibson Brands, Inc. v. John Hornby* Skewes & Co.,
    2014 WL 4187979 (C.D. Cal. Aug. 22, 2014)..........................................18

*Greene v. Greene*, 56 N.Y.2d 86 (1982)........................................................8

*Hann v. Canyon Mobile Home Park*,
    2017 WL 10519668 (C.D. Cal. Nov. 9, 2017)............................................9

*Hrothgar Invs., Ltd. v. Houser*,
    2015 WL 5853634 (N.D. Cal. Aug. 18, 2015)..........................................16

*In re Action Dev. Tax I.D. 02-0549448*,
    2007 WL 4046263 (N.D. Cal. Nov. 15, 2007)..........................................23

*In re Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*,
    2012 WL 1123863 (N.D. Cal. Apr. 3, 2012) ............................................16

*In re Girardi*, 611 F.3d 1027 (9th Cir. 2010)........................................19, 21

*In re Goldman*, 2010 WL 11526899 (C.D. Cal. June 3, 2010) ....................14

*Indiezone, Inc. v. Rooke*, 720 F. App'x 333 (9th Cir. 2017)........................23

*Interscope Records v. Time Warner, Inc.*,
  2010 WL 11505708 (C.D. Cal. June 28, 2010) ........................................18

*James River Ins. Co. v. Andrade & Associates*,
  2010 WL 11595834 (C.D. Cal. Oct. 26, 2010) .........................................17

*Justus v. Argosy Int'l, Inc.*,
  2011 WL 13220309 (C.D. Cal. July 18, 2011). ........................................15

*Kaui Scuba Ctr., Inc. v. PADI Americas, Inc.*,
  2011 WL 2711177 (C.D. Cal. July 13, 2011) ...........................................15

*Kent v. Microsoft Corp.*, 2013 WL 3353875 (C.D. Cal. July 1, 2013) .......................16

*Krage v. City of Lakewood*,
  2020 WL 6694327 (C.D. Cal. Sept. 18, 2020).............................................6

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ................................................4

*Landa v. Bkeier*, 1 Misc. 3d 902(A), 781 N.Y.S.2d 625 (Sup. Ct. 2003) ....................6

*Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, 2020 WL 5913897 (C.D. Cal. Aug. 27, 2020) .................................................23

*Malhiot v. S. California Retail Clerks Union*,
  735 F.2d 1133 (9th Cir. 1984)..................................................................21

*Miron v. Herbalife Int'l, Inc.,* 11 Fed. Appx. 927 (9th Cir.2001)................................15

*MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai*,
  2014 WL 12597149 (C.D. Cal. Aug. 13, 2014)........................................17

*Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) ..................................17

*Odish v. Cognitive Code Corp.*,
  2015 WL 11347592 (C.D. Cal. May 27, 2015) ..........................................6

*Patton v. Experian Data Corp.*,
  2018 WL 6184773 (C.D. Cal. Sept. 12, 2018)...........................................15

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,*
  55 Cal. 4th 223 (2012)............................................................................10

*Rejuso v. Brookdale Senior Living Communities, Inc.,*
  2019 WL 6735124 (C.D. Cal. May 22, 2019). ......................................13

*RePET, Inc. v. Zhao,*
  2016 WL 11634745 (C.D. Cal. Sept. 2, 2016)........................................17

*Richmond v. Allianz Life Ins. Co.*, 168 F.3d 501 (9th Cir. 1999)..................9

*Roberts v. Gainsforth*, 2014 WL 12596584 (C.D. Cal. Nov. 24, 2014)........10

*Rockefeller v. Perkins Coie LLP,*
  2010 WL 11672230 (C.D. Cal. Sept. 2, 2010)........................................13

*Rodriguez v. Experian Servs. Corp.,*
  2015 WL 12656919 (C.D. Cal. Oct. 5, 2015). ......................................14

*Sadowski v. Internet Brands, Inc.,*
  2018 WL 3219374 (C.D. Cal. June 28, 2018 ) ......................................19

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.,*
  6 Cal. 5th 59 (2018)..................................................................................8

*Shroyer v. New Cingular Wireless Servs., Inc.,*
  622 F.3d 1035 (9th Cir. 2010) ................................................................10

*The Casiano-Bel Air Homeowners Ass'n v. Philadelphia Indem. Ins.,*
  2017 WL 3273654 (C.D. Cal. Feb. 22, 2017)........................................12

*Tura v. Med. Shoppe Int'l, Inc.,*
  2010 WL 11506428 (C.D. Cal. Mar. 3, 2010) ......................................13

*UPS Cap. Corp. v. Carpartsdepot, Inc.,*
  2014 WL 12768450 (C.D. Cal. Dec. 19, 2014) ......................................13

*Vega v. Specialized Loan Servicing, LLC,*
  2020 WL 2475087 (C.D. Cal. Feb. 11, 2020)........................................10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)....................5

*Vogel v. Huntington Oaks Delaware Partners, LLC,*
   291 F.R.D. 438 (C.D. Cal. 2013) ............................................................................. 18

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006) .................................................. 12

**Codes & Rules**

28 U.S.C § 1927 ................................................................................................... 1, 19

Federal Rule of Civil Procedure 9 ....................................................................... *passim*

Federal Rule of Civil Procedure 12 ................................................................. 1, 4, 18

California Business & Professions Code Section 17200 .................................. 4, 14, 22

California Rule of Professional Conduct Rule 1.7 ................................................... 7

California Rule of Professional Conduct 3-300 ....................................................... 7

California Rule of Professional Conduct 3-310 ....................................................... 7

California Rule of Professional Conduct 4-200 ....................................................... 8

California Rule of Professional Conduct 5.5 .......................................................... 22

California Rule of Court 9.46 ................................................................................. 22

New York Rule of Professional Conduct 1.5 .......................................................... 7

New York Rule of Professional Conduct 1.7 ....................................................... 6, 7

New York Rule of Professional Conduct 1.8 .......................................................... 7

**Secondary Sources**

1 Witkin, Cal. Proc. 5th Attys § 393 (2020) ......................................................... 22

Plaintiff Hong Liu ("Plaintiff" or "Mr. Liu"), by his undersigned counsel and pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority submits this memorandum of points and authorities in support of his motion to dismiss with prejudice Faraday&Future Inc.'s ("FF") Second Amended Counterclaim (ECF 95) ("SACC"), his motion to strike FF's and FF Intelligent Mobility Global Holdings Ltd.'s (f/k/a Smart King Ltd. ("Smart King")) affirmative defenses in their Second Amended Answers (ECF 93 & 94, respectively), and his motion for sanctions (as to the motions collectively, "Motion").[1]

## PRELIMINARY STATEMENT

Enough is enough.  On January 28, 2021, the Court dismissed FF's fraud-based counterclaims because they "***entirely fail[ed] to identify what misrepresentations Plaintiff made***."  ECF 79.  When FF attempted to replead the very same fraud-based counterclaims (ECF 83), the Court on February 25, 2021 *sua sponte* indicated that the First Amended Counterclaim had the same pleading issues as FF's initial Counterclaim and invited Plaintiff to file another motion to dismiss.  ECF 86.

Now, incredibly, and for the *third* time, FF maintains that Plaintiff deceived it by tricking it into signing the Employment Agreement.  This time, however, FF attempts to cloak its fraud claim as a violation of attorney ethics rules (or relabels it as "constructive fraud" or "unconscionability" or "breach of fiduciary duty").  Not only is FF repackaging the same claims with no newly-discovered facts, but it is dilatorily bringing these repackaged claims fifteen months after the inception of this action and

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint (ECF 1) and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF 25).  "¶__" are references to paragraphs in the Complaint.  "SACC ¶__" are references to paragraphs in FF's Second Amended Counterclaim.  "SAA ¶__" are references to paragraphs in FF's Second Amended Answers (ECF 93 & 94) ("Second Amended Answers").  References to "Nachmani Decl." are to the Declaration of Jake Nachmani and the exhibits attached thereto.  Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

at the eleventh hour with just weeks until the trial.  These claims, just like FF's predecessor fraud claim, should be dismissed.

FF's attorney ethics counterclaim relies on a tortured and incorrect application of the ethics rules.  Those rules involve conflicts an attorney may have concerning *different interests* or *different matters*.  They have no application here, where the only matter alleged is Plaintiff's negotiation of an employment contract with his client.  FF's attempt to revive its fraud counterclaim as an ethics violation should be rejected.

FF's other counterclaims are equally deficient.  For example, FF's threadbare breach of contract counterclaim fails to identify a legally cognizable requirement that was purportedly breached in the Employment Agreement; at most the counterclaim amounts to a gripe FF has about Plaintiff's purported performance.  This grievance, however, is not a basis for contractual liability.  Moreover, FF seeks to convert this action's jury trial into a public performance review in which every aspect of Plaintiff's job performance (no matter how trivial) will be scrutinized, in a spectacle untethered to whether any specific term of the Employment Agreement was ever breached.  There is no basis to waste judicial time and resources on trivial, subjective allegations such as that Plaintiff "paid little attention" in meetings or "offered no concrete advice."

Notwithstanding that the SACC fails to state a claim, the SACC's allegations omit material facts, warranting sanctions on FF and its counsel.  For example, FF accuses Plaintiff of violating attorney ethics rules by failing to advise FF to retain independent counsel in reviewing the Employment and Director Compensation Agreements (collectively, the "Agreements").  Critically however, FF fails to disclose to the Court that **Plaintiff was advised by FF that FF's corporate counsel at Sidley Austin was reviewing the Agreements (and that Sidley Austin did, in fact, review and comment on the Agreements)**.  Moreover, while FF alleges that Plaintiff unilaterally "drafted" the Agreements, FF fails to discose the extent to which Sidley Austin drafted the Agreements and that Plaintiff accepted FF's proposed revisions.  In light of these omitted material facts,  there is no good faith basis for these counterclaims.

For these reasons and as set forth below, the SACC should be dismissed, FF's affirmative defenses should be stricken, and sanctions should be imposed.

## FACTUAL AND PROCEDURAL BACKGROUND

### The SACC's Counterclaims

On March 11, 2021, less than three months prior to the beginning of trial and after two defective counterclaims (ECF 72 & 83), FF filed the SACC (ECF 95), setting forth purportedly new (but in fact recycled) allegations. None of these allegations are based on newly-discovered information; FF could have made any of these claims sixteen months ago at the inception of this action. Instead, FF has chosen to bring these shoe-horned, manufactured claims at the eleventh hour, again blasting ad hominem attacks at Plaintiff based on implausible and defectively-pled causes of action.

The SACC is comprised of two branches of allegations concerning Mr. Liu: those that purportedly occurred prior to his employment with FF and those that concern Plaintiff's on-the-job performance as FF's General Counsel.

The first branch of the SACC repackages FF's now-dismissed fraud counterclaim. For example, FF alleges that Plaintiff, as a Mayer Brown partner, exploited the attorney-client relationship with FF by negotiating the Employment and Director Compensation Agreements while failing to make purportedly required disclosures to FF. SACC ¶¶5-8, 45, 87, 101, 103-05. In FF's view, Plaintiff failed to disclose that the terms of the Agreements were unreasonably advantageous to Plaintiff (and adverse to FF) and that FF should have independent legal counsel review and approve the Agreements. SACC ¶¶5, 8, 45, 86, 104-05. Relatedly, FF alleges that Plaintiff unilaterally "drafted" the Agreements and took advantage of FF by negotiating and drafting the Agreements in English, when FF's primary negotiator, Defendant Wang, is purportedly not comfortable using English. SACC ¶¶5-7, 38, 70. In connection with these allegations, FF brings numerous new causes of action, including rescission based on a violation of the Rules of Professional Conduct, breach of fiduciary duty, constructive fraud, and unconscionability. SACC ¶¶76-111.

As to the second branch of the SACC, there, like the SACC's predecessor counterclaims, FF focuses on Plaintiff's purported sub-standard performance as FF's General Counsel, alleging that Plaintiff was supposedly unqualified for the job.  SACC ¶¶50-75.  From these examples, FF maintains that Plaintiff had to have breached the Employment Agreement and his fiduciary duty to FF.  SACC ¶¶112-27.  FF also alleges that Plaintiff engaged in the unathorized practice of law, serving as FF's General Counsel without passing the California State Bar Examination, misconduct which in FF's view serves as the predicate violation for FF's counterclaim under California Business and Professions Code Section 17200 ("UCL").  SACC ¶¶9, 50, 131.

**FF's And Smart King's Affirmative Defenses**

On March 11, 2021, FF and Smart King filed their Second Amended Answers (ECF 93 & 94, respectively) ("SAAs").  In the SAAs, FF and Smart King set forth affirmative defenses for, *inter alia*, constructive fraud, rescission based on fraud, a violation of the Rules of Professional Conduct, breach of fiduciary duty, rescission based on breach of fiduciary duty, that the Employment Agreement is void *ab initio*, the unauthorized practice of law, and breach by Plaintiff.  SAA ¶¶2, 3, 6-11.

## ARGUMENT

A court will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or for insufficient facts pleaded to support an otherwise cognizable legal theory.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).  To avoid dismissal, a complaint's factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").

Accusations of fraud require a heightened particularity in pleading.  *See* Fed. R. Civ. P. 9(b).  Rule 9(b) establishes that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud[.]"  *Id.*  The "circumstances"

required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see* ECF 79 at 1 ("January 28 Order") (pleading in accordance with Rule 9(b) requires "an account of the time, place, and specific content of the false representations"). This heightened pleading standard ensures that allegations of fraud are specific enough to give respondents sufficient notice of the particular misconduct to defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); January 28 Order at 1.

## I.   THE SACC FAILS TO STATE A CLAIM

As set forth below, FF fails to adequately allege any of its counterclaims, warranting dismissal of the SACC in its entirety and with prejudice.

### A. The Attorney Ethics And Fiduciary Duty Counterclaims Should Be Dismissed

FF's attorney ethics counterclaim alleges that Plaintiff, employed at Mayer Brown, violated the Professional Rules of Conduct because, while negotiating the Employment and Director Compensation Agreements, he purportedly failed to (i) disclose that the Agreements were unreasonably beneficial to himself; (ii) advise FF to have independent counsel review the agreements; and (iii) obtain informed consent from FF as to these disclosures.  SAAC ¶¶5-8, 11, 45, 48, 76-91.  FF also alleges a counterclaim for "breach of fiduciary duty" arising out of an alleged violation of the same Rules of Professional Conduct.  SAAC ¶¶92-98.

These counterclaims fail to state a claim for multiple reasons, in addition to their sheer implausibility.[2]  *First*, the rules of professional conduct "do not provide a private

---

[2] For example, it is inconceivable that a sophisticated company like FF, having just been represented by Sidley Austin in the $2 billion Series A Evergrande Transaction which valued Smart King at $4.5 billion, would promise in the Employment Agreement to give Plaintiff two percent of Smart King's equity without having Sidley Austin (or other counsel) review the terms of that equity issuance to ensure it was consistent with the Series A terms.  Indeed, as set forth in Sections I.C and III.A, Sidley Austin <u>did</u> extensively review, revise, and approve the Agreements.

right of action nor do they subject attorneys to civil liability." *Krage v. City of Lakewood*, 2020 WL 6694327, at \*16 (C.D. Cal. Sept. 18, 2020); *Odish v. Cognitive Code Corp.*, 2015 WL 11347592, at \*6 (C.D. Cal. May 27, 2015) ("A violation of the Rules of Professional Conduct subjects an attorney to disciplinary proceedings, but does not in itself provide a basis for civil liability."); *Landa v. Bkeier*, 1 Misc. 3d 902(A), 781 N.Y.S.2d 625 (Sup. Ct. 2003) ("The Code of Professional Responsibility provides a guide for attorneys regarding their professional conduct. However, when raised in a litigation, [it] cannot be considered as statutory or decisional law.").

*Second*, the cited attorney ethics rules are inapplicable to the SACC's allegations. New York Rule of Professional Conduct 1.7 ("Rule 1.7") concerns a "concurrent conflict of interest" that may arise when a "representation will involve the lawyer in representing differing interests" or where "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." NY ST RPC Rule 1.7.

Here, there is no allegation that Plaintiff had "***differing interests***" that compromised his representation of FF in any matter. Indeed, no facts pled show that Plaintiff was representing FF in any "*matter*" whatsoever. Nor is there any allegation that Plaintiff's negotiation of his own employment agreements compromised his professional judgment with respect to any *matter* in which he represented FF.

Rule 1.7's enumerated examples of prohibited conduct demonstrate the provision's inapplicability here. Under Rule 1.7, an attorney may not:

- Advocate "*in one matter against another client that the lawyer represents in some other matter*, even when the matters are wholly unrelated."

- Be employed by "*an opponent of the lawyer's client or with a law firm representing the opponent.*"

- Represent "*the seller of a business in negotiations with a buyer represented by the lawyer* . . . in another, unrelated matter."

- Represent "*several individuals operating a joint venture ... to the extent that the lawyer is unable to recommend or advocate all possible positions that each client might take.*"

- Referr "*clients to an enterprise in which the lawyer has an undisclosed financial interest.*"

NY ST RPC Rule 1.7. None of these examples come close to prohibiting a lawyer from negotiating an employment agreement with a client. The SACC does not set forth a Rule 1.7 violation.[3]

New York Rule of Professional Conduct 1.8 ("Rule 1.8") is similarly inapplicable, as it prohibits a lawyer from entering into a "***business transaction with a client***." FF tries to frame the Employment Agreement as such a "transaction" (*see, e.g.* SACC ¶¶45, 49, 86, 88), but an employee's negotiating his employment with a client does not constitute a "business transaction with a client." *See* NY ST RPC Rule 1.8 (citing examples of "business transactions" including a lawyer providing "a loan or sales transaction or a lawyer's investment on behalf of a client"; a lawyer "engaged in the sale of goods or services related to the practice of law, such as the sale of title insurance or investment services to existing clients of the lawyer's legal practice"; a lawyer "purchasing property from estates [he] represent[s].").[4]

New York Rule of Professional Conduct 1.5 prohibits a lawyer from charging a client with "an excessive or illegal fee or expense." The rule notes that, in determining

---

[3] FF's reliance on California Rule of Professional Conduct 3-310 ("Rule 3-310") similarly fails as that provision concerns contemporaneous representations of multiple clients. *See* CA ST RPC Rule 1.7 ("A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the ***lawyer's responsibilities to or relationships with another client***, a former client or a third person, or by the lawyer's own interests."). In addition to the fact that FF became Plaintiff's sole client, the SACC sets forth no allegations concerning former clients, third persons, or Plaintiff's interests.

[4] California Rule of Professional Conduct 3-300 is inapposite for the same reason: by coming to work for FF as its employee, Plaintiff was not entering into a "business transaction" with FF.

whether a fee is "excessive," one of the factors to be considered is "the fee customarily charged in the locality for similar legal services."  Here, Plaintiff was not charging FF a fee for legal services in a matter.  Rather, he was negotiating his compensation as a full-time employee of FF.[5]

Counsel for Plaintiff has not found a single case holding that a company's outside counsel violated the above-described rules of professional conduct in connection with negotiating an employment agreement with a company.  And for good reason; if the rules of professional conduct applied to the facts alleged here, an entire new liability schema would be superimposed on every outside attorney who goes in house to work for a client.  Relatedly, FF's cited authorities are entirely inapplicable to the facts pled here.  *See Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 68 (2018) (outside law firm contemporaneously represented multiple clients with conflicting interests); *Greene v. Greene*, 56 N.Y.2d 86, 92–93 (1982) (attorney who was not in-house counsel induced mentally ill client to enter into trust agreement which designated the attorney as trustee with excessive power and financial benefits).

*Third*, the counterclaim's defects are underscored by its belatedness.  Indeed, FF waited fifteen months, three pleadings, two motions to dismiss, and one scheduling order setting trial for but three months later to file a pleading which contains a wholly new theory of liability with an array of novel causes of action.  If FF's counterclaim (which contains no newly-discovered facts, all of which were available to FF at all times) were plausible, FF should not have waited all this time to bring it.  Manufacturing this newfangled yarn at this late stage demonstrates the SACC's implausibility and lack of credibility and prejudices Plaintiff.  *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (affirming denial of leave to amend because allowing plaintiff to "advance different legal theories and require proof of different facts" late into discovery would have prejudiced defendant); *Richmond v. Allianz Life*

---

[5] California Rule of Professional Conduct 4-200 is similarly inapplicable; an employee's salary is not a legal "fee."

*Ins. Co.*, 168 F.3d 501 (9th Cir. 1999) (affirming denial of leave to amend because the case had been going on for almost a year and the facts underlying new cause of action *"*had been known well before that time," and yet defendant asserted new claim only "shortly before the discovery cut off date," causing plaintiff significant prejudice).

FF's counterclaim for breach of fiduciary duty arises out of the same alleged violations of the rules of professional conduct. This counterclaim accordingly fails, as the SACC fails to adequately allege an underlying professional conduct violation.

**B. The Constructive Fraud Counterclaim Should be Dismissed**

To state a claim for constructive fraud, a pleading must set allege: "(1) the existence of a fiduciary or confidential relationship; (2) nondisclosure; (3) reliance; and (4) resulting injury." *Hann v. Canyon Mobile Home Park*, 2017 WL 10519668, at *6 (C.D. Cal. Nov. 9, 2017). A "failure to disclose or a misrepresentation … is usually required." *EduMoz, LLC v. Republic of Mozambique*, 2015 WL 13697385, at *16 (C.D. Cal. Apr. 20, 2015). Rule 9(b) applies to this counterclaim. *See id.* at *30 ("constructive fraud claims are subject to the particularity requirements of Rule 9(b).").

Like its predecessor fraud-based counterclaims, the SACC fails to meet Rule 9(b)'s mandate that a pleading state with particularity the "who, what, when, where, and how" of the purported fraud. The SACC conclusorily alleges that Plaintiff failed to make material disclosures to FF in connection with the negotiation and drafting of the Employment and Director Compensation Agreements (*see* SACC ¶¶45, 105), but alleges no facts concerning the drafting and negotiation of these agreements or the time period in which the purported constructive fraud occured. It does not identify what was false or misleading about what Mr. Liu purportedly stated during the drafting and

negotiation of the Agreements – or why.[6]  It does not specifically allege when or where Mr. Liu made any misrepresentation or failed to disclose any purported conflicts of interest.[7]   This counterclaim also fails for being implausible, as set forth above in Section I.A.  Accordingly, this claim should be dismissed.

### C. The Unconscionability Counterclaim Should Be Dismissed

To plead unconscionability, a party must allege both substantive and procedural unconscionability.  *See Fifty-Six Hope Rd. v. Jammin Java Corp.*, 2017 WL 2457487, at *11 (C.D. Cal. Jan. 25, 2017).  Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power."  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012).   Oppression occurs where a contract involves lack of negotiation and meaningful choice; surprise where the allegedly unconscionable provision is hidden within a prolix printed form.  *Id.*

Here, the SACC alleges no procedural unconscionability. Indeed, the SACC's only allegations that go to the process of drafting and entering into the Agreements are the specious propositions that Defendant Wang, FF's English-speaking negotiator, was not a "*native* English speaker" (*see* SACC ¶¶7, 38, 87) and that Plaintiff unilaterally

---

[6] *See Roberts v. Gainsforth*, 2014 WL 12596584, at *5 (C.D. Cal. Nov. 24, 2014) (constructive fraud claim dismissed because plaintiffs failed to identify a false statement or why any false statement was false); *Brooks v. GMAC Mortg. Servicing LLC*, 2011 WL 13220320, at *3 (C.D. Cal. May 12, 2011) (dismissing constructive fraud claim because plaintiff did not specify the precise omission or allege specific content of any misrepresentations).

[7] *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668  (9th Cir. 2019) (dismissing complaint on specificity grounds where plaintiff did not plead "when defendants made [the alleged false statements]"); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (noting that specificity requires allegations designating a "relatively definite time frame," identifiable by discrete events for when a misrepresentation was made); *Vega v. Specialized Loan Servicing, LLC*, 2020 WL 2475087, at *4 (C.D. Cal. Feb. 11, 2020) (constructive fraud claim dismissed because plaintiff did not allege "precise date" of any alleged misrepresentation or omission).

"drafted" the Agreements (*see* SACC ¶¶5-7, 38, 70).  Such bare-bones allegations fail as they do not adequately set forth oppression or surprise.

As to oppression, the SACC fails to set forth any facts giving rise to any purported inequality of bargaining power between Plaintiff and FF.  The SACC does not allege that the Employment Agreement was a contract of adhesion; FF could have walked away at any time and found another job candidate.  Moreover, FF misleadingly omits the material facts that (1) FF informed Plaintiff that its outside counsel at Sidley Austin was reviewing the Agreements; (2) Sidley Austin did in fact review the Agreements; and (3) Plaintiff accepted many of FF's proposed revisions to the Agreements, as set forth below:

- In a January 22, 2018 text message between Defendant Wang and Plaintiff, Defendant Wang ***thanks Plaintiff for accepting FF's modifications to the Employment Agreement***.  Ex. A.

- In a January 25, 2018 text message from Defendant Wang to Plaintiff, Defendant Wang informs Plaintiff that ***Wang made a final modification to the Employment Agreement.***  Ex. B.

- In a January 26, 2018 text message between Defendant Wang and Plaintiff, Wang informed Plaintiff that ***Vijay Sekhorn of Sidley Austin, the Company's counsel, had been reviewing the Employment Agreement on behalf of FF.***  Ex. C.

- In emails dated January 26, 2018 between Defendant Wang and Plaintiff, Wang and Plaintiff ***mutually revise the Employment Agreement*** (in English).[8]  Ex. D.

---

[8] FF's dubious proposition that Plaintiff somehow took advantage of FF by conducting the negotiation and drafting of the Agreements with Defendant Wang in English is refuted by this and other correspondence.  Clearly, Defendant Wang, a NYU graduate, is capable of having business-level discussions in English. *See* Exs. D, F, & G. Plaintiff's first language is not English either; he is a native Mandarin speaker.

- In a January 30, 2018 email between Defendant Wang and Plaintiff, Wang requested that Plaintiff "***take a look [at] this version [of the Director Compensation Agreement] drafted by company external counsel Sidley***," informed Plaintiff that the draft incorporated all "***business terms that we mutually agreed***," and reminded Plaintiff that if he had any further questions, "***Sidley is happy to arrange a conference call together with us to walk through and discuss solutions***" (Ex. E); Mr. Wang attached to this email the referenced draft of the Director Compensation Agreement ***that was significantly revised by Sidley Austin***.  Ex. F.

- Emails dated between January 30, 2018 and February 2, 2018 between Wang and Plaintiff which further ***confirm Sidley Austin's involvement in drafting the Director Compensation Agreement*** and in which Defendant Wang invited Plaintiff to discuss any outstanding issues or questions with Sidley Austin.  Ex. G.

- In an August 22, 2018 email from Vijay Sekhorn of Sidley Austin to Plaintiff, Sekhorn explains that provisions drafted by Sidley Austin in connection with Plaintiff's appointment to FF's Board of Directors were in place to ***protect Plaintiff's rights under the Employment Agreement***.  Ex. H.

As to the August 22, 2018 email, this document demonstrates that Sidley Austin, as FF's "company external counsel," was not only involved in drafting agreements between Plaintiff and FF both before and during Plaintiff's employment with FF but that Sidley Austin was authorized and sought to ***protect Plaintiff's rights under the Employment Agreement***.  *See* Ex. H.  None of this is the stuff of oppression.  *See The Casiano-Bel Air Homeowners Ass'n v. Philadelphia Indem. Ins.*, 2017 WL 3273654, at *4 (C.D. Cal. Feb. 22, 2017) (Wilson, J.) (no oppression as party provided no evidence that it was unable to reject the contract offered and seek other options); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) (no oppression because facts did not demonstrate claiming party's being coerced or its lack of meaningful choice).

Moreover, FF, having just completed the Series A Evergrande Transaction, was a sophisticated corporate entity with a multi-billion dollar valuation, warranting a finding of no oppression here.  *See Fifty-Six Hope Rd.,* 2017 WL 2457487 at *11 (no

-12-

oppression as "Defendant is a sophisticated publicly traded company that engaged in an arm's length negotiation while represented by counsel"); *UPS Cap. Corp. v. Carpartsdepot, Inc.*, 2014 WL 12768450, at *6 (C.D. Cal. Dec. 19, 2014) (no oppression because contracting corporation had millions in sales and therefore could not be characterized as unsophisticated or lacking in choice); *Rockefeller v. Perkins Coie LLP*, 2010 WL 11672230, at *6 (C.D. Cal. Sept. 2, 2010) (sophistication of contracting party refuted alleged oppression); *Tura v. Med. Shoppe Int'l, Inc.*, 2010 WL 11506428, at *11 (C.D. Cal. Mar. 3, 2010) (Wilson, J.) (no oppression as party "had the experience and sophistication to understand the Agreement or else to seek counsel.").

The SACC also fails to allege surprise. The SACC does not allege that any contract terms were hidden within any overwrought legalese or intentionally confusing formatting or font sizing. On the contrary, the Employment Agreement is set forth in plain terms, in easily legible, uniform font, on a mere three pages. There is no surprise here. *See Rockefeller*, 2010 WL 11672230 at *6 (no surprise where agreement was set forth in uniform font); *Tura*, 2010 WL 11506428 at *12 (no surprise where provisions were not hidden); *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 116442, at *4 (N.D. Cal. Jan. 13, 2014) (no surprise where agreement was printed in uniform font and form and provision at issue was clearly identifiable).[9]

Likewise, the SACC alleges no substantive unconscionability. Substantive unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Rejuso v. Brookdale Senior Living Communities, Inc.*, 2019 WL 6735124, at *2 (C.D. Cal. May 22, 2019). A contract term is not substantively unconscionable when it merely gives one side a

---

[9] Given that FF does not adequately allege procedural unconscionability, the Court need not reach the issue of substantive unconscionability. *See Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 n.4 (C.D. Cal. Mar. 5, 2014) (declining to analyze substantive unconscionability upon a finding that procedural unconscionability was not alleged).

greater benefit; rather, the term must be so one-sided as to "shock the conscience." *Rodriguez v. Experian Servs. Corp.*, 2015 WL 12656919, at *3 (C.D. Cal. Oct. 5, 2015).

The SACC fails to allege that the Employment Agreement shocks the conscience. To the extent the SACC maintains the Employment Agreement's terms were unfair, those allegations are limited to conclusory allegations that the agreement's terms were "unfairly and unreasonably advantageous" (SACC ¶5), "patently unfair and unreasonable" (SACC ¶¶11, 45, 89), and "inherently unfair" (SACC ¶109) and that both Agreements were "decidedly one-sided." SACC ¶9. These allegations are insufficient.

Indeed, contrary to the SACC's allegations, the Employment Agreement carries mutual obligations and benefits to both Plaintiff and FF, to Plaintiff in the form of his negotiated compensation package and to FF as Plaintiff's adding value to FF as its future General Counsel. The  August 22, 2018 email referenced above (Ex. H) underscores the Agreement's mutuality.  Moreover, even if Plaintiff's compensation package was large (it was not; it was reasonable), the SACC fails to allege why it was so excessive that the agreed-upon terms should now be ignored, warranting dismissal. *See Brown v. Blackbaud, Inc.*, 2019 WL 4509203, at *4 (C.D. Cal. July 25, 2019) (noting that a contracted for price is unreasonably high or exceeds fair value does not establish substantive unconscionability); *In re Goldman*, 2010 WL 11526899, at *2 (C.D. Cal. June 3, 2010) (even "a bad deal" with significantly detrimental terms is "not so one-sided as to shock the conscience.").[10]

### D. The UCL Counterclaim Should Be Dismissed

FF's counterclaim under California Business & Professions Code Section 17200, which prohibits "any unlawful, unfair, or fraudulent" business practices (Cal Bus. & Prof. Code § 17200) ("UCL"), fails.

---

[10] Even if any of the agreement's terms were substantively unconscionable (which they are not), rescission would be an inappropriate remedy, as the Court could simply strike the unconscionable clause rather than refuse to enforce the entire contract. *See Caronia v. JVC Mobile Co. of Am.*, 2009 WL 10671948, at *2 (C.D. Cal. Feb. 9, 2009).

-14-

To the extent this counterclaim is based on a purported violation of the rules of professional conduct or fraud, it fails for the reasons set forth above in Sections I.A-B. *See Chavez v. CITImortgages, Inc.*, 2012 WL 12895843, at *3 (C.D. Cal. Dec. 19, 2012) (Wilson, J.) (dismissing UCL claim based on failure to allege underlying violation).

To the extent this counterclaim is based on Plaintiff's purported legal ethics violations concerning the unauthorized practice of law, it also fails.  The gravamen of this allegation is that "*in entering the Employment Agreement*" Plaintiff was allegedly not licensed to practice law in California (SACC ¶¶1, 9, 129-31).  This is nonsensical given that, as the SACC admits, at the time Plaintiff and FF entered into the Employment Agreement, Plaintiff was a "*a New York barred attorney*"; no facts pled show that he was practicing law in California before FF hired him.[11]

### E. The Remaining Counterclaims For Breach Of Contract, Breach Of Fiduciary, And Declaratory Relief Should Be Dismissed

To establish a breach of contract, a pleading must adequately allege (1) the existence of the contract, (2) a party's performance or excuse for non-performance, (3) breach, and (4) the resulting damages.  *Justus v. Argosy Int'l, Inc.*, 2011 WL 13220309, at *2 (C.D. Cal. July 18, 2011).  Moreover, a pleading must allege the contract's specific provisions creating the obligation the defendant is said to have breached.  *Miron v. Herbalife Int'l, Inc.,* 11 Fed. Appx. 927, 929 (9th Cir.2001).  Those provisions must be "set out verbatim in the complaint or [by] a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect."  *Kaui Scuba Ctr., Inc. v. PADI Americas, Inc.*, 2011 WL 2711177, at *4 (C.D. Cal. July 13, 2011).  In order to plead a contract by its legal effect, a pleading must "allege the substance of [the contracts] relevant terms."  *Id.*  This requires "a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Patton v. Experian Data Corp.*, 2018 WL 6184773, at *4 (C.D. Cal. Sept. 12, 2018).

---

[11] As discussed below in Section III.B, that FF alleges that Plaintiff was not licensed to practice law in California is materially false and misleading and warrants sanctions.

The SACC fails to allege its claim for breach of contract for numerous reasons. *First*, the SACC fails to adequately allege what terms Plaintiff purportedly breached. Instead, the SACC's breach of contract claim attempts to incorporate by reference Plaintiff's alleged *pre-contractual* promises concerning his professional qualifications and then maintain that Plaintiff breached the Employment Agreement because, in FF's view, Plaintiff did not live up to those pre-contractual promises. This is inadequate, as FF improperly asks the Court to rewrite the Employment Agreement to superimpose on it provisions which do not exist. *See Kent v. Microsoft Corp.*, 2013 WL 3353875, at *3 (C.D. Cal. July 1, 2013) (dismissing breach of contract claim because "omission of any express terms of agreement between the parties makes it impossible to reasonably infer any potential implied duties that Defendant might have had."); *In re Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*, 2012 WL 1123863, at *3 (N.D. Cal. Apr. 3, 2012) (failure to cite explicit provision of agreement that was allegedly breached warranted dismissal); *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (breach of contract claim requires breach of express contract term).

*Second*, to the extent the SACC quotes the Employment Agreement such that Plaintiff's "duties and responsibilities shall be commensurate with [Plaintiff's] positions" (SACC ¶¶42, 124), the SACC fails to explain how this generalized, boilerplate language gives rise to an objective, legally cognizable requirement. Rather, it uses those mere nine words to conclusorily maintain that Plaintiff's alleged sub-standard performance constituted a breach of contract. This is insufficient, warranting dismissal. *See Gallagher v. Capella Educ. Co.*, 2019 WL 8333532, at *5 (D. Or. Dec. 23, 2019) (noting that referencing an agreement's "vague language" or party's purported "subjective intent" is insufficient); *Bank Leumi USA v. R&R Food Servs. LLC*, 2018 WL 6003580, at *7 (C.D. Cal. July 13, 2018) ("asking the Court to construe unspecified terms" so as to impose contractual obligations on party was insufficient); *Hrothgar Invs., Ltd. v. Houser*, 2015 WL 5853634, at *6 (N.D. Cal. Aug. 18, 2015) (contract's vague language meant that alleged obligation could not have been breached).

*Third*, FF's breach of contract claim is also disingenuous and implausible for numerous reasons, including that:

- It is implausible that Plaintiff, a globally-respected professional who had served in senior positions in the Chinese government, investment banks, and multiple global law firms, would seek employment in a position in which he either was not qualified or in which he shirked his responsibilities, notwithstanding the permanent reputational damage he would self-inflict as a result.

- It is implausible, as the SACC alleges, that Plaintiff had the legal sophistication and guile to trick FF into hiring him and at the same time was an ineffectual (and unlicensed) attorney who "was not remotely qualified" and was unable "to perform the basic functions" of his job from the "start of his employment". SACC ¶¶9-10, 51.[12]

These implausible allegations should be dismissed. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408, 415 (9th Cir. 2020) (rejecting theory of falsity as implausible where defendants promised FDA approval of medical device which they purportedly knew was "unapprovable" because such theory had "no basis in logic," did not "resonate with common experience" and "[did] not make a whole lot of sense."); *MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai*, 2014 WL 12597149, at *7 (C.D. Cal. Aug. 13, 2014) (implausibility of allegations warranted dismissal); *James River Ins. Co. v. Andrade & Associates*, 2010 WL 11595834, at *4, n.1 (C.D. Cal. Oct. 26, 2010) (dismissing counterclaim where "statement in one portion of the pleadings [defendant's answer]" contradicted "statements in another portion of the pleadings [defendant's counterclaim] … render[ing] implausible several of [defendant's] allegations in the [counterclaim]"); *RePET, Inc. v. Zhao*, 2016 WL 11634745, at *5 (C.D. Cal. Sept. 2, 2016) (dismissing complaint because allegations concerning perpetrating the fraud at issue and the results of the fraud were contradictory).

---

[12] Notably, FF fails to disclose that in April 2018, in connection with Plaintiff's earning his certification as a registered in-house counsel from the State Bar of California (described below), FF attested to Plaintiff's competent work performance, stating that to date Plaintiff's services with FF had been satisfactory. Ex. L; *see also* Section III. B.

FF's counterclaim for breach of fiduciary duty is premised on the same examples of Plaintiff's purported sub-standard job performance as its breach of contract counterclaim. It is implausible, as set forth above, and should be dismissed.

Furthermore, because the SACC's counterclaims fail, there exists no basis to grant declaratory relief, warranting dismissal of that counterclaim.

## II. THE AFFIRMATIVE DEFENSES SHOULD BE STRICKEN

To avoid being stricken under Rule 12(f), an affirmative defense must be pled with sufficient factual matter to state a defense that is plausible on its face. *Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, at *2 (C.D. Cal. June 28, 2010) (Wilson, J.); *see also Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 440, 41 (C.D. Cal. 2013) ("The majority of district courts in this Circuit, including … this Court, has consistently applied *Twombly* and *Iqbal* to both claims and affirmative defenses."; citing cases). A party pleading a defense sounding in fraud must allege that defense with particularity under Rule 9(b). *See Gibson Brands, Inc. v. John Hornby* Skewes & Co., 2014 WL 4187979, at *6 (C.D. Cal. Aug. 22, 2014); *see also* January 28 Order (striking fraudulent inducement affirmative defense under Rule 9(b)).

Requiring a party to plead its affirmative defenses with sufficient factual support "weed[s] out the boilerplate listing of affirmative defenses which is commonplace in most defendant's pleadings." *Gibson Brands, Inc.*, 2014 WL 4187979 at *4; *see also Vogel*, 291 F.R.D. at 441 (requiring facts to be pled in support of defenses serves the purpose of "discouraging the commonplace practice of asserting every possible affirmative defense, even those that are entirely irrelevant to a plaintiff's claim.").

FF and Smart King's affirmative defenses for constructive fraud, recission for fraud, a violation of the rules of professional conduct, breach of fiduciary duty, recission based on breach of fiduciary duty, that the Employment Agreement is purportedly void *ab initio*, unauthorized practice of law, and breach should be stricken because these affirmative defenses are abridged, less particularized versions of FF's corresponding defective counterclaims. As FF's counterclaims fail, so too must these affirmative

defenses. *See* January 28 Order at 2 (striking fraudulent inducement affirmative defense because it was dependent on FF's inadequate fraudulent inducement counterclaim). Moreover, affirmative defenses for failure to state a claim and reservation of rights should be stricken as not cognizable. *See DeSalvo v. Islands Restaurants, L.P.*, 2020 WL 4035071, at *3 (C.D. Cal. July 16, 2020) ("failure to state a claim is not an affirmative defense[.]"); *Sadowski v. Internet Brands, Inc.*, 2018 WL 3219374, at *4 (C.D. Cal. June 28, 2018 ) ("[R]eservation of rights is not an affirmative defense.").

## III.   THE COURT SHOULD SANCTION FF AND ITS COUNSEL

"Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C § 1927 ("Section 1927").   Sanctions may be awarded under Section 1927 when an attorney behaves recklessly and frivolously. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). Recklessness means "a departure from ordinary standards of care that disregards a known or obvious risk of material misrepresentation." *See In re Girardi*, 611 F.3d 1027, 1038 n. 4 (9th Cir. 2010). Frivolousness "should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Id.* at 1062. A frivolous filing is one "that is both baseless and without reasonable competent inquiry." *Id.*  Moreover, a district court also has the "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink*, 239 F.3d at 992. Sanctions pursuant to the Court's inherent authority are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

Plaintiff seeks sanctions against FF and its counsel for its unreasonable, vexatious, and bad faith conduct.  As set forth below and in connection with the SACC, FF's counsel has pled allegations which are factually false and brought claims which are accordingly legally baseless, causing Plaintiff to once again, for the third time,

defend himself against frivolous attacks on his professional reputation and credibility. This is notwithstanding the prejudice Plaintiff has experienced by having to devote enormous resources to defending himself against multiple pleadings while trying to prosecute his case under significant time constraints in light of the June 8, 2021 trial date. For the reasons set forth below, sanctions against FF and its counsel are warranted.

### A. FF Omits The Material Facts That Sidley Austin Reviewed The Agreements And That Plaintiff Was Advised Of Sidley Austin's Role

The gravamen of the SACC is that Plaintiff unduly influenced FF to enter into the Agreements on terms that were unfairly advantageous to Plaintiff. At the core of FF's theory of liability is the allegation that Plaintiff failed to advise FF that it should retain independent counsel in drafting and negotiating the Agreements.

FF and its counsel misleadingly omit the material facts that (1) FF informed Plaintiff that its outside counsel at Sidley Austin was reviewing the Agreements; (2) Sidley Austin did, in fact, review and revise the Agreements; and (3) Plaintiff did not uniltaterally draft the Agreements and in fact accepted numerous revisions proposed by FF, as set forth in detal above in Section I.C, including the following:

- The January 22, 2018 text message between Defendant Wang and Plaintiff in which Defendant Wang *thanks Plaintiff for accepting FF's modifications to the Employment Agreement* (Ex. A), and the January 25, 2018 text message from Defendant Wang to Plaintiff in which Defendant Wang informs Plaintiff that *Wang made a final modification to the Employment Agreement.* Ex. B.

- The January 26, 2018 text message from Wang to Plaintiff concerning the Employment Agreement in which Wang informed Plaintiff that *Sidley Austin had been reviewing the Employment Agreement on behalf of FF.* Ex. C.

- Emails dated January 26, 2018 between Defendant Wang and Plaintiff in which Wang and *Plaintiff mutually revise the Employment Agreement* (in English). Ex. D.

- An emails dated January 30, 2018 in which Wang requested that Plaintiff "***take a look [at] this version [of the Director Compensation Agreement] drafted by company external counsel Sidley***," and that if Plaintiff had any further questions, "***Sidley is happy to arrange a conference call … to walk through and discuss solutions***" (Ex. E); *see also* Ex. G.[13]

Furthermore, FF's recently-produced privilege log demonstrates that, based on FF's production to date alone, FF corresponded with Sidley Austin no less than fifteen times during the period when FF and Plaintiff were drafting and negotiating the Employment and Director Compensation Agreements. Ex. I.  Indeed, it is inconceivable that Sidley Austin was not closely involved in the drafting of the Employment Agreement.  The firm represented Smart King in connection with the Series A Evergrande Transaction; in light of FF's Employment Agreement promise to give Plaintiff two percent equity in Smart King, it is implausible that FF did not have Sidley Austin review the terms of that grant to ensure it was consistent with the Series A terms.

That FF used Sidley Austin to negotiate, review, and draft the Employment and Director Compensation Agreements – and that Plaintiff knew FF was using Sidley Austin for these purposes – vitiates FF's counterclaims concerning Plaintiff's purported violations of the rules of professional conduct, breach of fiduciary duty, constructive fraud, and unconscionability.  Indeed, contrary to what FF sets forth in the SACC, FF was represented by independent legal counsel, Plaintiff knew it, and the ensuing negotiations between Plaintiff and FF were accordingly arms length and conducted by two sophisticated parties.  The assertion of these counterclaims by FF and its counsel in reckless disregard of these omitted facts smacks of bad faith and renders the SACC a frivolous filing, warranting sanctions.  *See In re Girardi*, 611 F.3d at 1039 (attorneys' filing briefs that contained falsehoods constituted bad faith); *Malhiot v. S. California Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984) (bad faith conduct warranting

---

[13] FF's dubious proposition that Plaintiff somehow took advantage of FF by conducting the negotiation and drafting of the Agreements with Defendant Wang in English is refuted by the these communications.

sanctions demonstrated by attorney's submitting brief that contained misrepresentations of fact and presented claims that were unwarranted under existing law).

### B. FF Omits The Material Fact That Plaintiff Was A Registered And Certified In-House Counsel In California

FF alleges that after Plaintiff moved to California to serve as FF's General Counsel, "FF further discovered that Liu was also practicing law in California without a license as a result of his never having passed the California state bar exam nor having taken the steps required to register as in-house counsel in this State." SACC ¶9; *see also* SACC ¶50 ("Liu never completed the steps required to practice law in California as Registered In House Counsel (*see* Cal. Rule of Court 9.46; Cal. Rule of Prof. Conduct 5.5), nor ever passed the California Bar Exam prerequisite to otherwise practicing in this State."); *see also* SACC ¶131. These allegations are the basis for FF's UCL counterclaim, that Plaintiff purportedly practiced law in California without a license in violation of California Business and Professions Code Section 6125 ("Section 6125").

Once again, FF and its counsel fail to disclose critical facts, rendering the SACC's allegations misleading and demonstrating their bad faith. FF and its counsel fail to disclose the applicability here of California's specific registration rules for in-house counsel who live in California but who are licensed outside the state. *See* 1 Witkin, Cal. Proc. 5th Attys § 393 (2020) ("Attorneys who reside in California but are licensed in other jurisdictions may register to practice as in-house counsel for qualifying institutions in California without becoming members of the State Bar. (C.R.C., Rule 9.46.)" ("Rule 9.46"). Critically, FF fails to disclose that Plaintiff became a registered in-house counsel for FF under Rule 9.46, meeting all of that provision's requirements, allowing him to properly serve as FF's General Counsel under all applicable rules of the California Courts and the State Bar of California. *See* Ex. J.

Moreover, and shocking in the context of FF's bringing this counterclaim, *FF knows that Plaintiff became a certified California in-house counsel because FF*

*helped Plaintiff receive this certification*.  Indeed and connection with Plaintiff's application to become a registered California in-house counsel:

- FF paid for Plaintiff's State Bar of California certification fee (and did so by a Company check). Ex. K.

- FF endorsed Plaintiff's Application for Determination of Moral Character and attested to Plaintiff's moral character and his adequate job performance with FF to date.  Ex. L.

- The fee for Plaintiff's certification for the State Bar of California was mailed from FF's California office.  Ex. M.

FF and its counsel knows (or recklessly disregards) these facts and yet nonetheless baselessly maintain that Plaintiff was unlawfully practicing law in California, seeking restitution and disgorgement of all amounts gained by Plaintiff through his purportedly unlawful practice of law.  That FF would bring this meritless claim in knowing or reckless disregard for these facts constitutes the epitome of a bad faith frivolous filing, warranting sanctions.  *See Indiezone, Inc. v. Rooke*, 720 F. App'x 333, 338 (9th Cir. 2017) (affirming sanctions where counsel presented filings based on allegations it knew or should have known were were false);  *In re Action Dev. Tax I.D. 02-0549448*, 2007 WL 4046263, at *2 (N.D. Cal. Nov. 15, 2007) (that party forced adversary to expend resources responding to claims it knew or should have known were meritless constituted basis for sanctions).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion to dismiss, motion to strike, and motion for sanctions should be granted in their entirety and with prejudice.[14]

---

[14] *See Craig Plumley v. Sempra Energy*, 2021 WL 754841, at *4 (9th Cir. Feb. 26, 2021) (defendants should not have to "defend against a third complaint after having already twice prevailed on motions to dismiss"); *Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, 2020 WL 5913897, at *5 (C.D. Cal. Aug. 27, 2020) (Wilson, J.) (dismissing without leave to amend in light of plaintiff's repeated failure to cure pleading deficiencies pointed out by the court).

1

2   DATED:  April 5, 2021

3                                    FOUNDATION LAW GROUP LLP

4

5                                    By:/s/ Kevin D. Hughes
                                          KEVIN D. HUGHES
6                                         *Attorneys for Plaintiff/Counter-Defendant*
7                                         *HONG LIU*

8

9                                    SEIDEN LAW GROUP LLP

10

11                                   By: /s/ Amiad Kushner
                                          AMIAD KUSHNER
12                                        JAKE NACHMANI
13                                        *Attorneys for Plaintiff/Counter-Defendant*
                                          *HONG LIU*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsel of record.

Dated: April 5, 2021                                    /s/ Kevin D. Hughes

                                                       Kevin D. Hughes

MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES