# Exhibit F

Confidential & Privileged

<s>STOCK TRANSFER</s><u>DIRECTOR COMPENSATION</u> AGREEMENT

This <s>Stock Transfer</s><u>Director Compensation</u> Agreement (<s>the</s><u>this</u> "Agreement") is made and entered into as of <s>25</s><u>the [●]</u>th day of January, 2018, by and between Yueting Jia <s>(the "Transferor</s>, the <u>indirect sole shareholder of Founder HoldCo (as defined below) (the "Founder"</u>")<u>,</u> and Hong Liu (aka (Henry) Hong Liu, the "<s>Transferee</s><u>Appointee</u>") (separately<u>, a</u> "Party" or <s>jointly</s><u>collectively, the</u> "Parties"), as a legally bound agreement on <s>both</s><u>the</u> Parties and on their successors, assignees and transferees.

1. <s>Transferor owns</s><u>FF Top Holding Ltd. ("Founder HoldCo") owns an aggregate amount of 600,000,000 Class B preferred</u> shares <s>of stock</s> of Smart King Limited <u>(the "Company"),</u> which <u>in turn</u> owns 100% of <s>such</s> entities including, without limitation, FF Global Holdings Ltd, Faraday & Future<u>,</u> Inc., <s>LeSEE (in VIE Structure</s><u>LeSee entities (in Schedule I to this Agreement</u>), City <u>of</u> Sky Limited<s>,</s> (d/b/a Faraday<u>)</u> and their successors, assignees and transferees <s>("FF", "Company"). Transferor and Transferee</s><u>.</u> <u>The Parties</u> have entered into this Agreement pursuant to which<u>: (i)</u> the <s>Transferor wishes to transfer with full consideration such shares of the Company it directly or indirectly owns and warrants that it has all the vested and other right to transfer, to Transferee: shares equal to 1% of the Company's total equity shares pre Series A dilution, namely 10,000,000.00 equity shares representing 1% of the total and all of 1,000,000,000.00 equity shares of the Company pre Series A (the "Shares" or "Stocks")</s><u>Founder will cause Founder HoldCo to appoint the Appointee, and the Appointee accepts such appointment, to serve as a director on the board of directors of the Company and (ii) in exchange for the Appointee's service as a director on the board of directors of the Company, the Founder agrees to pay the Appointee an amount equal to $[●] (such cash payment to the Appointee, the "Director Compensation"), contingent upon and effective as of the completion of (a) a firm commitment underwritten public offering of the Company's stock with a valuation of the Company not less than $[●] billion (a "Qualified IPO") and (b) the sale of a sufficient number of Founder HoldCo's shares of the Company in or as soon as reasonably practicable following such Qualified IPO for an amount greater than or equal to the Director Compensation</u>. The vesting of <s>Shares to Transferee</s><u>the Director Compensation</u> is subject to the same vesting conditions as provided and agreed in the Employment Agreement between <s>Transferee</s><u>the Appointee</u> and <s>FF</s><u>the Company</u> on this same day ("EA"). <s>Transferor has represented</s>

2.  <u>The Founder represents</u> that the Company <s>had</s> successfully completed its Series A financing in December 2017. It has been acknowledged by the Parties that the <s>Shares transfer</s><u>Director Compensation</u> is for a full and accepted consideration upon signing of this Agreement. It is the good faith belief and genuine intention of <s>Transferor and Transferee that the</s><u>the Parties that this</u> Agreement is to promote the interests of all <s>FF's</s><u>of the Company's</u> shareholders and stakeholders.

<s>2</s><u>3</u>.  <s>The</s><u>This</u> Agreement is effective and binding upon <u>the</u> signing.  <s>Transferor and Transferee</s><u>The Parties</u> agree that the delivery <s>by Transferor to Transferee</s><u>of the Director Compensation by the Founder to the Appointee</u> shall be in the form of <s>certificate or other documents, or best efforts and good faith sales proceeds after the Company's IPO. This is in due respectful</s> of <s>any time restrictions on the transfers of shares by Transferor</s> in <s>the executed legal documents</s> of the <s>Series A financing</s><u>wire transfer of immediately available funds after the conditions in the preceding sentence have been satisfied. The Founder's performance of its obligations under this Agreement are in all respects subject to the</u>

ACTIVE 228420980

Confidential & Privileged

restrictions set forth in that certain Shareholders Agreement, dated as of November 30, 2017, as amended, by and among the Company, Founder HoldCo, the Founder and Season Smart Limited.  It is further understood and agreed ~~between Transferor and Transferee~~among the Parties that the demand by ~~Transferee~~the Appointee for the delivery of ~~Shares shall be no earlier than an IPO and no later than a reasonable and practical time after the post IPO lock-up period as described above. If the Transferee~~the Director Compensation shall be contingent upon the satisfaction of the conditions set forth in the preceding paragraph. If the Appointee decides to leave the Company at his own will during his ~~guaranteed~~ employment term as provided in the EA or his employment at the Company is terminated by the Company during such a term based on the specific cause of a serious breach of fiduciary ~~duty~~duties to ~~FF~~the Company as a senior executive of ~~FF~~the Company after ~~fully~~finally adjudicated against the ~~Transferee~~Appointee by a competent court in the United States (~~Transferee~~the Appointee will be fully covered by ~~FF~~the Company with executive indemnifications to the extent set forth in the Company's standard form of director indemnification agreement), any remaining unvested ~~Shares~~portion of the Director Compensation at the time when such departure or termination effectuates will be automatically forfeited. Any delay to enforce the terms of this Agreement and any delay to act on a breach of its term by the ~~Transferee~~Appointee does not constitute a waiver of those rights.

      4.  The Appointee agrees not to divulge, communicate, use to the detriment of the Company or for the benefit of any other person, or misuse in any way, (i) information regarding the existence of this Agreement, any terms set forth in this Agreement, or information he received in connection with the negotiations of this Agreement, (ii) any confidential or secret information relating to the Company or any subsidiary of the Company or (iii) any other technical, business, proprietary or financial information of the Company including personnel information, secret processes, know-how, customer lists, formulas or other technical data not available to the public generally or to the competitors of the Company ("Confidential Information"), except to the extent that the Appointee demonstrates that such Confidential Information (A) becomes a matter of public record or is published in a newspaper, magazine or other periodical available to the general public, other than as a result of any act or omission of the Appointee, or (B) is required to be disclosed by any law, regulation or order of any court or regulatory commission, department or agency.  The Appointee acknowledges and agrees that any information or data the Appointee has acquired on any of these matters or items were received in confidence and are subject to the terms of this Agreement.  The Appointee acknowledges and agrees that any breach of this paragraph by the Appointee shall result in the automatic termination of this Agreement and all of the Founder's obligations under this Agreement, and a forfeiture by the Appointee of any and all rights of the Appointee under this Agreement.

      ~~3~~5.  If any provision of this Agreement is ineffective in whole or in part, the remainder of ~~the~~this Agreement shall remain in effect.  This Agreement is binding on ~~both~~all Parties by virtue of the conduct of both parties and in spite of any defect or error in the formality of its execution.

      ~~4~~6.  The rights, benefits, liabilities and responsibilities contained within the terms of this Agreement are not assignable by any Party with the prior written agreement of the other Party.

~~Transferor:~~                                                                                      ~~Transferee:~~

ACTIVE 228420980

Confidential & Privileged

      7.  The Parties agree that this Agreement shall be governed and construed in accordance with the laws of the State of California, and that any dispute arising out of or related to this Agreement shall be resolved exclusively in the state or federal courts located in Los Angeles, California.

      [*The remainder of this page has been intentionally left blank.*]

ACTIVE 228420980

Confidential & Privileged

IN WITNESS WHEREOF, the undersigned have hereunto caused this Director Compensation Agreement to be executed as of the date first set forth above.

FOUNDER

~~Signature:~~

~~Signature:~~ _____  _____

Yueting Jia

APPOINTEE

_____

~~Print Name: Yueting Jia~~                                                        ~~Print Name:~~ Hong Liu (aka (Henry) Hong Liu)

ACTIVE 228420980

| Summary report: Litéra® Change-Pro TDC 10.1.0.300 Document comparison done on 1/30/2018 10:39:17 AM ||
|---|---|
| **Style name:** Sidley Default ||
| **Intelligent Table Comparison:** Active ||
| **Original filename:** 01262018StockTransferAgreement (Clean) Final.docx ||
| **Modified filename:** Revised Director Compensation Agreement (clean) (003).docx ||
| **Changes:** ||
| Add | 71 |
| Delete | 54 |
| Move From | 4 |
| Move To | 4 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 133 |