Kevin D. Hughes (Bar No. 188749)
FOUNDATION LAW GROUP LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: 424.253.1266
Email: kevin@foundationlaw.com

Amiad Kushner (*pro hac vice*)
Akushner@seidenlawgroup.com
Jake Nachmani (*pro hac vice*)
Jnachmani@seidenlawgroup.com
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Telephone:  (646) 766-1914
Facsimile:   (646) 304-5277

*Attorneys for Plaintiff/Counter-Defendant,*
*Hong Liu*

# UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG<br><br>　　　　　Defendants.<br><br>FARADAY&FUTURE INC.,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>HONG LIU,<br><br>　　　　　Counter-Defendant. | Case No: 2:20-cv-08035-SVW-JPR<br><br>**PLAINTIFF HONG LIU'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**<br><br>Filed concurrently with a Memorandum of Points and Authorities, the Declarations of Amiad Kushner and Hong Liu, and [Proposed] Order<br><br>Complaint filed on: January 3, 2020<br><br>Second Amended Counterclaim filed on: March 11, 2021<br><br>Judge:　　Hon. Stephen V. Wilson<br>Trial Date:　June 8, 2021 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT Plaintiff Hong Liu ("Plaintiff" or "Mr. Liu"), by his undersigned counsel and pursuant to Rule 65 of the Federal Rules of Civil Procedure, will and hereby does move and apply *ex parte* (the "Application") for a temporary restraining order and preliminary injunction against defendants Faraday&Future Inc. ("FF") and FF Intelligent Mobility Global Holdings Ltd. (f/k/a Smart King Ltd. ("Smart King")).

This Application is made pursuant to Local Rule 7-19 and is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Amiad Kushner and Hong Liu and the exhibits attached thereto, the Proposed Order, the pleadings and records on file herein, and upon all other arguments and evidence that may be presented to this Court.

Dated: April 6, 2021

                                                Respectfully submitted,

                                                FOUNDATION LAW GROUP LLP

                                                By:/s/ Kevin D. Hughes
                                                *Attorneys for Plaintiff/Counter-Defendant Hong Liu*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT BACKGROUND .....................................................................................2

LEGAL STANDARD....................................................................................................5

ARGUMENT..................................................................................................................6

I. PLAINTIFF WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF....................................................................................6

II. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CONTRACT CLAIMS; DEFENDANTS REPUDIATED A CLEAR AND UNAMBIGUOUS AGREEMENT ................................................................8

III. THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF .....................9

IV. THE PUBLIC INTEREST FAVORS PLAINTIFF ......................................10

LOCAL RULE 7-19.1 STATEMENT ......................................................................12

CONCLUSION............................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Abrams v. Blackburne and Sons Realty Capital Corp.*,
  2020 WL 5028877 (C.D. Cal. June 16, 2020) .......................................................... 11

*Alliance for Wild Rockies v. Cottrell,*
  622 F.3d 1045 (9th Cir. 2010) .................................................................................. 6

*Bryant v. Matvieshen,* 2012 WL 1499068 (E.D. Cal. Apr. 27, 2012) ...................... 6, 11

*CX Inc. v. Clarington Capital Group LLC*,
  2012 WL 4097752 (N.D. Cal. Sept. 17, 2012) ......................................................... 7

*Flip Flop Shops Franchise Co., LLC v. Neb*,
  2016 WL 9275403 (C.D. Cal. Dec. 5, 2016) .......................................................... 10

*Garmon Corp. v. HealthyPets, Inc.*,
  2018 WL 6016911 (C.D. Cal. June 4, 2018) .......................................................... 11

*House v. Moller*, 2012 WL 1292483 (E.D. Cal. Apr. 16, 2012) .............................. 6, 10

*HSBC Bank USA, N.A. v. ZNM Holdings, Inc.*,
  2010 WL 11558087 (C.D. Cal. Apr. 19., 2020) .................................................. 10, 11

*Justus v. Argosy Int'l, Inc.*,
  2011 WL 13220309 (C.D. Cal. July 18, 2011) ......................................................... 8

*Kaneko v. Okuda*, 15 Cal. Rptr. 792 (Cal. App. 2d Dist. 1961) ................................... 7

*Kramer v. Puracyp, Inc.*,
  2017 WL 1034474 (Cal. App. 4th Dist. Mar. 17, 2017) ............................................ 7

*La Jolla Cove Inv'rs, Inc. v. Sultan Corp. Ltd.*,
  2011 WL 4916138 (S.D. Cal. Oct. 17, 2011) ............................................................ 7

*Lone Star Steakhouse & Saloon, Inc. v. Adams,*
  148 F.Supp.2d 1141 (D. Kan. 2001 .......................................................................... 12

*Newnham v. United States*, 813 F.2d 1384 (9th Cir. 1987) ........................................... 7

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015 (9th Cir. 2009) .......................................... 6

*St. Louis Police Ret. Sys. v. Severson*,
    2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) ............................................................ 12

*Steinmeyer v. Warner Cons. Corp.*,
    116 Cal. Rptr. 57 (Cal. App. 1st Dist. 1974) .............................................................. 7

*U.S. Philips Corp. v. KBC Bank N.V.*,
    590 F.3d 1091 (9th Cir. 2010) ..................................................................................... 5

**Statutes**

17 C.F.R § 240.14a-6(a) ...................................................................................................... 5

**Rules**

Rule 65 of the Federal Rules of Civil Procedure ............................................................ 1

Local Rule 7-19.1 ............................................................................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Hong Liu ("Plaintiff" or "Mr. Liu"), by his undersigned counsel and pursuant to Rule 65 of the Federal Rules of Civil Procedure, submits this memorandum of points and authorities in support of his motion (the "Motion") for a temporary restraining order and preliminary injunction against defendants Faraday&Future Inc. ("FF") and FF Intelligent Mobility Global Holdings Ltd. (f/k/a Smart King Ltd. ("Smart King") (collectively, "Defendants")).[1]

## PRELIMINARY STATEMENT

Plaintiff seeks immediate injunctive relief preventing Defendants from irreparably harming him by proceeding with a publicly announced merger that will extinguish his rights to 20,000,000 stock options he was promised in his Employment Agreement and thereby render any judgment in this action ineffectual. Defendants seek to do an "end run" around this Court, rushing to close the merger before the Court can reach the merits of Plaintiff's claims. The Court can and should prevent this.

In October 2018, as required by his Employment Agreement, Plaintiff was issued options to acquire 20,000,000 shares in Smart King. After Plaintiff was terminated in February 2019, Defendants were required under the plain terms of the Employment Agreement to vest those unvested, outstanding options. In this action, Plaintiff is seeking a Court order requiring Defendants to do so.

In late January 2021, Defendants announced a merger transaction (the "SPAC Transaction") with a publicly-traded special purpose acquisition company, Property Solutions Acquisition Corp. ("PSAC"). In the transaction, all outstanding equity in

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint (ECF 1) and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF 25). References to "Ex__" are to exhibits attached to the Declaration of Amiad Kushner. References to "Liu Decl." are to the Declaration of Plaintiff Hong. Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

Smart King (including options to acquire Smart King stock) will be canceled and exchanged for equity in PSAC.

On March 15, 2021, Defendants claimed in their discovery responses in this action (without any explanation) that Plaintiff's Smart King options will *not* be converted into PSAC equity in the SPAC Transaction. On March 29, 2021, Plaintiff's counsel demanded assurances that Plaintiff's Smart King options would, in fact, be exchanged for PSAC equity in the SPAC Transaction. FF failed to respond. It is now clear that Defendants intend to (if they have not already done so) cancel or otherwise invalidate Plaintiff's options, in material breach of the Employment Agreement — eviscerating the *status quo* and cutting Plaintiff out of the SPAC Transaction.

The SPAC Transaction has proceeded rapidly. On April 5, 2021, a preliminary proxy statement was filed with the SEC. The transaction may close in a matter of days.

Absent immediate injunctive relief, Plaintiff will be irreparably harmed upon the closing of the SPAC Transaction. Any judgment requiring that Smart King vest Plaintiff's options will be impossible to perform and will be unenforceable. Even if Plaintiff somehow obtains vested Smart King options after the Transaction closes, he would receive non-tradeable, worthless options in a shell subsidiary; he would not receive tradeable shares in a valuable public company.

For these reasons and as more fully set forth herein, Plaintiff seeks an order to preserve the status quo, enjoining Defendants from proceeding with the SPAC Transaction until such time as Defendants cause PSAC to recognize Plaintiff's 20,000,000 Smart King options to be outstanding *before* the SPAC closes (so that they will be converted into options to acquire PSAC stock, based upon the exchange ratio defined in the merger agreement).

## RELEVANT BACKGROUND

**The Employment Agreement**

In January 2018, Mr. Liu, an attorney and then-partner at Mayer Brown in New York, entered into an employment agreement (the "Employment Agreement") with

Faraday, Smart King, and their affiliates (as defined collectively in the Employment Agreement, "FF") to become their General Counsel and Chief Administrative Officer.

In the Employment Agreement, FF agreed to grant Mr. Liu 20 million shares of FF, which represented two percent of FF's total equity prior to its Series A round, with the shares to be issued (at Mr. Liu's election) in the form of restricted stock or options (the "Smart King Options"). The Employment Agreement provides in relevant part:

> FF shall grant [Mr. Liu] at a minimum cost required by law and outright, 2% of FF's total equity shares pre Series A dilution in the form of restrictive stocks or equity option as [Mr. Liu] may select based on any of FF's available equity grant forms to select from, namely 20,000,000.00 equity shares representing 2% of the total and all of 1,000,000,000.00 equity shares of FF pre Series A, as FF has represented and warranted, with the FF established and standard equity share or option vesting schedule and any of FF's earliest available vesting schedules as [Mr. Liu] may select [].

Ex. A, at 2.  The Employment Agreement further provides this two percent equity interest would "*become immediately and fully vested to [Mr. Liu] upon any early termination by FF of [Mr. Liu's] employment within the guaranteed employment term with FF*." Ex. A, at 2.

**Smart King Issues 20 Million Options to Plaintiff Pursuant to the Employment Agreement**

In October 2018, Smart King's board of directors passed a resolution granting Mr. Liu 20,000,000 options pursuant to the Employment Agreement. Liu Decl. ¶3.[2] In or about January 2019, Mr. Liu confirmed that he had been issued the options by accessing his account on an employee benefits website. Liu Decl. ¶3.

On or about February 11, 2019, Mr. Liu's employment was terminated. Although the Employment Agreement requires any outstanding and unvested options to be vested upon Mr. Liu's termination, since his termination date, Mr. Liu has not received any

---

[2] Defendants have admitted that Mr. Liu was "granted 20,000,000 options in Smart King." Ex. B, at Response to Request for Admission No. 1.

communication from FF confirming that his outstanding options were vested, or any information whatsoever regarding the status of his options. Liu Decl. ¶4.

**Plaintiff's Complaint Demands Issuance of the Options**

In January 2020, Plaintiff commenced this action by filing a complaint against Smart King, FF, and individual defendants. ECF 1. The complaint requests "[a]n order requiring Smart King and Faraday to immediately vest Plaintiff's options to purchase 20 million shares of Smart King, as required by the Employment Agreement."[3]

**The SPAC Transaction**

On January 28, 2021, FF announced it would enter into the SPAC Transaction with PSAC, a publicly-traded special purpose acquisition company.[4] Pursuant to the SEC-filed merger agreement for the SPAC Transaction, Smart King equity will "*be automatically cancelled*" and converted into equity in PSAC based upon an exchange ratio defined in the agreement.[5] Further, the merger agreement provides that every option in Smart King that is "outstanding" at the time of closing, whether vested or unvested, is to be converted into an option to purchase PSAC stock:

> 3.05 Treatment of Outstanding Company Options and Company Warrant. Each Company Option and Company Warrant to purchase Company Shares that is outstanding immediately prior to the Effective Time (and by its terms will not terminate upon the Effective Time), whether vested or unvested, ***shall be converted into an option or warrant, as applicable, to purchase shares of Acquiror Class A Common Stock* []**.

Ex. D at § 3.05.

**Defendants Repudiate Their Contractual Obligation to Vest Mr. Liu's Options**

In their filings in this action, Defendants repudiated their obligations under the Employment Agreement. Initially, Defendants alleged that they were somehow

---

[3] Complaint, at Prayer for Relief.

[4] Ex. C.

[5] Ex. D, at §§ 3.01, 3.05.

-4-
EX PARTE APPLICATION

defrauded into entering the agreement. *See* ECF 72. After the Court dismissed this fraud claim on the pleadings in late January 2021 (ECF 79), Defendants again, in two subsequent counterclaims, attempted to plead a plethora of meritless causes of action in order to evade their contractual obligations to Plaintiff. ECF 83 & 95.

Defendants further repudiated their contractual obligations in connection with the the imminent SPAC Transaction. In their responses to Plaintiff's discovery requests, Defendants categorically denied that in the SPAC Transaction Plaintiff will receive options to purchase PSAC shares.[6] On March 29, 2021, Plaintiff's counsel requested that "*Smart King immediately provide confirmation that Mr. Liu's options will, in fact, be converted into options in PSAC upon consummation of the SPAC transaction.*"[7] Defendants failed to respond to this letter.

**The Preliminary Proxy Statement**

On April 5, 2021, PSAC filed a preliminary proxy statement for the SPAC Transaction, signaling that the consummation of the SPAC Transaction is imminent. Ex. F. Indeed, under federal securities regulations applicable here, only ten days are typically required between the filing of a preliminary proxy statement and the issuance of a final proxy statement (and the SEC could permit a merger to close even sooner).[8]

## LEGAL STANDARD

"The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Litigants seeking a preliminary injunction "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the

---

[6] Ex. B, at No. 18 and 19.

[7] Ex. E.

[8] *See* 17 C.F.R § 240.14a-6(a) ("[P]reliminary copies of the proxy statement and form of proxy shall be filed with the [SEC] at least 10 calendar days prior to the date definitive copies of such material are first sent or given to security holders").

balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). Alternatively, if a movant demonstrates the likelihood of irreparable harm and that an injunction is in the public interest, a preliminary injunction can issue if there are serious questions on the merits and the balance of hardships tips sharply in the movant's favor. *See Alliance for Wild Rockies v. Cottrell,* 622 F.3d 1045, 1052–53 (9th Cir. 2010).

## ARGUMENT

### I. PLAINTIFF WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF

Absent injunctive relief, the SPAC Transaction will irreparably harm Plaintiff in at least two ways. <u>First</u>, any court order that Plaintif obtains requiring Smart King to vest his options will be unenforceable. Upon consummation of the SPAC Transaction, Smart King will become a *wholly-owned* subsidiary of PSAC, *i.e.*, 100% of the equity in Smart King will be owned by PSAC, a *non-party*. Plaintiff will lose the ability to obtain specific performance against Smart King because this Court could not compel Smart King to deliver equity *that it would no longer own*. A judgment will therefore be ineffectual. *See House v. Moller*, 2012 WL 1292483, at *1, 5 (E.D. Cal. Apr. 16, 2012) (granting preliminary injunction to prevent sale of property because sale would transfer title to the property to a third party and thus "*obviously impede the Court's ability to order specific performance*" as to the property, and thereby cause irreparable harm); *Bryant v. Matvieshen*, 2012 WL 1499068, at *3 (E.D. Cal. Apr. 27, 2012) (granting temporary restraining order enjoining sale or transfer of private company stock, where plaintiffs "allege[d] that they are entitled to specific performance . . . because the breach cannot be adequately compensated for in damages").

<u>Second</u>, even if this Court ordered Smart King to vest Plaintiff's options after the SPAC Transaction closes and Smart King was somehow able to comply with that order, those options will be worthless. At that point, substantially all of the value of Smart King equity will have been transferred to shareholders of PSAC. Unless Defendants

cause PSAC to recognize Plaintiff's options to be outstanding *before* the SPAC closes (so that they will be converted into options to acquire PSAC stock, based upon the exchange ratio defined in the merger agreement), he will be left out in the cold. Instead of holding options in a valuable public company (PSAC), he would be left with (at best) non-tradeable, worthless options in a subsidiary that could not be monetized.

Significantly, Plaintiff is entitled to specific performance of his contractual right to 20,000,000 vested options in Smart King. Specific performance is available where the subject matter of a contract "is considered so unique that a money judgment does not suffice for a remedy." *Newnham v. United States*, 813 F.2d 1384, 1386 (9th Cir. 1987). Shares of a private company (such as Smart King) are a unique asset for which specific performance is available.

Thus, numerous California courts have recognized that specific performance is available to compel delivery of shares in a private company that are not generally available in the market. *See Kramer v. Puracyp, Inc.*, 2017 WL 1034474, at *4 (Cal. App. 4th Dist. Mar. 17, 2017) (granting specific performance because plaintiff "showed his legal remedy was inadequate by presenting evidence that Company was a closely held corporation with stock that was not publicly traded and was without any established market value"); *La Jolla Cove Inv'rs, Inc. v. Sultan Corp. Ltd.*, 2011 WL 4916138, at *2 (S.D. Cal. Oct. 17, 2011) (specific performance is available in the context of "shares of stock not obtainable in the open market"); *CX Inc. v. Clarington Capital Group LLC*, 2012 WL 4097752, at *1–2 (N.D. Cal. Sept. 17, 2012) (granting specific performance because stock was not publicly traded); *Steinmeyer v. Warner Cons. Corp.*, 116 Cal. Rptr. 57, 60 (Cal. App. 1st Dist. 1974) (recognizing that "the stock had a peculiar value as to render the agreement specifically enforceable" because it was "not readily obtainable on the open market"; noting that "It has been held repeatedly . . . that an agreement to transfer stock of peculiar value may be specifically enforceable."); *Kaneko v. Okuda*, 15 Cal. Rptr. 792, 802 (Cal. App. 2d Dist. 1961) (granting specific performance because shares "had a peculiar value to plaintiff" as they "could not have

been purchased on the open market," such that "defendants' failure to deliver could not have been compensated by a money judgment").

Absent injunctive relief compelling Smart King to confirm the options as outstanding before the SPAC transaction closes, Plaintiff's ability to obtain specific performance will evaporate. For all of the above reasons, Plaintiff will be irreparably harmed absent injunctive relief.

## II. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CONTRACT CLAIMS; DEFENDANTS REPUDIATED A CLEAR AND UNAMBIGUOUS AGREEMENT

Plaintiff is likely to succeed on merits of his claims for breach of the Employment Agreement, a clear and unambiguous document. To establish a breach of contract, a plaintiff must show (1) the existence of the contract, (2) a party's performance or excuse for non-performance, (3) breach, and (4) the resulting damages. *Justus v. Argosy Int'l, Inc.*, 2011 WL 13220309, at *2 (C.D. Cal. July 18, 2011).

Here, it is undisputed that Plaintiff entered into the Employment Agreement with FF and Smart King and that, in February 2018, Plaintiff resigned from Mayer Brown and assumed the roles of General Counsel and Chief Administrative Officer as agreed. It is also undisputed that, in October 2018, after Plaintiff had been working at FF for eight months, Smart King granted Plaintiff options to acquire 20 million Smart King shares, the exact number of shares promised in the Employment Agreement.

Plaintiff was terminated in February 2019, which qualifies as an "early termination" because it was made before the expiration of the five year term of the Employment Agreement.[9] The Employment Agreement unambiguously provides that Plaintiff's Smart King options shall "*become immediately and fully vested to [Mr. Liu] upon any early termination by FF of [Mr. Liu's] employment within the guaranteed employment term with FF*." (Ex. A. at 2). However, after Plaintiff's termination, Defendants repudiated their obligations under the Employment Agreement. Not only

---

[9] *See* Ex. A, at 1 ("FF shall guarantee [Mr. Liu's] employment . . . for five years").

have Defendants not vested Plaintiff's options, but in a transparent attempt to evade their contractual obligations, Defendants have asserted meritless counterclaims seeking to void the Employment Agreement. *See* ECF 72, 83, 95.

Defendants' threadbare counterclaims and defenses are meritless for the reasons articulated in Plaintiff's motion to dismiss.[10] Plaintiff is likely to succeed on the merits of his straightforward claim for enforcement of a clear and unambiguous agreement.

### III. THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF

The balance of the equities weighs heavily in favor of granting the requested injunctive relief. While Defendants purport to deny breaching their obligations under the Employment Agreement, it is undeniable that they are denying recognition of Plaintiff's options and excluding him from the SPAC Transaction — forever extinguishing his ability to obtain specific performance of the agreement.

Absent an injunction, Plaintiff's ability to obtain the unique equity he was promised and granted — 20,000,000 options in Smart King, a privately held company — will be wiped out in the SPAC Transaction. This will eviscerate the *sine qua non* of the Employment Agreement, the very reason why Plaintiff took such a substantial risk in leaving his Mayer Brown equity partnership to join a start up company.

On the other hand, confirming that Plaintiff's options are outstanding now costs Defendants nothing and can be accomplished with a simple book entry. Defendants may contend that it would be "inequitable" to recognize Plaintiff options as outstanding because it may dilute other Smart King shareholders or option holders. Yet those shareholders will receive a *windfall* if and when Smart King illegally invalidates Plaintiff's 20,000,000 options (if it has not done so already). The recognition of Plaintiff's options would *prevent* such an inequitable windfall.

---

[10] There is no basis for Defendants' affirmative defenses and counterclaims which seek to invalidate the carefully-negotiated Employment Agreement, which was reviewed by FF's outside counsel at Sidley Austin. As described more fully in Plaintiff's motion to dismiss Faraday's Second Amended Counterclaim (ECF 108), these counterclaims should be dismissed.

Accordingly, the requested injunction merely seeks to ensure that the parties *can* be restored to the position they were in before Defendants' breach. *See HSBC Bank USA, N.A. v. ZNM Holdings, Inc.*, 2010 WL 11558087, at *3 (C.D. Cal. Apr. 19., 2020) (holding that "the balance of equities tips in favor of [plaintiff]" because it "stands to lose the ability to collect on the loan if the property interest is wasted or reverts to the land owner," whereas there was "little hardship to [defendant] in taking steps to enforce the terms of the parties' bargain"); *House*, 2012 WL 1292483 at *5-7 (balance of equities favored plaintiffs because they "have what appears to be a meritorious claim for specific performance" and made "a showing of irreparable harm" because "the Court's ability to order specific performance" would be impeded absent an injunction).

Further, Smart King's bad-faith refusal to communicate with Plaintiff regarding the status of his options (including refusal to provide meaningful responses to Requests for Admission as to the disposition of those options[11]) and failure to respond to his counsel's March 29, 2021 letter further weighs in favor of granting the injunction.

## IV. THE PUBLIC INTEREST FAVORS PLAINTIFF

Granting the requested injunction is in the public interest. "The public interest analysis for the issuance of a preliminary injunction requires [the court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Flip Flop Shops Franchise Co., LLC v. Neb*, 2016 WL 9275403, at *9 (C.D. Cal. Dec. 5, 2016).

As this Court held in granting an injunction, it "is generally in the public interest to enforce valid contracts and make parties live up to their agreements." *Id.*; *see also Garmon Corp. v. HealthyPets, Inc.*, 2018 WL 6016911, at *1 (C.D. Cal. June 4, 2018) ("It is in the public interest to enforce valid contracts."); *HSBC*, 2010 WL 11558087 at

---

[11] *See, e.g.,* Ex. B, at Responses to Requests for Admission No. 12-17 (refusing to admit *or* deny that Plaintiff's options have been invalidated, instead purporting to "admit" various alleged breaches by Plaintiff, and obfuscating: "Except as admitted, denied.").

*4 ("[A]n injunction is in the public interest because it reaffirms the private right of contract and the ability to effectively enforce breach of contract … in the courts.").

In addition, "the public interest nearly always weighs in favor of protecting property rights," such as Plaintiff's property interest in his options, which Defendants have repudiated. *Abrams v. Blackburne and Sons Realty Capital Corp.*, 2020 WL 5028877, at *5 (C.D. Cal. June 16, 2020) (recognizing interests in a loan as a property right whose protection is in the public interest) (citing federal cases in California); *see also Bryant*, 2012 WL 1499068 at *4 (finding public interest was in favor of temporary restraining order because "a potential cloud on title as to the contemplated [stock sale] transactions may have an adverse effect on other investors [including "public shareholders" of the privately held companies at issue]").

Finally, it is in the public interest to provide adequate disclosure to shareholders in accordance with the federal securities laws. In their disclosures to the SEC in connection with the SPAC Transaction, Defendants disclosed only "20.7 million outstanding unvested Faraday Future options."[12] The preliminary proxy statement filed on April 5, 2021 specifies that those unvested options are held by Cartsen Breitfeld, Chui Tin Mok, and Jiawei Wang, who collectively have 22,784,630 options that are "Unexercisable" but scheduled to vest in coming years. Ex. F, at 139. In other words, ***Plaintiff's rights to 20,000,000 Smart King options have not been disclosed to Smart King's shareholders or PSAC's shareholders***, either in the preliminary proxy statement or in the investor presentation. This omission is material — as demonstrated by this motion. It would not be in the public interest to permit Defendants to repudiate

---

[12] Ex. G, at 44 n.7.

Plaintiff's rights to 20,000,000 Smart King options without disclosing Plaintiff's claims to shareholders in advance of their vote on the merger.[13]

For these reasons, granting the requested injunction is in the public interest.

## **LOCAL RULE 7-19.1 STATEMENT**

Pursuant to Local Rule 7-19.1, Plaintiff's counsel contacted Defendants' counsel by phone on April 6, 2021 and advised them of Plaintiff's intent to file this Application and this Application's substance.  Plaintiff's counsel informed counsel for Defendants of the 3:00 p.m. deadline on the next business day following service to file an opposition.  Plaintiff's counsel also inquired if counsel for Defendants intended to oppose the Application. They represented that they would object to the Application.

Pursuant to Local Rule 7-19, the name, address, telephone number, and e-mail address of counsel for the opposing party is as follows:

> KEVIN CRISP
> kevin.crisp@troutman.com
> TROUTMAN PEPPER HAMILTON SANDERS LLP
> 5 Park Plaza, Suite 1400
> Irvine, CA  92614-2545
> Telephone:  949.567.3537
> Facsimile:   949.622.2739

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's *ex parte* application for a temporary restraining order and preliminary injunction should be granted.  The Court should issue an order enjoining Smart King and Faraday from proceeding with the SPAC Transaction until such time as Defendants cause PSAC to recognize Plaintiff's 20,000,000 Smart King options to be outstanding *before* the SPAC closes (so that they

---

[13] "A fully informed shareholder vote in compliance with Section 14(a) of the Securities Exchange Act . . . is in the best interests of shareholders and the shareholding public generally." *St. Louis Police Ret. Sys. v. Severson*, 2012 WL 5270125, at *6 (N.D. Cal. Oct. 23, 2012) (granting preliminary injunction; citing *Lone Star Steakhouse & Saloon, Inc. v. Adams,* 148 F.Supp.2d 1141 (D. Kan. 2001) for the proposition that "assuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public").

will be converted into options to acquire PSAC stock, based upon the exchange ratio defined in the merger agreement).

DATED: April 6, 2021

                      FOUNDATION LAW GROUP LLP

                      By:/s/ Kevin D. Hughes
                          KEVIN D. HUGHES
                          *Attorneys for Plaintiff/Counter-Defendant Hong Liu*

                      SEIDEN LAW GROUP LLP

                      By: /s/ Amiad Kushner
                          AMIAD KUSHNER
                          JAKE NACHMANI
                          *Attorneys for Plaintiff/Counter-Defendant Hong Liu*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsel of record.

Dated: April 6, 2021 /s/ Kevin D. Hughes

Kevin D. Hughes

-15-