ALAN J. KESSEL, Bar No. 130707
    E-mail:  alan.kessel @troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
    E-mail:  jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
    E-mail:  kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
    E-mail:  lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:  949.622.2700
Facsimile:  949.622.2739

Attorneys for Defendants
SMART KING LTD., JIAWEI WANG, and CHAOYING DENG
and Defendant and Counterclaimant FARADAY&FUTURE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>              Plaintiff,<br><br>     v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,<br><br>              Defendants. | Case No.  2:20-cv- 08035-SVW-JPR<br><br>Honorable Stephen V. Wilson<br><br>**DEFENDANTS FARADAY&FUTURE INC. AND SMART KING LTD.'S OPPOSITION TO PLAINTIFF HONG LIU'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AN AUTHORITIES IN SUPPORT THEREOF ATTACHED HERETO**<br><br>[Filed concurrently with Declarations of Kevin A. Crisp and Vijay S. Sekhon]<br><br>Discovery Cutoff Date:  April 23, 2021<br>Pre-Trial Conf:            Waived<br>Trial Date:                  June 8, 2021 |
| AND RELATED COUNTERCLAIM. | |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

115009198

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  BACKGROUND ......................................................................................... 6

    A.  The Parties ......................................................................................... 6

    B.  The Employment Agreement and Liu's Ethical Violations ................ 6

    C.  The Options and Liu's Failures to Perform Thereunder ..................... 6

    D.  The Merger Agreement and the Merger .............................................. 7

    E.  Procedural History ............................................................................. 9

III.  LEGAL STANDARDS ............................................................................... 9

IV.  ARGUMENT ............................................................................................ 10

    A.  There is no exigency as the Merger will not close for at least
five weeks, and Liu has inexplicably waited two-and-a-half
months. ............................................................................................. 10

    B.  No extraordinary relief is required because the Merger permits
both the issuance of options and their conversion. .......................... 11

    C.  There is no irreparable harm as stock in public companies is
fungible and money damages will be sufficient in any event. .......... 13

    D.  Regardless, Liu is not likely to succeed on the merits of his
claims because his options never vested and he never exercised
them, and his superseded employment agreement is
unenforceable. .................................................................................. 14

    E.  The hardships are entirely one-sided, and Smart King would
likely suffer severely and irreparably, while Liu will lose
nothing. ............................................................................................. 15

    F.  The Application's requested injunction would harm the public's
interest, including the livelihoods of nearly five hundred
employees. ........................................................................................ 16

    G.  If the Merger is stopped, Liu must make a $4 billion dollar
bond. ................................................................................................. 18

V.  CONCLUSION ........................................................................................ 18

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- i -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Blackburne & Sons Realty Capital Corp.*,
2020 WL 5028877 (C.D. Cal. June 16, 2020)......................................................17

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..............................................................................15

*In re Apple Computer, Inc., Derivative Litig.*,
2006 WL 8443550 (N.D. Cal. Nov. 1, 2006).........................................................15

*Bryant v. Matvieshen*,
2012 WL 1499068 (E.D. Cal. Apr. 27, 2012).......................................................17

*CX Inc. v. Clarington Capital Group LLC*,
2012 WL 4097752 (N.D. Cal. 17, 2012)...............................................................13

*Emirzian v. Asato*,
23 Cal. App. 251 (1913) ........................................................................................13

*Flip Flop Shops Franchise Co., LLC v. Neb*,
2016 WL 9275403 (C.D. Cal. Dec. 5, 2016).........................................................17

*Garmon Corp. v. HealthyPets, Inc.*,
2018 WL 6016911 (C.D. Cal. June 4, 2018).........................................................17

*House v. Moller*,
2012 WL 1292483 (E.D. Cal. Apr. 16, 2012).......................................................16

*HSBC Bank USA, N.A. v. ZNM Holdings, Inc.*,
2010 WL 11558087 (C.D. Cal. Apr. 19, 2020)...............................................16, 17

*In re: Intermagnetics Am., Inc.*,
101 Bankr. 191 (C.D. Cal. 1989) .....................................................................10, 11

*Kaneko v. Okuda*,
195 Cal. App. 2d 217 (1961) .................................................................................13

*Kramer v. Puracyp, Inc.*,
2017 WL 1034474 (Cal. App. 4th Dist. Mar. 17, 2017) .......................................13

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- ii -

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*La Jolla Cove Investors, Inc. v. Sultan Corp. Ltd.*,
2011 WL 4916138 (S.D. Cal. Oct. 17, 2011)......................................................13

*Loving & Evans v. Blick*
(1949) 33 Cal.2d 603…...........................................................................................14

*Manzano v. Misson Fed. Credit Union*,
2010 WL 5463102 (S. D. Cal. Dec. 29, 2010)............................................10, 11

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ................................................................................................9

*Plattsburgh Hous. Auth. v. Cantwell*,
54 Misc. 3d 1216(A), 54 N.Y.S.3d 612 (N.Y. Sup. Ct. 2017).........................15

*Religious Tech Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
923 F. Supp. 1231 (N.D. Cal. 1995).....................................................................10

*Reno Air Racing Ass'n, Inc. v. McCord*,
452 F.3d at 1131 (9th Cir. 2006) ..........................................................................10

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Corp.*,
6 Cal.5th 59 (2018)................................................................................................14

*Steinmeyer v. Warner Cons. Group*,
42 Cal. App. 3d 515 (1974) ..................................................................................13

*Winter v. Natural Res. Defense Council*,
555 U.S. 7 (2008) ....................................................................................................9

*Zakar v. CHL Mortg. Pass Through Trust*,
2011 WL 915293 (S.D. Cal. Mar. 8, 2011).........................................................10

**Statutes**

Cal. Civ. Code § 3391.............................................................................................15

**Other Authorities**

California Rules of Professional Conduct 3-310, 3-300, and 4-200 .........................4

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- iii -

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Fed. R. Civ. P. 30(b)(6) ............................................................... 11

Fed. R. Civ. P. 56(f) ..................................................................... 5

Fed. R. Civ. P. 65 ..................................................................... 9, 10

Fed. R. Civ. P. 65(b) .................................................................. 10

Fed. R. Civ. P. 65(b)(1) ............................................................. 10

Fed. R. Civ. P. 65(c) ................................................................... 18

New York Rules of Professional Conduct 1.5, 1.7, and 1.8 ............... 3, 15

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## I.     INTRODUCTION

Plaintiff Hong Liu's ("**Liu**") *Ex Parte* Application for Temporary Restraining Order and Preliminary Injunction (the "**Application**") to enjoin Defendants Faraday&Future Inc. ("**FF**") and Smart King Ltd. ("**Smart King**"; together with FF, **"Defendants"**) from proceeding with a multi-billion dollar merger with Property Solutions Acquisition Corp. ("**PSAC**"), which not only was publicly announced and filed with the SEC, but also of which both Liu and his counsel in this action were specifically notified in writing *more than two months ago on January 28, 2021* (the **"Merger"**),[1] is legally required to be denied for each of the following, independently dispositive reasons:

*First*, as manifest from his more than two month delay just in filing the Application itself, there clearly are no exigent circumstances legally prerequisite to the issuance of Liu's demanded extraordinary injunctive relief.  That is particularly true where, contrary to Liu's entirely unsubstantiated and speculative supposition, the Merger *actually* is not even scheduled to close *for at least another month*, no earlier than mid-to-late May 2021.  Rather than make any effort to ascertain this actual date of the Merger's closing, Liu instead attempts to create an "emergency" where none exists by baselessly hypothesizing—without any reasonable basis whatsoever—that the Merger "could close any day," in a transparent attempt to prejudice Defendants by threatening to "blow up" the Merger they have been working on for months *with Liu's and his counsel's express knowledge*, and by forcing Defendants and this Court to waste time and resources responding to a non-existent "emergency" of Liu's own making in the hope of obtaining a tactical advantage in this litigation.

To that end, Liu not only purposely waited for more than two months until 4:00 p.m. yesterday to first provide *ex parte* notice, but also purposely waited until

---

[1] *See discussion, infra,* at Section IID.

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

approximately 9:00 p.m. last night to first serve his 671-page Application and supporting papers, which he admitted had been prepared *prior* to his provision of his *ex parte* notice 5 hours earlier. Accordingly, in addition to the absence of any "emergency" conceivably supporting the issuance of extraordinary *ex parte* relief manifest from his own dilatory conduct, Liu's blatant gamesmanship and bad faith tactics further mandate denial of the Application, as well as subject Liu and his counsel to sanctions. *See discussion, infra,* at Section IV.A.

**Second**, no extraordinary relief is needed. Rather, in again attempting to manufacture an emergency where none exists, Liu pretends that in the highly unlikely event that he were to succeed on his underlying Smart King options claim in this case, the Merger somehow will impede his enforcement of a hypothetical judgment for specific performance. Not so.

Under the publicly-announced January 28, 2021 Agreement and Plan of Merger with PSAC (the "**Merger Agreement**"), the Smart King options not only automatically convert to PSAC options, but also Smart King's successor retains the ability to issue or otherwise honor options to Liu should the trier of fact so require. And Liu's alleged conundrum that he cannot add PSAC as a party to this action is equally contrived and irrelevant as well as entirely self-inflicted, as just three weeks ago Liu stipulated to, and this Court entered an order, setting a March 16, 2021 cutoff for adding parties that Liu tellingly failed to meet. Thus, for the second time in just the past two weeks, Liu has come to this Court in violation of its own rules on a purported *ex parte,* emergency basis to bail him out of a scheduling snafu of his own making. The difference is that this time, Liu is not merely seeking to extend a deadline he flouted, but instead is demanding that this Court take the extraordinary measure of stopping dead in its tracks a multi-billion-dollar transaction Liu has admittedly known about for months. *See discussion, infra,* at Section IV.B.

**Third**, no irreparable harm legally exists. Indeed, under even Liu's best case scenario, his claims would only give him 2% of the company, which is a far cry from

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

the controlling interests courts might consider as warranting specific performance, and regardless, options in companies like Smart King (which will be publicly traded once the Merger closes) are fungible, subsequently rendering the Application's cited authorities on the subject legally inapposite and irrelevant. Put simply, Liu's legal remedies, if any, are plainly adequate as a matter of black letter law, and there is no irreparable harm. In fact, by threatening Smart King's continued existence, it is only the granting of the extraordinary relief demanded in the Application that creates a risk that Liu might be unable to collect on a hypothetical judgment. *See discussion, infra,* at Section IV.C.

**Fourth**, there is no likelihood of success on the merits for Liu's purported option claims. In particular, and entirely omitted from the Application even though Smart King has repeatedly informed him of such, Liu failed to perform the necessary conditions precedent. Under the options' clear and express terms, and leaving to the side FF and Smart King's position on the validity of Liu's agreements with FF in light of his violations of rules of professional conduct, the options could only vest if Liu remained at the company on any given vesting date, but his termination indisputably predated any of those vesting dates, so none of his purported options ever vested. In addition, and even if they had vested, Liu undisputedly never attempted to exercise, much less exercised, any of the options before they expired three months after his termination.

While Liu strains to avoid the obvious consequences of these failures by pointing to the employment agreement he drafted for his own client while simultaneously representing it as outside counsel, the option terms superseded the employment agreement. But even if not, Liu similarly omits from his Application that the employment agreement was and is void *ab initio* as a result of Liu's blatant failures to abide by his ethical obligations in negotiating such a business deal with his own clients, specifically New York Rules of Professional Conduct 1.5, 1.7, and

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

1.8, as well as California Rules of Professional Conduct 3-310, 3-300, and 4-200, due to his failures to:

> (i) advise his client in writing to obtain independent counsel;

> (ii) inform his client of all existing and potential conflicts; and

> (iii) obtain informed, written consent as to such conflicts, as well as

> (iv) his negotiation of not only unfair and unreasonable terms, but also patently unconscionable terms, including grossly excessive fees in the form of $8 million cash plus 2% ownership of the company (which would currently be valued at about $80 million), both of which were guaranteed even if Liu was immediately terminated and even if a court expressly found Liu had breached his fiduciary duties.

Further, Liu drafted that agreement himself, and he did so in English, even though the client representative with whom he was discussing the agreement is a native Mandarin speaker, and even though Liu made almost all his other communications with his clients in Mandarin.  Needless to say, Liu simply cannot rely on superseded terms in an unenforceable agreement to bootstrap his way into an *ex parte* temporary restraining order and preliminary injunction, especially one that would, as discussed below, needlessly and perhaps irreparably harm FF and Smart King.  *See discussion, infra,* at Section IV.D.

***Fifth,*** the balance of harms exclusively favors denying the Application. Restraining the Merger at this point in the transaction seriously risks destroying the entire transaction, which not only risks wasting countless hours and time and very significant resources put into the Merger, but it also seriously risks FF and Smart King's continued existence, and jeopardizes the investments and livelihoods of several hundreds of actual shareholders and employees.  Meanwhile, as noted above, there is simply no need for the patently overbroad restraining order and injunction demanded in the Application, and Liu can suffer no harm at all by its denial.  Just the opposite, as the Merger ensures Smart King's future, while restraining the Merger

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

endangers it, and whether Liu wants options or damages (though again, he is unlikely to get either), Smart King's viability is critical. *See discussion, infra,* at Section IV.E.

**Sixth**, the public interest also exclusively favors the Application's denial. As just explained, on behalf of Smart King and all its stakeholders relying on the Merger, the Court must stop Liu from cutting off his proverbial nose to spite his face (even if he does not see the difference.) Further, and of note here, Liu's baseless assertion that the Merger is somehow being "rush[ed] to close" as an "end run" around Liu's options is absurd. App., p. 1. The Merger has nothing to do with Liu's groundless option claims and is in fact the culmination of nearly a year of tireless work by numerous Smart King executives and outside consultants that will secure the company's future as a publicly-traded company. *See discussion, infra,* at Section IV.F.

**And seventh,** Liu failed to offer any undertaking or to explain why any undertaking should be excused. Not only is an undertaking appropriate, it is *mandatory* under Fed. R. Civ. P. 56(f). The Merger will not only ensure Smart King's viability, it will inject approximately $1 billion cash into Smart King's business, and based on the Merger, PSAC's current trading price values Smart King at more than $4 billion, all of which may be lost if the Merger is stopped. As such, while there is no reason to approve the Application, if the Court for some reason does grant it, Liu should be required to first deposit an undertaking of the full $4 bilion, or at the very least $1 billion. *See discussion, infra,* at Section IV.G.

At bottom, and as is evident from each of the foregoing reasons, the Application is factually and legally baseless, and it represents a sanctionable misuse of the *ex parte* process, all of which Smart King's counsel explained during Liu's belated telephonic notice yesterday evening. The Application therefore should be denied, and the Court should award Smart King its costs and fees in opposing it.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

## II.   BACKGROUND

### A.   The Parties

Liu was a New York attorney and partner at Mayer Brown LLP ("**Mayer**") in or around October 2017.  (Dkt. 95 [Second Amended Counterclaim] at ¶ 1.)  FF was and is an electric car company headquartered in Los Angeles.  (*Id*. at ¶¶ 13, 17.)  Smart King is FF's indirect parent company.  (*Id*. at ¶ 40.)

### B.   The Employment Agreement and Liu's Ethical Violations

While at Mayer, FF retained Liu as its attorney, which attorney-client relationship was memorialized in an engagement agreement dated October 20, 2017 that was signed by Liu on Mayer's behalf.  (*Id*. at ¶ 2.)  Despite Liu representing FF in various legal matters, on or about January 25, 2018, Liu solicited from and obtained an employment agreement with FF and Smart King (the "**Employment Agreement**"), and a related Directors Compensation Agreement from a principal of FF and Smart King.  (*Id*. at ¶ 4.)  In so doing, Liu violated his ethical duties to his client by failing to:  (i) advise his client in writing to obtain independent counsel; (ii) inform his client of all existing and potential conflicts; and (iii) obtain informed, written consent as to such conflicts.  He also negotiated unfair, unreasonable and unconscionable terms, including grossly excessive fees in the form of $8 million cash plus 2% ownership of the company (which would currently be valued at about $80 million), both of which were guaranteed even if Liu was immediately terminated and even if a court expressly found Liu had breached his fiduciary duties.  (*Id*. at ¶¶ 76-91.)  Further, Liu drafted that agreement himself, and he did so in English, even though his clients' native language was Mandarin, and even though Liu made almost all his other communications with his clients in Mandarin.  (*Id*.)

### C.   The Options and Liu's Failures to Perform Thereunder

On or about October 24, 2018, Liu, as a Smart King director, proposed and voted to approve a grant of stock options to Liu and other employees under the Smart King Equity Incentive Plan.  (Decl. of Kevin A. Crisp ("Crisp Decl.") at Ex. 1.)  On

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

or about October 24, 2018, Smart King granted Liu his purported options under the Equity Incentive Plan pursuant to a vote of the Smart King Board of Directors.  (*Id*.) Liu participated in this vote and approved of the grant under the Equity Incentive Plan.  The options purportedly available to Liu by virtue of the option grant agreements never vested before he was terminated in February 2019.  (*Id*. at Ex. 2; Dkt. 95 [Second Amended Counterclaim] at ¶ 51.)  Liu also never even attempted to exercise those options even though the Equity Plan states that options thereunder must be exercised within a specified time frame identified by the plan administrator. (Crisp Decl. at Ex. 3.)

### D.     The Merger Agreement and the Merger

On or about January 28, 2021, the Merger Agreement was publicly filed with the SEC.  (Decl. of Vijay Sekhon ("Sekhon Decl.") at ¶ 2.)  That same day, a copy of the Merger Agreement was also emailed to Liu's lawyers, one of whom, Amiad Kushner, replied the next day that, "We are reviewing."  (Crisp Decl. at Ex. 4.)

The Merger Agreement resulted from, and has required to date, over nine months of meticulous planning and negotiations involving numerous Smart King executives and employees as well as Smart King's various advisors, including lawyers, investment bankers, and accountants.  (Sekhon Decl. at ¶ 3.)

The Merger (as defined in the Merger Agreement) is a so-called "SPAC Transaction," which is designed for companies to access pre-pooled public investor funds together with privately placed equity and become a publicly traded company via a business combination.  (*Id*. at ¶ 4.)  As a result of the Merger, subject to the satisfaction or waiver of the conditions in the Merger Agreement, PSAC Merger Sub Ltd. ("**Merger Sub**") will merge with and into Smart King, and substantially all current Smart King stakeholders will have the right to receive publicly traded common stock of PSAC (which is intended to be renamed Faraday Future Intelligent Electric Inc. ("**New FF**") and remain listed on NASDAQ at the closing).  (*Id*.)  Smart King expects to receive approximately $1 billion in cash from a trust account at

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

PSAC and the proceeds of private placements of common stock by PSAC at the closing.  (*Id.*)

Under Merger Agreement Section 3.05, all Smart King stock and stock options outstanding immediately prior to the Merger will convert upon closing to New FF common stock and common stock options.  (*Id.* at ¶ 7.)  After the closing of the Merger, under Merger Agreement Section 7.09, New FF will have the ability to issue stock options, including to Liu if so required by the court.  (*Id.*)  In other words, the so-called potential "injury" feigned by Liu is non-existent.

On April 5, 2021, PSAC filed a Form S-4 filed with the SEC, but the Merger is not expected to close until mid-to late May at the earliest.  (*Id.* at ¶ 5.)  The Form S-4 is subject to review and comment by the U.S. Securities and Exchange Commission (the "SEC"), and after the SEC confirms that it has no further comments to the Form S-4, the S-4 must be sent to FF and PSAC shareholders for review in connection with such shareholders' approval of the Merger.  This process is expected to be completed by no earlier than mid-to-late May 2021 or no later than the end of June 2021.  (*Id.*)

Page 173 of the S-4 includes the following disclosure regarding Liu's ongoing litigation with Defendants:  "FF is also involved in a lawsuit brought by a former employee alleging fraudulent inducement and wrongful termination, seeking damages, including $6.4 million of unpaid compensation and immediate vesting of 20 million FF shares."  (*Id.* at ¶ 6.)

The issuance of an order restraining Smart King from proceeding with the Merger, as requested in the Application, would create a serious risk that the Merger will be terminated by one or more investors or stakeholders, and create a serious risk that the Merger would be called off.  (*Id.* at ¶ 8.)  And if the Merger were to be called off, that would cause an existential threat to Smart King's business.  (*Id.*)  Smart King and its subsidiaries currently employ nearly 400 employees.  (*Id.* at ¶ 9.)  In addition, Smart King has several hundred shareholders.  (*Id.*)

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

The current trading price of PSAC implies that, if the Merger is closed, Smart King will have a market capitalization of about $4 billion.  (*Id.* at ¶ 10.)

### E.    Procedural History

Liu never even mentioned the possibility of seeking to enjoin the Merger until yesterday afternoon at around 4:00 p.m. when his counsel called Smart King's counsel to provide *ex parte* notice of the Application.  (Crisp Decl. at ¶ 6.)  During that notice, Liu's counsel stated the Application and supporting papers—which total 671 pages—were substantially complete and would be filed within an hour or two. (*Id.*)  Yet, the papers were not filed until close to 9:00 p.m.

While Liu laments his purported inability to add PSAC at a party—an unnecessary measure for the reasons described above—any such failing is due to Liu's own delay and his express stipulation to the deadline to add new parties. (Dkt. 92 [Joint Stip re Discovery and Pretrial Dates].)  And just two weeks ago, on March 23, Liu filed another *ex parte* application asking the Court to bail him out of a scheduling issue he had created for himself by failing to timely meet and confer on a motion to dismiss.  (Dkt. No. 99 [Ex Parte Application to Extend Deadline].)

## III.  LEGAL STANDARDS

Liu "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Id.*  Further, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In addition, the "'stringent restrictions imposed . . . by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable

notice and an opportunity to be heard has been granted both sides of a dispute.'" *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39, (1974)); *see also Religious Tech Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1262 ("Rule 65(b) permits injunctive relief without notice only where notice to the adverse party is impossible or, in some limited circumstances, where notice would render further action fruitless."). To satisfy Rule 65, Liu must therefore establish with specific facts in an affidavit or a verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition on normal notice. Fed. R. Civ. P. 65(b)(1); *see Zakar v. CHL Mortg. Pass Through Trust*, 2011 WL 915293, at *1-2 (S.D. Cal. Mar. 8, 2011); *Manzano v. Misson Fed. Credit Union*, 2010 WL 5463102, at *1-2 (S. D. Cal. Dec. 29, 2010).

## IV. ARGUMENT

### A. There is no exigency as the Merger will not close for at least five weeks, and Liu has inexplicably waited two-and-a-half months.

*Ex parte* relief is expressly reserved for emergencies. *See, e.g.*, Dkt. No. 55 [New Case Order] at ¶ 4 ("This Court only allows *ex parte* applications when extraordinary relief is necessary. Counsel are advised to file and serve their *ex parte* applications as soon as they realize that extraordinary relief is necessary. Sanctions may be imposed for misuse of ex parte applications.") (citing *In Re: Intermagnetics America, Inc.*, 101 Bankr. 191 (C.D. Cal. 1989)). But there is no emergency here, and this fact, by itself, requires the Application's denial.

Liu **waited two-and-a-half months** before seeking the Court's intervention here, and the only explanation for that delay is that he is seeking to prejudice Smart King and FF in light of the many other pre-trial matters to which they are attending (including opposing Liu's motion to dismiss on April 12, 2021). Even then, he missed the mark, as the Merger will not close for at least **another five weeks and**

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

***potentially three months***, a fact Liu could have ascertained with a simple phone call.[2] Instead, he arbitrarily demanded that the Court intervene on an *ex parte* basis now without any explanation as to why he could not have sought to solve his purported issues earlier or as to why Smart King and the Court must be forced to answer his demands concerning a multi-billion dollar transaction in less than 24 hours without so much as a hearing on the matter when, again, the Merger will not close for months from now.  Equally pernicious, Liu clearly waited until he had prepared lengthy papers before even telling Smart King yesterday evening—for the very first time—that he was even contemplating seeking such an overbroad injunction, must less that he was moving within hours on an *ex parte* basis.

This is the precise situation contemplated by *In re: Intermagnetics Am., Inc.*, 101 Bankr. 191 (C.D. Cal. 1989), in which *ex parte* relief must not only be denied, but sanctions should be imposed.  *Id.*  ("*Ex parte* applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to 'cut in line' ahead of those litigants awaiting determination of their properly noticed and timely filed motions.")  FF and Smart King's counsel do not request sanctions lightly, but Liu's abuse of the *ex parte* process simply must stop.

**B.     No extraordinary relief is required because the Merger permits both the issuance of options and their conversion.**

Telling absent from the Application is any mention of the fact that Liu is scheduled to take Smart King's Fed. R. Civ. P. 30(b)(6) deposition tomorrow or that all the apparently unanswered questions Liu has about the Merger are noticed

---

[2] Contrary to Liu's baseless assumptions, the S-4 filed on April 5 does not remotely mean the Merger "may close in a matter of days."  App., p. 2.  The form is subject to review and comment by the SEC, and even after the SEC confirms that is has no further comments, the form must then be sent to FF and PSAC shareholders for review in connection with the Merger's approval, which process is expected to be completed by the end of June 2021.  (Sekhon Decl. at ¶ 5.)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

subjects in that deposition.  In other words, even crediting Liu's purported confusion as to the Merger terms he and his counsel have been reviewing for months, he could have waited just two more days, and he would then have all his answers, including that, under Merger Agreement Section 3.05, Smart King options automatically convert to PSAC options, and that under Merger Agreement Section 7.09, both Smart King and its successor retain the ability to issue options to Liu if the Court so orders.

Again, Liu has also had two-and-a-half months to ascertain this obvious fact himself from the Merger Agreement's plain language.  Or he could have simply asked Smart King's counsel.  Instead, and contrary to the Application's assertion, he sent a cryptic letter demanding assurances that Smart King will pay his options.  But Liu knows full well that Smart King disputes Liu's rights to any options (assuming he even has a valid right to options in the first place), including for their lack of vesting, for the lack of exercise before expiration, and because Liu's Employment Agreement was and is void *ab initio* due to his patent breaches of ethical obligations and abuse of his fiduciary duties in obtaining his unconscionable "deal" with FF and Smart King.  Indeed, FF and Smart King explained all of this again in the very discovery responses that Liu mischaracterizes as well as in their answers and affirmative defenses.

What's more, even assuming the Merger somehow did prevent either Smart King or PSAC from issuing Liu options if the Court so orders, and they certainly can, Liu's false predicament that he no longer can add PSAC as a party would still be a problem of his own making given he admittedly reviewed the Merger Agreement two-and-a-half months ago but just a couple weeks ago stipulated to a cutoff for adding parties that just passed.  At any rate, there plainly is no need for any extraordinary relief here, much less the overbroad injunction sought by the Application that would needlessly stop the Merger cold in its tracks.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**C.     There is no irreparable harm as stock in public companies is**
**fungible and money damages will be sufficient in any event.**

Irreparable harm is a threshold requirement for a preliminary injunction, yet Liu does not and cannot establish any irreparable harm.  Options in companies like Smart King (which will be publicly traded once the Merger closes) are fungible, damages are readily calculable, and as a matter of law, legal remedies are adequate for the alleged breach thereof.  *See Emirzian v. Asato*, 23 Cal. App. 251, 256 (1913) ("If the personal property has a market value, is bought and sold in the open market, and has no special or unique value, the remedy at law is sufficient . . . . In such cases specific performance is denied."); *La Jolla Cove Investors, Inc. v. Sultan Corp. Ltd.*, 2011 WL 4916138, at *2 (S.D. Cal. Oct. 17, 2011).   Indeed, all the purported authorities cited in the Application are expressly inapposite on this ground alone, as they all admittedly concerned private, not public, companies.  *See*, App., pp. 6-7.[3] Nor is this a case of a founder with a special connection seeking to maintain control of his company.  *Id*.  As explained below, an order restraining the Merger, which

---

[3] Liu cites the following factually inapposite cases: *Kramer v. Puracyp, Inc.*, 2017 WL 1034474, at *4 (Cal. App. 4th Dist. Mar. 17, 2017) (this unpublished and uncitable opinion involved stock of a closely held corporation where two individuals held at least 80% of the company's stock); *La Jolla Cove Investors*, 2011 WL 4916138, at *2 (the full context of the sentence that Liu quotes is "[t]he general rule for invoking specific performance in the context of a breach of agreement is that an 'agreement to transfer personal property will not justify specific performance, except in case of unique chattels such as heirlooms, or shares of stock not obtainable in the open market'"); *CX Inc. v. Clarington Capital Group LLC*, 2012 WL 4097752, at *1-2 (N.D. Cal. 17, 2012) (involving a closely held corporation where the stock was not publicly traded or "its value [was] not otherwise ascertainable"); *Steinmeyer v. Warner Cons. Group*, 42 Cal. App. 3d 515, 519-20 (1974) (the stock "was apparently wholly owned by [one company] and not readily obtainable on the open market"); *Kaneko v. Okuda*, 195 Cal. App. 2d 217, 233-34 (1961) (the stock "could be acquired only from the individual defendants," "was acquired by plaintiff as a part of his busines program," and "defendants' failure to deliver could not have been compensated by money judgment").

would be an existential risk to Smart King and would actually endanger Liu's ability to enforce any recovery.  As such, the Application should be denied.

D.    **Regardless, Liu is not likely to succeed on the merits of his claims because his options never vested and he never exercised them, and his superseded employment agreement is unenforceable.**

Liu's sole allegation in his complaint concerning specific performance is found at paragraph 115:  "Plaintiff is entitled to specific performance of his right to immediate vesting of his 20 million Smart King options."  However, tellingly absent from the Application is any mention of the facts that Liu's purported options, according to their own terms, never vested prior to his termination, and in any event, were never exercised prior to their expiration.  Likewise, the Application studiously ignores the details of FF's defenses to Liu's purported option rights vis-à-vis the Employment Agreement (on which he must rely to avoid obligations imposed by the option grant agreements).  To wit, Liu negotiated his Employment Agreement while representing FF, but he never:  (i) advised FF in writing to obtain independent counsel; (ii) informed FF his client of all existing and potential conflicts; or (iii) obtained FF's informed, written consent as to such conflicts.  Additionally, he negotiated patently unconscionable terms, including grossly excessive fees and ownership of FF, both of which were guaranteed even if Liu was immediately terminated and even if a court expressly found Liu had breached his fiduciary duties, and he did so while selectively using English even though his clients native language was Mandarin.

As a result of these violations of both the California and New York Rules of Professional Conduct, the employment agreement is rescindable and void ab initio. *See Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Corp. (Sheppard)*, 6 Cal.5th 59 (2018) ("under the framework established in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603… the law firm's conflict of interest rendered the agreement with the manufacturer, including its arbitration clause, unenforceable as

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

against public policy," despite a signed conflict waiver that was found not effective because it did not disclose the known conflict); *Plattsburgh Hous. Auth. v. Cantwell*, 54 Misc. 3d 1216(A), 54 N.Y.S.3d 612, at *4 (N.Y. Sup. Ct. 2017) (finding rescission of an employment agreement proper where attorney violated Rule of Professional Conduct 1.8).   Furthermore, under such circumstances, specific performance is unavailable as a matter of law.  *See* Cal. Civ. Code § 3391 ("Specific performance cannot be enforced against a party to a contract in any of the following circumstances . . . 2.  If it is not, as to him, just and reasonable; 3. If his assent was obtained by the misrepresentation, concealment, circumvention, or unfair practices of any party to whom performance would become due under the contract….").

Finally, Liu ignores that the plain language of the Employment Agreement only would provide for the immediate vesting of options if he was terminated after a court found him liable for a serious breach of fiduciary duty, and such a finding has never occurred.

For these reasons, which were unstated anywhere in the Application, Liu's option claims are very unlikely to succeed on the merits, and the Application should be denied.

**E.**    **The hardships are entirely one-sided, and Smart King would likely suffer severely and irreparably, while Liu will lose nothing.**

Because a main objective of a preliminary injunction is to minimize the harm of an erroneous interim decision, the Court must consider the balance of hardships, *i.e.*, the harm likely to result from the grant or denial of preliminary relief.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  When, as here, the balance of hardships dramatically favors denial, granting preliminary injunctive relief constitutes an abuse of discretion.  *See, e.g., In re Apple Computer, Inc., Derivative Litig.*, 2006 WL 8443550, at *1 (N.D. Cal. Nov. 1, 2006) (denying injunction seeking to enjoying defendant and anyone issued backdated options from exercising those options and imposing constructive trust, after weighing "that the

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

proposed injunction would hinder Apple's efforts to hire, retain, and compensate employees in a competitive manner"). Restraining the Merger parties from proceeding at this point in the transaction seriously risks derailing the entire transaction, which risks wasting the very significant resources put already into the Merger. Moreover, it seriously risks Smart King's continued existence, jeopardizing the investments and livelihoods of several hundreds of actual shareholders and nearly 400 employees.

Meanwhile, as shown above, there is no justification for the overbroad restraining order and injunction demanded in the Application at all, as legal remedies are adequate if he somehow does succeed on the merits, Liu can sustain no harm by the Application's denial. Further, the authorities cited by Liu concededly do not apply as they admittedly all concern a claimants' interest in special properties, not options in publicly traded companies. App., p. 10.[4] The Court must therefore deny the Application.

**F.** **The Application's requested injunction would harm the public's interest, including the livelihoods of nearly five hundred employees.**

The public interest also heavily favors the Application's denial. Enjoining the Merger would endanger the employment of nearly 400 employees and the investments of hundreds of investors. That far outweighs Liu's purported interest in having his own (disputed) option enforced, the enforcement of which—as explained

---

[4] Liu cites the following factually inapposite cases: *HSBC Bank USA, N.A. v. ZNM Holdings, Inc.*, 2010 WL 11558087, at *3 (C.D. Cal. Apr. 19, 2020) (involving appointment of a temporary receiver to supervise a distressed business, where the distressed business had defaulted and had previously agreed to appointment of a receiver in the event of its default); *House v. Moller*, 2012 WL 1292483, at *7 (E.D. Cal. Apr. 16, 2012) (involving the right to exercise a first right of refusal in an agricultural lease for a specific plot of real property that plaintiffs had been operating their organic farm on)).

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

repeatedly above—does not in any way require enjoining the Merger in any case. Unsurprisingly, none of the authorities cited in Liu's Application even remotely concerned the potential derailing of a billion-dollar deal wholly unrelated to the plaintiff's underlying case or that risked sinking a more than $4 billion company and rendering hundreds of employees jobless.  App., pp. 10-11.[5]

Moreover, Liu's contention that the injunction is somehow required so that Liu's alleged options claims are disclosed to investors is both an irrelevant non sequitur and grossly misleading.  App., p. 11.  As Liu well knows, Smart King in fact properly disclosed Liu's claims in each of its relevant public filings under pending litigations.  (Sekhon Decl. at ¶ 6.)  Liu's contention that Smart King instead needs to list those options in its financials as though Liu has somehow already won this case—when again, Liu has very little chance on the merits—makes no sense.  Regardless, that has nothing to do with restraining the Merger from moving forward.

---

[5] Liu cites the following factually inapposite cases: *Flip Flop Shops Franchise Co., LLC v. Neb*, 2016 WL 9275403, at *9 (C.D. Cal. Dec. 5, 2016) (involving a franchisee seeking to enforce a no-competition covenant it had with its franchisor and explaining that "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor"); *Garmon Corp. v. HealthyPets, Inc.*, 2018 WL 6016911, at *1 (C.D. Cal. June 4, 2018) (plaintiff sought to enjoining defendant from selling its products, using its intellectual property, and giving an impression that it was authorized to sell its products, but providing no substantive discussion of the impact on the public); *HSBC*, 2010 WL 11558087, at *4 (involving and injunction for the appointment of a receiver, as agreed to under a loan agreement, for a distressed company that had defaulted under the loan agreement); *Abrams v. Blackburne & Sons Realty Capital Corp.*, 2020 WL 5028877, at *5 (C.D. Cal. June 16, 2020) (seeking an injunction that would protect plaintiffs' interest in a specific golf club property and finding no impact on the public interest beyond protecting those property rights); *Bryant v. Matvieshen*, 2012 WL 1499068, at *4 (E.D. Cal. Apr. 27, 2012) (involving an agreement where plaintiffs and defendant would own certain corporations together as 40-30-30 owners, but where defendant only transferred a portion of plaintiffs' ownership shares to them during a merger of one of those corporations with another entity—the public interest was limited to the parties and corporate entities involved in the dispute)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TRO AND PI

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### G.      If the Merger is stopped, Liu must make a $4 billion dollar bond.

The Federal Rules of Civil Procedure require Liu to offer a security sufficient to pay the costs and damages sustained by Smart King if it is wrongly enjoined.  Fed. R. Civ. P. 65(c).  But Liu offers no such undertaking, nor does he even attempt to explain why such a security should be excused, nor could he have at any rate.  This is likely because the scope of the Merger he seeks to unilaterally halt is and the damages that are likely to befall Smart King are almost certainly beyond Liu's means.

Specifically, while there is no cognizable basis to enjoin the Merger, in the event the Application is granted, before any injunction can or does become effective, Liu should be required to post a bond in the amount of $4 billion—the approximate market capitalization that Smart King's investors stand to lose if the Merger does not close—or, at the very least, $1 billion, which is the expected public funding that Smart King will lose if the Merger does not close.

## V.      CONCLUSION

This is a paradigm case for when to deny *ex parte* temporary injunctive relief. There is no emergency, no irreparable harm, no likelihood of success on the merits, and the requested injunction will cause multiple species of immediate, ongoing, and potentially existential harm to Smart King while Liu faces no hardship at all from the Application's denial.  The facts and law therefore mandate the Application's denial, and Smart King respectfully requests that the Court further award its reasonable costs and fees in opposing the meritless Application.

Dated:  April 7, 2021

Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP

By:  /s/ Kevin A. Crisp
       Kevin A. Crisp

Attorneys for Defendants SMART KING LTD., JIAWEI WANG, and CHAOYING DENG and Defendant and Counterclaimant FARADAY&FUTURE INC.