# EXHIBIT 1

## SMART KING LTD.
## (THE "COMPANY")

## MINUTES OF THE SPECIAL MEETING OF
## THE BOARD OF DIRECTORS OF
## THE COMPANY

### OCTOBER 24, 2018

A special meeting of the Board of Directors of Smart King Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands, was held on October 24, 2018, at 6:02 p.m., Pacific Time, at the headquarters of the Company, located at 18455 S Figueroa Street, Gardena, CA 90248 and by teleconference. Ms. Chaoying Deng, Mr. Hong ("Henry") Liu, Mr. Jiawei ("Jerry") Wang, Mr. Nicholas ("Nick") Sampson and Mr. Ruokun Jia attended the meeting in person and Mr. Jianjun Peng and Mr. Jimmy Fong, as an alternate director for Haijun Xia, attended the meeting by teleconference. A quorum was present for conducting business at the meeting to discuss the matters set forth in the board meeting notice circulated by Jarret Johnson and other matters as approved by the Board.

At the invitation of the directors, Vijay Sekhon from Sidley Austin LLP, outside counsel to the Company, and Brian Wong from Baker & McKenzie LLP, outside counsel to Season Smart Limited, also were in attendance.

The participants indicated that they could hear and understand all of the other participants on the call and that sufficient translation services were available. The participants also indicated that they understood that the meeting may not be recorded in accordance with California law. Each of the participants confirmed his or her waiver of any and all notice requirements for, and/or any proposals raised at, the meeting and that all lawful business of the Company may be conducted at the present meeting and that such business transacted at the meeting shall be as valid and legal and of the same force and effect as if such meeting were held after any required notice.

Mr. Johnson acted as secretary of the meeting. Unless otherwise expressly stated in these minutes, any actions of the Board recorded herein were taken by motion duly made, seconded and unanimously carried.

Mr. Johnson stated that the purpose of the meeting was to discuss the proposed employee option grants as set forth in the notice of the meeting and the materials previously circulated to and reviewed by the Board. Mr. Liu provided background for the proposed employee stock option grants, after which Mr. Liu raised the proposal to authorize and approve the employee option grants set forth on Exhibits A through C and all related actions to a vote by the Board, which was seconded by Mr. Sampson. Ms. Deng, Mr. Liu, Mr. Wang, Mr. Sampson and Mr. Ruokun Jia voted in favor of the proposal. Mr. Fong stated that he and Mr. Peng support granting stock options to employees to maintain proper incentivization. However, as there is an ongoing shareholder dispute and the Company is in a difficult situation, he and Mr. Peng do not consider it an appropriate time for any stock options to be granted. Mr. Fong suggested that the granting of stock options should be postponed until the resolution of these issues. Therefore, Mr. Peng and Mr.

ACTIVE 237043348

Fong voted against the proposal.  By a majority vote of five (5) in favor and two (2) against, the motion passed, and a majority of the Board consented to, approved, authorized and adopted the resolutions and recitals set forth in <u>Exhibit A</u> hereto.



**<u>ADJOURNMENT</u>**

Mr. Johnson then confirmed with the directors that there was no further business to be considered at the meeting, and the meeting was adjourned at 6:44 p.m., Pacific Time.

Jarret Johnson
Secretary of the Meeting

**Exhibit A**
**RESOLUTIONS**

**APPROVAL OF OPTION GRANTS**

**WHEREAS**, the Company currently maintains the Smart King Ltd. Equity Incentive Plan (the "**Plan**"), which provides for the grant of share options, restricted shares, unrestricted shares and restricted share units to employees and directors of the Company and any Related Entity (as defined in the Plan), to be granted from time to time as determined by the Board.

**RESOLVED,** that the Board hereby approves the grant of options to purchase the number of Class A Ordinary Shares (the "**Options**"), and which will vest according to the vesting schedule, set forth next to each option holder's ("**Optionee's**") name on Exhibit B; that each such Option will be an ISO (to the maximum extent permitted by law) or NSO, as designated on Exhibit A; and that the maximum term of each of the Options will be ten (10) years, subject to the Optionee's earlier termination of service.

**RESOLVED,** that unless otherwise set forth on Exhibit B, the exercise price for the Options shall be $0.36 per share, which price is hereby determined to be the fair market value of the Company's Class A Ordinary Shares as of the date hereof after review and consideration of relevant factors, including, but not limited to, the valuation report rendered by Cabrillo Advisors, Inc. as of December 1, 2017, the liquidation preferences and other rights, preferences and privileges of the Company's Preferred Shares, the Company's recent financial performance and potential future cash flows, the lack of liquidity for the Company's Class A Ordinary Shares, the value of the Company's assets, the market value of similar entities engaged in substantially similar businesses and current economic conditions.

**RESOLVED,** that except as noted, each Option shall be granted under and subject to the terms of the Plan and the standard form of U.S. Share Option Agreement, or the PRC Option Agreement (as applicable, each an "**Option Agreement**") in each case, as designated on Exhibit B with respect to each such option grant.

**RESOLVED,** that the shares of Class A Ordinary Shares subject to each Option hereby granted shall, when issued in accordance with the provisions of the Plan and the applicable form of Option Agreement, constitute validly issued, fully-paid and non-assessable Class A Ordinary Shares.

**RESOLVED,** that the officers or designated representative(s) of the Company are hereby authorized and directed to enter into an Option Agreement with each Optionee on the terms approved for such Option.

**RESOLVED,** that the officers or designated representative(s) of the Company are hereby authorized and directed to designate, in their reasonable discretion, any Optionees which may be granted early exercise rights with respect to all or any portion of their Options.

*Smart King Ltd Board Resolutions*

**RESOLVED,** that the officers or designated representative(s) of the Company are authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents, certificates and communications and to pay such expenses, in the name and on behalf of the Company or such officer or designated representative(s), as any such officer or designated representative(s) may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents, certificates or communications and the payment of such expenses by any such officer or designated representative(s) to be conclusive evidence of his or her authorization hereunder and the approval thereof.

**FURTHER RESOLVED,** that the designated representative(s)  and officers of the Company are, and each of them hereby is, authorized and directed, to execute and deliver, in the name of and on behalf of the Company, such other documents, instruments and certificates, and to take such other actions as such designated representative(s) or officers, in the discretion of such designated representative(s)  or officer, may deem necessary or appropriate to carry out the full intent and purposes of the foregoing resolutions.



<u>Vesting Schedule</u>:

A -25% of the shares subject to the Option shall vest one year from the Vesting Commencement Date, and thereafter, 1/48th of the shares subject to the Option shall vest each one-month period thereafter, subject to the Optionee's continued status as a Service Provider.

B - Vesting Schedule B attached hereto as Exhibit C

**Exhibit C**

**Vesting Schedule B**

| Total Stock Options Offered | Granting Schedule | Vest Term | Vest Schedule |
|---|---|---|---|
| 0 – 100,000 | One-time granting | 4-year | A |
| 100,001 – 500,000 | 60%-20%-10%-10% | 4-year on each, with staggered commencement 1, 2 and 3 years out on tranches 2, 3, 4 | Broken Into 4 Tranches<br>1) A<br>2) B<br>3) B<br>4) B |
| 500,001 – 1,000,000 | 50%-20%-20%-10% | 4-year on each, with staggered commencement 1, 2 and 3 years out on tranches 2, 3, 4 | Broken Into 4 Tranches<br>1) A<br>2) B<br>3) B<br>4) B |
| 1,000,001 – above | 40%-20%-20%-20% | 4-year on each, with staggered commencement 1, 2 and 3 years out on tranches 2, 3, 4 | Broken Into 4 Tranches<br>1) A<br>2) B<br>3) B<br>4) B |

**Vesting Schedule:**

A -25% of the shares in such tranche shall vest one year from the Vesting Commencement Date, and thereafter, 1/48th of the shares in such tranche shall vest each one-month period thereafter, subject to the Optionee's continued status as a Service Provider.

B - 1/48th of the shares in such tranche shall vest each one-month period from the commencement date for such tranche, subject to the Optionee's continued status as a Service Provider

# EXHIBIT 2

**SMART KING LTD.**
**EQUITY INCENTIVE PLAN**
**SHARE OPTION AGREEMENT**

Any capitalized terms used but not defined in this Share Option Agreement (the "Option Agreement") shall have the meanings ascribed to such terms in the Smart King Ltd. Equity Incentive Plan (as amended from time to time, the "Plan"). In case of discrepancy between the Option Agreement and the Deed of Undertaking and/or any charter documents of Smart King Ltd., the later shall prevail.

## I. NOTICE OF SHARE OPTION GRANT

**Name:** Hong Liu



The undersigned Holder has been granted an Option to purchase Class A Ordinary Shares of Smart King Ltd. (the "Company"), subject to the terms and conditions of the Plan and this Option Agreement, as follows:

| | |
|---|---|
| Date of Grant | 24-Oct-2018 |
| Vesting Commencement Date: | 15-Feb-2021 |
| Exercise Price per Share: | $$0.36 USD |
| Total Number of Shares Granted: | 4,000,000 |
| Total Exercise Price: $ | $1,440,000.00 USD |
| Type of Option: | Incentive Share Option |
| | Non-Qualified Share Option |
| Term/Expiration Date: | 15-Feb-2031 |

Vesting Schedule:

FF00000302

1/48th of the Shares subject to the Option shall vest each month on the same day of the month as the Vesting Commencement Date (and if there is no corresponding day, on the last day of the month), subject to Holder continuing to be a Service Provider through each such date..

CONFIDENTIAL

Termination Period:

Any unvested portion of the Option shall immediately terminate upon Holder ceasing to be a Service Provider or if Holder breaches an employment agreement, non-competition, non-solicitation, confidentiality or other restrictive covenant agreement or any similar agreement with the Company or any Related Entity. Any vested portion of the Option shall be exercisable for three (3) months after Holder ceases to be a Service Provider, unless such termination is due to (i) Holder's death or disability, in which case any such vested portion of the Option shall be exercisable for six (6) months after Holder ceases to be a Service Provider and shall terminate thereafter; or (ii) Holder's termination for Cause, in which case, to the extent permissible under Applicable Laws, this Option (including any vested portion of this Option) shall terminate upon such termination for Cause. Notwithstanding the foregoing sentence, in no event may this Option be exercised after the Term/Expiration Date as provided above and this Option may be subject to earlier termination as provided in Section 10 of the Plan.

Option Subject to Acceptance of Agreement:

This Option shall be null and void unless Holder shall accept this Option Agreement by executing this Option Agreement in the space provided below and returning an original execution copy of this Option Agreement to the Company.

**II. AGREEMENT**

1. <u>Grant of Option.</u> The Administrator hereby grants to the Holder named in the Notice of Share Option Grant in Part I of this Option Agreement ("Holder") an option (the "Option") to purchase the number of Shares set forth in the Notice of Share Option Grant, at the exercise price per Share set forth in the Notice of Share Option Grant (the "Exercise Price"), and subject to the terms and conditions of the Plan, which are incorporated herein by reference. Subject to Section 17 of the Plan, in the event of a conflict between the terms and conditions of the Plan and this Option Agreement, the terms and conditions of the Plan shall prevail.

   If designated in the Notice of Share Option Grant as an Incentive Share Option ("ISO"), this Option is intended to qualify as an "incentive stock option" as defined in Section 422 of the Code. Nevertheless, to the extent that it exceeds the $100,000 rule of Section 422(d) of the Code, this Option shall be treated as a Non-qualified Share Option ("NSO"). Further, if for any reason this Option (or portion thereof) shall not qualify as an ISO, then, to the extent of such nonqualification, such Option (or portion thereof) shall be regarded as a NSO granted under the Plan. In no event shall the

CONFIDENTIAL

Administrator, the Company or any Related Entity or any of their respective employees or directors have any liability to Holder (or any other person) due to the failure of the Option to qualify for any reason as an ISO.

2. Exercise of Option.

    a. Right to Exercise. This Option shall be exercisable during its term in accordance with the Vesting Schedule set out in the Notice of Share Option Grant and with the applicable provisions of the Plan and this Option Agreement.

CONFIDENTIAL

b. <u>Method of Exercise.</u> This Option shall be exercisable by delivery of an exercise notice in the form attached as <u>Exhibit A</u> (the "<u>Exercise Notice</u>") or in a manner and pursuant to such procedures as the Administrator may determine, which shall state the election to exercise the Option, the number of Shares with respect to which the Option is being exercised (the "<u>Exercised Shares</u>"), and such other representations and agreements as may be required by the Company. As a condition to exercise this Option, Holder must sign any documents reasonably required of a member at or prior to the time of exercise, including, but not limited to, any then in effect voting agreement or co-sale agreement and the Deed of Undertaking in the form attached as <u>Exhibit C</u>. This Option shall be deemed to be exercised upon receipt by the Company of a fully executed Exercise Notice accompanied by payment of the aggregate Exercise Price as to all Exercised Shares, together with any applicable tax withholding, and any other required documents signed by Holder.

No Shares shall be issued pursuant to the exercise of an Option unless such issuance and such exercise comply with Applicable Laws. Assuming such compliance, for income tax purposes the Shares shall be considered transferred to Holder on the date on which the Option is exercised with respect to such Shares.

3. <u>Holder's Representations</u>. In the event the Shares have not been registered under the Securities Act of 1933, as amended or the regulatory rules of any other jurisdiction (the "<u>Securities Act</u>"), at the time this Option is exercised, Holder shall, if required by the Company, concurrently with the exercise of all or any portion of this Option, deliver to the Company his or her Investment Representation Statement in the form attached hereto as <u>Exhibit B</u>.

4. <u>Lock-Up Period</u>. Holder hereby agrees that Holder shall not offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any Class A Ordinary Shares (or other securities) of the Company or enter into any swap, hedging or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any Class A Ordinary Shares (or other securities) of the Company held by Holder (other than those included in the registration) to the extent set forth in the Deed of Undertaking. Holder agrees to execute and deliver such other agreements as set forth in the Deed of Undertaking. Holder agrees that any transferee of the Option or Class A Ordinary Shares acquired pursuant to the Option shall be bound by this Section 4.

5. <u>Method of Payment</u>. Payment of the aggregate Exercise Price shall be by any of the following or a combination thereof at the election of Holder, if and to the extent permitted by the Administrator in its

FF00000306

sole discretion:

    a. cash;

    b. check;

CONFIDENTIAL

     c. consideration received by the Company under a formal cashless exercise program if and to the extent adopted by the Company in its sole and absolute discretion; or

     d. surrender of other Shares which (i) shall be valued at its Fair Market Value on the date of exercise, and (ii) must be owned free and clear of any liens, claims, encumbrances or security interests, but only if accepting such Shares, in the sole discretion of the Administrator, shall not result in any adverse accounting consequences to the Company.

6. <u>Restrictions on Exercise</u>. This Option may not be exercised if the issuance of such Shares upon such exercise or the method of payment of consideration for such Shares would constitute a violation of any Applicable Law.

7. <u>Non-Transferability of Option</u>. This Option may not be transferred or pledged in any manner other than by will or by the laws of descent or distribution and may be exercised during the lifetime of Holder only by Holder. The terms of the Plan and this Option Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of Holder.

8. <u>Term of Option.</u> This Option may be exercised only within the term set out in the Notice of Share Option Grant, and may be exercised during such term only in accordance with the terms of the Plan and this Option Agreement.

9. <u>Tax Obligations.</u>

     a. <u>Tax Withholding</u>. Holder agrees to make appropriate arrangements with the Company (or the Related Entity employing or retaining Holder) for the satisfaction of all Federal, state, local and foreign income and employment tax withholding requirements applicable to any Option exercise, disposition of the Option or the Shares issued pursuant to the exercise of the Option ("Required Tax Payments"). Holder acknowledges and agrees that the Company may, in its discretion, refuse to honor any exercise of the Option, refuse to deliver the Shares in respect of any such exercise or deduct Required Tax Payments from any amount then or thereafter payable by the Company to Holder if any Required Tax Payments are not delivered at or prior to the time of exercise.

     b. Notice of Disqualifying Disposition of ISO Shares. If the Option granted to Holder herein is an ISO, and if Holder sells or otherwise disposes of any of the Shares acquired pursuant to the ISO on or before the later of (i) the date two (2) years after the Date of Grant, or (ii) the date one (1) year after the date of exercise, Holder shall immediately notify the Company in writing of such disposition. Holder acknowledges that in such event, Holder may be subject to income tax withholding by the Company on the compensation income recognized by Holder.

CONFIDENTIAL

c. Section 409A and Section 457A of the Code. Under Section 409A of the Code, an option granted with an exercise price that is determined by the U.S. Internal Revenue Service (the "IRS") to be less than the Fair Market Value on the date of grant (a "discount option") or that covers other than "service recipient stock" (as defined under Section 409A of the Code) may be considered "deferred compensation." An Option that is a discount option or that covers other than service recipient stock may result in (i) income recognition by Holder prior to the exercise of the Option, (ii) an additional twenty percent (20%) Federal income tax, and (iii) potential penalty and interest charges. The Option may also result in additional state income, penalty and interest charges to Holder. Holder acknowledges that the Company cannot and has not guaranteed that the IRS will agree that the per Share exercise price of this Option equals or exceeds the Fair Market Value of a Share on the date of grant or that the Shares covered by this Option will be classified as service recipient stock in a later examination. Holder agrees that if the IRS determines that the Option was granted with a per Share exercise price that was less than the Fair Market Value of a Share on the date of grant or covers other than service recipient stock, Holder shall be solely responsible for Holder's costs related to such a determination. Further, Holder agrees that if the IRS determines that the Option is deferred compensation subject to, and within the meaning of, Section 457A of the Code, Holder shall be solely responsible for Holder's costs related to such a determination.

10. <u>Entire Agreement; Governing Law</u>. The Plan is incorporated herein by reference. The Plan and this Option Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company (and/or the Related Entity employing or retaining Holder) and Holder with respect to the subject matter hereof, and may not be modified adversely to Holder's interest except by means of a writing signed by the Company and Holder. This Option Agreement is governed by the internal substantive laws but not the choice of law rules of California.

11. <u>No Guarantee of Continued Service.</u> HOLDER ACKNOWLEDGES AND AGREES THAT THE VESTING OF THE OPTION PURSUANT TO THE VESTING SCHEDULE HEREOF IS EARNED ONLY BY CONTINUING AS A SERVICE PROVIDER AT THE WILL OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) AND NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED THIS OPTION OR ACQUIRING SHARES HEREUNDER. HOLDER FURTHER ACKNOWLEDGES AND AGREES THAT THIS OPTION AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREUNDER AND THE VESTING SCHEDULE SET FORTH HEREIN DO NOT CONSTITUTE AN EXPRESS OR IMPLIED

CONFIDENTIAL

PROMISE OF CONTINUED ENGAGEMENT AS A SERVICE PROVIDER FOR THE VESTING
PERIOD, FOR ANY PERIOD, OR AT ALL, AND SHALL NOT INTERFERE IN ANY WAY WITH
HOLDER'S RIGHT OR THE RIGHT OF THE COMPANY (OR THE RELATED ENTITY
EMPLOYING OR RETAINING HOLDER) TO TERMINATE HOLDER'S RELATIONSHIP AS A
SERVICE PROVIDER AT ANY TIME, WITH OR WITHOUT CAUSE.

CONFIDENTIAL

FF00000310

Holder acknowledges receipt of a copy of the Plan and represents that he or she is familiar with the terms and provisions thereof, and hereby accepts this Option, subject to all of the terms and provisions thereof. Holder has reviewed the Plan and this Option Agreement in their entirety, has had an opportunity to obtain the advice of counsel prior to executing this Option Agreement and fully understands all terms and conditions of the Option. Holder hereby agrees to accept as binding, conclusive and final all decisions or interpretations of the Administrator upon any questions arising under the Plan or this Option Agreement. Holder further agrees to notify the Company upon any change in the residence address indicated below.

Holder, during his or her employment with the Company, shall follow CEO's directions in all matters relating to the Company's decision-making, to the extent as may be permitted by law

By Holder's signature below, Holder acknowledges and agrees that the grant of this Option is in full satisfaction of any oral or written promise to grant a share option, equity or any equity-related interest in the Company or any Related Entity, including, but not limited to any promise set forth in an offer letter or other agreement with a Related Entity and/or related oral discussions (a "Promised Interest"). Accordingly, Holder hereby irrevocably and unconditionally releases and forever discharges the Company and any other Related Entity, and any successors, assigns, directors, officers, employees, consultants, agents, representatives, members, shareholders and affiliates of the Company and any other Related Entity, from any obligation to issue any securities of the Company or any other Related Entity or any other compensation in respect of the Promised Interest and from all any and all claims, liabilities or obligations, whether now existing or hereafter arising, which in any way relate to or arise out of the Promised Interest.

Holder acknowledges that Holder has been advised to consult with legal counsel and is familiar with the provisions of California Civil Code Section 1542, a statute that otherwise prohibits the release of unknown claims, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

CONFIDENTIAL

Holder

Signature

Print Name Hong Liu

Residence Address

Smart King LTD

By

Print Name

Title

CONFIDENTIAL

FF00000312

## SMART KING LTD.
## EQUITY INCENTIVE PLAN
## SHARE OPTION AGREEMENT

Any capitalized terms used but not defined in this Share Option Agreement (the "Option Agreement") shall have the meanings ascribed to such terms in the Smart King Ltd. Equity Incentive Plan (as amended from time to time, the "Plan"). In case of discrepancy between the Option Agreement and the Deed of Undertaking and/or any charter documents of Smart King Ltd., the later shall prevail.

### I. NOTICE OF SHARE OPTION GRANT

**Name:** Hong Liu



The undersigned Holder has been granted an Option to purchase Class A Ordinary Shares of Smart King Ltd. (the "Company"), subject to the terms and conditions of the Plan and this Option Agreement, as follows:

| | |
|---|---|
| Date of Grant | 24-Oct-2018 |
| Vesting Commencement Date: | 15-Feb-2019 |
| Exercise Price per Share: | $$0.36 USD |
| Total Number of Shares Granted: | 4,000,000 |
| Total Exercise Price: $ | $1,440,000.00 USD |
| Type of Option: | Incentive Share Option |
| | Non-Qualified Share Option |
| Term/Expiration Date: | 15-Feb-2029 |

Vesting Schedule:

CONFIDENTIAL

FF00000321

1/48th of the Shares subject to the Option shall vest each month on the same day of the month as the Vesting Commencement Date (and if there is no corresponding day, on the last day of the month), subject to Holder continuing to be a Service Provider through each such date..

CONFIDENTIAL

Termination Period:

Any unvested portion of the Option shall immediately terminate upon Holder ceasing to be a Service Provider or if Holder breaches an employment agreement, non-competition, non-solicitation, confidentiality or other restrictive covenant agreement or any similar agreement with the Company or any Related Entity. Any vested portion of the Option shall be exercisable for three (3) months after Holder ceases to be a Service Provider, unless such termination is due to (i) Holder's death or disability, in which case any such vested portion of the Option shall be exercisable for six (6) months after Holder ceases to be a Service Provider and shall terminate thereafter; or (ii) Holder's termination for Cause, in which case, to the extent permissible under Applicable Laws, this Option (including any vested portion of this Option) shall terminate upon such termination for Cause. Notwithstanding the foregoing sentence, in no event may this Option be exercised after the Term/Expiration Date as provided above and this Option may be subject to earlier termination as provided in Section 10 of the Plan.

Option Subject to Acceptance of Agreement:

This Option shall be null and void unless Holder shall accept this Option Agreement by executing this Option Agreement in the space provided below and returning an original execution copy of this Option Agreement to the Company.

## II. AGREEMENT

1. Grant of Option. The Administrator hereby grants to the Holder named in the Notice of Share Option Grant in Part I of this Option Agreement ("Holder") an option (the "Option") to purchase the number of Shares set forth in the Notice of Share Option Grant, at the exercise price per Share set forth in the Notice of Share Option Grant (the "Exercise Price"), and subject to the terms and conditions of the Plan, which are incorporated herein by reference. Subject to Section 17 of the Plan, in the event of a conflict between the terms and conditions of the Plan and this Option Agreement, the terms and conditions of the Plan shall prevail.

   If designated in the Notice of Share Option Grant as an Incentive Share Option ("ISO"), this Option is intended to qualify as an "incentive stock option" as defined in Section 422 of the Code. Nevertheless, to the extent that it exceeds the $100,000 rule of Section 422(d) of the Code, this Option shall be treated as a Non-qualified Share Option ("NSO"). Further, if for any reason this Option (or portion thereof) shall not qualify as an ISO, then, to the extent of such nonqualification, such Option (or portion thereof) shall be regarded as a NSO granted under the Plan. In no event shall the

FF00000323

Administrator, the Company or any Related Entity or any of their respective employees or directors have any liability to Holder (or any other person) due to the failure of the Option to qualify for any reason as an ISO.

2. Exercise of Option.

    a. Right to Exercise. This Option shall be exercisable during its term in accordance with the Vesting Schedule set out in the Notice of Share Option Grant and with the applicable provisions of the Plan and this Option Agreement.

CONFIDENTIAL

FF00000324

b. **Method of Exercise.** This Option shall be exercisable by delivery of an exercise notice in the form attached as Exhibit A (the "Exercise Notice") or in a manner and pursuant to such procedures as the Administrator may determine, which shall state the election to exercise the Option, the number of Shares with respect to which the Option is being exercised (the "Exercised Shares"), and such other representations and agreements as may be required by the Company. As a condition to exercise this Option, Holder must sign any documents reasonably required of a member at or prior to the time of exercise, including, but not limited to, any then in effect voting agreement or co-sale agreement and the Deed of Undertaking in the form attached as Exhibit C. This Option shall be deemed to be exercised upon receipt by the Company of a fully executed Exercise Notice accompanied by payment of the aggregate Exercise Price as to all Exercised Shares, together with any applicable tax withholding, and any other required documents signed by Holder.

No Shares shall be issued pursuant to the exercise of an Option unless such issuance and such exercise comply with Applicable Laws. Assuming such compliance, for income tax purposes the Shares shall be considered transferred to Holder on the date on which the Option is exercised with respect to such Shares.

3. Holder's Representations. In the event the Shares have not been registered under the Securities Act of 1933, as amended or the regulatory rules of any other jurisdiction (the "Securities Act"), at the time this Option is exercised, Holder shall, if required by the Company, concurrently with the exercise of all or any portion of this Option, deliver to the Company his or her Investment Representation Statement in the form attached hereto as Exhibit B.

4. Lock-Up Period. Holder hereby agrees that Holder shall not offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any Class A Ordinary Shares (or other securities) of the Company or enter into any swap, hedging or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any Class A Ordinary Shares (or other securities) of the Company held by Holder (other than those included in the registration) to the extent set forth in the Deed of Undertaking. Holder agrees to execute and deliver such other agreements as set forth in the Deed of Undertaking. Holder agrees that any transferee of the Option or Class A Ordinary Shares acquired pursuant to the Option shall be bound by this Section 4.

5. Method of Payment. Payment of the aggregate Exercise Price shall be by any of the following or a combination thereof at the election of Holder, if and to the extent permitted by the Administrator in its

CONFIDENTIAL

sole discretion:

    a. cash;

    b. check;

CONFIDENTIAL

    c. consideration received by the Company under a formal cashless exercise program if and to the extent adopted by the Company in its sole and absolute discretion; or

    d. surrender of other Shares which (i) shall be valued at its Fair Market Value on the date of exercise, and (ii) must be owned free and clear of any liens, claims, encumbrances or security interests, but only if accepting such Shares, in the sole discretion of the Administrator, shall not result in any adverse accounting consequences to the Company.

6. <u>Restrictions on Exercise</u>. This Option may not be exercised if the issuance of such Shares upon such exercise or the method of payment of consideration for such Shares would constitute a violation of any Applicable Law.

7. <u>Non-Transferability of Option</u>. This Option may not be transferred or pledged in any manner other than by will or by the laws of descent or distribution and may be exercised during the lifetime of Holder only by Holder. The terms of the Plan and this Option Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of Holder.

8. <u>Term of Option.</u> This Option may be exercised only within the term set out in the Notice of Share Option Grant, and may be exercised during such term only in accordance with the terms of the Plan and this Option Agreement.

9. <u>Tax Obligations.</u>

    a. <u>Tax Withholding</u>. Holder agrees to make appropriate arrangements with the Company (or the Related Entity employing or retaining Holder) for the satisfaction of all Federal, state, local and foreign income and employment tax withholding requirements applicable to any Option exercise, disposition of the Option or the Shares issued pursuant to the exercise of the Option ("Required Tax Payments"). Holder acknowledges and agrees that the Company may, in its discretion, refuse to honor any exercise of the Option, refuse to deliver the Shares in respect of any such exercise or deduct Required Tax Payments from any amount then or thereafter payable by the Company to Holder if any Required Tax Payments are not delivered at or prior to the time of exercise.

    b. Notice of Disqualifying Disposition of ISO Shares. If the Option granted to Holder herein is an ISO, and if Holder sells or otherwise disposes of any of the Shares acquired pursuant to the ISO on or before the later of (i) the date two (2) years after the Date of Grant, or (ii) the date one (1) year after the date of exercise, Holder shall immediately notify the Company in writing of such disposition. Holder acknowledges that in such event, Holder may be subject to income tax withholding by the Company on the compensation income recognized by Holder.

CONFIDENTIAL

c. Section 409A and Section 457A of the Code. Under Section 409A of the Code, an option granted with an exercise price that is determined by the U.S. Internal Revenue Service (the "IRS") to be less than the Fair Market Value on the date of grant (a "discount option") or that covers other than "service recipient stock" (as defined under Section 409A of the Code) may be considered "deferred compensation." An Option that is a discount option or that covers other than service recipient stock may result in (i) income recognition by Holder prior to the exercise of the Option, (ii) an additional twenty percent (20%) Federal income tax, and (iii) potential penalty and interest charges. The Option may also result in additional state income, penalty and interest charges to Holder. Holder acknowledges that the Company cannot and has not guaranteed that the IRS will agree that the per Share exercise price of this Option equals or exceeds the Fair Market Value of a Share on the date of grant or that the Shares covered by this Option will be classified as service recipient stock in a later examination. Holder agrees that if the IRS determines that the Option was granted with a per Share exercise price that was less than the Fair Market Value of a Share on the date of grant or covers other than service recipient stock, Holder shall be solely responsible for Holder's costs related to such a determination. Further, Holder agrees that if the IRS determines that the Option is deferred compensation subject to, and within the meaning of, Section 457A of the Code, Holder shall be solely responsible for Holder's costs related to such a determination.

10. <u>Entire Agreement; Governing Law</u>. The Plan is incorporated herein by reference. The Plan and this Option Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company (and/or the Related Entity employing or retaining Holder) and Holder with respect to the subject matter hereof, and may not be modified adversely to Holder's interest except by means of a writing signed by the Company and Holder. This Option Agreement is governed by the internal substantive laws but not the choice of law rules of California.

11. <u>No Guarantee of Continued Service.</u> HOLDER ACKNOWLEDGES AND AGREES THAT THE VESTING OF THE OPTION PURSUANT TO THE VESTING SCHEDULE HEREOF IS EARNED ONLY BY CONTINUING AS A SERVICE PROVIDER AT THE WILL OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) AND NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED THIS OPTION OR ACQUIRING SHARES HEREUNDER. HOLDER FURTHER ACKNOWLEDGES AND AGREES THAT THIS OPTION AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREUNDER AND THE VESTING SCHEDULE SET FORTH HEREIN DO NOT CONSTITUTE AN EXPRESS OR IMPLIED

CONFIDENTIAL

PROMISE OF CONTINUED ENGAGEMENT AS A SERVICE PROVIDER FOR THE VESTING PERIOD, FOR ANY PERIOD, OR AT ALL, AND SHALL NOT INTERFERE IN ANY WAY WITH HOLDER'S RIGHT OR THE RIGHT OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) TO TERMINATE HOLDER'S RELATIONSHIP AS A SERVICE PROVIDER AT ANY TIME, WITH OR WITHOUT CAUSE.

CONFIDENTIAL

Holder acknowledges receipt of a copy of the Plan and represents that he or she is familiar with the terms and provisions thereof, and hereby accepts this Option, subject to all of the terms and provisions thereof. Holder has reviewed the Plan and this Option Agreement in their entirety, has had an opportunity to obtain the advice of counsel prior to executing this Option Agreement and fully understands all terms and conditions of the Option. Holder hereby agrees to accept as binding, conclusive and final all decisions or interpretations of the Administrator upon any questions arising under the Plan or this Option Agreement. Holder further agrees to notify the Company upon any change in the residence address indicated below.

Holder, during his or her employment with the Company, shall follow CEO's directions in all matters relating to the Company's decision-making, to the extent as may be permitted by law

By Holder's signature below, Holder acknowledges and agrees that the grant of this Option is in full satisfaction of any oral or written promise to grant a share option, equity or any equity-related interest in the Company or any Related Entity, including, but not limited to any promise set forth in an offer letter or other agreement with a Related Entity and/or related oral discussions (a "Promised Interest"). Accordingly, Holder hereby irrevocably and unconditionally releases and forever discharges the Company and any other Related Entity, and any successors, assigns, directors, officers, employees, consultants, agents, representatives, members, shareholders and affiliates of the Company and any other Related Entity, from any obligation to issue any securities of the Company or any other Related Entity or any other compensation in respect of the Promised Interest and from all any and all claims, liabilities or obligations, whether now existing or hereafter arising, which in any way relate to or arise out of the Promised Interest.

Holder acknowledges that Holder has been advised to consult with legal counsel and is familiar with the provisions of California Civil Code Section 1542, a statute that otherwise prohibits the release of unknown claims, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

CONFIDENTIAL

Holder

Signature

Print Name Hong Liu



Residence Address

Smart King LTD

By

Print Name


Title

## SMART KING LTD.
## EQUITY INCENTIVE PLAN
## SHARE OPTION AGREEMENT

Any capitalized terms used but not defined in this Share Option Agreement (the "Option Agreement") shall have the meanings ascribed to such terms in the Smart King Ltd. Equity Incentive Plan (as amended from time to time, the "Plan"). In case of discrepancy between the Option Agreement and the Deed of Undertaking and/or any charter documents of Smart King Ltd., the later shall prevail.

### I. NOTICE OF SHARE OPTION GRANT

**Name:** Hong Liu



The undersigned Holder has been granted an Option to purchase Class A Ordinary Shares of Smart King Ltd. (the "Company"), subject to the terms and conditions of the Plan and this Option Agreement, as follows:

| | |
|---|---|
| Date of Grant | 24-Oct-2018 |
| Vesting Commencement Date: | 15-Feb-2020 |
| Exercise Price per Share: | $$0.36 USD |
| Total Number of Shares Granted: | 4,000,000 |
| Total Exercise Price: $ | $1,440,000.00 USD |
| Type of Option: | Incentive Share Option |
| | Non-Qualified Share Option |
| Term/Expiration Date: | 15-Feb-2030 |

Vesting Schedule:

1/48th of the Shares subject to the Option shall vest each month on the same day of the month as the Vesting Commencement Date (and if there is no corresponding day, on the last day of the month), subject to Holder continuing to be a Service Provider through each such date..

CONFIDENTIAL

Termination Period:

Any unvested portion of the Option shall immediately terminate upon Holder ceasing to be a Service
Provider or if Holder breaches an employment agreement, non-competition, non-solicitation, confidentiality
or other restrictive covenant agreement or any similar agreement with the Company or any Related Entity.
Any vested portion of the Option shall be exercisable for three (3) months after Holder ceases to be a
Service Provider, unless such termination is due to (i) Holder's death or disability, in which case any such
vested portion of the Option shall be exercisable for six (6) months after Holder ceases to be a Service
Provider and shall terminate thereafter; or (ii) Holder's termination for Cause, in which case, to the extent
permissible under Applicable Laws, this Option (including any vested portion of this Option) shall terminate
upon such termination for Cause. Notwithstanding the foregoing sentence, in no event may this Option be
exercised after the Term/Expiration Date as provided above and this Option may be subject to earlier
termination as provided in Section 10 of the Plan.

Option Subject to Acceptance of Agreement:

This Option shall be null and void unless Holder shall accept this Option Agreement by executing this
Option Agreement in the space provided below and returning an original execution copy of this Option
Agreement to the Company.

**II. AGREEMENT**

1. <u>Grant of Option.</u> The Administrator hereby grants to the Holder named in the Notice of Share Option
   Grant in Part I of this Option Agreement (<u>"Holder"</u>) an option (the <u>"Option"</u>) to purchase the number
   of Shares set forth in the Notice of Share Option Grant, at the exercise price per Share set forth in the
   Notice of Share Option Grant (the <u>"Exercise Price"</u>), and subject to the terms and conditions of the
   Plan, which are incorporated herein by reference. Subject to Section 17 of the Plan, in the event of a
   conflict between the terms and conditions of the Plan and this Option Agreement, the terms and
   conditions of the Plan shall prevail.

   If designated in the Notice of Share Option Grant as an Incentive Share Option (<u>"ISO"</u>), this Option is
   intended to qualify as an "incentive stock option" as defined in Section 422 of the Code. Nevertheless,
   to the extent that it exceeds the $100,000 rule of Section 422(d) of the Code, this Option shall be
   treated as a Non-qualified Share Option (<u>"NSO"</u>). Further, if for any reason this Option (or portion
   thereof) shall not qualify as an ISO, then, to the extent of such nonqualification, such Option (or
   portion thereof) shall be regarded as a NSO granted under the Plan. In no event shall the

FF00000359

Administrator, the Company or any Related Entity or any of their respective employees or directors have any liability to Holder (or any other person) due to the failure of the Option to qualify for any reason as an ISO.

2. Exercise of Option.

    a. Right to Exercise. This Option shall be exercisable during its term in accordance with the Vesting Schedule set out in the Notice of Share Option Grant and with the applicable provisions of the Plan and this Option Agreement.

CONFIDENTIAL

b. <u>Method of Exercise.</u> This Option shall be exercisable by delivery of an exercise notice in the form attached as <u>Exhibit A</u> (the "<u>Exercise Notice</u>") or in a manner and pursuant to such procedures as the Administrator may determine, which shall state the election to exercise the Option, the number of Shares with respect to which the Option is being exercised (the "<u>Exercised Shares</u>"), and such other representations and agreements as may be required by the Company. As a condition to exercise this Option, Holder must sign any documents reasonably required of a member at or prior to the time of exercise, including, but not limited to, any then in effect voting agreement or co-sale agreement and the Deed of Undertaking in the form attached as <u>Exhibit C</u>. This Option shall be deemed to be exercised upon receipt by the Company of a fully executed Exercise Notice accompanied by payment of the aggregate Exercise Price as to all Exercised Shares, together with any applicable tax withholding, and any other required documents signed by Holder.

No Shares shall be issued pursuant to the exercise of an Option unless such issuance and such exercise comply with Applicable Laws. Assuming such compliance, for income tax purposes the Shares shall be considered transferred to Holder on the date on which the Option is exercised with respect to such Shares.

3. <u>Holder's Representations</u>. In the event the Shares have not been registered under the Securities Act of 1933, as amended or the regulatory rules of any other jurisdiction (the "<u>Securities Act</u>"), at the time this Option is exercised, Holder shall, if required by the Company, concurrently with the exercise of all or any portion of this Option, deliver to the Company his or her Investment Representation Statement in the form attached hereto as <u>Exhibit B</u>.

4. <u>Lock-Up Period</u>. Holder hereby agrees that Holder shall not offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any Class A Ordinary Shares (or other securities) of the Company or enter into any swap, hedging or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any Class A Ordinary Shares (or other securities) of the Company held by Holder (other than those included in the registration) to the extent set forth in the Deed of Undertaking. Holder agrees to execute and deliver such other agreements as set forth in the Deed of Undertaking. Holder agrees that any transferee of the Option or Class A Ordinary Shares acquired pursuant to the Option shall be bound by this Section 4.

5. <u>Method of Payment</u>. Payment of the aggregate Exercise Price shall be by any of the following or a combination thereof at the election of Holder, if and to the extent permitted by the Administrator in its

sole discretion:

    a. cash;

    b. check;

CONFIDENTIAL

   c. consideration received by the Company under a formal cashless exercise program if and to the extent adopted by the Company in its sole and absolute discretion; or

   d. surrender of other Shares which (i) shall be valued at its Fair Market Value on the date of exercise, and (ii) must be owned free and clear of any liens, claims, encumbrances or security interests, but only if accepting such Shares, in the sole discretion of the Administrator, shall not result in any adverse accounting consequences to the Company.

6. <u>Restrictions on Exercise</u>. This Option may not be exercised if the issuance of such Shares upon such exercise or the method of payment of consideration for such Shares would constitute a violation of any Applicable Law.

7. <u>Non-Transferability of Option</u>. This Option may not be transferred or pledged in any manner other than by will or by the laws of descent or distribution and may be exercised during the lifetime of Holder only by Holder. The terms of the Plan and this Option Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of Holder.

8. <u>Term of Option.</u> This Option may be exercised only within the term set out in the Notice of Share Option Grant, and may be exercised during such term only in accordance with the terms of the Plan and this Option Agreement.

9. <u>Tax Obligations.</u>

   a. <u>Tax Withholding</u>. Holder agrees to make appropriate arrangements with the Company (or the Related Entity employing or retaining Holder) for the satisfaction of all Federal, state, local and foreign income and employment tax withholding requirements applicable to any Option exercise, disposition of the Option or the Shares issued pursuant to the exercise of the Option ("Required Tax Payments"). Holder acknowledges and agrees that the Company may, in its discretion, refuse to honor any exercise of the Option, refuse to deliver the Shares in respect of any such exercise or deduct Required Tax Payments from any amount then or thereafter payable by the Company to Holder if any Required Tax Payments are not delivered at or prior to the time of exercise.

   b. Notice of Disqualifying Disposition of ISO Shares. If the Option granted to Holder herein is an ISO, and if Holder sells or otherwise disposes of any of the Shares acquired pursuant to the ISO on or before the later of (i) the date two (2) years after the Date of Grant, or (ii) the date one (1) year after the date of exercise, Holder shall immediately notify the Company in writing of such disposition. Holder acknowledges that in such event, Holder may be subject to income tax withholding by the Company on the compensation income recognized by Holder.

CONFIDENTIAL

c. Section 409A and Section 457A of the Code. Under Section 409A of the Code, an option granted with an exercise price that is determined by the U.S. Internal Revenue Service (the "IRS") to be less than the Fair Market Value on the date of grant (a "discount option") or that covers other than "service recipient stock" (as defined under Section 409A of the Code) may be considered "deferred compensation." An Option that is a discount option or that covers other than service recipient stock may result in (i) income recognition by Holder prior to the exercise of the Option, (ii) an additional twenty percent (20%) Federal income tax, and (iii) potential penalty and interest charges. The Option may also result in additional state income, penalty and interest charges to Holder. Holder acknowledges that the Company cannot and has not guaranteed that the IRS will agree that the per Share exercise price of this Option equals or exceeds the Fair Market Value of a Share on the date of grant or that the Shares covered by this Option will be classified as service recipient stock in a later examination. Holder agrees that if the IRS determines that the Option was granted with a per Share exercise price that was less than the Fair Market Value of a Share on the date of grant or covers other than service recipient stock, Holder shall be solely responsible for Holder's costs related to such a determination. Further, Holder agrees that if the IRS determines that the Option is deferred compensation subject to, and within the meaning of, Section 457A of the Code, Holder shall be solely responsible for Holder's costs related to such a determination.

10. <u>Entire Agreement; Governing Law</u>. The Plan is incorporated herein by reference. The Plan and this Option Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company (and/or the Related Entity employing or retaining Holder) and Holder with respect to the subject matter hereof, and may not be modified adversely to Holder's interest except by means of a writing signed by the Company and Holder. This Option Agreement is governed by the internal substantive laws but not the choice of law rules of California.

11. <u>No Guarantee of Continued Service.</u> HOLDER ACKNOWLEDGES AND AGREES THAT THE VESTING OF THE OPTION PURSUANT TO THE VESTING SCHEDULE HEREOF IS EARNED ONLY BY CONTINUING AS A SERVICE PROVIDER AT THE WILL OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) AND NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED THIS OPTION OR ACQUIRING SHARES HEREUNDER. HOLDER FURTHER ACKNOWLEDGES AND AGREES THAT THIS OPTION AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREUNDER AND THE VESTING SCHEDULE SET FORTH HEREIN DO NOT CONSTITUTE AN EXPRESS OR IMPLIED

CONFIDENTIAL

PROMISE OF CONTINUED ENGAGEMENT AS A SERVICE PROVIDER FOR THE VESTING PERIOD, FOR ANY PERIOD, OR AT ALL, AND SHALL NOT INTERFERE IN ANY WAY WITH HOLDER'S RIGHT OR THE RIGHT OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) TO TERMINATE HOLDER'S RELATIONSHIP AS A SERVICE PROVIDER AT ANY TIME, WITH OR WITHOUT CAUSE.

CONFIDENTIAL

Holder acknowledges receipt of a copy of the Plan and represents that he or she is familiar with the terms and provisions thereof, and hereby accepts this Option, subject to all of the terms and provisions thereof. Holder has reviewed the Plan and this Option Agreement in their entirety, has had an opportunity to obtain the advice of counsel prior to executing this Option Agreement and fully understands all terms and conditions of the Option. Holder hereby agrees to accept as binding, conclusive and final all decisions or interpretations of the Administrator upon any questions arising under the Plan or this Option Agreement. Holder further agrees to notify the Company upon any change in the residence address indicated below.

Holder, during his or her employment with the Company, shall follow CEO's directions in all matters relating to the Company's decision-making, to the extent as may be permitted by law

By Holder's signature below, Holder acknowledges and agrees that the grant of this Option is in full satisfaction of any oral or written promise to grant a share option, equity or any equity-related interest in the Company or any Related Entity, including, but not limited to any promise set forth in an offer letter or other agreement with a Related Entity and/or related oral discussions (a "Promised Interest"). Accordingly, Holder hereby irrevocably and unconditionally releases and forever discharges the Company and any other Related Entity, and any successors, assigns, directors, officers, employees, consultants, agents, representatives, members, shareholders and affiliates of the Company and any other Related Entity, from any obligation to issue any securities of the Company or any other Related Entity or any other compensation in respect of the Promised Interest and from all any and all claims, liabilities or obligations, whether now existing or hereafter arising, which in any way relate to or arise out of the Promised Interest.

Holder acknowledges that Holder has been advised to consult with legal counsel and is familiar with the provisions of California Civil Code Section 1542, a statute that otherwise prohibits the release of unknown claims, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

CONFIDENTIAL

Holder                                      Smart King LTD

Signature                                   By

Print Name Hong Liu                         Print Name



                                            Title

Residence Address

**SMART KING LTD.**
**EQUITY INCENTIVE PLAN**
**SHARE OPTION AGREEMENT**

Any capitalized terms used but not defined in this Share Option Agreement (the "Option Agreement") shall have the meanings ascribed to such terms in the Smart King Ltd. Equity Incentive Plan (as amended from time to time, the "Plan"). In case of discrepancy between the Option Agreement and the Deed of Undertaking and/or any charter documents of Smart King Ltd., the later shall prevail.

### I. NOTICE OF SHARE OPTION GRANT

**Name:** Hong Liu



The undersigned Holder has been granted an Option to purchase Class A Ordinary Shares of Smart King Ltd. (the "Company"), subject to the terms and conditions of the Plan and this Option Agreement, as follows:

| | |
|---|---|
| Date of Grant | 24-Oct-2018 |
| Vesting Commencement Date: | 15-Feb-2018 |
| Exercise Price per Share: | $$0.36 USD |
| Total Number of Shares Granted: | 8,000,000 |
| Total Exercise Price: $ | $2,880,000.00 USD |
| Type of Option: | Incentive Share Option |
| | Non-Qualified Share Option |
| Term/Expiration Date: | 24-Oct-2028 |

Vesting Schedule:

CONFIDENTIAL

FF00000375

Twenty-five percent (25%) of the Shares subject to the Option shall vest on the one (1) year anniversary of
the Vesting Commencement Date, and one forty-eighth (1/48th) of the Shares subject to the Option shall
vest each month thereafter on the same day of the month as the Vesting Commencement Date (and if there is
no corresponding day, on the last day of the month), subject to Holder continuing to be a Service Provider
through each such date..

CONFIDENTIAL

Termination Period:

Any unvested portion of the Option shall immediately terminate upon Holder ceasing to be a Service Provider or if Holder breaches an employment agreement, non-competition, non-solicitation, confidentiality or other restrictive covenant agreement or any similar agreement with the Company or any Related Entity. Any vested portion of the Option shall be exercisable for three (3) months after Holder ceases to be a Service Provider, unless such termination is due to (i) Holder's death or disability, in which case any such vested portion of the Option shall be exercisable for six (6) months after Holder ceases to be a Service Provider and shall terminate thereafter; or (ii) Holder's termination for Cause, in which case, to the extent permissible under Applicable Laws, this Option (including any vested portion of this Option) shall terminate upon such termination for Cause. Notwithstanding the foregoing sentence, in no event may this Option be exercised after the Term/Expiration Date as provided above and this Option may be subject to earlier termination as provided in Section 10 of the Plan.

Option Subject to Acceptance of Agreement:

This Option shall be null and void unless Holder shall accept this Option Agreement by executing this Option Agreement in the space provided below and returning an original execution copy of this Option Agreement to the Company.

## II. AGREEMENT

1. Grant of Option. The Administrator hereby grants to the Holder named in the Notice of Share Option Grant in Part I of this Option Agreement ("Holder") an option (the "Option") to purchase the number of Shares set forth in the Notice of Share Option Grant, at the exercise price per Share set forth in the Notice of Share Option Grant (the "Exercise Price"), and subject to the terms and conditions of the Plan, which are incorporated herein by reference. Subject to Section 17 of the Plan, in the event of a conflict between the terms and conditions of the Plan and this Option Agreement, the terms and conditions of the Plan shall prevail.

   If designated in the Notice of Share Option Grant as an Incentive Share Option ("ISO"), this Option is intended to qualify as an "incentive stock option" as defined in Section 422 of the Code. Nevertheless, to the extent that it exceeds the $100,000 rule of Section 422(d) of the Code, this Option shall be treated as a Non-qualified Share Option ("NSO"). Further, if for any reason this Option (or portion thereof) shall not qualify as an ISO, then, to the extent of such nonqualification, such Option (or portion thereof) shall be regarded as a NSO granted under the Plan. In no event shall the

Administrator, the Company or any Related Entity or any of their respective employees or directors have any liability to Holder (or any other person) due to the failure of the Option to qualify for any reason as an ISO.

2. Exercise of Option.

    a. Right to Exercise. This Option shall be exercisable during its term in accordance with the Vesting Schedule set out in the Notice of Share Option Grant and with the applicable provisions of the Plan and this Option Agreement.

CONFIDENTIAL

b. <u>Method of Exercise.</u> This Option shall be exercisable by delivery of an exercise notice in the form attached as <u>Exhibit A</u> (the "<u>Exercise Notice</u>") or in a manner and pursuant to such procedures as the Administrator may determine, which shall state the election to exercise the Option, the number of Shares with respect to which the Option is being exercised (the "<u>Exercised Shares</u>"), and such other representations and agreements as may be required by the Company. As a condition to exercise this Option, Holder must sign any documents reasonably required of a member at or prior to the time of exercise, including, but not limited to, any then in effect voting agreement or co-sale agreement and the Deed of Undertaking in the form attached as <u>Exhibit C</u>. This Option shall be deemed to be exercised upon receipt by the Company of a fully executed Exercise Notice accompanied by payment of the aggregate Exercise Price as to all Exercised Shares, together with any applicable tax withholding, and any other required documents signed by Holder.

No Shares shall be issued pursuant to the exercise of an Option unless such issuance and such exercise comply with Applicable Laws. Assuming such compliance, for income tax purposes the Shares shall be considered transferred to Holder on the date on which the Option is exercised with respect to such Shares.

3. <u>Holder's Representations</u>. In the event the Shares have not been registered under the Securities Act of 1933, as amended or the regulatory rules of any other jurisdiction (the "<u>Securities Act</u>"), at the time this Option is exercised, Holder shall, if required by the Company, concurrently with the exercise of all or any portion of this Option, deliver to the Company his or her Investment Representation Statement in the form attached hereto as <u>Exhibit B</u>.

4. <u>Lock-Up Period</u>. Holder hereby agrees that Holder shall not offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any Class A Ordinary Shares (or other securities) of the Company or enter into any swap, hedging or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any Class A Ordinary Shares (or other securities) of the Company held by Holder (other than those included in the registration) to the extent set forth in the Deed of Undertaking. Holder agrees to execute and deliver such other agreements as set forth in the Deed of Undertaking. Holder agrees that any transferee of the Option or Class A Ordinary Shares acquired pursuant to the Option shall be bound by this Section 4.

5. <u>Method of Payment</u>. Payment of the aggregate Exercise Price shall be by any of the following or a combination thereof at the election of Holder, if and to the extent permitted by the Administrator in its

FF00000379

sole discretion:

    a. cash;

    b. check;

CONFIDENTIAL

   c. consideration received by the Company under a formal cashless exercise program if and to the extent adopted by the Company in its sole and absolute discretion; or

   d. surrender of other Shares which (i) shall be valued at its Fair Market Value on the date of exercise, and (ii) must be owned free and clear of any liens, claims, encumbrances or security interests, but only if accepting such Shares, in the sole discretion of the Administrator, shall not result in any adverse accounting consequences to the Company.

6. <u>Restrictions on Exercise</u>. This Option may not be exercised if the issuance of such Shares upon such exercise or the method of payment of consideration for such Shares would constitute a violation of any Applicable Law.

7. <u>Non-Transferability of Option</u>. This Option may not be transferred or pledged in any manner other than by will or by the laws of descent or distribution and may be exercised during the lifetime of Holder only by Holder. The terms of the Plan and this Option Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of Holder.

8. <u>Term of Option.</u> This Option may be exercised only within the term set out in the Notice of Share Option Grant, and may be exercised during such term only in accordance with the terms of the Plan and this Option Agreement.

9. <u>Tax Obligations.</u>

   a. <u>Tax Withholding</u>. Holder agrees to make appropriate arrangements with the Company (or the Related Entity employing or retaining Holder) for the satisfaction of all Federal, state, local and foreign income and employment tax withholding requirements applicable to any Option exercise, disposition of the Option or the Shares issued pursuant to the exercise of the Option ("Required Tax Payments"). Holder acknowledges and agrees that the Company may, in its discretion, refuse to honor any exercise of the Option, refuse to deliver the Shares in respect of any such exercise or deduct Required Tax Payments from any amount then or thereafter payable by the Company to Holder if any Required Tax Payments are not delivered at or prior to the time of exercise.

   b. Notice of Disqualifying Disposition of ISO Shares. If the Option granted to Holder herein is an ISO, and if Holder sells or otherwise disposes of any of the Shares acquired pursuant to the ISO on or before the later of (i) the date two (2) years after the Date of Grant, or (ii) the date one (1) year after the date of exercise, Holder shall immediately notify the Company in writing of such disposition. Holder acknowledges that in such event, Holder may be subject to income tax withholding by the Company on the compensation income recognized by Holder.

CONFIDENTIAL

c. Section 409A and Section 457A of the Code. Under Section 409A of the Code, an option granted with an exercise price that is determined by the U.S. Internal Revenue Service (the "IRS") to be less than the Fair Market Value on the date of grant (a "discount option") or that covers other than "service recipient stock" (as defined under Section 409A of the Code) may be considered "deferred compensation." An Option that is a discount option or that covers other than service recipient stock may result in (i) income recognition by Holder prior to the exercise of the Option, (ii) an additional twenty percent (20%) Federal income tax, and (iii) potential penalty and interest charges. The Option may also result in additional state income, penalty and interest charges to Holder. Holder acknowledges that the Company cannot and has not guaranteed that the IRS will agree that the per Share exercise price of this Option equals or exceeds the Fair Market Value of a Share on the date of grant or that the Shares covered by this Option will be classified as service recipient stock in a later examination. Holder agrees that if the IRS determines that the Option was granted with a per Share exercise price that was less than the Fair Market Value of a Share on the date of grant or covers other than service recipient stock, Holder shall be solely responsible for Holder's costs related to such a determination. Further, Holder agrees that if the IRS determines that the Option is deferred compensation subject to, and within the meaning of, Section 457A of the Code, Holder shall be solely responsible for Holder's costs related to such a determination.

10. <u>Entire Agreement; Governing Law</u>. The Plan is incorporated herein by reference. The Plan and this Option Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company (and/or the Related Entity employing or retaining Holder) and Holder with respect to the subject matter hereof, and may not be modified adversely to Holder's interest except by means of a writing signed by the Company and Holder. This Option Agreement is governed by the internal substantive laws but not the choice of law rules of California.

11. <u>No Guarantee of Continued Service.</u> HOLDER ACKNOWLEDGES AND AGREES THAT THE VESTING OF THE OPTION PURSUANT TO THE VESTING SCHEDULE HEREOF IS EARNED ONLY BY CONTINUING AS A SERVICE PROVIDER AT THE WILL OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) AND NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED THIS OPTION OR ACQUIRING SHARES HEREUNDER. HOLDER FURTHER ACKNOWLEDGES AND AGREES THAT THIS OPTION AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREUNDER AND THE VESTING SCHEDULE SET FORTH HEREIN DO NOT CONSTITUTE AN EXPRESS OR IMPLIED

FF00000382

PROMISE OF CONTINUED ENGAGEMENT AS A SERVICE PROVIDER FOR THE VESTING PERIOD, FOR ANY PERIOD, OR AT ALL, AND SHALL NOT INTERFERE IN ANY WAY WITH HOLDER'S RIGHT OR THE RIGHT OF THE COMPANY (OR THE RELATED ENTITY EMPLOYING OR RETAINING HOLDER) TO TERMINATE HOLDER'S RELATIONSHIP AS A SERVICE PROVIDER AT ANY TIME, WITH OR WITHOUT CAUSE.

CONFIDENTIAL

Holder acknowledges receipt of a copy of the Plan and represents that he or she is familiar with the terms and provisions thereof, and hereby accepts this Option, subject to all of the terms and provisions thereof. Holder has reviewed the Plan and this Option Agreement in their entirety, has had an opportunity to obtain the advice of counsel prior to executing this Option Agreement and fully understands all terms and conditions of the Option. Holder hereby agrees to accept as binding, conclusive and final all decisions or interpretations of the Administrator upon any questions arising under the Plan or this Option Agreement. Holder further agrees to notify the Company upon any change in the residence address indicated below.

Holder, during his or her employment with the Company, shall follow CEO's directions in all matters relating to the Company's decision-making, to the extent as may be permitted by law

By Holder's signature below, Holder acknowledges and agrees that the grant of this Option is in full satisfaction of any oral or written promise to grant a share option, equity or any equity-related interest in the Company or any Related Entity, including, but not limited to any promise set forth in an offer letter or other agreement with a Related Entity and/or related oral discussions (a "Promised Interest"). Accordingly, Holder hereby irrevocably and unconditionally releases and forever discharges the Company and any other Related Entity, and any successors, assigns, directors, officers, employees, consultants, agents, representatives, members, shareholders and affiliates of the Company and any other Related Entity, from any obligation to issue any securities of the Company or any other Related Entity or any other compensation in respect of the Promised Interest and from all any and all claims, liabilities or obligations, whether now existing or hereafter arising, which in any way relate to or arise out of the Promised Interest.

Holder acknowledges that Holder has been advised to consult with legal counsel and is familiar with the provisions of California Civil Code Section 1542, a statute that otherwise prohibits the release of unknown claims, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

CONFIDENTIAL

FF00000384

Holder

Signature

Print Name Hong Liu



Residence Address

Smart King LTD

By

Print Name

Title

CONFIDENTIAL

# EXHIBIT 3

# SMART KING LTD.

## EQUITY INCENTIVE PLAN

### As Adopted on February 1, 2018

### As Amended and Restated Effective February 1, 2018

1.      **PURPOSES OF THE PLAN**. The purpose of this Smart King Ltd. Equity Incentive Plan is to attract and retain the best available personnel for positions of substantial responsibility, to provide additional incentive to Employees, Directors and Consultants of the Company and Related Entities, and to promote the success of the business of the Company and its Subsidiaries. The Plan provides for the grant of Restricted Shares, Unrestricted Shares, Restricted Share Units, Non-qualified Share Options and Incentive Share Options. The Plan is an amendment and restatement of the FF Global Holdings Ltd. Equity Incentive Plan.

2.      **DEFINITIONS**. As used herein, the following definitions shall apply:

2.1      <u>Acquisition</u> means the occurrence of any of the following events:

(a)      <u>Change in Ownership of the Company</u>. A change in the ownership of the Company which occurs on the date that any one person, or more than one person acting as a group ("<u>Person</u>"), acquires ownership of the shares of the Company that, together with the shares held by such Person, constitutes more than fifty percent (50%) of the total voting power of the shares of the Company; provided, however, that for purposes of this subsection, the acquisition of additional shares by any one Person, who is considered to own more than fifty percent (50%) of the total voting power of the shares of the Company will not be considered an Acquisition; provided, further, that any change in the ownership of the shares of the Company as a result of a private financing of the Company that is approved by the Board also will not be considered an Acquisition. Further, if the members of the Company immediately before such change in ownership continue to retain immediately after the change in ownership, in substantially the same proportions as their ownership of shares of the Company's voting shares immediately prior to the change in ownership, direct or indirect beneficial ownership of fifty percent (50%) or more of the total voting power of the shares of the Company or of the ultimate parent entity of the Company, such event shall not be considered an Acquisition under this subsection (a). For this purpose, indirect beneficial ownership shall include, without limitation, an interest resulting from ownership of the voting securities of one or more corporations or other business entities which own the Company, as the case may be, either directly or through one or more subsidiary corporations or other business entities; or

(b)      <u>Change in Effective Control of the Company</u>. If the Company has a class of securities registered pursuant to Section 12 of the Exchange Act, a change in the effective control of the Company which occurs on the date that a majority of members of the Board is replaced during any twelve (12) month period by Directors whose appointment or election is not endorsed by a majority of the members of the Board prior to the date of the appointment or election. For purposes of this subsection (b), if any Person is considered to be in effective control of the Company, the acquisition of additional control of the Company by

CONFIDENTIAL                                                    FF00000337

the same Person will not be considered an Acquisition; or

    (c)  Change in Ownership of a Substantial Portion of the Company's Assets. A change in the ownership of a substantial portion of the Company's assets which occurs on the date that any Person acquires (or has acquired during the twelve (12) month period ending on the date of the most recent acquisition by such person or persons) assets from the Company that have a total gross fair market value equal to or more than fifty percent (50%) of the total gross fair market value of all of the assets of the Company immediately prior to such acquisition or acquisitions; provided, however, that for purposes of this subsection (c), the following will not constitute a change in the ownership of a substantial portion of the Company's assets: (A) a transfer to an entity that is controlled by the Company's members immediately after the transfer, or (B) a transfer of assets by the Company to: (1) a member of the Company (immediately before the asset transfer) in exchange for or with respect to the Company's shares,
(2) an entity, fifty percent (50%) or more of the total value or voting power of which is owned, directly or indirectly, by the Company, (3) a Person, that owns, directly or indirectly, fifty percent (50%) or more of the total value or voting power of all the outstanding shares of the Company, or (4) an entity, at least fifty percent (50%) of the total value or voting power of which is owned, directly or indirectly, by a Person described in this subsection (c)(B)(3). For purposes of this subsection (c), gross fair market value means the value of the assets of the Company, or the value of the assets being disposed of, determined without regard to any liabilities associated with such assets.

    For purposes of this Section 2.1, persons will be considered to be acting as a group if they are owners of a corporation that enters into a merger, consolidation, purchase or acquisition of shares, or similar business transaction with the Company.

    Notwithstanding the foregoing, a transaction will not be deemed an Acquisition unless the transaction qualifies as a change in control event within the meaning of Code Section 409A, as it has been and may be amended from time to time, and any proposed or final Treasury Regulations and Internal Revenue Service guidance that has been promulgated or may be promulgated thereunder from time to time.

    Further and for the avoidance of doubt, a transaction will not constitute an Acquisition if:
(i) its sole purpose is to change the jurisdiction of the Company's incorporation, or (ii) its sole purpose is to create a holding company that will be owned in substantially the same proportions by the persons who held the Company's securities immediately before such transaction.

    2.2  Administrator means the Board or the Committee responsible for conducting the general administration of the Plan, as applicable, in accordance with Section 4.

    2.3  Applicable Law means the legal and regulatory requirements relating to the issuance and administration of equity and share option plans, including, but not limited to, under the Cayman Islands laws, the states' corporate laws and federal and state securities laws of the United States of America, the Code, any stock exchange or quotation system on which the Class A Ordinary Shares are listed or quoted and the applicable laws of any foreign country

CONFIDENTIAL

or jurisdiction where Awards are granted under the Plan.

        2.4     <u>Award</u> means an award of, Restricted Shares, Unrestricted Shares, Restricted Share Units, or Options granted to a Service Provider under this Plan.

        2.5     <u>Award Agreement</u> means the Option Agreement or other written agreement between the Company or Subsidiary employer and a Service Provider evidencing the terms and conditions of an individual Award. The Award Agreement shall be subject to the terms and conditions of the Plan.

        2.6     <u>Board</u> means the Board of Directors of the Company.

        2.7     <u>Cause</u> shall have the meaning ascribed to it in any written employment or service agreement between the Company (or Subsidiary employer) and the Service Provider. If not otherwise defined, "Cause" shall mean (a) an intentional act of fraud, embezzlement, theft or any other material violation of law that occurs during or in the course of a Service Provider's employment or engagement, as applicable, with the Company; (b) intentional or grossly negligent damage to the Company's interests or assets; (c) intentional or grossly negligent breach of the Company's policies, including, without limitation, disclosure of the Company's confidential information contrary to Company policies or engagement in any competitive activity which would constitute a breach of a Service Provider's duty of loyalty or any other duties the Service Provider holds to the Company; (d) the willful and continued failure to substantially perform the Service Provider's duties for the Company (other than as a result of incapacity due to physical or mental illness); or (e) other willful or grossly negligent conduct by a Service Provider that is demonstrably and materially injurious to the Company, monetarily or otherwise.

        2.8     <u>Class A Ordinary Share(s)</u> or <u>Share(s)</u>, means the Class A ordinary shares of the Company, par value $0.00001 per share.

        2.9     <u>Code</u> means the Internal Revenue Code of 1986, as amended, or any successor statute or statutes thereto. Reference to any particular Code section shall include any successor section and any regulations or authorities promulgated thereunder.

        2.10    <u>Committee</u> means a committee appointed by the Board in accordance with
Section 4.

        2.11    <u>Company</u> means Smart King Ltd., an exempted company incorporated with limited liability under the Laws of the Cayman Islands.

        2.12    <u>Consultant</u> means any natural person, including an advisor, engaged by the Company or by a Related Entity to render bona fide services to such entity, provided the services (i) are not in connection with the offer or sale of securities in a capital-raising transaction, and (ii) do not directly promote or maintain a market for the Company's securities, in each case, within the meaning of Form S-8 promulgated under the Securities Act, and

FF00000339

provided further, that a Consultant will include only those persons to whom the issuance of Shares may be registered under Form S-8 promulgated under the Securities Act.

2.13    Director means a member of the Board or a member of the Board of Directors of a Related Entity.

2.14    Employee means any person, including an Officer or Director, who is an employee (as defined in accordance with Code Section 3401(c)) of the Company or a Related Entity. An Employee shall not cease to be an Employee in the case of (i) any leave of absence approved by the Company, or (ii) transfers between locations of the Company or between the Company, its Related Entities, or any successor. Neither service as a Director nor payment of a director's fee by the Company shall be sufficient, by itself, to constitute "employment" by the Company. Notwithstanding the foregoing, for the purposes of grants of Incentive Share Options, "Employee" means an employee of the Company or of a Parent or Subsidiary.

2.15    Exchange Act means the Securities Exchange Act of 1934, as amended, or any successor statute or statutes thereto. Reference to any particular Exchange Act section shall include any successor section and any regulations or authorities promulgated thereunder.

2.16    Fair Market Value of a Share means, as of any date, the fair market value determined consistent with the requirements of Code Sections 422 and 409A, as follows:

(a)    If the Class A Ordinary Shares are listed on any established stock exchange or a national market system, its Fair Market Value shall be the closing price as quoted on such exchange or system on the date of determination, as reported in The Wall Street Journal or such other source as the Administrator deems reliable;

(b)    If the Class A Ordinary Shares are regularly quoted by a recognized securities dealer but selling prices are not reported, its Fair Market Value shall be the closing price for a Class A Ordinary Share on the date of determination; or

(c)    In the absence of an established market for the Class A Ordinary Shares, the Fair Market Value thereof shall be determined in good faith by the Administrator in accordance with Applicable Law, except as provided in Section 11.

2.17    Holder means a person who has been granted an Award or who becomes the holder of an Award or who holds Shares acquired pursuant to the exercise of an Award.

2.18    Incentive Share Option means an Option that by its terms qualifies and is otherwise intended to qualify as an incentive stock option within the meaning of Code Section 422 and the regulations promulgated thereunder.

2.19    Independent Director means a Director who is not an Employee of the Company.

FF00000340

2.20    Non-qualified Share Option means an Option that by its terms does not qualify or is not intended to qualify as an Incentive Share Option.

2.21    Officer means a person who is an officer of the Company within the meaning of Section 16 of the Exchange Act.

2.22    Option, or Share Option means a share option granted pursuant to Section 6 of the Plan.

2.23    Option Agreement means the written agreement between the Company or a Subsidiary employer and a Service Provider evidencing the terms and conditions of an individual Option. The Option Agreement shall be subject to the terms and conditions of the Plan.

2.24    Parent means a "parent corporation," whether now or hereafter existing, as defined in Code Section 424(e).

2.25    Plan means this Smart King Ltd. Equity Incentive Plan.

2.26    Public Offering means consummation of an underwritten public offering of the Company's Shares registered under the Securities Act or registered under the securities laws of another jurisdiction under which the Shares are publicly traded.

2.27    Related Entity means the Company, any "parent" (as defined in Rule 405 of the Securities Act) of the Company, or any Majority-Owned Subsidiary (as defined in Rule 405 of the Securities Act) of the Company or of such a "parent".

2.28    Restricted Shares means Shares acquired pursuant to a grant of Restricted Shares under Section 8 or pursuant to the exercise of an unvested Option in accordance with Section 7.5.

2.29    Restricted Share Unit ("RSU") means a right to receive Shares in the future granted under Section 8.3.

2.30    Rule 16b-3 means that certain Rule 16b-3 under the Exchange Act, as such Rule may be amended from time to time.

2.31    Securities Act means the Securities Act of 1933, as amended, or any successor statute or statutes thereto. Reference to any particular Securities Act section shall include any successor section.

2.32    Service Provider means an Employee, Director or Consultant of the Company or a Related Entity.

2.33    Subsidiary means any corporation, whether now or hereafter existing

FF00000341

(other than the Company), in an unbroken chain of corporations beginning with the Company if each of the entities other than the last corporation in the unbroken chain owns equity possessing more than fifty percent (50%) of the total combined voting power of all classes of equity in one of the other entities in such chain or any other entity of which a majority of the outstanding voting shares or voting power is beneficially owned directly or indirectly by the Company.

2.34    Unrestricted Shares shall mean an Award granted under Section 8 of the Plan of fully vested Shares.

3.    **SHARES SUBJECT TO THE PLAN.** The Shares subject to Award grants shall be Class A Ordinary Shares. Subject to the adjustment provisions of Section 10, the maximum aggregate number of Shares which may be issued pursuant to Awards under the Plan shall be Three Hundred Million (300,000,000) Class A Ordinary Shares. If an Award expires, is canceled, becomes unexercisable or is forfeited, without having been exercised or vested in full, the unpurchased or unvested Shares which were subject thereto shall become available for future Awards under the Plan (unless the Plan has terminated). Shares which are delivered by the Holder or withheld by Company upon the exercise of an Option or receipt of an Award, in payment of the exercise price thereof or tax withholding thereon, may again be awarded hereunder. If Shares issued pursuant to Awards are repurchased by, or are forfeited to, the Company due to failure to vest, such Shares shall become available for future Awards under the Plan. To the extent an Award under the Plan is paid out in cash rather than Shares, such cash payment will not result in reducing the number of Shares available for issuance under the Plan. Notwithstanding the foregoing and, subject to adjustment as provided in Section 10, the maximum number of Class A Ordinary Shares that may be issued upon the exercise of Incentive Share Options is Two Billion (2,000,000,000) Shares.

4.    **ADMINISTRATION OF THE PLAN.**

4.1    Administrator. The Plan shall be administered by the Board or by a Committee to which administration of the Plan, or of part of the Plan, is delegated by the Board. The Board shall appoint and remove members of the Committee in its discretion in accordance with Applicable Laws. If necessary, in the Board's discretion, to comply with Rule 16b-3 under the Exchange Act and Code Section 162(m), the Committee shall be comprised solely of "non-employee directors" within the meaning of said Rule 16b-3 and "outside directors" within the meaning of Code Section 162(m). The foregoing notwithstanding, the Administrator may delegate nondiscretionary administrative duties to such employees of the Company as it deems proper and the Board, in its absolute discretion, may at any time and from time to time exercise any and all rights and duties of the Administrator under the Plan.

4.2    Powers of the Administrator. Subject to the express provisions of the Plan and the specific duties delegated by the Board to such Committee, and subject to the approval of any relevant authorities, the Administrator shall have plenary authority to the maximum extent permissible by Applicable Law, in its sole discretion:

(a)    to determine the Fair Market Value of a Share;

FF00000342

(b)     to select the Service Providers to whom Awards may from time to time be granted hereunder and the time of such Awards;

(c)     to determine the number of Shares to be covered by each such Award granted hereunder;

(d)     to approve forms of Award Agreements for use under the Plan;

(e)     to determine the terms and conditions of any Awards granted hereunder (such terms and conditions include the exercise price, the time or times when Awards may vest or be exercised (which may be based on, among other things, the passage of time, specific events or performance criteria), any acceleration (as permissible under Code Section 409A) of such vesting or exercise date or imposition or waiver of forfeiture restrictions, and any restriction or limitation regarding any Shares received upon grant or exercise of an Award, based in each case on such factors as the Administrator, in its sole discretion, shall determine);

(f)     to determine whether to offer to repurchase, replace or reprice a previously granted Award and to determine the terms and conditions of such offer (including whether any purchase price is to be paid in cash or Shares);

(g)     to determine whether and under what conditions options granted under another option plan of the Company, a Subsidiary or an entity which is acquired by or merged into the Company or a Subsidiary may be converted into Options on Company Shares granted under and subject to the terms of this Plan;

(h)     to prescribe, amend and rescind rules and regulations relating to the Plan, including rules and regulations relating to sub-plans established for the purpose of qualifying for preferred tax treatment under foreign tax laws;

(i)     to determine the amount and timing of withholding tax obligations and to allow or require Holders to satisfy withholding tax obligations by electing, if applicable, to have the Company withhold from the Shares to be issued pursuant to any Award the number of Shares having a Fair Market Value equal to the minimum amount, determined by the Administrator in its sole discretion, required to be withheld based on the statutory withholding rates for federal, state and local tax purposes that apply to supplemental taxable income. The Fair Market Value of the Shares to be withheld shall be determined on the date that the amount of tax is required to be withheld. All elections by Holders to have Shares withheld for this purpose shall be made in such form and under such conditions as the Administrator may deem necessary or advisable;

(j)     to exercise its sole discretion in a manner such that Awards which are granted to individuals who are foreign nationals or are employed outside the United States may contain terms and conditions which are different from the provisions otherwise specified in the Plan but which are consistent with the tax and other laws of foreign jurisdictions applicable to the Service Providers and which are designed to provide the Service Providers with benefits which are consistent with the Company's objectives in establishing the Plan;

(k)     to (a) determine which Subsidiaries shall be covered by the Plan; (b) determine which Service Providers are eligible to participate in the Plan; (c) modify the terms and conditions of any Award granted to Service Providers to comply with applicable foreign laws or listing requirements of any such non-U.S. securities exchange or for purposes of qualifying for favorable tax treatment under non-U.S. laws; (d) establish subplans and modify exercise procedures and other terms and procedures, to the extent such actions may be necessary or advisable (and any such subplans and/or modifications shall be attached to the Plan as appendices); provided, however, that no such subplans and/or modifications shall increase the share limit or individual award limits contained in Sections 3 hereof, respectively; and (e) take any action, before or after an Award is made, that it deems advisable to obtain approval or comply with any necessary local governmental regulatory exemptions or approvals or listing requirements of any such foreign securities exchange;

(l)     to amend the Plan or any Award granted under the Plan as provided in Section 17; and

(m)     to construe and interpret the terms of the Plan and Awards granted pursuant to the Plan and to exercise such powers and perform such acts as the Administrator deems necessary or desirable to promote the best interests of the Company which are not in conflict with the provisions of the Plan.

4.3     Compliance with Code Section 409A. To the extent Holder is or becomes subject to U.S. Federal income taxation, this Section 4.3 shall apply. Notwithstanding any other provision of the Plan, the Administrator shall have no authority to issue an Award under the Plan under terms and conditions which would cause such Award to violate the provisions of Code Section 409A to the extent that a Holder of such an Award is subject to U.S. Federal income taxation. It is the intent that the Plan and all Award Agreements be interpreted to be exempt from or comply in all respects with Code Section 409A and to be exempt from Code Section 457A, however, the Company shall have no liability to Service Providers or Holders in the event taxes or excise taxes may ultimately be determined to be applicable to any Award under the Plan.

4.4     Effect of Administrator's Decision. All decisions, determinations and interpretations of the Administrator shall be final and binding on all Holders.

4.5     Liability of Administrator. No member of the Board, Committee or acting Administrator shall be liable for anything whatsoever in connection with the administration of the Plan, except such member's own willful misconduct. Under no circumstances shall any member of the Board or Committee be liable for any act or omission of any other member of the Board or Committee. In the performance of its functions with respect to the Plan, the Board and Committee shall be entitled to rely upon information and advice furnished by the Company's officers, accountants, legal counsel and any other qualified consultant the Administrator determines is necessary to consult for proper administration of the Plan, and no member of the Board or Committee shall be liable for any action taken or not taken in reliance upon any such advice.

5.     **ELIGIBILITY.**

    5.1    <u>Eligible Persons</u>. Awards (other than Incentive Share Options) may be granted to all Service Providers. Incentive Share Options may be granted only to Employees.

    5.2    <u>Administrative Discretion</u>. If otherwise eligible, a Service Provider who has been granted an Award may be granted additional Awards. In exercising its authority to set the terms and conditions of Awards, and subject only to the limits of Applicable Law, the Administrator shall be under no obligation or duty to treat similarly situated Service Providers or Holders in the same manner, and any action taken by the Administrator with respect to one Service Provider or Holder shall in no way obligate the Administrator to take the same or similar action with respect to any other Service Provider or Holder.

6.     **GRANT OF OPTIONS.**

    6.1    <u>Grant of Options</u>. The Committee may grant Options to Service Providers, for such number of Shares, and subject to such terms and conditions as the Administrator may determine in its sole discretion. Incentive Share Options may be granted only to Employees.

    6.2    <u>Term of Option</u>. The term of each Option shall be stated in the Option Agreement; provided, however, that the term shall be no more than ten (10) years from the date of grant thereof. In the case of an Incentive Share Option granted to a Holder who, at the time the Incentive Share Option is granted, owns shares representing more than ten percent (10%) of the total combined voting power of all classes of shares of the Company or any Parent or Subsidiary, the term of the Incentive Share Option will be five (5) years from the date of grant or such shorter term as may be provided in the Award Agreement.

    6.3    <u>Limitations</u>. Each Option will be designated in the Award Agreement as either an Incentive Share Option or a Non-qualified Share Option. Notwithstanding such designation, however, to the extent that the aggregate Fair Market Value of the Shares with respect to which Incentive Share Options are exercisable for the first time by the Service Provider during any calendar year (under all plans of the Company and any Parent or Subsidiary) exceeds one hundred thousand dollars ($100,000), such Options will be treated as Non-qualified Share Options. For purposes of this Section 6.3, Incentive Share Options will be taken into account in the order in which they were granted, the Fair Market Value of the Shares will be determined as of the time the Option with respect to such Shares is granted, and calculation will be performed in accordance with Code Section 422 and Treasury Regulations promulgated thereunder.

    6.4    <u>No Member Rights</u>. The Holder of an Option shall have no rights of a member with respect to Shares covered by such Option until the Holder exercises the Option and the Shares are issued to the Holder. If the Holder uses Shares to exercise an Option, the Holder will continue to be treated as owning such Shares until new Shares are issued under the exercised Option.

CONFIDENTIAL

7.      **OPTION EXERCISE.**

7.1      <u>Vesting; Fractional Exercises</u>. Except as provided in Section 9, Options granted hereunder shall be vested and exercisable according to the terms hereof at such times and under such conditions as determined by the Administrator and set forth in the Option Agreement. No Option may be exercised for a fraction of a Share.

7.2      <u>Exercise Price</u>. Except as provided in Section 9, the per Share exercise price for any Option granted under that Plan shall be no less (and shall not have the potential to become less at any time) than one hundred percent (100%) of the Fair Market Value per Share on the date of grant. In addition, in the case of an Incentive Share Option granted to an Employee who owns shares representing more than ten percent (10%) of the voting power of all classes of shares of the Company or any Parent or Subsidiary, the per Share exercise price will be no less than one hundred ten percent (110%) of the Fair Market Value per Share on the date of grant. Notwithstanding the foregoing, Options may be granted with, or converted at, a per Share exercise price other than as required above: (i) pursuant to a merger, acquisition or other corporate transaction if consistent with the requirements of Applicable Law; or (ii) to a person that the Administrator determines is not subject to U.S. Federal income taxation, provided the grant is not expected to result in any adverse tax consequences, as the Administrator determines in its sole discretion.

(6)          <u>Consideration</u>. The consideration to be paid for the Shares to be issued upon exercise of an Option, including the method of payment, shall be determined by the Administrator, provided that such consideration shall be at least equal to the par value per share. Such consideration may consist of (1) cash, (2) check, (3) other Shares which <u>(x) in the case of Shares acquired from Company, have been owned by the Holder for more than six (6) months on the date of surrender, and (y) have a Fair Market Value on the date of surrender equal to the aggregate exercise price of the Shares as to which such Option shall be exercised, (4) surrendered Shares then issuable upon exercise of the Option having a Fair Market Value on the date of exercise equal to the aggregate exercise price of the Option or exercised portion thereof, (5) property or other non-cash consideration of any kind which constitutes good and valuable consideration,</u> to the extent consistent with Applicable Law, delivery of a notice that the Holder has placed a market sell order with a broker with respect to Shares then issuable upon exercise of the Options and that the broker has been directed to pay a sufficient portion of the net proceeds of the sale to Company in satisfaction of the Option exercise price <u>provided</u>, that payment of such proceeds is then made to Company upon settlement of such sale, or (7) any combination of the foregoing methods of payment.

7.3      <u>Deliveries upon Exercise</u>. All or a portion of an exercisable Option shall be deemed exercised upon delivery of all of the following to the Secretary of the Company or his or her office:

(a)          A written or electronic notice complying with the applicable rules established by the Administrator stating that such Option, or a portion thereof, is exercised. The notice shall be signed by the Holder or other person then entitled to exercise the Option or such portion of the Option;

      (b)     An executed Deed of Undertaking in substantially the form attached to this Plan as <u>Exhibit A</u>;

      (c)     Such representations and documents as the Administrator deems necessary or advisable to effect compliance with Applicable Law. The Administrator may also take whatever additional actions it deems appropriate to effect such compliance, including placing legends on Share certificates, if applicable, and issuing stop transfer notices to agents and registrars; and

      (d)     In the event that the Option shall be exercised by any person or persons other than the Holder, appropriate proof of the right of such person or persons to exercise the Option.

      7.4     <u>Early Exercisability</u>. The Administrator may provide in the terms of a Holder's Option Agreement that the Holder may, at any time before the Holder's status as a Service Provider terminates, exercise the Option in whole or in part in exchange for Restricted Shares prior to the full vesting of the Option; provided however, that Shares acquired upon exercise of an Option which has not fully vested shall be subject to the same forfeiture, transfer or other restrictions as determined by the Administrator and set forth in the Option Agreement.

      7.5     <u>Buyout Provisions</u>. The Administrator may at any time offer to repurchase for a payment in cash or Shares, an Option previously granted, based on such terms and conditions as the Administrator shall establish and communicate to the Holder at the time that such offer is made.

      7.6     <u>Termination of Relationship as a Service Provider</u>. If a Holder ceases to be a Service Provider other than by reason of the Service Provider's disability or death or termination for Cause, the Option shall remain exercisable for a period of time as determined by the Administrator and set forth in the Option Agreement. If, on the date of termination, the Holder is not vested as to the entire Option, unless otherwise provided by the Administrator, the Shares covered by the unvested portion of the Option immediately cease to be issuable under the Option. If, after termination, the Holder does not exercise the Option within the applicable time period, the Option shall terminate. If the Holder is terminated for Cause and to the extent permissible under Applicable Laws, the Option shall terminate upon such termination for Cause.

      7.7     <u>Disability of Holder</u>. If a Holder ceases to be a Service Provider as a result of the Service Provider's disability, unless otherwise specified in the Option Agreement, the Option shall remain exercisable for a period of time as determined by the Administrator and set forth in the Option Agreement. If, on the date of termination, the Holder is not vested as to the entire Option, unless otherwise provided by the Administrator, the Shares covered by the unvested portion of the Option shall immediately cease to be issuable under the Option. If, after termination, the Holder does not exercise the Option within the time specified herein, the Option shall terminate.

      7.8     <u>Death of Holder</u>. If a Service Provider dies while a Service Provider, unless otherwise specified in the Option Agreement, the Option shall remain exercisable for a

CONFIDENTIAL

period of time as determined by the Administrator and set forth in the Option Agreement. If, at the time of death, the Holder is not vested as to the entire Option, unless otherwise provided by the Administrator, the Shares covered by the unvested portion of the Option shall immediately cease to be issuable under the Option. The Option may be exercised by the executor or administrator of the Holder's estate or, if none, by the person(s) entitled to exercise the Option under the Holder's will or the laws of descent or distribution. If the Option is not so exercised within the time specified herein, the Option shall terminate.

7.9     Regulatory Extension. Unless otherwise provided by a Holder's Option Agreement, if the exercise of the Option following the termination of the Holder's status as a Service Provider (other than upon the Holder's death or disability) would be prohibited at any time solely because the issuance of Shares would violate the registration requirements under the Securities Act, then the Option shall terminate on the earlier of (i) the expiration of the term of the Option set forth in Section 6.2 or (ii) the expiration of the period of three (3) months (after the termination of the Holder's status as a Service Provider) during which the exercise of the Option would no longer be in violation of such registration requirements.

8.     **EQUITY BASED AWARDS OTHER THAN OPTIONS**

8.1     Unrestricted Share Awards. The Administrator may grant Unrestricted Share Awards to Service Providers under the terms of the Plan, in such amounts, and subject to such terms and conditions as the Administrator may determine, in its sole discretion. The Administrator may require a Service Provider to pay a purchase price to receive Unrestricted Shares at the time the Award is granted, in which case the purchase price shall be paid by the Service Provider prior to the issuance of the Shares.

8.2     Restricted Share Awards.

8.2.1     Restricted Share Grant. The Administrator may grant Restricted Shares to Service Providers, in such amounts, and subject to such terms and conditions as the Administrator may determine, in its sole discretion, including restrictions on transferability, which restrictions may lapse separately or in combination at such times, under such circumstances, in such installments, or otherwise.

8.2.2     Award Agreement. Restricted Shares shall be granted under an Award Agreement. Company may require a Service Provider awarded Restricted Shares to deliver a share power to Company, endorsed in blank, relating to the Restricted Shares for so long as the Restricted Shares are subject to a risk of forfeiture or repurchase by Company at Fair Market Value.

8.2.3     Restricted Share Purchase. The Administrator may require a Service Provider to pay a purchase price to receive Restricted Shares at the time the Award is granted, in which case the purchase price and the form and timing of payment shall be specified in the Award Agreement in addition to the vesting provisions and other applicable terms.

8.2.4     Withholding. The Administrator may require a Service Provider

to pay or otherwise provide for any applicable withholding tax determined by the Administrator to be due at the time restrictions lapse or, in the event of an election under Code Section 83(b), at the time of the Award.

8.2.5    No Deferral Provisions. Notwithstanding any other provision of the Plan, a Restricted Stock Award shall not provide for any deferral of compensation recognition after vesting with respect to Restricted Stock which would cause the Award to constitute a deferral of compensation subject to Code Section 409A, unless the Award Agreement shall specifically comply with all requirements for a timely deferral under Code Section 409A.

8.2.6    Rights as a Member. The Holder of Restricted Shares shall have rights equivalent to those of a member and shall be a member when the Restricted Shares grant is entered in the register of members of the Company.

8.3    Restricted Share Units.

8.3.1    RSU Awards. The Administrator may award Restricted Share Units ("RSUs"), which shall be settled in Shares, subject to such restrictions as the Administrator may establish in the applicable Award Agreement. The Administrator may make RSU Awards independent of, or in connection with, the granting of any other Award under the Plan. The Administrator, in its sole discretion, shall determine, if applicable, the performance goals under each such Award and the periods during which performance is to be measured, and all other limitations and conditions applicable to the awards of RSUs.

8.3.2    Award Agreement. RSUs shall be granted under an Award Agreement referring to the terms, conditions, and restrictions applicable to such Award.

8.3.3    No Deferral Provisions. Notwithstanding anything herein to the contrary, RSUs shall provide for prompt issuance of Shares upon vesting of the Award (in all events no later than the fifteenth (15th) day of the third (3rd) month after the later of the end of the calendar year or the Company's fiscal year in which vesting occurs) and shall not include any deferral of issuance and/or of compensation recognition after vesting which would cause the Award to constitute a deferral of compensation subject to Code Section 409A, unless the Award Agreement shall specifically comply with all requirements for a timely deferral under Code Section 409A. The Administrator may at any time accelerate vesting by waiving any or all of the goals, restrictions or conditions imposed under any RSU.

8.3.4    No Member or Secured Rights. A Holder shall be entitled to acquire Shares under an RSU only upon satisfaction of all conditions specified in the Award Agreement evidencing the Award. A Holder receiving an RSU Award shall have no rights of a member as to Shares covered by such Award unless and until such Shares are issued to the Holder under the Plan. Prior to receipt of the Shares underlying such Award, an RSU Award shall represent no more than an unfunded, unsecured, contractual obligation of the Company and the Company shall be under no obligation to set aside any assets to fund such Award. Prior to vesting and issuance of the Shares, the Holder shall have no greater claim to the Class A

FF00000349

Ordinary Shares underlying such Award or any other assets of the Company or any Subsidiary than any other unsecured general creditor and such rights may not be sold, pledged, assigned or transferred in any manner other than by will or by the laws of intestate succession as provided in Section 12.

9.      **CONDITIONS TO RECEIPT OF SHARES**

9.1     Conditions to Delivery of Share Certificates. The Plan is intended to qualify as a compensation benefit plan within the meaning of Rule 701 of the Securities Act. The Company shall not be required to issue or deliver any Shares granted or purchased under an Award or upon the exercise of any Option prior to fulfillment of all of the following conditions:

(a)     The admission of such Shares to listing on all stock exchanges on which such class of shares are then listed;

(b)     The completion of any registration or other qualification of such Shares under any state or federal law, or under the rulings or regulations of the Securities and Exchange Commission or any other governmental regulatory body which the Administrator shall, in its sole discretion, deem necessary or advisable;

(c)     The obtaining of any approval or other clearance from any state or federal governmental agency or compliance with any lock-up period as provided in Section 11, which the Administrator shall, in its sole discretion, determine to be necessary or advisable; and

(d)     The receipt by the Company of full payment for such Shares, if any, and any applicable withholding tax determined by the Administrator, which in the sole discretion of the Administrator may be in the same form as the consideration used by the Holder to pay for such Shares or the Company may agree to withhold such amounts from the Shares delivered under the Option or other Award, in the complete and sole discretion of the Administrator.

10.     **ADJUSTMENTS**

10.1    Corporate Transaction or Capitalization Event. In the event that the Administrator determines that any dividend or other distribution (whether in the form of cash, Class A Ordinary Shares, other securities, or other property), recapitalization, reclassification, share split, reverse share split, reorganization, merger, consolidation, split-up, spin-off, combination, repurchase, liquidation, dissolution, or sale, transfer, exchange or other disposition of all or substantially all of the assets of Company, or exchange of Class A Ordinary Shares or other securities of Company, issuance of warrants or other rights to purchase Class A Ordinary Shares or other securities of Company, or other similar corporate transaction or event ("Corporate Transaction"), in the Administrator's sole discretion, affects the Class A Ordinary Shares such that an adjustment is determined by the Administrator to be appropriate in order to prevent dilution or enlargement of the benefits or potential benefits intended by the Company to be made available under the Plan or with respect to any Award, then the Administrator shall, in

such manner as it may deem equitable, adjust any or all of:

(a)     the number and kind of Class A Ordinary Shares (or other securities or property) with respect to which Awards may be granted (including, but not limited to, adjustments of the limitations in Section 3 on the maximum number and kind of Shares which may be issued);

(b)     the number and kind of Class A Ordinary Shares (or other securities or property) subject to outstanding Awards; and

(c)     the grant, exercise price or base price with respect to any Award.

Notwithstanding anything herein to the contrary, the Administrator will make such adjustments to an Award required by Section 25102(o) of the California Corporations Code to the extent the Company is relying upon the exemption afforded thereby with respect to the Award.

10.2     Administrative Discretion.

(a)     In the event of a merger of the Company with or into another corporation or other entity or an Acquisition, the Administrator, in its sole discretion, and on such terms and conditions as it deems appropriate, either by the terms of the Award or by action taken prior to the occurrence of such transaction or event and either automatically or upon the Holder's request, is hereby authorized to take any one or more of the following actions whenever the Administrator determines that such action is appropriate in order to prevent dilution or enlargement of the benefits or potential benefits intended by the Company to be made available under the Plan or with respect to any Award granted or issued under the Plan or to facilitate such transaction or event:

(i)     To provide for either the purchase of any such Award or Restricted Shares for an amount of cash equal to the amount that could have been obtained upon the exercise or realization of the Holder's rights had such Award been currently exercisable or payable or fully vested, or the replacement of such Award with other rights or property selected by the Administrator in its sole discretion;

(ii)     To provide that such Award shall be exercisable or vested as to all Shares covered thereby, notwithstanding anything to the contrary in the Plan or the provisions of such Award;

(iii)     To provide that such Award be assumed by the successor or survivor corporation, or a parent or subsidiary thereof, or shall be substituted for by similar options, rights or awards covering the shares of the successor or survivor corporation, or a parent or subsidiary thereof, with appropriate adjustments as to the number and kind of Shares and prices;

FF00000351

(iv)     To make adjustments in the number and type of Ordinary Shares (or other securities or property) subject to outstanding Awards and/or in the terms and conditions of (including the grant or exercise price), and the criteria included in, outstanding Awards or Awards which may be granted in the future; or

(v)     To provide that immediately upon the consummation of such event, such Award shall terminate; provided, that for a specified period of time prior to such event, such Award shall be fully vested and exercisable as to all Shares covered thereby, notwithstanding anything to the contrary in the Plan or the provisions of such Award Agreement.

(b)     Subject to limitations set forth in the Plan, the Administrator may, in its sole discretion, include such further provisions and limitations in any Award Agreement or certificate, as it may deem appropriate.

(c)     Notwithstanding the terms of Section 10.2 above, if Company undergoes an Acquisition, then any surviving corporation or entity or acquiring corporation or entity, or affiliate of such corporation or entity, may assume any Award outstanding under the Plan for the acquiring entity's share awards (including an award to acquire the same consideration paid to the members in the transaction described in this subsection (c), or if members were offered a choice of consideration, the type of consideration chosen by the holders of a majority of the outstanding shares) or may substitute similar share awards (including an award to acquire the same consideration paid to the members in the transaction described in this subsection (c), or if members were offered a choice of consideration, the type of consideration chosen by the holders of a majority of the outstanding shares) for those outstanding under the Plan. In the event any surviving corporation or entity or acquiring corporation or entity in an Acquisition, or affiliate of such corporation or entity, does not assume an Award or does not substitute similar share or cash awards for those outstanding under the Plan, then with respect to (i) Awards held by participants in the Plan whose status as a Service Provider has not terminated prior to such event, the vesting of such Awards shall be accelerated and made fully exercisable and all restrictions thereon shall lapse prior to the closing of the Acquisition, and (ii) all Awards outstanding under the Plan shall be terminated if not exercised prior to the closing of the Acquisition.

(d)     The existence of the Plan, any Award or Award Agreement hereunder shall not affect or restrict in any way the right or power of Company or the members of Company to make or authorize any adjustment, recapitalization, reorganization or other change in Company's capital structure or its business, any merger or consolidation of Company, any issue of shares or of options, warrants or rights to purchase shares or of bonds, debentures, preferred or prior preference shares, whose rights are superior to or affect the Class A Ordinary Shares or the rights thereof, or which are convertible into or exchangeable for Class A Ordinary Shares, or the dissolution or liquidation of Company, or any sale or transfer of all or any part of its assets or business, or any other corporate act or proceeding, whether of a similar character or otherwise.

11.     **AWARD AGREEMENT/AWARD RESTRICTIONS**. Delivery of Shares

issued pursuant to Awards under this Plan together with any rights, securities or additional shares that have been received pursuant to a share dividend, share split, reorganization or other transaction that has been received as a result of an Award are conditioned on the execution by the Holder of the Award Agreement. Grants of Awards and the issuance of Shares pursuant to Awards under this Plan shall be subject to the restrictions set forth in the Award Agreement, including a lock-up, a right of first refusal, a drag-along right, and a requirement to sign any documents reasonably required of a member at or prior to the time of exercise, including, but not limited to, any then in effect voting agreement or co-sale agreement and a Deed of Undertaking in substantially the form attached to this Plan as Exhibit A.

12.    **NON-TRANSFERABILITY OF AWARDS.** No Award granted under this Plan may be directly or indirectly sold, pledged, assigned, hypothecated, transferred, disposed of or encumbered in any manner whatsoever, other than by will or by the laws of descent or distribution prior to vesting and exercise (if applicable) under the terms of the Award and may be exercised, during the lifetime of the Service Provider, only by the Service Provider. Notwithstanding the forgoing, the Administrator may in its discretion grant Non-qualified Share Options that may be transferred by instrument to an inter vivos or testamentary trust in which the Options are to be passed to beneficiaries upon the death of the trustor (settlor) or by gift or pursuant to domestic relations orders to any "Immediate Family Member" (as defined below) of the optionee to the extent permissible under Rule 701 under the Securities Act. "Immediate Family Member" means any child, stepchild, grandchild, parent, stepparent, grandparent, spouse, former spouse, sibling, niece, nephew, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law (including adoptive relationships), any person sharing the optionee's household (other than a tenant or employee), a trust in which these persons have more than fifty percent (50%) of the beneficial interest, a foundation in which these persons (or the optionee) control the management of assets, and any other entity in which these persons (or the optionee) own more than fifty percent (50%) of the voting interests.

13.    **RESTRICTIVE LEGENDS**. Any certificates representing the Shares issued upon exercise of Options granted pursuant to this Plan shall bear appropriate legends giving notice of applicable restrictions on transfer under Applicable Laws and the Plan.

14.    **NO RIGHT TO CONTINUED EMPLOYMENT OR SERVICE.** Nothing in this Plan shall confer upon any Service Provider any right with respect to continuation of employment by or consultancy to the Company, nor shall it interfere in any way with the Company's or any Subsidiary's right to terminate any Service Provider's employment or consultancy at any time, with or without cause and with or without prior notice.

15.    **TERM OF PLAN**. The Plan became effective upon its initial adoption by the Board of Directors of FF Global and shall continue in effect until it is terminated under Section 17. No Award may be issued under the Plan after the tenth (10th) anniversary of the earlier of (i) the date upon which the Plan was adopted by the Board of Directors of FF Global or (ii) the date the Plan was approved by the members of FF Global.

16.    **TIME OF GRANTING OF AWARDS.** The date of grant of an Award shall,

for all purposes, be the date on which the Administrator makes the determination granting such Award, or such other date as is determined by the Administrator. Notice of the determination shall be given to each Service Provider to whom an Award is so granted within a reasonable time after the date of such grant.

17.      **AMENDMENT AND TERMINATION OF THE PLAN.**

      17.1     <u>Amendment and Termination</u>. The Board may at any time wholly or partially amend, alter, suspend or terminate the Plan. However, without approval of the Company's members given within twelve (12) months before or after the action by the Board, no action of the Board may, except as provided in Section 9, increase the limits imposed in Section 3 on the maximum number of Shares which may be issued under the Plan or extend the term of the Plan under Section 15.

      17.2     <u>Member Approval</u>. The Board shall obtain member approval of Company for any Plan amendment to the extent necessary and desirable to comply with Applicable Laws.

      17.3     <u>Effect of Amendment or Termination</u>. No amendment, alteration, suspension or termination of the Plan shall impair the rights of any Holder, unless mutually agreed otherwise between the Holder and the Administrator, which agreement must be in writing and signed by the Holder and the Company; <u>provided however</u>, that the foregoing shall not limit the authority of the Administrator to exercise all authority and discretion conveyed to it herein or in any Award Agreement. Termination of the Plan shall not affect the Administrator's ability to exercise the powers granted to it hereunder with respect to Awards granted under the Plan prior to the date of such termination.

18.      **MEMBER APPROVAL**. The Plan was submitted and approved by FF Global's members within twelve (12) months after the date that FF Global's Board of Directors initially adopted the Plan.

19.      **LEAVES OF ABSENCE/TRANSFER BETWEEN LOCATIONS.** Unless the Administrator provides otherwise, vesting of Awards granted hereunder will be suspended during any unpaid leave of absence. A Holder will not cease to be an Employee in the case of (i) any leave of absence approved by the Company or (ii) transfers between locations of the Company or between the Company and a Related Entity. For purposes of Incentive Share Options, no such leave may exceed three (3) months, unless reemployment upon expiration of such leave is guaranteed by statute or contract. If reemployment upon expiration of a leave of absence approved by the Company is not so guaranteed, then six (6) months following the first (1st) day of such leave, any Incentive Share Option held by the Holder will cease to be treated as an Incentive Share Option and will be treated for tax purposes as a Non-qualified Share Option.

20.      **TAX WITHHOLDING.** Prior to the delivery of any Shares or cash pursuant to an Award (or exercise thereof), the Company will have the power and the right to deduct or withhold, or require a Holder to remit to the Company, an amount sufficient to satisfy Federal, state, local, foreign or other taxes (including the Holder's FICA obligation) required to be withheld with respect to such Award (or exercise thereof).

CONFIDENTIAL

The Administrator, in its sole discretion and pursuant to such procedures as it may specify from time to time, may permit a Holder to satisfy such tax withholding obligation, in whole or in part by such methods as the Administrator shall determine, including, without limitation, (i) paying cash, (ii) electing to have the Company withhold otherwise deliverable Shares having a fair market value equal to the minimum statutory amount required to be withheld, (iii) delivering to the Company already-owned Shares having a fair market value equal to the statutory amount required to be withheld, provided the delivery of such Shares will not result in any adverse accounting consequences, as the Administrator determines in its sole discretion, (iv) selling a sufficient number of Shares otherwise deliverable to the Participant through such means as the Administrator may determine in its sole discretion (whether through a broker or otherwise) equal to the amount required to be withheld, or (v) any combination of the foregoing methods of payment. The amount of the withholding requirement will be deemed to include any amount which the Administrator agrees may be withheld at the time the election is made, not to exceed the amount determined by using the maximum federal, state or local marginal income tax rates applicable to the Holder with respect to the Award on the date that the amount of tax to be withheld is to be determined. The fair market value of the Shares to be withheld or delivered will be determined as of the date that the taxes are required to be withheld.

21.   **INABILITY TO OBTAIN AUTHORITY.** The inability of the Company to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and sale of any Shares hereunder, shall relieve the Company of any liability in respect of the failure to issue or sell such Shares as to which such requisite authority shall not have been obtained.

22.   **RESERVATION OF SHARES.** Company during the term of this Plan, shall at all times reserve and keep available such number of Shares as shall be sufficient to satisfy the requirements of the Plan.

23.   **GOVERNING LAW.** The validity and enforceability of this Plan shall be governed by and construed in accordance with the laws of the state of California without regard to otherwise governing principles of conflicts of law.

\* \* \* \* \* \* \*

FF00000355

ANNEX A

Vesting Schedule

| Total Stock Options Offered | Granting Schedule | Vest Term | Vest Schedule |
|---|---|---|---|
| 0 – 100,000 | One-time granting | 4-year | A |
| 100,001 – 500,000 | 60%-20%-10%-10% | 4-year on each, with staggered commencement 1, 2 and 3 years out on tranches 2, 3, 4 | Broken Into 4 Tranches<br>1) A<br>2) B<br>3) B<br>4) B |
| 500,001 – 1,000,000 | 50%-20%-20%-10% | 4-year on each, with staggered commencement 1, 2 and 3 years out on tranches 2, 3, 4 | Broken Into 4 Tranches<br>1) A<br>2) B<br>3) B<br>4) B |
| 1,000,001 – above | 40%-20%-20%-20% | 4-year on each, with staggered commencement 1, 2 and 3 years out on tranches 2, 3, 4 | Broken Into 4 Tranches<br>1) A<br>2) B<br>3) B<br>4) B |

CONFIDENTIAL

# EXHIBIT 4

## Crisp, Kevin

| | |
|---|---|
| **From:** | Amiad Kushner <akushner@seidenlawgroup.com> |
| **Sent:** | Friday, January 29, 2021 5:36 AM |
| **To:** | Robert Marticello |
| **Cc:** | Lei Lei Wang Ekvall; Michael Simon; Benjamin Taylor; Jake Nachmani; Nathaniel Francis; Robert Seiden; Steven Seiden; Jacob Jou |
| **Subject:** | RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION |

Bobby,

Thanks, we saw the announcement.  We are reviewing.  —Amiad

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Thursday, January 28, 2021 5:36 PM
**To:** Amiad Kushner <akushner@seidenlawgroup.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlawgroup.com>; Nathaniel Francis <nfrancis@seidenlawgroup.com>; Robert Seiden <rseiden@seidenlegal.com>; Steven Seiden <sseiden@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

In case you did not already see the public announcement:  https://www.reuters.com/article/us-faraday-future-m-a-property-solutions/electric-vehicle-firm-faraday-future-to-go-public-via-34-billion-spac-deal-idUSKBN29X15T



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

| | |
|---|---|
| Main | 714 445-1000 |
| Direct | 714 445-1023 |
| Cell | 714 932-4669 |
| Email | rmarticello@swelawfirm.com |




Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Wednesday, January 20, 2021 6:58 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Nathaniel Francis

<nfrancis@seidenlawgroup.com>; Robert Seiden <rseiden@seidenlegal.com>; Steven Seiden <sseiden@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION


Bobby: any update? Thanks,

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Amiad Kushner
**Sent:** Sunday, January 10, 2021 4:53 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Nathaniel Francis <nfrancis@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Steven Seiden <sseiden@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION


Bobby,

It's now been several months since Faraday agreed to set up a call between its investment bankers and our financial advisors to discuss Faraday's contemplated IPO, but still no call has been scheduled. In the meantime, the media are reporting that Faraday is in talks to go public in a SPAC transaction (see, e.g., below).  It's important that we understand the status, particularly given that Faraday is required to provide Mr. Liu with a 2% equity interest in the company under the terms of his employment agreement. Please advise.


https://www.bloomberg.com/news/articles/2021-01-10/faraday-future-is-said-in-talks-to-go-public-via-spac-merger


**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Monday, January 4, 2021 9:42 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Nathaniel Francis <nfrancis@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Hey Amiad,

I hope you enjoyed the holidays.  I will follow up with Faraday and circle back with you.



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main    714 445-1000
Direct  714 445-1023
Cell    714 932-4669
Email   rmarticello@swelawfirm.com




Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Wednesday, December 16, 2020 3:18 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Nathaniel Francis <nfrancis@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

I'm following up on the below.  When can we expect this call to be set up?  Thanks, Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

**From:** Amiad Kushner
**Sent:** Friday, November 20, 2020 2:59 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Nathaniel Francis <nfrancis@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Thanks for facilitating this call.  Please see the below responses to your questions.  Please send us some proposed times for this call.  Regards, Amiad

(1) On our side, the participant on the call will be Dan Hirsch, a SPAC specialist.  https://finledger.com/2020/10/07/financial-services-execs-launch-cascade-a-fintech-focused-spac/

(2) Below is an outline of the anticipated questions and scope:

    a)   Details about the SPAC, including:

        i.   Who are the parties involved
        ii.   What stage are the negotiations
        iii.   What is the contemplated structure (confirm it would be a stock deal, not an asset deal)
        iv.   What is the current timeline (given that this is taking longer than they claim to have anticipated)

    b)   Details about how stock would be affected by the SPAC, including:

        i.   Valuation
        ii.   Effect of subordination in light of existing capital structure (including most recent debt round)

    c)   Details about the company's assets, including:

        i.   Which assets are secured by the lenders
        ii.   What is the story with the recent PR blitz to hype the value of the IP portfolio

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Wednesday, November 11, 2020 7:19 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

Faraday is open to setting up a call between your client's advisors and one of its bankers.  Can you (1) tell us who would participate in the call on your client's behalf, and (2) provide an outline of the scope of the questions to be asked or provide a list of the questions?  This will help us identify the right person who can respond to the questions.



**SMILEY | WANG-EKVALL**
Insolvency. Real Estate. Business Litigation.

Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main    714 445-1000
Direct  714 445-1023
Cell    714 932-4669
Email   rmarticello@swelawfirm.com





Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Thursday, November 5, 2020 7:38 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Do you have any update re: arranging for our advisers to speak confidentially with professionals working for Faraday on the contemplated SPAC?

Thanks.

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

**From:** Amiad Kushner
**Sent:** Tuesday, October 13, 2020 3:02 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

OK - what is the best number to reach you on?

**Amiad Kushner**
Partner, Head of Litigation

Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Tuesday, October 13, 2020 2:45 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

I have a call at 2:00, so let's do 1:00 p.m. (PST).



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main   714 445-1000
Direct 714 445-1023
Cell   714 932-4669
Email  rmarticello@swelawfirm.com

 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Tuesday, October 13, 2020 6:21 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Can I call you at 4 or 5 pm EST today (1 or 2 pm PST)?  I might ask Jake and/or Ben to join.

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485

www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Monday, October 12, 2020 11:24 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Hey Amiad,

Give me call when you have a chance on this.  Also, we have a status report due Thursday.





Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Wednesday, September 30, 2020 2:34 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** Re: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Thanks, that is very useful.  Would it be possible for our advisers to speak on a confidential basis with professionals (such as investment bankers) who may be working for Faraday on the contemplated SPAC?  This would facilitate our ability to respond meaningfully on settlement.

Amiad Kushner
Partner, Head of Litigation
Seiden Law Group LLP

469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Tuesday, September 29, 2020, 9:49 PM
**To:** Amiad Kushner
**Cc:** Lei Lei Wang Ekvall; Michael Simon; Benjamin Taylor; Jake Nachmani
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

This email and the information contained herein is "Confidential Material" under the Stipulated Protective Order.  My
understanding is that Faraday continues to move forward with the contemplated SPAC transaction, with an anticipated
closing date of early 2021.



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main    714 445-1000
Direct  714 445-1023
Cell    714 932-4669
Email   rmarticello@swelawfirm.com

 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged
information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you
have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your
system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal
Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication
(including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting,
marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Monday, September 21, 2020 6:43 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor
<btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** Re: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Thanks for sending these materials.  We confirm that the stipulated protective order is binding.

Regarding the SPAC plan that is referred to in these materials, are you able to send any further updates?

Thanks,

Amiad

Amiad Kushner
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Tuesday, September 15, 2020, 11:03 PM
**To:** Amiad Kushner
**Cc:** Lei Lei Wang Ekvall; Michael Simon; Benjamin Taylor; Jake Nachmani
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION


Amiad,

With the understanding that the stipulated protective order will be treated as, and is, binding, please see the attached documents.  Both have been marked as "confidential" and are "Confidential Material" pursuant to the attached stipulation.



  

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Monday, September 14, 2020 11:20 AM
**To:** Michael Simon <msimon@swelawfirm.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Jake Nachmani <jnachmani@seidenlegal.com>

**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Robert Marticello <rmarticello@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

The proposed order is fine with us.  Thank you for drafting this.

Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Michael Simon <msimon@swelawfirm.com>
**Sent:** Monday, September 14, 2020 2:09 PM
**To:** Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Amiad Kushner <akushner@seidenlegal.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Robert Marticello <rmarticello@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Gentlemen,

We previously lodged the stipulation re protective order (in addition to filing it) for the Judge's signature; however, on Friday, someone at the court, presumably the courtroom deputy, rejected it because they viewed it as a stipulation rather than an order that the Judge could sign.  In order to fix this, we intend to lodge the attached proposed order approving the stipulation.

Best,

Michael

  

**Michael Simon**
Attorney
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA  92626
Telephone: 714.445.1000
Facsimile: 714.445.1002
Email: msimon@swelawfirm.com
Website     V-Card

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Robert Marticello
**Sent:** Wednesday, September 9, 2020 2:32 PM
**To:** Benjamin Taylor <btaylor@taylorlawfirmpc.com>; Amiad Kushner <akushner@seidenlegal.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

I was wondering the same thing.  Let us take a look at it.  We will let you know if we need a new signature.



 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Benjamin Taylor [mailto:btaylor@taylorlawfirmpc.com]
**Sent:** Wednesday, September 9, 2020 2:30 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>; Robert Marticello <rmarticello@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

See attached.  I believe the clerk will require a separate proposed order, but you can submit this and see if they'll accept it with the order in the stipulation.

Benjamin Taylor
The Taylor Law Firm
1880 Century Park East, Suite 714

Los Angeles, CA 90067
Telephone: (310) 201-7600
Fax: (310) 201-7601
btaylor@taylorlawfirmpc.com
www.taylorlawfirmpc.com

---

**From:** Amiad Kushner <akushner@seidenlegal.com>
**Sent:** Wednesday, September 9, 2020 1:03 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Benjamin Taylor <btaylor@taylorlawfirmpc.com>
**Cc:** Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** FW: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Thanks, this is fine with us -- copying Ben to assist with signing/filing.

In the interest of getting this moving, can you please send us the settlement information you are prepared to provide? We will treat the stipulation as binding even if not yet approved by the Court.

Regards,

Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Wednesday, September 9, 2020 3:25 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Jake Nachmani <jnachmani@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

Attached is the clean SPO for signature.  I accepted the changes to the prior version I sent to you and I did not make any other changes.



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California  92626

Main    714 445-1000
Direct   714 445-1023
Cell     714 932-4669
Email   rmarticello@swelawfirm.com




Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Robert Marticello
**Sent:** Thursday, September 3, 2020 7:42 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Hey Amiad,

My client signed off on the revised version.  I will have it put in final for execution and we will get it filed.



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California  92626

Main    714 445-1000
Direct   714 445-1023
Cell     714 932-4669
Email   rmarticello@swelawfirm.com




Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Wednesday, September 2, 2020 3:20 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>

13

**Cc:** Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Yes, this accurately reflects our discussion.  Thanks, Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Wednesday, September 2, 2020 3:46 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad, attached is a redline of the SPO.  I have not yet discussed this with my client.  I first wanted to confirm with you that this accurately reflects our discussion yesterday.  Let me know if this works with you and I will send to my client for approval.  Thanks.



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main    714 445-1000
Direct   714 445-1023
Cell     714 932-4669
Email    rmarticello@swelawfirm.com

 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Tuesday, September 1, 2020 10:49 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Sure, no problem

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Tuesday, September 1, 2020 1:48 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Can we push our call to 11:15 a.m.?  I have a sale closing I am trying to finish up and we have a 11:00 a.m. wire deadline.



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California  92626

Main     714 445-1000
Direct   714 445-1023
Cell     714 932-4669
Email    rmarticello@swelawfirm.com

 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Saturday, August 29, 2020 8:36 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

How about Monday or Tuesday at 9:30 am to 1:30 pm your time on either day?  Thanks, Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485

www.seidenlegal.com

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Friday, August 28, 2020 7:02 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

No, it doesn't.  If you want to set up a call next week to discuss, give me a few dates and times that work for you.



 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Friday, August 28, 2020 3:56 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

We do not follow your email below; let me attempt to clarify how we view this.

This stipulation is limited to the exchange of settlement materials.  It does not govern discovery in the litigation, or what documents may be disclosed in the litigation or filed in the litigation.  To the extent there is any issue regarding what my client can or cannot disclose in the litigation, we should deal with that with a standard litigation protective order (which we are happy to discuss).

That said, are we debating anything real or is this purely hypothetical? This stipulation is intended to facilitate the exchange of information regarding the value of Faraday's equity, solely for settlement purposes.  We are talking about new information that my client does not have.  If you are providing new documents, there would be no risk of my client asserting that such documents are not

confidential because he already had them.  On the flip side, if you give us documents that we already have, it would make no sense to label them as "confidential" settlement materials.

Does this explanation obviate your objection to our last markup?  Perhaps we can get past this by talking on the phone.

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Thursday, August 27, 2020 10:57 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

This is not a typical protective order.  Your client was an employee and may have received information in that capacity.  He should not be allowed to disclose confidential information because he previously may have learned of the information solely by virtue of his status as an employee.  Moreover, the information to be provided is not information your client is entitled to via discovery.  Rather, we are providing this information with no obligation because your client requested info to evaluate the settlement offer.



 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Thursday, August 27, 2020 1:31 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>

**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

We accepted all of your edits – with the exception of several words deleted in paragraph 3 (see attached redline, re-inserting that language).  This is fairly standard language which would prevent you from claiming as "confidential" documents that Mr. Liu already has (I note this exact language appears in paragraph 3 of the model protective order used by ND Cal: https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.pdf).

Please let me know if our markup is acceptable.

Regards,

Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Tuesday, August 25, 2020 4:22 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>; Michael Simon <msimon@swelawfirm.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

Attached is a redline accepting your changes and making a few additional edits.  We accepted the majority of your changes.  Let me know if the attached works.  Thanks.







Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Saturday, August 22, 2020 6:56 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>; Robert Seiden <rseiden@seidenlegal.com>; Andrew Sklar <asklar@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Please find attached our comments on the draft protective order and proposed order (these are subject to client review).  Our main comment is to make this "mutual," so that it covers information that we may provide to you for settlement purposes.

Regards,

Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1914
Mobile: (646) 275-2485
www.seidenlegal.com

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Tuesday, August 18, 2020 7:46 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

The request for information is extremely broad.  It is also difficult to understand why your client needs to assess the value of the options when he wants *more* options.  When paired with the requests for production, it appears that Mr. Liu is merely attempting to meddle in Faraday's affairs as a litigation strategy.  Nevertheless, in an effort to move the parties towards a settlement, we are prepared to provide some information.  However, it must be on a strictly confidential basis as you suggest below.  To this end, attached is a proposed stipulated protective order.  Please let us know if this is acceptable.



**Robert S. Marticello**
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main    714 445-1000
Direct   714 445-1023
Cell      714 932-4669
Email    rmarticello@swelawfirm.com

 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Wednesday, August 5, 2020 10:08 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** Re: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

<u>**FOR SETTLEMENT PURPOSES ONLY**</u>

Bobby,

I write further to our settlement correspondence.  As I indicated, our client believes that the terms of the offer you communicated are inadequate.  For example, the offer includes very minimal percentages of what Mr. Liu is entitled to under his employment agreement alone (500k cash versus $6.4 million in guaranteed salary and bonus required under the agreement, excluding interest; 3 million options versus Mr. Liu's entitlement of 20 million options).

However, in order to move the process forward, we intend to make a counter-offer.  Given that Faraday and its affiliates are privately owned entities in which we have very limited visibility, is difficult for us to assess the value of the 3 million Faraday options you have offered (and, by extension, what would be a fair and reasonable counter offer for our client).  As you can appreciate, the value of Faraday equity (and the likelihood of any IPO) are important drivers of any settlement.

Under the circumstances, as the next step in the settlement process, we would request that you share with us (and/or our advisors) additional information on a strictly confidential basis, which would help us to gain insight into the value of Faraday equity.  Below is a list of information that would be helpful to us.

We are happy to have a call to discuss further.

Regards,

Amiad

1. Annual financials (audited, if possible) going back 5 years (or as far back as possible)
2. Any management generated business plans created in last 3 years
3. Any information regarding the potential plans to go public
4. List of largest investors that make of 90% of ownership
5. Any information about production sites
6. Any information to verify production capacity
7. Any examples of executed sales contracts or letters of intent
8. Any information about existing debt on the company (including loan agreements)
9. Any information about any liens against any assets of the company
10. Any examples of secondary sales of company stock
11. Any recent valuation of Faraday and/or its affiliates

**Amiad Kushner**

Partner, Head of Litigation

Seiden Law Group LLP

469 Seventh Avenue, 5th Fl.

New York, NY 10018
Office: (646) 766-1914

Mobile: 646-275-2485

www.seidenlegal.com

---

**From:** Amiad Kushner <akushner@seidenlegal.com>
**Sent:** Thursday, July 30, 2020 10:37 AM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Daniel.Anziska@troutman.com <Daniel.Anziska@troutman.com>; Paul.Gale@troutman.com <Paul.Gale@troutman.com>; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani <jnachmani@seidenlegal.com>
**Subject:** Re: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

I can't give a definite date, but if we decide to make a counter we will likely do it in the next week or so.

**Amiad Kushner**

Partner, Head of Litigation

Seiden Law Group LLP

469 Seventh Avenue, 5th Fl.

New York, NY 10018
Office: (646) 766-1914

Mobile: 646-275-2485

www.seidenlegal.com

---

**From:** Robert Marticello <rmarticello@swelawfirm.com>
**Sent:** Wednesday, July 29, 2020 10:39 PM
**To:** Amiad Kushner <akushner@seidenlegal.com>
**Cc:** Daniel.Anziska@troutman.com <Daniel.Anziska@troutman.com>; Paul.Gale@troutman.com
<Paul.Gale@troutman.com>; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake Nachmani
<jnachmani@seidenlegal.com>
**Subject:** RE: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Amiad,

I appreciate the update.  Do you have a time estimate on when we can potentially expect a counter?



Robert S. Marticello
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626

Main    714 445-1000
Direct  714 445-1023
Cell    714 932-4669
Email   rmarticello@swelawfirm.com

 

Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged
information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you
have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your
system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal
Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication
(including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting,
marketing or recommending to anyone any transaction or matter addressed herein.

---

**From:** Amiad Kushner [mailto:akushner@seidenlegal.com]
**Sent:** Wednesday, July 29, 2020 5:17 PM
**To:** Robert Marticello <rmarticello@swelawfirm.com>
**Cc:** Daniel.Anziska@troutman.com; Paul.Gale@troutman.com; Lei Lei Wang Ekvall <lekvall@swelawfirm.com>; Jake
Nachmani <jnachmani@seidenlegal.com>
**Subject:** Re: Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Bobby,

Thank you for communicating this settlement proposal, which we have discussed with our client.   While our client believes the proposed terms are inadequate, we are considering whether to make a counter-offer.   We will be in touch once we have had an adequate opportunity to do further diligence on our end.

Regards,

Amiad


**Amiad Kushner**

Partner, Head of Litigation

Seiden Law Group LLP

469 Seventh Avenue, 5th Fl.

New York, NY 10018
Office: (646) 766-1914

Mobile: 646-275-2485

[www.seidenlegal.com](www.seidenlegal.com)

---

**From:** Robert Marticello <[rmarticello@swelawfirm.com](mailto:rmarticello@swelawfirm.com)>
**Sent:** Monday, July 27, 2020 8:29 PM
**To:** Amiad Kushner <[akushner@seidenlegal.com](mailto:akushner@seidenlegal.com)>
**Cc:** [Daniel.Anziska@troutman.com](mailto:Daniel.Anziska@troutman.com) <[Daniel.Anziska@troutman.com](mailto:Daniel.Anziska@troutman.com)>; [Paul.Gale@troutman.com](mailto:Paul.Gale@troutman.com) <[Paul.Gale@troutman.com](mailto:Paul.Gale@troutman.com)>; Lei Lei Wang Ekvall <[lekvall@swelawfirm.com](mailto:lekvall@swelawfirm.com)>
**Subject:** Liu v. Jia - INADMISSIBLE AND CONFIDENTIAL SETTLEMENT COMMUNICATION

Hello Amiad,

Please see attached.



**Robert S. Marticello**
Attorney at Law

3200 Park Center Drive, Suite 250
Costa Mesa, California  92626

Main     714 445-1000
Direct    714 445-1023
Cell      714 932-4669
Email    rmarticello@swelawfirm.com





Confidentiality Notice: This communication (including any attachments) is only for the use of the intended recipient and may contain confidential and/or privileged information. If any reader of this communication is not the intended recipient, then any use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, then please immediately notify the sender by return email, and delete this communication and all copies from your system. Thank you.

IRS Circular 230 Disclosure: Only formal opinions satisfying specific requirements may be relied on for the purpose of avoiding certain penalties under the Internal Revenue Code. This communication is not intended as an opinion for purposes of satisfying any such requirements, and any advice contained in this communication (including any attachments) cannot be used or relied upon for the purpose of avoiding penalties under the Internal Revenue Code, or for the purpose of promoting, marketing or recommending to anyone any transaction or matter addressed herein.