ALAN J. KESSEL, Bar No. 130707
alan.kessel @troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone: 949.622.2700
Facsimile:  949.622.2739

Attorneys for Defendants
SMART KING LTD., JIAWEI WANG, and CHAOYING DENG
and Defendant and Counterclaimant FARADAY&FUTURE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,<br><br>　　　　Defendants. | Case No.  2:20-cv-08035-SVW-JPR<br><br>Honorable Stephen V. Wilson<br><br>**OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO DISMISS DEFENDANT AND COUNTERCLAIMANT FARADAY&FUTURE INC.'S SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS FARADAY&FUTURE INC. AND SMART KING LTD.'S AFFIRMATIVE DEFENSES, AND FOR SANCTIONS**<br><br>Date:　　May 3, 2021<br>Time:　　1:30 p.m.<br>Place:　　Courtroom 10A |
| AND RELATED COUNTERCLAIM. | |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

115167695

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.     STATEMENT OF FACTS ............................................................. 5

    A.   The Parties and Liu's Claims ............................................... 5

    B.   The Employment Agreement and Liu's Ethical Violations ................ 5

    C.   Liu Fails to Perform His Contractual Obligations as FF's Global General Counsel ............................................................... 5

III.    LEGAL STANDARD ................................................................. 6

IV.     NO BASIS EXISTS TO DISMISS ANY OF FF'S CLAIMS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) ........................... 7

    A.   FF's Breach of Fiduciary Duty and Rescission Claims Based on Liu's Violation of the Rules of Professional Conduct are Not Subject to Dismissal ......................................................... 7

        1.   Liu's Ethical Violations Legally Support the SACC's Breach of Fiduciary Duty and Rescission Claims ................. 7

        2.   The SACC Plainly Alleges Liu's Ethical Violations ............... 9

    B.   FF's Constructive Fraud Claim is Well-Pleaded ........................ 13

    C.   FF's Rescission Based on Unconscionability Claim is Well-Pleaded ...................................................................... 15

    D.   FF's Breach of the Employment Agreement and Breach of Fiduciary Duty Claims Are Plausibly Pleaded ......................... 18

    E.   FF's UCL Claims are Well-Pleaded ..................................... 20

    F.   Liu Asserts No Basis to Dismiss FF's Declaratory Judgment Claim. ........................................................................ 20

V.      FF'S AFFIRMATIVE DEFENSES ARE SUFFICIENTLY PLED ............ 20

VI.     LIU'S REQUEST FOR SANCTIONS IS BASELESS ......................... 21

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alderman v. Hamilton*,
  205 Cal. App. 3d 1033 (1988) .................................................................... 17

*Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP*,
  2020 WL 2833686 (S.D.N.Y. May 31, 2020) ............................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 7

*BGJ Assocs., LLC v. Wilson*,
  113 Cal. App. 4th 1217 (2003) ................................................... 2, 8, 16, 17

*Brown v. Blackbaud, Inc.*,
  2019 WL 4509203 (C.D. Cal. July 25, 2019) ............................................ 19

*Carter v. Telecare Corp.*,
  2019 WL 8989869 (C.D. Cal. Nov. 4, 2019) ............................................. 23

*Cervantes v. City of San Diego*,
  5 F.3d 1273 (9th Cir. 1993) ......................................................................... 7

*In re Matter of Cooperman*,
  83 N.Y.2d 465 (1994) ................................................................................. 18

*David Welch Co. v. Erksine & Tulley*,
  203 Cal. App. 3d 884 (1988) ........................................................................ 9

*Day v. Rosenthal*,
  170 Cal. App. 3d 1125 (1985) ...................................................................... 9

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ...................................................................... 16

*Deutsch-Hollandische Tabakgesellschaft Mbh & Co., Kg v.
  Trendsettah USA, Inc.*,
  2017 WL 7080262 (C.D. Cal. June 16, 2017) ............................................ 23

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- ii -

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Fair v. Bakhtiari*,
195 Cal. App. 4th 1135 (2011)..........................................................9

*Ferguson v. Yaspan*,
233 Cal. App. 4th 676 (2014)..................................................8, 9, 20

*Fifty-Six Hope Rd. v. Jammin Java Corp.*,
2017 WL 2457487 (C.D. Cal. Jan. 25, 2017).....................................19

*Fletcher v. Davis*,
33 Cal. 4th 61 (2004)........................................................................13

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011)................................................8

*Gallagher v. Capella Educ. Co.*,
2019 WL 8333532 (D. Or. Dec. 23, 2019).........................................21

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*,
2014 WL 4187979 (C.D. Cal. Aug. 22, 2014).....................................23

*In re Goldman*,
2010 WL 11526899 (C.D. Cal. June 3, 2010).....................................19

*Greene v. Greene*,
56 N.Y.3d 86 (1982)..................................................................14, 15

*Hrothgar Invs., Ltd. v. Houser*,
2015 WL 5853634 (N.D. Cal. Aug. 18, 2015).....................................21

*Intn'l Aero Prods., LLC v. Aero Adv. Paint Tech., Inc.*,
325 F. Supp.3d 1078 (C.D. Cal. Aug. 28, 2018).................................24

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)............................................................7, 8

*Mack v. S. Bay Beer Distrib.*
798, F.2d 1279 (9th Cir. 1986)............................................................7

*Mayhew v. Benninghoff*,
53 Cal. App. 4th 1365 (1997)..............................................................9

- iii -

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mirabito v. Liccardo*,
   4 Cal. App. 4th 41 (1992) .................................................................. 2, 9

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ................................................................ 21

*Odish v. Cognitive Code Corp.*,
   2015 WL 11347592 (C.D. Cal. May 27, 2015) ................................ 10, 12, 14

*Parada v. Superior Ct.*,
   176 Cal. App. 4th 1554 (2009) .............................................................. 18

*Philips N. Am. LLC v. Garmin Int'l, Inc.*,
   2019 WL 9512698 (C.D. Cal. Nov. 25, 2019) ......................................... 7

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) .......................................................................... 19

*Plattsburgh Hous. Auth. v. Cantwell*,
   54 Misc.3d 1216(A), 54 N.Y.S. 3d 612 (N.Y. Sup. Ct. 2017) ................ 10

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*,
   662 F.2d 641 (9th Cir. 1981) .................................................................. 8

*Powerturbine, Inc. v. Intn'l Aerospace Group, Corp.*,
   2015 WL 13357513 (C.D. Cal. Jan. 7, 2015) ........................................ 21

*Priester v. Citizens Nat'l Tr. & Sav. Bank of L.A.*,
   131 Cal. App. 2d 314 (1955) .................................................................. 9

*R.H. v. Cnty. of San Bernardino*,
   2019 WL 10744836 (C.D. Cal. Sept. 25, 2019) ..................................... 23

*Ramirez v. Sturdevant*,
   21 Cal. App. 4th 904 (1994) .................................................................. 17

*RePET, Inc. v. Zhao*,
   2016 WL 11634745 (C.D. Cal. Sept. 2, 2016) ....................................... 21

*Rhodes v. Buechel*,
   N.Y.L.J., Mar. 18, 1998 (N.Y. Sup. Ct. 1998) ...................................... 13

- iv -

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rockefeller v. Perkins Coie LLP*,
  2010 WL 11672230 (C.D. Cal. Sept. 2, 2010) ................................................. 19

*Schlanger v. Flaton*,
  218 A.D.2d 597 (Sup. Ct. N.Y. 1995) ............................................................ 13

*Severson & Werson v. Bolinger*,
  235 Cal. App. 3d 1569 (1991) ...................................................................... 14

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg'g Corp.*,
  6 Cal. 5th 59 (2018) ........................................................................... 2, 8, 14

*Shoyer v. New Cingular Wireless Svcs., Inc.*,
  498 F.3d 976 (9th Cir. 2007) ...................................................................... 17

*Shroyer v. New Cingular Wireless Services, Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ..................................................................... 17

*In re Silverton*,
  2001 WL 664251 (Cal. Bar Ct. May 22, 2001) ......................................... 12, 13

*The 1849 Condo. Assoc., Inc. v. Bruner*,
  2010 WL 2557711 (E.D. Cal. June 21, 2010) ................................................ 15

*U.S.A. v. Comco Mgm't Corp.*,
  2009 WL 10672579 (C.D. Cal. Nov. 2, 2009) ................................................ 15

*Vega v. Specialized Loan Svc'g, LLC*,
  2020 WL 2475087 (C.D. Cal. Feb. 11, 2020) ................................................ 16

*Wayne v. Staples, Inc.*,
  135 Cal. App. 4th 466 (2006) ...................................................................... 19

*William Morris Endeavor Entm't, LLC v. Writers Guild of Am.*,
  478 F. Supp. 3d 932 (C.D. Cal. 2020) ...................................................... 3, 15

**Statutes**

Cal. Prob. Code § 16004 ............................................................................. 20

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE
DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

Cal. Rule of Prof. Cond. 3-300 ........................................................................... passim

Cal. Rule of Prof. Cond. 3-310 ................................................................................. 2, 10

Cal. Rule of Prof. Cond. 3-310(A) ............................................................................... 11

Cal. Rule of Prof. Cond. 4-200 ............................................................................. passim

Cal. Rule of Prof. Cond. 4-200(3) ................................................................................ 20

Cal. Rule of Prof. Cond. 4-200(6) ................................................................................ 20

Cal. Rule of Prof. Cond. 4-200(8) ................................................................................ 20

Cal. Rule of Prof. Cond. 4-200(9) and (10) ................................................................. 20

Cal. Rule of Prof. Cond. 4-200(11) .............................................................................. 20

Fed. R. Civ. P. 8 ........................................................................................................... 15

Fed. R. Civ. P. 9 ........................................................................................................... 15

Fed. R. Civ. P. 11 ...................................................................................................... 5, 24

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 7, 8

Fed. R. Civ. P. 12(d) ...................................................................................................... 8

Fed. R. Civ. P. 15(a)(1) ............................................................................................... 15

Fed. R. Evid. 201 ........................................................................................................... 7

C. D. Cal. L. R. 7-3 ....................................................................................... 5, 7, 22, 23

N.Y. Ethics Opinion 913, *https://nysba.org/ethics-opinion-913/* (last visited Apr. 9, 2021) ...................................................................................................... 13

N.Y. Rule of Prof. Cond. 1-7 and 1.0(j) ...................................................................... 11

N.Y. Rule of Prof. Cond. 1.5 ......................................................................... 10, 13, 14

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**TABLE OF AUTHORITIES**
(continued)

Page(s)

N.Y. Rule of Prof. Cond. 1.7 ...................................................................... 10

N.Y. Rule of Prof. Cond. 1.8 .............................................................. 10, 12

N.Y. Rule of Prof. Cond. 1.8(a) .......................................................... 12, 13

N.Y. Rule of Prof. Cond. 8.5 ...................................................................... 10

The Rules of Professional Conduct DO Apply to In-House Lawyers
   *https://www.milbank.com/images/content/2/3/23428/Business-Law-*
   *News-Part-1.pdf* (last visited Apr. 10, 2021) ....................................... 13

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE
DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The Second Amended Counterclaim ("**SACC**") filed by Faraday&Future, Inc. ("**FF**") against Hong Liu ("**Liu**") arises from and seeks to redress the ethical, legal, and contractual violations manifest in:

1.    Liu's misuse of his position as FF's trusted outside counsel to wrongfully procure and induce FF to execute an unconscionable, unfair, and unreasonable employment agreement retaining Liu as the company's Global General Counsel, awarding him grossly excessive compensation including $8 million in cash and a 2% ownership interest in FF valued at $80 million, and, among other things, containing terms providing for the immediate payment of such cash in the event of Liu's termination and in the immediate vesting of his options should a court find him liable for breach of his fiduciary duties (the "**Employment Agreement**"); and in

2.    Liu's subsequent inability and failure to perform any of his contractually required job responsibilities as FF's Global General Counsel, and his abuse of that position by harassing senior members of FF for additional equity grants, threatening to fire FF's outside when it declined to grant him stock options at an illegal exercise price, and refusing to execute corporate and contract documents requiring his authorization.

As set forth below, the irrelevant extrinsic evidence and inapposite authorities improperly cited in Liu's Motion to Dismiss ("**Motion**") cannot overcome the SACC's well-pleaded facts establishing Liu's extensive wrongdoing, let alone undermine the irrefutable California state and federal court law confirming the propriety of each of the SACC's causes of action premised upon that misconduct.

**First**, California law is clear that an attorney's breach of his ethical duties not only can form the basis of a legally cognizable claim for breach of fiduciary duty, but also further entitle a client to rescind any contract with the attorney procured in

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE
DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

violation of the applicable Rules of Professional Conduct.[1]  Consistent with that law, the SACC amply pleads facts supporting FF's claims for breach of fiduciary and rescission against Liu based upon his violations of the following Rules of Professional Conduct in connection with the Employment Agreement:

- Rule of Professional Conduct 3-310 prohibits an attorney from maintaining "a legal, business, financial, or professional interest in the subject matter of the representation" without obtaining the client's informed written consent to the conflict, and subsequently requires the attorney to disclose the "actual and reasonably foreseeable adverse consequences" of the conflict to his client;

- Rule of Professional Conduct 3-300 prohibits an attorney from "enter[ing] into a business transaction with a client; or knowingly acquir[ing] an ownership, possessory, security, or other pecuniary interest adverse to a client" unless "[t]he transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner" the client can understand, and "[t]he client [] consents in writing to the terms of the transaction" after being expressly advised in writing that he "may seek the advice of an independent lawyer";

- Rule of Professional Conduct 4-200 broadly prohibits an attorney from "enter[ing] into an agreement for, charg[ing], or collect[ing] an . . . unconscionable fee" of any kind for his services; and

- In violation of each of these Rules—as well as their New York counterparts further governing his conduct—Liu: (i) executed an engagement agreement with FF on behalf of his former employer, Mayer Brown LLP ("**Mayer**"), to serve as FF's outside counsel; (ii) subsequently negotiated and drafted his personal Employment Agreement to serve as FF's Global General Counsel, under which Liu induced FF to grant him significant business, financial, and professional interests adverse to the company, including $8 million in cash compensation and a 2% equity stake in the company that he would immediately vest even if he was terminated for cause or breached his fiduciary duties to FF; and (iii) failed to request, let alone obtain, FF's informed written

---

[1] *See, e.g., Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg'g Corp.*, 6 Cal. 5th 59, 68 (2018) ("the law firm's conflict of interest rendered the agreement . . . unenforceable as against public policy"); *BGJ Assocs., LLC v. Wilson (BGJ)*, 113 Cal. App. 4th 1217, 1227 (2003) (recognizing that "the fiduciary duty which the attorney owes to his or client" is based on the Rules of Professional Conduct); *Mirabito v. Liccardo*, 4 Cal. App. 4th 41, 46 (1992) (recognizing that attorney's violation of ethical "rules [can] be used to help prove whether [he] had breached his fiduciary duties to" the client).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

consent to the "actual and reasonably foreseeable adverse consequences" of the one-sided Employment Agreement, and instead negotiated and drafted that agreement entirely for his own benefit as well as exclusively in English despite knowing that his FF counterparts were non-native English speakers.

**Second**, in addition to subjecting him to each of the foregoing Rules of Professional Conduct, Liu's immediately prior role as FF's outside counsel also made him a fiduciary of the company, and rendered him liable for constructive fraud for his non-disclosure and concealment of material facts in his negotiation of the Employment Agreement.[2]  To that end, the SACC is replete with well-pleaded facts establishing Liu's strategic omission and concealment of material facts from FF prior to the execution of the Employment Agreement, and his corresponding fraud involving that contract, including Liu's failure to disclose and concealment that:

- Liu was not providing FF with the same advice with respect to the Employment Agreement that he would have given had FF been negotiating that contract with a third-person, and was instead seeking to obtain the most favorable contract terms for himself at the expense, and to the detriment, of FF;

- The compensation terms of the Employment Agreement were not fair and reasonable to FF because, among other things, they provided Liu with guaranteed remuneration and other benefits, the advancement of millions of dollars upon termination, the immediate vesting of significant stock options even if it was found that Liu breached his fiduciary obligations to FF, and unconscionably restricted the terms under which FF could terminate Liu;

- Liu intended to use his position as FF's Global General Counsel to extract additional and unlawful benefits from FF, including pressuring FF's outside counsel to grant Liu an illegal exercise price on Liu's stock options; and that

- By concealing each of these material facts, and leveraging his position as FF's trusted outside counsel, Liu fraudulently procured his Employment Agreement in violation of his fiduciary duties, resulting in damage to FF.

**Third**, Liu's Employment Agreement is procedurally and substantively

---

[2] *See, e.g., William Morris Endeavor Entm't, LLC v. Writers Guild of Am. (William Morris)*, 478 F. Supp. 3d 932, 943 (C.D. Cal. 2020) (recognizing "[m]ost acts by an agent in breach of his fiduciary duties constitute constructive fraud[,]" including any non-fraudulent "omission or concealment" of fact by a fiduciary that "results in damage to another").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

unconscionable on its face, thereby providing FF with an entirely separate and independent basis for legally rescinding that one-sided contract. To that end, the sliding-scale of unconscionability weighs decisively in FF's favor, both legally and factually, where FF has pleaded facts demonstrating that:

- Liu negotiated and drafted the Employment Agreement without making any of the legally and ethically required disclosures to FF in violation of the applicable Rules of Professional Conduct under California and New York law;

- Liu negotiated and drafted the Employment Agreement exclusively in English despite knowing that his counterparts at FF were not native English speakers, and failed to advise FF that it could seek and obtain the advice of independent counsel to address and mitigate his obvious conflict of interest; and

- As a result of this procedurally unconscionable process, Liu not only was named FF's Global General Counsel, but also received millions of dollars in guaranteed cash compensation and tens of millions of dollars in guaranteed stock options, all of which he purportedly was entitled to receive and retain irrespective of any misconduct he committed at FF—*i.e.*, contract terms that were excessive and substantively unconscionable both on their face and in practice, particularly where they incentivized and sought to shield Liu from the consequences of the very misconduct he later perpetrated after joining FF.

**__Fourth__**, and equally futile, are Liu's entirely unsubstantiated contentions that he purportedly cannot be held liable for breaching the Employment Agreement and for violating his fiduciary duties after he joined FF because: (i) the Employment Agreement allegedly failed to impose any particular job duties on him as FF's Global General Counsel, and because (ii) it is allegedly "disingenuous and implausible" to suggest that he lacked the requisite ability and experience to serve in that role. In reality, the Employment Agreement expressly required Liu to perform the "duties and responsibilities . . . commensurate with [his] position" as FF's Global General Counsel, thereby legally requiring the rejection of Liu's blithe, self-serving ignorance of the SACC's well-pleaded facts establishing that Liu breached his contractual obligations and violated his fiduciary duties by, among other things: (a) failing to work with investment banks and lead FF to an IPO; (b) failing to assist with FF's Series A financing; (c) harassing FF managers to provide him with equity grants; (d)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

threatening to fire FF's outside counsel for declining to grant Liu illegal exercise prices for his stock options; and (e) refusing to sign corporate and contract documents requiring his authorization.

**Fifth**, having legally alleged causes of action for the foregoing misconduct, the SACC's related claims for unfair competition and declaratory relief premised upon the same well-pleaded facts are equally proper under the law.

**Finally**, Liu's procedurally and substantively meritless motion to strike FF's affirmative defenses similarly cannot be condoned, particularly where the law studiously ignored by Liu in the Motion makes clear that motions to strike are disfavored and sparingly granted, and where Liu's the arguments in support of his motion to strike do nothing more than regurgitate the failed assertions set forth in his Motion.   Liu's request for inherent power sanctions is likewise required to be summarily rejected, especially where there is no basis for allowing Liu to wholesale circumvent the statutory requirements of Rule 11, and where the focus of his sanctions request (*i.e.*, the portion of FF's UCL claim related to Liu's failure to register with the California State Bar) could easily have been addressed had Liu's attorneys meaningfully engaged in, rather than flouted, the Local Rule 7-3 process.

For each of these reasons further detailed below, Liu's Motion, motion to strike, and request for sanctions are each required to be denied in their entirety.

## II.     STATEMENT OF FACTS

### A.     The Parties and Liu's Claims

Liu was a New York attorney and partner at Mayer in or around October 2017. (SACC) ¶ 1.)  FF was and is an electric car company headquartered in Los Angeles. (*Id*. ¶¶ 13, 17.)  Smart King is FF's indirect parent company.  (*Id*. ¶ 40.)

### B.     The Employment Agreement and Liu's Ethical Violations

While at Mayer, FF retained Liu as its attorney, which attorney-client relationship was memorialized in an engagement agreement dated October 20, 2017 that was signed by Liu on Mayer's behalf.  (*Id*. ¶ 2.)  While Liu represented FF in

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

various legal matters in his capacity as a Mayer partner, Liu also solicited from and obtained the Employment Agreement with FF and Smart King (*Id.* ¶ 4.)  In so doing, Liu violated his ethical duties to his client FF under both California and New York law by, among other things: (i) failing to advise his client in writing to obtain independent counsel; (ii) failing to inform his client of all existing and potential conflicts; (iii) failing to obtain informed written consent as to such conflicts; (iv) negotiating unfair, unreasonable and unconscionable terms, including $8 million in cash payable over five years, plus 2% ownership of the company (with a current valuation of approximately $80 million), all of which were guaranteed to be paid even if Liu was immediately terminated for cause and/or was found by a court to have breached his fiduciary duties to FF; (v) failing to explain the adverse consequences of the Employment Agreement and its one-sided terms to FF; (vi) failing to disclose that he was not providing FF with the same advice he would have given FF had it been negotiating the Employment Agreement with a third-party; and (vii) negotiating and drafting the Employment Agreement exclusively in English, despite knowing that his negotiating counterparts at FF were non-native English speakers.  (*Id.* ¶¶ 45, 76-91.)

**C.   Liu Fails to Perform His Contractual Obligations as FF's Global General Counsel**

As FF's Global General Counsel, Liu was contractually tasked with, and required to perform, significant legal responsibilities.  (SACC ¶ 50.)  Liu, however, not only failed to do so, but also lacked the requisite skills and experience to perform his contractually required job duties.  (*Id.* ¶¶ 50-59, 61-63.)  For example, despite representing his ability to do so, Liu did not lead FF to an IPO; never connected FF with a single investment bank; could not advise on litigation or financial matters; failed to provide any assistance when China Evergrande Group ("**Evergrande**"), FF's Series A investor, backed out of its investment; was unable to advise on routine legal or business issues; and generally refused to perform any of the tasks he

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

committed to performing.  (*Id*.)

In marked contrast to actually performing his required job duties, Liu instead repeatedly harassed the manager of FF's equity incentive program for his equity grants; threatened to fire FF's outside counsel when it declined to provide him with equity grants at illegal exercise prices; refused to sign corporate and contract documents requiring his authorization; and refused to advise FF regarding its actions and corporate governance.  (*Id*. ¶¶ 64-68.)

Despite remaining with FF for less than a year and having already received $1,836,466.21 in cash compensation notwithstanding his manifest failure and inability to perform his job responsibilities, Liu now seeks cash and equity from FF totaling more than $86 million.  (*Id*. ¶ 75.)

## III.  LEGAL STANDARD

To defeat a motion to dismiss under Rule 12(b)(6), a complaint or counterclaim need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Philips N. Am. LLC v. Garmin Int'l, Inc.*, 2019 WL 9512698, at *1 (C.D. Cal. Nov. 25, 2019).  A claim is facially plausible when the non-moving party pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Courts require only that the allegation of facts be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.  Courts must accept the non-moving party's allegations as true and draw all reasonable inferences in its favor. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

Under Rule 12(b)(6), review of a motion to dismiss "is limited to the complaint," *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993), with two exceptions.  A court may consider extrinsic evidence on a motion to dismiss only if (1) the evidence is subject to judicial notice under Federal Rule of Evidence 201 (*Mack v. S. Bay Beer Distrib*. 798, F.2d 1279, 1282 (9th Cir. 1986)); or if (2) it

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE
DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

consists of "material which is properly submitted as part of a complaint" or material upon which the "complaint necessarily relies" (*Lee*, 250 F.3d at 688 (citation omitted)).  Extrinsic evidence that does not fall into either category cannot legally be considered, much less justify granting a motion to dismiss.  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 794 (N.D. Cal. 2011) (citation omitted).[3]

## IV.   NO BASIS EXISTS TO DISMISS ANY OF FF'S CLAIMS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### A.   FF's Breach of Fiduciary Duty and Rescission Claims Based on Liu's Violation of the Rules of Professional Conduct are Not Subject to Dismissal

#### 1.   Liu's Ethical Violations Legally Support the SACC's Breach of Fiduciary Duty and Rescission Claims

"Attorneys are fiduciaries who owe their clients the 'most conscientious fidelity[,]' and "[t]he law accordingly takes a jaundiced view of business transactions between attorneys and their clients."  *Ferguson v. Yaspan*, 233 Cal. App. 4th 676, 684 (2014).  To that end, California law is clear that an attorney's ethical violations can and do form the basis of a legally cognizable breach of fiduciary duty claim, as well as entitle a client to rescind any contract with the attorney procured in violation of the applicable Rules of Professional Conduct.  *See, e.g., Sheppard*, 6 Cal.5th 59, 68 ("the law firm's conflict of interest rendered the agreement with the manufacturer . . . unenforceable as against public policy"); *BGJ*, 113 Cal. App. 4th at 1227 (recognizing that the Rules of Professional Conduct "define the duty component of

---

[3] While a court may convert a motion to dismiss into a summary judgment motion under Rule 12(d), there is no legal justification to do so here, where all discovery and motion practice respectively are required to be completed by April 23 and May 11, 2021, and trial is scheduled to begin on June 8, 2021, thereby precluding a "reasonable opportunity" for the parties "to present all the material that is pertinent to [a] motion" for summary judgment, as required by Ninth Circuit law.  *See Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) ("Implicit in the 'opportunity to respond' [to a motion for summary judgment] is the requirement that sufficient time be afforded for discovery necessary to develop 'facts essential to justify (a party's) opposition' to the motion.") (citation omitted).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

the fiduciary duty which the attorney owes to his or her client."); *Mirabito*, 4 Cal. App. 4th at 46 (recognizing that the Rules of Professional Conduct can "be used to help prove whether [the attorney] had breached his fiduciary duties to" the client).[4]

Indeed, "the law presumes" that an attorney engaging in an advantageous business transactions with a client not only "wear[s]" a "black" hat, *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365, 1369 (1997), but also violates his fiduciary duties by exerting "undue influence" over the client.  *See Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1152, 1155 (2011); *Priester v. Citizens Nat'l Tr. & Sav. Bank of L.A.*, 131 Cal. App. 2d 314, 317 (1955) ("A contract, conveyance, or transfer of any kind made by the client during the existence of the attorney-client relationship by which the attorney secures any advantage is presumptively invalid for undue influence and lack of consideration; and, when attacked by the client, the burden is cast upon the attorney to show that the transaction was fair and equitable and that no advantage was taken by him," and that presumption can only be "overcome by clear, convincing, and satisfactory evidence") (citations omitted).

Thus, when a transaction violates the rules of professional conduct, it is "voidable at the client's option" and subjects the attorney to liability for breach of fiduciary duty.  *Ferguson*, 233 Cal. App. 4th at 685; *see also Fair*, 195 Cal. App 4th at 1152-1155; *Mirabito*, 4 Cal. App. 4th at 46.  It is therefore unsurprising that, consistent with that law, an attorney cannot refute the presumption of wrongdoing where, as here, the attorney failed to "provide [a client][] the 'reasonable advice against himself [the attorney] would have given [the client] against a third person.'" To the contrary, under these circumstances, judgment in favor of the client is legally

---

[4] *See also, e.g., Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1152 (2011); *David Welch Co. v. Erksine & Tulley*, 203 Cal. App. 3d 884, 890-892 (1988) (affirming judgment against attorneys for breach of fiduciary duty and recognizing that Rules of Professional Conduct properly can be used to measure whether attorneys breach their fiduciary duties); *Day v. Rosenthal*, 170 Cal. App. 3d 1125, 1146-1149 (1985) (recognizing attorney's duties to client are conclusively established by the Rules of Professional Conduct).

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

required.  *See Odish v. Cognitive Code Corp.*, 2015 WL 11347592, at *7-8 (C.D. Cal. May 27, 2015) (granting summary judgment in client's favor and holding agreement between attorney and client unenforceable due to ethical violations).

Here, as a New York partner at Mayer performing services for California-based FF in late 2017 and early 2018, Liu's conduct at issue in the SACC was subject to, and required to comply with, both the California and New York Rules of Professional Conduct.  *See* N.Y. Rule of Prof. Cond. 8.5; *Odish*, 2015 WL 11347592, at *6.  As a threshold matter, therefore, Liu's contention that "the rules of professional conduct 'do not provide a private right of action nor do they subject attorneys to civil liability" (Mot. at 5:23-6:1), simply cannot withstand scrutiny, particularly where both California and New York law unequivocally hold otherwise.[5]

## 2.    The SACC Plainly Alleges Liu's Ethical Violations

The SACC's well-pleaded facts plainly establish Liu's violations of California Rules of Professional Conduct 3-300, 3-310 and 4-200, and of the counterpart New York Rules of Professional Conduct 1.7, 1.8 and 1.5.  Liu's attempt to avoid the application of these Rules fails to pass muster.

***First***, New York Rule of Professional Conduct 1.7 and California Rule of Professional Conduct 3-310 address conflicts where an attorney "has or had a legal, business, financial, or professional interest in the subject matter of the representation" (California law),[6] has a "differing interest," or "there is a significant risk that the

---

[5] *See, e.g., Odish,* 2015 WL 11347592, at *7-8; *Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP*, 2020 WL 2833686, at *3 (S.D.N.Y. May 31, 2020) ("'[L]iability can follow where the client can show that he or she suffered actual damage as a result' of the violation.") (citation omitted); *Plattsburgh Hous. Auth. v. Cantwell*, 54 Misc.3d 1216(A), 54 N.Y.S. 3d 612, at *4 (N.Y. Sup. Ct. 2017) (granting client's rescission claim where attorney drafted her own employment agreement without advising client to obtain independent counsel and without obtaining client's informed consent).

[6] Liu relegates his discussion of Rule 3-310 to footnote 3 of his Motion, yet cites the current Rule 1.7 as opposed to Rule 3-310, which applied at the pertinent time. Even assuming that Rule 1.7 applied, it clearly requires a lawyer to obtain "informed written consent" to represent a client if there is a "significant risk the lawyer's representation of the client will be materially limited by," among other things, "the lawyer's own interests," which Liu clearly did not do.  (SACC ¶ 86.)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests" (New York law).  When such a conflict of interest exists, these rules require the attorney to obtain the client's informed written consent to the conflict, and further require the attorney to reasonably believe that he can provide competent and diligent representation to the client notwithstanding the conflict.

Here, Liu owed FF ethical and fiduciary duties by virtue of his immediately prior role as a Mayer partner and FF's outside counsel as confirmed by the Mayer-FF engagement agreement, Liu's corresponding status as FF's Client Team Leader & Main Contact Partner, and the applicable California and New York Rules of Professional Conduct.  (SACC ¶¶ 1-2, 85, 94.)  Ignoring these duties, and in violation of Rules 3-310's and 1.7's prohibition on assuming any role adverse to FF without first obtaining FF's informed written consent, Liu negotiated an Employment Agreement with his FF client that was grossly one-sided, disadvantageous to FF, and provided Liu with a significant business, financial, and personal interest in FF.

For example, the Employment Agreement punished FF if it terminated Liu early for any reason whatsoever by requiring its immediate payment to Liu of $8,000,000.  (*Id*. ¶¶ 43(b), 43(c).)  In fact, the Employment Agreement *rewarded* Liu if he was terminated after a court found him liable for breaching his fiduciary duties by immediately vesting 20,000,000 options for him currently valued at $80,000,000. (*Id.* at ¶ 43(d).)  Likewise, Liu's professional judgment was severely impacted by his equity rights under the Employment Agreement, as evidenced by his threatening FF's outside counsel if he refused to grant Liu an illegal exercise price.  (*Id*. at ¶ 66.)  And Liu never informed FF of "the actual and reasonably foreseeable adverse consequences to" FF (as required by Cal. Rule of Prof. Cond. 3-310(A)) nor "explained to the person the material risks of the proposed course of conduct and reasonably available alternatives" (as required by N.Y. Rule of Prof. Cond. 1-7 and 1.0(j)).  (*Id*. at ¶ 45, 85, 88.)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

115167695

- 11 -

**Second**, Liu's only argument regarding California Rule of Professional Conduct 3-300 and New York Rule of Professional Conduct 1.8—which each prohibit an attorney from entering into a transaction with a client unless that attorney makes certain written disclosures, obtains the client's informed written consent, and ensures that the terms of the transaction are fair and reasonable—consist of two sentences proclaiming that the Employment Agreement is not a transaction covered by those rules. (Mot. at 7:8-17.) Tellingly, Liu neither does, nor can, cite any law substantiating that fallacious premise, especially where the commentary to Rule 3-300 makes clear that the rule applies to an agreement to retain an attorney that "confers on the member an ownership, possessory, security, or other pecuniary interest adverse to the client." Moreover, the plain language of Rule 3-300 and 1.8(a) not only is broad, but also fails to remotely suggest, let alone establish, a sweeping carve-out for transactions permitting an outside counsel to transition in-house with the client and procure a lucrative cash an equity compensation package entitling the attorney to an impermissible windfall even if he engages in unlawful behavior after joining the client. In fact, Liu's **own** cited authority, *Odish*, makes clear that an attorney violates Rule 3-300 and 1.8(a) by procuring an in-house position and associated equity compensation from a client without strictly adhering to the consent and disclosure requirements governing such a transaction, and that any agreements arising from or memorializing that transaction are legally voidable at the client's election. *See Odish*, 2015 WL 11347592, at *2. Put simply, regardless of whether the attorney is acting as outside or in-house counsel, both the rule and the law are clear: obtaining an ownership interest in a client's property, including shares in the client itself, implicates the Rules of Professional Conduct and triggers the presumption of undue influence. *Id.* at *2.[7]

---

[7] *See also In re Silverton*, 2001 WL 664251, at *3 (Cal. Bar Ct. May 22, 2001) ("The discussion following rule 3–300 makes clear that the mere fact that a provision conferring on an attorney a pecuniary interest adverse to a client appears in an attorney employment agreement does not exempt that provision from scrutiny under

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

***Third***, Liu's only argument against the applicability of California Rule of Professional Conduct 4-200 and New York Rule of Professional Conduct 1.5—that Liu "was not charging FF a fee for legal service in a matter" but "was negotiating his compensation as a full-time employee of FF" (Mot. at 8:2-4)—is equally devoid of any authority remotely condoning Liu's attempt to immunize himself from the applicable Rules of Professional Conduct.  In reality, neither the California nor New York Rules of Professional Conduct limit the definition of "lawyer" to outside counsel, or otherwise suggest a narrow interpretation of the word "fee" to exclude amounts charged by in-house counsel.

To the contrary, a leading California ethics commentator confirms the application of Rule 4-200 to in-house compensation.[8]  Liu subsequently cannot avoid his violation of Rule 4-200 by labeling himself a "full-time employee" of FF, especially in light of his responsibilities as FF's top attorney and admitted Global General Counsel.  (*See* Dkt. No. 1).  Put simply, Liu's improper negotiation of "a gross overcharge" that was "'exorbitant and wholly disproportionate to the services performed as to shock the conscience'" is no less offensive merely because he extracted that payment as in-house rather than as an outside counsel.  *In re Silverton*,

rule 3–300."); *Fletcher v. Davis*, 33 Cal. 4th 61, 68-69 (2004) ("A charging lien is therefore an adverse interest within the meaning of rule 3–300 and thus requires the client's informed written consent."); *Schlanger v. Flaton*, 218 A.D.2d 597, 599-600, 603 (Sup. Ct. N.Y. 1995) (finding that an attorney violated his fiduciary duties when he prepared documents concerning plaintiff's acquisition of various properties and gave himself interest in those properties); *Rhodes v. Buechel*, N.Y.L.J., Mar. 18, 1998, at 28 (N.Y. Sup. Ct. 1998), *aff'd*, 685 N.Y.S.2d 65 (A.D. 1 Dept. 1999) (attorney violated his professional and fiduciary duties by failing to "disclose the existing conflict of interest involved in his firm serving as counsel while having [and arranging via contract] an equity interest in the corporation"); *see also* https://nysba.org/ethics-opinion-913/ (last visited Apr. 9, 2021) (N.Y. Ethics Opinion 913 stating that, "Rule 1.8(a) applies to negotiation of a fee in which a lawyer is to receive an equity interest in a client or the client's company. . . . .").

[8]*See* https://www.milbank.com/images/content/2/3/23428/Business-Law-News-Part-1.pdf at p. 22 (last visited Apr. 10, 2021) (Neil Wertlieb, Esq., former Chair of the California State Bar's Committee on Professional Responsibility and Conduct, concluding that Rule 4-200 "should apply equally to in-house and outside counsel" and that "there appears to be no precedential basis to conclude that the compensation arrangement for the in-house attorney is not the equivalent of a fee arrangement between the employee-attorney and the employer-client").

2001 WL 664251, at *4 (Cal. Bar Ct. May 22, 2001) (quoting *Bushman v. State Bar*, 11 Cal.3d 558, 564 (1974)); (SACC ¶ 87.)  Such a fee arrangement violates Rule 1.5 and Rule 4-200.  *See also Severson & Werson v. Bolinger*, 235 Cal. App. 3d 1569, 1572 (1991) (an attorney is professionally obligated to ensure that the terms of the fee agreement are fair, reasonable, fully explained, and consented to by the client).

**Fourth**, Liu asserts that he cannot locate any case "holding that a company's counsel violated the above-described rules of professional conduct in connection with negotiating an employment agreement with a company," and that if the rules so applied, "an entire new liability schema would be superimposed on every outside attorney who goes in house to work for a client." (Mot. at 8:5-10.)  There is no "new liability schema" here.  Rather, the rules are clear, and Liu's own cited authority, *Odish*, demonstrates that such a case does, in fact, exist.  *Odish* involved an attorney who, after drafting a letter of intent signed by himself, defendant Cognitive Code, and a third party investor, began providing legal advice to Cognitive Code.  2015 WL 11347592, at *2.  The attorney later signed an addendum to the letter of intent authorizing him "to act as in-house legal counsel and represent the Company in all legal matters," and providing him with a "non-dilutable ten percent (10%) equity interest and/or capital shares of the stock of the Company for services to be provided as part of the management team."  *Id*.  The Court invalidated both the letter of intent and that addendum because the attorney failed to abide by Rule 3-300 in connection with those documents.  *Id*. at *7.[9]

---

[9] Liu further asserts that FF's cited cases *Sheppard* and *Greene* are factually distinct because those cases do not involve in-house counsel.  His point is misplaced.  Liu was not in-house counsel to FF at the time that he negotiated the Employment Agreement, he was FF's trusted outside counsel.  (SACC ¶¶ 77, 93.)  *Sheppard*'s holding is broad and applicable here: "a contract or transaction involving attorneys may be declared unenforceable for violation of the Rules of Professional Conduct, the set of binding rules governing the ethical practice of law in the State of California."  6 Cal. 5th at 73.  *Sheppard* explained that "[i]t would be 'absurd,' . . . for a court to aid an attorney in enforcing a transaction prohibited by the rules."  Id at 74 (citing *Chambers*, 29 Cal. 4th at 161.)  "[T]he rules 'are not only ethical standards to guide the conduct of members of the bar; but they also serve as an expression of public policy to protect the public.'"  *Sheppard*, 6 Cal. 5th at 74 (citing

115167695

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*Finally*, Liu asserts that the timing of FF's SACC somehow provides a basis for its dismissal.  This position similarly is not well-taken, particularly where it ignores and is belied by this Court's March 16, 2021 Order holding that the SACC was "properly filed [by FF] as of right under Rule 15(a)(1)."  [Dkt. No. 106].

## B.   FF's Constructive Fraud Claim is Well-Pleaded

"'[C]onstructive fraud comprises of any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent.'"  *William Morris*, 478 F. Supp. 3d at 943 (citation omitted).  "'Most acts by an agent in breach of his fiduciary duties constitute constructive fraud.'"  *Id.*  "In particular, 'the failure to disclose a material fact to the principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud.'"  *Id.*  "'To plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relief on . . . and that failed to include the allegedly omitted information.'"  *Id.* (citation omitted).[10]

FF provides these details in its SACC.  As FF's outside counsel, Liu was a

---

*Altschul v. Sayble*, 83 Cal. App. 3d 153, 159-64 (1978) (among others)).  Similarly, *Greene v. Greene*, 56 N.Y.3d 86, 92 (1982) explains that "the relationship between an attorney and his client is a fiduciary one and the attorney cannot take advantage of his superior knowledge and position."  Thus, where an attorney gets the "better of the bargain" and does not fully inform his client—as Liu has done here—that attorney violates his fiduciary duties and the client is entitled to rescind the agreement.  *Id.*

[10] *William Morris*, 478 F. Supp. 3d at 943 noted that the heightened pleading standard is "somewhat relaxed" for fraudulent concealment claims, while other courts have found that a plaintiff need only meet the Rule 8 standard to plead constructive fraud. *See, U.S.A. v. Comco Mgm't Corp.*, 2009 WL 10672579, at *2 n.2 (C.D. Cal. Nov. 2, 2009) ("The actual fraud claim must meet the particularity requirements of Rule 9, while the constructive fraud claim need only satisfy the liberal Rule 8 standards."); *The 1849 Condo. Assoc., Inc. v. Bruner*, 2010 WL 2557711, at *3 (E.D. Cal. June 21, 2010) (citation omitted) (constructive fraud claim subject to Rule 8 standard). Regardless, FF's constructive fraud claim also satisfies the Rule 9 standard.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

fiduciary of the company and owed FF a duty to, among other things, fully disclose all material facts within his knowledge and of which FF was ignorant.  (SACC ¶¶ 100-01.)  Thus, under the Rules of Professional Conduct, as well as common law fiduciary duty principles, Liu was required to disclose all material facts relating to the Employment Agreement to FF, including that "the transaction was not fair and reasonable," that he was not providing FF with "all that reasonable advice against himself that he would have given him against a third person," and that FF was entitled to "adequate time to seek" and "obtain" the advice of "independent counsel." (*Id.* ¶¶ 103-105) *BGJ*, 113 Cal. App. 4th at 1229 (citation and quotes omitted).

In addition to his non-disclosures regarding the reasonably foreseeable adverse consequences FF would experience as a result of the Employment Agreement's extremely advantageous and one-sided terms favoring him, Liu also failed to disclose and concealed that, once his options were granted, he would threaten to fire FF's outside law firm if it did not provide an illegal exercise price on Liu's options.  (*Id.* ¶ 66).  Because FF "justifiably relied" and was induced to execute the Employment Agreement based upon Liu's incomplete disclosures and concealment of material facts resulting in harm to FF, the SACC legally has alleged all of the required elements of constructive fraud.

Relying on inapposite case law,[11] Liu argues FF was required to allege specific facts "concerning the drafting and negotiation of [the Employment Agreement and Director Compensation Agreement] or the time period in which the purported constructive fraud occurred."  (Mot. at 9:18-22).  In so contending, Liu once again misses the mark.  FF does not allege that Liu made an affirmative misrepresentation, but rather that Liu violated his obligation to disclose information and obtain FF's

---

[11] For example: *Depot, Inc. v. Caring for Montanas, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (plaintiff failed to allege when over an eight year period defendants made misrepresentations, who they were made to, and their contents); *Vega v. Specialized Loan Svc'g, LLC*, 2020 WL 2475087, at *4 (C.D. Cal. Feb. 11, 2020) (plaintiff did not plausibly allege a fiduciary or confidential relationship or who made the purported misstatements).

- 16 -

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

fully informed consent.  (SACC ¶¶ 103-05.)   As explained in Liu's own cited authority *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010), only a "relatively definite time frame," not a specific date, is needed to establish fraud, and FF has clearly satisfied that requirement. (SACC ¶¶ 2-4) (identifying the time frame of October 17, 2017 through January 26, 2018).[12]

## C.   FF's Rescission Based on Unconscionability Claim is Well-Pleaded

FF seeks to rescind the voidable Employment Agreement in light of its unconscionable terms.  In seeking to dismiss the claim, Liu misapplies the law in demanding that FF allege extreme levels of both procedural and substantive unconscionability.  However, "the two types of unconscionability 'need not both be present to the same degree.'"  *Shoyer v. New Cingular Wireless Svcs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).  Rather, "a sliding scale is involved which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Nagrampa*, 469 F.3d at 1280.  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable[.]"  *Id.*

In the context of a fee agreement between an attorney and a client, courts additionally consider other factors to determine unconscionability.  A fee agreement must be "fair, reasonable and fully explained to the client," and is "strictly construed against the attorney."  *Alderman v. Hamilton*, 205 Cal. App. 3d 1033, 1037 (1988). Even if negotiated at arm's length, the agreement will not be enforced if there are "issues of duress, unconscionability, or the like."  *Ramirez v. Sturdevant*, 21 Cal. App. 4th 904, 913 (1994).  The attorney must also be able to rebut the presumption of undue influence.  *BGJ*, 113 Cal. App. 4th at 1227-28.  Put simply, "attorney-client

---

[12] Liu also argues that FF's constructive fraud claim is implausible by cross referencing his arguments regarding FF's breach of fiduciary duty and rescission claims.  As established earlier, those arguments again fail here.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

fee agreements are a matter of special concern to the courts and are enforceable and affected by lofty principles different from those applicable to commonplace commercial contracts."  In re Matter of Cooperman, 83 N.Y.2d 465, 468 (1994).

Here, both procedural and substantive unconscionability have been amply alleged in the SACC.  "'Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at the time.  It focuses on factors of oppression and surprise.  The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or meaningful choice on the part of the weaker party.'"  *Parada v. Superior Ct.*, 176 Cal. App. 4th 1554, 1568 (2009).  Liu concedes the SACC alleges that he drafted the Employment Agreement in English despite knowing that his negotiating counterparts at FF (Jiawei Wang and Yueting Jia) are not native English speakers.  (Mot. at 10:14-11:1))[13]  This establishes at least a base level of procedural unconscionability, particularly where Liu had immediately last served as FF's trusted outside counsel who was able to successfully "push for FF to rush and sign the Employment Agreement," while simultaneously failing to make mandatory disclosures to FF, and obtaining FF's informed written consent.  (*See, e.g.,* SACC ¶ 45.)[14]  While Liu seeks refuge in the alleged fact that FF had "just completed the Series A Evergrande Transaction" creating a "multi-billion dollar valuation" for FF, this is an irrelevant *non-sequitur*.  (Mot. at 12:26-27.)  The Evergrande transaction

---

[13] Liu improperly submitted extrinsic evidence in aid of his motion to dismiss this claim, largely consisting of text messages between himself and Jiawei Wang.  FF has objected to and moved to strike those exhibits.  Without conceding their propriety, FF notes that the submitted text messages are in Mandarin, evidencing Mr. Wang's preferred method of communication, whereas the Employment Agreement is exclusively in English. Also, despite Liu's attempt to mislead the Court as to their content, the messages clearly show that FF's outside counsel only viewed the Employment Agreement on the eve of its execution, after all terms had been finalized without the benefit of independent counsel, and solely to determine whether it caused any violation of FF's agreement with its then-investor, Evergrande; ***not*** to determine whether the terms of the Employment Agreement were fair and reasonable to FF.

[14] FF could also amend to allege further facts, such as Liu's insistence that FF not contact any of his references until *after* the parties had reached their agreement.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

has nothing to do with Liu's violations of the trust placed in him by FF's non-native English speaking negotiators to not damage FF via the Employment Agreement.[15]

Substantive unconscionability—which assesses whether the terms "are overly harsh or one-sided"—is likewise present here. *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). An agreement that is "so one-sided as to 'shock the conscience'" is substantively unconscionable. *Id.* Liu focuses on the amount he was to be paid, arguing that FF "fails to allege why it was so excessive that the agreed upon terms should not be ignored." FF, however, does just that by alleging that the amounts Liu charged were so excessive that they violated the Rules of Professional Conduct for being "not proportional to the value of services provided," "not involv[ing] the disclosure of all material facts," and "involv[ing] fraud or overreaching in negotiating that fee." (SACC ¶ 87.) Liu also ignores the SACC's express allegations that the following terms make the Employment Agreement unconscionable: its (i) provision of guaranteed remuneration and other benefit to Liu; (ii) advancement of millions of dollars upon Liu's termination; (iii) immediate vesting of options even if Liu was found to have breached his fiduciary obligations to FF; and (iv) restrictive terms under which Liu could be terminated. (*Id.* ¶ 109.)[16] The Court need look no further than the fact that 20,000,000 options in

---

[15] The cases cited by Liu largely focus on arbitration clauses and template agreements and have no application to the facts of this case. *See, e.g., Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) (involving insurance coverage offered, but not required, by an office supply store to its shipping customers); *Fifty-Six Hope Rd. v. Jammin Java Corp.*, 2017 WL 2457487, at *11 (C.D. Cal. Jan. 25, 2017) (involving an exculpatory clause where the limitation of liability was mutual and the party arguing that the clause was unconscionable was represented by its own counsel); *Rockefeller v. Perkins Coie LLP*, 2010 WL 11672230, at *6 (C.D. Cal. Sept. 2, 2010) (involving a corporate attorney suing a law firm over an arbitration clause in partnership agreement).

[16] Liu relies on the following factually inapposite cases in seeking to hold FF to a heightened pleading standard under which FF must have alleged why Liu's compensation was so excessive: *Brown v. Blackbaud, Inc.*, 2019 WL 4509203, at *4 (C.D. Cal. July 25, 2019) (involving late charges assessed through a tuition payment system); and *In re Goldman*, 2010 WL 11526899, at *2 (C.D. Cal. June 3, 2010) (involving a loan that may have been a "bad deal" because of high, but not conscience shocking, 11.85% interest rate and 8.33% fees).

FF—valued at approximately $80,000,000—vest *as a reward* for Liu being terminated after a court finds him liable for breaching his fiduciary duties to FF. (*Id*. ¶¶ 45(d), 109.)

These factors fall squarely within those delineated by Rule 4-200 as unconscionable, left unanalyzed by Liu because the fee is disproportionate to the value of Liu's services. Liu did not address "novel" or "difficult" matters. Nor did he actually have the skill to perform his job or obtain good results. To the contrary, Liu sat on the sideline, and actively avoided his duties. *See* Cal. Rule of Prof. Cond. 4-200(3); (SACC ¶¶ 50-63.) Liu also was (i) not faced with any time limitations (Cal. Rule of Prof. Cond. 4-200(6)); (ii) proved to have none of the "experience, reputation, and ability" he claimed to possess (Cal. Rule of Prof. Cond. 4-200(8); SACC ¶ 50-63); (iii) was paid a salary that not only was "fixed," as opposed to contingent, but also required little-to-no time and labor in light of his ability to trigger an early termination, and have all of his compensation immediately advanced (Cal. Rule of Prof. Cond. 4-200(9) and (10))[17]; and as well as (iv) never obtained FF's informed written consent (Cal. Rule of Prof. Cond. 4-200(11)).

Rescission based on unconscionability is not subject to a heightened pleadings standard. And FF's allegations, which a trier of fact could find "shock the conscience," are more than sufficient to allege substantive unconscionability.[18]

**D.** **FF's Breach of the Employment Agreement and Breach of Fiduciary Duty Claims Are Plausibly Pleaded**

Under the Employment Agreement, FF contracted for Liu to provide services

---

[17] This is functionally a right to keep an unearned retainer. There is no difference between FF paying him $8,000,000 upfront and Liu retaining it if he is terminated, and FF paying him monthly and then advancing the remainder of the $8,000,000 upon termination; in either event, Liu would be retaining unearned fees.

[18] FF also notes that it can amend this claim to specify undue influence as a separate ground for rescission (even though the pertinent paragraphs are incorporated by reference into the claim), given the presumption of undue influence *vis-à-vis* the Employment Agreement and Liu's violations of Rule 3-300 and Probate Code § 16004. *Ferguson*, 233 Cal. App. 4th at 684.

115167695

- 20 -

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

as its Global Chief Administrative Officer, Global General Counsel, and Global Senior Advisor. (SACC ¶ 123.) The Employment Agreement expressly provided that "Liu's duties and responsibilities" in these roles under the Employment Agreement were to "be commensurate with such position." (*Id.* ¶ 124.)

Liu points to that very term defining his performance under the Employment Agreement and upon which he relies in alleging mutuality (Mot. at 14:9-13), and labels it as "generalized boilerplate language" that allegedly fails to constitute "an objective, legally cognizable requirement" (*Id.* at 16:16-19).[19] For FF, Liu's performance of his job responsibilities was his core contractual obligation, and the consideration he provided under the Employment Agreement. Indeed, if Liu was not required to perform duties commensurate with executive positions, then the Employment Agreement was not mutual and is legally void for lack of consideration. *Powerturbine, Inc. v. Intn'l Aerospace Group, Corp.*, 2015 WL 13357513, at *2 (C.D. Cal. Jan. 7, 2015) ("sufficient cause of consideration" is an "essential element for contract formation") (citation omitted).

Finally, Liu makes a nonsensical argument that FF's breach of contract claim should be dismissed because it is "disingenuous and implausible" given his purported background, ignoring the obligation to assume the truth of FF's allegations as to Liu's lack of abilities. (Mot. at 17:1-11.)[20] Put simply, Liu's representations inflating his experience and abilities, and his reliance on his position at Mayer, do not make his

---

[19] Once again, Liu can only cite factually inapposite cases. *See, e.g., Gallagher v. Capella Educ. Co.*, 2019 WL 8333532, at *5 (D. Or. Dec. 23, 2019) (a student generally referenced a course catalogue, manual, and a guidebook without pointing to a specific term in alleging breach of contract); *Hrothgar Invs., Ltd. v. Houser*, 2015 WL 5853634, at *6 (N.D. Cal. Aug. 18, 2015) (finding no enforceable contract).

[20] Liu's string cite supporting this argument is entirely irrelevant, for example: *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408, 415 (9th Cir. 2020) (plaintiff's theory that medical device company knew based on its experience that FDA would reject its product was implausible); *RePET, Inc. v. Zhao*, 2016 WL 11634745, at *5 (C.D. Cal. Sept. 2, 2016) (plaintiff alleged fraud but also alleged that the allegedly fraudulent conduct was necessary to prevent its stock from plummeting).

1    failure to perform legally implausible.[21]

2        **E.**    **FF's UCL Claims are Well-Pleaded**

3       FF's UCL claim alleges that Liu engaged in unfair competition based upon his

4 violation of the Rules of Professional Conduct, unfair conduct, and the constructive

5 fraud he committed. (SACC ¶¶ 132-38.) Liu makes no argument as to these theories

6 of UCL liability, which, for the reasons discussed above, are based on well-pleaded

7 facts regarding Liu's misconduct prior to and following the execution of the

8 Employment Agreement, and are not subject to dismissal.

9       The SACC also alleges that Liu failed to register with the State Bar. At the

10 time FF included this allegation in its SACC, it had no record of Lie competing his

11 California State Bar registration. Instead of clarifying Liu's registration prior to

12 filing his Motion—for example, during his deficient Rule 7-3 meet and confer

13 conference—Liu waited until filing his Motion to disclose the status of his State Bar

14 registration. (Decl. of Jeffrey M. Goldman ("Goldman Decl.") ¶¶ 2-6.) Furthermore,

15 Liu waited to produce documents evidencing his registration until a few hours before

16 he filed his Motion in load file format, so that those documents would only be

17 viewable after he filed his Motion. (*Id.* ¶ 5.) Had FF known that Liu ultimately did

18 register with the California State Bar, it likely would have agreed to dismiss a portion

19 of its UCL related to the registration issue. Notably, however, the unauthenticated

20 copy of the certificate establishes that Liu was not registered as in-house counsel with

21 the State Bar for approximately two months, during which time he was paid nearly

22 $100,000 while practicing law without a license.

23      **F.**   **Liu Asserts No Basis to Dismiss FF's Declaratory Judgment Claim.**

24       Because Liu's arguments against FF's declaratory judgment claim are

25 duplicative of his legally and factually futile assertions with respect to FF's other

26

---

27 [21] Liu dedicates just two lines to FF's breach of fiduciary claim as it relates to his conduct while at FF, and relies on the same "plausibility" arguments. For the same reasons that argument fails.

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE
DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

1   causes of action, there is no basis for dismissing its claim for declaratory relief.

2   **V.      FF'S AFFIRMATIVE DEFENSES ARE SUFFICIENTLY PLED**

3           "Motions to strike are disfavored and 'will usually be denied unless the

4   allegations have no possible relation to the controversy and may cause prejudice to

5   one of the parties.'" *Deutsch-Hollandische Tabakgesellschaft Mbh & Co., Kg v.*

6   *Trendsettah USA, Inc.*, 2017 WL 7080262, at *1 (C.D. Cal. June 16, 2017) (quotation

7   omitted). "In considering a motion to strike, the court views the pleadings in the light

8   most favorable to the non-moving party." *Gibson Brands, Inc. v. John Hornby*

9   *Skewes & Co.*, 2014 WL 4187979, at *2 (C.D. Cal. Aug. 22, 2014). "Grounds for a

10  motion to strike must be readily apparent from the face of the pleadings or from

11  materials that may be judicially noticed." *Id.* at *2.  Because Liu's motion to strike

12  is based entirely upon his same vacuous arguments made as to the SACC (Mot. at

13  18:23-28), each of those arguments fail, let alone provide a basis to strike any of

14  Defendants' affirmative defenses.

15  **VI.   LIU'S REQUEST FOR SANCTIONS IS BASELESS**

16          Liu's improper request for inherent power sanctions cannot be countenanced.

17  ***First***, Liu's registration with the State Bar, which registration he never provided to

18  FF and never disclosed prior to filing his Motion, should have been disclosed to FF

19  prior to him filing the Motion during the meet-and-confer process.   That is

20  particularly true where "[t]he purpose of Local Rule 7-3 is to help parties 'reach

21  resolution and eliminate the necessity for a hearing,' which in turn promotes judicial

22  economy and the administration of justice." *R.H. v. Cnty. of San Bernardino*, 2019

23  WL 10744836, at *1 (C.D. Cal. Sept. 25, 2019) (citation omitted).  Put simply, the

24  registration issue is the exact type of issue that Local Rule 7-3 is designed to address,

25  and one that could have been "completely resolved without Court intervention, had

26  the parties conferred precisely and properly regarding the" issue.  *See Carter v.*

27  *Telecare Corp.*, 2019 WL 8989869, at *2 (C.D. Cal. Nov. 4, 2019) (denying

28  plaintiff's motion due to plaintiff's violation of Local Rule 7-3).  ***Second***, Liu's

115167695

- 23 -

extrinsic evidence regarding Sidley is the subject of FF's concurrently filed Motion to Strike.  As made clear *supra*, above, Liu's improperly-filed text messages do not show that FF was represented by independent counsel in negotiating the Employment Agreement.  At best, a dispute as to whether outside counsel looked at the document after it was finalized to ensure its terms did not violate the terms of an unrelated contract is a fact issue incapable of supporting the granting of a motion to dismiss.

Moreover, there is no legal or factual basis for Liu's attempt to circumvent the strict requirements of Rule 11, which would have required him to forego his attempted "gotcha" moment and provide the information he withheld during the meet and confer process.  *See, e.g., Intn'l Aero Prods., LLC v. Aero Adv. Paint Tech., Inc.*, 325 F. Supp.3d 1078, 1088 (C.D. Cal. Aug. 28, 2018) (citation omitted).

Dated:  April 12, 2021

Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP

By:  /s/ Jeffery M. Goldman
     Jeffery M. Goldman

Attorneys for Defendants and Counterclaimant

115167695

OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND FOR SANCTIONS