Kevin D. Hughes (Bar No. 188749)
FOUNDATION LAW GROUP LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: 424.253.1266
Email:  kevin@foundationlaw.com

Amiad Kushner (*pro hac vice*)
Akushner@seidenlawgroup.com
Jake Nachmani (*pro hac vice*)
Jnachmani@seidenlawgroup.com
Seiden Law Group LLP
322 Eighth Avenue, Suite 1704
New York, NY 10001
Telephone:   (646) 766-1914
Facsimile:    (646) 304-5277

*Attorneys for Plaintiff/Counter-Defendant,
Hong Liu*

# UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG<br><br>Defendants.<br><hr>FARADAY&FUTURE INC.,<br><br>Counterclaimant,<br><br>v.<br><br>HONG LIU,<br><br>Counter-Defendant. | **Case No:** 2:20-cv-08035-SVW-JPR<br><br>**DISCOVERY MATTER:**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF HONG LIU'S EXPEDITED MOTION FOR DETERMINATION OF URGENT PRIVILEGE ISSUE AND TO COMPEL PRODUCTION**<br><br>Complaint filed on: January 3, 2020<br><br>Second Amended Counterclaim filed on: March 11, 2021<br>**JUDGE:    Hon. Jean P. Rosenbluth**<br>**DATE:      April 23, 2021**<br>**TIME:      TBD**<br>**CTRM:      690** |

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................. 11

   I.   DEFENDANTS CANNOT USE THE ATTORNEY-CLIENT PRIVILEGE AS

   A SWORD AND A SHIELD IN THIS ACTION ............................................... 11

   II.  DEFENDANTS SHOULD BE ORDERED TO REMEDY THEIR

   MATERIALLY DEFICIENT PRODUCTION .................................................. 14

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andreoli v. Youngevity Intl., Inc.,* 2018 WL 6334284  (S.D. Cal. Dec. 5, 2018).........15

*Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 239 (N.D. Cal. 2015) ..................12

*Bittaker v. Woodford*, 331 F.3d 715, 718–19 (9th Cir. 2003) ..................................3, 12

*Columbia Pictures Television Inc. v. Krypton Broadcasting*,
259 F.3d 1186, 1196 (9th Cir. 2001) ........................................................................12

*Fox Searchlight Pictures, Inc. v. Paladino*,
106 Cal. Rptr. 2d 906 (Cal. App. 2d Dist. 2001)........................................................5

*Gen. Dynamics Corp. v. Super. Ct.*, 876 P.2d 487 (Cal. 1994)................................2, 4

*Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888)..........................11

*Madrigal v. Allstate Indem. Co*, 2015 WL 12748277 (C.D. Cal. Nov. 5, 2015) .........12

*United States v. Martin*, 278 F.3d 988 (9th Cir. 2002)...................................................12

*Wadler v. Bio-Rad Laboratories, Inc.*, 212 F. Supp. 3d 829 (N.D. Cal. 2016)............12


**Secondary Sources**

Christopher B. Mueller & Laird C. Kirkpatrick,
*Evidence: Practice Under the Rules* § 5.30 (2d ed. 1999) ...........................................12

Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*
§ 503.41[1] (Joseph M. McLaughlin ed., 2d ed. 2003) ................................................12

**Rules**
Federal Rules of Civil Procedure 37...........................................................................15

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Hong Liu ("Plaintiff" or "Mr. Liu"), by his undersigned counsel and pursuant to this Court's April 15, 2021 Order (Dkt. No. 118) and Rule 37 of the Federal Rules of Civil Procedure, submits this memorandum of points and authorities in support of his motion for a determination of urgent privilege issues and to compel defendants Faraday&Future Inc. ("FF"), Smart King Ltd. ("Smart King"), Jiawei Wang, and Chaoying Deng (collectively, "Defendants") to remedy their deficient document production.[1]

## **PRELIMINARY STATEMENT**

Defendants seek to litigate their counterclaims against Plaintiff with one hand tied behind Plaintiff's back – or both of them.  Despite having produced ***only 487 documents*** and notwithstanding the upcoming fact discovery cut off, Defendants seek to shut down Plaintiff's deposition discovery efforts by improperly asserting "privilege" over exhibits and threatening to seek disqualification of Plaintiff's counsel unless those purportedly "privileged" documents are destroyed.  Absent judicial intervention, Plaintiff's ability to defend himself against Defendants' sweeping counterclaims will be compromised by Defendants' improper use of the attorney-client privilege as both a sword and a shield.

The full extent of Defendants' misuse of the attorney-client privilege has become manifest only in the last few days.  It was not until after Defendants made their near final, limited production of 114 documents on April 7, 2021 (producing a total of only 487 documents by that date)[2] and Plaintiff's receiving confirmation from Defendants during a meet and confer on April 9, 2021 that additional productions would be limited

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint (ECF 1).  "¶__" are references to paragraphs in the Complaint.  "SACC ¶__" are references to paragraphs in FF's Second Amended Counterclaim.  References to "Kushner Decl." are to the Declaration of Amiad Kushner and the exhibits attached thereto.  Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

[2] Defendants belatedly produced thirty (30) additional documents after 5pm on April 16, 2021, as Plaintiff was finalizing this motion.

only to random, "straggling" documents that Plaintiff was able to discern the true inadequacy of Defendants' production.  However, at that point, it was unclear why Defendants' production had been so limited.  On April 14, 2021, in response to Plaintiff's pressing emails for missing documents, Defendants revealed that they were not producing the outstanding documents and, perhaps relatedly, were withholding an unknown universe of documents on privilege grounds, warranting the present motion by Plaintiff.[3]  To date, Defendants have logged approximately 1,086 documents on their privilege log, which is more than double the 487 documents that they have produced altogether.  During the April 15, 2021 conference before this Court, Defendants' counsel openly acknowledged that Defendants were limiting their production based on their assertions of privilege.

At stake here is Plaintiff's very ability to defend himself against the sweeping claims Defendants have raised against him.  Specifically, by their Second Amended Counterclaim, Defendants have asserted broadside counterclaims against Plaintiff based upon his alleged incompetence in handling ***all legal matters*** for which he was responsible as FF's General Counsel, including litigation, finance, corporate governance, and other disputes, and seek disgorgement of ***every penny*** of compensation that Plaintiff was paid during his time at FF.  These counterclaims are based upon and place at issue numerous privileged and confidential matters handled by Mr. Liu in his role as FF's General Counsel, as well as Mr. Liu's alleged communications with FF's outside counsel at Sidley Austin.  And yet Defendants improperly seek to use the

---

[3] In response to this Motion, Defendants will likely argue that Plaintiff has been aware of their view of privileged communications as early as March 15, 2021 based on Defendants letter to Plaintiffs of that day (the "March 15 Letter") and the legal authorities upon which it relies (principally, *Gen. Dynamics Corp. v. Super. Ct.*, 876 P.2d 487 (Cal. 1994)).  Such a position is unfounded, as Defendants' March 15 Letter does not concern either of the privilege issues addressed in this Motion, and the legal authorities upon which it relies, sets forth the uncontested proposition that Plaintiff cannot use privileged information to prove his wrongful termination claim.  That is not what is at stake here.

privilege as both a sword and a shield, using these communications to attack Mr. Liu, while labeling as "privileged" numerous documents that are critical to Mr. Liu's defense. This runs counter to the well settled "rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Bittaker v. Woodford*, 331 F.3d 715, 718–19 (9th Cir. 2003).

Accordingly, Plaintiff respectfully seeks the Court's intervention to ensure that Defendants do not abuse the privilege, attacking Plaintiff while significantly, if not completely, impeding Plaintiff from defending himself.  Further, the Court should order Defendants to remedy the material omissions in their production.  As detailed herein, Defendants' miniscule production of only 487 documents is riddled with massive gaps that severely prejudice Plaintiff's ability to prosecute his case and defend against Defendants' counterclaims.

For all of these reasons and and as more fully explained below, Plaintiff's Motion should be granted.

## BACKGROUND

### Defendants' Counterclaims Place Privileged Communications Directly At Issue

In the SACC, Defendants assert broad claims against Mr. Liu that are predicated upon Mr. Liu's attorney-client communications with FF, Mr. Liu's alleged misuse of FF's privileged and confidential information, and Mr. Liu's allegedly incompetent legal advice (or refusal to provide legal advice) with respect an unlimited universe of privileged and confidential matters prior to and during his service as FF's General Counsel.[4]  With breathtaking scope, Defendants allege:

- "As FF's lead counsel at Mayer, ***Liu knew of confidential and privileged information that he used in convincing FF to hire him***, and to enter into the Employment and Director Agreements he drafted while serving as FF's counsel."  SACC ¶ 7. "Liu ***was unable to perform in virtually all areas of his represented expertise, and did not possess the requisite legal skills to oversee the company's basic legal needs . . . or***

---

[4] Plaintiff has moved to dismiss the SACC on multiple grounds.  *See* ECF 108.

*guide it through litigation*." SACC ¶ 50.

- Liu's inability to provide useable advice further was manifest when he infrequently did make himself available to *discuss FF's . . . legal circumstances with other executives*." SACC ¶ 59. Liu was "*manifestly incapable of providing the functional legal . . . advice he represented he was uniquely qualified and capable of delivering*. SACC ¶ 60.

- Liu "*refused to sign contracts and agreements that required his approval and signature, including ordinary operational contracts as well as engagement agreements with outside counsel*." SACC ¶ 67.

- "Had Liu's representations about his legal abilities and experience been true, he would have been well qualified to help FF navigate the legal issues created by Evergrande's breach of its agreement to fund FF. But *Liu did not assist FF with navigating these legal issues*." SACC ¶ 56.

- "Liu did nothing to help FF with the EVelozcity suit . . . *Liu did not meaningfully contribute toward the proposed litigation strategy* FF would later employ." SACC ¶ 61.

- "*Liu asked FF's outside counsel at Sidley Austin LLP* ("Sidley") what the fair market value exercise price of his options would be. When *Sidley informed him that it would be as of the date of the grant in accordance with U.S. tax laws*, *Liu told Sidley* that he wanted the fair market value to be as of the date he was hired, which was more beneficial to Liu. When *Sidley told Liu that FF had to comply with the law*, Liu threatened to fire Sidley []." SACC ¶ 66.

But for attorney-client communications, the SACC would be allegation-less and claim-less.

In connection with Defendants' never-filed but threatened motion for judgment on the pleadings, Defendants maintained in a March 15 Letter that Plaintiff's claim for wrongful termination was subject to dismissal because, in prosecuting this claim and under *Gen. Dynamics Corp. v. Superior Ct.*, 7 Cal. 4th 1164, 876 P.2d 487 (1994) ("*General Dynamics*"), Plaintiff would be disclosing privileged communications between him and his former employer, as well as disclosing FF's confidential

information.  Kushner Decl. ¶ 3; Ex. 1 at 5-6.[5]  On March 23, 2021, the parties held a meet and confer to discuss Plaintiff's motion to dismiss the SACC and Defendants' motion for judgment on the pleadings.  Kushner Decl. ¶ 4.  During that meet and confer, and in regards to the *General Dynamics* issue raised by Defendants in their March 15, letter, Plaintiff asked Defendants if it was their position that Defendants could use privileged information at trial to prosecute their breach of contract counterclaim; Defendants answered in the affirmative.  Kushner Decl. ¶ 4; Ex. 2 at 2.

Defendants repeated this position in writing on April 1, 2021, maintaining that Plaintiff "cannot use privileged information to prosecute his breach of contract []claim, whereas *Liu's failure to perform competently on the job for FF properly gives rise to the rights [of FF] to utilize emails and communications identified in the SACC and that otherwise specifically demonstrate Liu's violations of the Rules of Professional Conduct and his subsequent failings as FF's counsel.*"  Kushner Decl. ¶ 5; Ex. 3 at 3 (emphasis

---

[5]  There is no basis to FF's contentions that *General Dynamics* precludes Plaintiff's counsel from accessing attorney client communications from Plaintiff or that Plaintiff's counsel must be disqualified for accessing any such information.  Although this case was filed sixteen months ago, FF never moved to dismiss any claims based on Plaintiff's alleged misuse of privileged and confidential information, nor did FF ever seek a protective order preventing Plaintiff from discovering privileged and confidential information from FF (or from disclosing any privileged information to his own counsel).  Instead, FF chose to assert sweeping counterclaims against Plaintiff *based entirely on privileged and confidential matters*, thereby waiving the privilege and rendering *General Dynamics* inapposite of Defendants' contention.  In any event, *General Dynamics* (and its progeny), which do not involve counterclaims by the client, expressly recognize that "*fundamental fairness requires the plaintiff be allowed to make a limited disclosure of her former client's ostensibly confidential information to her own attorneys*" in connection with wrongful termination claims against former client.  *Fox Searchlight Pictures, Inc. v. Paladino*, 106 Cal. Rptr. 2d 906, 923 (Cal. App. 2d Dist. 2001).  These cases also recognize that "*the client can[not] turn the shield of confidentiality into a sword*."  *Id.*  Thus, "[o]nce an adversarial relationship develops between the lawyer and her former client, the lawyer must be permitted "to meet the client on even terms, and not be rendered helpless by the client's self-interested version of the facts."  *Id.*

added).  However, at that time, Defendants did not identify any documents produced by Plaintiff that should be destroyed (or barred from use as exhibits at depositions) because they were "privileged" under Defendants' one-sided and self-serving definition.

**Defendants  Block Deposition Discovery Based Upon Improper Assertions of Privilege**

On April 13, 2021, at a deposition of Qing ("Bob") Ye, an  FF employee, FF's counsel claimed that a document produced by Plaintiff and introduced as an exhibit (the "Disputed Exhibit") by Plaintiff's counsel was privileged and needed to be destroyed. Kushner Decl. ¶ 6.  Plaintiff's counsel stated on the record that the Disputed Exhibit (an email from Mr. Liu to others at FF) contained *no legal advice*.  Kushner Decl. ¶ 6.[6] Nevertheless, Defendants' counsel insisted that the Disputed Exhibit be destroyed and instructed the witness not to answer any questions about the document.   Kushner Decl. ¶ 6.  Plaintiff's counsel was thus prevented from questioning Mr. Ye about the Disputed Exhibit, on which Mr. Ye was copied.  Kushner Decl. ¶ 6.

During a break in the deposition, the parties conducted a meet and confer in which the privilege issue was discussed.  The parties were unable to resolve the issue.  Kushner Decl. ¶ 7.

When Mr. Ye's deposition resumed after the break, Plaintiff's counsel noted Plaintiff's position on the record that Defendants had waived attorney-client privilege through the assertion of their counterclaims against Plaintiff which were predicated upon Plaintiff's handling of privileged and confidential matters.  Kushner Decl. ¶ 8. Plaintiff's counsel also noted on the record Plaintiff's position that it is improper for Defendants to selectively disclose privileged communications that favor Defendants'

---

[6] At the time of filing of this motion, a final transcript of this deposition was not available.  Plaintiff's counsel can submit a copy of the relevant portions of the final transcript if the Court requests (subject to conferring with Defendants regarding which portions of the transcript should be redacted).

positions in the case while concealing documents that weaken their case purportedly on the grounds of attorney-client privilege.  Kushner Decl. ¶ 8.

## Defendants Threaten to Seek Disqualification of Plaintiff's Counsel

In the early morning of April 14, 2021, Defendants' counsel sent a letter to Plaintiff contending that Plaintiff's attempt to use the supposedly "privileged" Disputed Exhibit at Mr. Ye's deposition subjected Plaintiff's counsel to disqualification. Kushner Decl. ¶ 10; Ex. 4 at 2-3 ("April 14 Letter").  Defendants' counsel failed to articulate any basis for which the Disputed Exhibit was privileged.   Moreover, Defendants sought to prohibit Plaintiff from using any purported privileged documents not just for the basis of prosecuting his wrongful termination claim, but from *defending himself against FF's counterclaims*.  In other words, two days prior to Plaintiffs' filing this motion and just nine before the end of fact discovery and with no less than ten depositions left to be taken, Defendants seek to categorically block Plaintiff from using any material they deem privileged or confidential – and notwithstanding any waiver Defendants made by putting these very communications at issue.

If requested by the Court, Plaintiffs will provide the Court with a copy of the Disputed Exhibit for its *in camera* review.

## Defendants' Materially Deficient Production

Defendants' production of documents to date has been woefully defective. Indeed, Defendants have produced only *487 documents* over the course of four rounds of production, occurring respectively on March 15, 2021 (116 documents), March 26, 2021 (185 documents), April 3, 2021 (72 documents), and April 7, 2021 (114 documents).  Kushner Decl. ¶ 14.  Given that the relevant time period in this action spans approximately 500 days (October 2017 to February 2019), Defendants' production amounts to *less than one document per day during the relevant time period*.

-7-

Further, of these 487 documents, only a fraction were produced from the two custodians who are the principal witnesses for Defendants: Yueting Jia, the chief executive officer of FF at the relevant time who terminated Mr. Liu (106 documents) and Jiawei Wang, the FF officer who negotiated Mr. Liu's employment agreements (69 documents).   Plaintiff himself is the custodian for most of Defendants' miniscule production (232 documents).   Kushner Decl. ¶ 14.   Defendants have produced ***zero*** documents from the following custodians who are referenced in the parties' pleadings:

> **Qing (Bob) Ye**
> **Xiao Qiang Wu**
> **Teddy Kang**
> **Jarrett Johnson**
> **Yanfeng (Michael) Wang**
> **Nick Sampson**
> **Butch Darrow**
> **Dag Reckhorn**
> **Jeff Risher**
> **Peter Savagian**

Kushner Decl. ¶ 14.   And Defendants produced no documents for five noticed deponents: Yanfeng Wang, Teddy Kang, Qing Ye, Jarret Johnson and Ruokun Jia.

By comparison, Plaintiff has produced ***319 documents***.   Kushner Decl. ¶ 15. There is no legitimate reason why Plaintiff, a former employee with limited access to relevant documents, should produce anywhere close to the number of documents that Defendants have produced, particularly given that defendants Smart King and FF are the corporate custodians in this action and thus are in possession of the overwhelming bulk of relevant documents.   Kushner Decl. ¶ 14-15.

More important than just the low number of documents produced is the fact that Defendants' production omits entire categories of relevant documents, such as the following:

- Internal communications concerning Plaintiff's recruitment and hiring by FF, which is expressly called for by Request No. 2.

- WeChat messages between Plaintiff and Defendant Wang concerning the drafting of the Employment and Director Compensation

Agreements, notwithstanding that they are called for by Request Nos. 1, 4 and 5, Plaintiff and Wang communicated by WeChat and that Plaintiff produced WeChat communications with Wang in his possession.

- Communications referencing Sidley Austin's role in reviewing and commenting on the terms of the Employment and Director Compensation Agreements, which are responsive to Request No. 4 (regarding "negotiation, formation, drafting, execution and/or discussion of the Employment Agreement") and Request No. 33 (regarding Defendants' affirmative defenses, which include alleged violations of ethics rules in connection with Plaintiff's Employment Agreement).

- Internal communications concerning Plaintiff's purported sub-standard job performance or any performance reviews, which are responsive to Request No. 2 (regarding Plaintiff's employment performance) and Request No. 29, which expressly asked for documents concerning Plaintiff's alleged breach of his employment agreement.

- Internal communications concerning Plaintiff's termination by FF, again called for by Request Nos. 2 and 29.

- Documents concerning Plaintiff's allegations (Compl. ¶ 76) that: "By late October 2018, a majority of Faraday's management (mostly Western managers) recognized the dangers of Mr. Jia's abusive, self-serving behavior and mismanagement. They reached out to Faraday's principal shareholder, Evergrande, seeking its support in effecting a change of management. The Company's outside counsel, Sidley Austin, was also part of this effort to save the company." These documents are responsive to Request Nos. 26 (management meetings), 28 (Plaintiff's allegations about company wrongdoing) and 23, 24, 27 (relating to the resignations and firings of Faraday management).

- Documents concerning Plaintiff's allegations (Compl. ¶¶ 77-79) that: "On October 28, 2018, Mr. Liu politely suggested at a management meeting that Mr. Jia should consider stepping back and having other managers assume his responsibilities in the best interest of the company and all stakeholders," after which "Mr. Jia stripped Mr. Liu of his Global General Counsel position on the spot" which led to the resignations of "multiple senior non-Chinese executives immediately or shortly thereafter, including co-founder and SVP Nick Sampson; SVP and Head of Product & Engineering Peter Savagian; SVP & Head of Manufacturing Dag Reckhorn; VP and Head of Quality Butch

Darrow; VP and Head of Technology Jeff Risher, and many more." These documents are directly responsive to Request Nos. 23, 24 and 27 (relating to the resignations and firings of Faraday's management) and Request No. 26 (calling for board minutes and other documents concerning management meetings).[7]

Significantly (and not surprisingly given the above), there is evidence that Defendants have failed to properly preserve and collect documents from relevant custodians.  At the April 13, 2021 deposition of Mr. Ye, it was established that Mr. Ye used a text messaging application on his personal cell phone to communicate with Plaintiff and that he used his personal computer to communicate with Plaintiff and other relevant parties to this litigation.  However, Mr. Ye admitted that he had not provided his counsel with access to his messages or his personal computer.  Kushner Decl. ¶ 9.  Mr. Ye also claimed that his phone was destroyed within the past three weeks, and for that reason he no longer had access to the application's messages from the relevant time period.  Kushner Decl. ¶ 9.

Plaintiff's counsel has repeatedly raised the inadequacies of Defendants' production with their counsel.  Indeed, on March 23, 2021, in the parties' joint stipulation that was submitted to the Court in connection with *Defendants'* motion to compel, Plaintiff's counsel stated that "It is ironic that Defendants seek to compel documents and responses from Plaintiff when the parties' production to date has been unduly one-sided" given that "it is Plaintiff, not Defendants, who has produced the bulk of documents."  ECF 101 at 4.  Plaintiff's counsel further noted that "defendants FF and Smart King, corporate entities, are the obvious custodians of the bulk of the relevant, responsive documents."  *Id.*

On April 9, 2021, just two days after Defendants' final production, Plaintiff conducted a meet and confer with Defendants and again raised the staggering deficiencies in Defendants' production.   Kushner Decl. ¶ 12-13.   In response,

---

[7]  Ex. 5 is the email setting forth Defendants' production deficiencies and Ex. 7 is Plaintiff's documents demands.

Defendants' counsel abruptly said, "Nope. No, no, no, no, no," refusing to respond to Plaintiff's concerns.  Kushner Decl. at ¶ 12; Ex. 5. Then, on April 13, 2021, Plaintiff's counsel sent a detailed email to Defendants' counsel, memorializing the April 9, 2021 meet and confer, extensively summarizing the numerous material gaps in Defendants' production, and demanding the immediate production of the missing documents. Kushner Decl. 10; Ex. 5 at 7.  On April 14, 2021,  Defendants responded to that email, stating that a "comparison of the size of Plaintiff's production to the size of FF's production is irrelevant and inaccurate." Ex. 5 at 2.  Defendants failed to provide any explanation as to why they had produced only 487 documents, an astonishingly small number for a case comprised of numerous claims and counterclaims, a 500 day relevant time period, and over a dozen custodians.[8]  Moreover, the email cryptically claimed that FF "is still rounding out its production," without specifying the volume of additional documents that may be produced or when they would be produced.  Ex. 5 at 2.  For the first time, and after depositions had already commenced, Defendants acknowledged that "translation" and "logistical" issues were delaying their production.

It was not until April 14 and in connection with Defendants' improper assertions of privilege during the Ye deposition that Plaintiff came to understand why Defendants' production had been puny and non-responsive: Defendants were withholding the bulk of relevant documents on the purported basis of attorney-client privilege.

## **ARGUMENT**

## I.   **DEFENDANTS CANNOT USE THE ATTORNEY-CLIENT PRIVILEGE AS A SWORD AND A SHIELD IN THIS ACTION**

It is well established that litigants may not use the attorney-client privilege as a sword and a shield.  As the Ninth Circuit explained:

> The rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation dates back to at least *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888), where the Court stated:

---

[8] Ex. 5 at 2.

"When Mrs. Blackburn entered upon a line of defence which involved what transpired between herself and Mr. Weatherford [her lawyer], and respecting which she testified, she waived her right to object to his giving his own account of the matter." . . . The Court thought this proposition so self-evident it felt no need to support it with either citation to authority or further analysis. In the intervening years, courts and commentators have come to identify this simple rule as the fairness principle . . . The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. . . In practical terms, this means that ***parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege.***

*Bittaker*, 331 F.3d at 718–19.

Thus, "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, [these protections] may be implicitly waived." *Columbia Pictures Television Inc. v. Krypton Broadcasting*, 259 F.3d 1186, 1196 (9th Cir. 2001). Furthermore, a party "may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject*." Madrigal v. Allstate Indem. Co*, 2015 WL 12748277, at *4 (C.D. Cal. Nov. 5, 2015); *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 239 (N.D. Cal. 2015) ("A party further cannot withhold privileged documents when the party raises a claim or defense that put the privileged communication at issue, discloses the documents to unrelated parties or discloses portions of privileged documents."); *see also* Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence: Practice Under the Rules* § 5.30, at 549 (2d ed. 1999) ("Substantial authority holds the attorney-client privilege to be impliedly waived where the client asserts a claim or defense that places at issue the nature of the privileged material."); 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 503.41[1], at 503–104.1 to.2 (Joseph M. McLaughlin ed., 2d ed. 2003) ("[T]he privilege may be found to have been waived by implication when a party takes a position in litigation that makes it unfair to protect that

party's attorney-client communications.... The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword.")). Further, "it is the burden of the party who asserts privilege to show that the privilege has not been waived." *Wadler v. Bio-Rad Laboratories, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) (citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

Here, Defendants' counterclaims are predicated upon Mr. Liu's attorney-client communications with FF before and during his employment at FF and his purported incompetence in handling *all legal matters* that he  was involved in  as FF's General Counsel.  Unless he has access to his communications with Defendants as to these matters, Mr. Liu will be unable to defend against Defendants' claims.  Mr. Liu strongly believes that the very documents Defendants are withholding *conclusively refute* Defendants' claims.

Thus, for example, Defendants claim that when Mr. Liu was representing FF as a Mayer Brown partner, he violated his fiduciary duties to FF by failing to advise FF to seek independent counsel to review his employment agreement. *See* SACC ¶ 8.  Yet at the time, FF told Mr. Liu that its outside counsel at Sidley Austin was reviewing the Employment Agreement, and Jerry Wang of FF even transmitted some of Sidley's comments to Mr. Liu.[9]  Nevertheless, FF maintains that any communications between Sidley and FF regarding the Employment Agreement are "privileged."

In its opposition to Plaintiff's motion to dismiss, FF made the following selective disclosures concerning its communications with Sidley:

- "[Sidley] viewed the Employment Agreement on the eve of its execution, after all terms had been finalized without the benefit of independent counsel, and solely to determine whether it caused any violation of FF's agreement with its then-investor, Evergrande; not to determine whether the terms of the Employment Agreement were fair and reasonable to FF."

---

[9] *See* ECF 108 at 20-22.

• "Liu's improperly-filed text messages do not show that FF was represented by independent counsel in negotiating the Employment Agreement."

ECF 115 at n. 13, 24. On the one hand, Defendants are making representations about what Sidley did and did not do in connection with Plaintiff's Employment Agreement. On the other hand, Defendants are attempting to shield from disclosure Sidley's role with that agreement. The law is uncontroverted that Defendants cannot have it both ways.

Similarly, FF maintains that Mr. Liu mishandled a dispute with its principal outside investor, Evergrande, a dispute which according to FF arose when Evergrande "failed to provide . . . contracted-for funding to FF."  SACC ¶ 53.  FF alleges that Mr. Liu "did not assist FF with navigating these legal issues."  SACC ¶ 56.  And yet, FF has placed on its privilege log **640 documents** concerning the Evergrande matter, *including numerous emails from Mr. Liu or copying Mr. Liu*.[10]  By withholding these emails, Defendants are impeding Mr. Liu from defending against FF's counterclaims concerning his handling of the Evergrande matter. Defendants are improperly attempting to use the privilege to prevent Mr. Liu from revealing the advice that he provided to FF in connection with Evergrande (memorialized in the emails Defendants are labeling as "privileged") that would enable Mr. Liu to *refute* the Defendants' counterclaims.[11]

In sum, under controlling Ninth Circuit law, Defendants cannot use the privilege as a sword and a shield in this case.  Defendants should not be permitted to assert the privilege over any communications that Defendants have placed at issue through their counterclaims.  Defendants have implicitly waived the privilege through their counterclaims, and have the burden of showing that the privilege was *not* waived.

---

[10] Ex. 6 (Defendants' privilege log).

## II. DEFENDANTS SHOULD BE ORDERED TO REMEDY THEIR MATERIALLY DEFICIENT PRODUCTION

As discussed *supra*, Defendants have produced staggeringly few documents in this case, which is deficient for several reasons.

*First*, there are no documents from several custodians (itemized *supra*) referenced in the pleadings (*i.e.*, these are individuals important to the parties' respective narratives). This is inexcusable and explains part of the deficiency.

*Second*, Defendants have produced no documents relating to multiple material issues in dispute. For example, Defendants have not produced any internal communications about the hiring of Plaintiff as General Counsel. Nor have they produced documents on the Evergrande issue discussed *supra*, or the circumstances leading to Plaintiff's termination. Not only are these documents relevant to Plaintiff's wrongful termination claim but they also directly relate to Defendants' claims about Plaintiff's performance. These documents are also relevant to Defendants' affirmative defenses, which are the subject of Plaintiff's Document Request number 33, yet Defendants have opted to ignore the request almost in its entirety.

*Third*, Defendants have withheld on privilege grounds more than twice the number of documents that they have produced. As stated above, Defendants are wrongly designating documents as privileged simply because Plaintiff may have been included in the communications, and are wrongly withholding documents whose privilege has been waived by Defendants' own claims.

Plaintiff's attempts to meet and confer with Defendants to secure the production of the missing documents have been unsuccessful.  In their April 14th email responding to a detailed itemization of all that was missing from their production, Defendants ignored the substance and instead focused on technicalities around Local Rule 37-1, summarily concluding that "we trust this correspondence clarifies alleged issues with Defendants' document production and obviates any need to further discuss these issues at all."

Given the approaching fact discovery cut off and Defendants' defiant disregard of their discovery obligations, Plaintiff has been left with no choice but to seek judicial relief to obtain the missing documents.  The Court should order Defendants to produce the missing documents promptly.  *See* Fed. R. Civ. P. 37; *Andreoli v. Youngevity Intl., Inc.*, 2018 WL 6334248, at *3-6 (S.D. Cal. Dec. 5, 2018) (granting motion to compel in light of "deficient production").

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiff's application to compel and for determination of an urgent privilege issue should be granted.  The Court should order Defendants to produce: (1) all documents and communications that Defendants have placed in issue through their counterclaims but to date have been withheld on privilege grounds; and (2) the outstanding documents set forth herein.

DATED:  April 16, 2021

FOUNDATION LAW GROUP LLP

By:/s/ Kevin D. Hughes
    KEVIN D. HUGHES
    *Counsel for Plaintiff/Counter-*
    *Defendant Hong Liu*

SEIDEN LAW GROUP LLP

By: /s/ Amiad Kushner
    AMIAD KUSHNER
    *Counsel for Plaintiff/Counter-*
    *Defendant Hong Liu*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsel of record.

Dated: April 16, 2021                                   /s/ Kevin D. Hughes

                                                        Kevin D. Hughes

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES