Kevin D. Hughes (Bar No. 188749)
FOUNDATION LAW GROUP LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: 424.253.1266
Email: kevin@foundationlaw.com

Amiad Kushner (*pro hac vice*)
Akushner@seidenlawgroup.com
Jake Nachmani (*pro hac vice*)
jnachmani@seidenlawgroup.com
322 Eightth Avenue, Suite 1704
New York, NY 10018
Telephone:   (646) 766 – 1914
Facsimile:    (646) 304 – 5277

*Attorneys for Plaintiff/Counter-Defendant,
Hong Liu*

# UNITED STATES DISTRICT COURT FOR
# THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DVISION

| | |
|---|---|
| HONG LIU,<br>    Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG<br><br>    Defendants.<br><br>FARADAY&FUTURE INC.,<br><br>    Counterclaimant,<br><br>v.<br><br>HONG LIU,<br><br>    Counter-Defendant. | **Case No:** 2:20-cv-08035-SVW-JPR<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT FARADAY&FUTURE INC.'S SECOND AMENDED COUNTERCLAIM, TO STRIKE DEFENDANT FARADAY&FUTURE INC.'S AND DEFENDANT SMART KING LTD.'S AFFIRMATIVE DEFENSES, AND FOR SANCTIONS**<br><br>Second Amended Counterclaim filed on: March 11, 2021<br><br>Judge:    Hon. Stephen V. Wilson<br>Trial Date:  June 8, 2021 |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 3

    I.   FF'S LEGAL ETHICS CLAIM SHOULD BE DISMISSED ........................ 3

    II.  FF'S CONSTRUCTIVE FRAUD CLAIM SHOULD BE DISMISSED ........ 5

    III. UNCONCIONABILITY IS INADEQUATELY ALLEGED ........................ 7

    IV. FF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ........ 9

    V.   THE UCL COUNTERCLAIM SHOULD BE DISMISSED .......................... 10

    VI. THE AFFIRMATIVE DEFENSES SHOULD BE STRICKEN .................... 11

    VII.    SANCTIONS ARE WARRANTED............................................................. 11

    VIII.   THE MOTION TO STRIKE EVIDENCE SHOULD BE DENIED ....... 11

CONCLUSION........................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP*,
  2020 WL 2833686 (S.D.N.Y. May 31, 2020) ............................................................. 5

*Bauer v. Atlantis Events, Inc.*,
  2014 WL 12603112 (C.D. Cal. Mar. 5, 2014) ............................................................ 8

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ............................................. 10

*Cruz v. Johnson and Johnson, Inc.*,
  2018 WL 7017981 (C.D. Cal. Dec. 10, 2018) ............................................................ 6

*David Welch Co. v. Erksine & Tulley*,
  203 Cal. App. 3d 884 (Cal. App. 1st Dist. 1988) ........................................................ 4

*Day v. Rosenthal*, 170 Cal. App. 3d 1125 (Cal. App. 2d Dist. 1985) ............................ 4

*EduMoz, LLC v. Republic of Mozambique*,
  2015 WL 13697385 (C.D. Cal. Apr. 20, 2015) ........................................................... 5

*Eisen v. Porsche Cars N.A., Inc.*,
  2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ............................................................... 6

*Eisenberg v. U. of New Mexico*,
  936 F.2d 1131 (10th Cir. 1991) ................................................................................. 12

*Fair v. Bakhtiari*, 195 Cal. App. 4th 1135 (2011) .......................................................... 4

*Ferguson v. Yaspan*, 233 Cal. App. 4th 676 (2014) .................................................. 3, 5

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) ...................................................... 10

*Indiezone, Inc. v. Rooke*, 720 F. App'x 333 (9th Cir. 2017) ....................................... 12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................... 6

*Krall v. Life Ins. Co. of S.W.*,
  2010 WL 11595829 (C.D. Cal. Mar. 3, 2010) ............................................................ 6

*Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365 (1997) ................................................... 4

*McGarr v. Lender Bus. Process Services*,
  2012 WL 13008440 (C.D. Cal. Jan. 13, 2012) ............................................................ 6

*Mirabito v. Liccardo*, 4 Cal. App. 4th 41 (1992) ............................................................ 4

*Murphy v. Twitter, Inc.*,
  274 Cal. Rptr. 3d 360 (Cal. App. 1st Dist. 2021) ........................................................ 9

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ........................................ 7

*Odish v. Cognitive Code Corp.*,
  2015 WL 11347592 (C.D. Cal. May 27, 2015) ...................................................... 3, 4

*Performance Team Freight Sys., Inc. v. Aleman*,
  241 Cal. App. 4th, 1233 Cal. Rptr. 3d 530 (2015) ...................................................... 8

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ......................................................................................... 7, 8

*Pizzorno v. Draper*,
  2017 WL 4712071 (C.D. Cal. July 7, 2017) ........................................................... 3, 5

*Priester v. Citizens Nat'l Tr. & Sav. Bank of Los Angeles*,
  131 Cal. App. 2d 314 (1955) ...................................................................................... 4

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*,
  399 F. Supp. 3d 1018 (C.D. Cal. 2019) ..................................................................... 9

*Rhodes v. Buechel*, 258 A.D.2d 274 (1999) ................................................................... 5

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,
  6 Cal. 5th 59, 425 P.3d 1 (2018) ................................................................................ 4

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  498 F.3d 976 (9th Cir. 2007) ...................................................................................... 7

*Triad Assocs., Inc. v. Chicago Hous. Auth.*,
  892 F.2d 583 (7th Cir. 1989) .................................................................................... 12

*U.S.A. v. Comco Mgmt. Corp.*,
    2009 WL 10672579 (C.D. Cal. Nov. 2, 2009) ........................................................... 7

*William Morris Endeavor Ent., LLC v. Writers Guild of Am.*,
    478 F. Supp. 3d 932 (C.D. Cal. 2020) ..................................................................... 7

**Rules and Codes**

Federal Rule of Civil Procedure Rule 9(b) ............................................................. 1, 5, 6

Federal Rule of Civil Procedure Rule 11 ..................................................................... 11

California Probate Code § 16004 ............................................................................. 3, 4

California Rule of Professional Conduct 3-300 ............................................................ 3

## PRELIMINARY STATEMENT

FF has had three chances to adequately plead its counterclaims. Its first two attempts failed. FF's most recent attempt, the SACC, is merely a dilatory repackaging of FF's defectively-pled fraud claims based on purported "facts" that FF has been in possession of for years. And once again, the allegations are inadequate. The time has come to dismiss FF's counterclaims with prejudice.[1]

Nothing in FF's Opposition Brief provides a basis for the Court to deny dismissal. *First*, FF cannot rebut Plaintiff's showing that FF's claim for a violation of the Rules of Professional Conduct fails as a matter of law, as the SACC does not set forth a predicate statutory basis for liability. Moreover, FF cites to no case law supporting its dubious view that attorney ethics rules can invalidate a client's agreement to employ an attorney where that agreement is the only matter at issue. Here, there is no "conflict."

*Second*, FF's counterclaim for constructive fraud is defective under Rule 9(b). Again citing no relevant case law, FF fails to identify with particularity what Plaintiff purportedly did not disclose about the Employment Agreement that he should have disclosed. All terms of the Employment Agreement were fully known to FF.

*Third*, FF's counterclaim for unconscionability is inadequately pled. Citing no case law yet again, FF relies on the sole argument that the Employment Agreement was procedurally unconscionable because Defendant Wang happens to be a non-native English speaker. This fails on its face. The SACC's allegations as to substantive unconscionability are conclusory and devoid of factual and legal support.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Complaint (ECF 1) and Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Dismiss FF's Second Amended Counterclaim (ECF 108-1). "¶__" are references to paragraphs in the Complaint. "SACC ¶__" are references to paragraphs in FF's Second Amended Counterclaim. References to "Pl. Br." are to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Dismiss (ECF 108-1); references to "FF Br." are to FF's Opposition to Plaintiff's Motion to Dismiss (ECF 115). Unless otherwise noted, all emphasis is added, and all internal quotations and citations are omitted.

*Fourth*, FF's breach of contract claim fails, as the SACC neither sets forth an express provision of the Employment Agreement that Plaintiff purportedly breached nor alleges how Plaintiff breached that provision. FF improperly attempts to graft alleged extra-contractual promises onto the Employment Agreement and then maintains that Plaintiff did not perform his duties in accordance with those promises. At best, this amounts to a post-hoc performance review, not a colorable breach of contract claim.

*Fifth*, FF now admits that it should have dismissed its UCL counterclaim. Rightfully so. On the pleadings, it is nonsensical. Moreover, FF concedes that Plaintiff was rightfully practicing law in California as FF's General Counsel.

As to Plaintiff's motion to strike FF and Smart King's affirmative defenses, FF's only argument is that its counterclaims are sufficiently pled. They are not; so the corresponding affirmative defenses should be stricken.

As to Plaintiff's motion for sanctions, FF's primary objection is that Plaintiff should have notified FF's counsel that FF's claims were meritless and frivolous. In so doing, FF's counsel inappropriately passes the buck; FF's counsel had a duty to investigate FF's claims before bringing them. Clearly, it did not do so.

Finally, as to Defendants' motion to strike evidence (ECF 116), Defendants' arguments are entirely misplaced. Seeking to avoid having the Court review damning evidence, Defendants maintain that these documents constitute improper submissions on a motion to dismiss and are otherwise improperly submitted exhibits under the Federal Rules of Evidence. Both arguments fail. Plaintiff submitted documents not in support of his motion to dismiss but in support of his motion for sanctions. The Federal Rules of Evidence is likewise inapplicable; quite obviously these are not trial exhibits.

Plaintiff's Motion should be granted for all these reasons, as set forth more fully below.

# ARGUMENT

## I.     FF'S LEGAL ETHICS CLAIM SHOULD BE DISMISSED

FF incorrectly maintains that an alleged violation of the Rules of Professional Conduct, standing alone, is a basis to rescind the Employment Agreement.  *See* FF. Br. at 9-10.   FF is wrong, as FF's own authorities demonstrate.  *See Odish v. Cognitive Code Corp.*, 2015 WL 11347592, at *6 (C.D. Cal. May 27, 2015) ("A violation of the Rules of Professional Conduct subjects an attorney to disciplinary proceedings, but does not in itself provide a basis for civil liability."); *Ferguson v. Yaspan*, 233 Cal. App. 4th 676, 684 (2014) ("Rule 3–300 does not itself provide a basis for civil liability").

Contrary to what FF maintains, a violation of the Rules of Professional Conduct ***standing alone*** cannot serve as a basis for rescission of the Employment Agreement; a statutory violation must also be alleged.  *See Odish*, 2015 WL 11347592 at *7 (noting that California Probate Code § 16004 "is a statutory complement to rule 3-300") *Pizzorno v. Draper*, 2017 WL 4712071, at *6 (C.D. Cal. July 7, 2017) (recognizing that California Probate Code § 16004 is the basis for liability, not the Rules of Professional Conduct).  Indeed, where a violation of the Rules of Professional Conduct is alleged for the purpose of rescinding an agreement, a court analyzes the requirements of Probate Code § 16004 to determine whether the moving party has made the requisite showing. *See Pizzorno*, 2017 WL 4712071 at *6-7 (refusing to revoke agreement because no violation of Probate Code § 16004); *Ferguson*, 233 Cal. App. 4th at 688 (same).

Here, the SACC alleges no such statutory violation.  Dismissal is thus warranted.[2]

Additionally, the SACC's allegations cannot give rise to a violation of the Rules of Professional Conduct.  Indeed, FF has failed to cite a single case in which a court invalidated an ***employment agreement*** between an attorney and a client based on an alleged violation of legal ethics rules where the employment agreement was the only matter at issue.  For example, FF's reliance on *Odish* is misplaced.  There, unlike here,

---

[2] FF misleadingly refers to "*Liu's violations of . . . Probate Code § 16004*" (FF. Br. at 20 n. 18)  without mentioning that the SACC alleges no such statutory violations.

and in addition to plaintiffs' setting forth a violation of Probate Code § 16004, the agreements at issue concerned *investments to be made in a joint venture between the attorney and his client* in addition to the client's employment of the attorney as its in-house counsel. *See Odish*, 2015 WL 11347592, at *1. Here, the only matter at issue is Plaintiff's employment by FF. FF's reliance on *Priester* for the proposition that any attorney-client agreement is "presumptively invalid" (FF Br. at 9) is inapposite here. There, the agreement at issue concerned *a conveyance of real estate from the client to the attorney*, not an employment agreement. *See Priester v. Citizens Nat'l Tr. & Sav. Bank of Los Angeles*, 131 Cal. App. 2d 314, 315 (1955). *Fair* is likewise inapposite; there, an attorney and his client jointly invested in real estate. *See Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1142 (2011). FF's other authorities are equally unavailing.[3]

FF's application of the ethics rules is unprecedented and demonstrably wrong. In FF's view, any client could rescind any employment agreement with any lawyer at any time so long as the lawyer did not allegedly advise the client in writing to seek independent counsel. This position is absurd: it would create a new form of liability, casting into question thousands of employment agreements between clients and their in-house counsel, to counsel's prejudice. Indeed, **none** of the cited provisions of the ethics rules require this. It is inconceivable that such a hidden ethics rule existed and was not revealed until FF's litigation counsel raised it here, in FF's third attempt to

---

[3] *See, e.g.*, *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 68, 425 P.3d 1, 5 (2018) (law firm representing client contemporaneously represented party that was suing client); *Mirabito v. Liccardo*, 4 Cal. App. 4th 41, 43 (1992) (attorney advised client to invest in ventures in which attorney was secretly involved); *David Welch Co. v. Erksine & Tulley*, 203 Cal. App. 3d 884, 890-92 (Cal. App. 1st Dist. 1988) (attorneys used confidential information obtained during representation to take clients' accounts); *Day v. Rosenthal*, 170 Cal. App. 3d 1125, 1146-49 (Cal. App. 2d Dist. 1985) (attorney received undisclosed profits form investment of his client's funds, created alter ego corporations and used those entities to siphon client's money, and secretly represented promoters of ventures into which he induced his clients to invest); *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365, 1367–68 (1997) (attorney improperly converted client-entrusted funds for his own use and lied about funds).

plead a viable counterclaim. The only "evidence" FF cites in support of this unknown rule – an article in "Business Law News" – makes clear that *no such ethical rule exists*.[4]

Relatedly, FF fails to rebut the fact that the SACC alleges no colorable conflict. *See* Pl. Br. at 6-8. Here, the SACC is devoid of allegations that Plaintiff was conflicted from joining FF because (i) Plaintiff had any conflicting representations with other clients; (ii) Plaintiff had an undisclosed conflicting interest with FF; or (iii) Plaintiff entered into a business venture with FF aside from his joining FF as its employee. The mere fact that Plaintiff was an equity partner at Mayer Brown at the time of the Employment Agreement (and that Mayer Brown represented FF) does not set forth a legally-cognizable conflict arising out of Plaintiff's joining FF.[5]

## II. FF'S CONSTRUCTIVE FRAUD CLAIM SHOULD BE DISMISSED

FF maintains that its constructive fraud counterclaim satisfies Rule 9(b). *See* FF Br. at 15-16. FF is wrong.

*First*, FF's attempt to relax the pleading standard fails (*see* FF Br. at 15 n. 10). Rule 9(b) applies. *See EduMoz, LLC v. Republic of Mozambique*, 2015 WL 13697385,

---

[4] *See* https://www.milbank.com/images/content/2/3/23428/Business-Law-News-Part-1.pdf at p. 22 (last visited April 19, 2021) ("But how do [the ethical rules] apply to the in-house attorney who is in an employer employee relationship with the client? Once again, *the application is a little awkward, and there is little in the way of case law and interpretive opinions to provide any guidance here.*").

[5] Moreover, where as here independent counsel reviews his client's agreement with an attorney counterparty, any requirement that the attorney counterparty advise the client to retain independent counsel is obviated. *See Pizzorno*, 2017 WL 4712071 at *6 (attorney not required to advise clients to seek independent counsel where clients consulted independent counsel); *Ferguson*, 233 Cal. App. 4th at 688 (party's retention of independent counsel discharges its attorney from any obligation to advise party to retain independent counsel). FF's cited authorities are therefore inapposite. *See, e.g.*, *Applied Energetics, Inc. v. Stein Riso Mantel McDonough, LLP*, 2020 WL 2833686, at *1-2 (S.D.N.Y. May 31, 2020) (law firm knew client never retained independent counsel and facilitated issuance of equity that it knew was contrary to client's corporate bylaws); *Rhodes v. Buechel*, 258 A.D.2d 274, 275 (1999) (no evidence that client was advised by independent counsel; agreement at issue was not employment agreement).

at *30 (C.D. Cal. Apr. 20, 2015) ("constructive fraud claims are subject to the particularity requirements of Rule 9(b)"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (nondisclosure and omission claims must comply with Rule 9(b)).

*Second*, FF has no answer to the fact that the SACC does not allege an actionable omission with particularity. *See* Pl. Br. at 9-10. According to FF, Plaintiff was required to "fully disclose all material facts within his knowledge and of which FF was ignorant." FF Br. at 16. However, FF fails to address the core question: ***what was not disclosed that should have been disclosed?*** All terms of the Employment Agreement, including Plaintiff's cash and equity compensation, were fully disclosed to FF; the SACC fails to allege that Plaintiff omitted any material facts, warranting dismissal. *See Eisen v. Porsche Cars N.A., Inc.*, 2012 WL 841019, at *3-4 (C.D. Cal. Feb. 22, 2012) ("in order to plead the circumstances of omission with specificity plaintiff must describe the content of the omission and where the omitted information should or could have been revealed"); *Cruz v. Johnson and Johnson, Inc.*, 2018 WL 7017981, at *3 (C.D. Cal. Dec. 10, 2018) (dismissing constructive fraud claim because complaint did "not allege the specific content of any alleged misrepresentations or partial disclosures").

FF's allegation that Plaintiff threatened to fire outside counsel if he were not granted the equity promised under the Employment Agreement (*see* FF Br. at 16) fails to plead fraud. This allegation relates to an alleged *post-employment* event. FF cannot base a fraud claim upon an alleged nondisclosure of a future event. A crystal ball is not a basis for fraud. *See McGarr v. Lender Bus. Process Services,* 2012 WL 13008440, at *3 (C.D. Cal. Jan. 13, 2012) ("Fraudulent representations, to constitute ground for relief, must be as to existing and material facts"); *Krall v. Life Ins. Co. of S.W.,* 2010 WL

11595829, at *2 (C.D. Cal. Mar. 3, 2010) (future events are "not actionable").[6]

## III. UNCONCIONABILITY IS INADEQUATELY ALLEGED

FF fails to rebut Plaintiff's arguments that the SACC does not adequately allege unconscionability. *First*, FF's sole argument concerning how the SACC purportedly sets forth procedural unconscionability is based on the conclusory allegation that the process of drafting the Employment Agreement had to have been unfair because FF's primary negotiator for the Employment Agreement, Defendant Wang, is a native Mandarin speaker. *See* FF. Br. at 18. This is absurd.

The mere allegation that Defendant Wang is not a native English speaker does not establish oppression or surprise. FF does not allege that Mr. Wang, the head of FF's capital markets department, does not speak English or that he was incapable of negotiating with Mr. Liu in English. The SACC does not allege that FF somehow lacked negotiation power and meaningful choice or that some critical provision of the Employment Agreement was hidden from FF within legalese or an overly-complicated printed form. FF fails to cite a single legal authority holding that a businessperson's being a non-native English speaker constitutes a basis for procedural unconscionability. *See cf.* Pl. Br. at 12-13 (citing authorities finding no procedural unconscionability).[7] Indeed, in the United States of America, millions of non-native English speakers

---

[6] FF's cited authorities are inapposite. *See William Morris Endeavor Ent., LLC v. Writers Guild of Am.*, 478 F. Supp. 3d 932, 944 (C.D. Cal. 2020) (unlike here, plaintiff specifically alleged omitted contract terms); *U.S.A. v. Comco Mgmt. Corp.*, 2009 WL 10672579 (C.D. Cal. Nov. 2, 2009) (outlier case that has never been cited; did not concern misrepresentations or omissions but fraudulent conveyance under CUFTA).

[7] FF criticizes Plaintiff's cited authorities by speciously maintaining they are somehow innapplicable because they concern the purported unconscionability of an agreement's arbitration clause. *See* FF Br. at 19 n. 15. Notwithstanding FF's fictional distinction, FF obliviously fails to recognize that its own authorities concern arbitration clauses. *See, e.g.*, *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 982 (9th Cir. 2007); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006); *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).

conduct business in English every day, including FF's current CEO.[8] There is simply no legal basis for the proposition that a court can rescind a contract merely because the party seeking rescission is not a native English speaker.

*Second*, recognizing the SACC's inadequate allegations concerning procedural unconscionability, FF seeks to invalidate the Employment Agreement on the basis of substantive unconscionability alone. *See* FF Br. at 17. In FF's view, because the Employment Agreement conferred benefits on Plaintiff, the Employment Agreement had to have been substantively unconscionable. *See* FF Br. at 18-19. Not so.

FF fails to cite a single authority under California law holding an agreement to be unconscionable based on a finding of substantive unconscionability alone. To the contrary, both unconscionability prongs are always required. *See Performance Team Freight Sys., Inc. v. Aleman*, 241 Cal. App. 4th 1233, 1247, 194 Cal. Rptr. 3d 530 (2015) ("Substantive unconscionability alone does not render a contract unenforceable. Procedual unconscionability must also be shown."); *Pinnacle Museum Tower Assn.*, 55 Cal. 4th at 247 ("Both procedural unconscionability and substantive unconscionability must be shown"). Accordingly, the SACC's substantive unconscionability allegations are of no matter. *See Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014) (declining to review substantive unconscionability as procedural unconscionability was not alleged).[9]

Moreover, FF fails to cite a single authority demonstrating that the terms of the Employment Agreement are as a matter of law so one-sidedly beneficial to Plaintiff that they "shock the conscience." Pl. Br. at 14. FF fails to plead any facts demonstrating that Mr. Liu's compensation was in any way one-sided, such as any facts regarding the typical "market" compensation promised to senior equity partners at elite global law

---

[8] *See* https://www.ff.com/us/press-room/FF-appoints-new-CEO/ (last visited April 19, 2021).

[9] As to procedural unconscionability, FF concedes the inadequacy of its allegations by offering to amend its pleadings ***for a fourth time*** in order to purportedly provide additional facts. *See* FF Br. at 18, n. 14. This is unwarranted.

firms who are asked to resign their partnerships and work for startup companies with no revenues. FF's *ipse dixit* proclamation that the Employment Agreement is substantively unconscionable does not make it so. *See Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1031 (C.D. Cal. 2019) (noting that to allege substantive unconscionability a complaint must do more than maintain that "the contract terms are unconscionable"); *Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360, 378 (Cal. App. 1st Dist. 2021) (no substantive unconscionability where plaintiff "offer[ed] no specific factual allegations" and made only "conclusory allegations").

## IV.  FF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

FF has no reasonable answer to the fact that the SACC fails to specifically identify an express provision of the Employment Agreement that Plaintiff purportedly breached and explain how such a provision was supposedly breached. FF's sole argument is that Plaintiff did not perform his "duties and responsibilities" at a level "commensurate with executive positions" or his alleged qualifications and experience. *See* FF Br. at 21. FF does not dispute that Mr. Liu actually assumed the positions he agreed to assume under the Employment Agreement, such as FF's General Counsel. Indeed, FF's argument is not that Mr. Liu *did not serve in the positions he promised to serve in*, but that Mr. Liu *did not perform adequately* in those positions.

FF fails to cite any authority to support its specious position that the Employment Agreement's generalized requirement that Mr. Liu perform "duties and responsibilities" at a level "commensurate with executive positions" can be breached because of FF's gripes concerning Mr. Liu's performance. *See* Pl. Br. at 16 (citing authorities dismissing contract claims based on vague provisions, where no breach could be objectively identified). This argument, taken on its face, would allow FF to convert *any dissatisfaction it has with Mr. Liu's performance*, no matter how trivial or subjective, into a breach of contract. FF seeks to have this action's jury trial turned into a spectacle in which every meeting, phone call, or email involving Mr. Liu can be examined so that FF can publicly attack Mr. Liu's performance – without reference to any specific,

objective term of the Employment Agreement that was allegedly breached. This counterclaim should be dismissed.

## V. THE UCL COUNTERCLAIM SHOULD BE DISMISSED

FF's UCL counterclaim fails. FF cannot remedy the fact that its counterclaim is nonsensical in alleging that "*in entering the Employment Agreement*" Plaintiff was not licensed to practice law in California (SACC ¶¶1, 9, 129-31). *See* Pl. Br. at 15. How could Plaintiff have engaged in the unauthorized practice of law in California where the SACC does not allege that Plaintiff was practicing law in California before FF hired him? Dismissal is warranted based on this obvious pleading defect.

Moreover, FF admits that if at the time it filed the SACC it knew what it knows now about Plaintiff's becoming a licensed California in-house counsel, it never would have brought this counterclaim. *See* FF Br. at 22 ("Had FF known that Liu ultimately did register with the California State Bar, it likely would have agreed to dismiss a portion of its UCL related to the registration issue."). Rather than further wasting this Court's time and resources, FF should have voluntarily dismissed this counterclaim.

Counsel has a duty to reasonably investigate claims before filing them. *See Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded."); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (an "attorney has a duty prior to filing a complaint … to conduct a reasonable factual investigation").

Here, ignoring its counsel's duty to investigate, FF maintains it was *Plaintiff's* burden to inform FF that its counterclaim was meritless. This is absurd. The most cursory of investigations by FF would have demonstrated the meritlessness and frivolousness of this counterclaim. Indeed, FF has been in possession of facts demonstrating this counterclaim's unfoundedness for years – far longer than the interim period between FF's bringing this claim and Plaintiff's filing this motion. For example,

-10-

FF has been in possession of emails demonstrating that its legal department assisted Plaintiff in attaining his in-house license. Same as to the fact that FF paid for Plaintiff's California Bar registration fee and that the Company's head of human resources endorsed Plaintiff's character and fitness application in connection with his in-house application. *See* Pl. Br. at 22-23. FF's transparent attempt to pass the buck amounts to an excuse that the dog ate its homework. It did not; FF did not do its homework.

## VI. THE AFFIRMATIVE DEFENSES SHOULD BE STRICKEN

FF's only argument that its affirmative defenses should not be stricken is that its corollary counterclaims are well-pled. *See* FF Br. at 23. Not so. As FF's counterclaims fail, so too should its corresponding affirmative defenses. *See* January 28 Order at 2 (striking affirmative defense because underlying counterclaim was inadequately pled).

## VII. SANCTIONS ARE WARRANTED

In response to Plaintiff's motion for sanctions concerning the frivolous and bad faith UCL claim, FF does not challenge that sanctions are warranted against its counsel for the reasons set forth above in Section V and in Section III.B of Plaintiff's Opening Brief. Instead, FF's only response is that Plaintiff should have informed FF of Plaintiff's California Bar license so as to avoid a "gotcha" moment. *See* FF. Br. at 24. As set forth above, the underlying facts were in FF's possession for years, and accordingly FF's counsel was reckless in bringing this claim. Moreover, Plaintiff seeks sanctions under provisions that do not have the notice requirements of a Rule 11 motion. As to sanctions concerning Sidley Austin's oversight of the Employment Agreements, FF's maintaining that Sidley Austin had no relevant involvement despite being confronted with documents demonstrating the firm's oversight underscores FF's bad faith omission.

## VIII. THE MOTION TO STRIKE EVIDENCE SHOULD BE DENIED

Defendants' motion to strike evidence (ECF 116) ("MSE") is entirely misplaced. Faced with evidence that places its counsel squarely in sanctionable territory, Defendants waste pages griping that evidence submitted by Plaintiff in connection with his motion for sanctions was improperly submitted in support of Plaintiff's motion to

dismiss. *See* MSE at 1-3. Defendants micharacterize Plaintiff's Motion.

*First,* Plaintiff submitted the complained-of exhibits not in support of Plaintiff's motion to dismiss but in support of his motion for sanctions. *See* Pl. Br. at 2 ("***Notwithstanding that the SACC fails to state a claim***, the SACC's allegations omit material facts, warranting sanctions on FF and its counsel); *see id.* 20-23. Plaintiff's challenges to FF's professional ethics, fiduciary duty, and constructive fraud counterclaims do not mention Sidley Austin or reference a single exhibit. *See* Pl. Br. at 5-10. Where extrinsic evidence is referenced in connection to FF's unconscionability and UCL counterclaims, Plaintiff, as it does here on Reply, has demonstrated why those counterclaims fail on the pleadings. *See* Pl. Br. at 13-14 (as to unconscionability); *id.* at 15 (as to FF's UCL claim). Such submissions are entirely appropriate, and Defendants' motion should be denied on this basis alone. *See Indiezone, Inc. v. Rooke*, 720 F. App'x 333, 336 (9th Cir. 2017) (bad faith conduct established by evidence outside the pleadings); *see also Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 596, n. 10 (7th Cir. 1989) (district court properly reviewed documents extrinsic to the complaint in connection with sanctions motion even though party also filed a motion to dismiss); *Eisenberg v. U. of New Mexico*, 936 F.2d 1131, 1133 (10th Cir. 1991) (consideration of papers outside of the pleadings is appropriate on motion for sanctions).

*Second,* Defendants' reliance on the Federal Rules of Evidence in support of their proposition that Plaintiff's exhibits have been improperly submitted (*see* MSE at 3-7) misses the mark. Here, the Federal Rules of Evidence are inapplicable, as the submitted exhibits do not constitute "evidence" that Plaintiff seeks to admit at trial. Instead and quite obviously, they are exhibits submitted in connection with a motion for sanctions, which, as referenced above, are entirely appropriate for the Court to review here.

## **CONCLUSION**

For all the foregoing reasons and those in Plaintiff's Opening Brief, Plaintiff's motions to dismiss, strike, and for sanctions should be granted in their entirety.

DATED: April 19, 2021

FOUNDATION LAW GROUP LLP

By: /s/ Kevin D. Hughes
    KEVIN D. HUGHES
    *Attorneys for Plaintiff/Counter-Defendant*
    *HONG LIU*


SEIDEN LAW GROUP LLP


By: /s/ Amiad Kushner
    AMIAD KUSHNER
    JAKE NACHMANI
    *Attorneys for Plaintiff/Counter-Defendant*
    *HONG LIU*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsel of record.

Dated: April 19, 2021

                                             /s/ Kevin D. Hughes
                                             Kevin D. Hughes

-15-
REPLY MEMORANDUM OF POINTS AND AUTHORITIES