ALAN J. KESSEL, Bar No. 130707
alan.kessel@troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone: 949.622.2700
Facsimile:  949.622.2739

Attorneys for Defendant SMART KING LTD. and Defendant and
Counterclaimant FARADAY&FUTURE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>              Plaintiff,<br><br>       v.<br><br>FARADAY&FUTURE INC.,<br>SMART KING LTD., JIAWEI<br>WANG, and CHAOYING DENG,<br><br>              Defendants. | Case No.  2:20-cv-08035-SVW-JPR<br><br>The Honorable Jean P. Rosenbluth<br><br>**DISCOVERY MATTER:**<br><br>**OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR DETERMINATION OF URGENT PRIVILEGE ISSUE AND TO COMPEL PRODUCTION** |
| AND RELATED COUNTERCLAIM. | |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

115372909

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1

II.   STATEMENT OF FACTS ................................................................. 3

    A.   The Parties and Liu's Claims ................................................. 3

    B.   The Employment Agreement and Liu's Ethical Violations ................ 3

    C.   Liu Failure to Perform Specified Job Duties ........................... 4

    D.   Liu's Complaint and Faraday's Operative SACC ........................ 5

    E.   FF Production of Non-Privileged Documents and Privilege Logs ....... 6

    F.   Liu and His Counsel's Revelation of Their Unauthorized
         Possession and Use of FF's Privileged Information ..................... 7

III.  ARGUMENT ........................................................................ 11

    A.   The Court Should Not Authorize the Further Misuse, or Compel
         the Further Disclosure, of FF's Privileged Information ................. 11

        1.   *General Dynamics* Bars the Use of FF's Privileged
              Information to Prosecute Liu's Wrongful Discharge
              Claim ............................................................... 12

        2.   California Disqualification Law Also Bars the Use of
              FF's Privileged Information ....................................... 15

    B.   Liu Cannot Establish a Wholesale Waiver of the Attorney-Client
         Privileged Based on Faraday's Alternative Breach Claims ............... 17

    C.   Liu Cannot Legally Compel the Production of Privileged or
         Non-Privileged Documents that Do Not Exist ........................... 21

IV.   CONCLUSION ..................................................................... 24

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR
DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) ........................................................................ 19, 21

*Clark v. Super. Ct.*,
    196 Cal. App. 4th 37 (2011) ......................................................................... 16, 23

*Garcia v. HomEq Servicing Corp.*,
    No. CIV-F-09-0374 AWI SMS, 2009 U.S. Dist. LEXIS 77697
    (E.D. Cal. Aug. 18, 2009) .................................................................................. 18

*General Dynamics Corp. v. Super. Ct.*,
    7 Cal. 4th 1164 (1994) ............................................................................... *passim*

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) ............................................................................. 18

*Held & Hines LLP v. Hussain*,
    No. 16-CV-5273 (JSR)(SN), 2018 WL 4233809 (S.D.N.Y. July 31,
    2018) ................................................................................................................. 21

*IGT v. All. Gaming Corp.*,
    No. 2:04-cv-1676-RCJ-RJJ, 2007 U.S. Dist. LEXIS 62395 (D. Nev.
    Aug. 20, 2007) ............................................................................................... 6, 19

*Nat'l Academy of Recording Arts & Sci., Inc. v. On Point Events, LP*,
    256 F.R.D. 678 (C.D. Cal. 2009) ..................................................................... 23

*Purecircle United States v. Sweegen, Inc.*,
    No. 8:18-cv-01679-JVS, 2020 U.S. Dist. LEXIS 133148 (C.D. Cal.
    June 17, 2020) ............................................................................................. 23, 24

*Rico v. Mitsubishi Motors Corp.*,
    42 Cal. 4th 807 (2007) ....................................................................... 11, 16, 23

*State Comp. Ins. Fund v. WPS, Inc.*,
    70 Cal. App. 4th 644 (1999) ............................................................... 11, 15, 23

*Stevenson v. Super. Ct.*,
    16 Cal. 4th 880 (1997) ...................................................................................... 12

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR
DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

3

*Tapia v. Huntington Park Police Dep't,*
    No. CV 09-07624 VBF, 2010 U.S. Dist. LEXIS 152015 (C.D. Cal.
    May 5, 2010) .............................................................................................. 3, 23, 24

**Other Authorities**

61A Am Jur 2d Pleadings § 43 (2021) ..................................................................... 18

California Rules of Professional Conduct 3-300, 3-310 and 4-200 .......................... 3

Local Rule 37-1 ............................................................................................. 2, 21, 22

Local Rule 37-2 ............................................................................................. 2, 21, 22

Local Rule  37-3 ...................................................................................................... 22

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR
DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff and Counter-Defendant Hong Liu's ("**Liu**") Expedited Motion for Determination of Urgent Privilege Issue and to Compel Production (the "**Motion**") improperly asks this Court to:

1.  Condone Liu's and his counsel's past and threatened future ethical and legal violations, manifest in their illicit possession and use of Defendant and Counterclaimant Faraday&Future Inc.'s ("**Faraday**") and Defendant Smart King, Ltd.'s ("**Smart King**") (collectively, "**FF**") privileged information to prosecute Liu's alleged wrongful termination claim in this action (the "**Ethical Violations Issue**"); and to

2.  Compel FF's production of privileged and unspecified non-privileged documents that Liu speculates exist, in violation of both Ninth Circuit law and the mandatory discovery dispute procedures prescribed by the Local Rules (the "**Production Issue**").

As established in this Opposition, neither request can withstand scrutiny for the following reasons:

**First**, with respect to the Ethical Violations Issue, Liu judicially admits the "uncontested proposition" that he cannot legally "use [FF's] privileged information" to "prove his wrongful termination claim" in this action under controlling California Supreme Court law.  (*See* Mot. at p. 2, n.3, *citing General Dynamics Corp. v. Super. Ct.*, 7 Cal. 4th 1164 (1994).)  Consistent with that dispositive admission, Liu's counsel's receipt, retention and misuse of the privileged information Liu misappropriated from FF shortly before his termination in early 2019 to prosecute Liu's wrongful termination claim subjects that counsel to disqualification under equally well-settled California law.  *See discussion and authorities cited, infra,* at Section III.A.2.  In a gambit to now avoid that governing law and retroactively justify his and his counsel's legally disqualifying conduct, Liu asks the Court to find that FF has wholesale waived the attorney-client privilege

- 1 -

based solely on Faraday's assertion of certain defensive claims for breach of contract and breach of fiduciary duty in its Second Amended Counterclaim ("**SACC**"), which claims are based upon Liu's failure to perform his job duties with respect to a handful of specifically enumerated subject matters.  (SACC ¶¶ 50, 55-59, 61, 69-70.)  No law countenances, let alone remotely requires, the imposition of a blanket waiver under these circumstances, particularly where Liu admittedly seeks to use FF's privileged information as a weapon to prove his affirmative claim that he was wrongfully discharged in retaliation for reporting "compliance issues and violations of law" that supposedly occurred at FF.  (Compl. ¶¶ 132-133; *see also discussion and evidence cited, infra*, at Section II.F).

As Liu *now* admits, California Supreme Court law could hardly be more clear that "a wrongful discharge in violation of fundamental public policy claim [that] cannot . . . be fully established without breaching the attorney-client privilege . . . must be dismissed in the interest of preserving the privilege[,] *General Dynamics*, 7 Cal. 4th at 1190, and Liu cannot vitiate that principle under the guise of defending himself against FF's contention that it terminated him for lawful reasons.  Indeed, were that not the case, every in-house counsel alleging wrongful termination would be able to compel its former employer to broadly waive the privilege in order to establish a valid, non-pretextual reason for the attorney's discharge.  That clearly is not the law.  *Id.* at 1192 (recognizing that "[o]f course, the defendant employer is always free to challenge plaintiff's claim by demonstrating the discharge was motivated by [lawful] reasons").

**Second**, with respect to the Production Issue, there is no legal or factual basis for relieving Liu from Local Rule 37-1 and 37-2's governing requirements for discovery motions, particularly where, as here, Liu exclusively seeks to compel the production of (i) privileged records to which he is not legally entitled; and (ii) speculative non-privileged documents that do not exist.  As established below, FF is in the process of imminently completing its production of all relevant

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR
DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

documents, including all privileged email communications that Liu authored relating to the subject matters specifically enumerated in support of the SACC's allegation that Liu failed to satisfactorily perform his job duties—accordingly, there is nothing to legally compel.  *See, e.g., Tapia v. Huntington Park Police Dep't*, No. CV 09-07624 VBF (SSx), 2010 U.S. Dist. LEXIS 152015, at *4-5 (C.D. Cal. May 5, 2010) ("A party's mere suspicion that additional documents exist does not justify a motion to compel.").

The Motion is required to be denied.

## II.    STATEMENT OF FACTS

### A.    The Parties and Liu's Claims

Between April 2014 and February 2018, Liu was a New York attorney and a partner at Mayer Brown LLP ("**Mayer**").  (SACC ¶ 1; Compl. ¶ 22.)  Faraday is an electric car company headquartered in Los Angeles.  (SACC ¶¶ 13, 17.)   Smart King is FF's indirect parent company.  (*Id*. ¶ 40.)

### B.    The Employment Agreement and Liu's Ethical Violations

While Liu was a Mayer partner, Faraday retained Mayer generally, and Liu specifically, as its outside legal counsel, which attorney-client relationship was memorialized in an October 20, 2017 engagement agreement that Liu signed with Faraday on Mayer's behalf (the "**Engagement Agreement**").  (*Id*. ¶ 2.)  Between October 2017 and January 2018, Liu—while representing FF in various legal matters as a Mayer partner—solicited, negotiated, drafted the terms of, and ultimately entered into an employment agreement with FF under which Liu was retained as Faraday's Global General Counsel (the "**Employment Agreement**").  (*Id*. ¶¶ 3-5, 17-38.)  In doing so, Liu violated his ethical and fiduciary duties under both California and New York law, as well as under California Rules of Professional Conduct 3-300, 3-310 and 4-200, and their respective New York counterparts, manifest in his:

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

115372909

- 3 -

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR
DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

1.     Failure to advise FF in writing to seek and obtain independent legal counsel in connection with the Employment Agreement;

2.     Failure to inform FF of the actual and reasonably foreseeable adverse consequences and material risks of, and the reasonably available alternatives to, the Employment Agreement terms, which, among other things, contractually entitled Liu to both the accelerated and immediate payment of $8 million in cash compensation, and the similarly accelerated and immediate vesting and provision of FF stock options currently valued at $80 million, in the event of, and as a reward for, his termination for cause from FF at any time;

3.     Failure to disclose to FF that he was negotiating the Employment Agreement exclusively on his own behalf and for his benefit, and was not providing FF with the same legal advice he would have given FF had FF been negotiating that contract with a third-person;

4.     Failure to disclose in writing to FF, and to obtain FF's fully informed written consent to, Liu's conflict of interest with respect to the Employment Agreement; and Liu's resulting

5.     Procurement of an Employment Agreement containing unfair, unreasonable, and unconscionable compensation and other one-sided terms.  (*Id.* ¶¶ 45, 76-91.)

**C.     Liu Failure to Perform Specified Job Duties**

After joining Faraday as Global General Counsel, Liu failed to perform his job duties with respect to the identified subject matters alleged in the SACC in violation of his Employment Agreement.  Specifically, Liu: (i) failed to lead FF to an IPO; (ii) failed to connect FF with investment banks; (iii) failed to assist FF when its Series A investor, Evergrande Health Industry Group ("**Evergrande**"), backed-out of its funding commitment; and (iv) failed to provide substantive legal advice as to the EVelozcity litigation, vendor concerns regarding indemnification, the recording of internal FF meetings, and a potential reduction in FF's workforce,

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

each specifically identified in the SACC, and reflected in Liu's emails quoted *verbatim* in the SACC.  (SACC ¶¶ 50, 55-59, 61, 69-70.)  Moreover, as further alleged in the SACC, Liu (v) repeatedly harassed FF's equity incentive program manager and threatened to fire FF's outside counsel when it declined to provide him with grants at illegal exercise prices; and refused (vi) to sign corporate and contract documents requiring his authorization; or (vii) to advise FF regarding its actions and corporate governance.  (*Id.* ¶¶ 65-66.)

### D.    Liu's Complaint and Faraday's Operative SACC

Liu's Complaint seeks (i) eight figures in unpaid cash compensation and stock options allegedly owed under the Employment Agreement that Liu improperly solicited, negotiated, drafted, and procured in violation of his ethical duties; and seeks (ii) further unspecified damages on the alleged ground that FF wrongfully discharged Liu in retaliation for Liu's reporting of unspecified "compliance issues and violations of law" at the company.  (Compl. ¶¶ 109-116, 131-135.)

In response to these allegations, Faraday's SACC asserts defensive claims that broadly fall into two categories: (a) claims that seek to void, rescind, or otherwise declare unenforceable the Employment Agreement due to Liu's ethical violations in procuring that contract (the "**Anti-Enforcement Claims**");[1] and (ii) alternatively pled claims that seek to limit Liu's recovery based upon his failure to perform his job duties in specifically enumerated ways in breach of the Employment Agreement in the event that agreement is enforced (the "**Alternative Breach Claims**").[2]

_____

[1] *See* SACC ¶¶ 76-108, 128-38 (alleging rescission and breach of fiduciary duty for violation of the Rules of Professional Conduct, constructive fraud, rescission based on unconscionability, and unfair competition).

[2] *See* SACC ¶¶ 109-127 (alleging claims for breach of contract and breach of fiduciary duty).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### E.     FF Production of Non-Privileged Documents and Privilege Logs

FF has produced 4,497 pages of documents responsive to Liu's February 11, 2021 Requests for Production (the **"Requests"**), as well as provided Liu with a detailed privilege log identifying 1,086 privileged documents.  (*See* concurrently filed Declaration of Lauren Grochow ("**Grochow Decl.**"), ¶¶ 4-5, Exs. 3-5.)  The number of privileged documents logged by FF is not surprising where the Requests plainly called for the improper disclosure of FF's privileged materials relating to Liu's alleged wrongful termination claim, as evident on, *inter alia*, the face of:

- **Request No. 3**, seeking "**ALL** DOCUMENTS AND COMMUNICATIONS related to the EVERGRANDE TRANSACTION, including, without limitation, relating to any amounts invested by EVERGRANDE in FF and any and all related and side transactions and dealings," as well as clearly and additionally encompassing privileged information relating to Liu's recently-dismissed common law and securities fraud claims [Dkt. 123], in which Liu alleged that FF wrongfully induced him to join Faraday by purportedly misrepresenting the amount and status of Evergrande's Series A funding; and

- **Request Nos. 20, 21 and 25**, collectively seeking "**ALL** DOCUMENTS AND COMMUNICATIONS" related to (a) FF's policies, formal or informal, for hiring employees, whether permanent or temporary, including policies concerning employees' age, race, sex, gender, nationality, looks or appearance, or religion"; (b) "internal complaints or reports raised by current or former employees of FF's concerning allegations of sexual harassment or hostile work environment, including without limitation ANY internal or external investigations into those allegations and the findings thereof, and ANY remediating actions suggested or implemented as a result"; and (c) "any FF work plan, draft of any FF internal memoranda concerning FF employee layoffs, FF or its employees' compliance with, or potential or actual violation of, U.S. and California labor codes, fiduciary duties, immigration laws, financial controls and reporting, internal controls, and privacy laws," and clearly encompassing privileged information concerning Liu's wrongful termination claim and, in particular, his assertion that he reported, and was discharged in alleged retaliation for communicating, "compliance issues and violations of law" that supposedly occurred at FF related to immigration, sexual harassment, privacy, financial, labor law, and WARN Act issues.

(Grochow Decl., ¶ 2 , Ex. 1 (emphasis added).)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

In response to Liu's facially overbroad Requests, FF reviewed and logged all privileged, responsive documents and communications related to the following topics improperly implicated by Liu's wrongful termination claim: (i) the Smart King options and the Employee Stock Option Plan; (ii) drafts of policies concerning employee's age, race, sex, gender nationality, looks or appearance, or religion; (iii) the USCIS's site inspection and immigration matters; (iv) labor and employment issues, including employee layoffs and the WARN Act notice, sexual harassment complaints and investigations, and compliance with labor laws; (v) FF board of director or management meetings held between September and November 2018; (vi) the Evergrande transaction; and (vii) Liu's termination.  (*Id.* ¶ 4, Exs. 3-5.)  Each of these subject matters (with the exception of a limited portion of the Evergrande transaction) not only are unrelated to Faraday's Alternative Breach Claims and Liu's professed defenses to those claims, but also are conceivably relevant only to Liu's affirmative allegation that he was wrongfully discharged in retaliation for reporting "compliance issues and violations of law" at FF.  (Compl. ¶¶ 132-133).

**F.**     **Liu and His Counsel's Revelation of Their Unauthorized Possession and Use of FF's Privileged Information**

In recently producing 62 (308 pages) of FF's privileged attorney-client documents that he illicitly pilfered from the company shortly before his termination in early 2019, Liu revealed—for the very first time—that he and his counsel have wrongfully possessed and have used FF's privileged materials since the inception of this lawsuit (the "**Illicit Privileged Materials**").  (Grochow Decl., ¶ 6, Ex. 6.)[3]

_____

[3] Liu appears to have misappropriated FF's privileged documents and communications between January 18, 2019 and January 28, 2019 based on dates at the tops of 25 of the email communications reflecting when they were printed to either PDF or paper copy.  (Grochow Decl., ¶ 6, Ex. 6.)  That timing was no coincidence; rather, it immediately followed FF's then Chief Executive Officer, Yueting Jia's request that Liu draft a summary of the work he had performed since

- 7 -

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

The Illicit Privileged Materials retained and used by Liu and his counsel include:

- Drafts of company policies prepared by FF's *other* in-house legal counsel, and *not* by Liu himself (HLIU000527; HLIU000576);

- A document disclosing FF's legal strategy *vis-à-vis* its sales model (HLIU000542);

- Drafts of Board of Director meeting minutes prepared by counsel and disclosing privileged information presented to FF's Board (HLIU000605; HLIU000653; HLIU000672; HLIU000775; HLIU000935; HLIU000940; HLIU001094; HLIU001569; HLIU001576; HLIU001582; HLIU001798);

- Legal memoranda prepared by FF's in-house counsel for review and consideration by FF's senior executives (HLIU000665; HLIU000667; HLIU001498);

- Email communications with FF's outside legal counsel regarding FF's Series A financing transaction, and FF's related legal dispute and litigation, with Evergrande (HLIU000807; HLIU000834; HLIU000911; HLIU000973; HLIU1006; HLIU001044; HLIU001638; HLIU001800; HLIU001802; HLIU001807; HLIU001810; HLIU001813; HLIU001814; HLIU001819; HLIU002113; HLIU002121; HLIU002321; HLIU002322);

- Text message and email correspondence between Liu, FF employees, and outside counsel regarding requests for, and the provision of legal advice regarding, corporate governance issues (HLIU001660; HLIU001661; HLIU001662; HLIU001663; HLIU001806; HLIU001808; HLIU001815; HLIU002318);

- Emails between FF's employees, in-house counsel, and outside counsel regarding labor and employment issues involving the WARN Act, alleged sexual harassment complaints, furloughs, and investigations (HLIU000949; HLIU000958; HLIU001647; HLIU001654; HLIU001799; HLIU001803);

- Email correspondence and draft documents exchanged with outside counsel relating to FF's Employee Stock Option Plan (HLIU000919; HLIU000927; HLIU000936; HLIU000938; HLIU001428; HLIU001635);

---

joining FF and his work plan for 2019, alerting Liu that his performance was under scrutiny. (Compl. ¶ 82, SACC ¶¶ 69-73). Clearly then, Liu purloined FF's privileged information in anticipation of his termination and for use in his contemplated wrongful discharge lawsuit.

- Emails reflecting FF seeking legal advice from in-house regarding the recording of company meetings (HLIU000941; HLIU000956);

- Email chains containing legal advice from outside counsel concerning banking laws (HLIU000945);

- An email from an FF employee seeking legal advice regarding how to respond to meeting comments (HLIU001646);

- An email summarizing work performed by FF's in-house legal department (HLIU000995); and

- A presentation to FF's management regarding the company's key legal strategies and the status of various legal matters (HLIU001447; HLIU001469; HLIU001483).

(Grochow Decl., ¶ 6, Ex. 6.)

None of these Illicit Privileged Materials are relevant to Liu's professed defenses to the SACC's Alternative Breach Claims.  Nor could they be where Liu purloined the Illicit Privileged Materials from FF in January 2019, when he was secretly stockpiling evidence for his own anticipated wrongful termination lawsuit, rather than for any hypothetical affirmative defenses to an equally hypothetical, future counterclaim that could be filed by Faraday.  It is therefore unsurprising that the above-listed Illicit Privileged Materials exclusively relate to Liu's wrongful discharge claim, insofar as they supposedly evidence the purported "compliance issues and violations of law" that Liu allegedly reported to FF management prior to his termination.  (Compl. ¶¶ 132-133).

In addition to improperly misappropriating and thereafter retaining FF's privileged information throughout this lawsuit, Liu's and his counsel's misconduct *vis-a-vis* that information further is manifest in their admitted, improper use of that information to both form and prosecute Liu's wrongful termination claim. Specifically:

1.    During the April 13, 2021 deposition of FF employee Qing Ye (the "**Ye Deposition**"), Liu's counsel attempted to introduce and question the witness on Illicit Privileged Materials irrelevant to the SACC's Alternative Breach Claims—

Troutman Pepper Hamilton Sanders LLP<br>5 Park Plaza<br>Suite 1400<br>Irvine, CA 92614-2545

115372909

namely, a privileged communication between FF and its legal counsel containing legal advice about corporate governance, relevant only to Liu's wrongful termination claim. (Grochow Decl., ¶ 7, Ex. 7 at 61:18-64:25, 66:3-20, 69:2-11.);

2.      In response to his attempted introduction of Illicit Privileged Materials, FF's attorney admonished Liu's counsel that such unauthorized possession and use of FF's privileged materials not only violates the attorney-client privilege, but also subjects Liu's counsel to disqualification under governing California law.  (*Id.*, Ex. 7 at 19:21-20:23; 54:7-57:10, 61:18-64:25, 66:3-20, 69:2-11 );

3.      That evening, following the conclusion of the Ye Deposition, FF's attorney sent Liu's counsel a letter (i) reiterating the attempted misuse of Illicit Privileged Materials earlier that day; (ii) demanding Liu's and his counsel's immediate return and destruction of any privileged information in their possession; and (iii) reconfirming the irrefutable California legal authorities precluding Liu's prosecution of his wrongful termination claim using FF's privileged information, and correspondingly mandating the disqualification of Liu's counsel based upon its continued possession and its use of that information.  (*Id.*, Ex. 8 at pp. 1-3); and

4.      The next day, during the April 14, 2021 deposition of Chaoying Deng, Liu's counsel once again attempted to question the witness with Illicit Privileged Materials—namely, a privileged communication between FF and its outside legal counsel concerning FF's financial position.  (*Id.*, ¶ 9.)  ***Notably and dispositively, in response to FF's attorney's objection and demand that all Illicit Privileged Materials be immediately returned and/or destroyed, Liu's attorney not only unequivocally admitted, but also expressly reconfirmed, Liu's intention to use FF's privileged information "in support of" the Complaint's "claim for retaliation"*** in direct violation of the controlling California Supreme Court law established in *General Dynamics*.  (*Id.*, Ex 9 at 95:15-96:9, 99:11-20, 101:5-13 (emphasis added).)

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

Following that unequivocal admission, Liu filed the Motion and now requests that this Court not only retroactively (i) condone his impermissible misappropriation, retention and use of Illicit Privileged Materials to prosecute his wrongful termination claim, but also (ii) allow him to compound that misconduct by compelling FF's production of additional privileged information he failed to purloin.  As detailed below, Liu's requests have no basis in fact or law and are required to denied.

III.    **ARGUMENT**

A.    <u>**The Court Should Not Authorize the Further Misuse, or Compel the Further Disclosure, of FF's Privileged Information**</u>

Two separate but related rules of well-established California law preclude Liu's request that the Court authorize his further misuse, and compel the further production, of FF's privileged information:

1.    "Where the elements of a wrongful discharge in violation of fundamental public policy claim cannot  . . . be fully established [by in-house counsel] without breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege." *General Dynamics*, 7 Cal. 4th at 1190; and

2.    "When a lawyer [] receives materials that obviously appear to be subject to an attorney-client privilege[,]" the lawyer "should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged[,]" *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 654-55 (1999), absent which that lawyer is subject to disqualification.  *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 819 (2007).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1.   ***General Dynamics* Bars the Use of FF's Privileged**

**Information to Prosecute Liu's Wrongful Discharge Claim**

Typically, a plaintiff alleging wrongful discharge in violation of public policy must plead and prove he was terminated in retaliation for "(1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; [or] (4) reporting an alleged violation of statute of public importance." *Stevenson v. Super. Ct.*, 16 Cal. 4th 880, 889 (1997). Notably, this standard is even more exacting where, as here, the plaintiff is the defendant's former in-house attorney, in which case the plaintiff must establish he was discharged for (i) "following a mandatory ethical obligation" grounded in "***explicit*** and ***unequivocal ethical norms*** embodied in the Rules of Professional Responsibility and ***statutes***;" or for (ii) engaging in other traditionally protected activity "under circumstances in which the Legislature has manifested a judgment that the principle of professional confidentiality ***does not apply***." *See General Dynamics*, 7 Cal. 4th at 1188-1190 (emphasis in original). These additional requirements are necessary to "protect" the "values that underlie the professional [attorney-client] relationship . . . from the threat of damage" posed by wrongful discharge claims from in-house counsel. *Id.* at 1889.

To that end, the California Supreme Court in *General Dynamics* made clear that an in-house attorney is only permitted to maintain "a retaliatory discharge claim, ***provided*** it can be established without breaching the attorney-client privilege or unduly endangering the values lying at the heart of the professional relationship." *See* 7 Cal. 4th at 1169 (emphasis in original). ***"[W]here the attorney-employee's retaliatory discharge claim is incapable of complete resolution without breaching the attorney-client privilege, <u>the suit may not proceed</u>."*** *Id.* at 1170 (emphasis added). That is because an in-house attorney's "high duty of fidelity to the interests of the client works against a tort remedy that is coextensive with that available to the nonattorney employee." Indeed, ***"the in-house attorney who publicly exposes***

- 12 -

*the client's secrets" in support of a wrongful discharge claim will "find no sanctuary in the courts[,]" and there is no basis for "any suggestion that the scope of the [attorney-client] privilege should be diluted in the context of in-house counsel and their corporate clients."* Accordingly, ***"where the elements of a wrongful discharge in violation of fundamental public policy claim cannot . . . be fully established without breaching the attorney-client privilege, <u>the suit must be dismissed in the interest of preserving the privilege</u>.***" *Id.* at 1189-90 (emphasis added).

Here, Liu's wrongful termination claim is expressly predicated on his professed reporting of "compliance issues and violations of law" to FF management in his capacity as Faraday's Global General Counsel, thereby placing those privileged communications (as well as FF's other privileged information concerning those alleged "issues" and "violations") at the heart of the Complaint's retaliatory discharge action. (*See* Compl. ¶ 5 [alleging Liu was "stripped of his authority and then terminated" because he "proactively took steps to ensure Faraday's compliance with applicable law, including by seeking [internal] investigations"]; ¶ 63 [admitting Liu had responsibility for "overseeing a wide range of sensitive regulatory and compliance matters" as in-house counsel]; ¶ 69 [alleging Liu "repeatedly advised" FF to cease "illegal, discriminatory" behavior and "worked with and directed Faraday's legal department" in that regard]; ¶ 71 [alleging Liu directed the FF "legal department" to "investigate complaints"]; ¶ 75 [alleging Liu "actively instructed the legal department to issue memoranda and other communications" regarding FF's legal compliance]; ¶ 83 [quoting Liu's letter to management accusing FF of retaliating against him for "directly express[ing] [his] views . . . on how to best comply with laws"]; and ¶¶ 132-133 [alleging Liu was terminated in retaliation for reporting "serious compliance issues and violations of law"]).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR
DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Consistent with the gravamen of Liu's wrongful termination claim, the Illicit Privileged Materials he pilfered from FF and now seeks permission to use in this lawsuit—and the documents and communications on FF's privilege log that Liu seeks to compel—overwhelmingly concern the professed "compliance issues" and "violations of law" Liu allegedly reported to FF management.  (*See* Grochow Decl., ¶ 4, Ex. 6 [describing privilege log documents concerning (i) the Evergrande transaction; (ii) the Smart King options and the Employee Stock Option Plan; (iii) drafts of policies concerning employee's age, race, sex, gender nationality, looks or appearance, or religion; (iv) the USCIS's site inspection and immigration matters; (v) labor and employment issues, including employee layoffs and the WARN Act notice, sexual harassment complaints and investigations, and compliance with labor laws; (vi) FF board of director or management meetings held between September and November 2018; and (vii) Liu's termination]; *id.* [describing the Illicit Privileged Materials, including text messages, emails, and other documents exchanged between FF employees, FF's in-house counsel, and FF's outside counsel that evidence requests for and the provision of legal advice on corporate governance and legal compliance issues]).

Without question, *General Dynamics* prohibits Liu's and his counsel's further use of these privileged materials, particularly where they are irrelevant to the specifically enumerated subject matters implicated by the SACC's Alternative Breach Claim concerning Liu's failures *vis-à-vis* FF's IPO, investment banking, the EVelozcity litigation, and vendor concerns regarding indemnification.  (SACC ¶¶ 50, 55-59, 61, 69-70.)[4]

[4] The Motion argues *General Dynamics* is inapposite in light of the California Court of Appeal's subsequent decision in *Fox Searchlight Pictures, Inc. v. Paladino* which indicated that an attorney may make a limited disclosure of privileged communications to his counsel in a wrongful termination case to allow the attorney's counsel to evaluate the attorney's discharge claim and advise on the contours of the attorney-client privilege under the facts of the case.  *See* 89 Cal.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### 2.     California Disqualification Law Also Bars the Use of FF's Privileged Information

In addition to secretly possessing FF's privileged information since the inception of this lawsuit, Liu's counsel has used—and admittedly intends to continue to use—FF's privileged information to prosecute Liu's wrongful termination claim, as recently reconfirmed during the depositions of FF's employees, and in direct violation of California law.  (*See, e.g.,* Grochow Decl., ¶ 6, Ex. 6, and Ex. 8 at 95:15-96:9, 99:11-20, 101:5-13 [reflecting Liu's counsel's admission that Liu intends to use FF's privileged materials "in support of" Liu's "claim for retaliation"]).

To "protect the sanctity of the attorney-client privilege and to discourage unprofessional conduct," an attorney receiving an adversary's privileged information is required to comply with the following judicially-prescribed protocol:

> When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.

*State Comp. Ins. Fund*, 70 Cal. App. 4th at 654-655.

---

App. 4th 294, 312 (2001) ("In house counsel faced with the[] ethical issues [identified in *General Dynamics*] . . . should be permitted to seek out independent, candid, professional advice about their ethical duties" in prosecuting a wrongful termination claim).  The *Fox* opinion, however, has no application where (i) Liu undeniably pilfered and provided FF's privileged documents to his counsel; (ii) Liu and his counsel thereafter concealed that misappropriation and their resulting possession of those privileged materials for more than a year; and (iii) Liu's counsel not only has attempted to use those privileged materials as the basis of, and to prosecute, Liu's wrongful termination claim, but also has expressly admitted its intention to continue to do so.

Thus, "once [counsel's] examination [of a document] show[s] [it] ha[s] been transmitted between an attorney representing [an adversary] and either an officer or employee of [an adversary] . . , any further examination [of that document by counsel] would exceed permissible limits." *Clark v. Super. Ct.*, 196 Cal. App. 4th 37, 53 (2011), *citing Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 733 (2009). To that end, any deviation from this protocol—which equally applies to, and governs the possession and use of, attorney work product—subjects the offending lawyer to disqualification. *See Rico*, 42 Cal. 4th at 819.

The California Court of Appeal has made clear that counsel can and should be disqualified where, as here, a client provides counsel with illicitly-obtained privileged materials, and counsel thereafter uses the materials to prosecute the client's case, including by using them to question witnesses. *See Clark*, 196 Cal. App. 4th at 49-56 (affirming disqualification where (i) plaintiff provided his attorney with former employer's privileged information; and (ii) plaintiff's attorney thereafter "used some of the substantive information contained in the privileged documents to question witnesses" and engaged in "excessive review" of privileged information in order to "craft" and otherwise prosecute the plaintiff's claims).

Here, it is indisputable that Liu's counsel not only possesses, but also has repeatedly attempted to use, FF's privileged information to prosecute Liu's case, in violation of the law, and despite the repeated admonitions of FF's attorneys beginning in March 2021 as to the risk of disqualification occasioned by such misconduct. (Grochow Decl., Ex. 7 at 19:21-20:23, 54:7-57:10, 61:18-64:25, 69:2-11 and Ex. 9 at 95:15-24, 96:4-9, 99:11-20, 101:5-13.)

Because Liu's counsel is now subject to disqualification due to its unauthorized possession, use, and threatened future use of FF's privileged information—and because FF will imminently seek that disqualification before the presiding District Judge—this Court neither can, nor should, authorize any further

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

115372909

1   use of the Illicit Privileged Materials, much less compel FF to produce additional

2   privileged documents to Liu and his counsel.

3   **B.     Liu Cannot Establish a Wholesale Waiver of the Attorney-Client**

4           **Privileged Based on Faraday's Alternative Breach Claims**

5           To avoid the consequences of the above-described ethical and legal

6   violations, Liu's Motion broadly demands the Court compel the disclosure, and

7   authorize his use, of FF's attorney-client privileged communications ***"as to" Liu's***

8   ***"handling [of] <u>all legal matters that he was involved in as FF's General</u>***

9   ***<u>Counsel</u>."***  (Mot. at p. 13:6-12; *see also id.* at p. 15:17-21 [requesting an order

10  compelling FF to produce all documents on its privilege log which FF allegedly has

11  "wrongly" designated and "wrongly" withheld in light of its filing of the SACC]).

12  In so doing, Liu exclusively relies on the demonstrably false premise that the

13  SACC's Alternative Breach Claims implicate, and have effectuated a sweeping

14  waiver of, the privilege as to every one of those facially privileged materials.  As

15  established below, this attempt to retroactively justify and compound Liu's and his

16  counsel's possession and misuse of FF's privileged information must be rejected

17  for at least three dispositive reasons.

18          **<u>First</u>**, whereas Liu baldly asserts that Faraday's Alternative Breach Claims

19  "are predicated upon [his] attorney-client communications with FF . . . and [his]

20  allegedly incompetent legal advice . . . with respect to an unlimited universe of

21  privileged and confidential matters," (Mot. at p. 3:17-22), ***the plain language of the***

22  ***SACC makes clear that Faraday's allegations are significantly narrower, and***

23  ***that Faraday does <u>not</u> claim, nor will it seek to prove, that Liu failed to provide***

24  ***competent legal advice on all matters during his employment***.  To the contrary, the

25  Alternative Breach Claims allege only that Liu abdicated responsibility and failed

26  to perform his job duties in the following ways specifically enumerated in the

27  SACC:   (i) failing to lead FF to an IPO; (ii) failing to connect FF with any

28  investment bank; (iii) failing to assist FF when its Series A investor, Evergrande,

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

- 17 -

115372909

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

backed-out of its funding commitment; and (iv) failing to provide substantive legal advice with respect to the EVelozcity litigation, vendor concerns regarding indemnification, the recording of internal meetings, and a potential reduction in FF's workforce, as reflected in Liu's communications quoted *verbatim* in the SACC.  (SACC ¶¶ 50, 55-59, 61, 69-70.)

These facts—together with Liu's harassment of FF's equity program manager and threat to fire outside counsel unless it illegally inflated his stock options (*id.*, ¶¶ 65-66)—define and limit the ***actual*** scope and "universe" of Faraday's Alternative Breach Claims.  *See, e.g., Garcia v. HomEq Servicing Corp.*, No. CIV-F-09-0374 AWI SMS, 2009 U.S. Dist. LEXIS 77697, at *8 (E.D. Cal. Aug. 18, 2009) ("The general language of the complaint occasionally suggests that Plaintiff doubts Defendant's legal status as holder of the note but the specific allegations make clear that Plaintiff is suing under the belief that Defendant does not have physical possession."); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 827 (2002) (recognizing the "long-established rule[] of pleading" that "specific allegations control general pleadings."); 61A Am Jur 2d Pleadings § 43 (2021) ("Specific allegations in a pleading control over general allegations concerning the same matter.  The specific allegations are deemed to explain and limit the general ones.").

Put simply, Liu is legally prohibited from using his purported defense of Faraday's limited Alternative Breach Claims as a guise to circumvent *General Dynamics* and prosecute his wrongful discharge claim using privileged information. *See General Dynamics*, 7 Cal. 4th at 1192 (recognizing that "[o]f course, the defendant employer is always free to challenge plaintiff's claim by demonstrating the discharge was motivated by [lawful] reasons").

**Second**, as unambiguously confirmed by Liu's own cited authority, when a party places his attorney's actions at issue, the attorney is only entitled to use privileged information that is actually necessary to "adequately dispute" the party's

- 18 -

claim.  *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).  Consistent with that legal limitation:

> ***The court imposing the waiver does not order disclosure of the materials categorically*** . . . .The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege ***to the extent necessary to give your opponent a fair opportunity to defend against it***.

*Id*. at 720 ( emphasis added); *see also  IGT v. All. Gaming Corp.*, No. 2:04-cv-1676-RCJ-RJJ, 2007 U.S. Dist. LEXIS 62395, at *7 (D. Nev. Aug. 20, 2007) (recognizing "the Ninth Circuit construes subject matter waivers narrowly" and rejecting waiver argument that would have entitled an adversary "to an almost unlimited number of documents" that "touch[] on any subject whatsoever mentioned in the Complaint").  Indeed, Ninth Circuit law is clear that it is improper for a court to find and "impose a waiver [] broader than [what is] needed to ensure the fairness of the proceedings before it." *Bittaker,* 331 F.3d at 720.

In accordance with the governing law and with the narrow range of issues actually implicated by the Faraday's Alternative Breach Claims, FF:

(A)   Has already produced otherwise privileged communications reflecting Liu's failure to provide substantive legal advice with respect to the subject EVelozcity litigation, vendor concerns regarding indemnification, the recording of internal meetings, and a potential reduction in FF's workforce;[5] and further

---

[5] *See* SACC ¶ 59; *see also* Grochow Decl., ¶ 5 (citing documents produced by FF as Bates numbers FF00000371-374, FF00002118, FF00002119, FF00002177-2178, FF00001232-1233,   FF00001234,   FF00001235-1238,   FF00001239-1243, FF00001244-1246).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

115372909

- 19 -

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

(B)    Will produce those otherwise privileged communications which Liu authored pertaining to the subject matters specifically enumerated and alleged in support of Faraday's Alternative Breach Claims.  (SACC ¶¶ 50, 55-59, 61, 69-70.)[6]

In marked contrast, there is no basis for compelling FF to produce the documents identified on its privilege log which (i) do not pertain to Liu affirmatively advising FF or otherwise contributing with respect to the subject matters specifically implicated by the Alternative Breach Claims; and subsequently (ii) have nothing to do with, let alone can legitimately be used by Liu, to refute Faraday's contention that he abdicated responsibility and failed to act as to those enumerated matters.

There similarly is no basis for Liu's contention that FF has allegedly waived the privilege and is subsequently required to disclose, all of its communications with outside counsel at Sidley Austin LLP ("**Sidley**") concerning Liu's Employment Agreement.  (Mot. at pp. 9:3-8, 13:13-14:7.)  As confirmed by the Sidley-related text messages already disclosed in this action (Dkt. No. 108-5)—as well as by the concurrently filed Declaration of Faraday's Vice-President, Jiawei Wang ("**Wang Decl.**"), who negotiated the Employment Agreement with Liu—Sidley did ***not*** represent or provide legal advice to FF in connection with the negotiation and terms of the Employment Agreement.   To the contrary, FF transmitted the Employment Agreement to Sidley after its terms had already been negotiated and drafted and shortly before its execution, solely to obtain Sidley's advice on matters *unrelated* to the negotiation of the Employment Agreement; namely, the possible impact of the Employment Agreement on FF's other business relationships.   (*See* Wang Decl., ¶¶ 1-4.)    Sidley's limited review of the

---

[6] To the extent any of these documents also reflect privileged information concerning the alleged "compliance issues and violations of law" at the heart of Liu's wrongful termination claim—and legally and factually irrelevant to Faraday's Alternative Breach Claims—FF will redact that irrelevant, privileged information.

Employment Agreement, therefore, is irrelevant to, and cannot be used by Liu to cure or otherwise refute, the ethical impropriety of his solicitation, negotiation, drafting, and procurement of the Employment Agreement while simultaneously serving as Faraday's outside legal counsel at Mayer, let alone legally or factually justify any waiver *vis-à-vis* FF's communications with Sidley.  *See, e.g., Held & Hines LLP v. Hussain*, No. 16-CV-5273 (JSR)(SN), 2018 WL 4233809, at \*4 (S.D.N.Y. July 31, 2018) (even a claim that the client consulted independent counsel does not abate the attorney's "obligation to advise [the client] *in writing* that [it] should consider seeking independent legal advice before signing the agreement").

**Third**, even assuming, *arguendo*, the hypothetical existence of any waiver beyond the limited one established under the law and in this Opposition, FF still cannot, in the first instance, be ordered to produce further privileged communications or otherwise authorize Liu's continued use of the Illicit Privileged Materials.   That is because "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition."  *Bittaker*, 331 F.3d at 721; *see also id.* at 720 ("The court thus gives the holder of the privilege a choice" of continuing with a claim, and "strik[es] a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim."). Under those hypothetical circumstances, therefore, the Court legally can and should specifically define "the contours of the waiver . . . so that [FF] will not be unfairly surprised in the future" should it elect to proceed with its Alternative Breach Claims.  *Id.* at 721.

### C.      Liu Cannot Legally Compel the Production of Privileged or Non-Privileged Documents that Do Not Exist

In violation of Local Rules 37-1 and 37-2, the Motion represents the first and only time Liu has specifically articulated in writing the legal and factual basis for

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

his contention that FF's document production is allegedly deficient—the precise type of ambush the Local Rules are intended and designed to avoid. To that end, Liu's and his counsel's "ambush" and corresponding disregard for the mandatory discovery motion procedure is manifest from the following irrefutable facts:

1. On April 13, 2021—during a deposition lunch break—Liu's counsel attempted to unilaterally convert this Court's ordered meet and confer conference regarding *Liu's* discovery violations into a discussion regarding the sufficiency of *FF's* production. In response, FF's counsel demanded that any meet and confer regarding FF's production comply with Local Rule 37-1, and occur at a different time. (Grochow Decl., Ex. 10 at p. 1);

2. On April 14, 2021, FF's attorney sent Liu's counsel written correspondence reconfirming Liu's failure to comply with Local Rule 37-1, and establishing the propriety of FF's production to-date. (*Id.* at p. 2);

3. Less than an hour later, Liu's counsel responded by threatening to file an *ex parte* application—Liu's third successive such application in as many weeks—to compel FF's production of documents, in violation of Local Rules 37-1 through 37-3 prohibiting *ex parte* relief absent extraordinary circumstances. (*Id.*, Ex.11); and

4. Having agreed to forego *ex parte* relief in order to present these issues to this Court on an expedited basis, Liu now seeks to compel FF's production of supposedly relevant privileged and non-privileged documents that Liu simply speculates exist. (Mot. at pp. 15:1-16:6.)

Over and above its procedural impropriety, Liu's request for an Order compelling FF's further production of documents also must be rejected for at least four, independently dispositive reasons.

**First**, as established, *supra*, in Sections III.A-B, this Court neither can, nor should, compel FF's production of any further privileged documents, particularly where FF is preparing to produce any additional privileged records actually

115372909

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

implicated by Faraday's Alternative Breach Claims.  In contrast, any compelled disclosure of privileged information relating to Liu's wrongful termination claim (for example, documents concerning the alleged "compliance issues and violations of law" Liu supposedly reported to FF management prior to his discharge) would serve only to compound the myriad violations of *General Dynamics, State Comp. Ins. Fund, Rico*, and *Clark* that Liu and his counsel have already committed.

**Second**, while Liu hypothesizes further non-privileged documents exist from additional custodians concerning the circumstances of his hiring and termination, the law is clear that "[a] party's mere suspicion that additional documents exist does not justify a motion to compel."  *Tapia*, 2010 U.S. Dist. LEXIS 152015, at *4-5; *see also, e.g., Purecircle United States v. Sweegen, Inc.*, No. 8:18-cv-01679-JVS (JDEx), 2020 U.S. Dist. LEXIS 133148, at *28 (C.D. Cal. June 17, 2020) ("speculation that other responsive documents exist but are being withheld is not, without more, grounds to compel a further production.").  Although Liu cites the size of the parties' respective document productions as though it were *ipso facto* proof that FF is withholding documents, that approach to discovery disputes is tellingly unsupported by citation to any law and betrays an impermissible "tit-for-tat" approach to discovery that cannot be legally condoned.  *See Nat'l Academy of Recording Arts & Sci., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 689 (C.D. Cal. 2009) ("discovery is not conducted on a 'tit-for-tat' basis").

**Third**, to the extent the Motion seeks WeChat messages from Mr. Ye, (Mot. at p. 10:6-13), Mr. Ye has already confirmed, under oath, that he has no such messages relevant to this action, and that his personal cellular phone containing irrelevant messages was inadvertently destroyed.  (Grochow Decl., Ex. 7 at 75:19-76:8, 77:12-21; 80:8-12, 84:22-85:2 .)

**Fourth**, FF is in the process of forensically collecting and processing responsive, non-privileged text messages from Defendant Chaoying Deng (which process was delayed by technical difficulties) and anticipates supplementing its

- 23 -

production with those records shortly.

Put simply, FF's production of any remaining non-privileged relevant documents, as well as any remaining privileged documents relating to Faraday's Alternative Breach Claims, will be imminently completed. (*Id.*, ¶¶ 5, 12.) Moreover, because Liu neither does, nor can, establish or adduce any evidence that FF is actually withholding any relevant documents, the Court cannot grant its procedurally and substantively improper request for an Order compelling further production under the governing facts and law of this case. *See, e.g., Purecircle United States*, 2020 U.S. Dist. LEXIS 133148, at *28 ("speculation that other responsive documents exist but are being withheld is not, without more, grounds to compel a further production."); *Tapia*, 2010 U.S. Dist. LEXIS 152015, at *4-5 (same).

## IV.   **CONCLUSION**

For the foregoing reasons, FF respectfully requests that the Motion be denied in its entirety.

Dated:  April 22, 2021

Respectfully submitted,[7]

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Lauren E. Grochow

Lauren E. Grochow
Alan J. Kessel
Kevin A. Crisp
Jeffrey M. Goldman

Attorneys for Defendants and Counterclaimant

---

[7] Pursuant to the Court's April 15, 2021 Minute Order (Dkt. No. 118), FF requests that Liu finish making his production ordered by the Court by close of business on April 26, 2021.

115372909

OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S EXPEDITED MOTION FOR DETERMINATION OF PRIVILEGE ISSUE AND TO COMPEL PRODUCTION