ALAN J. KESSEL, Bar No. 130707
alan.kessel@troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:  949.622.2700
Facsimile:  949.622.2739

Attorneys for Defendant
SMART KING LTD. and Defendant and
Counterclaimant FARADAY&FUTURE INC.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,<br><br>Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIM. | Case No. 2:20-cv-08035-SVW-JPR<br><br>Honorable Stephen V. Wilson<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FARADAY & FUTURE, INC. AND SMART KING LTD.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OF PLAINTIFF HONG LIU'S COMPLAINT**<br><br>Date:      May 24, 2021<br>Time:     1:30 p.m.<br>Place:    Courtroom 10A |

114746556

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ...................................................................... 4

  A.  Liu Unethically and Improperly Negotiates, Drafts and Procures His Employment Agreement with FF While Serving as Its Counsel ............................................................................................. 4

  B.  Liu Improperly Attempts to Prove Wrongful Termination Using Privileged Information, Including Materials He Pilfered From FF ...................................................................................................... 7

III.  LEGAL STANDARD ............................................................................ 10

IV.   ARGUMENT .......................................................................................... 11

  A.  Judgment in FF's Favor Should Be Entered on the Complaint's First Cause of Action for Breach of Contract ..................................... 11

    1.  The Law Forbids Attorneys From Enforcing Contracts Against Clients That Were Negotiated and Procured in Violation of the Attorney's Ethical and Fiduciary Duties ........ 12

    2.  Liu Cannot Enforce the Employment Agreement Because He Negotiated and Procured That Contract in Violation of His Ethical and Fiduciary Duties .............................................. 13

  B.  Judgment in FF's Favor Similarly Should Be Entered on the Complaint's Fourth Cause of Action for Wrongful Termination ....... 19

  C.  The Court Should Enter Judgment on the Complaint's Seventh Cause of Action for Declaratory Judgment ......................................... 24

V.    CONCLUSION ....................................................................................... 25

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................... 11

*BGJ Assoc. v. Wilson*,
113 Cal. App. 4th 1217 (2003).......................................... 12, 13, 16, 18

*Degenshein v. 21st Century Toys, Inc.*,
2007 Cal. App. Unpub. LEXIS 3486 (Apr. 30, 2007) ....................... 24

*Dubois v. Ass'n of Apt. Owners*,
453 F.3d 1175 (9th Cir. 2006) ............................................................. 11

*Emplrs Ins. of Wausau v. Granite State Ins. Co.*,
330 F.3d 1214 (9th Cir. 2003) ............................................................. 23

*Fair v. Bakhtiari*,
195 Cal. App. 4th 1135 (2011) ................................................ 12, 13, 17

*Felton v. Le Breton*,
92 Cal. 457 (1891) ................................................................................ 13

*Ferguson v. Yaspan*,
233 Cal. App. 4th 676 (2014) .............................................................. 12

*Foley v. Interactive Data Corp.*,
47 Cal. 3d 654 (1988) ........................................................................... 21

*General Dynamics Corp. v. Super. Ct.*,
7 Cal. 4th 1164 (1994).................................................................. *passim*

*Grant & Eisenhofer, P.A. v. Brown*,
No. CV 17-5968 PSG, 2018 U.S. Dist. LEXIS 220331 (C.D. Cal. Mar. 27, 2018) ................................................................................ 12

*Gurvey v. Legend Films, Inc.*,
No. 3:09-cv-00942 AJB (BGS), 2012 U.S. Dist. LEXIS 131547 (S.D. Cal. Sep. 14, 2012)............................................................... 18

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

3
4

*Hickcox-Huffman v. US Airways, Inc.*,
  855 F.3d 1057 (9th Cir. 2017) .......................................................... 12

5
6

*Horphag Research Ltd. v. Garcia*,
  475 F.3d 1029 (9th Cir. 2007) .......................................................... 10

7
8

*Jacobson v. Carlton Hair*,
  No. CV 09-09377 MMM, 2011 U.S. Dist. LEXIS 165587 (C.D.
  Cal. Jan. 31, 2011) ........................................................................... 21

9
10

*Jersey v. John Muir Med. Ctr.*,
  96 Cal. App. 4th 814 (2002) ............................................................. 20

11
12
13

*Kadiyan v. Medtronic*,
  No. CV 10-05921 MMM, 2011 U.S. Dist. LEXIS 163991 (C.D.
  Cal. Apr. 8, 2011) ............................................................................. 20

14
15

*Kaur v. Singh*,
  No. 2:13-cv-00089-KJM-EFB, 2014 U.S. Dist. LEXIS 72798 (E.D.
  Cal. May 28, 2014) ........................................................................... 11

16
17

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  156 Cal. App. 4th 1259 (2007 ......................................................... 19

18
19

*Mayhew v. Benninghoff*,
  53 Cal. App. 4th 1365 (1997) ........................................................... 13

20
21

*Odish v. Cognitive Code Corp.*,
  No. CV 12-9069 FMO, 2015 U.S. Dist. LEXIS 68630 (C.D. Cal.
  May 27, 2015) ............................................................................. 14, 18

22
23

*Olivo v. City of Vernon*,
  No. B213984, 2010 Cal. App. Unpub. LEXIS 6018 (July 29, 2010). ............... 23

24
25

*OSC Corp. v. Apple Computer, Inc.*,
  792 F.2d 1464 (9th Cir. 1986) .......................................................... 10

26
27

*Renovate Am., Inc. v. Lloyd's Syndicate 1458*,
  No. 3:19-cv-01456-GPC-WVG, 2019 U.S. Dist. LEXIS 212874
  (S.D. Cal. Dec. 10, 2019 ................................................................... 25

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR SUMMARY JUDGMENT,
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Roman Rodriguez v. City of Montclair*,
  No. EDCV 14-00224-JGB, 2015 U.S. Dist. LEXIS 154085 (C.D. Cal. Nov. 13, 2015) ................................................................ 11

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg'g Corp.*,
  6 Cal. 5th 59, 68 (2018) ................................................ 12, 17

*Solin v. O'Melveny & Myers LLP*,
  89 Cal. App. 4th 451 (2001) ............................................... 23

*Stevenson v. Super. Ct.*,
  16 Cal. 4th 880 (1997) ................................................ 19, 20

*Tam v. Qualcomm, Inc.*,
  300 F. Supp. 3d 1130 (S.D. Cal. 2018) .................................... 24

*Tam v. Qualcomm, Inc.*,
  No. 17-cv-0710 JLS (AGS), 2018 U.S. Dist. LEXIS 230518 (S.D. Cal. Oct. 31, 2018) .......................................................... 24

*Turner v. Anheuser-Busch, Inc.*,
  7 Cal. 4th 1238 (1994) ................................................... 21

*Wash. v. Cal. City Corr. Ctr.*,
  871 F. Supp. 2d 1010 (E.D. Cal. 2012) .................................... 23

**Statutes**

Fed. R. Civ. P. 56 ........................................................... 10

Cal. Civ. Code § 1691 ....................................................... 19

Cal. Prob. Code § 16604 ..................................................... 13

**Other Authorities**

Cal. R. Prof. Conduct 1-100 ................................................. 14

Cal. R. Prof. Conduct 3-300 ................................... 14, 16, 17, 18

Cal. R. Prof. Conduct 3-310 ...................................... 15, 16, 17

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page(s)

3

Cal. R. Prof. Conduct 4-200 .................................................................. 15, 17

4

Office of Attorney General, State of California, Opinion No. 00-1203,

5

    84 Cal. Op. Att'y Gen. 71 (2001)............................................................ 24

6

Cal. Prac. Guide: Prof. Resp. (The Rutter Group 2020) ......................... 24

7

N.Y. R. Prof. Conduct 1.0(j)...................................................................... 16

8

N.Y. R. Prof. Conduct 1.5 .................................................................. 16, 17

9

N.Y. R. Prof. Conduct 1.7 ............................................................. 15, 16, 17

10

N.Y. R. Prof. Conduct 1.8...................................................... 15, 16, 17, 18

11

N.Y. R. Prof. Conduct 8.5(a).................................................................... 14

12

*https://www.milbank.com/images/content/2/3/23428/Business-Law-*

13

    *News-Part-.pdf* (last visited Apr. 10, 2021) ........................................ 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## I.      INTRODUCTION

The Complaint filed by Plaintiff and Counterdefendant Hong Liu ("**Liu**") against Defendant Smart King Ltd. ("**Smart King**") and Defendant and Counterclaimant Faraday&Future Inc. ("**Faraday**") (collectively, "**FF**" or the "**Company**") not only:

1.      Impermissibly arises from and seeks to enforce and recover millions of dollars in cash and stock options under the employment agreement ("**Employment Agreement**") Liu solicited, negotiated, drafted and procured in violation of his ethical and fiduciary obligations as FF's outside legal counsel; but also

2.      Impermissibly requires Liu's commission of *additional* ethical and fiduciary violations manifest in his assertion and prosecution of a wrongful termination claim expressly predicated upon, and thus necessitating the public disclosure of, Liu's privileged communications to FF management prior to his discharge regarding alleged "compliance issues and violations of law" supposedly occurring at the Company.

As detailed below, the uncontroverted facts and governing law in this case legally preclude the Complaint's resulting First, Fourth and Seventh Causes of Action, and require the entry of judgment in favor of FF, and against Liu, on each of those claims for the following reasons:

**First**, there neither is, nor can be, any dispute that Liu solicited, negotiated, drafted, and procured his Employment Agreement with FF while simultaneously serving as the Company's outside legal counsel at the law firm Mayer Brown LLP ("**Mayer**"), and that in doing so, Liu violated his ethical and fiduciary duties to FF under the applicable Rules of Professional Conduct and related statutory and decisional law, by:

- Failing to advise FF in writing to seek and obtain independent legal counsel in connection with the Employment Agreement;

114746556

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- Failing to inform FF of the actual and reasonably foreseeable adverse consequences and material risks of, as well as the reasonably available alternatives to, the Employment Agreement's terms, which, *inter alia*, purportedly entitled Liu to the accelerated and immediate payment of $8 million in cash compensation, and the similarly accelerated and immediate vesting and provision of lucrative stock options, both in the event of, and as a reward for, his termination for cause from FF at any time, including for a breach of Liu's fiduciary duties to the Company;

- Failing to disclose to FF that (i) he was negotiating the Employment Agreement exclusively on his own behalf and for his benefit; (ii) that he was not providing FF with the same legal advice in connection with the Employment Agreement that he would have given FF had FF been negotiating that contract with a third-person; and failing to actually provide FF with (iii) the same legal advice in connection with the Employment Agreement that he would have given FF had FF been negotiating that contract with a third-person;

- Failing to disclose in writing to FF, and to obtain FF's fully informed written consent to, Liu's conflict of interest with respect to the negotiation, drafting, and terms of the Employment Agreement; and, as a result of these failures,

- Procuring an Employment Agreement with FF containing unfair, unreasonable, and excessive compensation and other unconscionable terms.

Under these circumstances, binding California state and federal court precedent unambiguously holds that the Employment Agreement is voidable and cannot legally be enforced by Liu against FF, thereby requiring the entry of judgment against Liu on the Complaint's alleged First Cause of Action for breach of that contract. *See discussion, evidence and authorities, infra*, at Secs. II.A and IV.A.1-2.

**<u>Second</u>**, controlling California state and federal law is equally clear that an in-house attorney cannot maintain a valid claim for wrongful termination if the prosecution of that cause of action necessitates the disclosure of the defendant

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

114746556

employer's privileged attorney-client information.   Indeed, under California Supreme Court law, "the suit must be dismissed in the interest of preserving the privilege" under such circumstances.  *General Dynamics Corp. v. Super. Ct.*, 7 Cal. 4th 1164, 1190 (1994).   In patent disregard of this fundamental precept, the Complaint's Fourth Cause of Action for Wrongful Termination is exclusively premised on the allegation that FF retaliated against Liu after he reported "compliance issues and violations of law" to FF management in his capacity as Faraday's Global General Counsel, thereby placing those privileged communications (as well as FF's other privileged information concerning those alleged "issues" and "violations") at the heart of Liu's prosecution, and FF's defense, of Liu's retaliatory discharge claim.   To that end, the impermissible centrality of FF's privileged information is evident not only from Liu's binding judicial admissions made in the Complaint, but also from his and his counsel's undeniable conduct prior to and during this lawsuit, including:

- Liu's illicit retention of hundreds of pages of FF's privileged information following his termination concerning the "compliance issues and violations of law" he allegedly reported to FF management before his discharge; and

- Liu's and his counsel's subsequent use of that illicitly-retained information to prosecute the Complaint, and Liu's counsel's admitted intention to continue doing so, as expressly confirmed by counsel while attempting to introduce and depose witnesses using FF's privileged information.

Because it is clear Liu neither can, nor has any intention of, proving his retaliatory discharge claim without utilizing FF's privileged information, judgment further is required to entered against Liu on the Complaint's alleged Fourth Cause of Action.  *See discussion, evidence and authorities, infra, at Secs. II.B and IV.B.*

**Finally**, because Liu's request for declaratory relief entirely depends on and derives from his above claims, judgment also is required to be entered against Liu on his Seventh Cause of Action for Declaratory Judgment.  *See, infra, at Sec. IV.C.*

## II.   STATEMENT OF FACTS

### A.   Liu Unethically and Improperly Negotiates, Drafts and Procures His Employment Agreement with FF While Serving as Its Counsel

Faraday is an electric car company headquartered in California.  (Statement of Uncontroverted Facts and Conclusions of Law ("**UF**") 1).  Smart King is the indirect parent company of Faraday.  (UF 2).

Between October 2017 and February 2018, Liu was a New York attorney and partner with Mayer.  (UF 3).

In October 2017, Liu provided FF with an Engagement Agreement, as well as with a work plan and other documents, marketing Mayer's and Liu's legal services to FF.  (UF 4).  In the Mayer work plan, Mayer and Liu advised FF that they were "eager to play a role in FF's mission of bringing premium intuitive, and seamlessly connected electric vehicles to people worldwide[,]" and identified legal services to be provided by Mayer's "Corporate and Finance team," "Auto Industry team," "Initial public offering team," "General Counsel team," and "Wealth management" team, all of which were to be overseen by Liu in his capacity and role as the "FF Client Team Leader & Main Contact Partner."  (UF 5).

Similarly, the Engagement Agreement provided that Mayer would deliver a broad array of "legal services and advice [to FF] in connection with [its] capital raising, strategies, regulatory, corporate, securities, intellectual property, litigation, wealth management matters and on such other tasks and matters as may be instructed by [FF] from time to time and as [Mayer] explicitly agree[d] to undertake[,]" and that "[a]s [Mayer's] designated leader of the FF Client Team, [Liu] [would] be responsible for th[is] engagement . . . ."  (UF 6).

FF and Mayer executed the Engagement Agreement dated October 20, 2017, thereby memorializing the retention of Mayer generally, and Liu specifically, as outside legal counsel.  (*Id.*).  Consistent with Mayer's and Liu's statement that Liu

114746556

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

would serve as the "FF Client Team Leader & Main Contact Partner," Liu signed the Engagement Agreement on Mayer's behalf.  (*Id.*).

Between October 2017 and January 2018, Liu—while representing FF in legal matters as a Mayer partner—solicited, negotiated, drafted, and ultimately entered an employment agreement ("**Employment Agreement**") with FF under which he was retained as Faraday's Global General Counsel, Global Chief Administrative Officer, and Global Senior Advisor.  (UF 7-8).  Liu and FF executed the Employment Agreement on or about January 25, 2018, which provided, in relevant part, that:

- "FF shall guarantee [Liu's] employment and base salaries provided in the Terms for five years except for [Liu] decid[ing] to leave FF at his own";

- "FF shall pay [Liu] a minimum annual base salary of $1,000,000.00 in semi-monthly (bi-weekly) installments, for five years.  If [Liu] is terminated by FF for any reason during that five year term he will be entitled to receive any remaining portion of the five years of base salaries not yet paid in lump sum";

- "FF shall pay [Liu] a signing bonus of $3,000,000.00, payable in five equal installments, with the first installment paid upon the signing of the Agreement and each of the remaining installments paid at each of the following four anniversary of [Liu's] start of employment at FF and paid in lump sum in the event of an early termination by FF during the five year guaranteed employment term"; and

- "FF shall grant [Liu] at minimum cost required by law and outright, 2% of FF's total equity shares pre Series A dilution in the form of restrictive stocks or equity option as [Liu] may select based on any of [Liu's] available equity grant forms to select from, namely 20,000,000.00 equity shares representing 2% of the total and all of 1,000,000,000.000 equity shares of FF pre Series A, as FF has represented and warranted, with the FF established and standard equity share or option vesting schedule and any of FF's earliest available vesting schedules as [Liu] may select and with adequate consideration of tax

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

benefits available to [Liu].  Any and all of the remaining unvested portion of such 2% of the total shares shall become immediately and fully vested to [Liu] upon early termination by FF of [Liu's] employment within the guaranteed employment term with FF.  Such an early termination can only be effectuated based on the specific cause of a serious breach of fiduciary duty to FF as a senior executive of FF after fully adjudicated against [Liu] by a competent court in the United States, and [Liu] will be fully covered by FF with executive indemnifications."

(UF 8-9.)

In soliciting, negotiating, drafting the terms of, and procuring the Employment Agreement with FF, Liu:

1.     Failed to advise FF in writing to seek and obtain independent legal counsel in connection with the drafting and negotiation of the Employment Agreement (UF 10);

2.     Failed to inform FF of the actual and reasonably foreseeable adverse consequences and material risks of, as well as the reasonably available alternatives to, the above-listed Employment Agreement terms, which, *inter alia*, purportedly entitled Liu to the accelerated and immediate payment of $8 million in cash compensation, and the similarly accelerated and immediate vesting and provision of lucrative stock options, in the event of, and as a reward for, his termination for cause from FF at any time, including for a breach of Liu's fiduciary duties (UF 11);

3.     Failed to disclose to FF that he (i) was negotiating the Employment Agreement exclusively on his own behalf and for his benefit; (ii) was not providing FF with the same legal advice in connection with the Employment Agreement that he would have given FF had FF been negotiating that contract with a third-person; and failed to actually provide FF with (iii) the same legal advice in connection with the Employment Agreement that he would have given FF had FF been negotiating that contract with a third-person (UF 12);

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

4.     Failed to disclose in writing to FF, and to obtain FF's fully informed written consent to, Liu's conflict of interest with respect to the negotiation, drafting, and terms of the Employment Agreement (UF 13); and, due to these failures, ultimately,

5.     Procured an Employment Agreement with FF containing unfair, unreasonable, and excessive compensation terms and other unconscionable provisions (UF 9).

FF terminated Liu's employment in February 2019, after having already paid him more than $1.8 million in cash compensation.  (UF 16).

Now, through this lawsuit, Liu seeks to enforce the Employment Agreement over the objection of FF and recover eight-figures in cash compensation and stock options allegedly owed to him.  (UF 17).  In contrast, FF seeks to rescind and void the Employment Agreement due to Liu's violation of his ethical and fiduciary duties in connection with his solicitation, negotiation, drafting, and procurement of that contract while serving as FF's outside legal counsel at Mayer.  (UF 15).

**B.     Liu Improperly Attempts to Prove Wrongful Termination Using Privileged Information, Including Materials He Pilfered From FF**

Liu further asserts that FF wrongfully terminated his employment in retaliation for Liu reporting "compliance issues and violations of law" supposedly occurring at the Company.  (UF 18).  Liu's own Complaint, and his and his counsel's admitted conduct in this lawsuit, however, make clear and confirm that Liu must—and already has repeatedly attempted to—improperly use FF's privileged information to allege and prosecute his wrongful termination claim.  (UF 18-24).

**First**, Liu's wrongful termination claim is expressly predicated on his professed reporting of "compliance issues and violations of law" to FF management in his capacity as Faraday's Global General Counsel, thereby placing those privileged communications (as well as FF's other privileged information concerning those alleged "issues" and "violations") at the heart of the Complaint's retaliatory

TROUTMAN PEPPER HAMILTON SANDERS LLP<br/>5 PARK PLAZA<br/>SUITE 1400<br/>IRVINE, CA 92614-2545

114746556

- 7 -

discharge cause of action.  (UF 18, citing Compl. ¶ 5 (alleging Liu was "stripped of his authority and then terminated" because he "proactively took steps to ensure Faraday's compliance with applicable law, including by seeking [internal] investigations"); ¶ 63 (admitting Liu had responsibility for "overseeing a wide range of sensitive regulatory and compliance matters" as in-house counsel); ¶ 69 (alleging Liu "repeatedly advised" FF to cease "illegal, discriminatory" behavior and "worked with and directed Faraday's legal department" in that regard); ¶ 71 (alleging Liu directed the FF "legal department" to "investigate complaints"); ¶ 75 (alleging Liu "actively instructed the legal department to issue memoranda and other communications" regarding FF's legal compliance); ¶ 83 (quoting Liu's letter to management accusing FF of retaliating against him for "directly express[ing] [his] views . . . on how to best comply with laws"); ¶¶ 132-133 (alleging Liu was terminated in retaliation for reporting "serious compliance issues and violations of law")).

**Second**, in recently producing 62 of FF's privileged attorney-client documents totaling 308 pages that he illicitly pilfered from the Company, Liu revealed—for the very first time—that he and his counsel have wrongfully possessed and used FF's privileged written materials since the inception of this lawsuit (the "**Illicit Privileged Materials**").  (UF 19).  The Illicit Privileged Materials retained and possessed by Liu and his counsel include:

- Drafts of company policies prepared by FF's *other* in-house legal counsel, and *not* by Liu himself;

- A document disclosing FF's legal strategy *vis-à-vis* its sales model;

- Drafts of Board of Director meeting minutes prepared by counsel and disclosing privileged information presented to FF's Board;

- Legal memoranda prepared by FF's in-house counsel for review and consideration by FF's senior executives;

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- Email communications with FF's outside legal counsel regarding FF's Series A financing transaction, and FF's related legal dispute and litigation, with Evergrande;

- Text message and email correspondence between Liu, FF employees, and outside counsel regarding requests for, and the provision of legal advice regarding, corporate governance issues;

- Emails between FF's employees, in-house counsel, and outside counsel regarding labor and employment issues involving the WARN Act, alleged sexual harassment complaints, furloughs, and investigations;

- Email correspondence and draft documents exchanged with outside counsel relating to FF's Employee Stock Option Plan;

- Emails reflecting FF seeking legal advice from in-house regarding the recording of company meetings;

- Email chains containing legal advice from outside counsel concerning banking laws;

- An email from an FF employee seeking legal advice regarding how to respond to meeting comments;

- An email summarizing work performed by FF's in-house legal department; and

- A presentation to FF's management regarding the company's key legal strategies and the status of various legal matters.

(UF 20).

Unsurprisingly, the above-listed Illicit Privileged Materials exclusively relate to Liu's wrongful termination claim, insofar as they supposedly evidence the purported "compliance issues and violations of law" that Liu allegedly reported to FF management prior to his termination.  (UF 18).

**Third**, and consistent with the gravamen of Liu's wrongful termination claim, Liu and his counsel have admittedly and improperly used FF's privileged information to prosecute Liu's Complaint, manifest from the following indisputable facts:

A)      During the April 13, 2021 deposition of FF employee Qing Ye ("**Ye Deposition**"), Liu's counsel attempted to introduce and question the witness with the

Illicit Privileged Materials—namely, a privileged communication between FF and its legal counsel containing legal advice regarding corporate governance, relevant only to Liu's wrongful termination claim.  (UF 21);

B)    In response to his attempted introduction of Illicit Privileged Materials, FF's attorney admonished Liu's counsel that such unauthorized possession and use of FF's privileged materials not only violates the attorney-client privilege, but also subjects Liu's counsel to disqualification under governing California law.  (UF 22);

C)    The next day, during the April 14, 2021 deposition of FF employee Chaoying Deng ("**Deng Deposition**"), Liu's counsel once again attempted to question the witness with Illicit Privileged Materials—namely, a privileged communication between FF and its outside legal counsel concerning FF's financial position.  (UF 23); and

D)    In response to FF's attorney's objection and demand that all Illicit Privileged Materials be immediately returned and/or destroyed, *Liu's attorney not only unequivocally admitted, but also expressly reconfirmed, Liu's intention to continue to use FF's privileged information "in support of" the Complaint's "claim for retaliation."*  (UF 24).

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact."  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *Id.* (quotations omitted).  The non-moving party's evidence "must be concrete and cannot rely on mere speculation, conjecture, or fantasy," *OSC Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986), and

"uncorroborated and self-serving declarations . . . alone [cannot] create any genuine issues of material fact." *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2006).

Likewise, a party cannot create an issue of fact by contradicting its own complaint "because [f]actual assertions in pleadings" are "judicial admissions conclusively binding on the party who made them." *Roman Rodriguez v. City of Montclair*, No. EDCV 14-00224-JGB (DTBx), 2015 U.S. Dist. LEXIS 154085, at *21-22 (C.D. Cal. Nov. 13, 2015); *see also Kaur v. Singh*, No. 2:13-cv-00089-KJM-EFB, 2014 U.S. Dist. LEXIS 72798, at *23 (E.D. Cal. May 28, 2014) (same). Ultimately, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to survive summary judgment; rather, "there must be evidence" that is "significantly probative" on which "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 252 (1986).

## IV.   ARGUMENT

### A.   Judgment in FF's Favor Should Be Entered on the Complaint's First Cause of Action for Breach of Contract

In the Complaint's First Cause of Action for Breach of Contract, Liu alleges FF breached the Employment Agreement by failing to provide him with $6.4 million in cash compensation and lucrative stock options following his termination in February 2019. (UF 17). In so alleging, Liu studiously ignores and avoids governing California state and federal court law, as well as the undisputed evidence in this case, conclusively establishing that:

1.   Liu solicited, negotiated, drafted, and procured his Employment Agreement in violation of the applicable Rules of Professional Conduct as well as his corresponding ethical and fiduciary obligations *vis-à-vis* FF (UF 3-14); and that

2.   As a result of his myriad of ethical and fiduciary violations, the Employment Agreement is voidable and legally unenforceable.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

As detailed below, because Liu cannot establish the enforceability of the Employment Agreement, judgment is required to be entered against him on the Complaint's First Cause of Action for breach of that alleged contract. *See Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017) ("the existence of an enforceable contract" is an "essential element[] of a breach of contract claim"); *Grant & Eisenhofer, P.A. v. Brown*, No. CV 17-5968 PSG (PJWx), 2018 U.S. Dist. LEXIS 220331, at \*24 (C.D. Cal. Mar. 27, 2018) (a "voided Agreement [is] no contract at all; it b[inds] no one and [is] a mere nullity" that "c[an] not be enforced.").

### 1. The Law Forbids Attorneys From Enforcing Contracts Against Clients That Were Negotiated and Procured in Violation of the Attorney's Ethical and Fiduciary Duties

"Attorneys are fiduciaries who owe their clients the 'most conscientious fidelity[,]'" and "[t]he law accordingly takes a jaundiced view of business transactions between attorneys and their clients." *Ferguson v. Yaspan*, 233 Cal. App. 4th 676, 684 (2014). To that end, the law is clear that an agreement between an attorney and client that was negotiated and procured in violation of the attorney's ethical and fiduciary obligations is "voidable at the client's option" and cannot legally be enforced by the attorney. *Id.* at 685; *see also, e.g., Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg'g Corp.*, 6 Cal. 5th 59, 68 (2018) (law firm's conflict of interest rendered contract unenforceable); *Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1154-1156 (2011) (affirming order denying attorney recovery where the at-issue agreements were procured in violation of the attorney's ethical and fiduciary duties); *BGJ Assoc. v. Wilson*, 113 Cal. App. 4th 1217, 1226-1231 (2003) (affirming order refusing to enforce attorney's joint venture agreement with client where it was procured in violation of the attorney's ethical and fiduciary duties, and the attorney failed to advise the client as the attorney would have in a transaction involving a third-person).

Consistent with these governing precepts, "the law presumes" an attorney engaged in an advantageous transactions with a client "wear[s]" a "black" hat, *Mayhew v. Benninghoff*, 53 Cal. App. 4th 1365, 1369 (1997), and correspondingly violates his fiduciary duties by exerting "undue influence" over the client. *Fair*, 195 Cal. App. 4th at 1152, 1155; *see also BGJ Assoc.*, 113 Cal. App. 4th at 1227 (holding that California Probate Code § 16604—which governs "transaction[s] between the trustee and a beneficiary . . . by which the trustee obtains an advantage from the beneficiary"—applies to the attorney-client relationship and mandates the presumption that "[an] [advantageous] transaction between and attorney and client is" unenforceable due to "[in]sufficient consideration and . . . undue influence.").

Absent an attorney's refutation of this mandatory presumption through the introduction of admissible evidence showing that the at-issue transaction is both "fair and just" to the client, and that the client was "fully advised" of the attorney's conflict of interest, the transaction neither is binding upon, nor can it legally be enforced over the objection of, the client. *See, e.g., Fair*, 195 Cal. App. 4th at 1155-56; *see also Felton v. Le Breton*, 92 Cal. 457, 469 (1891) (holding that attorney-client transactions "are set aside at the mere instance of the client, unless the attorney can show by extrinsic evidence that his client acted with full knowledge of all the facts connected with such transaction, and fully understood their effect; and in any attempt by the attorney to enforce an agreement on the part of the client growing out of such transaction, the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised.").

**2.  Liu Cannot Enforce the Employment Agreement Because He Negotiated and Procured That Contract in Violation of His Ethical and Fiduciary Duties**

Prior to executing the Employment Agreement in January 2018, Liu was a New York attorney and partner with Mayer who was representing and performing

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

114746556

- 13 -

legal work for FF.  (UF 3-7).  Accordingly, there is no legal or factual dispute that, leading up to and during his solicitation, drafting, negotiation, and execution of the at-issue Employment Agreement, Liu was in an attorney-client relationship with FF, and his conduct *vis-à-vis* FF legally was governed by, and required to comply with, both the California and New York Rules of Professional Conduct and related decisional law.  *See, e.g.*, Cal. R. Prof. Conduct 1-100(D)(2) ("As to lawyers from other jurisdictions who are not members:  These rules shall also govern the activities of lawyers while engaged in the performance of lawyer functions in this state . . . ."); N.Y. R. Prof. Conduct 8.5(a) ("A lawyer admitted to practice in this state is subject to the disciplinary authority of this state, regardless of where the lawyer's conduct occurs."); *Odish v. Cognitive Code Corp.*, No. CV 12-9069 FMO (JCGx), 2015 U.S. Dist. LEXIS 68630, at *17 (C.D. Cal. May 27, 2015) (Michigan-based attorney was "required to comply with California's rules of professional conduct" while "providing legal services" to California-based clients), *rev'd in part on other grounds in Bourbeau v. Cognitive Code Corp.*, 2017 U.S. App. LEXIS 6463 (9th Cir. Apr. 14, 2017).

Specifically, and at a bare minimum, Liu was legally required to comply with each of the following Rules of Professional Conduct in connection with his solicitation, drafting, negotiation and procurement of the Employment Agreement with his client FF:

- <u>California Rule 3-300</u>, which provides that an attorney "shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless" the attorney satisfies the requirements that (i) "[t]he transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client"; (ii) "[t]he client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

is given a reasonable opportunity to seek that advice"; and (iii) "[t]he client thereafter consents in writing to the terms of the transaction or the terms of the acquisition";

- <u>California Rule 3-310</u>, which provides that an attorney with "a legal, business, financial, or professional interest in the subject matter of the representation" of a client "shall not accept or continue representation of a client without providing written disclosure to the client" of all "relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client" resulting from the attorney's conflict of interest;

- <u>California Rule 4-200</u>, which provides that an attorney "shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee";[1] and

- The New York counterparts to each of the foregoing California Rules—namely: (i) <u>New York Rule 1.7</u>, providing that a lawyer "shall not," absent informed written consent, represent a client if "there is a significant risk that the lawyer's professional judgment on behalf of [the] client will be adversely impacted by the lawyer's own financial, business, property or other personal interests;" (ii) <u>New York Rule 1.8</u>, providing that a lawyer "shall not enter into a business transaction with a client if they have differing interests therein" unless "the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client[,]" "the client is advised in

---

[1] California Rule 4-200 is not limited to fee arrangements with outside counsel. Nor does anything in that Rule suggest, much less establish, a narrow construction of the word "fee" that excludes amounts charged by in-house counsel. To the contrary, Rule 4-200 should and does apply to in-house attorney compensation, consistent with its facially broad and dispositive plain language. *See https://www.milbank.com/images/content/2/3/23428/Business-Law-News-Part-.pdf* at p. 22 (last visited Apr. 10, 2021) (Neil Wertlieb, Esq., former Chair of the California State Bar's Committee on Professional Responsibility and Conduct, concluding that Rule 4-200 "should apply equally to in-house and outside counsel" and that "there appears to be no precedential basis to conclude that the compensation arrangement for the in-house attorney is not the equivalent of a fee arrangement between the employee-attorney and the employer-client").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel[,]" and "the client gives informed consent, in writing" to the lawyer's conflict; and (iii) <u>New York Rule 1.5</u>, providing that a lawyer "shall not make an agreement for, charge, or collect an excessive or illegal fee or expense."[2]

To comply with these Rules, Liu not only was required to strictly follow their express requirements, but further was obligated under governing California law to "give to [FF] all that reasonable advice against himself that [Liu] would have given" FF had FF been negotiating the Employment Agreement with a third-person. *See BGJ Assoc.*, 113 Cal. App. 4th at 1226, 1229.

In marked contrast to honoring these mandatory ethical and fiduciary duties, the documented facts establish that Liu blithely ignored and flouted them by:

1.      Failing to advise FF in writing to seek and obtain independent legal counsel in connection with the drafting and negotiation of the Employment Agreement, and correspondingly failing to afford FF a reasonable opportunity to seek such independent advice, in violation of California Rule 3-300 and New York Rule 1.8. (UF 10);

2.      Failing to inform FF of the actual and reasonably foreseeable adverse consequences of and material risks of, as well as the reasonably available alternatives to, the Employment Agreement's terms, which, *inter alia*, purportedly entitled Liu to the accelerated and immediate payment of $8 million in cash compensation, and the similarly accelerated and immediate vesting and provision of FF stock options currently valued in the eight-figure range, in violation of California Rule 3-310 and New York Rules 1.7 and 1.0(j). (UF 11);

3.      Failing to disclose in writing to FF, and to obtain FF's fully informed written consent to, Liu's conflict of interest with respect to the negotiation, drafting,

---

[2] Liu has acknowledged his familiarity with and agreement to abide by these rules of professional conduct in writing. (UF 14)

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

and terms of the Employment Agreement, in violation of California Rules 3-300 and 3-310 and New York Rules 1.7 and 1.8.  (UF 13); and

4.      Failing to disclose to FF that he was negotiating the Employment Agreement exclusively on his own behalf and for his benefit, and was not providing FF with the same legal advice in connection with the Employment Agreement that he would have given FF had FF been negotiating that contract with a third-person. (UF 12); and subsequently

5.      Procuring, in violation of California Rules 3-300 and 4-200 and New York Rules 1.8 and 1.5, an unfair and unreasonable Employment Agreement with FF (i) retaining Liu as the company's Global General Counsel; (ii) awarding Liu excessive compensation, including $8 million in cash and a 2% ownership interest in FF currently valued in the eight-figure range; (iii) containing further unconscionable terms providing for the accelerated and immediate payment of Liu's entire cash compensation, and the similarly accelerated and immediate vesting and provision of all his FF stock options, in the event of, and as a reward for, his termination for cause from FF at any time, including for a breach of Liu's fiduciary duties to the Company; and (iv) ostensibly limiting FF's ability to terminate Liu for any reason other than his breach of fiduciary duty.  (UF 9).

As manifest from the foregoing facts, the Employment Agreement was (a) procured through, and is inescapably tainted by, Liu's ethical and fiduciary violations, and is correspondingly (b) unenforceable as a matter of law.  *See, e.g., Sheppard*, 6 Cal. 5th at 68, 87 (holding that "law firm's conflict of interest rendered" contract "unenforceable" because an attorney's "violation of a Rule of Professional Conduct in the formation of a contract can render [it] unenforceable"); *Fair*, 195 Cal. App. 4th at 1141, 1154-57 (attorney's violation of California Rule 3-300 rendered contracts with client unenforceable and prohibited attorney's recovery of damages despite the fairness of the parties' business arrangements, because the attorney (i) "never gave advice against himself to" the client, (ii) failed to ensure the client

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   "fully . . . understood" the transaction's material terms, and (iii) sought to recover

2   excessive and "disproportionate back-end interests and profits" from the client); *BGJ*

3   *Assoc.*, 113 Cal. App. 4th at 1226-29 (attorney's violation of California Rule 3-300

4   rendered joint venture contract with client void and legally unenforceable where the

5   attorney (i) failed to disclose the terms of the agreement in writing, (ii) failed to

6   advise the client in writing to seek the advice of independent counsel, and (iii) failed

7   to apprise the client of the "perils of entering into a joint venture" with provisions

8   potentially benefiting the attorney at the client's expense).

9          That is particularly true where the applicable Rules of Professional Conduct

10  broadly govern and invalidate a wide range of transactions between attorneys and

11  their clients, including agreements providing for the attorney's employment as in-

12  house counsel.  For example, in *Odish*, 2015 U.S. Dist. LEXIS 68630, at *17-*30,

13  the district court granted summary judgment in favor of a client-defendant where the

14  plaintiff-attorney failed to "to comply with Rule 3-300" when negotiating the subject

15  agreements, including an agreement under which the attorney was appointed in-

16  house counsel and received equity from the client.  The district court held that the

17  attorney's violation of Rule 3-300 and subsequent inability to refute his presumptive

18  breach of fiduciary duty precluded enforcement of his stock option and ownership

19  agreements, especially where the attorney drafted those agreements and where their

20  terms were "unfair" by virtue of excessive compensation terms and other provisions

21  that threatened to "impede" the client's business.  *Id*. (further recognizing that the

22  attorney's professed oral disclosure that the client should seek independent counsel

23  in connection with agreements was insufficient to satisfy the requirement of a written

24  disclosure under California Rule 3-300); *see also Gurvey v. Legend Films, Inc.*, No.

25  3:09-cv-00942 AJB (BGS), 2012 U.S. Dist. LEXIS 131547, at *30-31 (S.D. Cal. Sep.

26  14,  2012)  (granting  summary  judgment  against  attorney  seeking  unpaid

27  compensation pursuant to an in-house employment agreement, and holding that the

28  agreement was legally unenforceable due to the attorney's violations of California

114746556
- 18 -

Rule 3-300 and New York Rule 1.8 in connection with the drafting and negotiation of the contract).

There is no genuine issue of fact or law that the Employment Agreement is voidable by FF as a result of Liu's ethical and fiduciary violations, and where FF jas expressly requested and sought rescission of that unlawfully procured and legally voidable contract in this action. (UF 15).[3]  As such, Liu neither has, nor can, establish an essential element of his alleged First Cause of Action: a legally enforceable contract.  Therefore, judgment is required to be entered against Liu on that claim.

### B. Judgment in FF's Favor Similarly Should Be Entered on the Complaint's Fourth Cause of Action for Wrongful Termination

The Complaint's Fourth Cause of Action for Wrongful Termination in Violation of Public Policy alleges that FF improperly discharged Liu in retaliation for Liu's reporting of unspecified, "serious compliance issues and violations of law." (UF 18).  Whereas Liu's claim for breach of contract is legally precluded by his myriad of ethical violations before joining FF, the Complaint's Fourth Cause of Action is prohibited under governing law by virtue of Liu's additional and threatened future ethical violations manifest in his prosecution of his wrongful discharge claim.

**First**, California Supreme Court law holds that a plaintiff alleging wrongful discharge in violation of public policy must typically plead and prove he was terminated in retaliation for "(1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; [or] (4) reporting an alleged violation of statute of public importance." *Stevenson v. Super. Ct.*, 16 Cal. 4th 880, 889 (1997) (internal quotations omitted).  Even then, the plaintiff must

---

[3] *See* Cal. Civ. Code § 1691 ("the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice [of rescission] or offer [to restore to the other party everything of value] or both."); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 Cal. App. 4th 1259, 1267 (2007) ("St. Paul filed and served an answer asserting [that] . . . material misrepresentations in the application rendered the policy 'voidable, and/or subject to reformation or rescission.'   St. Paul  also filed  and served  a cross-complaint assertion . . . 'rescission . . . or voidance of the Policy.'   These pleadings satisfy St. Paul's responsibility to provide notice and to offer restoration.").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

further establish that "[t]he public policy [] violated [is] one that is delineated by constitutional, statutory, or regulatory provisions[,]" and "that inures to the benefit of the public" in a "fundamental" and "substantial" way. *Jersey v. John Muir Med. Ctr.*, 96 Cal. App. 4th 814, 821 (2002); *see also Stevenson*, 16 Cal. 4th at 889 (confirming the termination of an employee violates public policy and gives rise to tort liability only if "the policy in question [] involve[s] a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer, and [is] not only 'fundamental' and 'substantial,' but also 'well established' at the time of discharge"). Stated differently, a claim for wrongful discharge untethered to a statutory or constitutional provision is not actionable as a matter of law. *See, e.g., Kadiyan v. Medtronic*, No. CV 10-05921 MMM (MANx), 2011 U.S. Dist. LEXIS 163991, at *68 (C.D. Cal. Apr. 8, 2011) (recognizing the "claimed public policy must be 'tethered to' a specific constitutional or statutory provision," and granting summary judgment in favor of employer where plaintiff failed to identify any such policy that violated).

Critically, this wrongful termination standard is even more exacting where, as here, the plaintiff is the defendant's former in-house attorney. In such cases, the plaintiff is prohibited from maintaining a wrongful termination claim unless he can establish he was discharged for (i) "following a mandatory ethical obligation" grounded in "***explicit* and *unequivocal ethical norms*** embodied in the Rules of Professional Responsibility and statutes"; or for (ii) engaging in other traditionally protected activity "under circumstances in which the Legislature has manifested a judgment that the principle of professional confidentiality ***does not apply***." *See General Dynamics*, 7 Cal. 4th at 1188-1190 (emphasis in original). These mandatory additional requirements are designed to "protect" the "values that underlie the professional [attorney-client] relationship . . . from the threat of damage" posed by wrongful discharge claims from in-house counsel. *Id.* at 1889.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Ignoring these governing precepts, Liu fails to even plead, let alone can legally prove, that he was terminated from FF: (1) in violation of any explicit ethical norm embodied in the Rules of Professional Conduct or other related statute; or (2) because he engaged in other protected activity under circumstances manifesting a legislative exception to the otherwise absolute duty to preserve the attorney-client privilege. *General Dynamics*, 7 Cal. 4th at 1188-90.  To the contrary, and in patent disregard of governing law, Liu **exclusively** grounds his wrongful termination claim in vague and boilerplate assertions that he was discharged because he internally reported "potential," unspecified "compliances issues" and "violations of law" supposedly occurring at FF.  (UF 18).

California state and federal court law clearly forbid this type of generic wrongful termination claim, and preclude Liu from establishing the Complaint's Fourth Cause of Action.  *See, e.g., General Dynamics*, 7 Cal. 4th at 1191 (a claim for wrongful termination by in-house counsel based on "disagreements over policy" are "not actionable," and in-house counsel "bears the burden of establishing" a discharge in violation of an "ethical norm" benefiting "the public at large," not just the attorney and client); *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256-57 (1994) (affirming summary judgment against plaintiff alleging wrongful discharge where the plaintiff (i) alleged he was terminated due to "his complaints and expressed opposition" to the employer's violation of "internal policies [and] the provisions of its agreements with others[,]" and (ii) asserted only "vague charge[s] of 'Alcohol, Tobacco and Firearms laws' violations [] unaccompanied by citations to specific statutory or constitutional provisions."); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 669-71 (1988) ("there is no substantial public policy prohibiting an employer from discharging an employee" for internally reporting "information relevant to his employer's interest"); *Jacobson v. Carlton Hair*, No. CV 09-09377 MMM (FMOx), 2011 U.S. Dist. LEXIS 165587, at *81-*83 (C.D. Cal. Jan. 31, 2011) (granting summary judgment against plaintiff alleging wrongful discharge in violation of

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

114746556

- 21 -

public policy where he failed to identify the specific statute(s) or constitutional provision(s) on which he base[d] his" discharge claim).

**Second**, as manifest on the face of the Complaint, as well as by Liu's and his counsel's own admitted conduct in this action, there is no genuine dispute that Liu's claim for wrongful termination necessitates his disclosure and use of FF's privileged information, including, at a minimum: (i) Liu's privileged communications with FF management in which he allegedly reported the "compliance issues and violations of law" in his capacity as Faraday's Global General Counsel; and (ii) FF's other privileged information concerning those alleged "issues" and "violations." Indeed, the Complaint's Fourth Cause of Action is expressly predicated on Liu reporting those supposed "compliance issues and violations" to FF management. (UF 18, citing Compl. ¶¶ 5, 63, 69, 71, 75, 83, 132-133). And, it is equally clear that Liu retained, provided to his counsel, and has subsequently used Illicit Privileged Materials relating to the "issues" and "violations" implicated by and alleged in support of the Complaint's Fourth Cause of Action, including during the Ye and Deng Depositions. (UF 19-24). Under these circumstances, California law mandates the dismissal of Liu's wrongful termination claim to preserve the privilege.

Specifically, in *General Dynamics*, the California Supreme Court made clear that an in-house attorney only is permitted to maintain "a retaliatory discharge claim, ***provided*** it can be established without breaching the attorney-client privilege or unduly endangering the values lying at the heart of the professional relationship." *See* 7 Cal. 4th at 1169 (emphasis in original). ***However, "in those instances where the attorney-employee's retaliatory discharge claim is incapable of complete resolution without breaching the attorney-client privilege, the suit may not proceed."*** *Id.* at 1170 (emphasis added). That is because an in-house attorney's "high duty of fidelity to the interests of the client works against a tort remedy that is coextensive with that available to the nonattorney employee." Indeed, "the in-house attorney who publicly exposes the client's secrets" in support of a wrongful discharge

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

claim will "find no sanctuary in the courts[,]" and there is no basis for "any suggestion that the scope of the [attorney-client] privilege should be diluted in the context of in-house counsel and their corporate clients."  Accordingly, ***"where the elements of a wrongful discharge in violation of fundamental public policy claim cannot . . . be fully established without breaching the attorney-client privilege, <u>the suit must be dismissed in the interest of preserving the privilege</u>."***  *Id.* at 1189-90 (emphasis added).

Importantly, this principle likewise extends to and mandates dismissal when the disclosure of privileged information also is necessary to defend against an attorney's claim.  *See, e.g., Solin v. O'Melveny & Myers LLP*, 89 Cal. App. 4th 451, 454, 457, 466-67 (2001) (recognizing "there can be no balancing of the attorney-client privilege against the right to prosecute a lawsuit to redress a legal wrong," and affirming dismissal of case under *General Dynamics* where the action was "incapable of complete resolution without breaching the attorney-client privilege" because the defendant "could not effectively defend the action without disclosing" privileged information); *Olivo v. City of Vernon*, No. B213984, 2010 Cal. App. Unpub. LEXIS 6018, at *24, *43 (July 29, 2010) (the "principle" that "an attorney plaintiff may not prosecute a lawsuit if in doing so client confidences would be disclosed" has been "explicitly extended" to "the defense of [] a lawsuit[,]" so that dismissal is required if an employer "would be required to rely on [privileged information] in mounting its defense.").[4]

Because this is a paradigm case in which (i) Liu must and already has used privileged documents to attempt to prove his wrongful discharge claim (UF 18-24), and in which (ii) FF would likewise be required to disclose privileged information to refute Liu's claim of retaliation, the Complaint's Fourth Cause of Action must be dismissed to protect the sanctity of the attorney-client privilege.  *See Olivo*, 2010 Cal.

---

[4] The Court may consider and rely on unpublished California decisions.  *Emplrs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); *Wash. v. Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028 (E.D. Cal. 2012).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

App. Unpub. LEXIS 6018, at *16-*48 (affirming order granting employer summary judgment on in-house counsel's claim that he was wrongfully terminated in retaliation for preparing and internally disseminating a privileged report concerning "illegal activity" and "unethical conduct," and holding *General Dynamics* mandated dismissal because "the contents of the [privileged] Report" were necessary (i) to "reveal the information [in-house counsel] disclosed concerning" the employer's alleged "illegal conduct," (ii) for "any trier of fact to "evaluate" witness credibility and the facts, and (iii) for the employer to "mount[] its defense.""); *Degenshein v. 21st Century Toys, Inc.*, A111446, 2007 Cal. App. Unpub. LEXIS 3486, at *2-*11 (Apr. 30, 2007) (holding *General Dynamics* mandated dismissal of in-house counsel's claim that he was wrongfully terminated for refusing his employer's alleged "instruct[ion] [] to participate in illegal and fraudulent schemes," because (i) the "descriptions of the [key] communications [] in the second amended complaint established that their dominant purpose was the rendering of legal advice" and "opinions" concerning alleged ethical, legal, and compliance issues at the employer, and (ii) in-house counsel "could not prove his case without use of [that] evidence [which] the court had deemed privileged");[5] *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1139-44 (S.D. Cal. 2018) (dismissing in-house counsel's wrongful discharge claim where he was unable to identify any justification for his disclosure of privileged communications, despite citing Rule of Prof. Conduct 3-600, the Sarbanes-Oxley Act, Cal. Bus. & Prof. Code, and Cal. Labor Code).[6,]

---

[5] *See also* Cal. Prac. Guide: Prof. Resp., Ch. 7-C at § 7:177.2b ("California's 'whistleblower' statutes do not prove an exception to the attorney-client privilege. Thus, a lawyer acting as a whistleblower cannot reveal privileged information."); Office of AG, State of Cal., No. 00-1203, 84 Cal. Op. Att'y Gen. 71 (2001) (same).

[6] The district court in *Tam* subsequently allowed the plaintiff's amended complaint to survive the pleading stage *solely* to the extent the plaintiff included a new allegation that he was terminated for taking medical leave, which claim did not implicate any of plaintiff's privileged communications with the defendant as in-house counsel. In marked contrast, the district court *reaffirmed* the dismissal of the remainder of the plaintiff's wrongful discharge claim on all other grounds under *General Dynamics. See Tam v. Qualcomm, Inc.*, No. 17-cv-0710 JLS (AGS), 2018 U.S. Dist. LEXIS 230518, at *8-*17 (S.D. Cal. Oct. 31, 2018).

C.    **The Court Should Enter Judgment on the Complaint's Seventh Cause of Action for Declaratory Judgment**

A claim for declaratory relief "rises and falls" with the plaintiff's underlying "substantive claims" because the "Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action." *Renovate Am., Inc. v. Lloyd's Syndicate 1458*, No. 3:19-cv-01456-GPC-WVG, 2019 U.S. Dist. LEXIS 212874, at *14 (S.D. Cal. Dec. 10, 2019). Because the Complaint's Seventh Cause of Action for a Declaratory Judgment is dependent on and entirely derivative of Liu's other legally defective claims, (UF 25), judgment also is required to be entered on that equally baseless claim. *Reysner v. Navient Sols., Inc.*, No. 2:17-cv-00641-KJM-KJN PS, 2018 U.S. Dist. LEXIS 190880, at *31 (E.D. Cal. Nov. 7, 2018) (entering summary judgment on derivative declaratory relief claim).

V.    **CONCLUSION**

Based upon the foregoing, FF respectfully requests that summary judgment be entered in its favor, and against Liu, on the Complaint's remaining First, Fourth and Seventh Causes of Action.

Dated:  April 26, 2021                    Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP


By:  /s/ Lauren E. Grochow
Lauren E. Grochow

Attorneys for Defendant SMART KING LTD. and Defendant and Counterclaimant FARADAY&FUTURE INC.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545