ALAN J. KESSEL, Bar No. 130707
alan.kessel@troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:  949.622.2700
Facsimile:  949.622.2739

Attorneys for Defendant
SMART KING LTD and Defendant and
Counterclaimant FARADAY&FUTURE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| HONG LIU,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,<br><br>Defendants. | Case No. 2:20-cv-08035-SVW-JPR<br><br>Honorable Stephen V. Wilson<br><br>**DEFENDANTS FARADAY&FUTURE INC. AND SMART KING LTD.'S OPPOSITION TO PLAINTIFF HONG LIU'S *EX PARTE* APPLICATION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Discovery Cutoff Date:  April 23, 2021<br>Pre-Trial Conf:          Waived<br>Trial Date:              June 8, 2021 |
| AND RELATED COUNTERCLAIM. | |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

115560079

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND .............................................................................. 6

    A.   The Parties ............................................................................. 6

    B.   The Employment Agreement and Liu's Ethical Violations ................. 6

    C.   Liu's Complaint and Defendants' Summary Judgment Motion .......... 7

    D.   Procedural History ............................................................... 12

III.  ARGUMENT ............................................................................... 16

    A.   The Court should deny the Application as there is no exigency ........ 16

    B.   No extraordinary relief is required because the Motion to Dismiss is irrelevant, and there is no material outstanding discovery. ............................................................................. 17

    C.   The Application will Prejudice Defendants, but its denial would not prejudice Liu in any way ................................................. 19

IV.   CONCLUSION ............................................................................. 20

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BGJ Assocs. v. Wilson*,
113 Cal. App. 4th 1217 (2003)............................................................................4, 7

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005)............................................................................ 14

*Foley v. Interactive Data Corp.*,
47 Cal. 3d 654 (1988)........................................................................................ 11

*General Dynamics, Corp. v. Super. Ct.*,
7 Cal. 4th 1164 (1994).................................................................................*passim*

*Gurvey v. Legend Films, Inc.*,
No. 3:09-cv-00942 AJB (BGS), 2012 WL 4061773 (S.D. Cal. Sep.
14, 2012).........................................................................................................4, 7

*Held & Hines LLP v. Hussain*,
No. 16-cv-5273 (JSR)(SN) 2018 WL 4233809 (S.D.N.Y. July 31,
2018)................................................................................................................4, 7

*Jacobson v. Carlton Hair*,
No. CV 09-09377 MMM, 2011 WL 13112239 (C.D. Cal. Jan. 31,
2011)................................................................................................................. 11

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995).............................................................. 16, 17

*Odish v. Cognitive Code Corp.*,
No. CV 12-9069 FMO, 2015 WL 11347592 (C.D. Cal. May 27,
2015)................................................................................................................4, 7

*Olivo v. City of Vernon*,
No. B213984, 2010 WL 2958398 (Cal. App. July 29, 2010) ............................ 12

*Solin v. O'Melveny & Myers LLP*,
89 Cal. App. 4th 451 (2001)............................................................................. 12

*Turner v. Anheuser-Busch, Inc.*,
7 Cal. 4th 1238 (1994)...................................................................................... 11

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- ii -

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**Other Authorities**

California Rules of Professional Conduct 3-310, 3-300, and 4-200 ....................... 13

Fed. R. Civ. P. 7(a) ................................................................................................. 14

Local Rule 7-3 ................................................................................................. 12, 16

Local Rule 12(c) ...................................................................................................... 14

New York Rules of Professional Conduct 1.7, 1.7, and 1.8.................................... 13

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

## I.      INTRODUCTION

Plaintiff Hong Liu's ("**Liu**") *Ex Parte* Application for Extension of Time to Respond to Defendants Faraday&Future Inc. ("**FF**") and Smart King Ltd.'s ("**Smart King**"; together with FF, "**Defendants**") Motion for Summary Judgment (respectively, the "**Summary Judgment Motion**" and the "**Application**") must be denied for each of the following, independently dispositive reasons:

*First*, there is no emergency, and certainly not one that is not of Liu's own making.  Defendants first sent Liu meet and confer correspondence setting forth the grounds for, and stating their intention to file, the Summary Judgment Motion *nearly a month ago* on March 31, 2021.  Then, on April 9, 2021, the parties met and conferred telephonically, yet Liu's counsel never once raised any issue regarding the Summary Judgment's timing during that meet and confer.  Nor did Liu raise any such issue at all until yesterday, when for the very first time, Liu's counsel suddenly and without any warning demanded that Defendants agree to continue the Summary Judgment Motion to some indeterminate date, the earliest of which would actually require this Court to hear the motion on the day before the first day of trial in this matter at the earliest.  When Defendants pointed out the absurdity of Liu's demand (as well as the various reasons detailed below as to why the Summary Judgment Motion's current and properly noticed schedule presents no issues at any rate), at 5:26 p.m. PT last night, Liu nevertheless emailed Defendants to give *ex parte* notice of the Application, forcing Defendants and this Court to once again waste time and resources responding to a non-existent "emergency" of Liu's own imagination and making in the hope of obtaining a tactical advantage in this litigation.

To that end, Liu not only purposely waited nearly a month before abruptly providing *ex parte* notice regarding his supposed issues with the Summary Judgment Motion's timing, but he then proceeded to purposely wait until 11:20 p.m. PT last night to first serve his Application and supporting papers, which he obviously had been planning and preparing for at least 18 hours.  Indeed, this is now the *fourth time*

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*in just the past month* that Liu has given *ex parte* notice late in the day on an issue for which there is no emergency. Accordingly, in addition to the absence of any "emergency" conceivably supporting the issuance of *ex parte* relief manifest from his own dilatory conduct and failure to raise any issue at all regarding the Summary Judgment Motion's timing for nearly a month, Liu's blatant gamesmanship and bad faith tactics further mandate denial of the Application, as well as subject Liu and his counsel to sanctions. *See discussion, infra,* at Section III.A. Defendants do not seek sanctions lightly, but it is clear that nothing else will stop Liu from continually abusing the *ex parte* process.

**Second**, no extraordinary relief is needed. Nor is there any good cause for the requested extension. In yet again attempting to manufacture an emergency where none exists, Liu pretends that an extension regarding briefing on Summary Judgment on Liu's claims is somehow required because (1) the Court is set to hear his pending motion to dismiss Defendants' counterclaims on May 3, 2021 and (2) he purportedly needs certain privileged documents to respond to the Summary Judgment Motion. Neither contention is supported by the facts or law.

As to Liu's pending motion to dismiss, it is irrelevant to the Summary Judgment Motion. While the Application vaguely asserts that the Court's ruling on Liu's motion to dismiss may somehow moot some parts of the Summary Judgment Motion, nowhere does it explain how a motion to dismiss *Defendants' counterclaims* could possibly moot Summary Judgment on *Liu's claims*. Nor could it have, as they are wholly separate claims which, procedurally, concern wholly separate judicial standards. Regardless, to the extent they concern similar issues of law, both motions are both pending before the same judge, so there is no risk of inconsistent orders. In fact, if anything, any overlap of issues should only serve to make Liu's drafting of his Summary Judgment opposition that much easier. At any rate, the pending motion to dismiss Defendants' counterclaim is a red herring and furnishes no basis whatsoever much less good cause for continuing the Summary Judgment hearing.

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

- 2 -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

As to Liu's argument concerning certain privileged documents, as is evident on the Summary Judgment Motion's face, there is no outstanding discovery whatsoever that could even conceivably be relevant to the clear reasons set forth in that Motion as to why judgment should be granted as a matter of law.  In particular, controlling California state and federal law bar Liu—Defendants' former in-house counsel—from pursuing a claim for wrongful termination where, as here, prosecution of that claim necessitates the disclosure of Defendants' privileged information.  *See, e.g., General Dynamics, Corp. v. Super. Ct.*, 7 Cal. 4th 1164, 1190 (1994).  As manifest by the claims in Liu's complaint as well as his pilfering of Defendants' privileged and confidential documents and information and subsequent use of same not only to draft his complaint but also to prosecute it, it is undisputed that Liu's wrongful termination claim necessitates such an impermissible disclosure.  Liu's very assertion in his Application that, in order to answer the Summary Judgment Motion, he must first receive such privileged information only further proves the point that this claim must be dismissed.  The law thus mandates judgment on this claim as a matter of law.

Further, the Summary Judgment Motion's defenses to Liu's breach of contract claim relate solely to Liu's failures to:  (1) advise Defendants in writing to seek and obtain independent counsel in connection with Liu's negotiation of a business deal with his own client; (2) inform Defendants of the actual and reasonably foreseeable adverse consequences and material risks of that deal; (3) disclose to Defendants that he was negotiating the deal on his own behalf and for his own benefit and that he was not advising Defendants or otherwise providing them with the same legal advice he would have provided had Defendants been negotiating with a third party; (4) disclose in writing to Defendants his conflict of interest and obtain written consent to same; and (5) negotiate terms that were entirely fair and reasonable to his clients, *i.e.*, Defendants.  Under these undisputed facts, controlling California state and federal law holds that Liu's contract is voidable and cannot be legally enforced against

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

Defendants, thus mandating judgment against Liu on his breach of contract claim. *See, e.g.*, Cal. R. Prof. C. 3-300, 3-310, 4-200; N.Y. R. Prof. C. 1.5, 1.7, 1.8.

What's more, contrary to the Application's assertion, Judge Rosenbluth has not issued a ruling regarding any such privileged documents relating to the employment agreement.  In fact, and as Liu well knows, Judge Rosenbluth stayed any order on privilege at all to allow the parties to stipulate to limit the pleadings, after which she would revisit the privilege issues, including to limit the scope of any waiver as appropriate under the limited pleadings.  The parties then stipulated to so limit the pleadings, and Judge Rosenbluth has set a hearing for April 29, 2021 to consider whether and how to limit any waiver.

Regardless, even assuming, *arguendo*, that Defendants had consulted with a lawyer in negotiating Liu's employment agreement, such evidence—if it even existed—would still be irrelevant to the Summary Judgment motion because, as a matter of law, it would not obviate the Liu's undisputed violations of the relevant rules of professional conduct as a matter of law and would thus be entirely immaterial to, and irrelevant to, Defendants' Summary Judgment Motion.  *See BGJ Assocs. v. Wilson*, 113 Cal. App. 4th 1217, 1226–27 (2003) (expressly rejecting argument that independent counsel's advice relieved attorney of consequences of failure to make mandatory disclosures and obtain written consent); *Odish v. Cognitive Code Corp.*, No. CV 12-9069 FMO (JCGx), 2015 WL 11347592, at *7-*8 (C.D. Cal. May 27, 2015) (failure to provide necessary disclosures or obtain waivers sufficient by itself to render contract voidable as a matter of law); *Gurvey v. Legend Films, Inc.*, No. 3:09-cv-00942 AJB (BGS), 2012 WL 4061773, at *11 (S.D. Cal. Sep. 14, 2012) (same; applying both California and New York rules); *Held & Hines LLP v. Hussain*, No. 16-cv-5273 (JSR)(SN) 2018 WL 4233809, at *4 (S.D.N.Y. July 31, 2018) (claim that client consulted independent counsel does not abate the attorney's "obligation to advise [the client] *in writing* that [it] should consider seeking independent legal advice before signing the agreement.") (emphasis in original).

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA  92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

As a result, regarding both the wrongful termination and breach of contract claim at issue in the Summary Judgment Motion, there is simply no relevant outstanding discovery. *See discussion, infra,* at Section III.B.

**Third**, even if there were some relevant outstanding discovery—and there clearly is not—there can be no prejudice to Liu in denying the Application, whereas granting it will prejudice Defendants and needlessly waste the parties' and the Court's time and resources. As explained above, Defendants properly met and conferred on their Summary Judgment Motion and then filed it as late as possible in accordance with the Court's scheduling order and motion calendar (the only alternative would have been to file it and have a hearing literally the day before trial). As such, Liu cannot complain that it was filed too early. Nor can Liu complain that the issues raised in the Summary Judgment Motion are being addressed in summary judgment rather than a pleading challenge. Defendants actually attempted to raise those very same issues on a motion for judgment on the pleadings, but Liu refused to allow Defendants to file such a motion while his motion to dismiss was pending. Of course, Liu's contention that these issues could have been determined on a motion for judgment on the pleadings just further proves the point in fact that there is no, and could be no, outstanding relevant discovery.

The further point remains that, if the Application is granted, the Summary Judgment Motion will not be heard until after the start of trial, which will improperly strip Defendants of their rights under the law, including but not limited to their rights to preserve their attorney-client privilege and confidentiality under *General Dynamics*, which expressly mandates that the Court first hear Defendants' Motion for Summary Judgment on Liu's improperly filed wrongful termination claim. The Court should not, and cannot, condone Liu's blatant attempt to strip Defendants of those rights under the guise of needing the very documents he is prohibited from receiving or using to draft, much less prosecute, his claim, and he certainly should

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

not be permitted to do it on *ex parte* notice where there is no emergency, only his own transparent and improper gamesmanship. *See discussion, infra,* at Section III.C.

At bottom, and as is evident from each of the foregoing reasons, the Application is factually and legally baseless, and it represents a sanctionable and repeated misuse of the *ex parte* process by Liu, all of which Defendants' counsel fully explained in two emails yesterday evening. The Application therefore should be denied, and the Court should award Defendants its costs and fees in opposing it.

## II.   BACKGROUND

### A.   The Parties

Liu was a New York attorney and partner at Mayer Brown LLP ("**Mayer**") in or around October 2017. (Dkt. 95 [Second Amended Counterclaim] at ¶ 1.) FF was and is an electric car company headquartered in Los Angeles. (*Id.* at ¶¶ 13, 17.) Smart King is FF's indirect parent company. (*Id.* at ¶ 40.)

### B.   The Employment Agreement and Liu's Ethical Violations

While at Mayer, FF retained Liu as its attorney, which attorney-client relationship was memorialized in an engagement agreement dated October 20, 2017 that was signed by Liu on Mayer's behalf. (*Id.* at ¶ 2.) Despite Liu representing FF in various legal matters, on or about January 25, 2018, Liu solicited from and obtained an employment agreement with FF and Smart King (the "**Employment Agreement**"), and a related Directors Compensation Agreement from a principal of FF and Smart King. (*Id.* at ¶ 4.) In so doing, Liu violated his ethical duties to his client by failing to: (i) advise his client in writing to obtain independent counsel; (ii) inform his client of all existing and potential conflicts; and (iii) obtain informed, written consent as to such conflicts. He also negotiated unfair, unreasonable and unconscionable terms, including grossly excessive fees in the form of $8 million cash plus 2% ownership of the company (which would currently be valued at about $80 million), both of which were guaranteed even if Liu was immediately terminated and even if a court expressly found that Liu had breached his fiduciary duties. (*Id.* at ¶¶

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    76-91.)

2          **C.** **Liu's Complaint and Defendants' Summary Judgment Motion**

3          FF terminated Liu's employment in February 2019 after having paid him more

4    than $1.8 million in compensation.  (Dkt. 1 [Compl.] at ¶ 86.)

5          *First*, in his complaint, Liu seeks to enforce the Employment Agreement over

6    Defendants' objection and receive some eight-figures in further alleged cash

7    compensation as well as stock options allegedly owed to him.  (*Id*. at ¶¶ 109-116.)

8    Defendants' moved for Summary Judgment on Liu's breach of the Employment

9    Agreement claim because it is rescindable and voidable due to Liu's undisputed

10   failures (i) advise his client in writing to obtain independent counsel; (ii) inform his

11   client of all existing and potential conflicts; and (iii) obtain informed, written consent

12   as to such conflicts.  (Dkt. 131-1 [Summary Judgment Mot.] at pp. 11-19; citing, *inter*

13   *alia*, Cal. R. Prof. C. 3-300, 3-310, 4-200; N.Y. R. Prof. C. 1.5, 1.7, 1.8.)

14         Moreover, as explained in the Summary Judgment Motion, and again

15   yesterday in two emails to Liu's counsel, even assuming, *arguendo*, that Defendants

16   had consulted with a lawyer in negotiating Liu's Employment Agreement, such

17   evidence—if it even existed—would nevertheless be irrelevant to the Summary

18   Judgment motion because, as a matter of law, it would not obviate Liu's undisputed

19   violations of the relevant rules of professional conduct as a matter of law and would

20   thus be entirely immaterial to, and irrelevant to, Defendants' Summary Judgment

21   Motion.  (Dkt. 131-1 [Summary Judgment Mot.] at p. 18; citing, *inter alia*, *BGJ*

22   *Assocs.*, 113 Cal. App. 4th at 1226–27 (expressly rejecting the argument that

23   independent counsel's advice relieved attorney of consequences of failure to make

24   mandatory disclosures and obtain written consent); *Odish*, 2015 WL 11347592, at

25   *7-*8 (failure to provide necessary disclosures or obtain waivers sufficient by itself

26   to render contract voidable as a matter of law); *Gurvey*, 2012 WL 4061773, at*11

27   (same; applying both California and New York rules); *Held & Hines*, 2018 WL

28   4233809, at *4 (claim that client consulted independent counsel does not abate the

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

attorney's "obligation to advise [the client] *in writing* that [it] should consider seeking independent legal advice before signing the agreement") (emphasis in original).

Liu has not disputed, and in fact cannot dispute, these binding legal authorities repeatedly cited to his counsel.  Thus, as a matter of undisputed law, there is no, and can be no, outstanding discovery relevant to, much less material to, the legal defenses at issue in the Summary Judgment Motion.

***Second***, Liu's complaint further asserts that FF wrongfully terminated his employment in retaliation for Liu reporting "compliance issues and violations of law" supposedly occurring at the Company.  (Dkt. 1 [Compl.] at ¶¶ 131-35.)  Liu's own complaint, and his and his counsel's admitted conduct in this lawsuit, however, make clear and confirm that Liu must—and already has repeatedly attempted to— improperly use Defendants' privileged information to allege and prosecute his wrongful termination claim.  Liu's claim is expressly predicated on his purported reporting of "compliance issues and violations of law" to FF management in his capacity as FF's Global General Counsel, thereby placing those privileged communications (as well as FF's other privileged information concerning those alleged "issues" and "violations") at the heart of the Complaint's retaliatory discharge claim.  (*Id*. at ¶ 5 (alleging Liu was "stripped of his authority and then terminated" because he "proactively took steps to ensure Faraday's compliance with applicable law, including by seeking [internal] investigations"); ¶ 63 (admitting Liu had responsibility for "overseeing a wide range of sensitive regulatory and compliance matters" as in-house counsel); ¶ 69 (alleging Liu "repeatedly advised" FF to cease "illegal, discriminatory" behavior and "worked with and directed Faraday's legal department" in that regard); ¶ 71 (alleging Liu directed the FF "legal department" to "investigate complaints"); ¶ 75 (alleging Liu "actively instructed the legal department to issue memoranda and other communications" regarding FF's legal compliance); ¶ 83 (quoting Liu's letter to management accusing FF of

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

retaliating against him for "directly express[ing] [his] views . . . on how to best comply with laws"); ¶¶ 132-133 (alleging Liu was terminated in retaliation for reporting "serious compliance issues and violations of law").)

Additionally, in recently producing 62 of Defendants' privileged attorney-client documents totaling 308 pages that he illicitly pilfered from the Company, Liu revealed—for the very first time—that he and his counsel have wrongfully possessed and used Defendants' privileged written materials since the inception of this lawsuit (the "**Illicit Privileged Materials**").  (Decl. of Kevin A. Crisp ("Crisp Decl.") at ¶ 10.)  The Illicit Privileged Materials retained and possessed by Liu and his counsel include:

- Drafts of company policies prepared by FF's *other* in-house legal counsel, and *not* by Liu himself;

- A document disclosing FF's legal strategy *vis-à-vis* its sales model;

- Drafts of Board of Director meeting minutes prepared by counsel and disclosing privileged information presented to FF's Board;

- Legal memoranda prepared by FF's in-house counsel for review and consideration by FF's senior executives;

- Email communications with FF's outside legal counsel regarding FF's Series

- A financing transaction, and FF's related legal dispute and litigation, with Evergrande;

- Text message and email correspondence between Liu, FF employees, and outside counsel regarding requests for, and the provision of legal advice regarding, corporate governance issues;

- Emails between FF's employees, in-house counsel, and outside counsel regarding labor and employment issues involving the WARN Act, alleged sexual harassment complaints, furloughs, and investigations;

- Email correspondence and draft documents exchanged with outside counsel relating to FF's Employee Stock Option Plan;

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- Emails reflecting FF seeking legal advice from in-house regarding the recording of company meetings;

- Email chains containing legal advice from outside counsel concerning banking laws;

- An email from an FF employee seeking legal advice regarding how to respond to meeting comments;

- An email summarizing work performed by FF's in-house legal department; and

- A presentation to FF's management regarding the company's key legal strategies and the status of various legal matters.

(*Id.*) Unsurprisingly, the above-listed Illicit Privileged Materials exclusively relate to Liu's wrongful termination claim, insofar as they supposedly evidence the purported "compliance issues and violations of law" that Liu allegedly reported to FF management prior to his termination. (Compl. ¶ 132.) Further, and consistent with the gravamen of Liu's wrongful termination claim, Liu and his counsel have admittedly and improperly used Defendants' privileged information to prosecute Liu's Complaint, manifest from the following facts:

- During the April 13, 2021 deposition of FF employee Qing Ye, Liu's counsel attempted to introduce and question the witness with the Illicit Privileged Materials—namely, a privileged communication between FF and its legal counsel containing legal advice regarding corporate governance, relevant only to Liu's wrongful termination claim;

- In response to his attempted introduction of Illicit Privileged Materials, Defendants' attorney admonished Liu's counsel that such unauthorized possession and use of Defendants' privileged materials not only violates the attorney-client privilege, but also subjects Liu's counsel to disqualification under governing California law;

- The next day, during the April 14, 2021 deposition of FF employee Chaoying Deng, Liu's counsel once again attempted to question the witness with Illicit Privileged Materials—namely, a privileged communication between FF and its outside legal counsel concerning FF's financial position; and

- In response to FF's attorney's objection and demand that all Illicit Privileged Materials be immediately returned and/or destroyed, Liu's attorney not only unequivocally admitted, but also expressly reconfirmed, Liu's intention to continue to use FF's privileged information "in support of" the Complaint' "claim for retaliation."

(Crisp Decl. at ¶ 11.)

Defendants moved for summary judgment on Liu's improperly-filed wrongful termination claim because California state and federal court law clearly forbid this type of generic wrongful termination claim by Defendants' former in-house counsel and preclude Liu from establishing the claim via Defendants' privileged and confidential information.  *See, e.g., General Dynamics*, 7 Cal. 4th at 1191 (a claim for wrongful termination by in-house counsel based on "disagreements over policy" are "not actionable," and in-house counsel "bears the burden of establishing" a discharge in violation of an "ethical norm" benefiting "the public at large," not just the attorney and client); *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256-57 (1994) (affirming summary judgment against plaintiff alleging wrongful discharge where the plaintiff (i) alleged he was terminated due to "his complaints and expressed opposition" to the employer's violation of "internal policies [and] the provisions of its agreements with others[,]" and (ii) asserted only "vague charge[s] of 'Alcohol, Tobacco and Firearms laws' violations [] unaccompanied by citations to specific statutory or constitutional provisions."); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 669-71 (1988) ("there is no substantial public policy prohibiting an employer from discharging an employee" for internally reporting "information relevant to his employer's interest"); *Jacobson v. Carlton Hair*, No. CV 09-09377 MMM (FMOx),

- 11 -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

2011 WL 13112239, at *29 (C.D. Cal. Jan. 31, 2011) (granting summary judgment against plaintiff alleging wrongful discharge in violation of public policy where he failed to identify "the specific statute(s) or constitutional provision(s) on which he base[d] his" discharge claim).

Indeed, this black letter law extends to, and mandates dismissal, when the disclosure of privileged information is—as Liu has repeatedly admitted, including in the Application here—necessary to defend against an attorney's claim. *See, e.g., Solin v. O'Melveny & Myers LLP*, 89 Cal. App. 4th 451, 454, 457, 466-67 (2001) (recognizing "there can be no balancing of the attorney client privilege against the right to prosecute a lawsuit to redress a legal wrong," and affirming dismissal of case under *General Dynamics* where the action was "incapable of complete resolution without breaching the attorney-client privilege" because the defendant "could not effectively defend the action without disclosing" privileged information); *Olivo v. City of Vernon*, No. B213984, 2010 WL 2958398, at *9, *15 (Cal. App. July 29, 2010) (the "principle" that "an attorney plaintiff may not prosecute a lawsuit if in doing so client confidences would be disclosed" has been "explicitly extended" to "the defense of [] a lawsuit[,]" so that dismissal is required if an employer "would be required to rely on [privileged information] in mounting its defense.").

As with Liu's ethical violations, Liu has not disputed, and in truth cannot dispute, these binding legal authorities repeatedly cited to his counsel. As such, there is no outstanding discovery for Liu to obtain related to the Summary Judgment Motion. Quite the contrary, the very point of these authorities is that the Court must dismiss Liu's wrongful termination without him getting any such discovery.

### D.   Procedural History

Nearly a month-and-a-half ago, on March 15, 2021, Defendants sent correspondence to Liu's counsel seeking to institute the Local Rule 7-3 meet-and-confer process in connection with Defendants' contemplated Motion for Judgment on the Pleadings ("MJOP"). (Crisp Decl. at ¶ 2.) As set forth in that correspondence,

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

among other things, Liu's claims for breach of the Employment Agreement and wrongful termination were legally specious in light of, among other things, Liu's violations of the governing Rules of Professional Conduct, and his deficiently pleaded, unsupportable claims. Specifically, as established in that letter:

- Liu's Breach of Contract claim fails because Liu failed to allege compliance with New York Rules of Professional Conduct 1.7, 1.7, and 1.8, as well as with California Rules of Professional Conduct 3-310, 3-300, and 4-200, and therefore failed to plead the existence of a legally enforceable contract between Liu, FF, and Smart King under governing law; and

- Liu's wrongful termination in violation of public policy claim fails because: (i) he failed to allege any statutory or constitutional provision giving rise to a fundamental public policy; (ii) he failed to allege the facts required for an in-house attorney to assert a wrongful termination claim required by *General Dynamics Corporation v. Superior Court*, 7 Cal. 4th 1164, 1189-90 (1994); and (iii) he cannot maintain this claim without violating his ethical obligations to FF. In fact, "the in-house counsel who publicly exposes the client's secrets will usually find no sanctuary in the courts[,]" and where, as here, "the elements of a wrongful discharge in violation of fundamental public policy claim cannot, for reasons peculiar to the particular case, be fully established without breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege." *Id*. at 1190.[1]

(Crisp Decl. ¶ 2.)

In his response, Liu did not address any of the foregoing points, but rather

---

[1] Although *General Dynamics* makes clear that a challenge based on its grounds is "rarely, if ever" appropriate at the pleading stage—thus necessitating an improperly sued defendant to assert affirmative defenses relating to the legitimacy of the plaintiff's termination, and to conduct discovery to determine whether the claim can be established via non-privileged information—Defendants nevertheless sought to challenge this claim on pleading grounds in order to bring the matter to closure.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

stated that, "a motion under Rule 12(c) may filed only '[a]fter the pleadings are closed.'"  Fed. R. Civ. P. 12(c).  Because Rule 7(a) of the Federal Rules of Civil Procedure designates a counterclaim as a pleading, the Ninth Circuit holds that, for the purposes of Rule 12(c), the pleadings are closed only when the counterclaim too is closed.  *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)."  (Crisp Decl. at ¶ 3.)  Liu thereafter proceeded to claim that, "in the event that Plaintiff moves to dismiss some or all of Defendants' new-fangled counterclaims, the pleadings will be closed only after the Court resolves that motion, subject to Plaintiff's having filed his reply brief."  (*Id.*)

Put simply, once Liu realized that his meritless claims would be challenged, he decided to keep the pleadings open with a motion to dismiss in order to prevent the Court from the voiding his ill-gotten Employment Agreement on Defendants' MJOP as required under governing law.  Thus, on April 5, 2021, Liu filed his currently pending Motion to Dismiss.  (Dkt. 108 [Mot. to Dismiss].)  Notably, however, and by definition, Liu's Motion to Dismiss *Defendants' counterclaims* has nothing to do with Defendants' Summary Judgment Motion on *Liu's claims* which raises the very same legal defenses set out in Defendants' meet and confer letter regarding MJOP, but that Defendants were forced to file on summary judgment because Liu would not agree to allow the filing of an MJOP.  (Crisp Decl. at ¶ 4.)

To that end, Defendants sent Liu a further meet and confer correspondence setting forth those same grounds for, and stating their intention to file, the Summary Judgment Motion nearly a month ago on March 31, 2021.  (*Id.* at ¶ 5.)  On April 9, 2021, the parties met and conferred telephonically, yet Liu's counsel never once raised any issue regarding the Summary Judgment's timing during that meet and confer.  (*Id.* at ¶ 6.)  Nor did Liu raise any such issue at all until yesterday, when for the very first time, Liu's counsel suddenly and without any warning demanded that Defendants agree to continue the Summary Judgment Motion to some indeterminate date, the earliest of which would actually require this Court to hear the motion on the

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

day before the first day of trial in this matter, if even by then.  (*Id.*)  When Defendants refused, at 5:26 p.m. PT last night, Liu emailed Defendants to give *ex parte* notice of the Application.  (*Id.*)

Defendants' counsel responded immediately that they were disappointed that, for the fourth time in just the past month, Liu had given *ex parte* notice late in the day on an issue for which there simply is no emergency, at least none that is not of Liu's own making.[2]  (*Id.*)  Further, Defendants' counsel noted they will oppose on the grounds detailed above as well as the grounds that there is no emergency, and that they will also ask the court to enter sanctions for Liu's  repeated violations of the *ex parte* rules.  (*Id.*)  Defendants' counsel also asked when they could expect to receive Liu's *ex parte* papers.  Liu then waited over five hours—until after 11:00 p.m. PT last night—to even reply, and even then, Liu failed to respond to any of Defendants' points, and merely stated that they would file their papers before midnight.  (*Id.*)

Contrary to the Application's assertion, Judge Rosenbluth has ***not*** issued a ruling regarding any such privileged documents relating to the employment agreement.  (*Id.* at ¶ 7, Exs. 4-5.)  In fact, and as Liu well knows but attempts to bury in a footnote in the Application, Judge Rosenbluth stayed any order on privilege at all to allow the parties to stipulate to limiting the pleadings, after which she would revisit the privilege issues, including to limit the scope of any waiver as appropriate under the limited pleadings. (*Id.*, Ex. 4.)  The parties then stipulated to so limit the pleadings, and Judge Rosenbluth has set a hearing for April 29, 2021 to consider whether and how to limit any waiver.  (*Id.* at ¶ 8.)

---

[2] Indeed, independent of the fact that there is no evidence that could contradict Liu's ethical failings in connection with his breach of contract claim, Liu has indisputably known ***for five and a half weeks*** about the *General Dynamics* and privilege issues yet chose to do nothing about it until last week when it sought a waiver determination from Magistrate Judge Rosenbluth.

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

- 15 -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

1    Finally, and notably, Liu has repeatedly violated the Court's local rules by

2    failing to timely meet and confer under Local Rule 7-3 on three separate occasions

3    and by, as noted above, giving *ex parte* notice late in the day for the fourth time in

4    the just the past month regarding matters where there is no emergency.  (*Id.* at ¶ 9.)

5    In addition, on April 15, 2021, Judge Rosenbluth sanctioned Liu for his discovery

6    misconduct, including his improper refusals to produce documents.  (*Id.*)

7    **III.  ARGUMENT**

8       **A.    The Court should deny the Application as there is no exigency**

9    *Ex parte* relief is expressly reserved for emergency circumstances

10   necessitating extraordinary relief, as confirmed by this Court's New Case Order, and

11   by governing Central District Court law.  *See* Dkt. No. 55 ("This Court only allows

12   ex parte applications when extraordinary relief is necessary."); *In Re: Intermagnetics*

13   *Am., Inc.*, 101 Bankr. 191, 193 (C.D. Cal. 1989) ("Ex parte applications are not

14   intended to save the day for parties who have failed to present requests when they

15   should have, and should not be used as a way to 'cut in line' ahead of those litigants

16   awaiting determination of their properly noticed and timely filed motions.").  Indeed,

17   "[l]awyers must understand that filing an ex parte motion" is "the equivalent of

18   standing in a crowded theater and shouting, 'Fire!'  There had better be a

19   fire." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal.

20   1995).   But there is no emergency here, and this fact, by itself, requires the

21   Application's denial.

22   Liu ***waited nearly a full month*** before suddenly and without any warning

23   seeking the Court's intervention here, and the only explanation for that delay is that

24   he is seeking to prejudice Defendants in light of the many other pre-trial matters to

25   which they are attending.  Even then, as explained below, he missed the mark,

26   because there is no need whatsoever for the relief he seeks.  Instead, he arbitrarily

27   demanded that the Court intervene on an *ex parte* basis now without any explanation

28   as to why he could not have raised his purported issues earlier or as to why

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Defendants and the Court must be forced, for the fourth time now, to answer his demands in less than 24 hours.  Equally pernicious, Liu clearly waited until he had prepared his papers before even telling Defendants yesterday evening—for the very first time—that he was even contemplating seeking such relief, must less that he was moving within hours on an *ex parte* basis.  Then he ignored Defendants for another five hours, and even then, he never answered the clear reasons why such relief is unwarranted, instead he simply filed his *ex parte* motion just before midnight.  *See facts and authorities discussed, supra,* at Section II.D.

This is the precise situation contemplated by *In re: Intermagnetics Am., Inc.* in which *ex parte* relief must not only be denied, but sanctions should be imposed.  *Id.* ("*Ex parte* applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to 'cut in line' ahead of those litigants awaiting determination of their properly noticed and timely filed motions.")  Defendants' counsel do not request sanctions lightly, but Liu's serial abuse of the *ex parte* process simply must stop.

**B.**   **No extraordinary relief is required because the Motion to Dismiss is irrelevant, and there is no material outstanding discovery.**

No extraordinary relief is needed, much less warranted, and there is no good cause for the requested extension.  In once again attempting to manufacture an emergency where none exists, Liu complains that, absent an extension:  (1) the Court might hear his pending motion to dismiss Defendants' counterclaims on May 3, 2021, the same date his opposition to the Summary Judgment is due under the Court's standard notice procedures; and (2) he purportedly needs some privileged documents to respond to the Summary Judgment Motion that the law bars him from receiving in the first instance.  Neither assertion is supported by the facts or law much less supports *ex parte* extraordinary relief.

***First***, Liu's pending motion to dismiss is, by definition, irrelevant to the Summary Judgment Motion.  Tellingly, nowhere does the Application explain how

a motion to dismiss Defendants' counterclaims could possibly moot Summary Judgment on Liu's claims, nor could it have, as they are wholly separate claims, and as a matter of procedure, they concern distinct judicial standards.  At any rate, to the extent they concern similar issues of law, so there is no risk of inconsistent orders as this Court will decide both motions, and if anything, any overlapping legal issues should serve to ease Liu's drafting of his opposition.  In short, the pending motion to dismiss Defendants' counterclaim provides no basis at all, much less good cause, for continuing Summary Judgment.

*Second*, as is plain by the Summary Judgment Motion itself, there is no—and can be no—outstanding discovery that could possibly be relevant to the Motion. Specifically, the law bars Liu, as Defendants' former counsel, from pursuing a claim for wrongful termination where, as here, prosecution of that claim necessitates the disclosure of Defendants' privileged information.  *See, e.g., General Dynamics*, 7 Cal. 4th at 1190.   And it is undisputed that Liu's wrongful termination claim necessitates such an impermissible disclosure.  Indeed, the Application itself and the relief it seeks—a continuation of Summary Judgment so that he may obtain The Illicit Privileged Materials—only further proves the point that this claim must be dismissed. The law thus mandates judgment on this claim as a matter of law, and the purportedly outstanding discovery that Liu contends he must first receive is actually prohibited as a matter of law.

Moreover, the defenses to Liu's breach of contract claim at issue in the Summary Judgment relate solely to his failures to:  (1) advise Defendants in writing to seek and obtain independent counsel in connection with Liu's negotiation of a business deal with his own client; (2) inform Defendants of the actual and reasonably foreseeable adverse consequences and material risks of that deal; (3) disclose to Defendants that he was negotiation the deal on his own behalf and for his own benefit and that he was not advising Defendants or otherwise providing them with the same legal advice he would have provided had Defendants been negotiating with a third

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 18 -

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

party; (4) disclose in writing to Defendants his conflict of interest and obtain written consent to same; and (5) negotiate terms that were entirely fair and reasonable to his clients, Defendants.  Under these undisputed facts Liu's Employment Agreement is voidable and cannot be legally enforced against Defendants as a matter of law.  Liu has not produced any evidence to support his compliance with any of these bright-line obligations, nor do Defendants have any documents that establish Liu's compliance any of the foregoing.  Put simply, discovery is simply not an issue here.

Even more, and contrary to the Application's assertion, Judge Rosenbluth has not issued a ruling regarding any such privileged documents relating to the employment agreement.  Rather, Judge Rosenbluth stayed any order on privilege at all to allow the parties to stipulate to limit the pleadings, after which she would revisit the privilege issues, including to limit the scope of any waiver as appropriate under the limited pleadings.  The parties have in fact so stipulated to so limit the pleadings, and Judge Rosenbluth has set a hearing for April 29, 2021 to consider whether and how to limit any waiver in accordance with that stipulation.

Consequently, regarding both the wrongful termination and breach of contract claims at issue in the Summary Judgment Motion, there is no relevant outstanding discovery, and there is therefore no good cause for continuing Summary Judgment. *See facts and authorities discussed, supra,* at Section II.C.

## C. <u>The Application will Prejudice Defendants, but its denial would not prejudice Liu in any way</u>

Even if there were some good cause—and there clearly is not—there can be no prejudice to Liu in denying the Application, but granting it will not only prejudice Defendants.  Defendants met and conferred on their Summary Judgment Motion nearly a month ago and then literally filed it as late as possible in accordance with the Court's scheduling order and motion calendar.  As such, Liu's complaint that it was filed too early in the litigation fall utterly flat.

Nor can Liu complain that the issues raised in the Summary Judgment Motion

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

are being addressed on summary judgment rather than a motion for judgment on the pleadings because, as explained above, Defendants actually tried to raise those very same issues on a motion for judgment on the pleadings to seek an earlier determination, but Liu refused to allow Defendants to file such a motion while his irrelevant motion to dismiss was pending.

Most importantly, though, if the Application is granted, the Summary Judgment Motion will not be heard until the day before the start of trial, which will improperly strip Defendants of their rights under the law, including but not limited to their rights to preserve their attorney-client privilege and confidentiality under General Dynamics, which expressly mandates that the Court first hear Defendants' Motion for Summary Judgment on Liu's improperly filed wrongful termination claim. The Court must therefore deny the Application. *See facts and authorities discussed, supra,* at Section II.D.

## IV.    **CONCLUSION**

Liu presents yet another paradigm case for when to deny *ex parte* relief. There is no emergency, no extraordinary relief is required much less warranted, and the Application's granting will prejudice Defendants while Liu faces no prejudice at all from the its denial. The facts and law therefore mandate the Application's denial, and Defendants respectfully request that the Court further award its reasonable costs and fees in opposing the meritless Application, especially in light of Liu's serial abuses of the *ex parte* process.

Dated:  April 28, 2021

Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP

By:  /s/ Kevin A. Crisp

Kevin A. Crisp
Attorneys for Defendant
SMART KING LTD. and Defendant and Counterclaimant
FARADAY&FUTURE INC.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION