# EXHIBIT 1

**Crisp, Kevin**

| | |
|---|---|
| **From:** | Jake Nachmani <jnachmani@seidenlawgroup.com> |
| **Sent:** | Tuesday, April 27, 2021 11:07 PM |
| **To:** | Crisp, Kevin; Amiad Kushner; Michael Stolper; Andrew Sklar; Kevin Hughes; Claudia Varner; Nathaniel Francis |
| **Cc:** | Goldman, Jeffrey M.; Grochow, Lauren; Ladner, Matthew; George, Paul B.; Kessel, Alan J. |
| **Subject:** | RE: Summary Judgment Motion |

**EXTERNAL SENDER**

Kevin,

We respectfully disagree with every statement you make you in your below email.  You will receive our ex parte papers before midnight, April 27, 2021 (PST).  In other words, imminently.

Regards,

-Jake


Jake Nachmani, Esq.
Counsel
Seiden Law Group LLP
322 Eighth Avenue, Suite 1704
New York, NY 10001
Office: (646) 766-1723
Mobile: (323) 810-0044
www.seidenlawgroup.com



CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容

---

**From:** Crisp, Kevin <Kevin.Crisp@Troutman.com>
**Sent:** Tuesday, April 27, 2021 8:37 PM
**To:** Jake Nachmani <jnachmani@seidenlawgroup.com>; Amiad Kushner <akushner@seidenlawgroup.com>; Michael Stolper <mstolper@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>; Claudia Varner <cvarner@seidenlawgroup.com>; Nathaniel Francis <nfrancis@seidenlawgroup.com>
**Cc:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>;

Exhibit 1, Page 7

Ladner, Matthew <Matthew.Ladner@Troutman.com>; George, Paul B. <GeorgeP@LanePowell.com>; Kessel, Alan J. <Alan.Kessel@Troutman.com>
**Subject:** RE: Summary Judgment Motion

Jake,

We are extremely disappointed that, for the ***fourth time in just the past month***, you have given *ex parte* notice late in the day on an issue for which there simply is no emergency, at least none that is not of your own making. We will oppose on the grounds detailed below as well as the grounds that there is no emergency. We will also ask the court to enter sanctions for your repeated violations of the *ex parte* rules. Your serial abuse of those rules must be stopped.

Please advise as to when we can expect to receive your *ex parte* papers.

Regards,

Kevin

**From:** Jake Nachmani <jnachmani@seidenlawgroup.com>
**Sent:** Tuesday, April 27, 2021 5:26 PM
**To:** Crisp, Kevin <Kevin.Crisp@Troutman.com>; Amiad Kushner <akushner@seidenlawgroup.com>; Michael Stolper <mstolper@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>; Claudia Varner <cvarner@seidenlawgroup.com>; Nathaniel Francis <nfrancis@seidenlawgroup.com>
**Cc:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>; Ladner, Matthew <Matthew.Ladner@Troutman.com>; George, Paul B. <GeorgeP@LanePowell.com>; Kessel, Alan J. <Alan.Kessel@Troutman.com>
**Subject:** RE: Summary Judgment Motion

**EXTERNAL SENDER**

Counsel,

In light of your refusing to enter into a stipulation with us concerning an extension of time for Plaintiff to respond to Defendants' motion for summary judgment (ECF 131), we write to provide you with notice pursuant to Local Rule 7-19 that Plaintiff intends to file an ex parte application seeking an extension of time to respond.  The grounds for this ex parte application will be those set forth in our below email from earlier today.

Will you object to this ex parte application?

If you do, pursuant to Local Rule 7-19, you have until 3PM the following  business day to file your opposition.

Regards,

-Jake

**From:** Crisp, Kevin <Kevin.Crisp@Troutman.com>
**Sent:** Tuesday, April 27, 2021 7:43 PM
**To:** Amiad Kushner <akushner@seidenlawgroup.com>; Michael Stolper <mstolper@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>; Claudia Varner <cvarner@seidenlawgroup.com>; Nathaniel Francis <nfrancis@seidenlawgroup.com>; Jake Nachmani

Exhibit 1, Page 8

<[jnachmani@seidenlawgroup.com](mailto:jnachmani@seidenlawgroup.com)>
**Cc:** Goldman, Jeffrey M. <[Jeffrey.Goldman@Troutman.com](mailto:Jeffrey.Goldman@Troutman.com)>; Grochow, Lauren <[Lauren.Grochow@Troutman.com](mailto:Lauren.Grochow@Troutman.com)>;
Ladner, Matthew <[Matthew.Ladner@Troutman.com](mailto:Matthew.Ladner@Troutman.com)>; George, Paul B. <[GeorgeP@LanePowell.com](mailto:GeorgeP@LanePowell.com)>; Kessel, Alan J.
<[Alan.Kessel@Troutman.com](mailto:Alan.Kessel@Troutman.com)>
**Subject:** RE: Summary Judgment Motion

Hi Amiad,

We cannot stipulate as you request for several reasons.

**First**, Plaintiff's May 3, 2021 opposition deadline is set by Local Rule 7-9, and that deadline cannot be altered absent a court order.  C. D. Cal. L.R. 6-1, 7-1.

**Second**, the deadline cannot be delayed given that, as things currently stand, it is already set based on the May 24, 2021 hearing date, which because the court is dark on May 31, 2021, is the court's last available hearing date before trial, and therefore cannot be continued. Worse, your demand that the opposition be due no earlier than May 13, 2021 would require setting hearing on summary judgment, at the earliest, on June 8 ,2021, which is the first day of trial. This is obviously unworkable and would transform summary judgment into a large waste of the parties' and the court's time and resources, and—as explained below—would do so for no good reason.

**Third**, there is no good cause to alter the currently mandated schedule. The pending motion to dismiss is irrelevant to the summary judgment. Indeed, while your email vaguely references the motion to dismiss, nowhere does it explain why that is relevant to the summary judgment. Nor are we aware of any such reason, especially given they address wholly separate claims—specifically, your motion to dismiss concerns Defendants' counterclaims while the summary judgment concerns Plaintiff's claims. Regardless, they are both pending before the same judge, so there is be nor risk of inconsistent orders. To the extent they concern similar legal issues, if anything, that should only serve to make drafting your opposition that much easier.

Your vague demand that document production and depositions be completed similarly holds no weight. That's because, as is evident on the summary judgment motion's face, there is no outstanding discovery whatsoever that could even conceivably be relevant to the clear reasons set forth in the motion as to why judgment should be granted as a matter of law.

In particular, controlling California state and federal law bar Plaintiff—Defendants' former in-house counsel—from pursuing a claim for wrongful termination where, as here, prosecution of that cause of action necessitates the disclosure of Defendants' privileged information.  *See, e.g., General Dynamics, Corp. v. Super. Ct.*, 7 Cal. 4th 1164, 1190 (1994). As manifest by the claims in Plaintiffs' complaint as well as his pilfering of Defendants' privileged and confidential documents and information and subsequent use of same not only to draft that complaint but also to prosecute it, it is undisputed that Plaintiff's wrongful termination claim necessitates such an impermissible disclosure. In fact, the assertion in  your email below that, in order to answer the summary judgment motion, you must first receive such privileged information only further proves the point. The law thus mandates the claim's dismissal.

Further, the motion's defenses to Plaintiff's breach of contract claim relate solely to Plaintiff's failures to:  (1) advise Defendants in writing to seek and obtain independent counsel in connection with Plaintiffs' negotiation of a business deal with his own client; (2) inform Defendants of the actual and reasonably foreseeable adverse consequences and material risks of that deal; (3) disclose to Defendants that he was negotiation the deal on his own behalf and for his own benefit and that he was not advising Defendants or otherwise providing them with the same legal advice he would have provided had Defendants been negotiating with a third party; (4) disclose in writing to Defendants his conflict of interest and obtain written consent to same; and (5) negotiate terms that were entirely fair and reasonable to his clients, Defendants. Under these undisputed facts, controlling California state and federal law holds that Plaintiff's contract is voidable and cannot be legally enforced against Defendants, thus mandating judgment against Plaintiff on his breach of contract claim.  *See, e.g.*, Cal. R. Prof. C. 3-300, 3-310, 4-200; N.Y. R. Prof. C. 1.5, 1.7, 1.8.

What's more, contrary to the assertion in your email below, Judge Rosenbluth has not issued a ruling regarding any privileged documents relating to the employment agreement. In fact, and as you well know, Judge Rosenbluth's stayed any order on privilege to allow the parties to limit the pleadings, after which she would revisit the privilege issues, including to limit the scope of any waiver as appropriate under the now limited pleadings. The pleadings were then so limited, and Judge Rosenbluth has set a hearing for April 29, 2021 to consider whether and how to limit any waiver.

At any rate, even assuming, *arguendo*, that Defendants had consulted with a lawyer, such evidence—if it even existed—would not obviate the Plaintiff's undisputed violations of the relevant rules of professional conduct as a matter of law and thus is entirely immaterial to, and irrelevant to, Defendants' summary judgment motion. *BGJ Assocs. v. Wilson*, 113 Cal. App. 4th 1217, 1226–27 (2003) (expressly rejecting argument that independent counsel's advice relieved attorney of consequences of failure to make mandatory disclosures and obtain written consent); *Odish v. Cognitive Code Corp.*, No. CV 12-9069 FMO (JCGx), 2015 U.S. Dist. LEXIS 68630, at *17 (C.D. Cal. May 27, 2015) (failure to provide necessary disclosures or obtain waivers sufficient by itself to render contract voidable as a matter of law); *Gurvey v. Legend Films, Inc.*, No. 3:09-cv-00942 AJB (BGS), 2012 U.S. Dist. LEXIS 131547, at *30-31 (S.D. Cal. Sep. 14, 2012) (same; applying both California and New York rules); *Held & Hines LLP v. Hussain*, No. 16-cv-5273 (JSR)(SN) 2018 WL 4233809, at *4 (S.D.N.Y. July 31, 2018) (claim that client consulted independent counsel does not abate the attorney's "obligation to advise [the client] *in writing* that [it] should consider seeking independent legal advice before signing the agreement.") (emphasis in original).

As a result, regarding both the wrongful termination and breach of contract claim at issue in summary judgment, there is simply no relevant outstanding discovery. But even if there were—and there clearly is not—as explained above, given that summary judgment has literally been filed as late as possible, Plaintiffs certainly cannot complain that it was filed too early. Nor can Plaintiffs even complain that these issues are being raised on summary judgment rather than a motion for judgment on the pleadings. You will certainly recall that Defendants attempted to raise these issues on such a motion for judgment on the pleadings—which would not have required any evidence at all to oppose—but Plaintiff refused to allow Defendants to file such a motion while his motion to dismiss was pending. Of course, the fact these issues could have been determined on a motion for judgment on the pleadings just further proves the point in fact that there is no, and could be no, outstanding relevant discovery.

We trust that this correspondence answers all issues regarding the summary judgment timing, but if for any reason it does not, we ask that you either respond in writing or schedule a telephonic call to discuss.

Regards,

Kevin

**Kevin Crisp**
**Partner**
Direct: 949.567.3537 | Internal: 814-3537
kevin.crisp@troutman.com
―――――――――――――――

**troutman** **pepper**
Suite 1200, 4 Park Plaza
Irvine, CA 92614-2524
troutman.com
―――――――――――――――

**A HIGHER COMMITMENT TO CLIENT CARE**

Troutman Sanders and Pepper Hamilton have combined to become Troutman Pepper (Troutman Pepper Hamilton Sanders LLP). Troutman Pepper offers expanded capabilities and practice strengths while continuing to deliver powerful solutions to clients' legal and business issues with a higher commitment to client care.

Exhibit 1, Page 10

**From:** Amiad Kushner <akushner@seidenlawgroup.com>
**Sent:** Tuesday, April 27, 2021 8:46 AM
**To:** Crisp, Kevin <Kevin.Crisp@Troutman.com>; Kessel, Alan J. <Alan.Kessel@Troutman.com>; Michael Stolper <mstolper@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>; Claudia Varner <cvarner@seidenlawgroup.com>; Nathaniel Francis <nfrancis@seidenlawgroup.com>; Jake Nachmani <jnachmani@seidenlawgroup.com>
**Cc:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>; Ladner, Matthew <Matthew.Ladner@Troutman.com>; George, Paul B. <GeorgeP@LanePowell.com>
**Subject:** Summary Judgment Motion

### EXTERNAL SENDER

Counsel,

I write regarding the motion for summary judgment that you filed last night.

In light of the pending motion to dismiss defendants' counterclaims (which presented many of the same legal issues that are raised in your summary judgment motion) and the fact that document production and depositions have not been completed, we request that the parties stipulate that plaintiff's response to the summary judgment motion be extended until 10 days after: (i) the Court issues a ruling on the motion to dismiss, and (ii) document production and depositions are completed.  Among other things, this extension would avoid the unfairness and inefficiency of requiring plaintiff to respond to the summary judgment motion without the benefit of critical discovery on issues relevant to the motion, including the privileged documents relating to the employment agreement that Judge Rosenbluth ordered to be produced given defendants' waiver.

Please let us know immediately if you consent to this scheduling proposal.

Regards,

Amiad

**Amiad Kushner**
Partner, Head of Litigation
Seiden Law Group LLP
322 Eighth Avenue, Suite 1704
New York, NY 10001
646-766-1914
akushner@seidenlawgroup.com

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

Exhibit 1, Page 11

# EXHIBIT 2

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614

troutman.com

**troutman pepper**

**Jeffrey M. Goldman**
D 949.567.3547
jeffrey.goldman@troutman.com

<u>**Via E-mail Only**</u>

March 15, 2021

Jake Nachmani, Esq.
Seiden Law Group LLP
469 7th Avenue, 5th Floor
New York, NY  10018

Re:     **Meet and Confer Correspondence Pursuant to Central District of California Local Rule 7-3**

Dear Mr. Nachmani:

I write to institute the Meet and Confer process required by the Central District of California Local Rule 7-3 in connection with a Motion for Judgment on the Pleadings as to Plaintiff's Complaint that our clients, Faraday&Future Inc. ("FF"), Smart King Ltd. ("Smart King"), Jiawei Wang and Chaoying Deng (collectively, "Defendants") intend on filing.  To that end, this correspondence summarizes the governing law requiring the dismissal of each of the Complaint's following alleged causes of action:

1.     <u>**Intentional Infliction of Emotional Distress**</u>

This alleged cause of action is legally required to be dismissed under the California's Worker's Compensation Act which provides the exclusive remedy for Plaintiff Hong Liu's ("Liu") claim for intentional infliction of emotional distress.  *See, e.g., Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008) ("Plaintiffs allege defendants engaged in 'outrageous conduct' that was intended to, and did, cause plaintiffs 'severe emotional distress,' giving rise to common law causes of action for intentional infliction of emotional distress.  The alleged wrongful conduct, however, occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted.");  *Thomas v. Stars Entm't LLC*, Case No. 2:15-cv-09239-CAS(MRWx), 2016 WL 844799, *8 (C.D. Cal. Feb. 29, 2016) (where "alleged conduct occurred while plaintiff was either at work, performing functions required by his employment, or attending meetings regarding his work," and where "the majority, if not all, of . . . alleged misconduct relates to . . . efforts to discipline, and ultimately fire, plaintiff," a claim for intentional infliction of emotional distress is based on a "normal part of the employment relationship" and is therefore barred by the Worker's Compensation Act (citations omitted)).



2.      **Breach of Contract**

As detailed in Defendants' Second Amended Counterclaim, the Employment Agreement can conceivably only constitute a valid and enforceable agreement if Liu complied with New York Rules of Professional Conduct 1.5, 1.7, and 1.8, as well as with California Rules of Professional Conduct 3-310, 3-300, and 4-200.

As evident on its face, the Complaint fails to allege Liu's compliance with those rules, and therefore fails to plead the existence of a legally enforceable contract between Liu, Smart King and FF under governing law.  *See, e.g.*, *Fletcher v. Davis*, 33 Cal. 4th 61, 71 (2004) (affirming trial court's sustaining of demurrer to attorney's claim for fees pursuant to a charging lien where attorney failed to allege compliance with and failed to abide by California Rule of Professional Conduct 3-300); *Fletcher v. Gilbert*, Case No. CV 06-05048-SJO (RNB), 2006 U.S. Dist. LEXIS 103689, at *7 (C.D. Cal. Oct. 12, 2006) (finding that "the California Supreme Court [in *Fletcher v. Davis*, *supra*] assumed that the facts as alleged in plaintiff's Superior Court complaint were true and that plaintiff could not plead facts showing the perfection of a lien on the judgment obtained by his former client or that the defendants in the Superior Court action had knowledge of such a lien."); *Luna & Glushon v. Tri-Valley Corp. (In re Tri-Valley Corp.)*, 2013 Bankr. LEXIS 1783, at *11–12 (Bankr. D. Del. May 1, 2013) ("Based on the decision in *Fletcher* [*v. Davis*], the Court concludes that under California law, attorneys must plead in their complaint that they complied with Rule 3-300 when seeking a declaratory judgment that they have a charging lien for hourly fees.  Here, L&G failed to do so.  The Complaint and the Fee Agreement are silent as to whether or not L&G advised the Debtors in writing of their right to seek the advice of an independent lawyer or whether the Debtors consented after a reasonable opportunity to seek such advise (sic).  The Court will, therefore, grant the Debtors' Motion to Dismiss the Complaint.") Furthermore, Liu cannot amend to fix this pleading deficiency without violating Federal Rule of Civil Procedure 11, since it is not disputable that he failed to abide by the aforementioned rules of professional conduct.

3.      **Section 10(b) of the Exchange Act and Rule 10(b)-5**

Liu's alleged 10(b)-5 is similarly untenable.  That is because the options at issue in the Employment Agreement were not "sold" to Liu.  Moreover, Liu's contention that "[b]y accepting an offer of employment in exchange for receiving securities, Mr. Liu effectively purchased securities" is a *non-sequitur*, particularly where Liu does not identify what it was from Smart King or FF he agreed to forego in exchange for the options.  (Compl., ¶120.)  As held by the U.S. Supreme Court in *International Board of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*, 439 U.S. 551, 559 (1979):

Jake Nachmani, Esq.
March 15, 2021
Page 3



> In every decision of this Court recognizing the presence of a 'security' under the Securities Acts, the person found to have been an investor chose to give up a specific consideration in return for a separable financial interest with the characteristics of a security. . . .  No portion of an employee's compensation other than the potential pension benefits has any of the characteristics of a security, yet these noninvestment interests cannot be segregated from the possible pension benefits.  Only in the most abstract sense may it be said that an employee 'exchanges' some portion of his labor in return for these possible benefits.  He surrenders his labor as a whole, and in return receives a compensation package that is substantially devoid of aspects resembling a security.  His decision to accept and retain covered employment may have only an attenuated relationship, if any, to perceived investment possibilities of a future pension.  Looking at the economic realities, it seems clear that an employee is selling his labor primarily to obtain a livelihood, not making an investment.

Nor were the options at issue "purchased" by Liu simply because he allegedly gave an "income stream and retirement benefits from his Mayer Brown partnership," (Compl., ¶120), particularly where the undefined and speculative value of Liu's alleged partnership and revenue stream does not constitute any form of legal consideration provided by Liu to Smart King or FF. *See, e.g.*, *Wyatt v. Cendant Corp.*, 81 F. Supp. 2d 550, 558 (D.N.J. 2000) (no standing where employee does not give anything of value for stock other than employment services); *McLaughlin v. Cendant Corp.*, 76 F. Supp. 2d 539, 550 (D.N.J. 1999) (same); *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 318 (S.D.N.Y. 2006) (same).

### 4.      Fraudulent Inducement and Negligent Misrepresentation

These claims fail for several reasons.

***First***, Liu's fraudulent inducement claim hinges upon allegations that all Defendants "falsely represented that in December 2017, Evergrande had invested $2 billion in Smart King in a Series A offering that valued Smart King at $4.5 billion.  Defendants also falsely represented that Mr. Liu would be entitled to Directors' and Officers' insurance while working at Faraday." (Compl., ¶ 125.)  The former statement is belied by the Employment Agreement itself attached and incorporated into the Complaint, which expressly provides that Smart King and FF "had successfully completed ***first closing*** of Series A financing in December 2017, ***which is subject to CFIUS approval*** . . . ."  (*Id.*, Ex. A, p. 2 (emphasis added).)  In light of the Employment Agreement's patent disclosure that the subject financing had not been completed or approved in its entirety, there neither is, nor can be, any reasonable reliance by Liu on any alleged pre-contractual representations that a definitive investment purported had been made and remitted.

Jake Nachmani, Esq.
March 15, 2021
Page 4



**Second**, the Complaint's fraud claim is implausible under the U.S. Supreme Court's seminal decisions in *Iqbal* and *Twombly*, let alone sufficient under Federal Rule of Civil Procedure 9's heightened pleading standard.  More particularly, it is implausible that Liu would not have joined Smart King and FF had he known that the Series A financing had allegedly not been completed or D&O insurance had not been procured, in light of the egregiously one-sided multi-million dollar package, complete with acceleration clauses, to which he secured Smart King and FF's agreement.  Certainly he will not be able to show that Mayer Brown would have guaranteed him that much money on similar terms.

**Third**, the Complaint fails to allege causation with respect to the fraudulent inducement or the negligence claim.  In particular, Liu has not pled that Smart King and FF were unable to pay all amounts owed on the Employment Agreement or provide options, but rather, that they simply had not paid all amounts allegedly due and owing.  In other words, Liu's claim is that the Employment Agreement was breached and thus money is owed; *not* that the Company lacked the ability pay him at the time the parties entered the Employment Agreement.

**Fourth**, and related to the immediately preceding point, the Complaint's alleged fraudulent inducement and negligent misrepresentation claims are subject to the economic loss rule, especially where those claims specifically incorporate, and impermissibly attempt to repackage, Liu's alleged breach of contract claim as torts.  *See, e.g., Aas v. Super. Ct.*, 24 Cal. 4th 627, 643 (2000) (a party "may not ordinarily recovery in tort for breaches of duties that merely restate contractual obligations"), *superseded on other grounds by* Cal. Civ. Code, §§ 895 *et seq.*; *JMP Sec. LLP v. Altair Nanotechnologies, Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) ("[N]o tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement."); *Sam Rubin Ent., Inc. v. AARP, Inc.*, No. CV 16-6431-RSWL-SSX, 2016 WL 7336554, at *7 (C.D. Cal. Dec. 15, 2016) (dismissing fraudulent inducement claim under economic loss rule).  Liu additionally neither has, nor can, allege that Smart King's and FF's alleged fraud or negligent misrepresentations purportedly subjected him to liability to third parties thereby further requiring dismissal of the Complaint's fraudulent inducement and negligent misrepresentation claims under the economic loss rule on that separate and independent ground, as well

**Finally**, the negligent misrepresentation claim merely recites the elements of the cause of action without any, much less with the requisite, specificity.  It thus fails to meet the Rule 9 standard, and is legally required to be dismissed.  *See, e.g., Arch Ins. Co. v. Allegiant Prof'l Bus. Servs.*, No. CV 11-1675 CAS (PJWx), 2012 U.S. Dist. LEXIS 56605, at *7 (C.D. Cal. Apr. 23, 2012) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.").  The Complaint's negligent misrepresentation cause of action further fails to adequately allege the identity of the "special relationship" between any of the Defendants, let alone all of them, and Liu (Compl., ¶ 144), and similarly fails to allege any specific facts whatsoever establishing how Chaoying Deng and Jiawei Wang legally can be held personally liable under the Complaint's alleged fraudulent inducement and negligent misrepresentation claims.

Jake Nachmani, Esq.
March 15, 2021
Page 5



5.    <u>**Wrongful Termination in Violation of Public Policy**</u>

The Complaint fails to plausibly state a claim for wrongful termination.  Instead, it only (i) alleges certain concerns Liu had with the way the Company operated; and (ii) recites actions he purportedly took in his capacity as General Counsel.  (*See* Compl., ¶¶ 70–72.)  Those allegations are legally insufficient for at least two independently dispositive reasons.

*First*, Liu has not alleged any statutory or constitutional provision giving rise to a fundamental public policy prerequisite to maintenance of the Complaint's purported Wrongful Termination claim.  *See Stevenson v. Super. Ct.*, 16 Cal. 4d 880, 889–90 (1997).  Likewise, Liu has failed to allege, let alone establish, how any such policy inures to the benefit of the public as opposed to Liu's own personal interests.  *Id.*  Nor has Liu explained how that unalleged policy is "fundamental" and "substantial."  *Id.*

*Second*, Liu fails to offer any explanation, let alone a plausible one, as to how performing his job functions in the Legal Department somehow gives rise to a wrongful termination claim.  Under governing California Supreme Court law, wrongful termination claims brought by in-house counsel not only are disfavored and limited, but also are required to be "grounded in *explicit* and *unequivocal ethical norms* embodied into Rules of Professional Responsibility and *statutes*, and claims which are maintainable by the *non-* attorney employee . . . under circumstances in which the Legislature has manifested a judgment that the principle of professional confidentiality *does not apply*."  *Gen. Dynamics Corp. v. Super. Ct.,* 7 Cal. 4th 1164, 1189–90 (1994) (emphasis in original).  *Id.* (citations omitted).  Despite those legal requirements, Liu neither has identified any such explicit and unequivocal ethical norms or statutes, nor has alleged any circumstance for which the California Legislature has manifested its judgment that a principle of professional confidentiality would not apply.

In fact, by revealing the internal secrets of FF and Smart King in his publicly-filed Complaint while lacking any grounds for believing that confidentiality does not apply, Liu has again violated his ethical responsibilities.  (*See, e.g.*, Compl., ¶¶ 64, 71, 72, 74, 83).  This is true under both California and New York law.  *See, e.g., Strickland v. City of Inglewood*, No. CV 08-1595 ABC(CTx), 2009 U.S. Dist. LEXIS 136870, at *4-5 (C.D. Cal. Apr. 23, 2009) ("California attorneys, such as plaintiff, are constrained by an ethical obligation not to disclose client confidences and secrets. Cal. Bus. & Prof. Code § 6068 (e) (2004). This is a broader prohibition than the evidentiary attorney-client privilege. *Goldstein v. Lees*, 46 Cal. App. 3d 614, 621, 120 Cal. Rptr. 253 (1975). It precludes an attorney from disclosing not only confidential communications made for the purposes of obtaining legal representation, but any information that might be detrimental to a client's interests. *See Matter of Johnson*, 4 Cal. State Bar Ct. Rptr. 179, 189 (2000) (disclosure of fact that client was a convicted felon); ABA Model Rule of Prof. Conduct 1.6 (a) (2009), and Comment (5) (absent client consent, lawyer prohibited from revealing confidential client information except as necessary to carry out representation); Rest.3d Law Governing Lawyers § 59 (2000) ("confidential client information" is 'information relating to representation of a client, other than information that is generally known'").  Also unlike the attorney-client privilege, the California attorney's duty to preserve client confidences applies equally to ancillary, non-legal business services.  *See* Cal. Prac. Guide Prof. Resp., 7:28.2 (citing Cal. State Bar Form. Opn.

Jake Nachmani, Esq.
March 15, 2021
Page 6



1995-141).  This duty outlives the attorney-client relationship, and it even survives in a wrongful termination case, such as this one, brought by an attorney against her former client.  *See General Dynamics v. Sup. Ct. (Rose)*, 7 Cal. 4th 1164, 1190, 32 Cal. Rptr. 2d 1, 876 P.2d 487 (1994)); *NCK Org., Ltd. v. Bregman*, 542 F.2d 128, 133 (2d Cir. 1976) ("[The] client's privilege in confidential information disclosed to his attorney 'is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources.'") (citation omitted); *U.S. v. Mackey*, 405 F. Supp. 854, 865 (E.D.N.Y. 1975) ("Attorneys, in particular, are under a professional ethical obligation to refuse to disclose confidential matters.") (citing A.B.A. Code of Professional Responsibility, Canon 4).

It is for this very reason that "the in-house attorney who publicly exposes the client's secrets will usually find no sanctuary in the courts[,]" and that where, as here, "the elements of a wrongful discharge in violation of fundamental public policy claim cannot, for reasons peculiar to the particular case, be fully established without breaching the attorney-client privilege, ***the suit must be dismissed in the interest of preserving the privilege.***"  *Gen. Dynamics Corp.*, 7 Cal. 4th at 1190 (emphasis added).

Given the foregoing, it is clear that Liu cannot maintain this cause of action, particularly where doing so will necessarily result in his violating both the privilege and his ethical duties of confidentiality.

## 6.     Declaratory Relief

For each of the foregoing reasons, the Complaint's alleged declaratory relief cause of action is correspondingly defective and legally required to be dismissed.  *See, e.g., Renovate Am., Inc. v. Lloyd's Syndicate 1458*, No. 3:19-cv-01456-GPC-WVG, 2019 U.S. Dist. LEXIS 212874, at *14 (S.D. Cal. Dec. 10, 2019) (a declaratory relief request "rises and falls with the substantive claims to that effect" because the "Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action.") (citation omitted).

Please provide us with the dates and times you are available this week to conduct a telephonic meet-and-confer conference on the foregoing matters.

Thank you in advance for your anticipated cooperation.

Sincerely,

Jeffrey M. Goldman

# EXHIBIT 3

**Crisp, Kevin**

| | |
|---|---|
| **From:** | Goldman, Jeffrey M. |
| **Sent:** | Wednesday, March 31, 2021 11:21 PM |
| **To:** | Jake Nachmani; Crisp, Kevin; Kessel, Alan J.; Grochow, Lauren; Willow-Johnson, Mackenzie Lee |
| **Cc:** | Amiad Kushner; Andrew Sklar; Kevin Hughes |
| **Subject:** | RE: Liu v. Faraday&Future, Inc., et al. |
| **Attachments:** | 2021-03-15 Letter to J. Nachmani re L.R. 7-3 Meet & Confer re MJOP.pdf |

Dear Jake,

This email responds to your email sent at 4:50 pm PT on March 30, 2021 concerning our March 23, 2021 meet and confer conversation in connection with (i) Hong Liu's ("Liu") intended motion to dismiss the Second Amended Counterclaim ("SACC"); and (ii) Faraday&Future Inc.'s ("FF") intended motion for judgment on the pleadings.

In particular, this email serves to correct the mischaracterizations and misstatements contained in your correspondence.  Hopefully, you will refrain from creating misleading records in the future, and will endeavor to ensure that statements made regarding our communications are accurate going forward.  Unfortunately, this is not the first time you have send a "memorialization" email purporting to ascribe comments to me that were not actually uttered.  Nevertheless, I trust this is the last.

*First*, to provide context to your assertions regarding our March 23, 2021 conversation, I note that it took place two days before your deadline to respond to FF's SACC.  Your dilatory efforts to meet-and-confer violated Central District of California Local Rule 7-3.  Notably, this was the second time in less than a month that you had failed to honor Central District of California Local Rule 7-3 in connection with a motion to dismiss.  Nevertheless, in a showing of good faith and in reservation of our rights, we agreed to speak with you about both your intended motion to dismiss and our intended motion for judgment on the pleadings.

You are correct that the Court – without providing any explanation or analysis – granted Mr. Liu 10 days leave to respond to the complaint.  Notably, unlike with the First Amended Counterclaim, the Court did not invite a motion to dismiss of any sort with respect to the SACC.

*Second*, you are clearly going to file a meritless motion to dismiss in a transparent effort to keep the pleadings open in order to prevent our filing of motion for judgment on the pleadings.  In light of your colleague's email earlier today seeking a stipulation to amend the pleadings to substitute in a defendant after the deadline for amending established by the scheduling order, it is ironic that you point to FF's agreement to that same scheduling order as some sort of justification for denying FF the ability to move for judgment on the pleadings.

*Third*, your bullet points incompletely reflect the matters we discussed forming the basis for Mr. Liu's motion to dismiss, and you continue to fail to provide any authorities in response to the positions and cases we have provided in writing.  I repeat our request for any authorities in your possession supporting the notion that FF's causes of action rooted in Mr. Liu's failure to abide by the pertinent Rules of Professional Responsibility are subject to a heightened pleading standard.

*Fourth*, as for your baseless assertion of sanctions – which, as we have noted to you before, itself legally subjects both you and your client to sanctions – you have once again misstated our

1

discussion.  When you asked whether or not Sidley Austin represented FF in different aspects of the Liu/FF employment agreement, I responded that Sidley Austin did not represent Mr. Liu in the transaction.  I also told you that I would not discuss the matter further, because the attorney-client privilege and attorney work product doctrine protect from disclosure any work performed by Sidley Austin on behalf of FF.  As previously discussed, that privilege is not being waived.  Your blanket contention that I stated that, "Sidley did not represent Faraday" is thus incorrect.  As you know, Sidley Austin represented FF in certain aspects; it simply did not represent FF in the employment agreement transaction with Liu.  I confirmed as much in my prior correspondence to you.  Once again, you are using an effort to "memorialize" conversations in an incomplete and misleading manner in the hope of obtaining a strategic advantage before the Court.

*Fifth*, as for our intended motion for judgment on the pleadings, your gaming of the Scheduling Order has led us to present it as a Motion for Summary Judgment and/or Partial Summary Judgment given your decision to file a motion to dismiss the SACC.  Please let us know the dates and times during which you are available on Thursday (April 1) (after 11:00 a.m. PT) or Friday (April 2) of this week to meet and confer.  The substance of the motion will be the same as of which we advised you that gave rise to the previously intended motion for judgment on the pleadings, albeit under the MSJ standard, instead of the pleading standard.  Please see my prior L.R. 7-3 correspondence, attached hereto as **Exhibit 1**, as support for our intended Motion for Summary Judgment and/or Partial Summary Judgment.  We also intend on moving for summary judgment and/or partial summary judgment on FF's claims for Rescission, Promissory Fraud, Breach of Fiduciary Duty (related to Liu's violations of the Rules of Professional Conduct); and Declaratory Judgment and/or Business and Professions Code section 17200 (also related to Liu's violations of the Rules of Professional Conduct, as well as his practicing of law in California without a license). If granted, the resulting judgment will result in the Employment Agreement being declared void *ab initio* or otherwise rescinded, a corresponding declaratory judgment being issued, and the parties being restored to the *status quo ante* (including the return of all sums paid to Liu).

As to the claims in Liu's Complaint, please bear the following in mind:

- With respect to the intentional infliction of emotional distress claim, California's Workers Compensation Act prohibits it.  I have repeatedly advised you of the same, and you have never provided any argument or authority to the contrary.  You are continuing to press a claim that is knowingly barred, and unsupportable under the law as well as the evidence;

- With respect to your Section 10b-(5) claim, we provided you with ample authority and argument as to why the claim had no merit in our prior meet and confer correspondence.  You have not provided a substantive response other than to claim you would not withdraw and that based on your past experience in securities litigation, an option plan can be subject to Section 10b-(5).  That is not sufficient to defeat a challenge to the claim;

- As to the fraudulent inducement and negligent misrepresentation claims, once again, you had no response to either the authorities or argument provided in FF's meet-and-confer letter.  Your statements that "these claims are colorable because Defendants made false statements upon which Plaintiff relied, not as is the case with the breach of contract claim because Defendants didn't make good on their promises," ignores the law we have provided regarding the economic loss rule.  We have yet to receive a substantive response as to why that position can be disputed.  Once again, you are pressing an unsupportable claim;

- With respect to the wrongful termination claim, we indeed cited *General Dynamics Corporation* for the point that your client cannot use privileged information to prosecute his wrongful

Exhibit 3, Page 19

termination claim, and you had no rejoinder whatsoever on the call.  Nor, conspicuously, does any such rejoinder appear in your email.

**Finally**, concerning privileged information, you are correct that Plaintiff cannot use privileged information in his motion to dismiss or use it to otherwise publicly prosecute Plaintiff's wrongful termination claim.  Likewise, Liu cannot use privileged information to prosecute his breach of contract counterclaim, whereas Liu's failure to perform competently on the job for FF properly gives rise to the rights to utilize emails and communications identified in the SACC and that otherwise specifically demonstrate Liu's violations of the Rules of Professional Conduct and his subsequent failings as FF's counsel.  While you disagreed, you have not provided Liu's position on the privilege.  Please send us Liu's position on what documents you believe can be used in this action as opposed to what documents are privileged and unusable by Friday, April 2, 2021, as well as any authorities supporting that position.

Thank you in advance for your anticipated cooperation.

Sincerely,

Jeff

**Jeffrey M. Goldman**
**Partner**
**troutman** pepper
Direct: 949.567.3547 | Internal: 814-3547
jeffrey.goldman@troutman.com

**From:** Jake Nachmani <jnachmani@seidenlawgroup.com>
**Sent:** Tuesday, March 30, 2021 4:50 PM
**To:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>; Crisp, Kevin <Kevin.Crisp@Troutman.com>; Kessel, Alan J. <Alan.Kessel@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>; Willow-Johnson, Mackenzie Lee <Mackenzie.Willow-Johnson@Troutman.com>
**Cc:** Amiad Kushner <akushner@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>
**Subject:** Re: Liu v. Faraday&Future, Inc., et al.

**EXTERNAL SENDER**

Counsel – There is a correction in the last paragraph of the below email which we would like address.  We are resending the updated email in its entirety below …

Counsel –

This email serves to memorialize the meet and confer conference call held on March 23, 2021 concerning Plaintiff's motion to dismiss FF's Second Amended Counterclaim (ECF 95) ("SACC"), Plaintiff's motion for sanctions, and Defendant's motion for judgment on the pleadings.

As a preliminary matter, we raised the issue of your allowing us to have an extension of time to file our motion to dismiss, given the new theories set forth in SACC, the abridged litigation schedule in light of the Court's ordered June 8, 2021 trial date, and, in terms of reciprocity between the parties, the fact that we effectively provided Defendants with more than five weeks to respond to Plaintiff's initial motion to dismiss. You rejected our proposed extension.  Instead, you said that such an extension would be acceptable only if Plaintiff extended the time to file motions beyond the

agreed-upon May 11, 2021 cut-off date.  ECF 92.  We explained that we could not agree to that, as Defendants' currently being unable to file their motion for judgment on the pleadings was entirely a situation of Defendants' making: the pleadings remain open here because, at this late date, with approximately less than three months until trial, Defendants have chosen to file a second amended counterclaim, alleging claims and theories which could have been brought at the very inception of this action, in January 2020, and that the current litigation schedule was not only agreed-upon by the parties but initially provided by Defendants themselves.  All of this notwithstanding, the parties could not agree to an arrangement; Plaintiff filed his *ex parte* application for leave for an extension of time (ECF 99), Defendants objected (ECF 104), submitting a 14 page opposition brief, and the Court granted Plaintiff's application. ECF 106.

As to Plaintiff's motion to dismiss the SACC, Plaintiff once again set forth the numerous grounds for his to-be-filed 12(b)(6) motion, including the following:

- The allegations set forth in the SACC are implausible on their face, as detailed in Plaintiff's numerous emails sent pursuant to Local Rule 7-3.
- As to FF's claims concerning purported violations of professional conduct, the facts as alleged simply cannot give rise to liability under those provisions.
- As to FF's claims sounding in fraud, including but not limited to constructive fraud, illegal or fraudulent business practices, and breach of fiduciary duty, once again FF's pleadings fail to meet the requirements of Rule 9(b).

As to the basis for Plaintiff's motion for sanctions, we asked you if the law firm of Sidley Austin reviewed, approved of or helped negotiate any terms of the Employment Agreement.  You responded that, in connection with the Employment Agreement, "Sidley did not represent Faraday."  You did not answer the question we asked, which was significantly more detailed than your broad response.  You did mention that you were concerned that, in connection with our motion to dismiss and for sanctions, we would be using "privileged information."  We explained that any materials we would be using would no longer privileged and that we would have a good faith basis to use those materials.

We then turned to discussing Defendants' motion for judgment on the pleadings.

You maintained that Plaintiff's claim for intentional infliction of emotional distress was preempted. We maintained that it was not and that we would not be withdrawing it at that time.  You asked us if we would withdraw our claim under Section 10(b)(5) of the Exchange Act; we said we would not be withdrawing it at that time.  As to the fraudulent inducement and negligent misrepresentation claims, you maintained that these claims are no more than breach of contract claims.  We responded that that analysis was incorrect: these claims are colorable because Defendants made false statements upon which Plaintiff relied, not as is the case with a breach of contract claim because Defendants didn't make good on their promises (*cf.* FF's initial and Amended Counterclaims).  Finally, you mentioned that as to Plaintiff's claim for wrongful termination, it was inappropriate for a company's in-house counsel to bring this claim unless it fell within the narrow scope of *General Dynamics Corporation*, which in your view Plaintiff does not qualify.  Moreover, you added that Plaintiff could not use privileged information to prosecute his wrongful termination claim.

Finally, the call concluded with a discussion concerning the use of privileged information. Citing Defendants' previous reference to the fact that, in Defendants' view, Plaintiff cannot use privileged information in his motion to dismiss or use it to prosecute Plaintiff's wrongful termination claim, we asked if it was Defendants' position that FF could use privileged information to prosecute its breach of contract counterclaim.  It was your position that as to the subject matter of Plaintiff's failure to perform competently on the job for FF, as FF alleges in the SACC, privileged communications were at issue and could be used by FF; however, in your view, all other communications between Plaintiff and FF would be subject to the attorney-client privilege.   We disagreed in full with your position as applied here.

Regards,

-Jake

Exhibit 3, Page 21

**From:** Jake Nachmani <jnachmani@seidenlawgroup.com>
**Date:** Tuesday, March 30, 2021 at 7:02 PM
**To:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>, Crisp, Kevin <Kevin.Crisp@Troutman.com>,
Kessel, Alan J. <Alan.Kessel@Troutman.com>, Grochow, Lauren <Lauren.Grochow@Troutman.com>, Willow-
Johnson, Mackenzie Lee <Mackenzie.Willow-Johnson@Troutman.com>
**Cc:** Amiad Kushner <akushner@seidenlawgroup.com>, Andrew Sklar <asklar@seidenlawgroup.com>, Kevin
Hughes <kevin@foundationlaw.com>
**Subject:** RE: Liu v. Faraday&Future, Inc., et al.

Counsel –

This email serves to memorialize the meet and confer conference call held on March 23, 2021 concerning Plaintiff's
motion to dismiss FF's Second Amended Counterclaim (ECF 95) ("SACC"), Plaintiff's motion for sanctions, and
Defendant's motion for judgment on the pleadings.

As a preliminary matter, we raised the issue of your allowing us to have an extension of time to file our motion to
dismiss, given the new theories set forth in SACC, the abridged litigation schedule in light of the Cour's ordered June 8,
2021 trial date and, in terms of reciprocity between the parties, the fact that we effectively provided Defendants with
more than five weeks to respond to Plaintiff's initial motion to dismiss. You rejected our proposed extension.  Instead,
you said that such an extension would be acceptable only if Plaintiff extended the time to file motions beyond the
agreed-upon May 11, 2021 cut-off date.  ECF 92.  We explained that we could not agree to that, as Defendants' currently
being unable to file their motion for judgment on the pleadings was entirely a situation of Defendants' making: the
pleadings remain open here because, at this late date, with approximately less than three months until trial, Defendants
have chosen to file a second amended counterclaim, alleging claims and theories which could have been brought at the
very inception of this action, in January 2020, and that the current litigation schedule was not only agreed-upon by the
parties but initially provided by Defendants themselves.  All of this notwithstanding, the parties could not agree to an
arrangement; Plaintiff filed his *ex parte* application for leave for an extension of time (ECF 99), Defendants objected (ECF
104), submitting a 14 page opposition brief, and the Court granted Plaintiff's application. ECF 106.

As to Plaintiff's motion to dismiss the SACC, Plaintiff once again set forth the numerous grounds for his to-be-filed
12(b)(6) motion, including the following:

- The allegations set forth in the SACC are implausible on their face, as detailed in Plaintiff's numerous emails sent
  pursuant to Local Rule 7-3.
- As to FF's claims concerning purported violations of professional conduct, the facts as alleged simply cannot give
  rise to liability under those provisions.
- As to FF's claims sounding in fraud, including but not limited to constructive fraud, illegal or fraudulent business
  practices, and breach of fiduciary duty, once again FF's pleadings fail to meet the requirements of Rule 9(b).

As to the basis for Plaintiff's motion for sanctions, we asked you if the law firm of Sidley Austin reviewed, approved of or
helped negotiate any terms of the Employment Agreement.  You responded that, in connection with the Employment
Agreement, "Sidley did not represent Faraday."  You did not answer the question we asked, which was significantly
more detailed than your broad response.  You did mention that you were concerned that, in connection with our motion
to dismiss and for sanctions, we would be using "privileged information."  We explained that any materials we would be
using would no longer privileged and that we would have a good faith basis to use those materials.

We then turned to discussing Defendants' motion for judgment on the pleadings.

You maintained that Plaintiff's claim for intentional infliction of emotional distress was preempted. We maintained that
it was not and that we would not be withdrawing it at that time.  You asked us if we would withdraw our claim under

Exhibit 3, Page 22

Section 10(b)(5) of the Exchange Act; we said we would not be withdrawing it at that time.  As to the fraudulent inducement and negligent misrepresentation claims, you maintained that these claims are no more than breach of contract claims.  We responded that that analysis was incorrect: these claims are colorable because Defendants made false statements upon which Plaintiff relied, not as is the case with a breach of contract claim because Defendants didn't make good on their promises (*cf.* FF's initial and Amended Counterclaims).  Finally, you mentioned that as to Plaintiff's claim for wrongful termination, it was inappropriate for a company's in-house counsel to bring this claim unless it fell within the narrow scope of *General Dynamics Corporation*, which in your view Plaintiff does not qualify.  Moreover, you added that Plaintiff could not use privileged information to prosecute his wrongful termination claim.

Finally, the call concluded with a discussion concerning the use of privileged information. Citing Defendants' previous reference to the fact that, in Defendants' view, Plaintiff cannot use privileged information in his motion to dismiss or use it to prosecute Plaintiff's wrongful termination claim, we asked if it was Defendants' position that Plaintiff could not use privileged information to prosecute his breach of contract claim.  It was your position that as to the subject matter of Plaintiff's failure to perform competently on the job for FF, as FF alleges in the SACC, privileged communications were at issue and could be used; however, in your view, all other communications between Plaintiff and FF would be subject to the attorney-client privilege.   We disagreed in full with your position as applied here.

Regards,

-Jake

---

**From:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>
**Sent:** Monday, March 22, 2021 5:28 PM
**To:** Jake Nachmani <jnachmani@seidenlawgroup.com>; Crisp, Kevin <Kevin.Crisp@Troutman.com>; Kessel, Alan J. <Alan.Kessel@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>; Willow-Johnson, Mackenzie Lee <Mackenzie.Willow-Johnson@Troutman.com>
**Cc:** Amiad Kushner <akushner@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>
**Subject:** RE: Liu v. Faraday&Future, Inc., et al.

Jake,

As stated in my letter, I am available at any time after 10 am PDT tomorrow, March 23, 2021.

- Jeff

---

Sent from Workspace ONE Boxer

On March 22, 2021 at 2:24:56 PM PDT, Jake Nachmani <jnachmani@seidenlawgroup.com> wrote:

**EXTERNAL SENDER**

Jeff,

We would like to meet and confer with you. When are you available to do so?

Of course, we take issue with your framing of the phrase "threatening." This is not so. We are providing Defendants with notice pursuant our obligations under the Local Rules.

Regards,

Exhibit 3, Page 23

Jake


Jake Nachmani, Esq.
Counsel
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1723
Mobile: (323) 810-0044
www.seidenlawgroup.com



CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for
the addressee(s) and may contain confidential and/or privileged information and may be legally protected from
disclosure. If you are not the intended recipient of this message or their agent, or if this message has been
addressed to you in error, please immediately alert the sender by reply email and then delete this message and any
attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or
storage of this message or its attachments is strictly prohibited.
保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即
通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容


---

**From:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>
**Sent:** Monday, March 22, 2021 5:11 PM
**To:** Jake Nachmani <jnachmani@seidenlawgroup.com>; Crisp, Kevin <Kevin.Crisp@Troutman.com>; Kessel, Alan
J. <Alan.Kessel@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>; Willow-Johnson,
Mackenzie Lee <Mackenzie.Willow-Johnson@Troutman.com>
**Cc:** Amiad Kushner <akushner@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin
Hughes <kevin@foundationlaw.com>
**Subject:** RE: Liu v. Faraday&Future, Inc., et al.

Jake,

Let's further discuss the matters discussed in my March 16, 2021 correspondence concerning the
Motion for Judgment on the Pleadings when we discuss your threatened motion to dismiss and motion
to strike.

Sincerely,

Jeff

**Jeffrey M. Goldman**
**Partner**
**troutman** **pepper**
Direct: 949.567.3547 | Internal: 814-3547
jeffrey.goldman@troutman.com

Exhibit 3, Page 24

**From:** Jake Nachmani <jnachmani@seidenlawgroup.com>
**Sent:** Tuesday, March 16, 2021 10:45 AM
**To:** Goldman, Jeffrey M. <Jeffrey.Goldman@Troutman.com>; Crisp, Kevin <Kevin.Crisp@Troutman.com>; Kessel, Alan J. <Alan.Kessel@Troutman.com>; Grochow, Lauren <Lauren.Grochow@Troutman.com>; Willow-Johnson, Mackenzie Lee <Mackenzie.Willow-Johnson@Troutman.com>
**Cc:** Amiad Kushner <akushner@seidenlawgroup.com>; Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>
**Subject:** RE: Liu v. Faraday&Future, Inc., et al.

**EXTERNAL SENDER**
Counsel,

We are in receipt of and have reviewed the below-referenced  (and attached) letter dated March 15, 2021 ("March 15 Letter").  We write in response thereto.

As a preliminary matter, Plaintiff is willing to meet and confer with you on the substance of your motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)").

However and as you should know, a motion under Rule 12(c) may be filed only "***[a]fter the pleadings are closed***."  Fed. R. Civ. P. 12(c).  Because Rule 7(a) of the Federal Rules of Civil Procedure designates a counterclaim as a pleading, the Ninth Circuit holds that, for the purposes of Rule 12(c), the pleadings are closed only when the counterclaim too is closed.  *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005).

Here, FF's 12(c) motion is entirely premature, as the pleadings are not closed.  Indeed, FF's filing the Second Amended Counterclaim (ECF 95) ("SACC") has kept the pleadings open, rendering the filing of Defendants' 12(c) motion premature.  Plaintiff has not yet answered or moved to dismiss the SACC.  Underscoring the relevance of this, FF relies squarely on the allegations (albeit defective ones) in the SACC as grounds for dismissal of Plaintiff's breach of contract claim.  *See* March 12, 2021 Letter at 2.  Moreover, in the event that Plaintiff moves to dismiss some or all of FF's new-fangled counterclaims, the pleadings will be closed only after the Court resolves that motion, subject to Plaintiff's having filed his reply brief.  Accordingly and for all these reasons, the pleadings are not closed, and FF's motion is untimely; caselaw from within this Circuit is clear on this.  *See Buckhorn v. Hettinger*, 2020 WL 5910070, at *7 (N.D. Cal. Oct. 6, 2020) (denying defendant's motion to dismiss on the pleadings where defendant had also filed a counterclaim which, at the time of defendant's 12(c) motion, plaintiff had not yet answered); *Johnson v. Mazza*, 2016 WL 11505262, at *3 (C.D. Cal. Sept. 20, 2016) (noting that defendants' 12(c) motion was timely only because (i) defendants had filed an answer and (ii) "no counterclaim or cross-claims ha[d] been filed."); *Sebastian Brown Prods. LLC v. Muzooka Inc.*, 2016 WL 949004, at *4 (N.D. Cal. Mar. 14, 2016) (noting that defendants' motion to dismiss complaint under 12(c) was premature because defendants had filed a counterclaim which plaintiff had not yet answered); *IconFind, Inc. v. Google, Inc.*, 2011 WL 4505817, at *1 (E.D. Cal. June 3, 2011) (dismissing defendant's12(c) motion as premature where defendant also filed counterclaims to which plaintiff had not yet responded).

Moreover, given the June 2021 trial date, it is hard to imagine that this motion, whether prematurely brought pursuant to your March 15 Letter or upon disposition of FF's SACC, would not delay trial, providing an additional basis for why this motion should not be brought.

To the extent Defendants can provide controlling case law to the contrary, please share that with us expeditiously.

We are available to meet and confer with you on this motion on Friday, March 19, 2021 or on Monday of next week.

Regards,

Exhibit 3, Page 25

-Jake


Jake Nachmani, Esq.
Counsel
Seiden Law Group LLP
469 Seventh Avenue, 5th Fl.
New York, NY 10018
Office: (646) 766-1723
Mobile: (323) 810-0044
www.seidenlawgroup.com

**SEIDEN LAW GROUP** LLP

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for
the addressee(s) and may contain confidential and/or privileged information and may be legally protected from
disclosure. If you are not the intended recipient of this message or their agent, or if this message has been
addressed to you in error, please immediately alert the sender by reply email and then delete this message and any
attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or
storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护。如您不是正确的收件人，请您立即
通知寄信人并删除本邮件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容


---

**From:** Lybarger, Felisa H. <Felisa.Lybarger@troutman.com>
**Sent:** Tuesday, March 16, 2021 12:08 AM
**To:** Jake Nachmani <jnachmani@seidenlawgroup.com>; Amiad Kushner <akushner@seidenlawgroup.com>;
Andrew Sklar <asklar@seidenlawgroup.com>; Kevin Hughes <kevin@foundationlaw.com>
**Cc:** Goldman, Jeffrey M. <Jeffrey.Goldman@troutman.com>; Crisp, Kevin <Kevin.Crisp@troutman.com>; Kessel,
Alan J. <Alan.Kessel@troutman.com>; Grochow, Lauren <Lauren.Grochow@troutman.com>; Willow-Johnson,
Mackenzie Lee <Mackenzie.Willow-Johnson@troutman.com>
**Subject:** Liu v. Faraday&Future, Inc., et al.

Dear Counsel:

Please see the attached letter.

Thank you,

**Felisa H. Lybarger**
**Legal Practice Assistant**
Direct: 949.622.2750 | Internal: 18-2750
felisa.lybarger@troutman.com

---

**troutman pepper**
5 Park Plaza, Suite 1400
Irvine, CA 92614
troutman.com

---

**A HIGHER COMMITMENT TO CLIENT CARE**

Exhibit 3, Page 26

Troutman Pepper is a 2020 Mansfield Certified Plus Firm

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

Exhibit 3, Page 27

# EXHIBIT 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV20-08035-SVW (JPRx) | Date | April 26, 2021 |
|---|---|---|---|
| Title | Hong Liu v. Faraday & Future Inc. et al. | | |

| Present: The Honorable | Jean P. Rosenbluth, United States Magistrate Judge |
|---|---|

| Bea Martinez | CS 4/26/2021 |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Jacob Nachmani<br>Kevin D. Hughes<br>Amiad M. Kushner | Jeffrey M. Goldman<br>Kevin A. Crisp<br>Lauren E. Grochow<br>Alan J. Kessel<br>Paul B. George |

**Proceedings:** (IN COURT): Telephonic Conference re Plaintiff's Motion to Compel Production of Documents and Determine Urgent Privilege

Case is called. Counsel make their appearances. Court addresses parties. Argument heard.

For the reasons stated on the record at the hearing, the Court rules as follows:

Plaintiff's production ordered on April 15, 2021, must be made by no later than April 29. Plaintiff's expedited motion for determination of urgent privilege issue is GRANTED based on the current state of the pleadings. The production Defendants have agreed to make (see Opp'n at 17-18, 20) must be made by no later than April 30. The rest of the withheld production concerning Liu's employment with Defendants – none of which is shielded by privilege because any such privilege has been waived – must be made by May 5. The Court stays its order concerning the May 5 production until April 28 to allow Defendants to seek further relief and stay from Judge Wilson in whatever form they deem appropriate. If they do not so move by April 28, the May 5 order will stand.

The parties are ORDERED to meet and confer today to try to resolve the broader privilege-waiver issues among themselves and, to the extent they do so, must file an appropriate stipulation by no later than April 28.

cc: Judge Wilson

| | : | 45 |
|---|---|---|
| Initials of Preparer | | bm |

CV-90 (10/08)        **CIVIL MINUTES - GENERAL**        Page 1 of 1

Exhibit 4, Page 28

# EXHIBIT 5

* * UNEDITED REALTIME TRANSCRIPT - NOT CERTIFIED * *

    THIS IS A REALTIME ROUGH DRAFT TRANSCRIPT. IT IS

NOT CERTIFIED BY THE COURT REPORTER.   PURSUANT TO CCP

SECTION 2025(R)(2), IT MAY NOT BE USED, CITED, OR

TRANSCRIBED AS THE CERTIFIED TRANSCRIPT OF THE

PROCEEDINGS. THE ROUGH DRAFT TRANSCRIPT MAY

NOT BE CITED OR USED IN ANY WAY OR AT ANY TIME TO

REBUT OR CONTRADICT THE CERTIFIED TRANSCRIPT OF THE

PROCEEDINGS AS PROVIDED BY THE COURT REPORTER.  BY

ACCEPTING A ROUGH DRAFT TRANSCRIPT, I AM ORDERING A

FINAL CERTIFIED TRANSCRIPT. I AGREE NOT TO SHARE,

GIVE, COPY, SCAN, FAX, OR IN ANY WAY DISTRIBUTE THE

REALTIME ROUGH DRAFT IN ANY FORM (WRITTEN OR

COMPUTERIZED) TO ANY PARTY. HOWEVER, MY OWN EXPERTS,

CO-COUNSEL, CLIENT(S) AND STAFF MAY HAVE LIMITED

INTERNAL USE OF SAME WITH THE UNDERSTANDING THAT I

AGREE TO DESTROY ALL REALTIME ROUGH DRAFTS AND/OR

COMPUTERIZED FORMS, IF ANY, AND REPLACE SAME WITH THE

FINAL TRANSCRIPT AND/OR FINAL COMPUTERIZED FORM, UPON

ITS COMPLETION.

                    --oOo--

THE COURT:  Since we have so many folks here if you can identify yourself before you speak, I would appreciate it.

I obviously haven't had as much time as I might have liked to prepare for this, particularly given that my remote access to my work computer wasn't working over the weekend for whatever reason, but I got here very early this morning and I had prepared on Friday as well. So I feel that I have a pretty good handle on this.

So I thought I would give you my thoughts and then I will hear from whoever would like to speak.

So I understand and appreciate defendants' argument about plaintiff's counsel disqualification, but I am going to ignore that because you haven't filed any such motion which in any event would have to be decided by the district judge.  And my job is just to assess what discovery is warranted in light of the current pleading and the current counsel, I guess I should say. And if you do file such a motion, right now it is speculative but if you do file such a motion, you can always ask the district judge to stay my discovery order, but right now I'm just ignoring that.

The same thing with your arguments about General

Dynamics, that case says that in the situations that you

have outlined those claims have to be dismissed.  Well,

↟

I don't know.  I did glance at some of the prior

motions.  I don't recall seeing that you moved to

dismiss on that basis, but if you had, I think the

district judge must have denied it.  But if you haven't,

then again that's speculative.  That's for the district

judge to decide.

        And if you do file such a motion and/or you got

one pending and the judge grants it, then you can seek

some kind of stay of my discovery order, but right now

I'm ignoring that.

        As to plaintiff's waiver argument, clearly

defense understands because they said they will produce

some of this information.  They do understand at least

to some degree some waiver has taken place.

        So we need to talk about when those documents are

going to be produced, but I have to say I don't think

the waiver is as limited as the defendants are trying to

make it out to be.

        And certain of your counterclaims like fifth and

the sixth counterclaims you are essentially saying that

Mr. Liu did nothing right while he was there, and you

are seeking disgorgement of all funds that you paid to him during his employment, which would seem to me to indicate that you are claiming that he did everything wrong.

So it does seem to me that you can't -- you waive the privilege issue pretty much to everything.  And we can talk about that.  But if you got rid of perhaps your fifth and sixth, and I have to look back at some of the later counterclaims, maybe the waiver would be more limited, but right now it seems to me to be pretty broad.

I don't understand -- and maybe since you folks agreed on it, I must be missing something, but I don't understand why at our last hearing we had to put off when the plaintiff's production that I granted was due, and I didn't see anybody address in their pleadings when plaintiff should have to produce the documents that I previously ordered.  So we can talk about that.

Again, this is what happens when there is a short briefing schedule and we are doing things on the fly, but defendants have made certain arguments about plaintiff flailing to comply with Rule 37.  I thought you had waived any such argument, because plaintiff was going to file an ex parte and then you agreed that you

would not -- you could do something in between an

ex parte and a fully noticed motion which is that you

are agreeing to have this expedited motion briefing

schedule and I made the point that, you know, that

doesn't mean that he didn't create the crisis that is

requiring this expedition.  And I believe that

defendants' counsel said, well, that's true, but we are

agreeing to give that up, you know, we will agree to the

briefing schedule.

        So I think your arguments about Rule 37 and meet

and confer and all that are just out the window because

you agreed to this.  I'm not sure why I agreed to it,

because I spent a lot of time over the weekend working

on this, but in any event that's about -- those are my

conclusions and I'm happy to hear from anybody who wants

to speak.  And please remember to please introduce

yourself.

        I should say one other thing.  I am as I warned

you on criminal duty today and I set this for 8:30

because things don't usually start rolling until later,

but I don't have a ton of time and I'm fairly confident

that in the middle of this hearing I'm going to start

seeing search warrants pile up in my in-box in which

case we are just going to have to be done.

So start talking somebody.

MR. KUSHNER:  This is Amiad Kushner for the
plaintiff if I may just begin and then let defendants
respond.

I think Your Honor has just given some very clear
guidance on our range of issues that were raised in our

motion.  And we appreciate that.

Your Honor has indicated that there has been a
waiver and I think you said it was pretty broad, but
while obviously you know that is plaintiff's position
that we argued for in our motion, I think that what we
would like is to have some definition around that and
some clarity as to the next steps, particularly given
the enormous number of documents that are currently
being withheld.

I would like if I may, Your Honor, I just want to
highlight the issue of documents relating to the
Evergrande relationship which are currently being held
as privileged, because I think this is perhaps the
largest category of documents at issue.

THE COURT:  Just to interrupt you, I do have
specific notes about what I think specifically has
been waived.  I thought I would hear from defendants

first, but I do have down in my notes that, you know,

pretty much anything related to Evergrande is waived.

So go ahead.  I agree with you.

MR. KUSHNER:  Okay.  That's very helpful,

Your Honor.

Does Your Honor have any questions for the

plaintiff at this time?

THE COURT:  Not at this time.  We do need to

talk about when all this stuff is going to be produced

because we are running out of time.

Am I correct that the discovery cutoff was

Friday; is that right?  Or not?

MR. KUSHNER:  Originally the parties agreed on

April 23rd fact discovery cutoff.

As Your Honor recalls, you know, from the last

hearing, you know, we the parties decided that we were

going to submit a proposed stipulation extending the

schedule by three weeks to Judge Wilson.

The parties submitted that stipulation and

extended the fact discovery deadline by three weeks, but

Judge Wilson has not acted on the stipulation.

Although, in the meantime the parties have agreed

amongst themselves that they will abide by the

stipulation with respect to all dates that did not require, you know, direct court involvement.  So we have agreed that the fact discovery cutoff is extended by three weeks.

And to answer Your Honor's question about when plaintiff will complete plaintiff's production, that will be by this Thursday consistent with Your Honor's minute order of April 12th, which contemplated that we would complete it within two weeks of the hearing on this motion -- I'm sorry, the hearing that we had last

time on open the 15th.

THE COURT:  I don't remember that at all, but that's fine if you are going to produce everything by Thursday, I think that's fine.  But certainly if defendants disagree I can hear from them.

You know, maybe it will be helpful before I hear from defendants let me say that your fifth and sixth counterclaims and perhaps some of the other later ones and the fact that you are seeking disgorgement of all funds that you paid Mr. Liu, it does make it seem to me given some of the language I know those are general allegations but they are incorporated by reference in the counterclaims where you are basically saying he did nothing right.

So it seems to me you have waived the privilege
as to his hiring, as to his termination.  You can't make
representations as plaintiff points out about the limits
of what Sidley did without producing discovery for them
to be able to check that that's accurate.

Evergrande waived, Raising and Restructuring
Capital waived, Eve Velosity Suit waived, you know, in
addition to the stuff that you list that you concede
that you waived.

So in my mind there is not a lot -- now, if you
got rid of your fifth and sixth and I would have to look

♠

maybe some of these other later counterclaims, maybe I
would find that the waiver was more limited to this
hiring and firing and Sidley and a couple of other
things but right now those counterclaims still exist so
we could structure some kind of order where you know I
mean obviously I'm going to hear from you first but you
have to produce X discovery unless before that time you
dismiss certain counterclaims.

Anyway, go ahead.  I'm happy to hear from
defendants.

MR. GOLDMAN:  Good morning, Your Honor, this is
Jeff Goldman for the defendant.

So we made clear in our opposition briefing, which of course we had to do on an extremely truncated schedule that the fifth and sixth counterclaims are not all encompassing.  In fact, we stated there we stated in our counterclaims and we are stating now that those claims which are just defensive in nature in response to their improperly filed wrongful termination claim are limited to really five or six instances.

THE COURT:  Well, that's what they say.  I mean, let me find if I can.  In first place you are seeking disgorgement of all funds that you paid him.  Then, No. 5, let me get to it, you re-allege paragraph 1 through 112 and that includes the stuff

that plaintiff quoted about how Mr. Liu did nothing right the entire time he was there I forget the exact language so that includes that and then his conduct during his employment blah, blah, blah and then you are seeking disgorgement of all funds.  Since you reincorporate those allegations I don't see how it doesn't cover everything.

But go ahead.

MR. GOLDMAN:  Sure.  With respect to the fifth cause of action we don't seek disgorgement of all funds if the Court finds the employment history is

enforceable and not void, we plead that defendant has
been damaged by those breaches of his fiduciary duties
and are not to be proven at trial and that's because
we have specifically enumerated what those breaches
are in the complaint, his failure to lead us to an IPO
his failure to connect my client to any investment
bank with respect to Evergrande all we pleaded
specifically in the complaint that he has done is
failed to assist my client when his series A investor
Evergrande backed out of its funding commitment.

        We specified that he failed to provide legal
advice with respect to one particular piece of
litigation he failed to provide substance legal advice
on vendor concerns regarding indemnification.

♠

        THE COURT:  Before you list all this stuff, can
you respond to my question about you have incorporated
by reference into counterclaim five and counterclaim
six every preceding allegation which includes the
language that plaintiff quoted -- I can find if you
want me to -- about how basically everything Mr. Liu
did was wrong.  So how is that not all encompassing?
        MR. GOLDMAN:  Well, because of the principle
that the specific controls the general Your Honor.

We provided federal authority state authority and secondary authority to the proposition that if there is a general allegation within the complaint that it is specifically limited by specific allegations in misconduct.

THE COURT:  But does that apply when you incorporate by reference a paragraph that says he did nothing right?

I mean, counterclaim five and six are very nonspecific.  They don't say specifically what you are alleging he did wrong.

Now you are listing off all these things that you say are what five and six are about but that's not what five and six say what five and six say we incorporate by reference everything that came before this.

If you want to seek leave to amend you can make

five and six more specific, but right now they are basically hopelessly broad.

MR. GOLDMAN:  Your Honor, we are happy to stipulate to amend the complaint to limit it to just these allegations that we pointed out in paragraphs 50 through 66 which are also incorporated into these causes of action.

The intention here was not to have an all

encompassing he did everything wrong so everything is fair game counterclaim.

The intention was in response to the improperly filed wrongful termination claim which required us to prove legitimate reasons why he was terminated if it survives to identify the specific things that he did wrong in breach of the contract and breach of fiduciary duty.

THE COURT:  Maybe that was your intention but I'm an objective reader and I've got to say plaintiff's interpretation is not unreasonable.

MR. GOLDMAN:  I think that it is unreasonable in light of the specific controlling the general.  As I said Your Honor, we are willing to amend the complaint to limit it to just these breaches as opposed to saying everything is at issue.

THE COURT:  That's fine and you can take

♠

whatever steps you want to do that but like as with your general dynamics and your arguments about counsel, right now that's just speculation and I'm not in charge of that the district judge is.

So my discovery rulings has to be based on what the pleadings say now and what the state of the case is

now and then to the extent it changes, you can seek from either me or the district judge a modification of any order that I make.

So right now -- but, you know I think if you wanted to incorporate into counterclaim five only paragraph 50 through whatever, then that's what it should say.  It shouldn't say that it incorporates by reference every other paragraph as well.

MR. GOLDMAN:  Okay.  Your Honor I understand your point and what I would ask is that any discovery order be held in abeyance because we are going to go on an ex parte on an application to amend to make sure that the complaint is consistent with what I just said because we are on a very truncated schedule.  We have a trial June 8th and we are going to have to get that at least before your order for production of documents.

THE COURT:  I am fine to give you a very short stay, but I'm not going to -- and I think -- maybe I'm

wrong but isn't there a pending motion by plaintiff to dismiss your counterclaim.

MR. GOLDMAN:  There is which is yet another reason why this discovery motion is premature because if it is successful well, his claims are out.

THE COURT:  Right.  And because you have agreed although we haven't done it yet you have agreed to produce some discovery it is also a little premature in that sense but you know plaintiff is on good ground because time is running out here as you just said yourself and they need this stuff from you.

Let me ask you this as to the documents that you have agreed to produce, the stuff that you have outlined that you agree that you have waived the privilege, when can you produce that?

MR. GOLDMAN:  We can produce -- and Ms. Grochow is on the line and she can correct me, but I think we can produce that within the next couple of days.

MS. GROCHOW:  I would ask by the end of the week.  I'm sorry.  If by the end of the week, please.

THE COURT:  All right.  So defendants' production of the privileged material they have agreed to produce and, I think it is listed somewhere, must be completed by Friday, whatever that is April 30th or whatever.

Okay.  And then I think at this point, though, I am going to make a broader order concerning what you have to disclose, but I will stay that order for how

long would you like it stayed?

　　　MR. GOLDMAN:  I suppose we need it stayed until there is either a stipulation reached by opposing counsel about the scope of our amendment or a ruling on our application to the Court.

　　　THE COURT:  What I am willing to do is to stay it until you file such a motion and in that motion you need to ask Judge Wilson for a stay, because Judge Wilson, he likes to keep things moving.  Maybe he will grant you a firmer say, but I want to interfere with his schedule as little as possible.

　　　So I will give you X days to file that motion, but then that motion has to include a request from him for any further stay or something like that, because I'm not going to give you some stay that goes on until he rules on your thing.  I'm just not going to do that yet.

　　　So by when do you think you can file your motion?

　　　MR. GOLDMAN:  Let's see, I think that we can get the motion on file again by the end of the week by the 30th, I guess assuming that meets the meet and confer requirement.  We can have it filed by the 30th if that's agreeable to the other side.

　　　THE COURT:  Let me ask them.

　　　Mr. Kushner or someone else or Mr. Hughes, is

that all right with you?

MR. KUSHNER:  This is Amiad Kushner thank you,
Your Honor.

We think the end of the week it is just too long.
As Mr. Goldman indicated, we have a trial date of June
8th.  There is ten depositions that were noticed and
then taken off calendar because of this privilege issue.
I think Your Honor's order -- what you said on the
record today is pretty clear.  I think that their
argument against the waiver just lacks merit, you know
if they want to solve this problem they can drop the
counterclaims right now on the record and allow us to
keep moving with this case.

A further delay is not warranted.  I think until
the end of the week to put in a motion on issues that
have already been extensively briefed before Your Honor
and when we have all these depositions that need to
occur, it is just too long.

THE COURT:  How about until Wednesday?  Because
I've got to say I dropped everything to do this for
you folks.  So I appreciate plaintiff's arguments.

So how about I give you three days, Mr. Goldman,
until Wednesday?

MR. GOLDMAN:  Obviously we would like more time
but if that's your inclination, Your Honor, we will
abide by it.

THE COURT:  All right.  Thank you.  All right.

And, you know, obviously -- so what I am
contemplating doing is finding that defendants have
waived the privilege entirely as to the course and scope
and actions of Mr. Liu's employment with them based on
these counterclaims.  And I'm going to set a date for --
you've already said defendants are going to produce the
stuff they have agreed to produce by April 30th, but I'm
going to set something for the rest of the production.

If defendants don't file any motion to amend the
counterclaims by Wednesday, then that date will stay in
effect, but if they do file it, then that should include
a request of Judge Wilson to, you know, extend the stay
and you can put in there that I said to do it that way,
that I was only willing to stay it until Wednesday and
then you have to seek a further stay from him.

So by what date then -- and I understand -- I
know plaintiff is going to say it should be as soon as
possible, but I want to give Judge Wilson a chance to
consider defendants' stay a request from him.  So what
if I -- stay a request to him.

So what if I set the date for the rest of the

privileged production to be whatever a week later on April 30th is May whatever unless Judge Wilson grants the stay.

So I would make that May 7th.  So that's what I intend to do.

Does anybody want to speak to that?

MR. KUSHNER:  This is Amiad Kushner again.

I think if you are saying that all the documents currently being withheld is privileged need to be produced by May 7th --

THE COURT:  I kind of don't know.  What defense has already agreed to produce that is privileged which there is a fair amount of it, they are going to produce by April 30th.  Actually, what I meant to say I'm sorry then I'm going to set a date for May 5th for the rest it not May 7th that will give Judge Wilson a week to rule any request they make of him to stay it further.

MR. KESSEL:  Your Honor, this is Alan Kessel. I'm a little bit confused insofar as it appears that plaintiff's counsel is unwilling to stipulate to the prescribed limitation on the fifth and sixth counterclaims and I just want to A confirm that and B understand the basis for it because particularly with

their motion to dismiss pending.  I don't see any reason

why everyone is running into court on an ex parte basis

or otherwise when we can limit the claim by stipulation

and then the Court can rule on their motion to dismiss.

I mean, we are asking for something that should be

agreed to.

      THE COURT:  You guys can meet and confer after

this call if you want to talk about that and if they

agree to it, then you can file something but I don't

have time right now to get into what is essentially a

meet and confer on the phone I understand your point

so what I will do I will order you folks to meet and

confer you know later today about that proposal, but

right now I need to set some dates.  And I have to get

off the phone I'm sorry but I have duties.

      So let's just talk about if you have to you are,

going to either --

      (Paul George has left the conference).

      THE COURT:  Okay.

      I'm going to order you to meet and confer today

concerning amending the counterclaim.  If you can't

agree, then your motion to amend has to be filed by the

30th before Judge Wilson -- I'm sorry, by the 28th

before Judge Wilson in which you would have to seek a

further stay of my order that the stuff you agreed to

produce has to be produced by April 30th and the rest of

the privileged stuff you withheld as privileged would

have to be produced by May 5th unless Judge Wilson

grants a further stay.

        MR. GOLDMAN:  So are you envisioning then if

there is an ex parte application for a stay because if

plaintiffs were not to stipulate to what we are

talking about which seems to being you know patently

unreasonable but be that as it may, the motion would

be pending before Judge Wilson I guess you are saying

it has to be on an ex parte basis and if so can we

represent that to the Court?  Because if it is on

regular notice or anything other than on an expedited

basis there is no way it is going to be determined by

May 5th.

        THE COURT:  I have to tell you that this is not

that unusual when people are going to seek a review

which is essentially what's happening of a magistrate

judge's discovery order they will often times ask for

a stay and often times the magistrate judge will give

a stay for a limited time and then you have to seek a

further stay from the district judge.

I'm not going to tell you how to run your lawsuit but if plaintiff doesn't stipulate to an amendment of the counterclaims, then you are going to have to file some kind of motion or ex parte or whatever you think is

appropriate and you can do it as one document or two before Judge Wilson that seeks to amend the counterclaims and that seeks a stay of my discovery order.

MR. GOLDMAN:  And one --

Go ahead.

MR. GOLDMAN:  One further clarification if we were to drop just hypothetically the fifth and sixty counterclaims is it the court's opinion that no further production is required?

THE COURT:  I would have to look a little more carefully.  I remember reading and thinking up to the fifth counterclaim that I agreed with you but then I -- let me just look real quickly.  So it seems to me that the earlier counterclaims are about his engagement, his employment.  And I don't agree that it is quite as limited as you think it is to those counterclaims because I do think that they have a right to get the discovery concerning Sidley and I do

think they have a right to also get the stuff about
his termination.

But let me look.  So that's the first four.  And
then the fifth is much broader.  And the sixth is much
broader.  So that's back to the employment contract.
That's more about the employment agreement as well.

♠

So I would say that it is really the fifth and
the sixth counterclaims that would need to be dropped.
And then I would think that the scope of the waiver is
broader than you contend but less than everything.

MR. GOLDMAN:  Broader in what sense?

THE COURT:  Like I just said that I think that
they have a right to the stuff concerning Sidley and I
think that they have a right also to any privileged
stuff concerning Mr. Liu's termination because to my
mind that goes to -- could go conceivably to also
encompass what he was hired to do, why he was being
fired, what you think he hasn't done et cetera
et cetera.

So that to me then anything about his termination
book ends would be the employment agreement.

MR. KUSHNER:  This is Amiad Kushner again.

Defendants' counsel is now raising hypotheticals
about what might or might not happen if they might or

might not drop claims.  I think they are asking for an advisory opinion impermissibly.

If they withdraw claims, we can deal with that but at the moment all the counterclaims are there at the moment they are blocking discovery of materials that Your Honor has noted they have waived through their counterclaims.

THE COURT:  Right.  Wait, I need to get off the phone.  So it is clear to me that you folks need to meet and confer.  You need to figure out what you are going to do about this.

And again, we can't go into all this right now, but if defendants drop claims five and six, I'm happy to define what I then think is the scope of the waiver of the privilege would be, but I'm going to set dates but I need to wrap this up unfortunately.

MR. KESSEL:  Your Honor Alan Kessel.  One last question.

If we stipulate or get a ruling from Judge Wilson that limits counterclaims five and six the way that we have delineated both in the complaint and in the opposition, can we also come back to you to in that sense to further define what's required to be produced

on our end?

THE COURT:  You can.  But I don't feel that I have much else I can do other than set some dates before Judge Wilson rules.

For all I know he is going to issue an order today on plaintiff's motion to dismiss the counterclaims.  I just don't know.  So a lot of moving parts.  I can only do -- as the plaintiff is correct, I can only rule on what's before me now and then if things

change based on what Judge Wilson does please call free to call Ms. Martinez.

But be mindful, please, that we work with all the district judges and we all have different ways of doing things.  I am going to be reluctant to issue any kind of order that, you know, more than minimally interferes with schedules that Judge Wilson has set.  So just keep that in mind.

So here's what I'm going to do here's what I am going to do so first the plaintiff previously ordered production all of it must be completed by this Thursday, which is April 29th.

The privilege waiver production that defendants agreed to in their filing must be completed by April 30th.

If defendant filed some -- my order about -- look I'm, sorry, I'm getting ahead of myself.

The production of all other stuff being withheld as privileged concerning anything relating to Mr. Liu's employment with defendants is due by May 5th.  I'm staying that order until April 28th for defendants either to -- well, you folks are ordered to meet and confer either today or tomorrow -- well, I will say today.  You are ordered to meet and confer today.  And if you can reach some sort of agreement about amending

♠

the counterclaims, fine.  You have to get that on file before Wednesday.  If you can't, then defendants have until Wednesday to file something before Judge Wilson that they deem appropriate seeking a further stay and seeking to amend the counterclaim.

I should also say, too, you know under whatever it is Local Rule -- I'm sorry, I can't remember what it is off the top of my head, but you can seek review of my order entirely before the district judge.  That rule gives you 14 days to do that, but you would have to do it earlier, because I am -- given the late stage of these proceedings, I'm setting dates that fall before that.

Again, I'm not telling you what to do but that's another option for you.  And if Judge Wilson issued some kind of ruling somewhere along the way that you think would change how I dealt with this stuff, you can call up Ms. Martinez and we can try to set something but again, I am going to be hesitant to do anything that interferes with his schedule and by that when I extend things out to produce discovery, that essentially interferes with his schedule.

So is that clear?

And I will say too and again plaintiff is right this is sort of advisory at this point but if you drop

the fifth and sixth counterclaims entirely, it would seem to me that the waiver of the privilege would be more limited and it would be broader than -- again broader than defendants conceded it would be the stuff they already concede plus anything from Sidley relating to you know how Mr. Liu was hired and the employment agreement and anything relating to his termination.

All right.

MR. GOLDMAN:  This is Jeff Goldman just two points of clarification please before we get off.

THE COURT:  Sure.

MR. GOLDMAN:  With respect to the documents

that are on the privileged log that will be produced
in the event we don't reach a stipulation or dismiss
our claims, we just want to make clear that the
privilege log has a lot of documents that don't really
relate to Liu but are between other people.  So it is
not everything, it is just stuff that relates to Liu.

        THE COURT:  Right.

        MR. GOLDMAN:  So it is not everything, it is
just stuff that relates to Liu?

        THE COURT:  Yes, I was trying to say that.  I
maybe wasn't very articulate.

        MR. GOLDMAN:  I just wanted to make it clear
that's all.


        With respect to Sidley we would strongly contest
that that's been waived.  The internal communications
between my client and Sidley are not waived.

        All that's been produced in this case about text
messages between Mr. Liu and the lead negotiator for our
client with respect to the negotiation of the employment
agreement and while certain topics were identified as to
what was under review, certainly the content was never
disclosed nor the content of the defense to any other of
the causes of action.

THE COURT:  You have represented and plaintiff quoted these portions I would have to find it but you have represented that Sidley said this or Sidley only did that, whatever, they have a right to test that, so you can't make representations and say all Sidley did was this.  They get to see what your communications were with Sidley at the time to make sure that's accurate.

MR. GOLDMAN:  This is Jeff Goldman.

The representations that were made were descriptions of the text messages that were produced.  We agree that the text messages are fair game leading up to the negotiation, but the substance of the conversations those are privileged.  That has not been waived in any respect.

THE COURT:  Why not?  I don't understand why not.

MR. GOLDMAN:  Because there is a difference between the subject matter and the content.  If we told Mr. Liu for example, hey I sent the agreement to Sidley they are looking at it for one issue.  That doesn't mean you get to say okay let me see what Sidley's legal advice was on that issue.  It means I guess the fact that it was being sent is at issue but

it is not really relevant to the claim because any
advice and the fact of the communication is not a
defense to the claims that we brought for Mr. Liu's
ethical violations.

        THE COURT:  But why is it not because you are
saying he violated all sorts of ethical stuff what if
your communications with Sidley include Sidley saying
oh no this wouldn't be an ethical violation I don't
know.

        MR. GOLDMAN:  Because Sidley's advice about
whether something is or is not an ethical violation
even assuming that exists is irrelevant as to whether
Mr. Liu gave the proper disclosures before he got
consent it is an objective standard.

        THE COURT:  Well, I am not sure I think it is
irrelevant you are very right that maybe it is

inadmissible, but that's different.

        MR. GOLDMAN:  Well, it is privileged.

        THE COURT:  But it is a question whether you
waived that privilege because you are asserting that
in the employment contract Mr. Liu violated all sorts
of ethical cannons.

        He claims that he told you or it wasn't in

writing I guess but he said or somebody said we are

going to get Sidley to look this over and decide you

know whether the employment -- if there's any conflict

et cetera.  And so it seems to me that he has a right to

know and that you by claiming that he violated all these

ethical rules including that he didn't put in writing

that you should get some outside counsel to look at it

or whatever, that he has a right to see what went on

between you and Sidley that you waived that privilege.

MR. GOLDMAN:  Your Honor this is Jeff Goldman

again.

It is not a waiver and it is not relevant he is

the one that produced the text messages and decided to

include them in the motion to the Court this is the

problem with doing all this on a truncated notice.  He

is the one that provided those communications to the

court to show that there was communications discussion

with Sidley.  It is not a defense to anything.

THE COURT:  I've got to go.

Plaintiff is right that right now this is all

advisory because I am finding that all of the privilege

is waived based on the fifth and sixth counterclaims.  I

can't decide this issue right now.  I've got to say I

tend to think you are wrong right now it is advisory

anyway.  If something happens you need to come back to me on that one limited issue we can do that but I'm still leaving those dates for production in place so if you come back to me in five days because you guys have stipulated or you have dismissed your counterclaims or they have been amended or whatever and I take up this issue, I'm still leaving that May 5th date.

So even if I don't get you on the phone until May 3rd if I find that you are wrong, you are going to have to produce by May 5th.  All right?

MR. KUSHNER:  Thank you, Your Honor.

MR. GOLDMAN:  Thank you, Your Honor.

THE COURT:  All right.  Okay.  Let me just look at my notes to make sure there is nothing else.  And please if I have not covered something that I should have, please let me know, but I think I have covered everything and I'm sorry to rush you folks along all right so nothing further from anyone?

MR. GOLDMAN:  No, Your Honor not for the

defendants.

THE COURT:  All right thank you, we will get the order out as soon as we can.

MR. KUSHNER:  Thank you, Your Honor.

MR. GOLDMAN:   Thank you, Your Honor.