ALAN J. KESSEL, Bar No. 130707
alan.kessel@troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendant
SMART KING LTD. and Defendant and
Counterclaimant FARADAY&FUTURE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 2:20-cv-08035-SVW-JPR<br><br>**DISCOVERY MATTER**<br><br>The Honorable Jean P. Rosenbluth<br><br>**FARADAY & FUTURE INC. AND SMART KING LTD.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MODIFYING APRIL 26, 2021 ORDER RE: PRIVILEGE ISSUES IN LIGHT OF THEIR (1) DISMISSAL OF THE FIFTH AND SIXTH COUNTERCLAIMS; AND (2) PROPOSED DISMISSAL AND AMENDMENT OF CERTAIN AFFIRMATIVE DEFENSES**<br><br>[Filed concurrently with [Proposed] Order]<br><br>Date:　April 29, 2021<br>Time:　2:30 p.m.<br>Place:　Courtroom 690 |

115537485

## **TABLE OF CONTENT**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 4

    A.   Governing Law Prohibits the Disclosure and Use of FF's Privileged Information Based Upon FF's No Retaliation Defense ................................................................................................... 4

    B.   Governing Law Similarly Prohibits the Disclosure and Use of FF's Privileged Communications with Sidley Austin LLP to Prosecute the Complaint's Breach of Contract Claim .......................... 8

    C.   FF Has Not Irrevocably Waived the Attorney-Client Privilege ......... 10

III.  CONCLUSION ................................................................................................ 14

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    306 F.R.D. 234 (N.D. Cal. 2015) .................................................................. 8, 13

*Apple Inc. v. Samsung Electronics Co. Ltd* , No. 11-CV-01846-LHK,
    2015 U.S. Dist. LEXIS 80954 (N.D. Cal. June 19, 2015) ................................ 13

*BGJ Associates v. Wilson*,
    113 Cal. App. 4th 1217 (2003) .......................................................................... 9

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) ............................................................. 4, 7, 10, 14

*Degenshein v. 21st Century Toys, Inc.*,
    A111446, 2007 Cal. App. ................................................................................. 7

*Emplrs Ins. of Wausau v. Granite State Ins. Co.*,
    330 F.3d 1214 (9th Cir. 2003) ........................................................................... 6

*Fox v. Cal. Sierra Fin. Servs.*,
    120 F.R.D. 520 (N.D. Cal. 1988) ...................................................................... 8

*Fox v. Cnty. of Tulare*,
    No. 1:11-CV-00520-AWI-SMS, 2013 U.S. Dist. LEXIS 139949
    (E.D. Cal. Sept. 23, 2013) ................................................................................. 8

*General Dynamics Corp. v. Super. Ct.*,
    7 Cal. 4th 1164 (1994) ............................................................................. *passim*

*Held & Hines LLP v. Hussain*,
    No. 16-cv-5273 (JSR)(SN), 2018 U.S. Dist. LEXIS 129210
    (S.D.N.Y. July 31, 2018) ................................................................................ 10

*IGT v. All. Gaming Corp.*,
    No. 2:04-cv-1676-RCJ-RJJ, 2007 U.S. Dist. LEXIS 62395 (D. Nev.
    Aug. 20, 2007) ............................................................................................... 2, 7

*Int'l Rectifier Corp. v. IXYS Corp.*,
    No. CV-00-6756-R, 2002 U.S. Dist. LEXIS 27253 (C.D. Cal.
    Apr. 1, 2002) ........................................................................................... 8

*Life Techs. Corp. v. Super. Court*,
    No. A136187, 2012 Cal. App. .................................................................. 7

*Loggins v. Kaiser Permanente Int'l*,
    151 Cal. App. 4th 1102 (2007) ................................................................. 2

*Natural-Immunogenics Corp. v. Newport Trial Group*,
    No. SACV 15-02034, 2018 U.S. Dist. LEXIS 205686 (C.D. Cal.
    June 12, 2018) ......................................................................................... 8

*Odish v. Cognitive Code Corp.*,
    No. CV 12-9069 FMO, 2015 U.S. Dist. LEXIS 68630 (C.D. Cal.
    May 27, 2015) ......................................................................................... 9

*Olivo v. City of Vernon*,
    No. B213984, 2010 Cal. App. .................................................................. 5

*Rockwell Int'l. Corp. v. Super. Ct.*,
    26 Cal. App. 4th 1255 (1994) ................................................................. 10

*Rutgard v. Haynes*,
    185 F.R.D. 596 (S.D. Cal. 1999) ............................................................ 10

*Solin v. O'Melveny & Myers LLP*,
    89 Cal. App. 4th 451 (2001) ..................................................................... 6

*Wash. v. Cal. City Corr. Ctr.*,
    871 F. Supp. 2d 1010 (E.D. Cal. 2012) .................................................... 6

Defendant Smart King Ltd. ("**Smart King**") and Defendant and Counterclaimant Faraday&Future Inc. ("**Faraday**") (collectively, "**FF**"), respectfully submit the following Supplemental Brief in support of their request that the Court modify its April 26, 2021 Order regarding the alleged waiver and production of FF's privileged information in this action (the "**April 26 Order**"):

## I. INTRODUCTION

A "retaliatory discharge claim" asserted by in-house counsel "may not proceed" and "must be dismissed" if it is "incapable of complete resolution without breaching the attorney-client privilege." *General Dynamics Corp. v. Super. Ct.*, 7 Cal. 4th 1164, 1170, 1190 (1994). In patent violation of that fundamental precept, Plaintiff and Counterdefendant Hong Liu's ("**Liu**") Complaint's Fourth Cause of Action for Wrongful Termination is exclusively premised on the allegation that FF terminated Liu in retaliation for his reporting "compliance issues and violations of law" to FF management in his capacity as Faraday's Global General Counsel (the "**Alleged Compliance and Legal Issues**"), thereby placing those privileged communications (as well as FF's other privileged information concerning the Alleged Compliance and Legal Issues) at the heart of Liu's discharge claim.[1]

In a transparent attempt to avoid the legally required dismissal of his prohibited wrongful termination claim sought in FF's pending summary judgment motion ("**MSJ**"),[2] Liu now contends that FF cannot defend itself against that claim based on

---

[1] *See* Dkt. No. 1-1 [Compl.] at ¶ 5 (alleging Liu was "stripped of his authority and then terminated" because he "proactively took steps to ensure Faraday's compliance with applicable law, including by seeking [internal] investigations"); ¶ 63 (admitting Liu had responsibility for "overseeing a wide range of sensitive regulatory and compliance matters" as in-house counsel); ¶ 69 (alleging Liu "repeatedly advised" FF to cease "illegal, discriminatory" behavior and "worked with and directed Faraday's legal department" in that regard); ¶ 71 (alleging Liu directed the FF "legal department" to "investigate complaints"); ¶ 75 (alleging Liu "actively instructed the legal department to issue memoranda and other communications" regarding FF's legal compliance); ¶ 83 (quoting Liu's letter to management accusing FF of retaliating against him for "directly express[ing] [his] views . . . on how to best comply with laws"); ¶¶ 132-133 (alleging Liu was terminated in retaliation for reporting "serious compliance issues and violations of law").

[2] *See* Dkt. Nos. 131-1 [MSJ].

any aspect of his job performance without simultaneously effectuating an unlimited, wholesale waiver of the attorney-client privilege, including as to the Alleged Compliance and Legal Issues. As detailed below, Liu's remarkable proposition that FF is prohibited from even availing itself of the most quintessential wrongful termination defense—a non-retaliatory reason for discharge[3]—absent the waiver and disclosure of *all* of its privileged information, cannot withstand legal or factual scrutiny. That is particularly true where:

1. Faraday stipulated to the dismissal of the Fifth and Sixth Counterclaims alleged in its Second Amended Counterclaim ("**SACC**")[4] in response to the Court's stated concerns at the April 26 hearing that those claims could be read as broadly implicating Liu's entire job performance (the "**Job Performance Counterclaims**"), rather than just the enumerated matters specified in Paragraphs 55-59, 61, 65-66, and 69-70 of the SACC;[5] and where

2. FF further is prepared to stipulate to the dismissal and amendment of certain Affirmative Defenses, as reflected in **Exhibit A** attached hereto, in response to Liu's completely new contention that those defenses supposedly "put at issue the entirety of [his] performance while employed by FF," and allegedly "waive[] the privilege as to all attorney-client communications concerning [his] employment."[6] Specifically, FF is prepared to:

- Dismiss its respective 7th, 11th, 19th, 21st, and 27th Affirmative Defenses for Breach of Fiduciary Duty, Breach by Plaintiff, Equitable Estoppel,

---

[3] *See, e.g., Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109-1110 (2007) ("When a plaintiff alleges . . . a claim for wrongful termination in violation of public policy . . , the plaintiff must show that" he was terminated for engaging in protected activity, and *"the burden [then] shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action."* (emphasis added)).

[4] *See* Dkt. No. 130 [Stipulated Dismissal with Prejudice of Certain Counterclaims].

[5] Faraday further stipulated to the dismissal of the SACC's Eighth Counterclaim for declaratory judgment to the extent it sought declaratory relief based upon the Fifth and Sixth Counterclaims. (*Id.*)

[6] *See* Liu's Supplemental Memorandum ("**Supp. Memo.**") at pp. 3:23-6:2.

Intervening/Supervening Cause, and Breach of the Implied Covenant of Good Faith and Fair Dealing, which arguably implicate Liu's overall general job performance at FF;

- <u>Strike</u> the portions of its respective 20th and 22nd Affirmative Defenses for Failure of Condition Precedent and Unclean Hands, objected to by Liu;[7]

- <u>Amend</u> its 5th Affirmative Defense for Reasonable, Good Faith, Non-Discriminatory, and Non-Retaliatory Termination (the "**No Retaliation Defense**") to further clarify and confirm that FF only seeks to establish it terminated Liu *exclusively* for the following non-retaliatory reasons specifically alleged and enumerated in Paragraphs 55-59, 61 and 65-66, and 69-70 of the SACC:  Liu's (i) failure to lead FF to an IPO; (ii) failure to connect FF with investment banks; (iii) failure to assist FF when its Series A investor, Evergrande Health Industry Group ("**Evergrande**") backed-out of its funding commitment; (iv) failure to provide substantive advice as to the EVelozcity litigation, vendor concerns regarding indemnification, the records of internal FF meetings, and a potential reduction in FF's workforce; and (v) harassment of FF's equity incentive program manager and threat to fire FF's outside legal counsel when it declined to provide him with grants at improper exercise prices (the "**Enumerated Failures**"); and ***not*** for Liu's failure to satisfactorily perform any of his *other* job responsibilities at FF; and

- <u>Retain</u> each of its other Affirmative Defenses in their current form, consistent with their omission from the list of Affirmative Defenses identified in Liu's Supplemental Memorandum.[8]

---

[7] *See* Supp. Memo. at p. 5:3-8 and 15-17.

[8] Although Liu also identifies FF's 8th Affirmative Defense for Rescission Based on Breach of Fiduciary Duty as allegedly problematic to the extent it is premised on the same conduct implicated by the No Retaliation Defense, FF's proposed amendment to its No Retaliation Defense reconfirming its limited scope eliminates any

1   Under these circumstances—and consistent with governing Ninth Circuit law prohibiting the Court from imposing any waiver of the privilege without first specifically defining "the contours of the waiver" and "letting [the holder of the privilege] know how much of the privilege he must waive in order to proceed with his claim," *Bittaker v. Woodford*, 331 F.3d 715, 719-721 (9th Cir. 2003)—FF respectfully requests that this Court (1) define the scope of any waiver in light of FF's dismissal of its Job Performance Counterclaims and its proposed dismissal and amendment of the above-listed Affirmative Defenses; and correspondingly (2) modify the April 26 Order to clarify that, if FF dismisses and amends its Affirmative Defenses as described herein and as reflected in Exhibit A hereto, FF will have waived the privilege, and will be required to produce privileged information, only as to Liu's Enumerated Failures.

## II.  ARGUMENT

### A.  Governing Law Prohibits the Disclosure and Use of FF's Privileged Information Based Upon FF's No Retaliation Defense

Governing California state and federal court law are clear that the Court cannot broadly compel the disclosure and authorize Liu's use of FF's privileged information to prosecute the Complaint's wrongful termination claim solely by virtue of FF's interposing a standard No Retaliation Defense based upon Liu's Enumerated Failures—all of which are unrelated to the Alleged Compliance and Legal Issues underlying Liu's discharge cause of action.

**First**, as held by the California Supreme Court in *General Dynamics*, an in-house counsel's claim for wrongful termination not only "must be dismissed in the interest of preserving the privilege" when it "is incapable of complete resolution without breaching the attorney-client privilege[,]" but also entitles "*the defendant employer . . . to challenge plaintiff's claim by demonstrating the discharge was*

---

conceivable need to modify FF's 8th Affirmative Defense.

*motivated by [lawful] reasons*[.]" *See* 7 Cal. 4th at 1170, 1190, 1192 (emphasis added). Consistent with those holdings, nothing in *General Dynamics* remotely suggests, let alone mandates, that an employer broadly waives the attorney-client privilege simply by availing itself of the core defense in every wrongful termination case—namely, a non-retaliatory justification for the challenged employment action. To the contrary, any such rule would eviscerate *General Dynamics'* explicit prohibition against "retaliatory discharge claim[s] . . . [that] unduly endanger[] the values lying at the heart of the professional [attorney-client] relationship[,]" by enabling every in-house counsel alleging wrongful termination to force its former employer to make the Hobson's choice of either (i) mounting a defense based on counsel's job performance and wholesale waiving the privilege, or (ii) being left unable to defend itself in order to preserve its privilege. *Id.* at 1169. As evident from its explicit *recognition and confirmation* of an *employer's* ability to "always . . . challenge [a] plaintiff's claim by demonstrating" a lawful reason for termination, *id.* at 1192, the California Supreme Court clearly did not intend to vest in-house counsel with this significant strategic *advantage* unavailable to non-attorney plaintiffs in retaliatory discharge cases. *Id.* at 1189 (holding that a "lawyer's high duty of fidelity to the interests of the client work <u>against</u> a tort remedy [for wrongful termination] that is coextensive with[,]" let alone greater than, "th[e] [remedy] available to the nonattorney employee" (emphasis added)).

**Second**, courts interpreting and applying *General Dynamics* further recognize that dismissal similarly is required when an employer is unable to fairly "mount[] its defense" to an attorney's claim without disclosing privileged information. *Olivo v. City of Vernon*, No. B213984, 2010 Cal. App. Unpub. LEXIS 6018, at *24, *43 (July 29, 2010) (affirming the dismissal of in-house counsel's claim that he was wrongfully terminated for internally disseminating a privileged report concerning "illegal activity" and "unethical conduct" where "the contents of the [privileged] Report"

were necessary for "the employer to "mount[] its defense.");[9] *see also Solin v. O'Melveny & Myers LLP*, 89 Cal. App. 4th 451, 454, 457, 466-67 (2001) (affirming dismissal under *General Dynamics* where defendant "could not effectively defend" attorney's lawsuit without privileged information).

Consistent with that governing law, FF's MSJ seeks judgment on Liu's wrongful termination claim under *General Dynamics* because the prosecution and defense of that cause of action indisputably necessitate the public disclosure of FF's privileged information concerning the Alleged Compliance and Legal Issues.[10] *Separately, however, FF also has pleaded a standard No Retaliation Defense, which FF did not raise in its MSJ, but nonetheless will be required to pursue in the event Liu's termination claim survives summary judgment.* As stated earlier and reflected in Exhibit A hereto, FF is prepared to amend its No Retaliation Defense to again confirm it is exclusively based upon and limited to Liu's Enumerated Failures.

Under these circumstances, it would turn *General Dynamics* on its head to impose a sweeping waiver of the privilege and compel FF to disclose all of its privileged information—including as to the Alleged Compliance and Legal Issues—merely because FF has reserved its right to admit evidence showing that Liu was discharged because of the Enumerated Failures having nothing to do with those Alleged Legal and Compliance Issues. Indeed, such a ruling would constitute an impermissible end-around *General Dynamics'* express prohibition on the use of privileged information to prove "the elements of a wrongful discharge claim." *See* 7 Cal. 4th at 1189-1190. That is particularly true where *General Dynamics* further expressly recognized that, "whether the privilege serves as a bar to the plaintiff's recovery will be litigated and determined" at "the time of a motion for summary

---

[9] The Court may consider and rely on unpublished California decisions. *Emplrs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); *Wash. v. Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028 (E.D. Cal. 2012).

[10] *See* Dkt. No. 131-1 [MSJ] at pp. 7:18-10:17, 19:9-24:21; *see also* Dkt. No. 1-1 [Compl.] at ¶¶ 5, 63, 69. 71, 75, 83, 132-133.

judgment," rather than "at the [pleading] stage[,]" thereby requiring the defendant employer to assert and pursue affirmative defenses prior to that time. *Id.* at 1190.

**Third**, to the extent FF's No Retaliation Defense conceivably places privileged information at issue, both California and Ninth Circuit law mandate that any resulting waiver of the privilege be narrowly limited to the Enumerated Failures specifically and actually alleged in support of that defense. *See Degenshein v. 21st Century Toys, Inc.*, A111446, 2007 Cal. App. Unpub. LEXIS 3486, at *16-17 (Apr. 30, 2007) (holding that employer's assertion of unclean hands defense implicating in-house counsel's breach of ethical duties during his employment did not give in-house counsel "the right to" violate *General Dynamics* and "use privileged materials . . . to prove his [wrongful termination] case in chief."); *see also, e.g., Life Techs. Corp. v. Super. Court,* No. A136187, 2012 Cal. App. Unpub. LEXIS 8313, at *1 (Nov. 14, 2012) (partially reversing order finding a waiver of the privilege based on employer's answer to in-house counsel's wrongful termination claim that "put [counsel's] performance at issue[,]" and holding that any waiver was required to be "careful[ly] limit[ed]" to "criticisms" of the plaintiff and "to understand[ing] the supervision and evaluation of [plaintiff's] performance"); *Bittaker*, 331 F.3d at 720 ("The court imposing the waiver does not order disclosure of the materials categorically" and instead only finds a waiver "to the extent necessary to give [a party] a fair opportunity" to contest the issue); *IGT v. All. Gaming Corp.*, No. 2:04-cv-1676-RCJ-RJJ, 2007 U.S. Dist. LEXIS 62395, at *7 (D. Nev. Aug. 20, 2007) (recognizing "the Ninth Circuit construes subject matter waivers narrowly" and rejecting a waiver that would have entitled an adversary "to an almost unlimited number of documents" that "touch[] on any subject whatsoever mentioned in the Complaint").

**Fourth**, none of Liu's proffered authorities remotely support his fallacious contention that FF has purportedly effectuated a wholesale waiver of the attorney-client privilege resulting from the assertion of its standard No Retaliation Defense.

Tellingly, Liu has not cited a single case involving a wrongful termination claim prosecuted by in-house counsel and governed by *General Dynamics*, making his authorities legally and factually inapposite and required to be rejected on their face.[11]

### B. Governing Law Similarly Prohibits the Disclosure and Use of FF's Privileged Communications with Sidley Austin LLP to Prosecute the Complaint's Breach of Contract Claim

Equally baseless is Liu's contention that he is entitled to prosecute the Complaint's First Cause of Action for Breach of Contract using FF's privileged communications with its outside counsel, Sidley Austin LLP ("**Sidley**").

**First**, as manifest on the face of its SACC and MSJ, FF seeks to void its employment agreement ("**Employment Agreement**") with Liu on the ground that he

---

[11] *See* Supp. Memo. at pp. 2-3, inappositely citing *Bittaker*, 331 F.3d at 717, 728 (habeas petitioner effectuated a limited waiver of the privilege by asserting ineffective assistance of counsel; petitioner did not, however, waive the privilege for all purposes, and the state could not use his privileged materials for any purpose other than opposing habeas relief); *Natural-Immunogenics Corp. v. Newport Trial Group*, No. SACV 15-02034 JVS(JCGx), 2018 U.S. Dist. LEXIS 205686, at *3-5, *33-37 (C.D. Cal. June 12, 2018) (in action against law firm and its clients accused of fabricating class action litigation, defendants waived the attorney-client privilege by claiming the firm's use of "tester" plaintiffs immunized it from liability, thereby placing the "unique relationship" and communications "between [the firm] and its clients directly at issue"); *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 241-242 (N.D. Cal. 2015) (in commercial dispute between competitors, Samsung "placed [privileged] documents at issue, partially disclosed privileged documents, and distributed privileged documents to unrelated parties" in support of its argument that it should not be sanctioned for violating a protective order); *Int'l Rectifier Corp. v. IXYS Corp.*, No. CV-00-6756-R, 2002 U.S. Dist. LEXIS 27253, at *2-6, *16 (C.D. Cal. Apr. 1, 2002) (dismissing defendant's equitable defenses in patent infringement case where (i) the defenses placed defendant's knowledge of patent validity at issue, including knowledge obtained by counsel; and (ii) defendants asserted the privilege to preclude the disclosure of any of that information); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 529 (N.D. Cal. 1988) (in lawsuit against law firm and attorneys accused of fraudulently promoting an illegal investment scheme, attorneys' blanket assertion of the privilege was improper where "defendants [] raised numerous affirmative defenses . . . , [sought] to avoid revealing the [factual] basis for th[o]se defenses by claiming the attorney-client privilege, and [also] claim[ed] an unrestricted right to introduce the privileged information in support of the affirmative defenses at trial."); *Fox v. Cnty. of Tulare*, No. 1:11-CV-00520-AWI-SMS, 2013 U.S. Dist. LEXIS 139949, at *8-11 (E.D. Cal. Sept. 23, 2013) (finding that county effectuated a limited waiver of the privilege by intentionally disclosing attorney-client communications relevant to its qualified immunity defense, as well as "conclud[ing] that any waiver should be defined narrowly" because a subject-matter waiver is not "unlimited").

negotiated and procured that contract in violation of his ethical and fiduciary obligations as FF's then-outside legal counsel, including the strict requirements under Cal. Rule of Professional Conduct 3-300, and N.Y. Rule of Professional Conduct 1.8 that he "advise[] [FF] in writing that [FF] may seek the advice of an independent lawyer of [FF's] choice" in connection with the Employment Agreement.[12] Thus, contrary to Liu's baseless argument that FF's privileged communications with Sidley are somehow necessary for Liu "to test [FF's] assertions about Sidley['s] role," (Supp. Memo. at p. 6), <u>*the truth is that FF has not pleaded any facts at all about Sidley or its professed "role" in support of the SACC's or MSJ's arguments concerning the Employment Agreement*</u>. Rather, the actual issue raised by those pleadings is *Liu's* non-compliance with *his* affirmative duty to advise FF in writing to seek independent legal counsel in connection with the Employment Agreement,[13] rendering the purported nature, scope and substance FF's communications with Sidley simply irrelevant to whether *Liu himself* complied with *his* ethical obligations.

**Second**, and consistent with the factual irrelevance of Sidley's professed role *vis-à-vis* the Employment Agreement, controlling precedent is equally clear that FF's privileged communications with Sidley are legally immaterial to, and cannot absolve Liu from the consequences of, his ethical and fiduciary violations in procuring that agreement. *See, e.g., BGJ Associates v. Wilson,* 113 Cal. App. 4th 1217, 1226-1227 (2003) (expressly rejecting the argument that the client's receipt of advice from independent counsel relieved an attorney from the consequences of its failure to comply with Rule 3-300's written disclosure and consent requirements, and holding the parties' agreement was therefore unenforceable by the attorney); *Odish v. Cognitive Code Corp.*, No. CV 12-9069 FMO (JCGx), 2015 U.S. Dist. LEXIS 68630,

---

[12] *See* Dkt. No. 95 [SACC] at ¶¶ 17-45, 77-91, 93-98; Dkt. No. 131-2 [MSJ] at pp. 1:20-2:25, 4:2-7:15, 11:16-19:8.

[13] *See* Dkt. No. 131-1 [MSJ] at pp. 1:26-27, 6:12-14, 16:13-17 (arguing Liu "[f]ail[ed] to advise FF in writing to seek and obtain independent legal counsel in connection with the Employment Agreement"); Dkt. No. 95 [SACC] at ¶¶ 8, 45, 86 (alleging the same)

at *21, 27-28 (C.D. Cal. May 27, 2015) (recognizing it was indisputable that attorney "violated Rule 3-300" by failing to advise client in writing to seek the advice of independent counsel, and recognizing this failure was "sufficient to void" the parties' contract); ); *Held & Hines LLP v. Hussain*, No. 16-cv-5273 (JSR)(SN), 2018 U.S. Dist. LEXIS 129210, at *16-17 (S.D.N.Y. July 31, 2018) (claim that client consulted independent counsel did not remedy attorney's failure to comply with its "obligation to advise [the client] *in writing* that [it] should consider seeking independent legal advice before signing the agreement." (emphasis in original)).

Because FF has not legally or factually placed its privileged communications with Sidley at issue, the Court cannot compel the disclosure, let alone authorize Liu's use, of those protected materials to prosecute the Complaint's First Cause of Action. *See Rockwell Int'l. Corp. v. Super. Ct.*, 26 Cal. App. 4th 1255, 1268 (1994) ("The *in issue* doctrine creates an implied waiver of the privilege *only* when the client tenders an issue involving the substance or content of a protected communication, *not* where the privileged communication simply represents one of several forms of indirect evidence in a particular case." (emphasis in original)); *see also Rutgard v. Haynes*, 185 F.R.D. 596, 598 (S.D. Cal. 1999) (the privilege is waived only if a party actually "plac[es] protected communications in issue.").

### C.  FF Has Not Irrevocably Waived the Attorney-Client Privilege

Consistent with the Ninth Circuit's prohibition on imposing any privilege waiver without first specifically defining "the contours of the waiver" to "let[] [the holder of the privilege] know how much of the privilege he must waive in order to proceed with his claim," and to prevent the privilege holder from being "unfairly surprised in the future" should he elect to proceed with his claim, *Bittaker*, 331 F.3d at 720-721, this Court expressly recognized during the April 26 hearing that (i) FF could avoid a wholesale waiver by dismissing the Job Performance Counterclaims; and that (ii) following such dismissal, FF could return to the Court to seek a corresponding modification of the April 26 Order:

| | | |
|---|---|---|
| **Court**: | | And certain of your counterclaims, like the fifth and sixth counterclaims you are essentially saying that Mr. Liu did nothing right while he was there . . . . *But if you got rid of perhaps your fifth and sixth [counterclaims], and I would have to look back at some of the later counterclaims, maybe the waiver would be more limited*, but right now it seems to me to be pretty broad. |
| | \* \* \* \* | |
| **Mr. Kessel:** | | If we stipulate or get a ruling from Judge Wilson that limits counterclaims five and six the way that we have delineated both in the [SACC] and in the opposition, *can we also come back to you in that sense to further define what's required to be produced on our end*? |
| **Court**: | | *You can*, but I don't feel that I have much else I can do other than set some dates before Judge Wilson rules. |
| | \* \* \* \* | |
| **Court**: | | Plaintiff is right that right not this is all advisory, because *I am finding that all of the privilege is waived based on the fifth and sixth counter-claims* . . . . So if you come back to me in five days because you guys have stipulated or you have dismissed your counterclaims or they have been amended or whatever and *I take up this issue*.[14] |

In clear violation of governing Ninth Circuit law and the Court's statements, Liu now argues that FF has irrevocably and entirely waived the privilege due to its supposed "strategy of attacking [Liu] using selective disclosures of privileged and confidential materials, while denying [Liu] access to any privileged and confidential materials that support his case." (Supp. Memo. at pp. 6:14-17). This argument cannot with scrutiny and is required to be rejected for at least three, independently dispositive reasons:

---

[14] *See* attached **Exhibit B** [Tr. of 4/26/21 Hearing] at pp. 6:6-19, 26:9-19, 33:2-14.

**First**, contrary to Liu's unsubstantiated argument that FF has "selectively leaked information" about Sidley's alleged review of the Employment Agreement, (*id.* at p. 6:18-19), the demonstrated *truth* is that (a) FF has not pleaded any facts in this action regarding Sidley's role *vis-à-vis* the Employment Agreement, as evident on the face of the SACC and the MSJ; (b) it is *Liu*, **not** FF, that has placed supposed communications between FF concerning Sidley at issue; and therefore (c) the nature and scope of FF's privileged communications with Sidley are legally and factually irrelevant to Liu's ethical violations and the subsequent voidability of the Employment Agreement. *See discussion, authorities and evidence cited, supra, at Section II.B.*

**Second**, in stark contrast to Liu's postulation that his "ability to respond to [FF's] [summary judgment] motion . . . has been unduly prejudiced by [FF's] [alleged] gamesmanship regarding privilege[,]" Liu tellingly is unable to identify any privileged information actually implicated by that motion. (Supp. Memo. at p. 7:7-9). Nor can he given that the MSJ *actually* and *exclusively* seeks judgment on Liu's remaining claims on the following grounds having nothing to do with any privileged information allegedly placed in issue by FF—namely that:

1. Judgment is required to be entered on Liu's claim for breach of the Employment Agreement because Liu improperly procured that contract in violation of his ethical and fiduciary obligations to FF, such that he cannot legally enforce that voidable contract over FF's objection;

2. Judgment is required to be entered on Liu's claim for wrongful termination because its prosecution and defense necessitate the public disclosure of privileged communications and information concerning the Alleged Compliance and Legal Issues that Liu supposedly reported to FF management prior to his discharge; and

3. Judgment is required to be entered on Liu's declaratory judgment claim because it is entirely dependent on his foregoing baseless causes of action.[15]

Importantly, the MSJ plainly does *not* seek judgment on Liu's wrongful termination claim based upon FF's No Retaliation Defense. As such, there is no credible basis for arguing that FF has submitted evidence of Liu's Enumerated Failures, or any other potentially privileged matter, in support of that motion.

**Finally**, Liu's only proffered authority in support of his irrevocable waiver argument—*Apple Inc. v. Samsung Electronics Co. Ltd*—serves only to highlight and confirm the impropriety of any such waiver, here. That is because in *Apple Inc.,* the district court found Samsung could not "avoid waiver by retroactively withdrawing its arguments" after it had already:

- "raised . . . issues bearing upon the contents of [its] communications [with] its attorneys" in support of its effort to avoid discovery sanctions, including "whether any of the numerous protective order violations were intentional[,] whether any unauthorized recipient of the confidential information used the information[,] [as well as] [outside counsel's] alleged compliance with the protective order";
- advanced these arguments" by, *inter alia*, submitting "the [privileged] documents themselves . . . unredacted to the court"; thereby
- "put[ting] the contents of the[] documents at issue, and [] succeed[ing] in avoiding greater sanctions" as a result of doing so.

*See* No. 11-CV-01846-LHK, 2015 U.S. Dist. LEXIS 80954, at *71-73, *84-86 (N.D. Cal. June 19, 2015).

---

[15] *See* Dkt. No. 131-1 [MSJ] at pp. 1:1-3:28, 11:15-25:12.

In marked contrast, FF has not filed or obtained relief by submitting any privileged materials to the Court. Nor, as evident on its face, has FF used any privileged information to support its pending MSJ.

Accordingly, consistent with the approach mandated by the Ninth Circuit in *Bittaker* and followed with respect to the Job Performance Counterclaims, FF respectfully requests that the Court (1) define the scope of FF's waiver in light of FF's dismissal of the Job Performance Counterclaims and its proposed dismissal and amendment of the Affirmative Defenses identified herein and set forth in Exhibit A; and correspondingly (2) modify the April 26 Order to clarify that, if FF so dismisses and amends its Affirmative Defenses as reflected in Exhibit A hereto, FF will have only waived the privilege as to, and only will be required to produce privileged information limited to, Liu's Enumerated Failures.

## III.  CONCLUSION

For each of the foregoing reasons, FF respectfully requests that the Court modify its April 26 Order as described in this Supplemental Brief, and as reflected in FF's concurrently filed [Proposed] Order.

Dated:  April 28, 2021

Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Kevin A. Crisp

Kevin A. Crisp
Attorneys for Defendant
SMART KING LTD. and Defendant and Counterclaimant
FARADAY&FUTURE INC.