Kevin D. Hughes (Bar No. 188749)
FOUNDATION LAW GROUP LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: 424.253.1266
Email: kevin@foundationlaw.com

Amiad Kushner (*pro hac vice*)
Akushner@seidenlawgroup.com
Jake Nachmani (*pro hac vice*)
Jnachmani@seidenlawgroup.com
Seiden Law Group LLP
322 Eighth Avenue, Suite 1704
New York, NY 10001
Telephone: (646) 766-1914
Facsimile: (646) 304-5277

*Attorneys for Plaintiff/Counter-Defendant, Hong Liu*

# UNITED STATES DISTRICT COURT FOR
# THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| HONG LIU,<br><br>Plaintiff,<br><br>v.<br><br>FARADAY&FUTURE INC., SMART KINGLTD., JIAWEI WANG, and CHAOYING DENG<br><br>Defendants.<br><br>FARADAY&FUTURE INC.,<br><br>Counterclaimant,<br><br>v.<br><br>HONG LIU,<br><br>Counter-Defendant. | **Case No:** 2:20-cv-08035-SVW-JPR<br><br>**DECLARATION OF AMIAD KUSHNER IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR CLARIFICATION OF THE COURT'S MAY 3, 2021 ORDER AND RELATED RELIEF** |

1
DECLARATION OF AMIAD KUSHNER
Case No.: 2:20-cv-08035-SVW-JPR

I, Amiad Kushner, declare as follows:

1. I am a Partner at Seiden Law Group LLP, which is counsel of record for Plaintiff Hong Liu ("Plaintiff" or "Liu") in the above-captioned matter. I am admitted to practice before the courts of the State of New York, and I am admitted *pro hac vice* in this matter. I make this declaration based on my own personal knowledge and documents in possession of my firm.

2. I make this declaration in support of Plaintiff's *ex parte* Application for Clarification of the Court's May 3, 2021 Order and related relief.

3. Defendants' production to date has been inadequate for the reasons explained herein. At the outset, it should be noted that Plaintiff has produced ***1583 documents across 8287 pages***. Defendants, the corporate custodians in this action, have produced only ***627 documents across 5262 pages***; their total production pursuant to the Court's April 26 and May 3 Orders consisted of merely ***92 documents across 624 pages***. There is no reason why Plaintiff's production should dwarf Defendants.

4. Plaintiff makes this application on an *ex parte* basis because Plaintiff contends that Defendants Faraday&Future Inc., Smart King Ltd., Jiawei Wang, and Chaoying Deng (collectively, "Defendants") have violated the Court's April 26, 2021 (ECF 128) and May 3, 2021 (ECF 146) Orders and are wrongfully withholding numerous documents which were required to be produced by May 6, 2021. The parties have scheduled numerous depositions for the week of May 10 to 14, and Plaintiff would be prejudiced if the missing documents are not produced in advance of these depositions.

**Procedural History**

5. On April 16, 2021, Plaintiff filed its Expedited Motion for Determination of Urgent Privilege Issue and To Compel Production. In its motion, Plaintiff argued that Defendants were improperly withholding documents and using privilege as both a sword and shield. Plaintiff argued that Defendants should be ordered to remedy their

materially deficient production and that Defendants had waived their claims of privilege through sweeping counterclaims that challenged every aspect of Plaintiff's performance during his employment.   ECF 120.

6.  On April 22, 2021, Defendants filed their Opposition to Plaintiff and Counter-Defendant's Expedited Motion for Determination of Urgent Privilege Issue and to Compel Production ("Opposition").   ECF 124.   Defendants contended, among other things, that their counterclaims alleged that Plaintiff's performance was deficient in a number of specific areas, and thus that any privilege waiver should be limited to those areas.

7.  Specifically, at pages 4-5 of their Opposition, Defendants argued that their allegations concerning Plaintiff's performance were limited to allegations that he:

> failed to lead FF to an IPO; (ii) failed to connect FF with investment banks; (iii) failed to assist FF when its Series A investor, Evergrande Health Industry Group ("Evergrande"), backed-out of its funding commitment; and (iv) failed to provide substantive legal advice as to the EVelozcity litigation, vendor concerns regarding indemnification, the recording of internal FF meetings, and a potential reduction in FF's workforce, each specifically identified in the SACC, and reflected in Liu's emails quoted verbatim in the SACC. (SACC ¶¶ 50, 55-59, 61, 69-70.) Moreover, as further alleged in the SACC, Liu (v) repeatedly harassed FF's equity incentive program manager and threatened to fire FF's outside counsel when it declined to provide him with grants at illegal exercise prices; and refused (vi) to sign corporate and contract documents requiring his authorization; or (vii) to advise FF regarding its actions and corporate governance. (Id. ¶¶ 65-66.)"

ECF 124 at 4-5 (emphasis added).

8.  Defendants reiterated this position on pages 17-18 of their Opposition, stating that Plaintiff "failed to perform his job duties in the following ways specifically enumerated in the SACC: (i) failing to lead FF to an IPO; (ii) failing to connect FF with any investment bank; (iii) failing to assist FF when its Series A investor, Evergrande, backed-out of its funding commitment; and (iv) failing to provide substantive legal advice with respect to the EVelozcity litigation, vendor concerns regarding indemnification, the recording of internal meetings, and a potential reduction in FF's workforce, as reflected in Liu's communications quoted verbatim in the SACC. (SACC ¶¶ 50, 55-59, 61, 69-70.)   These facts—together with Liu's harassment of FF's equity program manager and threat to fire outside counsel unless it illegally inflated his stock options (id., ¶¶ 65-66)—define and limit the actual scope and "universe" of Faraday's Alternative Breach Claims.").   ECF 124 at 17-18.

9.  Defendants therefore agreed to "produce those otherwise privileged communications which Liu authored pertaining to the subject matters specifically enumerated and alleged in support of" the above-referenced claims. (SACC ¶¶ 50, 55-59, 61, 69-70)." ECF 124 at 20.

10.  On April 26, 2021, the Court held a hearing on Plaintiff's motion. Attached as Exhibit 1 is a true and correct copy of the transcript of the hearing.

11.  On April 26, 2021, following the hearing that day, the Court issued an order stating that the "production Defendants have agreed to make (see Opp'n at 17-18, 20) must be made by no later than April 30. The rest of the withheld production concerning Liu's employment with Defendants – none of which is shielded by privilege because any such privilege has been waived – must be made by May 5."   ECF 128.

12.  On the evening of April 26, 2021, Defendants filed a stipulation dismissing with prejudice their Fifth and Sixth Counterclaims.   ECF 130.

13. On April 26, 2021, Defendants filed a Motion for Summary Judgment. ECF 131-1. In their motion, Defendants moved for summary judgment on their counterclaim for rescission of Plaintiff's employment agreement based on allegations that he "solicited, negotiated, drafted, and procured" the agreement by "violat[ing] his ethical and fiduciary duties to [Defendants] under the applicable Rules of Professional Conduct and related statutory and decisional law." ECF 131-1 at 1.

14. On April 27, 2021, the Court notified the parties that a hearing would be held on April 29, 2021, to reconsider the April 26, 2021 Order. ECF 132. On April 27, 2021, Plaintiff filed its Supplemental Memorandum of Points and Authorities in Support of Plaintiff Hong Liu's Expedited Motion for Determination of Urgent Privilege Issue and To Compel Production. ECF 133. On April 28, 2021, Defendants' filed their Supplemental Brief in Support of Modifying April 26, 2021 Order Re: Privilege Issues in Light of Their (1) Dismissal of the Fifth and Sixth Counterclaims; and (2) Proposed Dismissal and Amendment of Certain Affirmative Defenses. ECF 137.

15. On April 29, 2021, the Court held a hearing. ECF 128.

16. On May 3, 2021, the Court issued an order holding that "Defendants have waived any attorney-client privilege concerning the solicitation, negotiation, drafting, and procurement of the Employment Agreement as well as Plaintiff's termination. The privilege has also been waived as to those areas Defendants previously acknowledged were waived. (See Defs.' Opp'n Urgent Mot. at 17-18, 20.) The privilege is otherwise intact. Defendants should have already produced on April 30 all responsive documents concerning the areas as to which they agreed the privilege was waived. The remainder – concerning their communications with outside counsel or anyone else about the Employment Agreement and Plaintiff's termination – remain due on May 5." ECF 146.

**Defendants Deficient Document Productions**

17. On April 30, 2021, Defendants produced 68 documents.

18. On the night of May 5, 2021, Defendants produced 24 documents.

19. On May 6, upon review of Defendants May 5, 2021 production, it became clear that Defendants' productions did not comply with the Court's Orders.

20. On the evening of May 6, 2021, my co-counsel Michael Stolper and I participated in a meet and confer call with Defendants' counsel to discuss the deficiencies in Defendants' production. After an extended discussion that did not result in agreement, we informed Defendants' counsel that we would be filing an *ex parte* application seeking relief based on numerous deficiencies which we discussed on the call and which are further described below.

21. <u>First</u>, Defendants have produced no internal communications relating to Plaintiff's termination. Plaintiff has produced evidence that such communications exist. Indeed, Plaintiff has produced a picture that he took during the February 11, 2019 meeting at FF's offices at which he was given formal notice of his termination. The picture shows a computer that was used at the meeting by a representative of Defendants; the computer screen as shown in the picture contains a document stating that Bob Ye of Faraday "gave pre-written message." A true and correct copy of this document is attached hereto as Exhibit 2. No such pre-written message or any communications relating to such a message have been produced by Defendants.

22. <u>Second</u>, between April 30 and May 5, 2021, Defendants produced less than thirty documents related to Plaintiff's hiring and the negotiation of the terms of his employment. This incredibly low number strains credulity given that Plaintiff's employment terms were discussed and negotiated over a four-month period between October 2017 and February 2018, and involved multiple employees of Defendants as well as lawyers at Sidley Austin.

23. Moreover, Defendants created an arbitrary and sweeping carve-out from the Court's order that all documents relating to the solicitation, negotiation, drafting, and procurement of Plaintiff's employment agreement must be produced. As alleged in Plaintiff's Complaint in this action, Plaintiff concurrently negotiated and signed *two* employment-related agreements with Defendants before he was hired: an Employment Agreement and a Director Compensation Agreement (signed on January 26, 2018, and February 2, 2018, respectively; *see* ECF 1 at ¶¶ 43-58 (Complaint); copies of both of these agreements are attached to the Complaint. The documentary evidence produced in this action reflects that the parties considered these two agreements to be part of a single transaction; indeed, the Director Compensation Agreement *expressly incorporates the terms of the Employment Agreement*.[1] Indeed, the evidence (as reflected in Exhibits 3 and 4) further indicates that Defendants' outside counsel at Sidley Austin concurrently reviewed both agreements. Nevertheless, as Defendants' counsel informed me on the May 6, 2021 meet and confer, Defendants arbitrarily redacted all privileged communications relating to the Director Compensation Agreement, even where Sidley Austin provided comments on that agreement and the Employment Agreement simultaneously *in the same email*. Attached as Exhibits 3 and 4 are examples of Defendants' improper redactions.

24. <u>Third</u>, Defendants' productions are deficient as to the specific areas that the Court specified were waived in its Orders (ECF 132; ECF 146), including documents relating to Plaintiff's alleged failures to provide advice or perform his duties with respect to (i) Defendants' funding dispute with Evergrande, (ii) the Evelozcity litigation, and

---

[1] *See* Director Compensation Agreement at ¶1 ("The vesting of the Director Compensation is subject to the same vesting conditions as provided and agreed in the Employment Agreement between [Plaintiff] and [FF] dated January 25, 2018."); *id.* at ¶ 3 (providing that upon an early termination of Plaintiff, any unpaid Director Compensation should be immediately vested under the same terms as provided in the Employment Agreement).

(iii) a potential reduction in FF's workforce, including compliance with WARN Act notice requirements.

25.   As to Evergrande, the Court stated that "the privilege has also been waived as to those areas Defendants previously acknowledged were waived. (See Defs.' Opp'n Urgent Mot. at 17-18, 20.)." ECF 146. On page 17 of Defendants' Opposition (ECF 124), Defendants contended that "Liu abdicated responsibility and failed to perform his job duties in the following specifically enumerated in the SACC . . . failing to assist FF when its Series A investor, Evergrande, backed-out of its funding commitment."  See ECF 124.   Defendants combined privilege log, attached hereto as Exhibit 5, contains 638 documents related to Evergrande.   The relevant time-period where Evergrande backed-out of its funding commitment is between August 31, 2018[2] through December 31, 2018.[3]   Out of the 638 documents referenced on Defendants' privilege log, 571 of the documents relate to the August 1 to December 31, 2018 time period of the funding dispute.   Yet Defendants' productions on April 30th, and May 5th contain less than 60 documents related to Evergrande. Defendants have produced roughly 10% of all the documents on Defendants' privilege log relating to Evergrande.

26.   As to matters relating to the Evelozcity litigation, Defendants produced less than ten documents in their April 30, 2021 and May 5, 2021 productions related to the that litigation. Defendants' combined privilege log (*see* Exhibit 5), contains seventeen documents referencing "litigation," which may include further relevant documents. The privilege log notably fails to indicate which litigation is referenced.

27.   As to a potential reduction in FF's workforce and the WARN Act, the Court held that Defendants waived privilege related to Plaintiff's supposed failure to "provide substantive legal advice with respect to . . . a potential reduction in FF's workforce." *See* ECF 124 at 17-18.   During October 2018, Plaintiff directed that multiple memos to

---

[2] *See* Petition to Confirm Arbitration Award, attached hereto as Exhibit 6 at ¶¶ 7-11.
[3] *See* S-4 filed by Defendants on April 5, 2021, attached hereto as Exhibit 7 at 201.

be drafted reflecting Defendants' requirements to comply with notice requirements of under the WARN Act in connection with contemplated layoffs. Yet Defendant's production on April 30, 2021 and May 5, 2021 does not contain any such memos. While Defendants' privilege log contains 17 documents mentioning the WARN Act (*see* Exhibit 5), only nine documents produced by Defendants on April 30, 2021 and May 5, 2021 mention the WARN Act.

28. Significantly, during my call with Plaintiff's counsel on May 6, 2021, Defendants' counsel explained that they interpreted the May 3, 2021 Order (ECF 146) to only require production of documents in which (according to Defendants' unilateral interpretation) Plaintiff was sending or receiving legal advice. The Court's Order contained no such limitation. Indeed, by interpreting the Order in this artificially narrow manner, Defendants have likely omitted documents that provide critical context which would enable Plaintiff to defend against Defendants' allegations, including the context in which Plaintiff provide or received legal advice.

I declare under penalty of perjury that the foregoing is, to the best of my knowledge and belief, true and correct.

Dated:   New York, New York
         May 6, 2021

                                        /s/Amiad Kushner
                                        Amiad Kushner