# EXHIBIT 6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
R. Brian Timmons (Bar No. 155916)
briantimmons@quinnemanuel.com
Lee J. Rosenberg (Bar No. 287567)
leerosenberg@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Petitioner
Smart King Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Smart King Ltd,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>Season Smart Limited<br><br>　　　　Respondent. | Case No: 2:18-cv-18-9499<br><br>**PETITION TO CONFIRM ARBITRATION AWARD** |

# PETITION TO CONFIRM ARBITRATION AWARD

1. Petitioner Smart King Ltd. ("Smart King") brings this action to confirm the Award of the Emergency Arbitrator that was issued by the Hong Kong International Arbitration Centre ("HKIAC") in Case No. A18176 on October 25, 2018 ("Award") in favor of Smart King and against Respondent Season Smart Limited ("Season Smart"). *See* **Exhibit A**.

2. The same day that the Award was issued, Season Smart's parent corporation published a false and misleading public statement on the Hong Kong Stock Exchange, characterizing the Award as being rendered against Smart King and in favor of Season Smart. *See* **Exhibit B**. That narrative has resulted in the spread of demonstrably false information about the Award that the relief requested in the arbitration was "rejected," that the HKIAC "upheld [Season Smart]'s role in approving new financing," that "Faraday Claims Victory as Request Denied," and that "Evergrande Ownership Upheld." *See* **Exhibit C**.

3. Pursuant to Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.* and the Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 200 U.N. 38 ("Convention"), Smart King petitions this Court to confirm the Award.

4. Confirmation is appropriate because this application is timely made, the Convention applies to the Award, under the FAA, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention," and here none of the narrow grounds for refusal or deferral under the Convention are applicable. *See* FAA § 201; Convention Art. V.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

### A. **The Parties and the Transaction Agreements At Issue**

5. Petitioner Smart King is a Cayman Islands corporation with its principal place of business in Los Angeles, California. It is the indirect parent corporation of

1  Faraday&Future Inc. ("Faraday"), a revolutionary electric vehicle company that
2  launched in 2014.
3      6.   Respondent Season Smart is a British Virgin Islands corporation with its
4  principal place of business in Hong Kong S.A.R.
5      7.   In November 2017, Season Smart agreed to invest $2 billion in Faraday, to
6  be paid in stages. To formalize this transaction, Season Smart and Smart King entered
7  into a series of interrelated agreements—an Agreement and Plan of Merger and
8  Subscription (the "Merger Agreement," as amended, a Shareholders Agreement (the
9  "SHA"), as amended, including most recently by the Amendment and Consent (the
10 "Amendment"), pledge agreements, security agreements, and an intellectual property
11 security agreement (together, the "Transaction Agreements").
12     8.   Season Smart has paid in capital of $800 million to date. The remainder of
13 $1.2 billion was to be paid on an agreed schedule: $600 million in 2019, and $600
14 million in 2020.
15     9.   In July 2018, for strategic reasons, the parties mutually agreed to amend
16 the Transaction Agreements and accelerate Season Smart's investment payments to
17 speed up the pace of manufacturing for the FF 91; Smart King was otherwise on
18 schedule and under budget. The first payment (of $300 million) was due on or about
19 August 1, 2018. The second payment of $200 million would have been due on October
20 31, 2018.
21     10.  The Merger Agreement and the SHA each include an arbitration clause;
22 the Amendment specifically incorporates by reference the arbitration agreement
23 contained in the SHA. The arbitration clause in the SHA states, in part:

> (a) Any dispute, controversy, difference or claim (each, a "Dispute") arising out of or relating to this Agreement, or the interpretation, performance, breach, termination, existence, validity or invalidity thereof, or any Dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (the "HKIAC") under the HKIAC Administered Arbitration Rules (the "HKIAC Rules") in force when the notice of arbitration is submitted by one party to another.

-2-

PETITION TO CONFIRM ARBITRATION AWARD

HLIU001713

(b) The law of this arbitration clause shall be Hong Kong law. The seat of arbitration shall be Hong Kong. The number of arbitrators shall be three (3). All of the arbitrators shall be qualified to practice law in Hong Kong.
…
(d) The award of the arbitral tribunal shall be final and binding upon the parties thereto, and the prevailing party may apply to a court of competent jurisdiction for enforcement of such award.
(e) The arbitral tribunal shall decide any Dispute submitted by the parties to the arbitration strictly in accordance with the substantive Laws of Hong Kong, without regard to principles of conflict of laws thereunder, and shall not apply any other substantive Law.
(f) Any party to the Dispute shall be entitled to seek interim or conservatory relief either from an emergency arbitrator or any court of competent jurisdiction prior to the constitution of the arbitral tribunal, or from the arbitral tribunal or any court of competent jurisdiction once the arbitral tribunal has been constituted.

**Exhibit D**, § 16.6 (excerpted copy of the SHA). *See also* **Exhibit E** § 9.4 (excerpted copy of the Merger Agreement).

### B. Season Smart Breaches and Renounces the Transaction Agreements.

11. Season Smart defaulted on its payment obligation per the Amendment in August 2018 and Smart King had no choice but to seek external financing to fund Faraday's operations. But, under the Transaction Agreements, Season Smart has an approval right over any external capital fundraising – and Season Smart made it clear that it would not consent to any attempt by Smart King to obtain other financing.

12. Season Smart's withholding of the funds appears to be purely tactical. It is deliberately starving Smart King of the cash it needs to stay solvent. It appears to be doing so either to push Smart King into bankruptcy (thereby avoiding its future payment obligations and/or allowing it to seize control of Smart King's valuable assets and intellectual property in a fire sale), or to force Smart King and the other counterparties to the Transaction Agreements to renegotiate those Agreements.

13. Whatever Season Smart's motivations might be, the reality is that it has engineered a situation where, unless Smart King obtains an injection of substantial sums in the immediate future, it will become insolvent. And Season Smart has closed off all avenues by which Smart King could obtain that financing.