ALAN J. KESSEL, Bar No. 130707
alan.kessel@troutman.com
JEFFREY M. GOLDMAN, Bar No. 233840
jeffrey.goldman@troutman.com
KEVIN A. CRISP, Bar No. 261023
kevin.crisp@troutman.com
LAUREN E. GROCHOW, Bar No. 293601
lauren.grochow@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendant
SMART KING LTD. and Defendant and
Counterclaimant FARADAY&FUTURE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HONG LIU, <br><br> Plaintiff, <br><br> v. <br><br> FARADAY&FUTURE INC., SMART KING LTD., JIAWEI WANG, and CHAOYING DENG, <br><br> Defendants. | Case No. 2:20-cv-08035-SVW-JPR <br><br> Honorable Stephen V. Wilson <br><br> **REPLY IN SUPPORT OF FARADAY & FUTURE, INC. AND SMART KING LTD.'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OF PLAINTIFF HONG LIU'S COMPLAINT** <br><br> Date: June 1, 2021 <br> Time: 1:30 p.m. <br> Place: Courtroom 10A <br><br> Pretrial Conference: 7/19/21 <br> Trial: 7/27/21 |
| AND RELATED COUNTERCLAIM. | |

116329986

REPLY IN SUPPORT MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. FF IS ENTITLED TO JUDGMENT ON LIU'S BREACH OF EMPLOYMENT AGREEMENT CLAIM ...................................................... 1

    A. Liu Was Subject to, and Failed to Comply with, the California Rules of Professional Conduct and Related Decisional Law ............... 1

    B. Liu's Ethical Violations Bar Enforcement of the Employment Agreement .................................................................................. 2

    C. Liu Cannot Rebut the Mandatory Presumption of Undue Influence ....................................................................................... 3

    D. Liu Similarly Violated His Ethical Duties Under New York Law ....... 7

II. FF IS ENTITLED TO JUDGMENT ON LIU'S WRONGFUL TERMINATION CLAIM ........................................................................ 8

    A. Liu Cannot Prove Wrongful Termination Without Using FF's Privileged Information ............................................................................ 8

    B. Liu Has Not Adduced Evidence He Engaged in Protected Activity .................................................................................................. 11

REPLY IN SUPPORT MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 21st Century Oncology Hldgs., Inc.*,
  2019 WL 2498264 (S.D.N.Y. June 3, 2019) .................................................... 3

*Asurmendi v. Tyco Elecs. Corp.*,
  2011 WL 6014855 (Cal. App. Dec. 2, 2011) .................................................... 8

*Baker v. Montrone*,
  2020 WL 128531 (D.N.H. Jan. 10, 2020) ........................................................ 3

*Batzel v. Smith*,
  372 F. Supp. 2d 546 (C.D. Cal. 2005) (Wilson, J.) .......................................... 2

*BGJ Assoc., LLC v. Wilson*,
  113 Cal. App. 4th 1217 (2003) .......................................................... 3, 4, 5, 6

*Chubb & Son v. Super Ct.*,
  228 Cal. App. 4th 1094 (2014) ....................................................................... 10

*Clark Cty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001) ........................................................................................ 8

*CONSOL Energy, Inc. v. Hummel*,
  238 W. Va. 114 (2016) .................................................................................... 3

*Crown v. Wal Mart Stores, Inc.*,
  8 Fed. Appx. 776 (9th Cir. 2001) .................................................................... 9

*Cyntegra, Inc. v. IDEXX Labs., Inc.*,
  322 Fed. Appx. 569 (9th Cir. 2009) ................................................................ 4

*Degenshein v. 21st Century Toys., Inc.*,
  2007 WL 1242171 (Cal. App. Apr. 30, 2017) .......................................... 10, 12

*Evans v. Ellis*,
  5 Denio 640, 1846 WL 4716 (N.Y. 1846) ...................................................... 7

*F.T.C. v. Publ'g Cl. House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ........................................................................ 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Fair v. Bakhtiari*,
   195 Cal. App. 4th 1135 (2011) ................................................................. 3, 4, 6

*Felton v. Le Breton*,
   92 Cal. 457 (1891) ................................................................................................ 4

*Ferguson v. Yaspan*,
   233 Cal. App. 4th 676 (2014) ............................................................................. 4

*Forest Park Assocs. Ltd. P'ship v. Kraus*,
   175 A.D.2d 60 (N.Y. App. Div. 1991) ............................................................... 7

*Foster v. Schoeb*,
   2007 WL 2890378 (N.D. Cal. Sep. 28, 2007) .................................................... 6

*Fowzer v. Cty. of San Bern.*,
   2018 WL 5880777 (C.D. Cal. Oct. 25, 2018) .................................................... 5

*General Dynamics. Olivo v. City of Vernon*,
   2010 WL 2953898 (Cal. App. July 29, 2010) ............................................. 10, 12

*General Dynamics v. Super. Ct.*,
   7 Cal. 4th 1164 (1994) ................................................................. 8, 10, 11, 12

*Gurvey v. Legend Films, Inc.*,
   2012 WL 4061773 (S.D. Cal. Sep. 14, 2012) .................................................... 3

*Gutowitz v. Transam. Life Ins. Co.*,
   126 F. Supp. 3d 1128 (C.D. Cal. 2015) .............................................................. 2

*Heh v. Cty. of L.A.*,
   2020 WL 2240072 (C.D. Cal. Feb. 13, 2020) .................................................... 5

*McQuirk v. Donnelly*,
   189 F.3d 793 (9th Cir. 1991), Case ..................................................................... 3

*Odish v. Cog. Code Corp.*,
   2015 WL 11347592 (C.D. Cal. May 27, 2015), *aff'd in part*
   *Bourbeau v. Cog. Code Corp.*, 2017 WL 1363811 (9th Cir. Apr. 14,
   2017) ..................................................................................................... 2, 3, 5, 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*PCO, Inc. v. Christensen, Miller*,
   150 Cal. App. 4th 384 (2007) .................................................................................. 1

*Ricketts v. Farmers Grp.*,
   2001 WL 1487700 (Cal. App. Nov. 26, 2001) ...................................................... 12

*Ritter v. State Bar*,
   40 Cal. 3d 595 (1985) ............................................................................................. 5

*Sheppard, Mullin v. J-M Mfg'g Corp.*,
   6 Cal. 5th 59, 68 (2018) ......................................................................................... 3

*Sloane v. Experian Info. Sols., Inc.*,
   2018 WL 6566539 (D. Nev. Sep. 25, 2018) .......................................................... 6

*Streit v. Covington & Crowe*,
   82 Cal. App. 4th 441 (2000) ................................................................................... 2

*Tam v. Qualcomm, Inc.*,
   300 F. Supp. 3d 1130 (S.D. Cal. 2018) ..................................................... 10, 11, 12

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*,
   515 F.3d 1019 (9th Cir. 2008) ................................................................................ 4

*UGS Corp. v. Musti*,
   2007 U.S. Dist. LEXIS 7440 (S.D. Ohio Feb. 1, 2007) ........................................ 3

*Wash. v. Cal. City. Corr. Ctr.*,
   871 F. Supp. 2d 1010 (E.D. Cal. 2012) .................................................................. 8

*Zkey Invs., LLC v. Facebook, Inc.*,
   225 F. Supp. 3d 1147 (C.D. Cal. 2016), *aff'd* 708 Fed. Appx. 681
   (Fed. Cir. 2018) ...................................................................................................... 5

**Statutes**

18 U.S.C. § 2510 ......................................................................................................... 12

29 U.S.C. § 2101 et seq. ............................................................................................. 12

Cal. Bus. & Prof. Code § 17200 ................................................................................. 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Cal. Lab. Code § 1400 et seq. ................................................................................. 12

Cal. Labor Code § 1102.5 .................................................................................. 11-12

Cal. Penal Code § 631 ............................................................................................. 12

Cal Penal Code § 632 .............................................................................................. 12

Cal. Prob. Code § 16604 ........................................................................................... 4

**Other Authorities**

Cal. Const., Art. I, § 1 ............................................................................................. 12

Cal. Prac. Guide Prof. Resp., Ch. 3-A (The Rutter Group 2020) .............................. 1

Cal. R. Prof. Conduct 1-100 ...................................................................................... 1

Cal. R. Prof. Conduct 3-300 ............................................................................. 2, 5, 6

Cal. R. Prof. Conduct 3-310 ................................................................................. 2, 3

Cal. R. Prof. Conduct 4-200 ................................................................................. 2, 3

C.D. Cal. L.R. 7-10 ................................................................................................... 5

N.Y. R. Prof. Conduct 1.10(a) .................................................................................. 7

N.Y. R. Prof. Conduct 1.5 ........................................................................................ 7

N.Y. R. Prof. Conduct 1.7 ........................................................................................ 7

N.Y. R. Prof. Conduct 1.8 ........................................................................................ 7

# I. FF IS ENTITLED TO JUDGMENT ON LIU'S BREACH OF EMPLOYMENT AGREEMENT CLAIM

## A. Liu Was Subject to, and Failed to Comply with, the California Rules of Professional Conduct and Related Decisional Law

Unable to avoid his violations of California's ethics rules and related decisional law, Liu postulates that (i) "FF was not [] [his] client" because he allegedly "did no legal work for [it] while he was employed at Mayer," and that (ii) the "California ethics rules" subsequently did not "apply to [him]" since he "was not performing lawyer functions in California" for FF. (Opp., pp. 11-12). In addition to being legally unsubstantiated, Liu's implausibly narrow construction of Cal. Rule 1-100[1] further ignores the following undisputed facts establishing both his attorney-client relationship with FF and the corresponding applicability of California law:

- Liu provided FF with and then executed (i) an Engagement Agreement memorializing FF's retention of Liu and his firm Mayer as outside counsel, and identifying Liu as the "designated leader of the FF Client Team . . . responsible for th[e] engagement and" for "us[ing] other [Mayer] attorneys and professionals" for FF; as well as provided FF with (ii) a Work Plan confirming Liu's role as "FF Client Team Leader & Main Contact Partner"; and (iii) billing rates for Mayer's attorneys, including for Liu as the FF "Team Leader." (UF 4-6);
- Mayer and Liu performed legal work for FF, as confirmed by Mayer's invoices showing, *inter alia*, Liu's participation in calls for which FF was billed. (UF 7, citing Wang Decl., Ex. 2 at p. 9); and
- Liu's own Mayer emails show (i) Mayer partners apprising Liu of FF's requests for legal advice; as well as (ii) Liu taking responsibility for executing documents concerning the Mayer-FF relationship. (Dkt. No 160-4 [Liu Decl.] at Ex. 8).

Consistent with these unrefuted facts, the authorities *omitted* from Liu's Opposition also make clear that Liu and FF were in an attorney-client relationship governed by California law, by holding that: (1) "[w]here a client retains a law firm," the "relationship extends to all members of the firm[,]" Cal. Prac. Guide Prof. Resp., Ch. 3-A at § 3:19 (The Rutter Group 2020), and "[u]nless there is an agreement to the contrary, the retention of an attorney in a law firm constitutes the retention of the entire firm," *PCO, Inc. v. Christensen, Miller*, 150 Cal. App. 4th 384, 392 (2007),

---

[1] "These rules shall also govern the activities of [out-of-state] lawyers while engaged in the performance of lawyer functions in this state." Cal. R. Prof. Cond. 1-100(D)(2).

including attorneys with no "direct dealings [with] the client[.]" *Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 445 (2000); and that (2) Liu was subject to and "required to comply with" California's ethics rules by virtue of representing and then negotiating and entering a transaction with FF, a California-based company. *See Odish v. Cog. Code Corp.*, 2015 WL 11347592, at *6 (C.D. Cal. May 27, 2015), *aff'd Bourbeau v. Cog. Code Corp.*, 2017 WL 1363811, at *1 (9th Cir. Apr. 14, 2017).[2]

### B. Liu's Ethical Violations Bar Enforcement of the Employment Agreement

Because he incorrectly presumes California law does not apply, Liu completely ignores and correspondingly concedes the facts and law establishing (i) his violations of Cal. Rules 3-300, 3-310, 4-200 and related decisional law; and (ii) the resulting voidability of his Employment Agreement, which *alone* requires summary judgment of his breach of Employment Agreement claim.[3] In addition, Liu's admissions in his Opposition and supporting documents further confirm that:

- In violation of Cal. Rule 3-300 prohibiting Liu from procuring his Employment Agreement without "advis[ing] [FF] in writing that [FF] may seek the advice of an independent lawyer of [FF's] choice" and affording FF "a reasonable opportunity" to do so, *Liu did not provide that required written disclosure*. (Dkt. No. 160-3 [Liu Opp. to FF Sep. St.] at UF 10);

- In violation of Cal. Rule 3-310 requiring Liu to provide "written disclosure to [FF]" of all "relevant circumstances and of the actual and reasonably foreseeable adverse consequences to [FF]" resulting from the Employment Agreement, *Liu failed to explain in writing the adverse consequences of and risk to FF resulting from the terms of the Employment Agreement purportedly entitling Liu to the accelerated and immediate (i) payment of $8 million in cash; and (ii) vesting and provision of lucrative stock options, in the event of, and as a reward for, his termination for cause, including for any future breach of his fiduciary duty*.

---

[2] This is particularly true where Liu admittedly traveled to and attended meetings with FF in California to discuss Mayer's representation of FF, as well as to negotiate and procure his personal employment with FF. *See* Dkt. No. 160-4 [Liu Decl.] at ¶¶ 6-10, 21-22.

[3] *Batzel v. Smith*, 372 F. Supp. 2d 546, 554 (C.D. Cal. 2005) (Wilson, J.) ("because Plaintiff failed to raise the issue of waiver in her Opposition to [] Motion for Summary Judgment . . , Plaintiff has waived her waiver argument."); *Gutowitz v. Transam. Life Ins. Co.*, 126 F. Supp. 3d 1128, 1154 (C.D. Cal. 2015) (because plaintiffs did not respond to arguments for summary judgment on punitive damages, "the issue [is] deemed abandoned[,]" and "summary judgment must [be] granted"). *See also and compare* Mot. at pp. 13-19, *with* Opp. at pp. 10-17.

(*Id.* at UF 11 (non-responsively asserting "[b]oth parties" negotiated and drafted the Employment Agreement and that its "terms" were "disclosed on [its] face"));

- In violation of <u>California decisional law</u> requiring Liu to "give to [FF] all that reasonable advice against himself that [Liu] would have given" FF had it been negotiating the Employment Agreement with a third-person, *BGJ Assoc., LLC v. Wilson*, 113 Cal. App. 4th 1217, 1226, 1229 (2003), **Liu violated that duty by failing to advise FF of the risks associated with and resulting from FF's purported inability to terminate Liu in the future for cause without triggering the immediate and accelerated payment, vesting, and provision of millions in cash and stock options**. (Dkt. No. 160-3 [Liu Opp. to FF Sep. St.] at UF 12); and

- In violation of <u>Cal. Rule 4-200</u> prohibiting him from "enter[ing] into an agreement for, charg[ing], or collect[ing] an illegal or unconscionable fee[,]" **Liu now impermissibly seeks to enforce the Employment Agreement's unfair and unlawful payment term purportedly exempting him from any future wrongdoing and instead rewarding him with the accelerated and full payment and provision of millions in cash and stock.** (*Id.* at UF 9). *See also McQuirk v. Donnelly*, 189 F.3d 793, 797-798 (9th Cir. 1991) (contract provisions that exculpate a party for "future . . . intentional wrongs are invariably invalidated.").[4]

As established by these undisputed facts and controlling law, Liu (i) negotiated and procured his Employment Agreement in violation of California's ethics rules, and subsequently (ii) cannot legally enforce that agreement against FF.[5]

### C. Liu Cannot Rebut the Mandatory Presumption of Undue Influence

While again professing it does not apply, Liu hypocritically posits California law permits and condones his enforcement of the Employment Agreement because:

- "the Employment Agreement was [allegedly] fair to FF and [] Liu";

---

[4] Case law addressing stock option agreements establishes that an employee rarely, if ever, is entitled to accelerated, immediate and full vesting in the event of a ***for cause termination***, which is unsurprising since any such entitlement perversely incentivizes and rewards an employee for his willful misconduct or manifest inability to perform even basic job duties. *See, e.g., In re 21st Century Oncology Hldgs., Inc.*, 2019 WL 2498264, at *8 (S.D.N.Y. June 3, 2019) (no "immediate" and "full" vesting if terminated for cause); *Baker v. Montrone*, 2020 WL 128531, at *5-6 (D.N.H. Jan. 10, 2020) (no accelerated vesting in the event of termination for cause); *CONSOL Energy, Inc. v. Hummel*, 238 W. Va. 114, 118 (2016) (same); *UGS Corp. v. Musti*, 2007 U.S. Dist. LEXIS 7440, at *31 (S.D. Ohio Feb. 1, 2007) (same).

[5] *See Sheppard, Mullin v. J-M Mfg'g Corp.*, 6 Cal. 5th 59, 68 (2018); *Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1141, 1154-1157 (2011); *BGJ Assoc.*, 113 Cal. App. 4th at 1226-1229; *Odish*, 2015 WL 11347592, at *10; *Gurvey v. Legend Films, Inc.*, 2012 WL 4061773, at *11 (S.D. Cal. Sep. 14, 2012).

- "FF [supposedly] was advised (or had access to) in-house and external counsel during the Employment Agreement negotiations";
- Liu "orally advised FF numerous times to retain independent counsel"; and
- FF purportedly had "Sidley Austin and FF's own internal legal departments . . . review[] the Employment Agreement." (Opp., pp. 17-18).

Because none of these excuses can withstand scrutiny, Liu has failed to satisfy his legal burden of adducing substantial responsive evidence rebutting the mandatory presumption that he exerted undue influence over FF.[6] **First**, Liu's conclusory assertions about the alleged "fairness" of the Employment Agreement are unsupported by citation to any law or facts and are required to be rejected (Opp., p. 17),[7] particularly where Liu fails to address, much less justify, the terms of the Employment Agreement purportedly denying FF the ability to terminate him for cause without also rewarding him with immediate payment and vesting of cash and stock options, even if he intentionally breaches his fiduciary duties. (UF 9).

**Second**, Liu's alleged oral disclosures to FF and FF's hypothetical access to independent counsel are legally irrelevant, as manifest from Liu's only cited California case involving an attorney who—***unlike Liu***—actually "followed" and complied with "[R]ule 3-300's requirement to advise the [client] [in writing] to obtain independent counsel." *Ferguson v. Yaspan*, 233 Cal. App. 4th 676, 687-688 (2014). Indeed, ***no*** California case or reported Ninth Circuit decision holds that oral disclosures or a client's hypothetical access to independent counsel obviate the duty to provide written disclosures or cure an attorney's ethical violations. The law is

---

[6] *Fair*, 195 Cal. App. 4th at 1152, 1155 ("A transaction between an attorney and client which occurs during the relationship and which is advantageous to the attorney is presumed to violate [the attorney's] fiduciary duty and to have been entered into without sufficient consideration and undue influence[,]" and it is the attorney's burden to show the transaction was "fair and just, and that the client was fully advised."); *BGJ Assoc.*, 113 Cal. App. 4th at 1127-1128 (same); *Felton v. Le Breton*, 92 Cal. 457, 469 (1891) ("the burden of proof is always upon the attorney" to establish the propriety of the transaction); *see also* Cal. Prob. Code § 16604.

[7] *See Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 (9th Cir. 2008) ("unsubstantiated assertions do not create a triable issue of fact."); *Cyntegra, Inc. v. IDEXX Labs., Inc.*, 322 Fed. Appx. 569, 571 n.2 (9th Cir. 2009) (rejecting argument "unsupported by citations to the record or legal authority.").

precisely to the contrary, and Liu's claim that attorneys can flout their ethics to clients who can access, or fortuitously obtain, independent advice, cannot be condoned.[8]

**Third**, Sidley did not represent or advise FF with respect to the Employment Agreement, nor did in-house counsel provide meaningful input. Vijay Sekhon—the Sidley partner responsible for, and personally familiar with, Sidley's representation of FF—has sworn and confirmed under oath that: ***"FF did not retain Sidley in connection with the drafting or negotiation of any of the terms of, or FF's decision to enter into the Employment Agreement . . . , [n]or did Sidley advise FF as to any of those matters."***[9] Moreover, in stark contrast to Liu's assertions:

- On Jan. 22, 2018, FF informed Liu that its "HR director" was reviewing the Employment Agreement, *not* Sidley. (Dkt. No. 160-4 [Liu Decl.] at Ex. 11);

- On Jan. 25, 2018, FF informed Liu its "Legal Department" and "HR" were engaged in a last-minute review only as to his "five-year guaranteed employment term[,]" confirming that in-house counsel were not involved in the drafting, negotiation, or review of the contract's other terms. (*Id.* at Ex. 12);

- On Jan. 26, 2018—the same day the Employment Agreement was signed—FF informed Liu that "Sidley's company partner VJ [Sekhon] [was] reviewing the agreement for us right now" for the sole purpose of making "sure there [was] no violation of any stipulations with [third-party] investors." (*Id.* at Ex. 13). Later that day, a Sidley attorney asked FF "if [it would] like [Sidley's] employee benefits specialists to take a look" at the Employment Agreement, confirming that Sidley had not previously reviewed the Employment Agreement for that purpose. FF declined, stating that its "standard offer letter" would "cover some basic [employment] terms[.]" (Dkt. No. 160-35 [Kushner Decl.] at Ex. A); such that

---

[8] *Odish,* 2015 WL 11347592, at *8 (attorney violated Rule 3-300 by only providing verbal notice that client should seek independent counsel); *BGJ*, 113 Cal. App. 4th at 1226 (rejecting argument that Rule 3-300 "does not apply once a client obtains the advice of independent counsel"); *Ritter v. State Bar*, 40 Cal. 3d 595, 602 (1985) (failure to advise client to seek independent counsel is not a mere "technical" ethical violation); *see also Heh v. Cty. of L.A.*, 2020 WL 2240072, at *2 (C.D. Cal. Feb. 13, 2020) (rejecting rule creating "perverse incentives by rewarding" misconduct).

[9] *See* concurrently filed Decl. of Vijay Sekhon at ¶¶ 1-3 (emphasis added). Because Sidley's representation of FF was first raised by Liu in his Opposition, FF is entitled to rebut that argument with additional evidence. *Zkey Invs., LLC v. Facebook, Inc.*, 225 F. Supp. 3d 1147, 1158 (C.D. Cal. 2016) ("[W]here evidence is 'submitted in direct response to proof adduced in opposition to a motion" for summary judgment, it is not 'new.'"), *aff'd* 708 Fed. Appx. 681 (Fed. Cir. 2018); *Fowzer v. Cty. of San Bern.*, 2018 WL 5880777, at *1 n. 3 (C.D. Cal. Oct. 25, 2018) (same); C.D. Cal. L.R. 7-10 (on reply, a party may file "declarations or other rebuttal evidence.").

- Liu's bald conclusion that Sidley advised FF with respect to the Employment Agreement cannot be credited.[10, 11]

Because Liu has failed to proffer substantial evidence refuting his ethics violations or rebutting the resulting presumption that he procured the Employment Agreement through undue influence, FF is legally entitled to summary judgment on Liu's claim for breach of the Employment Agreement.[12]

---

[10] Dkt. No. 160-4 [Liu Decl.] at ¶¶ 15, 23, 25-27; *see also F.T.C. v. Publ'g Cl. House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (a "conclusory, self-serving affidavit" is "insufficient to create a genuine issue of material fact."); *Sloane v. Experian Info. Sols., Inc.*, 2018 WL 6566539, at *3 (D. Nev. Sep. 25, 2018) ("declaration constitute[d] only a mere scintilla of evidence in comparison to" the "overwhelming" documentary evidence); *Foster v. Schoeb*, 2007 WL 2890378, at *4 (N.D. Cal. Sep. 28, 2007) ("In the face of overwhelming evidence," a self-serving declaration is "not credible" and cannot defeat summary judgment).

[11] Sidley's alleged involvement in the negotiation of Liu's Director Compensation Agreement ("**DCA**") is similarly irrelevant to Liu's ethical violations *vis-à-vis* his separate Employment Agreement, particularly where Mr. Sekhon has confirmed, under oath, that Sidley did not advise FF regarding the Employment Agreement, irrespective of Sidley's alleged involvement with the DCA, and where: (i) the DCA was exclusively between Liu and non-party Yueting Jia ("**Jia**"), *not* FF; (ii) the DCA was not incorporated in, attached to, or referenced by the Employment Agreement, nor was alleged in support of Liu's breach of Employment Agreement claim, (Compl. at ¶¶ 110-116, Ex. A and Ex. B at pp. 1, 3); and where (iii) Judge Rosenbluth's May 3 and 12, 2021 Orders (the "**May 2021 Orders**") found that the Employment Agreement and DCA are distinct contracts, and that Liu is not entitled to the production or use of FF's privileged communications concerning the DCA with Sidley on summary judgment. *See* Dkt. No. 146 [5/3/21 Order] at p. 6; Dkt. No. 153 [5/12/21 Order] at p. 1; *see also* Supp. Decl. of Lauren E. Grochow ("**Supp. Grochow Decl.**"), Ex. 6 [5/12/21 Hearing Tr.] at pp. 4:19-5:18, 21:1-11, 23:3-24:15, 25:3-20, 36:9-37:13.

[12] *Fair*, 195 Cal. App. 4th at 1152-1156 (attorney failed to rebut presumption of undue influence and could not enforce or recover damages under client transactions where those "transactions [were] fair and just" and "tremendously successful[,]" ***but*** the attorney nonetheless: (i) procured them in violation of California's ethics rules; (ii) "obtained favorable opportunities" through the transactions; and (iii) "never gave advice against himself" and thus failed to "inform [the] client of the perils of entering into" a transaction with the attorney); *BGJ Assoc.*, 113 Cal. App. 4th at 1229 (attorney could not "refute the presumption" of undue influence because he failed to "make it manifest that he gave to his client all that reasonable advice against himself that he would have given [the client] against a third-party"); *Odish*, 2015 WL 11347592, at *10 (granting summary judgment against attorney where (i) "there [was] no evidence that . . . [the attorney] provide[d] defendants the reasonable advice against himself that he would have given him against a third-person[,]" and (ii) the attorney's violation of that requirement, together with his "violations of Rule 3-300," rendered the subject agreements "voidable" irrespective of their alleged fairness).

### D. Liu Similarly Violated His Ethical Duties Under New York Law

Even assuming, *arguendo*, that Liu was subject only to New York's ethics rules, the analysis and result would be no different for each of the following reasons:

- Relying on the false premise that FF was *only* Mayer's, and "not [his] client[,]" Liu argues N.Y. Rule 1.8 does not apply and that he allegedly was unbound by either California's *or* New York's ethics rules. (Opp., p. 12). Like California, New York also rejects this absurd contention. *See* N.Y. R. Prof. Conduct 1.10(a) and cmmts. 2 & 8 (discussing "the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client" and Rule 1.8(a) therefore extends to all lawyers in a firm once it is retained as counsel). As such, Liu's reliance on the Restatement and his musing that Rule 1.8(a) should not be "strictly" applied to large law firms are contrary to New York law and are required to be rejected. This Court should likewise reject Liu's self-serving claim that Rule 1.8(a) does not apply because "it was not reasonable *for [] Liu* to believe or expect" that FF was relying on him to protect the Company's interests, particularly where Liu's professed subjective "beliefs" not only are irrelevant, but also are belied by Liu designating and holding himself out as the "FF Client Team Leader & Main Contact Partner" responsible for managing Mayer's representation of FF. (UF 4-7).

- Contrary to Liu's assertion that N.Y. Rule 1.7 is inapplicable because Mayer's "legal work for FF" allegedly did not "adversely affect [] Liu's professional judgment in a manner that prejudiced FF in the [E]mployment [A]greement negotiation" (Opp., p. 15), the *reality* is that Rule 1.7 expressly applies where a "lawyer's professional judgment on behalf of a client" as counsel is "***adversely affected by the lawyer's own financial, business, property, or other personal interest" in another transaction***. That is precisely the case here, where Liu procured his Employment Agreement while admittedly failing to provide advice concerning the risks of that contract which he reasonably would have given FF had it been negotiating with a third-person. (UF 10-13).[13]

- Finally, Liu's contention that N.Y. Rule 1.5 is inapplicable because his compensation at FF was reasonable in light of his Mayer earnings (Opp., pp. 16-17), fails to address, let alone legitimize, the terms of the Employment Agreement allegedly prohibiting FF from terminating Liu for cause (including for an intentional breach of fiduciary duty) without triggering the full and automatic payout of millions in cash and stock options as a reward for that misconduct—a benefit Liu surely did not enjoy at Mayer. (UF 9).[14]

---

[13] Like California law, New York's ethics rules required Liu to provide FF with "all that reasonable advice against himself, that he would have given [FF] against a third-person" in connection with the Employment Agreement. *Evans v. Ellis*, 5 Denio 640, 643, 1846 WL 4716 (N.Y. 1846); *see also Forest Park Assocs. Ltd. P'ship v. Kraus*, 175 A.D.2d 60, 62 (N.Y. App. Div. 1991) (recognizing New York's ethics rules apply "irrespective of the sophistication of the client").

[14] The report of Liu's retained expert does not support a different result. *See* concurrently filed Objections to Expert Report of J. Richard Supple, Jr..

## II. **FF IS ENTITLED TO JUDGMENT ON LIU'S WRONGFUL TERMINATION CLAIM**

### A. **Liu Cannot Prove Wrongful Termination Without Using FF's Privileged Information**

A claim for wrongful termination "***must be dismissed***" if it "is incapable of complete resolution" or cannot "be fully established without breaching the attorney-client privilege." *General Dynamics v. Super. Ct.*, 7 Cal. 4th 1164, 1170, 1190 (1994) (emphasis added). Liu's Opposition confirms that is precisely the case here. **First**, despite asserting that he can "prove—without intruding upon [the] privilege and without disclosing the specific content of the [legal] advice he provided to FF—that he was terminated in retaliation for giving [legal] advice" concerning: (i) the federal and state WARN Act; and (ii) the legality of FF recording corporate meetings (Opp., p. 20), Liu tellingly fails to identify *any* non-privileged evidence supporting that professed theory of retaliation.[15] Despite claiming that he communicated concerns about the WARN Act and recording meetings in July and October 2018, Liu admits that he was not terminated until February 2019. (Dkt. No. 16-4 [Liu Decl.] at ¶¶ 34-38, Exs. 27-28). Under U.S. Supreme Court, Ninth Circuit and California law, Liu's bare assertions of retaliation, and a tenuous "temporal proximity" between alleged protected activity and termination, are incapable of establishing even a *prima facie* claim for retaliation.[16] **Second**, Liu contends he can establish wrongful termination

---

[15] Indeed, Liu has taken the position that the ***only*** document conceivably evidencing his provision of WARN Act advice—a privileged October 2018 email between Liu and another in-house attorney at FF—***does not*** actually reflect "legal advice whatsoever." *See* Dkt. No. 165 [Liu Opp. to *Ex Parte*] at pp. 4:20-21.

[16] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of [alleged] protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" ***and the passage of even 3 months precludes causality***); *Wash. v. Cal. City. Corr. Ctr.*, 871 F. Supp. 2d 1010, 1029 (E.D. Cal. 2012) (granting employer summary adjudication where "there [was] no evidence, other than the temporal proximity between the complaint and the accusations, to suggest Defendant took action against Plaintiff *because* she complained."); *Asurmendi v. Tyco Elecs. Corp.*, 2011 WL 6014855, at *14 (Cal. App. Dec. 2, 2011) (affirming summary adjudication where "plaintiff ha[d] not established a prima facie case of retaliation" because the only

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

through testimony and communications concerning the following matters "for which the privilege [allegedly] has been waived" by FF: (i) compliance with the WARN Act and the legality of recording of corporate meetings; and (ii) Jia's alleged statement on February 11, 2019 that "the main reasons for [Liu's] termination" were his "communications with Evergrande and [his] advice in connection with the Evergrande funding dispute[.]" (Opp., p. 21). But, in *reality*:

1. Judge Rosenbluth's May 2021 Orders—defining the limited scope of FF's privilege waiver and denying Liu's *ex parte* application to reconsider and expand it—hold that FF has ***not*** waived the privilege as to WARN Act communications that Liu did not personally author.[17] As confirmed by Liu's Opposition, no WARN Act communications authored by Liu exist, and thus, there are no non-privileged documents Liu can use to prove his WARN Act theory of retaliation. Recognizing that, and in violation of the May 2021 Orders, Liu's Opposition improperly relies on a privileged WARN Act communication he pilfered from FF. (Dkt. No. 160-4 [Liu Decl.] at Ex. 27);

2. Liu's Opposition also reveals Liu's intention to prosecute his claim using privileged communications with FF's "core management team and FF Board Members, including FF's co-founder Nick Sampson" (*Id.* at ¶ 36), ***which fall outside the scope of the limited privilege waiver set forth in the May 2021 Orders***. While Liu's Opposition further asserts Jia "told [him] on February 11, 2019 that he was being terminated" for providing "advice in connection with the Evergrande funding dispute[,]" that contention is belied by Liu's *own* Declaration in which Liu admits that the ***actual*** reason given for his

---

evidence of wrongdoing was the purported temporal proximity between the protected activity and termination); *Crown v. Wal Mart Stores, Inc.*, 8 Fed. Appx. 776, 779 (9th Cir. 2001) ("mere speculation" regarding an employer's motives is "insufficient to make [even] a prima facie showing" of wrongful termination).

[17] *See* Dkt. No. 124 [FF Opp. to Liu Privilege Mot.] at pp. 17:18-18:5, 20:1-3, 20:26-28 (agreeing to produce "otherwise privileged communications which Liu authored" concerning Liu's failures to: "lead FF to an IPO"; "connect FF with any investment bank"; "assist FF when it Series A investor, Evergrande, backed out of its funding commitment"; and "provide substantive legal advice with respect to the EVelozcity litigation, vendor concerns regarding indemnification, the record of internal meetings, and a potential reduction in FF's workforce" (the "**Enumerated Failures**")); Dkt. No. 146 [5/3/21 Order] at pp. 2-6 ("Defendants have narrowed the breadth of their privilege waiver" to "those areas" and documents concerning Liu's job performance that FF "previously agreed were waived," *i.e.*, the Enumerated Failures); Dkt. No. 147 [Liu's *Ex Parte* Reconsideration Mot.] at pp. 8:17-9:2 (arguing FF's privilege waiver should be enlarged to include WARN Act memoranda and communications Liu did not author); Dkt. No. 149 [FF Opp. to Liu's *Ex Parte* Reconsideration Mot.] at pp. 3:2-6:11 (detailing the events leading up and describing Judge Rosenbluth's 5/3/21 Order); Dkt. No. 153 [5/12/21 Order] at p. 1 (denying Liu reconsideration); *see also* Supp. Grochow Decl., Ex. 6 [5/12/21 Hearing Tr.] at pp. 37:22-38:22, 41:17-42:6.

termination was his "effort . . . to remove [] Jia" and oust him as CEO. (*Compare* Opp., p. 21, *with* Dkt. No. 160-4 [Liu Decl.] at ¶ 38); and finally;

3. Liu fails to explain how any of his documentary evidence supports his speculative theory he was terminated in February 2019 *because* he provided legal advice months earlier about the WARN Act and recording meetings.[18]

**Third**, Liu remarkably argues *General Dynamics* "contemplates" and affirmatively "permits" him to prosecute his wrongful termination claim "part[ially] rely[ing] on" and "us[ing]" FF's "privileged materials," so long as the Court uses "ad hoc measures" to limit public disclosure. (Opp., p. 22). That proposition not only is belied by (i) *General Dynamics*' explicit mandate that a wrongful termination claim "***must* be dismissed**" if it "cannot be fully established" or is "incapable of complete resolution without breaching the" privilege; but also is precluded by (ii) the undeniable fact that *General Dynamics'* reference to "ad hoc" measures exclusively concerned how a trial court may "permit the attorney plaintiff to make the necessary proof" *using non-privileged information*, while also "protecting from disclosure client confidences [that are] subject to the privilege" and cannot legally be used to prove liability. *See* 7 Cal. 4th at 1170, 1190-1191 (emphasis added).[19]

---

[18] *See* Dkt. No. 160-4 [Liu Decl.] at Ex. 28 (July 2018 email reflecting Liu's concurrence that "it would be in the company as well as everyone's best interest to follow the applicable laws and rules."); Ex. 29 (Liu's self-serving Jan. 23, 2019 email accusing FF of retaliating against him for "various complaints that [he] raised" about "comply[ing] with various state and federal laws" in 2018); Dkt. No. 165 [Liu Opp. to *Ex Parte*] at pp. 4:20-21 (admitting Ex. 27 does not reflect WARN Act advice)

[19] Liu inappositely cites *Chubb & Son v. Super Ct.*, 228 Cal. App. 4th 1094 (2014), even though that case: (i) did not involve a wrongful termination claim prosecuted by in-house counsel; (ii) held that a plaintiff-attorney was entitled to obtain certain privileged materials for the limited purpose of "consulting with [her counsel] on how to proceed in the case" with "respect to discovery"; and (iii) could not publicly disclose or otherwise use that privileged information for any other purpose; and (iv) recognized that *General Dynamics* bars the "public disclosure" or use of privileged materials. *See id.* at 1097-1098, 1108. *Chubb*, therefore, clearly does not undermine the express legal prohibition on using privileged information to prosecute a wrongful termination claim, as reconfirmed by the state and federal authorities dismissing such claims under *General Dynamics*. *Olivo v. City of Vernon*, 2010 WL 2953898, at *12-16 (Cal. App. July 29, 2010); *Degenshein v. 21st Century Toys., Inc.*, 2007 WL 1242171, at *4-7 (Cal. App. Apr. 30, 2017); *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1139-1144 (S.D. Cal. 2018).

Because Liu's Opposition and supporting documents make clear that he (i) has used, must use, and will continue using FF's privileged information; and that he (ii) has no substantial responsive, non-privileged evidence supporting his speculative theory of retaliation, no "conjecture" as to the propriety of summary judgment is required. (Opp., p. 22).[20]

### B. Liu Has Not Adduced Evidence He Engaged in Protected Activity

*General Dynamics* further holds that "judicial access" is "limit[ed]" to wrongful termination claims "grounded in *explicit* and *unequivocal* ethical norms embodied in the Rules of Professional Responsibility and *statutes*, and claims which are maintainable by the *non-attorney* employee . . . under circumstances in which the Legislature has manifested a judgment that the principle of confidentiality *does not apply*." *See* 7 Cal. 4th at 1189. As such, "an in-house attorney [can] recover for wrongful termination only if" (1) "[the] plaintiff can show that she was terminated for following a mandatory ethical obligation prescribed by a professional rule or statute[,]" or (2) "she engaged in conduct that is merely ethically permissible" and "some statute or ethical rule, such as the statutory exceptions to the attorney-client privilege codified in the Evidence Code[,] specifically permits the attorney to depart from the usual requirement of confidentiality with respect to the client-employer[.]" *Tam*, 300 F. Supp. 3d at 1140. Without addressing these requirements, Liu baldly asserts that his claim is properly tethered to: (i) Cal. Labor Code §§ 1102.5(b)-(c); (ii) the federal and California WARN Acts; and (iii) federal and state laws privacy laws. (Opp., p. 24). Once again, Liu's assertions cannot withstand legal scrutiny.

---

[20] Liu tellingly does not deny that he pilfered FF's privileged documents and used them to prosecute this action, including by attempting to introduce and use them to question deponents. (UF 19-24). Instead, Liu argues "[t]he nature and scope of attorney-client privilege in this action" is "highly disputed between the parties[,]" and "[t]he Court has held that Defendants have waived attorney-client privilege with respect to broad categories of documents." (Dkt. No. 160-3 [Liu's Opp. to FF's Sep. St.] at UF 20-24). These assertions do not rebut, let alone justify, the theft and misuse of FF's privileged documents, particularly where Liu has failed to establish that the documents he pilfered fall within the May 2021 Orders' limited privilege waiver.

That is because Liu fails to establish that those statutes "include any mandatory ethical disclosure requirements" for attorneys, *Tam*, 300 F. Supp. 3d at 1142, or impose any "explicit and unequivocal ethical norms" on them. *General Dynamics*, 7 Cal. 4th at 1189.[21] And, none of the statutes "*specifically* permit[]" Liu's "departure from the usual requirements of confidentiality." *Tam*, 300 F. Supp. 3d at 1143. Thus, Liu's claim is not grounded in any ethics rule or statute compliant with *General Dynamics'* requirements, and summary judgment must be entered in FF's favor.[22]

Dated: May 26, 2021

Respectfully submitted,

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Lauren E. Grochow
Lauren E. Grochow

Attorneys for Defendant
SMART KING LTD. and Defendant and Counterclaimant
FARADAY&FUTURE INC.

---

[21] Cal. Labor Code § 1102.5 "prohibits employer retaliation against employees who disclose a violation of state or federal statute or regulation[,]" but "does not mandate any attorney to break confidentiality." *Tam*, 300 F. Supp. 3d at 1142. The WARN Act requires notice before layoffs—it does not prescribe ethical obligations or norms for attorneys. *See* 29 U.S.C. §§ 2101, 2102, 2014; Cal. Lab. Code §§ 1400-1404. Moreover, the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, concerns intercepting communications for criminal or tortious reasons; Cal. Penal Code §§ 631-632 prohibit recording "confidential" communications unless the parties know the recorder is "overhearing" the communication; and Cal. Const., Art. I, § 1 recognizes "inalienable rights[,]" including "privacy." Even if these laws govern employers recording corporate meetings (which Liu fails to establish), they do not create ethical norms for, let alone mandate disclosure of, privileged information by attorneys.

[22] *General Dynamics*, 7 Cal. 4th 1189-1191 (in-counsel's remedy is not "coextensive with that available to the nonattorney employee"; rather, he has "the burden of establishing the unequivocal requirements of the ethical norm at issue"); *Tam*, 300 F. Supp. 3d at 1140-1141 (Cal. Rule 3-600, Sarbanes-Oxley Act, Cal. Bus. & Prof. Code § 17200 and Cal. Labor Code § 1102.5 failed to satisfy *General Dynamics*); *Olivo*, 2010 WL 2953898, at *12-16 (affirming summary judgment where in-house counsel failed to establish crime-fraud exception); *Degenshein*, 2007 WL 1242171, at *4-7 (same); *see also Ricketts v. Farmers Grp.*, 2001 WL 1487700, at *6-7 (Cal. App. Nov. 26, 2001) (entering judgment for employer under *General Dynamics* where (i) "[t]here [was] no evidence that [counsel] was confronted with a 'genuine moral dilemma,' or [] was required" to "violate a rule or law to keep his job"; and (ii) "[t]he proverbial bottom line is that disagreements over policy are not actionable.").