# EXHIBIT 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| HONG LIU, | ) CASE NO: 2:20-CV-08035-SVW-JPRx |
| | ) |
| Plaintiff, | )         CIVIL |
| | ) |
| vs. | )    Los Angeles, California |
| | ) |
| FARADAY & FUTURE, INC, ET AL, | )    Wednesday, May 12, 2021 |
| | ) |
| Defendants. | ) |

**TELEPHONIC CONFERENCE RE PLAINTIFF'S EX PARTE APPLICATION
TO CLARIFY COURT'S MAY 3, 2021 ORDER**

BEFORE THE HONORABLE JEAN P. ROSENBLUTH,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:            SEE PAGE 2

Court Reporter:         Recorded; Digital

Courtroom Deputy:       Bea Martinez

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES:**

For Plaintiff:        AMIAD M. KUSHNER, ESQ.
                      Seiden Law Group, LLP
                      322 8th Avenue
                      Suite 1704
                      New York, NY 10001


For Defendants:       JEFFREY M. GOLDMAN, ESQ.
                      KEVIN A. CRISP, ESQ.
                      LAUREN E. GROCHOW, ESQ.
                      ALAN J. KESSEL, ESQ.
                      Troutman Pepper Hamilton Sanders, LLP
                      5 Park Plaza
                      Suite 1400
                      Irvine, CA 92614

                      PAUL B. GEORGE, ESQ.
                      Lane Powell, PC
                      601 SW Second Ave.
                      Suite 2100
                      Portland, OR 97204

1  said that I had criminal duty.  It said "Criminal Bench" right

2  up at the upper right-hand corner, which means I am unavailable

3  for that day because I am literally going nonstop on the

4  criminal stuff.

5         So, you can't send an email saying that I have to

6  rule on something that day that you have filed after midnight.

7  And I understand you didn't intend to file it after midnight,

8  but you did, and so Defendants get a chance to respond, and I

9  was not available, and you can't demand that I handle something

10 that day.

11        And I don't know why you filed it so late in any

12 event.  I understand that things are moving rapidly, but you

13 can't -- you waited, apparently, until February to serve your

14 first discovery request, and now you've pushed everything up

15 until the end.  And thankfully Judge Wilson has continued

16 things, but I, you know, just -- it's not fair to me, it's not

17 fair to the Defendants.  So, I need you to, you know, get your

18 act together a little bit.

19        Okay.  So, I understand that there are certain areas

20 where you contend Defendants have not complied with my prior

21 orders.  I want to start with the director compensation

22 agreement.

23        I went back once again, and I read your urgent

24 motion.  You twice mentioned the director compensation

25 agreement, but you make no argument about it, and during those

**EXCEPTIONAL REPORTING SERVICES, INC**

1  last couple of hearings, I repeatedly said, "employment
2  agreement, employment agreement" because that's what the focus
3  of the arguments had been about, and you never said "boo".
4          Moreover, I did go back and look at that agreement.
5  It is with a third party; it's not with Defendants.  And the
6  focus of the Defendant's counterclaims is the employment
7  agreement.  And your Cause of Action Number 1 is breach of the
8  employment agreement, not the director's agreement, although it
9  attaches it.
10         So, I just don't see any basis at this point to
11 revisit that ruling.  So, I'm sorry, but again, you know, you
12 guys are -- you're coming at me after the fact.  You don't make
13 particular arguments, and then you ask me to -- you ask me
14 essentially to reconsider it, and I don't think it's
15 appropriate.
16         And moreover, based on the counterclaims here and the
17 -- your complaint, and the fact that the director agreement is
18 with a third party, I just don't think it's appropriate.
19         So, I'm not going to do anything about that.  I will
20 say that I did look at the pages that Plaintiff submitted as
21 examples of redactions that Defendants have made, and it does
22 look a bit over the top.
23         I do expect Defendants to fully comply with my order,
24 and I, you know, along those lines, I have to say it's pretty
25 fishy that you have not turned over any documents whatsoever;

1    **MR. KUSHNER:** Yes. Thank you, Your Honor. As to the
2    director compensation agreement, I think that we've already
3    said, in our brief, that these two agreements were considered
4    by the parties to be part of Plaintiff's -- you know, Plaintiff
5    package and the director compensation agreement incorporates
6    the terms of the employment agreement.
7         So when we were --
8         **THE COURT:** I looked at both the remaining
9    counterclaims again before this hearing and your positive
10   action number one. And all of those only speak of the
11   employment agreement.
12        **MR. KUSHNER:** Well, Your Honor, the counterclaim that
13   Defendants -- you know, their first counterclaim is they're now
14   moving for summary judgment on, is premised on the notion that,
15   while Plaintiff was a partner at Mayer Brown, he allegedly --
16   while he was simultaneously providing legal advice to Faraday's
17   capacity as a Mayer Brown partner, while at the same time
18   negotiating the terms of his employment with Faraday.
19        And in support of their summary judgment motion, you
20   know, you can look at, for example, the Wang declaration that
21   was submitted in support of their summary judgment motion, at
22   ECF Number 131-4, Mr. Wang claims that, between December of
23   2017 and February 2018, the Plaintiff, in his capacity as an
24   attorney and partner at Mayer Brown, represented Faraday in
25   various legal matters as Faraday (**audio glitch**) Counsel.

23

1     **MR. KUSHNER:** -- "no.  The issue is only one
2  agreement, not the other."
3            **THE COURT:**  So I have two questions for you.  One,
4  why am I only hearing this argument now?  Because it's not in
5  any of your earlier filings.
6            And, two, you know, I think the clients sometimes
7  forget that you know your case much better than the Judge does.
8  And I'm pretty thorough, and I read everything, but I am just
9  not going to be in a position to understand your case as well
10 as you do.
11           So one thing that no one has explained to me, and
12 that I don't really understand, is why is the director
13 compensation agreement with somebody else?
14           So if you can answer those two questions:  One, why
15 am only hearing these arguments now; and, two, why is the
16 director compensation agreement with a third party?
17           **MR. KUSHNER:**  Sure, I can answer those two questions.
18           So, Your Honor, it was inconceivable to us that
19 Defendants would redact material related to the director
20 compensation agreement.  Because it was clear, beginning with
21 our complaint and with the conduct of the party that these two
22 agreements were part of the same transaction.
23           We had no idea that they were going to make this
24 claim that somehow one agreement can be excised --
25           **THE COURT:**  Well, you were the one to define what

1  these things mean.  And you have defined employment agreement
2  to mean something different from director compensation
3  agreement.  And I repeatedly was talking during all these
4  hearings about the employment agreement, the employment
5  agreement, the employment agreement.  I don't think that the
6  words, "director compensation agreement" were ever mentioned by
7  anyone.
8          And so, you know, you say it was inconceivable to
9  you, but clearly the parties, in some ways at least, have
10 considered these to be two different agreements.  Clearly they
11 are two different agreements, because one is to the third
12 party.
13         And so I just don't understand how you can now come
14 and say, "We deserve this too," when you didn't make any of
15 these arguments before.
16         **MR. KUSHNER:**  Well, respectfully, Your Honor, we
17 just -- we hadn't seen the document.  So we just didn't know,
18 you know, what they have.
19         You know, it's one thing to have this conversation
20 after you see, you know, an email where 99 percent of it is
21 redacted.  It's another thing to try to anticipate in advance
22 what they're going to redact.
23         Normally in discovery, right -- you know, when you
24 propound a discovery request and you ask for, you know, all
25 documents relating to a particular agreement, you just don't

1 anticipate, you know, that somebody's going to excise 99

2 percent of a document in this way.

3   **THE COURT:** Well, I got to tell you, the good lawyers

4 do. The good lawyers are going to give you only what you ask

5 for and nothing more.

6   I mean, I don't know because, you know, it hasn't

7 been pointed out to me. I don't know if your discovery

8 requests specifically talk about the employment agreement or

9 they also talked about the director compensation agreement. I

10 don't know.

11   But what I do know is that it has -- in your urgent

12 motion, there are two references in passing to the director

13 compensation agreement. There's no agreement about it.

14 There's nothing. And there was no argument about it at any of

15 the hearings.

16   You know, it's just very frustrating to me. This is

17 now about the third or the fourth time where you come back and

18 said, "Oh, gosh, we missed it. We should have made this

19 argument, and we want to make it now."

20   But that's not how this works, you know?

21   **MR. KUSHNER:** And I understand. I appreciate that,

22 Your Honor. I mean, we did specifically request, in our

23 document demands in this case, documents relating to the

24 director compensation agreement.

25   But let me answer Your Honor's other question related

1  "in Paragraph 5," do you mean in the fifth counterclaim, that's

2  in the fifth, or are you talking about the general allegations?

3           **MR. KUSHNER:**  I'm talking about the -- okay, the

4  document's called Faraday & Future's Second Amended

5  Counterclaim.

6           **THE COURT:**  Right.

7           **MR. KUSHNER:**  Docket Number 95.

8           **THE COURT:**  Right.

9           **MR. KUSHNER:**  I'm just responding to what counsel

10 just said, that they have not put Director Agreement at issue

11 in their Counterclaim.  And Paragraph 5 starts out and it says,

12           "Liu drafted and thereafter presented both the

13           Employment Agreement and the Director Agreement to FF

14           while he was a Mayer partner, each of which

15           agreements was unfairly and unreasonably advantageous

16           to Liu."

17          **THE COURT:**  Right, but --

18       **(Voices overlap)**

19          **THE COURT:**  -- there are all sorts of factual

20 allegations in the preamble, or whatever you want to call it,

21 but when you look at their actual counterclaims, their actual

22 counterclaims one, two, three, four, and I think maybe

23 Judge Wilson dismissed some of those, but and seven, I think it

24 is, and then eight hasn't been dismissed, those only speak --

25 those are the actual counterclaims and they only speak in terms

1  of the Employment Agreement. Those are the actual claims they
2  have raised.
3         **MR. KUSHNER:** Understood. Your Honor, I think that,
4  you know, we've probably exhausted the argument on this issue.
5         **THE COURT:** Mr. Kushner, I'm going to rule against
6  you because I just don't think this was properly put before me.
7  I do think the different agreement, as evidenced by the fact
8  that the parties have called them something different. The
9  Director Compensation is with a third party, the Counterclaims
10 all speak in terms of the (**audio glitch**) an agreement. Your
11 claim (**audio glitch**) cause of action speaks in terms of the
12 Employment Agreement. So, I just don't think this is something
13 that's appropriate for me to reconsider now.
14        You know, if -- I'm not saying you will be
15 successful, but if Judge Wilson denies their *General Dynamics*
16 argument and if you survive the Summary Judgment Motion, then,
17 you know, you can come back to me and maybe I'll reconsider
18 some of these things. But, you know, it helps you that he
19 continued these trial dates. But you know, I don't know. I'm
20 not -- I haven't thought that all through, but for right now I
21 am denying your argument about that.
22        Did you want to speak about the enumerated failures?
23 I mean honestly the way I see this, you know, this is kind of
24 like a gimme for you because Defendants, they have acknowledged
25 that certain things were waived when the fifth and sixth

1  counterclaims were still extant and I ordered them to produce
2  it just because they said they would, but now those
3  counterclaims are gone so a lot of it just seems like it's not
4  really relevant to the counterclaims that remain, but you're
5  still getting it anyway.
6           But they did specifically say that they were going to
7  produce stuff that Plaintiff authored, so how have they not
8  complied with what I ordered?
9           **MR. KUSHNER:** Your Honor, I think we have a
10 difference of opinion with Defendants' counsel as to what you
11 have ordered. The way that we have read the Order, you know,
12 the May 3rd Order, it said that the privilege had been waived
13 as to "those areas Defendants previously acknowledged were
14 waived." So, the way we read the Order is that privilege was
15 waived as to areas the Defendants acknowledge were waived.
16          We didn't see in the text of the May 3rd Order a
17 limitation which said that --
18    **(Voices overlap)**
19          **THE COURT:** -- think about the documents they agreed
20 to produce and then I cite pages and if you look at the pages
21 they say that they would produce the stuff that Plaintiff
22 authored in those areas.
23          I will say, Mr. Kessel, you know, we're all familiar
24 with the attorney work product and, you know, the notion that a
25 lawyer can direct someone else to write something up. If some

1        It sounds like something that's very subjective, you

2  know, vague, and unilateral.  You know, so for example if there

3  are documents reflecting the fact that Plaintiff participated

4  in calls or meetings relating to the Evergrande funding

5  dispute, you know, showing that he's actively participating in

6  meetings, Defendants could just withhold those documents

7  because, according to their interpretation, unless the document

8  actually reflects some advice that Plaintiff provided or some

9  assistance, as they've said, you know, in their brief, that it

10  can be withheld.

11        So, but for us it kind of raises questions about just

12  kind of selective disclosure of privileged documents where the

13  Defendants are -- you know, they're unilaterally selecting what

14  they consider to be Plaintiff's advice or what's relevant to

15  show that Plaintiff provided advice or didn't provide advice

16  and there's just no way for us to --

17        **THE COURT:**  I think my Order -- what I am concerned

18  with is whether they've complied with my Order.  My Order was

19  that they produce any, any document that Mr. Liu authored in

20  those six areas.

21        So, Mr. Kessel -- I think it was six areas -- you've

22  represented that that's what you've done, correct?

23        **MR. KESSEL:**  Absolutely, Your Honor.  We have fully

24  complied with your Order.

25        **THE COURT:**  All right.  So, I don't know if there

1   were some language in the opposition brief that was a little
2   mushy or something.  I'm not so concerned with that.  I'm
3   concerned that any document that Mr. Liu authored, regardless
4   of whether it's giving advice or anything like that, that fell
5   into those categories was produced, and Mr. Kessel has
6   represented that they were.  So --
7           **MR. KESSEL:**  And Ms. Grochow has also attested to
8   that in Paragraph 6 of her Declaration.
9           **THE COURT:**  All right.  So, we are now past
10  Ms. Martinez's workday, so I don't want to keep her
11  unnecessarily and I think that we have covered pretty much
12  everything.  I will summarize what my rulings are, but does
13  anybody have anything, you know, final that they want to say?
14          **MR. KUSHNER:**  I would just like to say thank you,
15  Your Honor, for your careful consideration of the issues and we
16  will -- you know, as you suggested, if Judge Wilson denies
17  summary judgment we would like the opportunity to leave or to
18  revisit some of these rulings at that time.
19          **THE COURT:**  Yeah, you might want to, you know, broach
20  some of that with -- I'm not saying to ask for any kind of
21  ruling from Judge Wilson, but I think it would help you and it
22  would help me and it would help if he has -- you know, I've
23  been speaking with him about these issues, he's aware and he's
24  engaged, and if you get some kind of guidance from him I
25  certainly am going to listen to that.  So, that's fine.  I'm

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                         <u>May 14, 2021</u>
            Signed                                                                    Dated

*TONI HUDSON, TRANSCRIBER*